# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

---

**IN RE: MICHAEL JOSEPH ROBERTS SR.,**

**Debtor.**

---

**MICHAEL JOSEPH ROBERTS SR.,**

**Appellant,**

**v.**

**PDC, LLC;**
**TIMOTHY FLAHERTY;**
**TIMOTHY KNEEN;**
**RIVIERA COUNTRY CLUB,**
**S.DE R.L. C.V.S.**
**HARVEY SENDER as United States Trustee,**

**Appellees**

**Bankruptcy Appellate Panel
Case No. CO-24-0009**

**Bankr. No. 22-10521**
**Chapter 7**

---

## BRIEF OF APPELLANT

---

Counsel for Appellant:

Robert C. Podoll

PODOLL & PODOLL, P.C.
5619 DTC Parkway, Suite 1100
Greenwood Village, CO 80111
Telephone: 303.861.4000
Fax: 303.861.4004

By: _/s/ Robert C. Podoll_
Robert C. Podoll
Colorado Atty. Reg. #8775
rob@podoll.net

**TABLE OF CONTENTS**

I.      JURISDICTIONAL STATEMENT ................................................................. 7

II.     STATEMENT OF ISSUES ............................................................................ 7

III.    STANDARD OF REVIEW ........................................................................... 7

IV.     STATEMENT OF THE CASE ....................................................................... 7

V.      SUMMARY OF THE ARGUMENT ............................................................. 14

VI.     ARGUMENT ............................................................................................... 15

        A.  The Court Abused its Discretion in Approving the Settlement of the
            Creditors' Bankruptcy Claims ........................................................... 17

            1.  The Settlement Forfeited Roberts Substantial Setoff ..................... 17

            2.  The Court Failed to Resolve the Claim Objections Prior to Approving
                the Settlement ............................................................................. 19

        B.  The Court Abused its Discretion in Approving the Settlement of the State
            Court Litigation ................................................................................ 22

            1.  The State Court Denied Roberts his Due Process Rights. ............. 22

            2.  Roberts Could Not Have Breached a Fiduciary Duty .................... 26

            3.  The State Court Lacked Jurisdiction to Hear the Case ................. 28

            4.  RCC's Claims were Barred by Res Judicata ............................... 33

            5.  The Promoters Failed to Show Damages .................................... 35

        C.  The Bankruptcy Court erred in failing to consider the fairness of the
            settlement agreement to the debtor and the estate. ............................ 38

VII.    CONCLUSION ........................................................................................ 40

# TABLE OF AUTHORITIES

## Cases

*A.R.A. Mfg. Co. v. Cohen*,
654 P.2d 857 (Colo. 1982) .................................................................................................... 29

*Ballow v. PHICO Ins. Co.*,
878 P.2d 672 (Colo. 1994) .................................................................................................... 35

*Bator v. Mines Development, Inc.*,
32 Colo. App. 320, 513 P.2d 220 (1973) .............................................................................. 27

*Board of County Com'rs of Weld County v. Slovek*,
723 P.2d 1309 (Colo. 1986) .................................................................................................. 35

*Brady v. Brown*,
51 F.3d 810 (9th Cir. 1995) ............................................................................................. 8, 32

*Buechner v. Rouse*,
538 P.2d 117 (Colo. Ct. App. 1975) ..................................................................................... 29

*Carper v. Frost Oil Co.*,
72 Colo. 345, 211 P. 370 (1922) ........................................................................................... 26

*Carter v. Moorehouse Parish School Board*,
441 F.2d 380 (5th Cir. 1971) ................................................................................................ 25

*Citizens Bank v. Strumpf*,
516 U.S. 16 (1995) ................................................................................................................ 18

*Collie v. Becknell*,
762 P.2d 727 (Colo. App. 1988) ..................................................................................... 26, 27

*Crisman v. Dorsey*,
21 P. 920 (Colo. 1889) .......................................................................................................... 12

*Cruz v. Benine*,
984 P.2d 1173 (Colo.1999) ................................................................................................... 34

*Dean v. Burman (In re Dean)*,
U.S. Dist. LEXIS 50910, at *1 (W.D. Wash. July 25, 2006) ............................................... 31

*Don J. Best Trust v. Cherry Creek Nat'l Bank*,
792 P.2d 302 (Colo. App. 1990) ........................................................................................... 25

*Dupont v. Southern Nat'l Bank of Houston, Inc.*,
771 F.2d 874 (5th Cir. 1985) ................................................................................................ 24

*Durdin v. Cheyenne Mount. Bank*,
98 P.3d 899 (Colo. App. 2004) ....................................................................................... 28, 30

*E. & J. Gallo Winery v. Andina Licores S.A.*,
446 F.3d 984 (9th Cir. 2006) ................................................................................................ 32

*Feeney v. Colo. Ltd. Gaming Control Comm'n*,
890 P.2d 173 (Colo. App. 1994) ........................................................................................... 24

*First Bank v. State, Dep't of Regulatory Agencies, Div. of Banking*,
852 P.2d 1345 (Colo. App. 1993) ............................................................. 24

*Fuentes v. Shevin*,
407 U.S. 67 (1972) ................................................................................... 24

*Hilton v. Guyot*,
159 U.S. 113 (1895) ................................................................................. 33

*Hooper v. Musolino*,
234 Va. 558, 364 S.E.2d 207, 213 (1988) ............................................... 36

*Hutson v. Am. Home Mortg. Servicing*,
2009 U.S. Dist. LEXIS 96764, at *29 (N.D. Cal. Oct. 16, 2009) ............ 37

*In re ADI Liquidation, Inc.*,
2015 Bankr. LEXIS 1611 (Bankr. Del. 2015) ......................................... 18

*In re AWECO, Inc* ................................................................................ 16, 38

*In re AWECO, Inc.*,
725 F.2d at 298 ........................................................................................ 15

*In re DVR, LLC*,
6060 B.R. 80 (D. Colo. 2019) .................................................. 15, 19, 20, 21

*In re Endrex Invest., Inc.*,
111 B.R. 939 (D. Colo. 1990) .................................................................. 25

*In re Icenhower*,
398 B.R. 902 (S.D. Cal. 2008) ........................................................... 28, 32

*In re Jackson Brewing Co.*,
624 F.2d 599 (5th Cir. 1980) ................................................................. 15

*In re Marriage of Seewald*,
22 P.3d 580 (Colo.App. 2001) ................................................................. 34

*In re Petition of First Interstate Bank, N.A.*,
767 P.2d 792 (Colo. App. 1988) .............................................................. 24

*In re Westchester Structures, Inc.*,
181 B.R. 730 (Bankr. S.D.N.Y. 1995) ..................................................... 18

*In re Whimsy, Inc.*,
221 B.R. 69 (Bankr. S.D.N.Y 1998) ........................................................ 17

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
341 U.S. 123 (1951) ................................................................................. 24

*Jones v. Wells Fargo Bank, N.A.*,
U.S. Dist. LEXIS 110560, at *35 (D. Colo. July 1, 2014) ...................... 36

*Kim v. Grover C. Coors Trust*,
179 P.3d 86 (Colo.App.2007) .................................................................. 29

*Kismet Acquisition, LLC v. Icenhower (In Re Icenhower)*,
   398 B.R. 902 n. 31 ............................................................................................... 32

*Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*,
   213 B.R. 1020 (B.A.P. 10th Cir. 1997) ....................................................... passim

*Laker Airways Ltd. v. Sabena Belgian World Airlines*,
   731 F.2d 909, 235 U.S. App. D.C. 207 (D.C. Cir. 1984) ...................................... 32

*Mathai v. Warren (In re Warren)*,
   512 F.3d 1241 (10th Cir. 2008) ........................................................................... 16

*Nouri v. Mortg. Lender Servs.*,
   No. B236415, 2012 Cal. App. Unpub. LEXIS 7915, at *18 (Oct. 30, 2012) .......................... 36

*Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Information Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004) ................................................................................ 28

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
   390 U.S. 414, 88 S. Ct. 1157 (1968)................................................................... 15

*Protective Committee v. Anderson*,
   390 U.S. 414 (1968)............................................................................................. 15

*Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*,
   652 F.2d 852 (9th Cir. 1981) .............................................................................. 28

*Skaggs v. Otis Elevator Co.*,
   164 F.3d 511 (10th Cir. 1998) ............................................................................ 24

*St. Paul at Chase Corp v Manufacturers Life Ins Co.*,
   262 Md. 192, 278 A.2d 12 (1971) ...................................................................... 36

*Studley v. Boylston Nat'l Bank*,
   229 U.S. 523 (1913)...................................................................................... 17, 18

*Sun World, Inc. v. Lizaru Olivarria*,
   804 F. Supp. 1264 (E.D. Cal. 1992) ................................................................... 28

*Taylor v. Moskow*,
   2014 U.S. Dist. LEXIS 77272,*11-12, 2014 WL 2573990.................................... 29

*Three G Corp. v. Daddis*,
   714 P.2d 1333 (Colo. App. 1986)....................................................................... 27

*Van Schaack v. Phipps*,
   558 P.2d 581 (Colo. App. 1976) ......................................................................... 30

*Williams v. Stirling*,
   40 Colo. App. 463 P.2d 290 (1978) .................................................................... 26

*Wong v. Tenneco*,
   39 Cal 3d 126 (Cal. 1985)................................................................................... 32

**Other Authorities**

11 U.S.C.S. § 502(b)................................................................................................. 21

11 U.S.C.S. §502 ................................................................................................ 23

11 U.S.C.S. §553(a) ........................................................................................... 21

11 U.S.C.S. §558 .......................................................................................... 19, 21

**Rules**

C.R.C.P. 102(a) .................................................................................................. 14

USCS Bankruptcy R 9019 ................................................................................. 23

**Treatises**

Restatement (Second) of Torts
    § 901 cmt. a (1979) .................................................................................. 36, 37

# I.     JURISDICTIONAL STATEMENT

This Court has jurisdiction over the instant appeal. Timely notice of appeal was filed pursuant to Fed. R. P. 8002(a) on April 9, 2024, from the Order Granting Joint Motion to Approve Settlement Agreement entered by the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") on March 28, 2024. (*See App'x at 2291.*) The appeal is from a final order as required by 28 U.S.C. § 158(a)(1). Finally, no party has filed a valid election to have the appeal heard by the District Court. *See* 28 U.S.C. § 158(c); Fed. R. Bankr. P. 8001(e).

# II.     STATEMENT OF ISSUES

1.     Whether the Court abused its discretion in approving the settlement of the Creditors' bankruptcy claims without considering the setoff to which the debtor was entitled and before resolving the claim objections?

2.     Whether the Court abused its discretion in approving the settlement of the State Court litigation and incorrectly applied the *Kopexa* factors, specifically, the probable success of the underlying litigation on the merits, in approving the settlement agreement.

3.     Whether the Bankruptcy Court erred in failing to consider the fairness of the settlement agreement to the debtor and the estate.

# III.     STANDARD OF REVIEW

"The decision of the bankruptcy court approving a settlement 'may be disturbed only when it achieves an unjust result amounting to a clear abuse of discretion.'" *Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (quoting *Reiss v. Hagmann,* 881 F.2d 890, 892 (10th Cir. 1989)). The Bankruptcy Court's conclusions of law are reviewed *de novo. Id*.

# IV.     STATEMENT OF THE CASE

This dispute arose from a failed development project in Mexico. Creditors Timothy Flaherty and Timothy Kneen ("Promoters") created a venture in 2007 to develop beach-front villas

in Mexico. Debtor, Michael Roberts, Sr. ("Roberts") was the largest investor in the project. The parties formed PdC, LLC ("PdC") as the investment vehicle.

PdC is a Colorado limited liability company. Mexico's Constitution prohibits foreign companies from owning certain beach front property. *See Brady v. Brown*, 51 F.3d 810, 814 (9th Cir. 1995). PdC therefore formed Riviera Country Club S. De R.L. de C.V. ("RCC"), a Mexican entity, to own the lands purchased in Mexico. As Mexican law requires, "RCC's Articles of Incorporation (Acta Constitutiva) state that its foreign shareholders (PdC and PdC II) are to be considered as Mexican nationals, subject themselves to Mexican law and the jurisdiction of Mexican courts and relinquish their right to invoke the laws of their home country and its jurisdiction." PdC agreed to resolve disputes involving the rights and property of RCC in the Courts of Mexico and not to seek the protections of its home country. (*See Hearing Exhibit A – RCC Articles of Incorporation, App'x 911.*)

Promoters raised $18 million for the project. Promoters lacked the knowledge and experience to undertake real estate development. They also had no prior experience with development in Mexico.

The Promoters acquired a parcel of beach front property in Mexico in 2008, but after four years of attempting to develop the property, they learned that the project they designed violated density restrictions and could not be built.

The Promoters attempted to expand the project to a hotel in 2012 by borrowing an additional $12 million at high interest rates, including loans from the Debtor. RCC purchased two adjacent beach-front properties in Mexico[1] which had additional debt and which were being foreclosed upon by Spanish hotelier Hoteles Turisticos Unidos, S.A.[2]

---

[1] The parties refer to these properties as the "Mustapha Parcels" based upon the first name of the seller.
[2] Which the parties refer to as "Hotusa"

Again, the Promoters failed to develop the properties. The project ran out of money in 2014. At the time the $12 million borrowed had become $17 million of debt. (*See Hearing Exhibit M – Mezzanine and RM Funding Loans, App'x 1048.*) In 2015, the promoters admitted their failure and attempted to liquidate the three properties owned by RCC. (*See Hearing Exhibit N – 2015 Investor Letter, App'x 1053.*) They were unsuccessful at liquidation as well.

By the end of 2016, the project had failed. There was no business plan other than to sell the three properties. If RCC did not pay $5.5 million to Hotusa by year's end, the two Mustapha Parcels would be lost to foreclosure. (*See Hearing Exhibit S – Dec. 2, 2015, Email from Kneen to Flaherty, App'x 1065.*) It is undisputed that in December 2016, RCC did not have the money to pay Hotusa. (*See Hearing Exhibit Q – Oct. 3, 2016, Email from Kneen to Flaherty, App'x 1065.*) In the fall of 2016, the Promoters admitted that they refused to loan additional money to RCC and if the properties were not sold, they would be lost. (*See Hearing Exhibit Q – Oct.3, 2016 Email from Kneen to Galbreath, App'x 1061.*)

In December 2016, the largest expression of interest the Promoters could obtain was $15 million for the three RCC properties and an adjacent beach house owned separately by the Promoters and Roberts. (*See Hearing Exhibit R – Dec. 2, 2015, Email from Vertuca to Kneen, App'x 1063.*) In the hearing in the Bankruptcy Court, Carl Vertuca, the Chief Financial Officer of PdC admitted that PdC had more than $31 million of debt. (*Nov. 30, 2023, Hearing Transcript, 37:1-9, App'x 2592.*) A $15 million sale would have returned nothing to PdC or its investors. (*April 22, 2022, Hearing Transcript, 92:16-19, App'x at 2003.*) PdC's only asset was its interest in the Mexican development project. Regardless of a sale of the properties by RCC, PdC would receive nothing.

9

On December 16, 2016, Roberts paid $5.5 million to Hotusa and obtained an assignment of the lien. Promoters have accused Roberts of defrauding them and secretly stealing the Hotusa lien. They have argued that Flaherty was ready and willing to pay Hotusa. However, it is also undisputed that the promoters knew by December 21, 2016, that Roberts had obtained an assignment of the lien and that he intended to complete the foreclosure. (*Nov. 30, 2023, Hearing Transcript, App'x 2650. See also Hearing Exhibit R - December 21, 2016, messages, App'x 1071.*) If RCC were able to repay Hotusa, it could have repaid the lien between December 16 and December 31, 2016, by paying Roberts, the assignee of the lien. However, the Promoters never funded the payment for the Hotusa lien and RCC did not have the money to pay Roberts and retire the lien.

Promoters caused RCC to sue Roberts in Mexico claiming fraud and attempting to invalidate the assignment of the Hotusa lien to Roberts without repaying him.

The Courts of Mexico found in favor of Roberts and against RCC in its claims to set aside the assignment of the Hotusa lien. Roberts' lien position was affirmed in the Mexican courts. After losing several actions in Mexico, the Promoters brought claims against Roberts in the Denver District Court. Apparently in recognition of the jurisdictional infirmity of any claims of RCC, the Promoters brought cross claims in 2018 by PdC, falsely alleging that PdC owned the Mexican properties.

In January 2019, the Denver Court enjoined Roberts from completing the foreclosure upon the two additional parcels which were subject to the Hotusa lien. Roberts complied with the injunction and did not complete the foreclosure.

After obtaining the injunction in the Denver Court, the Promoters continued their litigation in Mexico to invalidate the assignment of the Hotusa lien to Roberts, filing their brief for RCC in

a federal appeal. When Roberts filed an opposition brief responding to the appellate brief of RCC, Promoters moved to hold Roberts in contempt for violating the injunction. In their motion they alleged that Roberts was attempting to complete the foreclosure. (*See Hearing Exhibit PP – Motion for Issuance of Contempt Citation, App'x 2201.*) They did not inform the Court that Roberts was responding to their appellate brief which sought to invalidate the Hotusa assignment. The State Court wrongfully found Roberts in contempt for violating the injunction.

In the Order of Contempt on January 6, 2020, at the urging of Promoters, the Court went far beyond the requirements of the injunction. The Court ordered Roberts who had won the litigation in Mexico, to surrender the property, reverse the decisions of the Mexican Courts, and stop participating in all actions in Mexico spawned by the litigation pursued unsuccessfully by RCC. This was all done without a trial in the Denver action and it required actions in the Mexican Courts that could not be accomplished.

In its Order of Contempt, the State Court fined Roberts $1,000 per day until he complied with these Orders. The Court further held that pending compliance, Roberts would be confined to jail.

Also in January 2020, the Denver Court scheduled a bifurcated trial. The first part of trial was confined to corporate governance. The Court sought to decide who could speak for RCC and PdC based upon its governing documents and the agreements of the parties. The second part of trial would consider the claims and defenses of the parties and the third part would consider damages. (*See Hearing Exhibit MM - Transcript of Governance Trial, App'x 1229:1-6.*)

On June 19, 2020, the Court issued its decision on the corporate governance phase of the trial. Within its findings, the Court also found that Roberts had breached his fiduciary duty to PdC, without the benefit of a trial on liability.

On August 18, 2020, Promoters moved for an ex-parte temporary restraining order to prevent Roberts from disposing of his assets. Within the motion, Promoters made allegations that Roberts was taking his assets and family to Poland and requested a Writ of Attachment. These allegations were made up and only verified by the Affidavit of Promoter's counsel on information and belief. Still, the State Court ex parte ordered the issuance of a Writ of Attachment on August 28, 2020. The Court also ordered that Roberts not dispose of his assets, which was beyond the jurisdiction of the State Court.

No Writ of Attachment ever issued and there was no levy so there was no attachment lien. *See* C.R.C.P 102(a) and *Crisman v. Dorsey*, 21 P. 920, 924 (Colo. 1889) ("It is well settled that no lien is created by the issuance of the attachment writ; that such lien can only be created by a valid levy. It is not the writ, but the levy of the writ by the actual seizure of the property, which constitutes the attachment.") The claim in Bankruptcy Court that PdC was a secured creditor due to the attachment lien was fabricated.

When Promoters brought their claims against Roberts in the Denver Court, the parties became embroiled in a dispute concerning document disclosures. Roberts provided few documents. Timothy Flaherty provided none. In January 2020, at the deposition of Roberts' administrative assistant, and pursuant to subpoena duces tecum, six boxes of Roberts' documents representing 1,100 documents and 9,500 pages were produced to Promoters. (*See Hearing Exhibit KK – Photo of Document Production*, *App'x 1206.*) Promoters' counsel acknowledged receiving the documents. (*See Hearing Exhibit MM - Transcript of Governance Trial, App'x 1229:15-18.*)

In June 2020, five months later, Promoters moved for discovery sanctions, contending that Roberts only produced 26 documents. (*See Hearing Exhibit BBB, Motion for Sanctions, App'x 2281.*) This allegation was also fabricated because the Promoters admitted the receipt of six boxes

of documents. Still, the State Court imposed the strictest civil sanctions striking Roberts' defenses and cross claims. As a result, in addition to not having a trial on liability, Roberts was denied the right to plead or present any defenses.

In August 2021 the Denver Court jailed Roberts for not purging his contempt. Essentially, Roberts was jailed for not surrendering his $5.5 million lien to Promoters for no consideration. The Court did agree to free Roberts several weeks later, but re-incarcerated him in January 2022 for not surrendering his lien in Mexico. Roberts remained in jail six weeks later when the Court scheduled a damages hearing.

Although any proceeds of a $15 million sale of all four properties in December 2016 would have paid only a small portion of project debt, the State Court awarded PdC a judgment in excess of $21 million, plus attorney's fees. The judgment was entered in violation of Roberts' due process rights, without trial, without the opportunity to present defenses, without jurisdiction, in violation of res judicata, without standing, without recoverable damages, and in disregard of the admission of PdC that it owes Roberts more than Roberts owes to PdC.

In the Bankruptcy Court, Roberts filed an objection to the claim of PdC based upon the issues identified above. The Bankruptcy Court was about to set the claim objection for hearing when PdC and the Trustee filed their Motion to Approve their Settlement Agreement.

In the Settlement Agreement the United States Trustee agreed to allow PdC an unsecured claim in the amount of $19 million, notwithstanding that PdC admitted at the hearing on the Settlement Agreement that it owes the debtor $24,975,845.69. (*See Hearing Exhibit TT – Roberts Project Loans, App'x 1538.*)

In the Settlement Agreement, the United States Trustee surrendered the appeal of the State Court judgment against the Debtor, even though there had been no trial on liability, jurisdiction

was exclusively invested in the Courts of Mexico, PdC as shareholder of RCC lacked standing to bring claims, the claims were barred by *res judicata*, and the State Court erroneously awarded damages based upon the unencumbered value of the Mustapha Parcels even though RCC had no equity in the properties or the Mexican project.

In the Settlement Agreement, the United States Trustee abandoned the above-referenced loans made by the Debtor to PdC for the Mexican development, which by the time of the hearing in November 2023, amounted to $24,975,845.69.

The allowed claim in the Settlement Agreement was entered without hearing Debtor's claim objection.

## V.    SUMMARY OF THE ARGUMENT

The *Kopexa* factors are applied to help the Bankruptcy Court determine if a proposed settlement agreement is fair to the estate. The Bankruptcy Court applied the *Kopexa* factors and determined that the State Court appellate rights were of negligible value and that the settlement agreement was fair to the estate.

PdC admitted in the hearing in Bankruptcy Court that it owed the Debtor $24,975,845.69 which was more than the $22 million claim of PdC in the Bankruptcy Court. Thus, the ultimate question in the hearing on the Settlement Agreement was whether it was fair to the estate to allow PdC a $19 million claim against the assets of the estate even though PdC admitted that it owes the Debtor almost $25 million?

In applying the *Kopexa* factors, the Bankruptcy Court found that State Court appellate rights were negligible despite the denial of Roberts' due process rights, the lack of a trial on liability, the jurisdiction of the Mexican Courts, and the un-tried defenses of comity, standing, res judicata, and set off, any of which would be a complete defense to the claim of PdC. If a State

Court appeal did reach the question of damages, the judgment would be overturned on that issue alone. Awarding $21 million in damages where RCC had no equity in the Mustapha Parcels and the proceeds of a sale would have gone to pay a small portion of the project debt is also reversible error.

The conclusion of the Bankruptcy Court that the State Court appellate rights were negligible was erroneous. The conclusion that a $19 million allowed claim was in the best interests of the estate because it terminated on-going litigation was also erroneous. The approval of the settlement agreement based upon these erroneous conclusions was an abuse of the discretion.

## VI.     ARGUMENT

A court may approve a compromise or settlement proposed by the bankruptcy trustee "only when it is 'fair and equitable.'" *In re AWECO, Inc.*, 725 F.2d at 298, *citing Protective Committee v. Anderson*, 390 U.S. 414 (1968). In analyzing a proposed settlement, a bankruptcy court considers the "*Kopexa*" factors:

> (1) the probable success of the underlying litigation on the merits;
> (2) possible problems in collecting a judgment;
> (3) the expense and complexity of the litigation; and
> (4) the interests of creditors in deference to their reasonable views.

*In re DVR, LLC*, 6060 B.R. 80 (D. Colo. 2019) (citing *In Re Kopexa Realty Venture Co.*, 213 B.R. 2010 (10th Cir. BAP 1997).)

"The duty of an appellate court, then, in reviewing a District Court's approval of a compromise, is to assure that this compromise is truly "fair and equitable" and "in the best interest of the estate." *In re Jackson Brewing Co*, 624 F.2d 599, 602 (5th Cir. 1980) *citing TMT Trailer*, 390 U.S. 414, 424 (1968). The B.A.P. reviews the Bankruptcy Court's decision approving the settlement agreement for an abuse of discretion. *Reiss*, 881 F.2d at 891-92. "If a court approves a

settlement … absent reasonable assurance that the settlement accords with the fair and equitable standard, that court has abused its discretion." *In re AWECO, Inc.*, 725 F.2d at 298.

The appellate court "review[s] matters of law de novo," and defers to Bankruptcy Court's factual findings unless clearly erroneous, remaining mindful that "the Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor." *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1248 (10th Cir. 2008) (quotations omitted).

Here, the trustee proposed a global settlement of two matters: (1) the Promoters and PdC's claims in the bankruptcy estate and (2) the underlying state court litigation. The Bankruptcy Court's analysis of both settlements was fundamentally flawed.

In approving the settlement of the creditor's claims, the court ignored the undisputed fact that PdC owes Roberts *more* than Roberts owes PdC. (*See* § VII(A), *infra*.) The Court failed to articulate how ignoring a $24 million setoff while accepting a $19 million claim was "fundamentally fair" to the estate.

In approving the settlement of the state court litigation, the Bankruptcy Court disregarded significant legal issues with the underlying judgment. The court failed to consider the possibility that Roberts would prevail on his appeal of the state court judgment. (§ VII(B), *infra*.) The appeal involves fundamental errors that implicate (1) due process, (2) the trial court's failure to hold a trial on liability, (3) jurisdiction, (4) res judicata, and (5) Claimants' inability to prove damages. The Bankruptcy Court acknowledged that its analysis was swayed by allegations of Roberts past "misconduct." (*See Bankruptcy Court Order, entered March 28, 2024, App'x 2291 at 2306.*) However, those actions did not represent misconduct of the Debtor as much as overly aggressive, fallacious, devious, toxic litigation tactics of the Promoters. When the truth is uncovered that Roberts did not violate the Court's injunction, was not moving to Poland, did produce 1100 documents, and did not usurp a corporate opportunity, the fabrications of the Promoters are simply

not relevant to how an appellate court would address the legal issues on appeal which would be reviewed *de novo*.

Ultimately, the Bankruptcy Court abused its discretion in approving both settlements. The Bankruptcy Court did exactly the opposite of its mandate—approving a fundamentally *unfair* settlement. The Court approved the compromise without adequate factual findings and without an objective evaluation of the facts and law on these issues. The Bankruptcy Court order must be reversed.

### A.    The Court Abused its Discretion in Approving the Settlement of the Creditors' Bankruptcy Claims

### 1.    <u>The Settlement Forfeited Roberts Substantial Setoff</u>

The settlement proposed by the trustee and approved by the court allowed PdC's $19 million claim and forfeited Roberts' $24,975,845.69 setoff under 11 U.S.C.S. §558. On its face, this settlement is fundamentally flawed and requires reversal.

Setoff is a well-established right, deeply rooted in bankruptcy law, providing a mechanism to balance mutual debts between parties, ensuring equity and fairness in the administration of bankruptcy estates. The Supreme Court in *Studley v. Boylston Nat'l Bank*, 229 U.S. 523 (1913), emphasized that setoff is not a discretionary rule but a fundamental right that cannot be taken away by construction because of the possibility that it may be abused.

The equitable nature of setoff is designed to prevent unjust enrichment and ensure that all parties receive fair treatment. "The rule allowing setoff, both before and after bankruptcy, is not one that courts are free to ignore when they think application would be "unjust."" *In re Whimsy, Inc.*, 221 B.R. 69 (Bankr. S.D.N.Y 1998). The Court allowed PdC to receive $19 million from the bankruptcy estate, while ignoring the $25 million it owed to the Appellant. This not only contradicts the principle of mutual debts but also unjustly enriches PdC at the expense of other

creditors and the estate. The Court in *In re ADI Liquidation, Inc.*, 2015 Bankr. LEXIS 1611 (Bankr. Del. 2015), highlighted that setoff does not erode the value of claims but rather balances them, ensuring equitable treatment.

The Bankruptcy Court refused to apply the admitted setoff to the claim of PdC. This was plain error. "Section 558 of the Bankruptcy Code also preserves for the benefit of the estate any right to setoff the debtor may have. This includes setoff rights which the debtor possessed pre-petition, even if they are not specifically pleaded." *In re Westchester Structures, Inc.*, 181 B.R. 730 (Bankr. S.D.N.Y. 1995)

In the case at hand, the testimony from PdC's Chief Financial Officer, Carl Vertuca, clearly indicates that PdC owes the Appellant $24,975,845.69, exceeding the $22 million judgment claim filed against the bankruptcy estate. (*See Nov. 30, 2023, Hearing Transcript, App'x 2595.*) The testimony of the CFO was recognized by the Court in its summary of testimony.[3] This situation perfectly aligns with the principles outlined in *Citizens Bank v. Strumpf*, 516 U.S. 16 (1995), "[t]he right of setoff (also called "offset") allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528, 57 L. Ed. 1313, 33 S. Ct. 806 (1913). 11 U.S.C.S. §553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." This principle is further supported by §558 of the Bankruptcy Code, which preserves the debtor's right to effectuate setoffs as recognized under state law, reinforcing that the estate is entitled to the same defenses the debtor had prepetition.

---

[3] although the Court referred to the debt as arising from the investment of the Debtor. The CFO and Hearing Exhibit TT he was testifying from were clear that the amounts owing to the Debtor arose from project loans to PdC made by the Debtor, not capital investments.

18

The set off against the claim of PdC was argued in the Debtor's claim objection. (*See Hearing Exhibit F, App'x 1009.*) It was argued in the Debtor's objection to the Joint Motion to approve the Settlement Agreement. (*See Hearing Exhibit C, App'x 958 at 960.*) At the hearing the set off was admitted by PdC. The careful analysis of the Bankruptcy Court over 19 pages omitted any mention of the set off defense, which would entirely extinguish the claim of PdC. It is unknown if the Court considered the defense. It is unknown whether the Court rejected it and if so for what reason.

The set off for admitted project loans made to PdC by the Debtor, which exceed the amount of PdC's claim is a crucial issue and was completely ignored by the Court in favor of a 10-page dissertation of how the Debtor was made to suffer in the State Court from the abusive litigation tactics of PdC and the Promoters.

Ignoring an issue of crucial importance like the admission of PdC—that PdC owes Roberts more than Roberts owes PdC—is an abuse of discretion and grounds alone to reverse the Bankruptcy Court's Order.

## 2. The Court Failed to Resolve the Claim Objections Prior to Approving the Settlement

Moreover, the Bankruptcy Court's approval of the Rule 9019 settlement without a proper adjudication of the Appellant's setoff defense contravenes the statutory mandate of 11 U.S.C.S. § 502(b), which requires the court to determine the amount and validity of claims. Logically, any settlement of a claim which is subject to a claim objection must have the claim objection determined.

*Hamon v. DVR, LLC (In re DVR, LLC)*, 606 B.R. 80 (D.Colo. 2019), holds that a Bankruptcy Court did not violate the rights of a Debtor in approving a settlement agreement without determining claim objections. However, even the District Court in *Hamon* recognized that

19

the trustee's settlement power is subject to the statutory requirement to adjudicate claim objections, ensuring that creditors do not receive undue windfalls to the detriment of the estate.

In *Hamon*, the District Court examined the facts and circumstances and concluded that no error had occurred in not resolving claim objections. In the present case, by contrast, the creditor admits owing the debtor and thus the estate more than the creditor claims to be owed. Yet, in its Order, the Court made no comment concerning the claim of setoff nor was any analysis of the defense performed. As a result, the court's failure to address the Appellant's valid setoff defense, the uncontradicted evidence supporting it, and the other un-tried defenses in the State Court constitutes an abuse of discretion and undermines the fairness and equity the bankruptcy process aims to uphold.

Here, the surrounding circumstances show manifest error in refusing to hear the Debtor's claim objections.

Although the Court heard and recorded in its Order the admission of PdC that it owes the Debtor $24,975,845.69, the Court made no findings concerning the Debtor and the Estate's right of setoff. (*See Bankruptcy Court Order, entered March 28, 2024, App'x 2306.*) The Court approved the analysis of Trustee's expert, but as to setoff, the Trustee's expert only observed that it had not been pleaded and thus could not be raised on appeal. However, as the expert also observed, the defense was precluded by the sanction order. Notwithstanding that the sanction order was falsely procured and thus invalid, these protestations were meaningless in the context of the claim objection.

The defense of setoff was properly pleaded in the Debtor's objection to the claim of PdC. It was also properly pleaded in the Debtor's objection to the settlement agreement. The set off of

amounts so great as to eliminate the claim of PdC must be considered in the context of the Debtor's claim objection.

Similarly, the Trustee's expert opined that res judicata could not be considered because it was not properly pleaded in the State Court when the Court struck defenses and thus the Debtor would have been unlikely to prevail on appeal. However, *res judicata* was properly pleaded in the Debtor's claim objection. Like set off, *res judicata* provides a complete defense against the claim of PdC. This is a $19 million issue for the estate. The defense of *res judicata* should have been considered in the context of the Debtor's claim objection.

The Bankruptcy Court's ruling to approve the Rule 9019 settlement without proper adjudication of Appellant's right to setoff or *res judicata* is a clear misapplication of bankruptcy law and principles of equity. The right to setoff, deeply embedded in the fabric of bankruptcy jurisprudence, mandates that mutual debts be balanced to prevent unjust outcomes. *Res judicata* prevents multiple litigation and promotes finality. As the District Court recognized in *Hamon*, the right to have claim objections determined is statutory, the approval of a settlement agreement is procedural.

The Appellant's objection under 11 U.S.C.S. §502 should have been duly considered, and the substantial evidence supporting the setoff and *res judicata* would have led to a different outcome. The approval of the settlement without addressing these defenses constitutes an abuse of discretion. The Settlement Agreement cannot be approved if PdC does not have a $22 million claim. The Bankruptcy Court's decision must be reversed and the cause remanded to hear Debtor's claim objection to ensure fairness and justice in the administration of the bankruptcy estate.

**B.**     **The Court Abused its Discretion in Approving the Settlement of the State Court Litigation**

The Bankruptcy Court summarily dismissed the first *Kopexa* factor in approving settlement of the State Court litigation. In a single page, it dispensed with the myriad of State Court errors that can and should be addressed on appeal. (*Bankruptcy Court Order, entered March 28, 2024, App'x 2291 at 2306*.) It appears that the Bankruptcy Court adopted the Trustee's argument that "there is a direct correlation between the absence of [Roberts'] credibility and the likelihood of achieving success" on appeal. (*Id*.) However, none of the appellate issues rely on Roberts' "credibility" or depend on an appellate court excusing his alleged "litigation misconduct."

The appeal involves fundamental errors that implicate (1) due process, (2) the trial court's failure to hold a trial on liability, (3) jurisdiction, (4) res judicata, and (5) Claimants' inability to prove damages. These issues implicate basic notions of fair play and justice. The Bankruptcy Court's failure to acknowledge or address these issues resulted in its approval of a fundamentally unfair settlement. Specifically, the Court approved a $19 million claim in favor of a creditor whose corporate opportunity was not usurped, who suffered no damages, who litigated its dispute in Court and lost, and whose greatest achievement was the litigation dirty tricks played upon the Debtor. The unfair settlement should be reversed.

**1.**     **The State Court Denied Roberts his Due Process Rights.**

Roberts was denied Due Process under both the Fifth and Fourteenth Amendments of the U.S. Const. and Article II, Sec. 25 of the Colorado Constitution in State Court. In State Court, the cumulative effect of the several orders of the State Court denying Roberts of notice and a right to be heard and preventing Roberts from defending himself against the claims asserted by the Promoters, deprived Roberts of his property without Due Process of law and prevented a fair adjudication of his rights.

The State Court found Roberts breached his fiduciary duties without conducting a trial on liability, in violation of Roberts' Due Process rights. The State Court noticed and scheduled a bifurcated trial. The first portion of the trial was devoted to the issue of corporate governance. (*See Hearing Exhibit H, App'x 1023.*) Thereafter, the claims of the parties would be tried, followed by a trial on damages. Prior to the corporate governance trial, the trial court had issued a warrant for Roberts' arrest. Roberts desired to attend the trial and moved to stay the warrant. (*See Hearing Exhibit I, App'x 1024.*) The trial court refused, threatening Roberts with arrest and immediate sentencing if he attended the trial in person. (*See Hearing Exhibit J, App'x 1027.*) Roberts could not participate in the trial, while his adversaries were permitted to attend and testify.

In State Court, the trial was bifurcated, and the purpose of the initial trial was to determine the issue of corporate governance. During the bifurcated corporate governance trial, the State Court reminded the parties that the purpose of the hearing was to determine corporate governance only and insisted that evidence be restricted accordingly. (*See Hearing Exhibit MM, App'x 1229:2-6.*) ("Court: …in my mind governance just meant what document controls, what are the basic rules, and then we would be getting in – into issues of performance, and lack of performance and breaches of duties at a second, at a, at a different hearing."). During Roberts' presentation, the State Court cautioned "[w]e're talking governance issues at this point…so let's not get too far astray." (*Id. 1484:10-14; see also 1531:5-1534:7*) (counsel confirming Court should decide "who governs RCC, who governs PdC" and the powers of the managers versus the owners under the RCC and PdC bylaws after the hearing).

After the corporate governance trial however, the State Court found that Roberts breached his fiduciary duties. (*See Hearing Memorandum Exhibit GG – Findings of Fact and Conclusions of Law, App'x 1157 at 1229:2-6.*) The State Court violated Roberts's Due Process rights by determining Roberts's liability which was beyond the scope of the bifurcated trial.

23

During the Bankruptcy Court hearing, Carolyn Fairless, the Appellee's expert, confirmed that the trial court cautioned the parties not to go beyond the issues of corporate governance. (*See Nov. 29, 2023, Hearing Transcript 2332 at 2514*.) However, the Bankruptcy Court did not address Roberts' argument regarding Due Process. As with the defense of set off, the record contains no findings concerning the violation of Roberts' due process rights.

Notice and the meaningful opportunity to be heard "are prerequisite to due process in civil proceedings" *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 164 (1951); *Feeney v. Colo. Ltd. Gaming Control Comm'n*, 890 P.2d 173, 174 (Colo. App. 1994). It is well settled that due process requires that a litigant receive a full and fair trial on every issue raised. *See Skaggs v. Otis Elevator Co.*, 164 F.3d 511 (10th Cir. 1998). This ensures fairness and protection from an arbitrary or mistaken deprivation of property. *First Bank v. State, Dep't of Regulatory Agencies, Div. of Banking*, 852 P.2d 1345, 1351 (Colo. App. 1993) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)).

Where a court provides the parties with notice that a hearing will be limited to certain issues, it violates the parties' due process rights where it subsequently determines other issues. *Dupont v. Southern Nat'l Bank of Houston, Inc.*, 771 F.2d 874 (5th Cir. 1985) (by determining the issue of property ownership after only hearing evidence on the validity and irrevocability of the trusts, the trial court effectively denied the defendant the opportunity to litigate the separate ownership issue).

Where, as here, Roberts could not attend the trial and his counsel was cautioned at trial not to present evidence beyond governance, a final order based on different grounds or different reasoning denies the defendant due process of the law. *Id.; see also In re Petition of First Interstate Bank, N.A.*, 767 P.2d 792, 797 (Colo. App. 1988)("Notice of probate proceedings must adequately inform interested parties of the issues that may be decided. A final order exceeding the bounds of

24

the notice given violates due process.") (internal citations omitted); *Carter v. Moorehouse Parish School Board*, 441 F.2d 380, 382 (5th Cir. 1971). ("Had appellants known the real basis of the court's proposed ruling, they might well (would undoubtedly) have chosen to offer evidence in rebuttal. A ruling based on evidence which a party has not been allowed to confront or rebut is one which denies due process."); *In re Endrex Invest., Inc.*, 111 B.R. 939, 944 (D. Colo. 1990).

"A judgment may be void, and not merely erroneous…[where] the procedure used to enter the judgment violated due process rights. Thus, if a judgment is entered without sufficient notice to the defendant, such judgment offends against due process, and it must be vacated upon request." *Don J. Best Trust v. Cherry Creek Nat'l Bank*, 792 P.2d 302, 303 (Colo. App. 1990) (internal cites omitted). The State Court's failure to do so suggests that Roberts would succeed on the merits in a State Court appeal.

However, the Bankruptcy Court made no findings of the due process deprivation in the State Court, except to ensure that Roberts received due process in the Bankruptcy Court. The recognition of the Bankruptcy Court of the crucial importance of due process in our system of justice does not substitute for the glaring lack of due process in entering a $21 million judgment against a party without a trial.

The lack of findings of the Bankruptcy Court on the glaring denial of due process in the State Court precludes any meaningful appeal of that issue. The failure of due process alone would have been substantial grounds to reverse the judgment of the State Court on appeal and yet the Bankruptcy Court made no findings on this issue while concluding that the appellate rights were of negligible value. The Court abused its discretion in finding that the probability of success on the merits was negligible without making findings on the significant issue of the due process violations by the State Court. This alone requires reversal of the Order of the Bankruptcy Court.

### 2.    Roberts Could Not Have Breached a Fiduciary Duty

The failure to hold a trial on liability was not merely a procedural error. The breach of fiduciary duty claim was premised upon the allegation that Roberts usurped a corporate opportunity by acquiring a lien upon the property of RCC and seeking to foreclose upon the property. However, the assignment of the lien did not hinder or prevent RCC from satisfying its obligations. As a matter of law, Roberts could not have usurped a corporate opportunity.

By the end of 2016, the project to build villas on a Mexican beach had failed. No one has asserted that Roberts caused or had anything to do with the failure. The promoters commenced a project which they lacked the knowledge and experience to complete. Roberts had $3 million invested in the project and had made $5.2 million in loans. He had watched for eight years as the promoters squandered the money of the investors and lenders, drowning the project in debt, and ultimately facing the loss of the two Mustapha Parcels to foreclosure. On December 16, 2016, Roberts paid $5.5 million to Hotusa and acquired an assignment of the lien being foreclosed.

The promoters assert a breach of fiduciary duty charging that Roberts usurped the opportunity of RCC to pay the Hotusa lien and save the properties from foreclosure. However, obtaining an assignment of the lien could not prevent RCC from paying the debt and discharging the lien. In fact, RCC remained obligated to do so.

A corporate officer has a duty to refrain from purchasing property for himself if such purchase hinders or defeats the corporation's legitimate business plans and purposes. *Collie v. Becknell,* 762 P.2d 727, 730 (Colo. App. 1988), citing *Carper v. Frost Oil Co.*, 72 Colo. 345, 211 P. 370 (1922) and *Williams v. Stirling*, 40 Colo. App. 463, 583 P.2d 290 (1978). Roberts' assignment did not impact RCC's ability to pay the lien. If the promoters had the money as they now claim, there was no impediment to repaying the lien. Since RCC retained the power and obligation to satisfy the lien, no opportunity could have been usurped as a matter of law.

The simple truth is that RCC lacked the ability to pay the Hotusa lien, which is why it hadn't paid it by December 2016. The law is clear in Colorado that a director does not breach his fiduciary duties by acquiring an asset that the corporation is financially unable or unwilling to acquire. *Three G Corp. v. Daddis*, 714 P.2d 1333, 1336 (Colo. App. 1986). "Where the corporation is unable to avail itself of the business opportunity, there can be no usurpation of a corporate opportunity." *Begert*, *supra* (quotation omitted); *see also Bator v. Mines Development, Inc.*, 32 Colo. App. 320, 513 P.2d 220 (1973) ("…A corporation cannot be said to have an actual or expected interest in an asset or property when it does not have the financial capability to purchase it."); *Collie v. Becknell*, 762 P.2d 727, 729 (Colo. App. 1988) (same).

RCC had no money to pay the Hotusa lien and the story invented for litigation that Flaherty would have loaned the money to pay it is belied by the fact that he had the opportunity to do so and didn't. The Promoters knew by December 21, 2016, that Roberts had taken an assignment of the lien and intended to foreclose. (*See Hearing Exhibit U, App'x 1071.*) If as they claim, Flaherty was willing and able to loan RCC the money to pay the lien, he had 10 days to do so, but he didn't.

If there had been a trial on liability in the State Court, there could not have been a valid finding of usurping a corporate opportunity. An assignment of the lien did not preclude its payment by RCC. The lack of a trial on liability and the failure of the claim of usurping a corporate opportunity as a matter of law render the judgment entered thereon subject to reversal on appeal.

The Bankruptcy Court made no findings about an appeal of the judgment based upon usurping a corporate opportunity. It is impossible to determine on appeal whether the Bankruptcy Court discounted this argument and if so, why. It was manifest error for the Bankruptcy Court to ignore the erroneous conclusion of the State Court that a corporate opportunity was usurped where the corporation retained the right and obligation to discharge the lien. The failure to consider or

27

make findings on this issue is an abuse of discretion and requires reversal of the Bankruptcy Court's Order.

### 3.     The State Court Lacked Jurisdiction to Hear the Case

The State Court lacked jurisdiction to hear and decide the underlying case. This can and should be addressed on appeal.

First, the Promoters and RCC's shareholders do not have standing to bring RCC's claims. Without standing, the State Court is without jurisdiction to hear the case. *Durdin v. Cheyenne Mount. Bank,* 98 P.3d 899,902 (Colo. App. 2004).

Second, RCC is a Mexican entity; it owns Mexican property; it (and its shareholders) agreed to be treated as Mexican nationals expressly subject to the jurisdiction of the Mexican courts. Principles of comity hold that injunctions precluding foreign litigation should be "granted only with care and great restraint." *In re Icenhower*, 398 B.R. 902, 911 (S.D. Cal. 2008) (citing *Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Information Techs., Inc.,* 369 F.3d 645, 652 (2d Cir. 2004); *see also Sun World, Inc. v. Lizaru Olivarria*, 804 F. Supp. 1264 (E.D. Cal. 1992) (recognizing the "serious implications" which necessarily accompany the issuance of a foreign antisuit injunction) (citing *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981)).

Again, neither of these threshold issues have anything to do with Roberts' credibility or alleged litigation misconduct. The Bankruptcy Court ignored the standing issue entirely. Far from giving the comity analysis the "care and great restraint" required, the Bankruptcy Court dispensed with the issue in two paragraphs. (*See Bankruptcy Court Order, entered March 28, 2024, App'x 2291 at 2329.*) Disregarding these significant appellate issues in approving the settlement agreement was an abuse of discretion.

28

### a) Standing

PdC is a member of RCC. The claim for usurping the "opportunity" to pay the Hotusa lien belongs to RCC, not PdC. The "proper entities to complain are the LLCs that directly suffered harm, not its member owners, who only indirectly suffered harm." *Taylor v. Moskow,* 2014 U.S. Dist. LEXIS 77272,*11-12, 2014 WL 2573990. It is the company that must bring suit as opposed to the members. *See A.R.A. Mfg. Co. v. Cohen,* 654 P.2d 857, 860 (Colo. 1982).

Where the allegations of the complaint show that the loss, if any, was to all shareholders alike, the right to sue belongs to the corporation and may be brought by individual shareholders only as a derivative action. *Buechner v. Rouse*, 538 P.2d 117, 120 (Colo. Ct. App. 1975).

PdC, may not maintain these claims. PdC suffered no direct harm from the usurpation of RCC's corporate opportunity or from the loss of RCC's real property. A member may only assert a direct claim where the member has suffered injuries separate and distinct from the injury to the limited liability company. *Kim v. Grover C. Coors Trust,* 179 P.3d 86, 89-90 (Colo.App.2007).

In State Court, PdC moved to dismiss the claims of the Plaintiff. PdC recognized the principles described above and wrote in its motion to dismiss:

> The majority of Lang's claims for fraud, securities misrepresentations and omissions, and unjust enrichment must be dismissed pursuant to C.R.C.P. 12(b)(1) because Lang lacks standing to assert these claims, which are derivative claims that belong to the company. *See Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004) (holding that for a court to have jurisdiction, "the plaintiff 36577602.1 - 5 – must have standing to bring the case"); *Durdin v. Cheyenne Mount. Bank*, 98 P.3d 899,902 (Colo. Ct. App. 2004) ("Standing is a jurisdictional prerequisite that requires a named plaintiff to bring suit only to protect a cognizable interest.").

> Colorado's limited liability statute defines a derivative suit as a suit by a member "in the right of a domestic limited liability company." C.R.S. § 7-80-713. In applying this definition, one looks to "(1) who suffered the alleged harm, and (2) who would receive the benefit of any remedy." *Young v. Bush*, 277 P.3d 916, 930 (Colo. Ct. App. 2012). Thus, a claim is not derivative only where the plaintiff "has suffered injuries separate and distinct from the injury to the LLC or the other members." *Id*. This rule prevents members from asserting claims where they are only indirectly harmed by the decreased value of their membership interest, and

also prevents a multiplicity of suits by the various members. *See Nicholson v. Ash*, 800 P.2d 1352, 1356 (Colo. Ct. App. 1990) (applying this reasoning to the derivative action rule applicable to corporations, which applies the same test as that applied to the LLC statute).

Similarly, PdC cannot bring claims against Roberts because those claims belong to RCC. It is undisputed that PdC's only connection to the actions complained of are as a member of RCC No allegation of harm unique to the members is alleged. No damage separate and distinct from the damage to RCC is alleged.

No compliance with Rule 23.1 or with Article 80 of Title 7 of the Colorado Statutes is alleged. "Where it is obvious from the face of the complaint that the requisite demand upon shareholders was not made and no explanation for the lack of demand is offered, an action by the stockholder will not lie." *Van Schaack v. Phipps*, 558 P.2d 581, 585 (Colo. App. 1976).

These claims belong to RCC. PdC has no standing to assert them. Accordingly, the State Court had no jurisdiction to hear them. *Durdin v. Cheyenne Mount. Bank*, 98 P.3d 899,902 (Colo. App. 2004).

The Trustee's expert provided no independent analysis of the harm alleged to RCC versus PdC; she simply recited the State Court's flawed analysis that "appeared to have concluded PdC and RCC were one and the same" (*see Fairless Report, p. 50; App'x at 1617.*) She then concluded that because the trial court (wrongly) glossed over the standing issue, it was unlikely that Roberts could successfully challenge this analysis on appeal. (*Id.*) At the hearing, the Trustee's expert acknowledged that a member needed to have particularized harm to have standing. (*See Nov. 29, 2023, Hearing Transcript 141:18-21, App'x at 2472.*) The Trustee's expert agreed that standing is jurisdictional. (*See Fairless Report p. 49 n.27; App'x at 1616.*) Nonetheless she found that there was a low probability of success in pursuing an appeal on this issue. (*Id. at 1617.*)

To summarize, the Denver District Court failed to understand or address the legal relationships between the parties and "impliedly" held that PdC had standing to bring RCC's claims. (*Fairless Report p. 49; App'x at 1616*.) The Trustee's expert concluded that there was little likelihood of success on appeal *because* the trial court concluded that PdC had standing to bring RCC's claims. (*Id. at 1617*.)

The logic appears to be that because the trial court got it wrong, the appellate court would get it wrong too. The purpose of appeal is to address errors in the trial court. Evaluating the potential success of an appeal based on the flawed reasoning of a trial court means no appeal would ever be likely to succeed. This tautology would completely eviscerate the first *Kopexa* factor.

The Bankruptcy Court didn't bother to address whether PdC had standing to bring RCC's claims. It offered no analysis, and therefore no opinion on the likelihood of success on this issue. This requires reversal. *See Dean v. Burman (In re Dean)*, No. C05-2149P, 2006 U.S. Dist. LEXIS 50910, at *1 (W.D. Wash. July 25, 2006) (abuse of discretion to approve settlement agreement where the Bankruptcy Court "completely ignore[d] a nonfrivolous objection to a proposed settlement" based on pending state court appeal); *Kopexa*, 213 B.R. at 1023 (lack of findings required reversal of approval of compromise).

### b) Comity

As required by Mexican law, the RCC Articles of Incorporation included what is known as a "Calvo Clause." The Calvo Clause provides that the owners of a Mexican company shall be treated as Mexican nationals with respect to: (1) The property, rights, concessions, membership certificates or interests owned by the company; and (2) The rights and obligations deriving from the contracts to which the company is a party and not to invoke the protection of foreign countries. (*See Hearing Exhibit A – RCC Articles of Incorporation, App'x 941*.) As a result, disputes

involving a Mexican entity and its property are committed exclusively to the Courts of Mexico.

*See In re Icenhower*, 398 B.R. 902, 914 n. 29 (Bankr. S.D. Cal. 2008).

> Since 1917, Mexico's Constitution has expressly prohibited alien ownership or control of Mexico's land or waters. This restriction represents that country's abiding commitment to the preservation and management of scarce resources for the benefit of the Mexican people, a commitment fostered by a sobering history of exploitation of the land, and its people, by foreign interests.
>
> Mexico's statutory law governing foreign investment contains ownership limitations similar to those expressed in its Constitution. However, neither the Constitution nor the statute wholly preclude foreign investment in Mexico's resources. Foreigners who agree to respect the autonomy and ultimate authority of the Mexican government may acquire ownership interests in many of the country's natural resources.

*Wong v. Tenneco*, 39 Cal 3d 126, 134 (Cal. 1985).

Courts in this country defer to the jurisdiction of the Mexican Courts through the doctrine of comity. *See Brady, supra* 51 F. 3d at 816 (The doctrine of comity is based on "respect for the sovereignty of other states or countries," and under it "the forum state will generally apply the substantive law of a foreign sovereign to causes of action which arise there.") Comity is the vehicle by which Courts of the United States decline to decide disputes involving the sovereign jurisdiction of other countries. *Brady, supra. See also Kismet Acquisition, LLC v. Icenhower (In Re Icenhower)*, 398 B.R. 902, 914 n. 31 ("'Comity' summarizes in a brief word a complex and elusive concept -- it is the degree of deference that a domestic forum must pay to the act of a foreign government not otherwise binding on the forum." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 995 (9th Cir. 2006) (citing *Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 235 U.S. App. D.C. 207 (D.C. Cir. 1984)).

PdC *expressly agreed* to "be treated as [a] Mexican national[] with respect to...the interests owned by the company" and to "not invoke the protection of foreign countries…" in the Calvo Clause of its Operating Agreement.[4]

Despite this, the Bankruptcy Court said it would be "absurd" for PdC to bring claims against RCC before Mexican courts. (App'x 2307.) Citing a case from 1895, the Bankruptcy Court observed that "comity is a discretionary doctrine." (Order, App'x at 2307 (citing *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895).) However, the discretion is not without limits. Comity is grounded in respect for the sovereignty of foreign countries and their jurisdiction.

The fact that PdC is a Colorado entity, and that Debtor is a Colorado resident misses the point. (*See Bankruptcy Court Judgment, App'x 2290 at 2307* ("PdC, a Colorado entity, operates under the laws of Colorado.").) PdC agreed *not* to be a Colorado citizen for the purposes of its investment in RCC. The dispute here involves a Mexican entity, RCC, and a claim that Debtor usurped an opportunity belonging to RCC to repay a Mexican lien encumbering Mexican property. The law involved is the law of Mexico, not Colorado and jurisdiction by the operation of the CalvoClause is *exclusively* vested in the Courts of Mexico. (*See App'x at 912*.) Comity requires that disputes involving RCC and its rights pertaining to property in Mexico be determined and resolved by the Courts of Mexico.

### 4.     RCC's Claims were Barred by Res Judicata

In 2017 and 2018, RCC litigated the alleged fraud of Debtor in purchasing an assignment of the Hotusa lien in Mexico. RCC claimed (1) that the power of attorney which facilitated the transfer was beyond the power of Debtor and was void; (2) that it was the proper owner of the

---

[4]The Trustee's expert claimed this was simply a forum selection clause that could be waived. (*See Hearing Exhibit GG, App'x 912*.) However, Ms. Fairless acknowledged that she is not an expert on Mexican law and had never heard of a Calvo clause before the instant assignment. (*See 11/29/23 Hearing 113:25-119:12, App'x at 2444-50*.)

Hotusa lien; (3) that the payment to Hotusa terminated the lien rights; and (4) that Debtor acted beyond his authority as a manager of RCC. The claims of RCC were litigated in Mexican State Court in Cancun. From the decision of the Cancun Court, several appeals were taken and a collateral attack was filed in the appellate court by RCC. In addition, RCC filed several federal appeals in Mexico, as recounted in Hearing Exhibit X, Writ of Direct Amparo (App'x 1075) in the Mexican Federal Courts.

The claims of RCC in multiple Mexican Courts were fully and fairly litigated. Roberts prevailed in all of the Mexican litigation. He was determined not to have committed fraud in issuing a power of attorney or in sending an attorney to Court to verify the settlement agreement with Hotusa. Roberts was determined to have acquired the Hotusa lien validly and was determined to be the owner and entitled to complete the foreclosure. Clearly. the substance of the dispute between RCC and Roberts was litigated to conclusion in Mexico.

Res judicata ensures that multiple litigation will not be heard once the subject matter of a dispute between the parties has been fully and finally litigated between the parties. *See In re Marriage of Seewald*, 22 P.3d 580, 583 (Colo.App. 2001). Res Judicata bars not only the issues actually litigated but also any issues which might have been raised in the prior proceedings. *See Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo.1999). Res Judicata bars claims of the parties and their privies. *Id*. PdC, Kneen and Flaherty are in privity with RCC and their claims are also barred by res judicata.

There is no dispute that the claims of RCC against Roberts for buying an assignment of the Hotusa lien and acting fraudulently in acquiring it were heard and rejected by the Courts of Mexico. There is no dispute that the legal actions in Mexico were pursued to finality. However, the Bankruptcy Court opined that *res judicata* bars only the the identical claim previously litigated.

This is a clear error of law. Further, the Bankruptcy Court opined that res judicata requires notice to PdC and makes an undocumented finding that no notice was given. However, the principals of RCC were also the principals of PdC so PdC had knowledge and notice of the Mexican proceedings. Further, PdC is in privity with RCC and is bound by the Mexican judgment just as RCC is. *Id.*

The misapplication of the principles of *res judicata* is an error and to base the ruling of the Court on an error in law is an abuse of discretion. *Res judicata* serves to eliminate exactly what happened in the State Court in this case. This dispute was fully litigated in Mexico and the promoters, not liking the result re-litigated the dispute in Denver State Court and received a completely different result. *Res judicata* is a complete bar to the claim of PdC. The erroneous legal analysis of the Bankruptcy Court was an abuse of discretion and requires reversal of the Bankruptcy Court's Order.

### 5.     The Promoters Failed to Show Damages

The promoters obtained damages in the State Court based upon the unencumbered value of the properties subject to the Hotusa lien. The goal in compensating a property owner is to reimburse the owner for the actual loss suffered and to put an injured person "in a position as nearly as possible equivalent to his position prior to the tort." *Board of County Com'rs of Weld County v. Slovek*, 723 P.2d 1309, 1314 (Colo. 1986) (citing Restatement (Second) of Torts § 901 cmt. a (1979)); *see also Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 (Colo. 1994) ("a trial court's award of damages will be set aside if it creates an economic windfall disproportionate to the plaintiffs injury"). The purpose of compensatory damages is to make a party whole, as they were pre-loss, not to make them better off. *See Seaward Const. Co., Inc. v. Bradley*, 817 P.2d 971, 976 (Colo. 1991).

In December 2014, RCC owned three properties. For two years the promoters marketed the three properties together with an adjacent beach house. In December 2016, after two years of attempting to sell the four properties, the promoters produced 5 offers to purchase. The largest purchase price for the four properties was $15 million. However, the promoters owed more than $31 million in project debt. (*See Hearing Exhibit SS, App'x 1537; See also Nov. 30, 2023, Hearing Transcript, App'x 2556 at 2592:1-9.*) The Court recognized this testimony in the Order at page 8. Further Mr. Vertuca testified that from the sale of the four properties, PdC would have retained nothing after paying a portion of its debt. The Promoters had no equity in the properties. Having no equity, the Promoters suffered no damage from the loss of the Mustapha Parcels.

A plaintiff with no equity interest in real property cannot recover damages for the loss of that property. *See Jones v. Wells Fargo Bank, N.A.*, Civil Action No. 13-cv-02210-MSK-KLM7, 2014 U.S. Dist. LEXIS 110560, at *35 (D. Colo. July 1, 2014) (citing Restatement (Second) of Torts § 901 cmt. a) (declining to award damages where party had no equity in underlying property as doing so would "do much more than place Plaintiff in a position 'equivalent to his position prior to the tort.'"); *See also Hooper v. Musolino*, 234 Va. 558, 570, 364 S.E.2d 207, 213 (1988) ("Because the partnership had no equity in the property, it lost nothing in the foreclosure. Accordingly, we will reverse that portion of the decree that awarded the partnership damages for the unencumbered value of parcel A."); *St. Paul at Chase Corp v Manufacturers Life Ins Co.,* 262 Md. 192, 241-244; 278 A.2d 12 (1971) (breaching party's refusal to finance entitled property owner to recover for loss of equity, but because owner had no equity it could recover no damages for loss of building); *Nouri v. Mortg. Lender Servs.*, No. B236415, 2012 Cal. App. Unpub. LEXIS 7915, at *18 (Oct. 30, 2012) ("plaintiffs' [allege] that they were damaged by respondents' conduct because they lost their equity in the property. There simply was no equity to lose. Therefore,

plaintiffs' claims for damages properly were dismissed."); *Hutson v. Am. Home Mortg. Servicing*, No. C 09-1951 PJH, 2009 U.S. Dist. LEXIS 96764, at *29 (N.D. Cal. Oct. 16, 2009) ("If the value of the house did not exceed the amount of all secured claims, plaintiffs lost no equity and thus suffered no damages as a result of the sale.")

No sale of the Mustapha Property in 2016 would have fully repaid the project debt PdC had incurred. PdC and RCC had no equity in the properties. A sale of the properties would have produced no payment to PdC's investors. The inability to sell the Mustapha Property in 2016 caused no damages to RCC or to PdC. By awarding the unencumbered value of the properties, the State Court put PdC in a better position than it would have had if it had been able to sell the properties. The damage award by the State Court created an economic windfall and would have been reversed on appeal.

The Bankruptcy Court appreciated the testimony of Carl Vertuca, the CFO of PdC, who testified that as of December 2016, PdC had more than $31 million in debt from the Mexican development project. (*See Hearing Exhibit SS – Sereno Project Debt, App'x 1537; November 30 Hearing Transcript 36:24-38:12, App'x 2591-93* .) However, the Court did not discuss the insolvent project or the admitted fact that from a $15 million sale, PdC would have obtained nothing from the proceeds.

The Bankruptcy Court declined to discuss one of the crucial points in a State Court appeal: how can a party who had no equity in a project receive damages in excess of $21 million from the alleged interference with that project, when the project was in liquidation and there was no business plan other than to sell the over-encumbered property?[5]

---

[5] The Trustee's expert did address damages, but like the State Court, she was confused referring to the debt from the Mexican development project as "other debt". The admitted truth is that the debt was all from the development project and the amounts owing to the Debtor were for loans made for the project. PdC would have received nothing from a

The conclusion of the Bankruptcy Court that State Court appellate rights were negligible was erroneous where there was no trial on liability and damages were improperly assessed without considering project debt.

### C.     The Bankruptcy Court erred in failing to consider the fairness of the settlement agreement to the debtor and the estate.

Based largely upon the asserted misconduct of the Debtor in State Court, the Bankruptcy Court was willing to overlook the significant reversible errors which resulted in an unjustified $21 million judgment against the Debtor. However, the record is clear that 1) the alleged misconduct of the Debtor was in reality fallacious, devious litigation tactics by the Promoters; 2) the Debtor did not usurp a business opportunity, had no trial on liability, caused no damage and is owed more than PdC claims to be owed in the Estate; and 3) the defenses of comity, res judicata, standing and due process have never been litigated and each represents a complete defense to the claim of PdC.

Whereas, the Trustee's expert opines that some of the defenses could be challenged on a pleading standard, all defenses were improperly struck, so none could be asserted. Moreover, in the Debtor's claim objection, the defenses would have to be litigated.

"If a court approves a settlement … absent reasonable assurance that the settlement accords with the fair and equitable standard, that court has abused its discretion." *In re AWECO, Inc.*, 725 F.2d at 298.

The Settlement Agreement completely fails the comparison with a fair and equitable standard:

---

sale of the properties in 2016 because the project was insolvent. In the State Court, PdC received a $21 million windfall.

It provides PdC with an allowed $19 million claim even though PdC admits that the Mexican development project was insolvent and that after sale of the project properties, PdC would have received nothing. PdC is placed in a better position than if no tort had occurred.

It disregards the debt of PdC to the Debtor which exceeds the amounts PdC claims to be owed.

It surrenders State Court appellate rights including:

a.  due process violations based upon the failure to hold a trial on liability,

b.  comity based upon the jurisdiction of the dispute surrounding the Hotusa lien being exclusively committed to the Courts of Mexico,

c.  *res judicata* based upon full and fair litigation of the disputes of the parties in Mexico,

d.  standing based upon PdC being a shareholder of RCC, the party allegedly wronged by the actions of the Debtor, and

e.  no opportunity could have been usurped because the assignment of a lien did not preclude its payment.

Beyond the legal errors of the State Court, is the fundamental unfairness of allowing the Promoters a $19 million windfall. The Promoters attempted to develop for 8 years and did nothing more than lose everyone's money. They failed to deliver the promised villas and when they learned that they had mistakenly invested the money of the investors, they decided to multiply their problems by expanding the project, borrowing additional funds, drowning the project in debt, again failing to develop as promised and ultimately liquidating the project with no hope of any return.

In these circumstances, a $19 million allowed claim is not merely unfair to the Estate and the Debtor[6] it is an affront to justice.

---

[6] Disallowing the claim of PdC would make the Estate solvent.

## VII.    CONCLUSION

For the above reasons, the Debtor prays that this Panel will reverse the Order of the Bankruptcy Court.

Respectfully submitted this 6th day of June 2024.

> PODOLL & PODOLL, P.C.
> 5619 DTC Parkway, Suite 1100
> Greenwood Village, CO 80111
> Telephone: 303.861.4000
> Telecopier: 303.861.4004
>
> By: _/s/ Robert C. Podoll_
>     Robert C. Podoll
>     Atty. Reg. #8775
>     rob@podoll.net

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on June 6, 2024, upon all parties entitled to notice through the Courts CM/ECF filing system.

_/s/ Robert C. Podoll_

## CERTIFICATE OF COMPLIANCE

The Debtor certifies that this Motion complies with Federal Rules of Bankruptcy Procedure 8015(h) and U.S. BAP of the 10th Circuit Local Rule 8015(h). It contains 10,765 words.

_/s/ Robert C. Podoll_