# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

| | |
|---|---|
| In re:  MICHAEL J. ROBERTS, SR., <br><br>     Debtor. | |
| MICHAEL J. ROBERTS, SR, <br><br>        Appellant, <br><br> v. <br><br> HARVEY SENDER, CH 7 TRUSTEE, <br> PDC, LLC, <br> TIMOTHY FLAHERTY, <br> TIMOTHY KNEEN, and <br> RIVERA COUNTRY CLUB, S. DE R.L. <br> C.V.S, <br><br>        Appellees. | BAP No. CO – 24-9 <br> Bankr. Case No. 22-10521 <br> Chapter 7 |

Appeal from the United States Bankruptcy Court
for the District of Colorado, Judge Joseph G. Rosania

## APPELLEES' APPENDIX

LEWIS ROCA ROTHGERBER CHRISTIE LLP
Chad S. Caby
1601 19th Street, Ste. 1000
Denver, CO 80202
(303) 623-9000
ccaby@lewisroca.com

*Attorneys for Appellees PDC, LLC, Timothy Flaherty, Timothy Kneen, and Rivera Country Club S. De R.L. C.V.S.*

*-and-*

ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.
Michael T. Gilbert
Jennifer E. Schlatter
Brenton L. Gragg
1600 Stout Street, Suite 1900
Denver, CO 80202
Tel: (303) 534-4499
Email: mgilbert@allen-vellone.com

*Attorneys for Harvey Sender, Trustee*

125369164.1

# TABLE OF CONTENTS

**Bankruptcy Docket No. 22-10521 JGR**

| Docket No. | Document Title | Page No. |
|---|---|---|
| 176 | Adversary case 22-01163. Complaint by Timothy Flaherty, Timothy Kneen, Riviera Country Club S. DE R.L., de C.V., PdC, LLC, PdC, II, LLC, TMTBC, LLC, Desarrollos Turisticos Riviera Xpu-Ha, A. DE C.V.S. against Michael Joseph Roberts Sr. | Aple.Appx. 01-23 |
| 294 | Order Converting Chapter 11 Case to Chapter 7 (related document: 149 Motion to Convert Case From Chapter 11 to Chapter 7). Harvey Sender terminated from the case | Aple.Appx. 24-36 |
| 296 | Judgment (related document: 294 Order on Motion to Convert Case to Chapter 7) | Aple.Appx. 37 |
| 396 | Report of Sale Filed by Michael T Gilbert on behalf of Harvey Sender. (Attachment: #l Exhibit 1) | Aple.Appx. 38-44 |
| 538 | Report of Sale Filed by Michael T Gilbert on behalf of Harvey Sender. (Attachments: #1 Exhibit 1) | Aple.Appx. 45-54 |
| 654 | Report of Sale Filed by Michael T Gilbert on behalf of Harvey Sender. (Attachments: #1 Exhibit 1) | Aple.Appx. 55-59 |
| 707 | Report of Sale Filed by Michael T Gilbert on behalf of Harvey Sender. (Attachments: #l Exhibit 1) | Aple.Appx. 60-66 |

| Docket No. | Document Title | Page No. |
|---|---|---|
| 736 | Copy from US District Court: ORDER The bankruptcy courts Order Converting Chapter 11 Case to Chapter 7 (Doc. 1-1) and associated Judgment (Doc. 1-2) are AFFIRMED, and Mr. Roberts' appeal is DENIED. SO ORDERED by Judge Daniel D. Domenico on 12/1/2023. (related document: 308 Notice of Appeal and Statement of Election) | Aple.Appx. 67-77 |
| 775 | Auctioneer Report of Sale Filed by Dickensheet, Christine | Aple.Appx. 78-82 |
| 792 | Order Denying Motion For Stay (related document(s):784 Motion To Stay Pending Appeal) | Aple.Appx. 83-85 |

## TRIAL EXHIBITS

| Exhibit No. | Exhibit Description | Page No. |
|---|---|---|
| 7 | Cross Claim and Third-Party Complaint filed by PdC Creditors in *Richard Lang v. Flaherty, et al.,* Case No. 2015cv031828 | Aple.Appx. 86-105 |
| 8 | Transcript Excerpt for Hearing on Preliminary Injunction in *Richard Lang, et al. v. Timothy Flaherty, et al.*, Case No. 2015CV31828 | Aple.Appx. 106-166 |
| 11 | Transcript Excerpt of Contempt Hearing in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 167-225 |
| 12 | Order re: Contempt Citation Issued to Michael J. Roberts, Sr. in *Richard Lang v.* | Aple.Appx. 226-229 |

| Exhibit No. | Exhibit Description | Page No. |
|---|---|---|
| | *Flaherty, et al.*, Case No. 2015cv031828 | |
| 13 | Findings of Fact and Conclusions of Law in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 230-243 |
| 22 | Order Denying Motion to Declare Orders Void as Violating Roberts' Constitutional Due Process Rights in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 244-258 |
| 23 | Order Denying Motion to Vacate Breach of Fiduciary Duty Finding and to Vacate December 21-22, 2020 Damages Hearing in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 259-271 |
| 24 | Order Denying Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon Court Pursuant to C.R.C.P. 60(b) in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 272-287 |
| 25 | Order Denying Motion to Vacate Orders Based Upon Lack of Subject Matter Jurisdiction in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 288-296 |
| 26 | Order Denying Motion for Judgment on the Pleadings in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 297-312 |
| 31 | Transcript Excerpt of Hearing on | Aple.Appx. 313-381 |

| Exhibit No. | Exhibit Description | Page No. |
|---|---|---|
| | Contempt in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | |
| 32 | Order re: August 6, 2021 Hearing on Contempt in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 382-395 |
| 34 | Order re: July 23, 2021 Hearing on Traverses of August 20, 2020 Writ of Attachment in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 396-417 |
| 42 | Order Regarding April 20 & 22, 2022 Hearing on Damages in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 418-449 |
| 43 | Order Regarding Reasonableness and Necessity of Attorneys' Fees Includable in Damages Award in *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 450-466 |
| 45 | Order (Status Hearing) in *Richard Lang v. Flaherty, et al.,* Case No. 2015cv031828 | Aple.Appx. 467-468 |
| 50 | Register of Actions and Party Information for *Richard Lang v. Flaherty, et al.*, Case No. 2015cv031828 | Aple.Appx. 469-534 |
| 65 | Expert Report of Stanley L. Garnett (attorney fees) | Aple.Appx. 535-552 |
| 68 | Rebuttal Expert Report of Carolyn Fairless | Aple.Appx. 553-559 |

## MISCELLANEOUS

| Description | Page No. |
|---|---|
| Claims Registry from Bankruptcy Case No. 22-10521 JGR 2024.07.03 | Aple.Appx. 560-566 |

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MICHAEL JOSEPH ROBERTS, SR., | ) | Case No. 22-10521 JGR |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |
| TIMOTHY FLAHERTY, TIMOTHY | ) | |
| KNEEN, RIVIERA COUNTRY | ) | |
| CLUB S. DE R.L., de C.V.; PdC, LLC; | ) | |
| PdC, II, LLC; TMTBC, LLC; | ) | |
| DESARROLLOS TURISTICOS RIVIERA | ) | |
| XPU-HA, A. DE C.V.S., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adv. Proc. No. 22-____-JGR |
| v. | ) | |
| | ) | |
| MICHAEL JOSEPH ROBERTS, SR., | ) | |
| | ) | |
| Defendant. | ) | |

---

### COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
### UNDER 11 U.S.C. § 523(a) OF THE BANKRUPTCY CODE

---

Creditors Timothy Flaherty ("**Flaherty**"), Timothy Kneen ("**Kneen**"), PdC, LLC ("**PdC**"),

PdC II, LLC ("**PdC II**") Riviera Country Club, S. de R.L. de C.V. ("**RCC**"), TMTBC, LLC

("**TMTBC**") and Desarrollos Turisticos Riviera Xpu-Ha, A. de C.V.S. ("**Xpu-Ha**"), (herein

referred to collectively as "**Claimants**" or by their individual designation where appropriate) by

and through their attorneys, bring this Complaint to Determine Dischargeability of Debt Under

Section 523(a) of the Bankruptcy Code against Debtor Michael Roberts ("**Roberts**"), and state as

follows:

Aple.Appx. 01

## PARTIES AND JURISDICTION

1.    Plaintiff Flaherty is an individual and a creditor of Roberts.

2.    Plaintiff Kneen is an individual and a creditor of Roberts.

3.    Plaintiff PdC is a Colorado limited liability company and a creditor of the Roberts. At all times relevant to this Complaint, Flaherty, Kneen and Roberts served as the only managers of PdC.

4.    Plaintiff RCC is a Mexican limited liability company whose principal office is located in Quintana Roo, Mexico, and a creditor of Roberts. Kneen, Flaherty and Roberts were the initial managers of RCC. RCC was a wholly owned subsidiary of PdC (99.999%) and its subsidiary PdC II (.0001%). Unless relevant, references in this complaint to PdC include its 99.999% subsidiary RCC and its wholly owned subsidiary PdC II. RCC is a creditor of Roberts.

5.    Plaintiff TMTBC is a Colorado limited liability company and a creditor of Roberts. TMTBC was formed for purposes of forming Xpu-Ha, a Mexican entity that would hold real estate in Mexico.

6.    Roberts is the debtor in the above-captioned Chapter 11 bankruptcy proceeding.

7.    This Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(a) and (b). This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I), as it is a proceeding to determine dischargeability of particular debts. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL ALLEGATIONS

### *Acquisition of the Sereno Project*

8.    Flaherty, Kneen, and Roberts formed PdC on or about July 25, 2007. PdC was

formed for the purpose of developing a luxury beachfront resort near Playa del Carmen in Mexico (the "**Sereno Project**").

9.     Roberts became a member and manager of PdC through a personal LLC called Michael J. Roberts, LLC.  Roberts was the sole agent of Michael J. Roberts LLC and all actions relevant to this Complaint were undertaken by Roberts.

10.     On November 16, 2007, PdC purchased the Initial Property through its subsidiary



RCC.  The Initial Property was a strip of land extending to a beach on the Caribbean Sea south of Cancun near Xpu Ha Mexico.  It is shown in green on a map incorporated below. The Initial property was acquired by PdC to be developed and managed for the benefit of its members.

11.     On November 23, 2007  Kneen, Flaherty, and Roberts, through a  Colorado LLC named TMTBC, purchased a Beach House that was located about 150 meters from the Initial Property. The Beach House was to be renovated and used, among other things, as a sales office

**Aple.Appx. 03**

and place for interested purchasers and investors to stay when visiting the Initial Property. The Beach House is shown in purple on the map at paragraph 10, above.

12.     After the Beach House renovation, PdC used it as a marketing tool and allowed potential villa purchasers to stay in it. This marketing strategy was very effective, and by 2009 approximately 25 deposits had been placed on villas before the construction of the villas commenced.  At all times, Roberts was involved in the decision to utilize the Beach House for marketing purposes. Kneen, Flaherty and Roberts were also permitted to stay at the Beach House if they paid a fee.  Roberts often used the Beach House, and sometimes for month-long visits. However, he did not pay the required fee when he stayed.

13.     In February 2012 PdC, through its subsidiary RCC, purchased an adjacent parcel of real estate (shown in paragraph 10 above in blue and yellow) from an individual named Mustapha Bouzid Mohamed Arab (the "**Mustapha Property**") in order to expand the project and create lower densities. The Mustapha Property was for sale for approximately $11.5 million. Flaherty, Kneen, and other Mezzanine lenders contributed funds to PdC and RCC for the purchase of the property.

14.     The Mustapha Property was subject to a loan and lien held by Hoteles Turisticos Unidos, S.A. ("**Hotusa**"), a Spanish hotel group.  RCC received title to the property subject to the lien in favor of Hotusa. This structure was similar to any conventional purchase where a buyer elects to keep existing funding in place and assume it rather than take out a new loan.  Here, the Hotusa loan could be paid off or negotiated.  Because the PdC managers believed that there were potential infirmities in Hotusa's lien they worked to negotiate a settlement of Hotusa's lien for less than the face amount which would have also benefitted PdC.

Aple.Appx. 04

15.     From late 2011 to early 2012, PdC, with full disclosure of the difficulties encountered to that point by the project, raised money for the purchase of the Mustapha Property and other costs relating to the revised development plan. PdC did this through a mezzanine round of financing that included direct loans and loans through an entity known as RM Funding. Through various methods of funding Flaherty contributed an additional sum of approximately $3.4 million, Kneen contributed an additional $2.1 million. Roberts contributed an additional $4.7 million. Four others contributed $1.675 million in the aggregate. Roberts was a manager of RM Funding.

16.     In the acquisition of the Mustapha Property, PdC and RCC worked with Benjamin C. Rosen ("**Rosen**"), an attorney, to organize the purchase and sale agreement for the Mustapha property.

17.     Upon the acquisition of the Mustapha Property, the parties attempted to seek and obtain a construction loan for the project. The purpose of the loan was to fund the amounts needed to pay the Hotusa loan, clear the Hotusa lien and pay for development of the now combined project consisting of the Initial Property and the Mustapha Property. The Beach House was to remain an asset of TMTBC.

18.     Despite their best efforts, and in the long aftermath of the 2008 financial crisis, and after having spent seven years of effort in getting the Sereno Project off the ground, Flaherty and Kneen were unable to obtain a construction loan. Due to the lack of financing necessary to develop the property, PdC decided in early 2014 to sell all of the property it had obtained and to use the sale proceeds to repay its lenders and investors.

19.     PdC hired Eric Littler ("**Littler**"), a luxury real estate advisor with extensive experience in beachfront real estate in Playa del Carmen, Mexico. Littler and PdC then decided

Aple.Appx. 05

they needed the help of a real estate company that had greater international sales experience and hired CBRE to help market the properties for sale.

20.     Littler and CBRE co-listed the properties, and received bids from several interested buyers.  Littler attempted to market the Initial Property, the Mustapha Property and the Beach house together to maximize their value (the "**Combined Property**").  In order to complete a sale of the Combined Property, however, Hotusa's lien would need to be resolved.

21.     In November 2015, PdC, with the help of Rosen, negotiated with Hotusa for release of the lien.  Roberts was aware of the negotiations in all material respects, both directly and through his counsel.

22.     On December 2, 2015, PdC, through its subsidiary RCC, entered into a settlement agreement with Hotusa (the "**Settlement Agreement**").  Under the agreement, PdC would pay Hotusa $6.5 million to release the lien on the property.  PdC paid Hotusa $1 million at close, and then had until February 28, 2016 to pay Hotusa the additional $5.5 million.  If PdC failed to do so, Hotusa would not release its lien.  However, PdC could extend the final date of payment by paying a fee.

23.     PdC paid Hotusa for two extensions under the Settlement Agreement, one for $250,000 and the other for $350,000.  Flaherty, Kneen, and Roberts each contributed cash to pay Hotusa for the extensions. The final extension required full payment to Hotusa on or before December 30, 2016.

***Roberts' Fraudulent Scheme***

24.     During the last three quarters of 2016, Flaherty and Kneen worked diligently to find a buyer for the Combined Property.  During this time, Roberts began to express interest in purchasing the property from PdC.  Roberts was disgruntled over the Plaintiffs' decision to

Aple.Appx. 06

monetize the Combined Property and return capital to investors and lenders and instead wanted to develop the property.

25.     On or around March 2016, Roberts' Mexican attorney, Juan Carlos Ramirez Garcia ("**Ramirez**"), asked Rosen if he could retain a complete copy of the file from the Hotusa settlement negotiations.  Ramirez did not tell Rosen why he wanted the copy, but Rosen gave it to him after receiving permission to do so from Flaherty and Kneen.

26.     Roberts approached Littler about possibly buying the property from PdC and developing it himself.  Littler told Kneen and Flaherty about Roberts's interest in buying the property.

27.     During the summer of 2016, Kneen, Flaherty and Rosen understood that Roberts might be interested in developing the property himself. Although during this time, Roberts remained a member and manager of PdC, he refused to consent to offers from potential buyers of the property, and continued to contact Littler regarding his plans to purchase and develop the property. One such offer was for over $21 million for the Combined Property.

28.     In response, on September 29, 2016, PdC and PdC II resolved, by way of a formal minute of the meeting of the members of RCC, to reaffirm the provision in the company documents that all decisions of the Board of Managers of RCC, consisting of Messrs. Kneen, Roberts and Flaherty, require the affirmative vote of at least two out of three managers and that no individual manager could dispose of the company's assets or grant authority to any other party to represent the Company.  Roberts was aware of the limitations on his authority.  He was notified in the presence of a Mexican notary public regarding this limitation and he received these minutes and was thus informed that he did not have the authority to bind RCC by himself or to delegate authority to any third party.

29.     From October to November 2016, Littler helped Roberts with his plans to develop the property.  Littler updated the PdC partners regarding Roberts' development plans.  Littler and the PdC partners understood that Roberts intended to compete with other buyers to purchase the property for himself so that he could develop it.

30.     However, unknown to Flaherty and Kneen, Roberts was not planning on purchasing the property from PdC, but instead hatched a scheme, with the help of Ramirez, to misappropriate the benefit of the Settlement Agreement for himself, acquire Hotusa's right to foreclose under its underlying lien and its rights under the Settlement Agreement, and foreclose on the Mustapha Property for his own benefit to pursue his plans for the Combined Property without having to account to PdC, Flaherty and Kneen, or PdC's investors, members, managers and lenders.  As part of his scheme, Roberts also intended to seize and take control of the Initial Property and the Beach House.

31.     The first step to execute the scheme required Roberts to misappropriate PdC's right to pay Hotusa the agreed upon amount in the Settlement Agreement. That Settlement Agreement was an asset of PdC that had been negotiated over a period of many months at PdC's expense. PdC had already paid $1.6 million in a down payment and for extensions of the Settlement Agreement. In order to misappropriate the benefit of the Settlement Agreement, Roberts, acting alone and through his agents, misrepresented to Hotusa that he had authority to act on behalf of PdC's wholly owned subsidiary, RCC.  In fact, Roberts lacked such authority, knew he lacked such authority; and, even if he had possessed such authority was bound to exercise it for the benefit of RCC.

32.     The second step in the scheme required Roberts to obtain Mexican Court ratification of the Settlement Agreement between Hotusa and RCC.  In order to accomplish this, Roberts first appeared before a Mexican Notary with Ramirez in November 2016 and granted

Aple.Appx. 08

Ramirez Power of Attorney to act for RCC, even though he had no authority to delegate such power. He then instructed Ramirez to use the fraudulent power of attorney, to misrepresent to the Mexican Court that he was authorized to act as attorney in fact for RCC even though he had no such authority and had not disclosed his actions to the managers of PdC.

33.     The third step in the scheme required Roberts, after having pretended to be acting for RCC in obtaining ratification of the Settlement Agreement, to become subrogated to Hotusa's rights under the Settlement Agreement, again using the fraudulent power of attorney, thus effectively conveying to himself Hotusa's right to foreclose.

34.     Fourth, Roberts needed to prevent the remaining Members of PdC from attempting to perform the Settlement Agreement prior to December 30 so that he could step into Hotusa's shoes as the foreclosing party under the Settlement Agreement. In effect, Roberts stole PdC's rights under the Settlement Agreement, and bought Hotusa's rights under the Settlement Agreement. And, then he exercised Hotusa's rights to the detriment of his partners, co-members, and creditors of PdC, all for his personal benefit.

35.     Finally, Roberts needed to physically seize the entire Combined Property, including the Beach House of which he was only a one third owner.

36.     Roberts implemented his scheme in secret without disclosing his intentions to Flaherty and Kneen. He sought to purchase the Hotusa lien without the PdC partners' knowledge or consent. Roberts also made active attempts to conceal his involvement in the scheme. In early December, 2016 Ramirez advised Rosen of an "investor" represented by Elidé María Meriggi Pérez ("**Meriggi**") that was interested in buying out the Hotusa lien. Ramirez did not give Rosen the investor's name, or any other identifying information or indicate that he was acting in concert with Roberts. Nor did Ramirez advise Rosen that Meriggi was acting in concert with Roberts.

Aple.Appx. 09

37.     One week later, Hotusa's lawyer told Rosen that he had received a letter of intent from a buyer represented by Meriggi to buy-out the $5.5 million lien.  According to Hotusa's lawyer, the buyer told Hotusa that he had the authority to act on behalf of RCC.

38.     Rosen told Hotusa not to accept the buyer's offer and that RCC would pay the $5.5 million balance on time.  At this time, Flaherty was prepared to pay the outstanding balance to Hotusa on behalf of PdC.  Rosen and Hotusa's attorney agreed that RCC would pay Hotusa, and then Rosen and the attorney would go together to court to ratify the settlement agreement.

39.     However, when Roberts learned that Flaherty offered to pay Hotusa on behalf of PdC, he objected and offered to pay Hotusa himself.  On December 13, 2016, Kneen, Carl Vertuca ("**Vertuca**")[1] and Roberts met at Roberts' office in Boulder, Colorado to discuss paying Hotusa the remaining balance due under the Settlement Agreement and moving forward with the sale of the Combined Property.  They agreed that Roberts would fund the payment to Hotusa for the benefit of PdC under the Settlement Agreement and in exchange Roberts would get six months to put together a development plan for the property.  If Roberts failed to put together a plan in that time, PdC would sell the property to one of the potential buyers identified by Littler and CBRE and repay Roberts the $5.5 million. The group called Rosen and repeated the agreement to him so that he could prepare documentation.

40.     Roberts knew that, after his meeting with Kneen and Vertuca, the PdC partners were operating under the assumption that they no longer needed to fund the performance under the Settlement Agreement because Roberts was going to fund it on PdC's behalf.  Based on Roberts' assurances, PdC did not continue to seek other sources of funding, while Roberts continued his secret plan to buy the Hotusa lien for his own benefit.

---

[1] Carl Vertuca was an initial investor in PdC.

Aple.Appx. 10

41.     From December 14-16, 2016, Rosen worked on documenting the deal between Roberts and PdC.  However, Roberts stopped returning Kneen and Rosen's calls, texts, and emails. Kneen tried to contact Roberts through Vertuca, but was unsuccessful.  Likewise, Ramirez stopped returning Rosen's communications.

42.     On December 15, 2016, unbeknownst to Kneen, Flaherty or Rosen, Ramirez appeared in a Mexican court with Hotusa's attorney.  On Robert's instructions, Ramirez fraudulently misrepresented to the Mexican court that he was acting as attorney in fact for RCC. He did so by using the fraudulent power of attorney that falsely purported to identify Ramirez as RCC's attorney in fact.  Ramirez obtained the "ratification" of the December 2, 2015 Settlement Agreement.  Ramirez requested recognition as attorney-in-fact for RCC, and the court granted the request without knowing that Ramirez in fact lacked valid authority.  Neither Roberts nor his attorney Ramirez informed Kneen, Flaherty or Rosen that they intended to ratify the settlement, nor did he obtain their consent.  The court ratified the settlement on December 15, 2016.

43.     On December 16, 2016, Roberts, acting through the Michael J. Roberts Trust and Sandstone Ventures LLC (another Roberts alter ego) paid Hotusa $5.5 million.  However, instead of paying the funds on behalf of PdC and releasing the lien in favor of PdC and its investors, lenders and creditors, Roberts purported to acquire Hotusa's lien and to foreclose on it personally. Roberts did not tell PdC or RCC about the payment, nor did he obtain the necessary approval from the PdC managers per the PdC Operating Agreement.

44.     Later that day, Meriggi, as attorney for Roberts, and Ramirez, as the purported attorney for RCC, filed a request in a Mexican court to have Roberts subrogated for Hotusa in the foreclosure action based on the payment of $5.5 million to Hotusa.

Aple.Appx. 11

45. On December 19, 2016, Hotusa's attorney advised Rosen that Sandstone Ventures LLC had paid Hotusa $5.5 million. On that same day, Rosen spoke with Ramirez. Ramirez refused to disclose to Rosen that Roberts had paid Hotusa on his own behalf rather than on behalf of PdC.

46. After learning that Roberts paid Hotusa, Kneen attempted to contact Roberts numerous times, but did not receive a response.

47. The PdC Operating Agreement provides that members and managers can be held liable, among other things, for breaching their duty of loyalty to PdC or its members, or for any transaction from which they receive any improper personal benefit.

48. On December 20, 2016, Roberts was staying at the Beach House. Rosen went to the Beach House to try and speak with Roberts, but was told that Roberts was not there. Later that evening, Rosen and Littler received a notice from the manager of the Beach House, that Roberts had brought in new security, and had instructed all staff not to let Rosen, Littler, or anyone associated with RCC or PdC into the Beach House or on to the Combined Property.

49. On December 21, 2016, Roberts changed the locks on the Beach House and brought in additional security. Robert's additional security included approximately a dozen armed men. The guards were instructed not to permit Rosen or Littler on the property.

50. Littler and Rosen tried numerous times to access the property from late December to February for an explanation, but each time they were denied access by Roberts's security. Kneen also attempted to enter the property in January 2017, but was denied. Kneen and Littler had planned on showing a potential buyer the property in mid-January, but the visit was cancelled after Kneen was denied access to the property.

51. Roberts breached his fiduciary duties to Plaintiffs, took advantage of the confidential, fiduciary relationship he had with Plaintiffs by dissuading them from allowing

**Aple.Appx. 12**

Flaherty to pay Hotusa and convincing them he would pay Hotusa on their behalf, by physically seizing the entire property including the Beach House, by concealing his intentions and efforts to obtain control over the Combined Property, and by attempting to gain control of the Combined Property through his own fraudulent efforts and efforts of others acting in concert with him.

52.     Roberts continues to breach his fiduciary duties by pursuing foreclosure of the Mustapha Property in Mexico based on forged and fraudulent documentation.  Roberts continues to interfere with the orderly management of the Combined Properties and their sale so that the proceeds of sale can be properly applied to the claims of stakeholders in accordance with their relative priorities.

53.     After Flaherty and Kneen learned what Roberts had done, and throughout early 2017, Rosen attempted to stop Roberts' foreclosure efforts in the Mexican courts and eventually, he was able to regain possession of the property for RCC and PdC through the involvement of the Mexican prosecutor's office. Notwithstanding reacquiring physical possession, Roberts continued his campaign in Mexico to foreclose on the property and has, through a series of lawsuits and appeals, prevented PdC from selling or developing the property.  Although Roberts continues to pursue foreclosure in Mexico, there is no litigation pending that includes as an issue whether Roberts has acted rightfully as a member of PdC or has breached his fiduciary duties to PdC, its members, its managers or its lenders.  To the contrary, the Mexican Court has held that that issue must be resolved in a separate proceeding. The rights and obligations of the PdC members and managers, most of whom reside in Colorado, are governed by Colorado law.

54.     Flaherty and Kneen have expended millions of dollars in an effort to preserve the property for the benefit of PdC's members and lenders.  They paid to preserve PdC's rights under the Settlement Agreement to obtain title to the Mustapha Property.  They have paid thousands of

Aple.Appx. 13

dollars each month to maintain development permits.  They have paid expenses associated with marketing the property to find a buyer.  They have offered to include the Beach House in sales structures to enhance the value of the Initial Parcel and the Mustapha Property.  After RCC and PdC regained possession of the property, they hired new security to secure the property from future take-over attempts by Roberts. The security cost Flaherty and Kneen approximately $40,000 a month. They have expended significant amounts in legal fees in Mexico and the Colorado courts to prevent Roberts from misappropriating the Combined Property for his own benefit. They have expended hundreds of thousands of dollars to fund settlement of claims against PdC and defend PdC against litigation, of which Lang's is an example, seeking to establish super priority of certain investors over others.  At all times, Kneen and Flaherty have sought to ensure that the property is well managed, sold in due course, and the proceeds used to pay claims of competing stakeholders in accordance with their lawful priority.

55.     Roberts only gained the ability to obtain Hotusa's lien through (1) his misrepresentations to PdC and his assurances that that he would act on PdC and RCC's behalf in repaying Hotusa, (2) his intentionally false and misleading statements to Hotusa which interfered with RCC's settlement with Hotusa, and (3) his intentionally false and fraudulent misrepresentations to the Mexican court that he and Ramirez were acting on behalf of and with power of attorney from RCC.  PdC's other members were willing and able to repay Hotusa and refrained from doing so only when Roberts assured them that he would do so on PdC and RCC's behalf.  Even if Roberts had not made these affirmative misrepresentations, his duty of loyalty to PdC prevents him from converting PdC's rights under the Settlement Agreement to himself for nothing and repaying Hotusa for his own benefit.

56.     Also, as long as PdC is unable to sell the property due to Roberts's wrongful interference and breaches of his duties to PdC, PdC will need to pay reoccurring fees and expenses associated with the property, such as permitting fees, legal fees, security, staffing, and taxes. Roberts does not contribute to the payment of these costs and expenses.  In short, Roberts' wrongful conduct requires that PdC continue to expend significant resources maintaining the property, which will diminish the potential profits from any sale.

***The State Court Litigation***

57.     Upon learning of Roberts' fraud and breach of fiduciary duty, and after the Mexican courts made it clear that any claims relating to Roberts' fraud and breach of fiduciary duty needed to be brought in a separate action, Claimants commenced an action against Roberts in Denver District Court, Case No. 2015CV31828 (the "**State Court Litigation**") by filing their Cross Claim Complaint. Roberts responded with an answer and counter cross claim complaint, in which he both consented to and invoked the jurisdiction of the Denver District Court. Claimants requested, *inter alia*, a preliminary injunction against Roberts to prevent his further attempts to obtain ownership or control of the Property. The Court (Hon. Kenneth Plotz), after a full day evidentiary hearing, entered its Order Granting Motion to Amend and Motion for Preliminary Injunction dated January 24, 2019 (the "**Preliminary Injunction Order**").

> The Court finds that the Cross-Claimants have demonstrated a substantial likelihood of success on the merits.  The Court also finds that without the issuance of an injunction there is a danger of real, immediate, and irreparable injury that may be prevented by injunctive relief—as Roberts is likely to take assets belonging to PdC through its subsidiary RCC and that if an injunction were not to issue there is [not] a plain, speedy, and adequate remedy at law as the Cross-Claimants and PdC's members may not be able to recover the company's assets.

The Preliminary Injunction Order enjoined Roberts from taking any further action to misappropriate to himself PdC's Property.  However, in violation of the preliminary injunction,

Aple.Appx. 15

Roberts continued his efforts by, among other things, assigning his purported rights to a new shell Mexican entity that would hold title to the Property, pursuing appeals and further litigation in Mexico to establish title to the Property in his name and in the name of his new Mexican entity, and even commencing criminal proceedings claiming that PdC's attorneys in Mexico were impairing his ownership rights by claiming that he had acted wrongfully.

58.     Upon learning of Roberts' ongoing violations of the Preliminary Injunction Order, Claimants filed a motion for contempt.  The Denver District Court (Hon. Eric M. Johnson), after a second full day evidentiary hearing, found Roberts to be in contempt in an Order Re: Contempt Citation issued to Michael J. Roberts, Sr. dated January 6, 2020 (the "**Contempt Order**").  The Contempt Order required Roberts to pay a fine of $1,000 per day and remain jailed until his contempt was purged.  After a lengthy series of review hearings to determine whether Roberts had purged his contempt, and after Roberts' failure to appear for one such hearing,[2] Judge Johnson issued a warrant for Roberts' arrest.  Claimants later learned that at the time he was supposed to appear in the Denver District Court, Roberts was in Mexico furthering his efforts to misappropriate the Property and violating the Preliminary Injunction Order.

59.     Following the finding of contempt, the Denver District Court conducted a trial on the merits on January 24, 2020 as to Roberts' breach of fiduciary duty.  The Court issued its Findings of Fact and Conclusions of Law on June 19, 2020 (the "**Findings and Conclusions**"). The Court found, on the merits, that Roberts had breached his fiduciary duties and that Claimants had not acted wrongfully in any way.  The Court specifically made findings as to Roberts' credibility, noting that Roberts' prior testimony given before the Court was "false." *Id*. ¶ 34.  The Court also found Roberts had secretly schemed to take the Property.

---

[2] Roberts claimed he was ordered to be in Mexico by a court there. In fact, he was in Mexico at his lawyer's offices signing additional documents in violation of the Preliminary Injunction Order.

60.     After entry of the Preliminary Injunction Order and the Findings and Conclusions, it became apparent to Claimants that Roberts had no intention to comply.  Claimants thus sought and were granted an *ex parte* attachment to freeze Roberts' assets and an order to have Roberts taken into custody (the "Writ of Attachment").

61.     Thereafter, the Court also entered a judgment of sanctions striking all Roberts' defenses, striking and dismissing his counter or cross claims, precluding him from introducing evidence that he had failed to produce, and entering default in favor of Claimants on all Claimants' claims for relief.  Roberts was represented by counsel at all times during these proceedings and the trial judge made special efforts to ensure that Roberts could appear at the trial despite the pending contempt order and bench warrant.  Nonetheless Roberts did not appear at any proceeding after late 2019 until the summer of 2021 because he fled to Mexico during this time, where he remained for six (6) months.

62.     Roberts finally returned to the United States with his new counsel to face the Denver District Court.  In August 2021, a third Denver District Court Judge, Hon. Marie A. Moses, set a trial to determine the amount of damages that Claimants had incurred due to Roberts' fraud, breach of fiduciary duty and other torts and breaches (the "Damages Hearing"). In addition, she conducted a hearing to determine whether Roberts had purged his contempt by completing the obligations that had been imposed, to which he had agreed in writing and in open court. After another full day evidentiary hearing (the fourth evidentiary hearing in the case—the previous hearings were the PI Hearing, the trial, and the traverse hearing), Judge Moses remanded Roberts on August 6, 2021 to be incarcerated until he complied with the outstanding orders of the Court and remedied the misappropriation of the Property. In her Order Re: August 6, 2021 Hearing on Contempt dated August 8, 2021 (the "**Purge Order**"), Judge Moses made the following findings:

Aple.Appx. 17

- Roberts' testimony was not credible in many respects. *Id.*, ¶ 12.

- Roberts' testimony that he did not know the meaning of pleadings he had signed for filing in the Mexican court was "without any credibility whatsoever." *Id.*, ¶ 15.

- Roberts "deliberately sabotaged the notarization of the revocation of the power of attorney . . . contrary to the preliminary injunction and Contempt Order." *Id.*, ¶ 16.

- Roberts drafted a withdrawal of his claims in a Mexican court, supposedly in compliance with the Preliminary Injunction Order "in a manner that he knew it would be thrown out by the Mexican court and that it would not have any binding authority." *Id.*, ¶ 17.

- "The Court finds that all of the actions that Roberts has purportedly taken to comply with the preliminary injunction and the Contempt Order have been merely theatrics designed to make it appear that Roberts is complying with court orders." *Id.*, ¶ 19.

- "Roberts has requested a stay of the jail sentence that has been imposed to give him additional time to comply with the purge clauses of the Contempt Order. However, Roberts had done nothing to explain why he needs additional time to purge the contempt. Roberts has had nineteen (19) months to comply with the Contempt Order dated January 6, 2020, but he has refused to do so and continues to act in defiance of those orders." *Id.*, ¶ 21.

63. Judge Moses periodically reviewed Roberts' incarceration to determine whether he was making progress in purging his contempt, allowed him to be released within two weeks after he was initially incarcerated, conducted additional reviews, and ultimately, after he again failed to

**Aple.Appx. 18**

make good on his promises to purge his contempt, had him jailed again on January 4, 2022.[3] During the review hearings it became apparent that one problem Roberts had purging his contempt was that he had orchestrated a transfer of his rights to the Property to two strawmen in Mexico in an effort to avoid the Court's contempt orders, who were refusing to give the Property back, according to Roberts.  Roberts remained incarcerated until he filed this Petition for Bankruptcy.

64.     The effect of his bankruptcy filing, on the Friday before the Damages Hearing, was to (a) stop the Damages Hearing; and (b) force the Court to release Roberts from incarceration for remedial contempt. The Damages Hearing scheduled for February 22, 2022 was the third scheduled date for determination of damages resulting from Roberts' breaches of his duties.  The first hearing (December 2020) was postponed at the last minute when Roberts' new lawyers, Podoll & Podoll, P.C., filed a flurry of meritless motions and the second date was continued at the last minute based on Roberts' claims that he had been exposed to COVID (Roberts was also seeking to delay the February 22, 2022 trial date based on a claim he had contracted COVID).  The Bankruptcy Petition was filed only after Roberts moved to continue the third scheduled damages hearing trial on the Friday before it was to commence and the trial court did not immediately issue a ruling granting it. Judge Moses ultimately denied the motion to continue, but was forced to suspend proceedings when Roberts filed the pending Petition in Bankruptcy.

After Plaintiffs obtained relief from the automatic stay, a hearing on the damages phase of the State Court Litigation took place on April 20 and 22, 2022. The Denver District Court has taken that matter under advisement.

---

[3]  In addition, Roberts filed four original proceedings with the Colorado Supreme Court pursuant to Colorado Appellate Rule 21. One challenged all the prior orders in the case and three challenged his contempt judgement.  All were summarily denied. Roberts also filed two Petitions for Writ of Habeas Corpus in federal court.  One was denied and the other is pending.  He also filed additional appeals with the Colorado Court of Appeals challenging his sentence of incarceration, which were similarly dismissed.

Aple.Appx. 19

**FIRST CLAIM FOR RELIEF**
**(11 U.S.C. § 523(a)(2)(A))**
**(Fraud, False Pretenses, and False Representations and Omissions)**

65.     Plaintiffs hereby incorporate by reference each of the foregoing paragraphs as if set forth fully herein.

66.     Roberts acquired rights and property by false pretenses, false representations, or actual fraud. Roberts made false statements of material fact to Plaintiffs regarding his willingness and agreement to pay Hotusa on behalf of PdC and RCC.

67.      Roberts acted, used, and employed deception, deceptive practices or acts, under influence, fraud, false pretenses, false promises, misrepresentations, or concealments, suppression or omission of material facts, with the intent that Plaintiffs rely on such concealment, suppression, or omissions.

68.     Roberts knew his representations or omissions were false when they made them to Plaintiffs.

69.     Roberts' representations or omissions were made with the intent of deceiving the Plaintiffs.

70.     Plaintiffs reasonably or justifiably relied on the false representations or omissions of Roberts.

71.     As a direct and proximate result of Roberts' false representations and/or omissions, Plaintiffs have been damaged in an amount to be to be determined, and including as appropriate, the value of the property misappropriated by Roberts, legal fees incurred in protecting the property and the interests of PdC's stakeholders, damages relating to delays in sale of the property and diminution of sales price, security costs, Robert's share of ongoing maintenance costs, interest,

**Aple.Appx. 20**

attorney fees, and such other relief as may be established at trial or on motion, plus pre- and post-judgment interest and costs.

72.     Pursuant to 11 U.S.C. § 523(a)(2)(A), Roberts' indebtedness and liabilities to Plaintiffs are nondischargeable.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Roberts, determine that the claims held by the Plaintiffs against Roberts are excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), for interest from the date of the investment, for the Plaintiffs' costs, including reasonable attorney' fees, as provided by law and/or agreement, and enter such other and further relief as the Court deems just and appropriate.

### SECOND CLAIM FOR RELIEF
### (11 U.S.C. § 523(a)(4))
### (Fraud or Defalcation While Acting in a Fiduciary Capacity)

73.     Plaintiffs hereby incorporate by reference each of the foregoing paragraphs as if set forth fully herein.

74.     Roberts was a fiduciary of Plaintiffs given his role as a manager of PdC and RCC.

75.     As a fiduciary, Roberts owed duties of care and loyalty to PdC and RCC. These duties are outlined in PdC's Operating Agreement. Roberts breached his fiduciary duties to PdC and RCC by acting in bad faith against the best interests of PdC, breaching his duty of honesty, misappropriating PdC and RCC's corporate opportunity, and not exercising the care that an ordinary prudent person would have exercised in a like position and in similar circumstances.

76.     Roberts obtained money and property from and incurred debts and liabilities to the Plaintiffs by fraud or defalcation while acting in a fiduciary capacity.

77.     The fiduciary duty owed by Roberts with respect to the Combined Property is an express or technical trust within the meaning of 11 U.S.C. § 523(a)(4).

**Aple.Appx. 21**

78.     Roberts embezzled property interests and rights in his attempt to own and control the Combined Property.

79.     As a direct and proximate result of the Roberts' actions and/or failures to act, Plaintiffs have been damaged in an amount to be determined, and including as appropriate, the value of the property misappropriated by Roberts, legal fees incurred in protecting the property and the interests of PdC's stakeholders, damages relating to delays in sale of the property and diminution of sales price, security costs, Robert's share of ongoing maintenance costs, interest, attorney fees, and such other relief as may be established at trial or on motion, plus pre- and post-judgment interest and costs.

80.     Pursuant to 11 U.S.C. § 523(a)(4), Roberts' indebtedness and liabilities to the Plaintiffs are nondischargeable.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Roberts, determine that the claims held by Plaintiffs against Roberts are excepted from discharge pursuant to 11 U.S.C. § 523(a)(4), for interest from the date of the investment, for Plaintiffs' costs, including reasonable attorney' fees, as provided by law and/or agreement, and enter such other and further relief as the Court deems just and appropriate.

### THIRD CLAIM FOR RELIEF
### (11 U.S.C. § 523(a)(6))
### (Willful and Malicious Injury)

81.     Plaintiffs hereby incorporate by reference each of the foregoing paragraphs as if set forth fully herein.

82.     Roberts' actions constitute a willful and malicious injury to Plaintiffs. Roberts actions were willful, in that he acted with the specific intent to harm Plaintiffs and their property and otherwise desired to cause injury or believed the injury was substantially certain to occur. Roberts' actions were malicious, in that he acted with a culpable state of mind as to the

consequences of his conduct and the injury suffered by Plaintiffs and in conscious disregard of his duties to Plaintiffs and without just cause or excuse.

83.     As a direct and proximate result of the Roberts' willful and malicious conduct, Plaintiffs have been damaged in an amount to be determined, and including as appropriate, the value of the property misappropriated by Roberts,  legal fees incurred in protecting the property and the interests of PdC's stakeholders, damages relating to delays in sale of the property and diminution of sales price, security costs, Robert's share of ongoing maintenance costs, interest, attorney fees, and such other relief as may be established at trial or on motion, plus pre- and post-judgment interest and costs.

84.     Pursuant to 11 U.S.C. § 523(a)(6), Roberts' indebtedness and liabilities to the Plaintiff are nondischargeable.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Roberts, determine that the claims held by Plaintiffs against Roberts are excepted from discharge pursuant to 11 U.S.C. § 523(a)(6), for interest from the date of the investment, for Plaintiffs' costs, including reasonable attorney' fees, as provided by law and/or agreement, and enter such other and further relief as the Court deems just and appropriate.

Dated this 24th day of May, 2022.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

/s/ *Brent R. Cohen*

Brent R. Cohen, No. 11297
Chad S. Caby, No. 30927
1601 19th Street, Suite 1000
Denver, CO  80202
Tele:    (303) 623-9000
Fax:     (303) 623-9222
E-mail: bcohen@lewisroca.com
          ccaby@lewisroca.com

*Counsel for Plaintiffs*

**Aple.Appx. 23**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re: | |
| MICHAEL J. ROBERTS, SR.<br>SSN/EIN: xxx-xx-3582 | Case No. 22-10521-JGR<br>Chapter 11, Subchapter V |
| Debtor. | |

### ORDER CONVERTING CHAPTER 11 CASE TO CHAPTER 7

This matter is before the Court on the Motion to Convert Chapter 11 Case to Chapter 7 (Doc. 149; "Motion") filed by PdC, LLC; Timothy Flaherty; Timothy Kneen; and Riviera Country Club, S. de R.L. de C.V. (collectively, "PdC Creditors") on May 6, 2022, and Debtor's Objection and Response in Opposition thereto (Doc. 175; "Response") filed by Debtor Michael Roberts, Sr. on May 20, 2022. On June 29-30, 2022, the Court held an evidentiary hearing on this matter. Following the hearing, the parties submitted proposed findings of fact and conclusions of law. Having considered the parties' submissions, the evidence presented to the Court, and being otherwise fully advised in the premises, the Court makes the following findings and conclusions.

### INTRODUCTION

Roberts is an individual investor who has been engaged in litigation with the PdC Creditors for at least four years. He filed this case while in jail for civil contempt of the Denver District Court. As a result of other orders entered by the Denver District Court, the PdC Creditors hold a writ of attachment on substantially all of Roberts' assets and an injunction prohibiting Roberts from conveying, transferring, encumbering, selling, disposing, or otherwise affecting the location or ownership of any of the assets. Roberts filed his Chapter 11 case on the eve of a damages hearing in the Denver District Court, shortly after he filed a motion to continue the damages hearing for the third time but before the Denver District Court ruled on the motion.

### BACKGROUND

#### I. Assets and Liabilities

Roberts testified and filed Schedules A and B asserting he owns, directly or indirectly through wholly owned entities, assets of approximately $53 million. Such assets include a home in Boulder valued at $5.278 million; artwork; a vintage car collection; cabins in Ferncliffe, Colorado; undeveloped lots in Hawaii, Costa Rica, and Mackinac Island; a coffee business in Hawaii; and an office building in Boulder. Of particular note here, Roberts has a 33% ownership interest in PdC, LLC and a 100% ownership interest

**Aple.Appx. 24**

in Ciro Properties, LLC. As of this writing, entities controlled by Roberts have recently sold, or are in the process of selling, substantial items of Roberts' claimed assets, including Hawaiian property and the office building in Boulder. Additionally, certain creditors recently received a comfort order to foreclose on other Hawaiian property titled in the name of an entity wholly owned by Roberts without the hindrance of the automatic stay. However, the proceeds from these sales are subject to a writ of attachment in favor of the PdC Creditors. Roberts' only consensual secured debt is represented by two mortgages totaling approximately $700,000 encumbering his home in Boulder, which have remained current. His unsecured debts consist of two categories: credit card debt of $88,000 and attorney's fees and expenses for his various counsel totaling $1.58 million. His debts arising out of the litigation with the PdC Creditors have been set by the state court at $21 million, with further hearings to be conducted to increase the damages. Roberts is an investor who is not employed and does not receive W-2 income.

He filed his first proposed Chapter 11 plan of reorganization on May 19, 2022. Due to the pending Motion, the Court has not set dates for voting on, objecting to, or holding a hearing on plan confirmation.

## II. State Court Litigation

Roberts, creditor Timothy Flaherty, and creditor Timothy Kneen were the three members and managers of a Colorado entity, PdC, LLC, which was formed to purchase and develop beachfront land in Mexico near Playa del Carmen, Quintana Roo. Because Mexican law does not allow foreign nationals to directly own land on Mexico's coast, the venture was to be carried out via a Mexican subsidiary of PdC, Riviera Country Club, S. de R.L. de C.V.  ("RCC"), beginning in 2007. Like PdC, RCC's three managers were Flaherty, Kneen, and Roberts. PdC acquired its first parcel of Mexican land, known as "Sereno I" for $8 million in 2006. Another entity, TMTBC, LLC—also owned by Flaherty, Kneen, and Roberts—obtained a neighboring property, referred to as the "Beach House," in 2008. Finally, in 2012, RCC acquired two parcels next to Sereno I, known as "Sereno II" and "Sereno III," (sometimes referred to as the "Mustapha Properties") for $11.5 million. In this transaction, $6 million was paid outright, with the remaining $5.5 million subject to a lien held by a Spanish entity, Hoteles Turisticos Unidos, S.A. ("Hotusa").  At the time of RCC's purchase of Sereno II and Sereno III, the properties were subject to foreclosure litigation initiated by Hotusa. After purchasing Sereno II and Sereno III, RCC signed a settlement agreement with Hotusa by which Hotusa agreed to release its lien in exchange for $6.5 million.

RCC made an initial payment of $1 million to Hotusa, funded by two $500,000 loans, one each from Flaherty and Kneen. While RCC tried to come up with the remaining funds, it made several extension payments delaying payment of the final $5.5 million through December 31, 2016. During this time, Roberts contemplated in a note to himself whether he "could skirt RCC and sign away their rights and position by using [his] power of attorney?" Ex. 44 ¶¶ 16, 31. After sources of external funding did not materialize, Flaherty agreed to loan the $5.5 million (using funds he readily had available) to PdC to satisfy RCC's final payment to Hotusa. Roberts objected, instead offering to source

RCC's $5.5 million himself, subject to certain conditions that included the right to pursue development of the property for six months rather than immediately offering it for sale (as planned by Flaherty and Kneen). After Flaherty and Kneen agreed to Roberts' plan, instead of making the $5.5 million payment on behalf of PdC or RCC, he fraudulently granted a power of attorney on RCC's behalf—without Flaherty or Kneen's knowledge or permission—to his personal attorney in Mexico, who then ratified a settlement agreement in the Mexican courts effectuating Roberts' personal acquisition of the Sereno II and Sereno III lien from Hotusa. Roberts then attempted to foreclose on Sereno II and Sereno III and hired armed guards to take physical possession of all the Mexican properties: the Beach House and Serenos I, II, and III. These guards denied access to Flaherty, Kneen, and PdC's agents. By attempting to foreclose on Sereno II and Sereno III for himself at the expense of RCC and PdC, Roberts' actions violated his "fiduciary duties to PdC and its stakeholders by violating his duty of loyalty and engaging in intentional misconduct." Ex. 44 ¶ 66.

As a result of the aforementioned events, in 2018 the PdC Creditors filed cross claims and a third-party complaint against Roberts and two of his entities in an existing Denver District Court lawsuit that had been filed against the PdC Creditors by creditor Richard Lang. This litigation occurred concurrently with other litigation in Mexico, wherein Roberts claims to have prevailed and cemented his sole legal rights to the Hotusa lien. In the Denver District Court, the PdC Creditors alleged that Roberts engaged in a fraudulent scheme to misappropriate the rights of his partners in the Mexican land venture. Roberts has claimed that the Denver District Court lacks subject matter jurisdiction over these disputes because RCC's Articles of Incorporation contain a clause that any disputes about the Mexican projects are subject to the exclusive jurisdiction of the Mexican courts. The Denver District Court has rejected this argument on multiple occasions. *See, e.g.*, Ex. 44 ¶ 58.

On January 24, 2019, the PdC Creditors obtained a preliminary injunction against Roberts after a full day evidentiary hearing in front of Denver District Judge Plotz, enjoining Roberts from taking any further action to misappropriate PdC property in Mexico. Ex. 4. Roberts defied the preliminary injunction by, among other actions, transferring his interest in the Hotusa lien (on Sereno II and Sereno III) to a Mexican entity he controlled, Logistics Desarrollos Publicitarios e Inmobiliarios ("Logistics") in July 2019. Roberts then transferred his interest in Logistics to two Mexican nationals for no consideration, effectively transferring "legal control over the properties to persons beyond the jurisdiction of [the Denver District Court]." Ex. 44 ¶ 53. After Roberts ignored the preliminary injunction, the PdC Creditors filed a motion for contempt.

On January 6, 2020, after another full day evidentiary hearing, Denver District Judge Johnson entered a contempt order requiring Roberts to be jailed and pay a fine of $1,000 per day until his contempt was purged.  Ex. 7. Following the entry of the contempt order, on January 24, 2020, Judge Johnson conducted a trial on the merits and on June 19, 2020, entered a judgment against Roberts finding he had breached his fiduciary duty to the PdC Creditors in executing the secret and fraudulent scheme to take Hotusa's position for himself. Ex. 8.

Then, on August 28, 2020, based upon Roberts' failure to comply with the preliminary injunction or contempt order, Judge Johnson granted the PdC Creditors an ex parte attachment to freeze Roberts' assets and ordered Roberts to be taken into custody for contempt. Ex. 14.

Next, on October 20, 2020, Judge Johnson entered a discovery sanctions order striking all of Roberts' defenses, dismissing his answer to cross claims and his counter cross claims, precluding him from introducing evidence he had failed to produce, and entering default in favor of the PdC Creditors and against Roberts on all claims. Ex. 15. The Denver District Court set a damages hearing for December 21, 2020, which was continued not once, but twice.

After another full day evidentiary hearing on August 6, 2021, Denver District Judge Moses remanded Roberts to be incarcerated until he complied with the outstanding orders of the Court and remedied his misappropriation of the Mexican property. Ex. 23. Roberts was released two weeks after his incarceration, but Judge Moses had Roberts jailed again when he failed to purge his contempt. On October 6, 2021, in upholding the previously issued writ of attachment, Judge Moses found that Roberts concealed himself and his assets, thereby avoiding service of process, defying court orders, and acting with an intent to hinder or delay his creditors. Ex. 24. Judge Moses set the damages hearing for February 22, 2022, the third time this hearing was scheduled, but Roberts filed bankruptcy on February 18, 2022, resulting in yet another postponement of the damages hearing. The bankruptcy filing also effectuated his release from jail even though he had not purged his remedial contempt and was still in violation of Denver District Court orders.

## III. Bankruptcy Litigation

### A. Relief from Stay

The PdC Creditors have twice obtained relief from stay during the pendency of Roberts' bankruptcy case.

First, the PdC Creditors obtained relief from stay on March 25, 2022, over Roberts' objection, to conduct the damages trial in the Denver District Court case. On June 23, 2022, Judge Moses entered a detailed 32-page damages award in favor of the PdC Creditors and against Roberts for a total of $10,456,162 in actual damages, $5,500,000 in exemplary damages, and $5,168,824 in prejudgment interest on actual damages. Ex. 44. She also awarded attorney's fees and expenses, in an amount to be determined. Judge Moses' damages order—like many earlier orders of the Denver District Court—detailed numerous instances of Roberts' bad conduct, including disobeying court orders, defrauding investors, and lying under oath. Judge Moses found that Roberts' actions prevented Kneen and Flaherty from selling all four properties as a bundle. When Flaherty and Kneen finally decided to sell Sereno I by itself in 2021, it was at a lower price than if they had sold it, as they had hoped, in 2017. As to Sereno II and Sereno III, Judge Moses concluded that Roberts caused a total loss to the PdC creditors.

At the hearing on the Motion in the Bankruptcy Court, Roberts' counsel argued that because of Roberts' ownership interests and investments in PdC, Roberts is entitled to more than half of the Denver District Court's $21 million judgment against him and in favor of the PdC Creditors. Roberts also argues that he is entitled to a large sum (in excess of 68% of $40 million) on behalf of his entity, Ciro Properties, which has filed an adversary proceeding in this Court (discussed below). The PdC Creditors argue that Roberts is not entitled to any of their favorable Denver District Court judgment because Judge Moses already set-off Roberts' $5.5 million paid for the Hotusa lien. The PdC Creditors also argue that they might be entitled to future profits from the Mexican properties under Colorado law on breach of fiduciary duty. The PdC Creditors argue that these set off issues should and will be decided by the Denver District Court.

Second, on May 12, 2022, the PdC Creditors obtained relief from stay to proceed in state court to enforce the previous orders of the Denver District Court related to the preliminary injunction, writ of attachment, and civil contempt order.

### B. Adversary Proceedings

Roberts has filed three adversary proceedings since the filing of the bankruptcy case:

(1) *Roberts v. Riviera Country Club S. de R.L. de C.V.*, Case No. 22-1052-JGR, which, in the view of this Court, seeks to relitigate issues already decided by the Denver District Court, namely by seeking recognition of the result of the Mexico litigation.  The PdC Creditors have moved to dismiss this action on the bases of lack of subject matter jurisdiction; res judicata and collateral estoppel; and the Rooker-Feldman doctrine. The Court entered a stay of this Adversary Proceeding on June 1, 2022, pending the outcome of the Motion to Convert.

(2) *Ciro Properties, LLC v. PdC, LLC*, Case No. 22-1137-JGR, which is an attempted removal by Roberts of a state district court civil action to which he is not a party. The state court action was filed in Arapahoe County and subsequently ordered consolidated with the pending Denver District Court litigation. The PdC Creditors have moved the Court to remand this Adversary Proceeding back to the Denver District Court. The Court entered a stay of this Adversary Proceeding on June 1, 2022, pending the outcome of the Motion to Convert.

(3) *Roberts v. Almazan*, Case No. 22-1133-JGR, which is an avoidance action against two Mexican Nationals to recover Roberts' interest in Logistics that he consensually transferred for no consideration as part of his fraudulent scheme. As of the date of this writing, this Adversary Proceeding has been pending for over five months, yet Roberts has not served the defendants with process. The Court has not stayed this Adversary Proceeding pending the outcome of the Motion to Convert.

### C. Motion to Convert or Dismiss

Movants, the PdC Creditors, claim that Roberts filed the Chapter 11 case in bad faith and it should be converted to a liquidation case under Chapter 7 to be administered by a Chapter 7 trustee. They claim he filed the bankruptcy case under Subchapter V of the Bankruptcy Code on the eve of the damages hearing to delay the hearing, get out of jail, and avoid having the judgments of the PdC creditors liquidated. The PdC Creditors argue this bad faith results in his ineligibility to be a debtor under Subchapter V. They also claim the filing of the three adversary proceedings was in bad faith because they seek to relitigate issues either previously decided or over which the bankruptcy court lacks jurisdiction. They also claim his bad faith is evidenced by filing a plan of reorganization which contains terms contrary to the judgments of the Denver District Court, that he intends to initiate claims objections against the PdC Creditors even though the Denver District Court has ruled on those issues, and that he has significant assets that should be liquidated to pay creditors rather than engaging in prolonged litigation. At bottom, they claim this is, in essence, a two-party dispute which is more appropriately resolved by the Denver District Court and that Roberts is seeking a second "bite at the apple" by filing the bankruptcy case and adversary proceedings. Finally, they assert Roberts' pre-petition litigation misconduct and disregard of lawful orders of the Denver District Court prohibits him from being a Chapter 11 debtor-in-possession and in control of his assets.

Roberts argues that it is proper, and common, to file a bankruptcy petition when faced with an impending judgment. He claims that the Court should ignore the previous protracted litigation in state court—including four evidentiary hearings and his unsuccessful appeals therefrom—and focus on his alleged good faith post-petition conduct as a debtor-in-possession in control of his assets. Roberts intends to continue litigating with the PdC Creditors and use the damages he recovers from the PdC Creditors, and sale and reinvestment of the proceeds of his non-exempt assets, to fund his 100% repayment Chapter 11 plan. While Roberts argues that it is premature to analyze the legitimacy of his proposed plan, he also argues that his plan has a reasonable likelihood of being confirmed, and that he satisfies 11 U.S.C. § 1112(b)'s test for preventing conversion or dismissal. As a last-ditch argument, Roberts argues that if cause for conversion or dismissal exists, his case must be dismissed because his assets include investments in cannabis companies that would become property of the estate in a Chapter 7 case.

Roberts was the only witness at the hearing. He was regularly evasive and non-responsive on cross-examination. The Court agrees with the assessment of Roberts' lack of credibility made previously by three Denver District Court judges.

### LEGAL STANDARDS

This Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(a) and (b). This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), as it is a proceeding to convert the Roberts Bankruptcy Case to Chapter 7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Aple.Appx. 29

Section 1112(b)(1) of the Bankruptcy Code provides:

Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7, or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Dismissal or conversion under this section is a two-step process.  The Court must determine if cause exists for dismissal or conversion.  If so, the Court then must determine whether dismissal or conversion of the case is in the best interest of creditors and the estate.  *In re Peak Serum, Inc.*, 623 B.R. 609, 619 (Bankr. D. Colo. 2020) (citing *In re OptInRealBig.com, LLC*, 345 B.R. 277, 282 (Bankr. D. Colo. 2006)).

Section 1112(b)(4) sets forth a non-exclusive list of 16 factors that may constitute cause under 11 U.S.C. § 1112(b)(1).  "While bad faith is not an enumerated factor under § 1112(b), '[i]t is well established under the Bankruptcy Code, as it was under the Bankruptcy Act, that a Chapter 11 Petition must be filed in good faith . . . .'" *In re Springs Hosp., Inc.*, 2006 Bankr. LEXIS 1804, at *8-9 (Bankr. D. Colo. Aug. 22, 2006) (citing *Pacific Rim Invs., LLP v. Oriam, LLC* (*In re Pacific Rim Invs., LLP*), 243 B.R. 768, 771 (D. Colo. 2000)).

"Chapter 11 cases vary widely and do not lend themselves to a cookie cutter approach to analyzing the bad faith of a bankruptcy filing. As a consequence, bad faith, in the context of a chapter 11 filing as in most other bankruptcy contexts, is always determined on a case by case basis." *Id.* at 9.  The movant bears the burden of establishing cause by a preponderance of the evidence.  Once cause is demonstrated, the burden shifts to the opposing party to prove "unusual circumstances" establishing that converting or dismissing the case is not in the best interest of creditors and the estate. 11 U.S.C. § 1112(b)(2); *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012).

"When presented with a request for dismissal or conversion under Section 1112(b), case law and congressional intent make it clear that a bankruptcy court has broad discretion to either grant or deny such relief. The Tenth Circuit has stated in unequivocal terms that a bankruptcy court is to be afforded broad discretion under Section 1112(b)." *In re Western Pac. Airlines*, 218 B.R. 590, 593-94 (Bankr. D. Colo. 1998) (citing *Small Business Admin. v. Preferred Door Co., Inc.*, (*In re Preferred Door Co., Inc.*) 990 F.2d 547, 549 (10th Cir. 1993)).

## ANALYSIS

## I. Bad Faith Factors

In *Udall v. FDIC (In re Nursery Land Dev.)*, 91 F.3d 1414 (10th Cir. 1996), the Tenth Circuit affirmed the bankruptcy court's imposition of sanctions for filing a Chapter 11 case in bad faith.  The Tenth Circuit affirmed the bankruptcy court's finding that the

**Aple.Appx. 30**

debtor lacked a realistic possibility of reorganization. Further, the bankruptcy court's conclusion that the specific purpose of the filing was to frustrate legitimate efforts to enforce creditor rights to foreclose was amply supported by numerous indicia that constitute classic badges of bad faith. The Tenth Circuit enumerated those factors as:

> Nursery Land (1) has only one asset; (2) has only one creditor; (3) acquired property which was posted for foreclosure and the prior owners had been unsuccessful in defending against the foreclosure; (4) was revitalized on the eve of foreclosure to acquire the insolvent property; (5) has no ongoing business or employees; and (6) lacks a reasonable possibility of reorganization, and (7) the Chapter 11 filing stopped the foreclosure.

*Id.* at 1416 (citations omitted).

These factors applied to the facts in *Nursery Land* but, despite Roberts' arguments to the contrary, they do not establish a definitive test for a finding of bad faith. In fact, when enumerating these factors, *Nursery Land* cited three other cases concerning bad faith Chapter 11 filings, including *In re Laguna Associates Ltd. Partn.*, 30 F.3d 734, 738 (6th Cir. 1994), which set forth the following factors as helpful in analyzing a Chapter 11 debtor's good faith:

> (1) the debtor has one asset;
> (2) the pre-petition conduct of the debtor has been improper;
> (3) there are only a few unsecured creditors;
> (4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;
> (5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;
> (6) the filing of the petition effectively allows the debtor to evade court orders;
> (7) the debtor has no ongoing business or employees; and
> (8) the lack of possibility of reorganization.

Except for the first factor, the remaining seven *Laguna* factors are instructive here:

> (2) Pre-petition, Roberts committed fraud and breached his fiduciary duties; lied under oath multiple times; and disobeyed direct orders of the Denver District Court.
> (3) Although the more than $21 million in judgments owed to the PdC Creditors is secured by a pre-judgment writ of attachment, the writ of attachment only issued because of Roberts' improper conduct. *See* Denver District Court Order Re: July 23, 2021 Hearing on Traverse of August 20, 2020 Writ of Attachment (October 6, 2021). But for Roberts' improper prepetition conduct, the PdC creditors would be Roberts' only significant unsecured creditor. While Roberts owes approximately $1.5 million in unsecured debt to other creditors, nearly all of these unsecured

8

**Aple.Appx. 31**

debts are for legal fees for litigation with the PdC Creditors and living expenses while his assets were frozen by the Denver District Court.

(4) Although not posted for foreclosure, Roberts' property has been attached to satisfy his creditors—the same function as a foreclosure—and Roberts has been unsuccessful in defending against the attachment in state court.

(5) Roberts filed this Chapter 11 case on the eve of the damages hearing that had been continued three times. He had already lost on the merits and was facing multiple millions of dollars in judgments against him. These judgments were eventually liquidated in excess of $21 million and will grow even larger.

(6) Roberts filed for bankruptcy while in jail for civil contempt for disobeying Denver District Court orders and after filing two federal habeas corpus petitions. One was denied and another was pending when he filed his bankruptcy petition. Doc. 104 at 9 n.4. His bankruptcy petition secured his prompt release from jail without purging his contempt. Approximately three months after the case was filed, on May 12, 2022, the Court found that the automatic stay does not apply to the Denver District Court's contempt and enforcement proceedings against Roberts. The Court lacks complete knowledge of the extent to which the Denver District Court contempt and enforcement orders (of which there are several) are currently being enforced but notes that Roberts appeared in-person at the hearing on June 29-30, 2022, and the Court has not been informed that he has been remanded to custody.

(7) Roberts is an individual investor who has no ongoing business or employees.

(8) As touched on above, Roberts' Chapter 11 plan involves reinvesting his assets into income-producing ventures. He proposes to pay unsecured creditors (among which he included the PdC Creditors) approximately $2 million over five years, and then to pay the balance via a balloon payment of approximately $22 million, which will be funded by a liquidation of property. The Court questions whether Roberts' plan is feasible and proposed by means not forbidden by law (in contravention of orders of the Denver District Court), and therefore whether the plan is confirmable under 11 U.S.C. § 1191 and the applicable subsections of 11 U.S.C. § 1129.

After reviewing these factors, the Court concludes Roberts filed this Chapter 11 case in bad faith. In fact, this case presents a textbook example of a bad faith bankruptcy filing.  It was filed on the eve of a state court damages hearing in order to stay the hearing and obtain release from jail without purging the Denver District Court's civil contempt orders. It is a two-party case.  The credit card debt was substantially incurred due to the asset freeze. The attorney's fees were incurred to litigate with the PdC Creditors in a Mexican court, the Denver District Court, the Arapahoe County District Court, the Colorado Court of Appeals, and the Colorado Supreme Court. It was filed to re-litigate

Aple.Appx. 32

and invalidate the judgments of the Denver District Court, manipulate the judicial system, and seek to regain control of Roberts' property.

The plan relies on relitigating the losses in state court and liquidating non-exempt assets not to pay creditors but to re-invest in other income producing assets and pay the creditors through the income stream from such assets with a $22 million balloon payment in five years.

## II. Cannabis

No better example of Roberts' lack of good faith can be found than with respect to his opposition to conversion.

Roberts claims interests in two cannabis-related companies. The first, Serovita Holding Corp., may not relate to cannabis at all. Roberts testified at the hearing that Serovita previously consulted in the marijuana industry in the past, but that he does not know if it does anymore. Not only is the nature of Serovita's business unknown, but so too is the amount of Roberts' interest in the company. The second cannabis-related company is Denver Packaging Company, LLC ("D-Pack"). According to Roberts' hearing testimony, D-Pack is "a marijuana business." However, the Court lacks any information about D-Pack's daily business operations. While the Court is aware that Roberts' 99%-owned entity, Sandstone Ventures, LLC, owns approximately 15-20% of D-Pack, the value of Roberts' cannabis assets is unknown. In the liquidation analysis attached to Roberts' first proposed plan, he values marijuana-related assets as worth $2.2 million, but only $265,000 if they are liquidated. In his proposed findings of fact submitted to the Court, Roberts appears to misquote his own liquidation analysis, representing instead that he has $4 million worth of investments in companies whose operations involve marijuana.

Roberts voluntarily sought relief under Chapter 11 of the Bankruptcy Code, and has remained in Chapter 11 for seven-and-a-half months, with the knowledge of his interests in these companies. Nevertheless, Roberts argues that a Chapter 7 trustee cannot administer his cannabis-related assets (presumably because it would be illegal to do so) and therefore his case may not be converted to Chapter 7.

In making his argument, Roberts relies on *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 371-76 (2007) and *In re Arenas*, 535 B.R. 845, 845 (10th Cir. BAP (Colo.) 2015). However, neither of those cases compel dismissal here.

In analyzing the interplay between 11 U.S.C. §§ 706 and 1307(c) when a debtor seeks conversion of a Chapter 7 case to Chapter 13, the *Marrama* Court wrote:

In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as

Aple.Appx. 33

a debtor under Chapter 13. That individual, in other words, is not a member of the class of " 'honest but unfortunate debtor[s]' " that the bankruptcy laws were enacted to protect. . . . The text of § 706(d) therefore provides adequate authority for the denial of [the debtor's] motion to convert.

549 U.S. at 373-74. *Marrama* involved a bad faith debtor seeking to convert his Chapter 7 case to Chapter 13 in order to wrest control of the bankruptcy estate away from the trustee and back to himself. In its opinion affirming the lower courts' denial of conversion, the Supreme Court did not go so far as to require that the debtor's Chapter 7 case be dismissed. To the contrary, the Supreme Court implicitly endorsed the principal that while bad faith may preclude a debtor from proceeding under Chapter 13, it does not necessarily require dismissal of his Chapter 7 case. Such reasoning also bears on a finding of bad faith Roberts' case: he may either proceed in Chapter 7 or have his Chapter 11 case dismissed.

Both the Bankruptcy Code and the other case law interpreting it reinforce the proposition that a bad faith Chapter 11 case may either be dismissed or converted to Chapter 7. The list of constraints on conversion in 11 U.S.C. § 1112(a) do not include bad faith. Additionally, numerous courts have found that "bad faith" is an unenumerated factor constituting cause under 11 U.S.C. § 1112(b), which permits—but does not require— dismissal. *See In re Springs Hosp., Inc.*, 2006 Bankr. LEXIS 1804, at *8-9 (Bankr. D. Colo. Aug. 22, 2006). After all, the definition of "cause" under 11 U.S.C. § 1112(b)(4) does not dictate what a court may do upon a finding of "cause." That charge is found in 11 U.S.C. § 1112(b)(1), which requires a court to "convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate . . . ." Accordingly, only one inquiry bears on whether this case should be dismissed or converted. It is not Roberts "bad faith," but only what is in the best interest of creditors and the estate.

Roberts' other case, *In re Arenas*, specifically analyzes a cannabis issue. There, the Tenth Circuit Bankruptcy Appellate Panel ("BAP") affirmed the denial of conversion, and the subsequent dismissal at the request of the United States Trustee, of a jointly filed Chapter 7 case in which the debtors grew marijuana in one unit of their building and leased the other unit to a marijuana dispensary. The BAP's opinion relies heavily on the bankruptcy court's finding that the debtors violated the federal Controlled Substances Act ("CSA"). Here, although Roberts' conduct may have violated the CSA, the Court lacks adequate information to analyze that question; there are simply not enough facts in the record. However, the Court notes that even based on the record, Roberts' connections to cannabis appear far more attenuated than those of the *Arenas* debtors. He only owns interests in businesses that have amorphous investments in the cannabis industry. Importantly, the United States Trustee did not object to conversion in this case, but stated that it might later seek dismissal if the case is converted to Chapter 7, depending on the cannabis entanglements. If Roberts' connections to cannabis require dismissal, that issue will have to wait until a later date and more developed record.

As a final point on the cannabis issue, the Court is guided by the Ninth Circuit Bankruptcy Appellate Panel who, in reviewing cannabis cases, wrote that "the mere presence of marijuana near a bankruptcy case does not automatically prohibit a debtor from bankruptcy relief . . . Instead, a bankruptcy court must be explicit in articulating its legal and factual bases for dismissal in cases involving marijuana" *In re Burton*, 610 B.R. 633, 637-38 (Bankr. App. 9th Cir. 2020). Because the Court cannot explicitly articulate its factual bases for a marijuana-based dismissal beyond an unacceptable level of speculation, the Court will not dismiss Roberts' case due to cannabis at this time but rather grant the PdC Creditors' Motion to Convert.

## CONCLUSION

Roberts has engaged in a level of pre-petition litigation misconduct not previously seen by this Court. He never presented an excuse for noncompliance with court orders— or any efforts to show compliance—and exhibited utter disregard for valid orders of the Denver District Court. His bankruptcy filing attempts to alter not only the outcome of his financial affairs, but a bankruptcy outcome under which he never intends to purge his contempt of the Denver District Court. He seeks to wave a "magic wand" to sanitize his transgressions and remain in control of his assets as a fiduciary to his creditors for five more years. This case demands the swift appointment of a neutral third party in the form of a Chapter 7 trustee.

Therefore, the Court hereby

ORDERS:

1. PdC Creditors' Motion to Convert Chapter 11 Case to Chapter 7 is GRANTED. This Chapter 11 case is converted to a case under Chapter 7.

2. The United States Trustee is authorized appoint a Chapter 7 Trustee to administer the estate. Within 60 days after appointment, the Chapter 7 Trustee shall file status reports in each of the three adversary proceedings referenced on page 5 of this Order.

3. The Debtor in possession shall:

   a. forthwith turn over to the Chapter 7 Trustee all records and property of the estate in its possession or control as required by Fed. R. Bankr. P. 1019(4);

   b. within 14 days of the date of entry of this order, file a schedule of all unpaid debts incurred after the commencement of the Chapter 11 case, including the name and address of each creditor, as required by Fed. R. Bankr. P. 1019(5);

   c. within 30 days following the entry of the order of conversion, file and transmit to the United States Trustee a final report and account.

Aple.Appx. 35

d.  within 15 days of the date of entry of this order, file the statements and schedules required by Fed. R. Bankr. P. 1019(1)(A) and 1007(b), if such documents have not already been filed.

e.  within 30 days of the date of entry of this order, or before the first date set for the meeting of creditors, whichever is earlier, if required, file a statement of intention with respect to retention or surrender of property securing consumer debts, as required by 11 U.S.C. § 521(a)(2)(A) and Fed. R. Bankr. P. 1019(1)(B); and

f.  if this Order enters after confirmation a plan of reorganization, file, within 30 days of the date of entry of this order, the schedules required by Fed. R. Bankr. P. 1019(5)(C)(i)-(iii). The Court

FURTHER ORDERS that the Debtor, and his agents, servants, employees, and attorneys are herein enjoined from taking any action with respect to any assets or records of the Debtor, save and except to preserve the same and to forthwith turn over the same to the Chapter 7 trustee appointed herein pursuant to Fed. R. Bankr. P. 1019(4).

Dated this 23rd day of September, 2022.

BY THE COURT:

_____
Joseph G. Rosania, Jr.
United States Bankruptcy Judge

Aple.Appx. 36

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>MICHAEL J. ROBERTS, SR.<br>SSN/EIN: xxx-xx-3582<br><br>    Debtor. | Case No. 22-10521-JGR<br>Chapter 11, Subchapter V |

---

## JUDGMENT

In accordance with the Order Converting Chapter 11 Case to Chapter 7 entered on September 23, 2022,

IT IS ORDERED AND ADJUDGED that the Motion to Convert Chapter 11 Case to Chapter 7 ("Motion"; Doc. 149) filed by PdC, LLC; Timothy Flaherty; Timothy Kneen; and Riviera Country Club, S. de R.L. de C.V. ("Movants") on May 6, 2022, is hereby GRANTED. Judgment shall enter in favor of the Movants and against Debtor Michael Roberts, Sr. The within Chapter 11 case is CONVERTED to Chapter 7.

Dated this 26th day of September, 2022.

APPROVED AND ACCEPTED:                    FOR THE COURT:
                                          Kenneth S. Gardner, Clerk

By: _____            By: _____
    Joseph G. Rosania, Jr.                    Deputy Clerk
    United States Bankruptcy Judge

Aple.Appx. 37

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re Michael Joseph Roberts, Sr., | Case No. 22-10521-JGR |
| Debtor. | Chapter 7 |

## TRUSTEE'S REPORT OF SALE
### (6688 Gunpark Drive, Boulder, CO 80301-3372)

Chapter 7 Trustee Harvey Sender for the estate of Debtor Michael J. Roberts, Sr. ("Trustee"), pursuant to 11 U.S.C. § 363 and FED. R. BANKR. P. 6004(f), submits this Report of Sale for the Gunpark Property located at 6688 Gunpark Drive, Boulder, CO 80301-3372

1. On December 22, 2022, the Court entered its Order Granting Third Amended Motion to Sell Real Property Free and Clear of Liens pursuant to 11 U.S.C. § 363, Dkt. No. 390 (the "Sale Order").

2. The sale of the Gunpark Property closed on December 27, 2022. As shown on the settlement statement attached as Exhibit 1, the Trustee received sale proceeds of $1,641,248.59 from the sale.

Dated: December 30, 2022.

**Aple.Appx. 38**

ALLEN VELLONE WOLF HELFRICH & FACTOR PC

*/s/Michael T. Gilbert*
Michael T. Gilbert
Jennifer E. Schlatter
Brenton L. Gragg
1600 Stout Street, Suite 1900
Denver, Co 80202
(303) 534-4499
mgilbert@allen-vellone.com
jschlatter@allen-vellone.com
bgragg@allen-vellone.com

*Attorneys for Chapter 7 Trustee Harvey Sender*

### L.B.R. 9013-1 Certificate of Service:

The undersigned certifies that on December 30, 2022, I served by CM/ECF pursuant to L.B.R. 5005-4(a) a copy of the foregoing on those entitled to service pursuant to the FED. R. BANKR. P. and the L.B.R. at the following addresses:

| | |
|---|---|
| Brent Cohen, bcohen@lewisroca.com | Chad Caby, ccaby@lewisroca.com |
| Eliot Turner, Eliot.turner@nortonrosefulbright.com | Harvey Sender, harveysender1@sendertrustee.com |
| Holly Shilliday, hshilliday@mccarthyholthus.com | Margaret Pflueger, mpflueger@ckbrlaw.com |
| N. April Winecki, bankrupctyecf@janewaylaw.com | Paul Moss, paul.moss@usdoj.gov |
| Phillip A. Parrott, pparrott@ckbrlaw.com | Richard Podoll, rich@podoll.net |
| Robert Graham, bob@fostergraham.com | Robert Podoll, rob@podoll.net |
| Robertson Cohen, rcohen@cohenlawyers.com | Sean Connelly, sean@sconnellylaw.com |
| Steven Berman, sberman@shumaker.com | US Trustee, UstPRegion19.CV.ECF@usdoj.gov |
| William Leone, William.leone@nortonrosefulbright.com | |

*/s/ Terri M. Novoa*
Allen Vellone Wolf Helfrich & Factor P.C.



**LAND TITLE GUARANTEE COMPANY**
2595 CANYON BLVD #340
BOULDER, CO 80302
Phone: (720) 565-6205
Fax: (303) 393-4825

**"SELLERS"
STATEMENT OF
SETTLEMENT**

PROPERTY ADDRESS:  6688 GUNPARK DR, BOULDER, CO 80301

SELLER(S):  6688 GUNPARK DR., LLC, A COLORADO LIMITED LIABILITY COMPANY

BUYER(S):  JAMIS 6688 GUNPARK OFFICE, LLC, A COLORADO LIMITED LIABILITY COMPANY

SETTLEMENT DATE:  December 27, 2022          DATE OF PRORATION:  December 27, 2022

| DESCRIPTION | DEBIT | CREDIT |
|---|---|---|
| **Sales Price & Earnest Money** | | |
| Sales Price | | 1,700,000.00 |
| **Water & Sewer Charges - CITY OF BOULDER** | | |
| Water/Sewer Escrow | 5,000.00 | |
| **Real Estate Tax - BOULDER COUNTY TREASURER** | | |
| Previous Year Property Taxes R0089669 | 28,245.30 | |
| Current Year Property Taxes R0089669 01/01/2022 to 12/27/2022 @ $70.8503/day | 25,506.11 | |
| **SubTotals** | 58,751.41 | 1,700,000.00 |
| **Due to Seller/Owner** | 1,641,248.59 | |
| **Totals** | 1,700,000.00 | 1,700,000.00 |

The above figures do not include sales or use taxes on property

APPROVED AND ACCEPTED

SELLER(S)

6688 GUNPARK DR, LLC, A COLORADO LIMITED
LIABILITY COMPANY

THE ESTATE OF MICHAEL ROBERTS, SR.

By: _____
     HARVEY SENDER, TRUSTEE

LAND TITLE CLOSING AGENT:

*Tasha Pinkerton*
_____
Tasha Pinkerton



Exhibit 1 to Report of Sale (Gunpark Property)
Page 1 of 4

Aple.Appx. 41

# Closing Disclosure

## Closing Information

| | |
|---|---|
| Date Issued | 12/27/2022 |
| Closing Date | 12/27/2022 |
| Disbursement Date | 12/27/2022 |
| Settlement Agent | Land Title Guarantee Company |
| File # | 70789169 |
| Property | 6688 GUNPARK DR BOULDER, CO 80301 |
| Sales Price | $1,700,000.00 |

## Transaction Information

| | |
|---|---|
| Borrower | JAMIS 6688 GUNPARK OFFICE, LLC, A COLORADO LIMITED LIABILITY COMPANY 6640 GUNPARK DRIVE BOULDER, CO 80301 |
| Seller | 6688 GUNPARK DR., LLC, A COLORADO LIMITED LIABILITY COMPANY 6620 LOOKOUT ROAD BOULDER, CO 80301 |

## Summaries of Transactions

**Use this table to see a summary of your transaction.**

| SELLER'S TRANSACTION | | |
|---|---|---|
| M. Due to Seller at Closing | | $1,700,000.00 |
| 01 Sale Price of Property | | $1,700,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| Adjustments for Items Paid by Seller in Advance | | |
| 10 City/Town Taxes | to | |
| 11 Property Taxes | to | |
| 12 Assessments | to | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| N. Due from Seller at Closing | | $58,751.41 |
| 01 Excess Deposit | | |
| 02 Closing Costs Paid at Closing (J) | | $33,245.30 |
| 03 Existing Loan(s) Assumed or Taken Subject to | | |
| 04 Payoff of First Mortgage Loan | | |
| 05 Payoff of Second Mortgage Loan | | |
| 06 | | |
| 07 | | |
| 08 Security Deposits | | |
| 09 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| Adjustments for Items Unpaid by Seller | | |
| 15 City/Town Taxes | to | |
| 16 Property Taxes | 01/01/2022 to 12/27/2022 | $25,506.11 |
| 17 Assessments | to | |
| 18 | | |
| 19 | | |
| 20 | | |
| CALCULATION | | |
| Total Due to Seller at Closing (M) | | $1,700,000.00 |
| Total Due from Seller at Closing (N) | | -$58,751.41 |
| Cash ☐ From ☒ To Seller | | $1,641,248.59 |

## Contact Information

| Real Estate Broker (B) | |
|---|---|
| Name | NEWMARK |
| Address | 1800 LARIMER ST #1700 DENVER, CO 80202 |
| ST License ID | |
| Contact | Kevin J McCabe / Scott Worrell |
| Contact ST License ID | |
| Email | scott.worrell@nmrk.com |
| Phone | 13038921111 |

| Real Estate Broker (S) | |
|---|---|
| Name | |
| Address | |
| ST License ID | |
| Contact | |
| Contact ST License ID | |
| Email | |
| Phone | |

| Settlement Agent | |
|---|---|
| Name | Land Title Guarantee Company |
| Address | 2595 CANYON BLVD #340 BOULDER, CO 80302 |
| ST License ID | CO44565 |
| Contact | Tasha Pinkerton |
| Contact ST License ID | CO499406 |
| Email | tpinkerton@ltgc.com |
| Phone | 17205656205 |



**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Cousumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

Exhibit 1 to Report of Sale (6688 Gunpark Property)
Page 2 of 4

Aple.Appx. 42

**Closing Cost Details**

| Loan Costs | | Seller-Paid | |
|---|---|---|---|
| | | At Closing | Before Closing |
| **A. Origination Charges** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| **B. Services Borrower Did Not Shop For** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| 09 | | | |
| 10 | | | |
| **C. Services Borrower Did Shop For** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | | |
| Loan Costs Subtotals (A + B + C) | | | |

| Other Costs | | | |
|---|---|---|---|
| **E. Taxes and Other Government Fees** | | | |
| 01 | | | |
| 02 | | | |
| **F. Prepaids** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| **G. Initial Escrow Payment at Closing** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| **H. Other** | | | |
| 01 Previous Year Property Taxes R0089669 to BOULDER COUNTY TREASURER | | $28,245.30 | |
| 02 Water/Sewer Escrow  to Land Title Guarantee Company | | $5,000.00 | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| 09 | | | |
| 10 | | | |
| **I. TOTAL OTHER COSTS** | | | |
| Other Costs Subtotals (E + F + G + H) | | | |
| **J. TOTAL CLOSING COSTS** | | $33,245.30 | |

Aple.Appx. 43

**Addendum**

## All Borrowers

JAMIS 6688 GUNPARK OFFICE,
LLC, A COLORADO LIMITED
LIABILITY COMPANY

6640 GUNPARK DRIVE
BOULDER, CO 80301

## Signatures

By signing, you are only confirming that you have received this form

### Sellers

6688 GUNPARK DR., LLC, A COLORADO LIMITED LIABILITY COMPANY
THE ESTATE OF MICHAEL ROBERTS, SR.

By: _____   12/27/2  _____
     HARVEY SENDER, TRUSTEE                 Date

CLOSING DISCLOSURE

Exhibit 1 to Report of Sale (Gunpark Property)
Page 4 of 4

PAGE 3 OF 3 • LOAN ID #9829126

**Aple.Appx. 44**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re Michael Joseph Roberts, Sr., | Case No. 22-10521-JGR |
| Debtor. | Chapter 7 |

### TRUSTEE'S REPORT OF SALE
### (Mackinac Lots)

Chapter 7 Trustee Harvey Sender for the estate of Debtor Michael J. Roberts, Sr. ("Trustee"), pursuant to 11 U.S.C. § 363 and FED. R. BANKR. P. 6004(f), submits this Report of Sale for three unimproved lots located at Cedar Point Lane, Mackinac Island, Michigan 49757 (the "**Mackinac Lots"**)

1.    On December 22, 2022, the Court entered its Revised Order Granting Motion to Sell Real Property pursuant to 11 U.S.C. § 363 (Mackinac Lots), Dkt. No. 488 (the "**Sale Order**").

2.    The sale of the Mackinac Lots closed March 10, 2023. As shown on the settlement statement attached as Exhibit 1, the Trustee received net proceeds of $126,487.95 from the sale.

Dated: April 7, 2023.

ALLEN VELLONE WOLF HELFRICH & FACTOR PC

/s/ Michael T. Gilbert
Michael T. Gilbert
Jennifer E. Schlatter
Brenton L. Gragg
1600 Stout Street, Suite 1900
Denver, Co 80202
(303) 534-4499
mgilbert@allen-vellone.com
jschlatter@allen-vellone.com
bgragg@allen-vellone.com

*Attorneys for Chapter 7 Trustee Harvey Sender*

### L.B.R. 9013-1 Certificate of Service:

The undersigned certifies that on April 7, 2023, I served by CM/ECF pursuant to L.B.R. 5005-4(a) a copy of the foregoing on those entitled to service pursuant to the FED. R. BANKR. P. and the L.B.R. at the following addresses:

| | |
|---|---|
| Brent Cohen, bcohen@lewisroca.com | Chad Caby, ccaby@lewisroca.com |
| Eliot Turner,<br>Eliot.turner@nortonrosefulbright.com | Harvey Sender,<br>harveysender1@sendertrustee.com |
| Holly Shilliday,<br>hshilliday@mccarthyholthus.com | Margaret Pflueger,<br>mpflueger@ckbrlaw.com |
| N. April Winecki,<br>bankruptcyecf@janewaylaw.com | Paul Moss, paul.moss@usdoj.gov |
| Phillip A. Parrott,<br>pparrott@ckbrlaw.com | Richard Podoll, rich@podoll.net |
| Robert Graham, bob@fostergraham.com | Robert Podoll, rob@podoll.net |
| Robertson Cohen,<br>rcohen@cohenlawyers.com | Sean Connelly, sean@sconnellylaw.com |
| Steven Berman,<br>sberman@shumaker.com | US Trustee,<br>UstPRegion19.CV.ECF@usdoj.gov |
| William Leone,<br>William.leone@nortonrosefulbright.com | |

*/s/  Lisa R. Kraai*
Allen Vellone Wolf Helfrich & Factor P.C.

Aple.Appx. 47

OMB NO. 2502-0265

| A. | | B. TYPE OF LOAN: | | | | |
|---|---|---|---|---|---|---|
| **U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT** | | 1. ☐ FHA  2. ☐ FmHA  3. ☐ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS. | | | | |
| **SETTLEMENT STATEMENT** | | 6. FILE NUMBER: CT230003 | | | 7. LOAN NUMBER: | |
| | | 8. MORTGAGE INS CASE NUMBER: | | | | |

1.0  3/98   (CT230003.PFD/CT230003/11)

**C. NOTE:** *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Perfect Blue Holdings, L.L.C., a Michigan Limited Liability Company 314 Howard Street, Suite 201 Petoskey, MI 49770 | Sandstone Ventures LLC a Colorado Limited Liability Company  Michael J. Roberts, Sr. Debtor 245 Linden Drive Boulder, CO 80301 | |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| Cedar Pointe Lane (V/L) (PVT) Mackinac Island, MI 49757 Mackinac County, Michigan Units 2, 3, 4 Forest Bluff Condominium 49-051-772-002-00&003&004 | Charlevoix Abstract & Title Agency  PLACE OF SETTLEMENT 203 Mason Street Charlevoix, MI 49720 | March 10, 2023 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 140,000.00 | 401. Contract Sales Price | 140,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 210.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes            to | | 406. City/Town Taxes            to | |
| 107. 23 Pror Taxes U2-4        to | | 407. 23 Pror Taxes U2-4        to | |
| 108. Assessments             to | | 408. Assessments             to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 140,210.00 | **420. GROSS AMOUNT DUE TO SELLER** | 140,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 10,000.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | | 502. Settlement Charges to Seller (Line 1400) | 12,434.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff First Mortgage | |
| 205. | | 505. Payoff Second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. (Deposit disb. as proceeds) | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes            to | | 510. City/Town Taxes            to | |
| 211. 23 Pror Taxes U2-4   01/01/23   to  03/10/23 | 1,078.05 | 511. 23 Pror Taxes U2-4   01/01/23   to  03/10/23 | 1,078.05 |
| 212. Assessments             to | | 512. Assessments             to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 11,078.05 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 13,512.05 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 140,210.00 | 601. Gross Amount Due To Seller (Line 420) | 140,000.00 |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 11,078.05) | 602. Less Reductions Due Seller (Line 520) | ( 13,512.05) |
| **303. CASH ( X FROM ) ( TO ) BORROWER** | 129,131.95 | **603. CASH ( X TO ) ( FROM ) SELLER** | 126,487.95 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein. *tay adjustments 2.20 re. 1261266.90*

Borrower   Perfect Blue Holdings, L.L.C., a Michigan Limited Liability Company

By : _____
E. Lawrence Rellinger, Member

Seller   Michael J. Roberts, Sr., Debtor and Managing/Sole Member of Sandstone Ventures LLC, a Colorado Limited Liability Company

By: /S/ HARVEY SENDER, TTEE
Harvey Sender, as Chapter 7 Trustee for the Bankruptcy

Exhibit 1
Page 1 of 7

HUD-1 (3-86) RESPA, HB4305.2

Aple.Appx. 48

OMB NO. 2502-0265

| A. | | B. TYPE OF LOAN: | | | | |
|---|---|---|---|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | 1. ☐ FHA   2. ☐ FmHA | 3. ☐ CONV. UNINS. | 4. ☐ VA | 5. ☐ CONV. INS. | | |
| **SETTLEMENT STATEMENT** | 6. FILE NUMBER: CT230003 | | 7. LOAN NUMBER: | | | |
| | 8. MORTGAGE INS CASE NUMBER: | | | | | |

C. NOTE:  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.
1.0   3/98   (CT230003.PFD/CT230003/11)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Perfect Blue Holdings, L.L.C., a Michigan Limited Liability Company 314 Howard Street, Suite 201 Petoskey, MI 49770 | Sandstone Ventures LLC a Colorado Limited Liability Company Michael J. Roberts, Sr. Debtor 245 Linden Drive Boulder, CO 80301 | |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| Cedar Pointe Lane (V/L) (PVT) Mackinac Island, MI 49757 Mackinac County, Michigan Units 2, 3, 4 Forest Bluff Condominium 49-051-772-002-00&003&004 | Charlevoix Abstract & Title Agency PLACE OF SETTLEMENT 203 Mason Street Charlevoix, MI  49720 | March 10, 2023 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 140,000.00 | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 210.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes            to | | 406. City/Town Taxes            to | |
| 107. 23 Pror Taxes U2-4         to | | 407. 23 Pror Taxes U2-4         to | |
| 108. Assessments                to | | 408. Assessments                to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 140,210.00 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 10,000.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes            to | | 510. City/Town Taxes            to | |
| 211. 23 Pror Taxes U2-4  01/01/23  to  03/10/23 | 1,078.05 | 511. 23 Pror Taxes U2-4            to | |
| 212. Assessments                to | | 512. Assessments                to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 11,078.05 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 140,210.00 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 11,078.05 ) | 602. Less Reductions Due Seller (Line 520) | ( |
| **303. CASH ( X FROM ) (  TO ) BORROWER** | 129,131.95 | **603. CASH ( X TO ) (  FROM ) SELLER** | |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.

Borrower    Perfect Blue Holdings, L.L.C., a Michigan Limited Liability Company

By
  S/ Lawrence Rellinger, Member

*IN*

Exhibit 1 Page 2 of 7

HUD-1 [3-86] RESPA, HB4305.2

**Aple.Appx. 49**

## L. SETTLEMENT CHARGES

| | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| **700. TOTAL COMMISSION Based on Price** | $ | 140,000.00 @ 7.0000 % | 9,800.00 | | |
| *Division of Commission (line 700) as Follows:* | | | | | |
| 701. $ 9,800.00 to Mackinac Island Realty | | | | | |
| 702. $ to Mackinac Island Realty | | | | | |
| 703. Commission Paid at Settlement | | | | | |
| 704. to | | | | | 9,800.00 |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | | |
| 801. Loan Origination Fee 1.0000 % to | | | | | |
| 802. Loan Discount % to | | | | | |
| 803. Appraisal Fee to | | | | | |
| 804. Credit Report to | | | | | |
| 805. Lender's Inspection Fee to | | | | | |
| 806. Mortgage Ins. App. Fee to | | | | | |
| 807. Assumption Fee to | | | | | |
| 808. | | | | | |
| 809. | | | | | |
| 810. | | | | | |
| 811. | | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | |
| 901. Interest From to @ $ /day ( days %) | | | | | |
| 902. MIP TotIns. for LifeOfLoan for months to | | | | | |
| 903. Hazard Insurance Premium for 1.0 years to | | | | | |
| 904. | | | | | |
| 905. | | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | | |
| 1001. Hazard Insurance months @ $ per month | | | | | |
| 1002. Mortgage Insurance months @ $ per month | | | | | |
| 1003. City/Town Taxes months @ $ per month | | | | | |
| 1004. 23 Pror Taxes U2-4 months @ $ per month | | | | | |
| 1005. Assessments months @ $ per month | | | | | |
| 1006. months @ $ per month | | | | | |
| 1007. months @ $ per month | | | | | |
| 1008. months @ $ per month | | | | | |
| **1100. TITLE CHARGES** | | | | | |
| 1101. Settlement or Closing Fee to Charlevoix Abstract & Title Agency | | | | 175.00 | 175.00 |
| 1102. Abstract or Title Search to | | | | | |
| 1103. Title Examination to Bell Title Agency | | | | | 150.00 |
| 1104. Title Insurance Binder to | | | | | |
| 1105. Document Preparation to | | | | | |
| 1106. UPS/wire fees to Charlevoix Abstract & Title Agency | | | | | 55.00 |
| 1107. Attorney's Fees to | | | | | |
| *(includes above item numbers:* | | | ) | | |
| 1108. Title Insurance to Charlevoix Abstract & Title Agency | | | | | 1,050.00 |
| *(includes above item numbers:* | | | ) | | |
| 1109. Lender's Coverage $ | | | | | |
| 1110. Owner's Coverage $ 140,000.00 | | | 1,050.00 | | |
| 1111. | | | | | |
| 1112. | | | | | |
| 1113. | | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | |
| 1201. Recording Fees: Deed $ 35.00 ; Mortgage $ ; Releases $ | | | | 35.00 | |
| 1202. City/County Tax/Stamps: Deed 154.00; Mortgage | | | | | 154.00 |
| 1203. State Tax/Stamps: Deed 1,050.00; Mortgage | | | | | 1,050.00 |
| 1204. | | | | | |
| 1205. | | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | | |
| 1301. Survey to | | | | | |
| 1302. Pest Inspection to | | | | | |
| 1303. | | | | | |
| 1304. | | | | | |
| 1305. | | | | | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | | | 210.00 | 12,434.00 |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

Certified to be a true copy.

*Jennette Webb*
Charlevoix Abstract & Title Agency
Settlement Agent

Exhibit 1
Page 3 of 7

( CT230003 / CT230003 / 11 )

**Aple.Appx. 50**

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

|  |  |
|---|---|
| **Borrower :** | Perfect Blue Holdings, L.L.C., |
| **Seller:** | Sandstone Ventures LLC |
| **Settlement Agent:** | Charlevoix Abstract & Title Agency<br>(231)547-0792 |
| **Place of Settlement:** | 203 Mason Street<br>Charlevoix, MI 49720 |
| **Settlement Date:** | March 10, 2023 |
| **Property Location:** | Cedar Pointe Lane (V/L) (PVT)<br>Mackinac Island, MI 49757<br>Mackinac County, Michigan<br>Units 2, 3, 4<br>Forest Bluff Condominium<br>49-051-772-002-00&003&004 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Perfect Blue Holdings, L.L.C., a Michigan Limited Liability Company

By: _____
E. Lawrence Rellinger, Member

Michael J. Roberts, Sr., Debtor and Managing/Sole Member of Sandstone Ventures LLC, a Colorado Limited Liability Company

By: _____
     Harvey Sender, as Chapter 7 Trustee for the Bankruptcy Estate of Michael J. Roberts, Sr., Debtor, and on behalf of Sandstone Ventures LLC, a Colorado Limited Liability Company Case No. 22-10521-JGR, United States Bankruptcy Court for the District of Colorado.

**WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.**

(CT230003.PFD/CT230003/11)

Exhibit 1
Page 4 of 7

**Aple.Appx. 51**

**TAX PRORATION STATEMENT**
**CATA #CT230003**

SELLER:                         Sandstone Ventures LLC, a Colorado Limited Liability Company

PURCHASER/BORROWER:             Perfect Blue Holdings, L.L.C., a Michigan Limited Liability Company

SETTLEMENT DATE:                March 10, 2023

PROPERTY:                       Cedar Pointe Lane (V/L) (PVT), Mackinac Island, MI 49757;

                                Units 2, 3 and 4, Forest Bluff Condominium

Taxes in the City of Mackinac Island are levied on the calendar year and collected twice a year in arrears (07/01 & 12/01).

**CALCULATION OF PRORATION:**          **TAX ROLL NO. 49-051-772-002-00** (Unit 2, Forest Bluff Condominium)

|   | $58,211.00 | TAXABLE VALUE FOR 2022 |
|---|---|---|
|   | $1,215.25 | Actual 2022 Summer Taxes (Base) |
| + | $713.62 | Actual 2022 Winter Taxes |
| = | $1,928.87 | Estimated Total Tax for 2023 |
|   | 68 | Days elapsed to date of closing |
| x | 0.1863 | Percentage of elapsed year to date of closing (365 days) |
| = | $359.35 | Seller's share of 2023 estimated tax |

**CALCULATION OF PRORATION:**          **TAX ROLL NO. 49-051-772-003-00** (Unit 3, Forest Bluff Condominium)

|   | $58,211.00 | TAXABLE VALUE FOR 2022 |
|---|---|---|
|   | $1,215.25 | Actual 2022 Summer Taxes (Base) |
| + | $713.62 | Actual 2022 Winter Taxes |
| = | $1,928.87 | Estimated Total Tax for 2023 |
|   | 68 | Days elapsed to date of closing |
| x | 0.1863 | Percentage of elapsed year to date of closing (365 days) |
| = | $359.35 | Seller's share of 2023 estimated tax |

**CALCULATION OF PRORATION:**          **TAX ROLL NO. 49-051-772-004-00** (Unit 4, Forest Bluff Condominium)

|   | $58,211.00 | TAXABLE VALUE FOR 2022 |
|---|---|---|
|   | $1,215.25 | Actual 2022 Summer Taxes (Base) |
| + | $713.62 | Actual 2022 Winter Taxes |
| = | $1,928.87 | Estimated Total Tax for 2023 |
|   | 68 | Days elapsed to date of closing |
| x | 0.1863 | Percentage of elapsed year to date of closing (365 days) |
| = | $359.35 | Seller's share of 2023 estimated tax |
| x | **x3** | Units 2, 3, 4 |
| = | **$1,078.05** | Charge to Seller on line 511 of Settlement Statement; Credit Purchaser on line 211 of Settlement Statement |

Purchaser to pay taxes for current year 2023 and thereafter.

Seller to forward tax bill for current year 2023 to Purchaser promptly if received as Purchaser is responsible for paying said tax bill.

If at the end of 2023 there is a difference in the actual amount of tax proration by reason of difference of millage, taxable value, homestead status, or a tax split situation, Seller and Purchaser agree to make appropriate adjustments, and hold harmless Charlevoix Abstract & Title Agency.

Exhibit 1
Page 5 of 7

**Aple.Appx. 52**

Tax Proration cont.,

SELLER REPRESENTS AND WARRANTS both to Purchaser and to Charlevoix Abstract & Title Agency, such warranty upon which they rely, that real estate taxes have been paid through 2022, having been paid by Seller's Trustee prior to closing. Provide proof of payment to Charlevoix Abstract & Title Agency, such as paid tax receipts for 2022. The 2022 taxes are showing as delinquent per information contained upon the title insurance commitment issued in favor of Purchaser herein, said information having been obtained from the appropriate Treasurer's offices. In the event the Treasurer's records are for any reason incorrect, Seller herein shall be responsible for payment of any delinquent taxes accruing through date of closing.

### ASSOCIATION DUES – N/A

### MUNICIPAL WATER & SEWER – N/A

### UTILITIES

Seller and Purchaser are reminded to make necessary changeovers regarding heat, electricity and other utilities. SELLER HEREIN WARRANTS to Purchaser, and to Charlevoix Abstract & Title Agency, that all municipal utilities, if any, for the subject property have been paid to date of closing. Seller further understands that Seller is responsible for utility payments until vacating the subject property. Charlevoix Abstract & Title Agency assumes no liability for unpaid utilities at closing, unless a lien has been placed on the property by the municipality.

### PERSONAL PROPERTY

All items listed on the purchase and sales agreement dated January 10, 2023, are included in the sale and shall remain with the subject property.

### ADDITIONAL REMARKS

Seller and Purchaser acknowledge that all the contingencies, if any, shown on the aforesaid Sales Agreement have been satisfied and/or waived. Seller and Purchaser acknowledge that the transaction was closed in accordance with the Purchase Agreement and that all agreements and changes, if any, have been put in writing and there are no verbal agreements between the undersigned. Seller and Purchaser agree to fully cooperate with the Agency in the correction of any errors, clerical or otherwise, on documents executed as part of the closing, or omissions of documents required to complete the transaction.

### AS-IS

It is further affirmed and agreed that the Purchaser has been given the opportunity to personally inspect the property, or have other persons acting on their behalf inspect the property; that no written or verbal promises, guarantees, or representations have been made to the Purchaser by the Seller concerning the condition of the property; that all of the property and improvements, if any, are accepted "as-is" by the Purchaser; and that the Seller shall not be responsible for any defects which may be discovered after the sale is closed.

### POSSESSION

Possession is to be given at closing.

DATED: March 10, 2023

PURCHASER:

Perfect Blue Holdings, L.L.C., a Michigan Limited Liability Company

By: _____
E. Lawrence Hellinger, Member

SELLER:

Michael J. Roberts, Sr., Debtor, (Member of Sandstone Ventures LLC, a Colorado Limited Liability Company)—

By: _____
Harvey Sender, as Chapter 7 Trustee for the bankruptcy estate of Michael J. Roberts, Sr., Debtor, and on behalf of Sandstone Ventures LLC, a Colorado Limited Liability Company Case No. 22-10521-JGR, United States Bankruptcy Court for the District of Colorado.

Prepared by:   Charlevoix Abstract & Title Agency, 203 Mason Street, Charlevoix, MI 49720
Phone: 231-547-0792 Fax: 844-274-2157

Page 2

Exhibit 1
Page 6 of 7

Aple.Appx. 53

## ADDENDUM TO CLOSING STATEMENT AND TAX PRORATION

### CT230003

Due to the Seller's delay in providing a recordable Trustee's Deed by the closing date of 3/10/23, the undersigned, hereby agree that the tax prorations shall be adjusted by **$15.85** per day ($1,928.87 X 3 = $5,786.61 ÷ 365 = $15.85 per day) until the originally signed Trustee's Deed is received by Charlevoix Abstract & Title Agency and is in recordable form. Once the amount is determined, it will be deducted by the Seller's proceeds amount and credited to the Purchaser in the form of a check.

Dated:

AGREED TO BY SELLER:

Michael J. Roberts, Sr., Debtor, (Member of Sandstone Ventures LLC, a Colorado Limited Liability Company)

By:

Harvey Sender, as Chapter 7 Trustee for the bankruptcy estate of Michael J. Roberts, Sr., Debtor, and on behalf of Sandstone Ventures LLC, a Colorado Limited Liability Company Case No. 22-10521-JGR, United States Bankruptcy Court for the District of Colorado.

AGREED TO BY PURCHASER:

Perfect Blue Holdings, L.L.C., a Michigan Limited Liability Company

By:

E. Lawrence Rellinger, Member

Exhibit 1
Page 7 of 7

Aple.Appx. 54

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re Michael Joseph Roberts, Sr., | Case No. 22-10521-JGR |
| Debtor. | Chapter 7 |

### TRUSTEE'S REPORT OF SALE
### (Ferncliff Properties)

Chapter 7 Trustee Harvey Sender for the estate of Debtor Michael J. Roberts, Sr. ("Trustee"), pursuant to 11 U.S.C. § 363 and FED. R. BANKR. P. 6004(f), submits this Report of Sale for four cabins and approximately 6 acres of real property associated with them, all located in Ferncliff, Colorado (the "**Ferncliff Properties**").

1.      On June 29, 2023, the Court entered its Order Granting Motion to Sell Real Property pursuant to 11 U.S.C. § 363(b) & (m) (Ferncliff Properties), Dkt. No. 646 (the "**Sale Order**").

2.      The sale of the Ferncliff Properties closed July 21, 2023. As shown on the settlement statement attached as **Exhibit 1**, the Trustee received net proceeds of $1,058,701.13 from the sale. The septic and water systems at the Ferncliff Properties were illegally connected to Boulder County water and sewer and in some instances had not been permitted. Due to Boulder County regulations, the restrictive topography at the site, and the proximity of the Ferncliff Properties to a running stream, engineering estimates for fixing the systems and getting them approved by Boulder County were between $150,000-$200,000. The Trustee agreed to provide the

buyer a $140,000 credit at closing to remedy these problems, which is reflected on the

settlement statement. In addition, the estate incurred approximately $12,000 in costs

preparing the Ferncliff Properties for sale, which included trash removal, cleaning,

repairing broken water lines, and general maintenance, which are not reflected on

the settlement statement.

Dated: July 24, 2023.

ALLEN VELLONE WOLF HELFRICH & FACTOR PC

*/s/ Michael T. Gilbert*
Michael T. Gilbert
Jennifer E. Schlatter
Brenton L. Gragg
1600 Stout Street, Suite 1900
Denver, Co 80202
(303) 534-4499
mgilbert@allen-vellone.com
jschlatter@allen-vellone.com
bgragg@allen-vellone.com

*Attorneys for Chapter 7 Trustee Harvey Sender*

2

**L.B.R. 9013-1 Certificate of Service:**

The undersigned certifies that on July 24, 2023, I served by CM/ECF pursuant to L.B.R. 5005-4(a) a copy of the foregoing on those entitled to service pursuant to the FED. R. BANKR. P. and the L.B.R. at the following addresses:

Brent Cohen, bcohen@lewisroca.com

Chad Caby, ccaby@lewisroca.com

Eliot Turner,
Eliot.turner@nortonrosefulbright.com

Harvey Sender,
harveysender1@sendertrustee.com

Holly Shilliday,
hshilliday@mccarthyholthus.com

Margaret Pflueger,
mpflueger@ckbrlaw.com

N. April Winecki,
bankrupctyecf@janewaylaw.com

Paul Moss, paul.moss@usdoj.gov

Phillip A. Parrott,
pparrott@ckbrlaw.com

Richard Podoll, rich@podoll.net

Robert Graham, bob@fostergraham.com

Robert Podoll, rob@podoll.net

Robertson Cohen,
rcohen@cohenlawyers.com

Sean Connelly, sean@sconnellylaw.com

Steven Berman,
sberman@shumaker.com

US Trustee,
UstPRegion19.CV.ECF@usdoj.gov

William Leone,
William.leone@nortonrosefulbright.com

/s/  Lisa R. Kraai
Allen Vellone Wolf Helfrich & Factor P.C.

**Aple.Appx. 57**

DocuSign Envelope ID: BBACABC9-1732-420E-85F3-4E776387800D

# Heritage Title Company - Boulder

4888 Pearl East Cir, Suite 300E, Boulder, CO 80301
Phone: (303)443-3333 | Fax: 303-628-1668

## FINAL SELLER'S STATEMENT

| | |
|---|---|
| **Settlement Date:** July 21, 2023 | **Escrow Number:** HS0819632 |
| **Disbursement Date:** July 21, 2023 | **Escrow Officer:** Michelle Gay |
| | **Email:** Michelle.Gay@heritagetco.com |

**Buyer:** Fern Rock Canyon LLC, a Colorado limited liability company

**Seller:** Harvey Sender as Trustee for Michael J. Roberts

**Seller:** Sandstone Ventures LLC

**Property:** 1136, 1144, 1146, 1148, 1152 & 1154 Hwy 7 Bus. & 1138 Boynton
Allenspark, CO 80510
LOT 2 BLK 2 FERNCLIFF; LOT 3 & E 1/2 LOT 4 BLK 2 FERNCLIFF; LOT 5 SPANGLERS
ADD TO FERNCLIFF 25-3N-73; LOT 4 LESS S 7 FT & TR 1665 ADJ ON W SPANGLERS
ADD TO FERNCLIFF SW 1/4 SE 1/4; TRACT 1666 LESS A & TRACT 1667 25-3N-73; S 7 FT.
LOT 7 & LOT 3 & PT OF TR 1666A OVERLAPPING & TR 1249 LESS PT TO ROGERS
FERNCLIFF PARK & SW 1/2 1666A & PT OF TR 1665 25-3N-73; LOT 2 BLK 1 FERNCLIFF
SPANGLER'S ADD TO FERNCLIFF

| | | $ DEBITS | $ CREDITS |
|---|---|---|---|
| **FINANCIAL CONSIDERATION** | | | |
| Sale Price of Property | | | 1,300,000.00 |
| Seller Credit | | 140,000.00 | |
| **PRORATIONS/ADJUSTMENTS** | | | |
| County Taxes (8 parcels) at $6,322.00  01/01/23 to 07/21/23 ($6,322.00 / 365 X 201 days) | | 3,481.43 | |
| **TITLE & ESCROW CHARGES** | | | |
| Real Estate Closing Fee (Buyer) | Heritage Title Company - Boulder | 375.00 | |
| Tax Certificates (8) | Heritage Title Company - Boulder | 108.00 | |
| Owner's Title Insurance | Heritage Title Company - Boulder | 1,538.00 | |
| Policies to be issued: | | | |
| Owners Policy | | | |
| Coverage: $1,300,000.00 Premium: $1,538.00 Version: ALTA Owner's Policy 2021 | | | |
| **MISCELLANEOUS CHARGES** | | | |
| 2022 taxe due R0057464 | Boulder County Treasurer | 997.70 | |
| 2022 taxe due R0057690 | Boulder County Treasurer | 60.89 | |
| 2022 taxe due R0057691 | Boulder County Treasurer | 584.69 | |
| 2022 taxe due R0057693 | Boulder County Treasurer | 433.24 | |
| 2022 taxe due R057363 | Boulder County Treasurer | 11.08 | |
| 2022 taxe due R057376 | Boulder County Treasurer | 1,024.46 | |
| 2022 taxe due R057639 | Boulder County Treasurer | 599.44 | |
| 2022 taxes due R0057692 | Boulder County Treasurer | 1,084.94 | |
| Commission - Listing Broker | RE/MAX of Boulder | 91,000.00 | |
| **Subtotals** | | 241,298.87 | 1,300,000.00 |
| **Balance Due TO Seller** | | 1,058,701.13 | |
| **TOTALS** | | 1,300,000.00 | 1,300,000.00 |

(HS0819632/53) July 20, 2023 05:04 PM

**Aple.Appx. 58**

DocuSign Envelope ID: BBACABC9-1732-420E-85F3-4E776387800D

FINAL SELLER'S STATEMENT - Continued

I have carefully reviewed the Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Settlement Statement.

SELLER:

Michael J. Roberts, Sr., Debtor and Managing/Sole member of Sandstone Ventures LLC, a Colorado Limited Liabiltiy Company

By: *Countersigned*
Harvey Sender, as Chapter 7 Trustee for the bankruptcy estate of Michael J. Roberts, Sr.,
Debtor, and on behalf of Sandstone Ventures LLC, a Colorado Limited Liabiltiy Company Case No. 22-10521-JGR, United States Bankruptcy Court for the District of
Colorado. Sandstone Ventures LLC

Listing Agent/Broker

*Julie Gullett*
RE/MAX of Boulder

To the best of my knowledge, the Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Heritage Title Company - Boulder
Settlement Agent

(HS0819632/53) July 20, 2023 05:04 PM

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re Michael Joseph Roberts, Sr., | Case No. 22-10521-JGR |
| Debtor. | Chapter 7 |

## TRUSTEE'S REPORT OF SALE
### (245 Linden Drive, Boulder, CO 80304)

Chapter 7 Trustee Harvey Sender for the estate of Debtor Michael J. Roberts, Sr. ("Trustee"), pursuant to 11 U.S.C. § 363 and FED. R. BANKR. P. 6004(f), submits this Report of Sale for Debtor's former homestead, the real property located 245 Linden Drive, Boulder, CO 80304 (the "**Linden Property**").

1.      On September 12, 2023, the Court entered its Order Granting Second Motion to Sell Real Property pursuant to 11 U.S.C. § 363(b) & (m) (245 Linden Drive, Boulder, CO 80304), Dkt. No. 672 (the "**Sale Order**").

2.      The sale of the Linden Property closed October 6, 2023. As shown on the **settlement** statement attached as **Exhibit 1**, the Trustee received net proceeds of $2,831,833.42 from the sale.

3.      The original contract price for the Linden Property was $3,950,000. As shown on Exhibit 1, however, the closing sale price was $3,770,000. The $180,000 difference reflected credits afforded the buyers to resolve inspection issues, the most significant of which was a $120,000 credit for water service to the house. The current water provider is the Spring Valley Water District, which is a special district

servicing 36 homes. The water pressure available to those homes is insufficient to support fire equipment. As a result, the City of Boulder is mandating the District's water service be turned over to/annexed into the City of Boulder. The estimated cost of doing so is $4.2 million. Divided by the 36 homes in the District, that is about $117,000 per home. This is an assessment that will be levied on the Linden Property and unless paid the home will be without water service. This does not include any Boulder City permit fees or additional fees, which could drive the cost to $150,000 or more per home. The Trustee agreed to provide buyers a $120,000 credit for the water assessment.

4.      Buyers' inspection report also identified the following issues, and buyers sought the following credits (supported by contractor quotes) to address them:

(a)     Mold remediation: $15,225.

(b)     Radon remediation: $6,300.

(c)     Removal of unsafe climbing wall: $11,127.

(d)     Repairing fence and masonry column near driveway that was hit by a car previously: $10,881.

(e)     Replacement of rusted out gate control box for doors to driveway: $12,314.

(f)     Replace pool cover that was ripped and dysfunctional: $5,988.

(g)     Resecure log beam by garage backed into by a car to ensure structural integrity of the roof: $3,270.

(h)     Replace two large water damaged windows at the front of the living room: $13,638.

Aple.Appx. 61

     (i)       Replace light switches that were part of the smart home system that was ripped out by the Debtor: $6,425.

     (j)       Worn out HVAC and Boiler systems: $73,000.

5.     In addition to the above, buyers' inspection report identified the following issues with the house for which buyers did *not* seek dollar for dollar closing credits:

     (a)      House control system that controlled the driveway gates, indoor/outdoor lighting, security system, and interior/outdoor audio systems. Estimated replacement cost: $75,000 - $100,000.

     (b)      Electrical repairs/exposed conduit.

     (c)      Replacement of one garage door.

     (d)      Exterior paint/staining: estimated cost, $25,000-$30,000.

     (e)      Exterior door repair and touch up: estimated cost, $5,000-$10,000.

     (f)      Repair/replace patio stones that have shifted and created a trip hazard.

     (g)      Repair or replace primary bedroom glass door that does not open.

     (h)      Replace water filtration system.

6.     For all the above, buyers requested a total inspection credit of $246,000, which included the $120,000 credit for the water assessment. The Trustee agreed to a total credit of $180,000, and the closing price was reduced by that amount to $3,770,000.

7.     In preparing the property for sale and staging it, the Trustee paid approximately $75,000 in expenses largely to address additional deferred maintenance, which included: painting, $22,000; carpet replacement, $5,800;

Aple.Appx. 62

cleaning (including windows), $3,200; pool and yard cleanup, $5,100; junk removal, 4,000; irrigation system repair, $4,900; and air conditioning repair, $1,600.[1]

8.     In addition, on September 29, 2023, the Friday before the closing scheduled for Tuesday October 3rd, gas leaks were discovered in the pool mechanical house and at the built-in BBQ grill on the stone patio just outside the main house, which resulted in Xcel Energy turning off the gas to the house until repairs were made. Thus, closing was extended to October 6th to afford the Trustee time to make an additional $18,300 in repairs to fix the gas leaks and to repair the stone patio that was dug up to repair the gas line to the BBQ.

9.     The Trustee has remitted Debtor's $105,000 claimed homestead exemption to him, after which the balance of funds in the estate is $5,918.055.43.

Dated: October 11, 2023.

ALLEN VELLONE WOLF HELFRICH & FACTOR PC

*/s/ Michael T. Gilbert*
Michael T. Gilbert
Jennifer E. Schlatter
Brenton L. Gragg
1600 Stout Street, Suite 1900
Denver, Co 80202
(303) 534-4499
mgilbert@allen-vellone.com
jschlatter@allen-vellone.com
bgragg@allen-vellone.com

*Attorneys for Chapter 7 Trustee Harvey Sender*

---

[1]     Debtor previously estimated there was at least $70,000 in deferred maintenance. *See* Dkt. No. 519, ¶ 8.

4

### L.B.R. 9013-1 Certificate of Service:

The undersigned certifies that on October 11, 2023, I served by CM/ECF pursuant to L.B.R. 5005-4(a) a copy of the foregoing on those entitled to service pursuant to the FED. R. BANKR. P. and the L.B.R. at the following addresses:

Brent Cohen, bcohen@lewisroca.com

Chad Caby, ccaby@lewisroca.com

Eliot Turner,
Eliot.turner@nortonrosefulbright.com

Harvey Sender,
harveysender1@sendertrustee.com

Holly Shilliday,
hshilliday@mccarthyholthus.com

Margaret Pflueger,
mpflueger@ckbrlaw.com

N. April Norton,
bankrupcty@janewaylaw.com

Paul Moss, paul.moss@usdoj.gov

Phillip A. Parrott,
pparrott@ckbrlaw.com

Richard Podoll, rich@podoll.net

Robert Graham, bob@fostergraham.com

Robert Podoll, rob@podoll.net

Robertson Cohen,
rcohen@cohenlawyers.com

Sean Connelly, sean@sconnellylaw.com

Steven Berman,
sberman@shumaker.com

US Trustee,
UstPRegion19.CV.ECF@usdoj.gov

William Leone,
William.leone@nortonrosefulbright.com

Jeffrey S. Brinen
jsb@kutnerlaw.com

Ilene Dell'Acqua
idellacqua@mccarthyholthus.com

Seth P. Traub
straub@shumaker.com

/s/  Lisa R. Kraai
Allen Vellone Wolf Helfrich & Factor P.C.

5

Aple.Appx. 64

**Heritage Title Company - Boulder**
4888 Pearl East Cir, Suite 300E, Boulder, CO 80301
Phone: (303)443-3333 | Fax: 303-628-1668

## FINAL SELLER'S STATEMENT

| | |
|---|---|
| **Settlement Date:** October 6, 2023 | **Escrow Number:** HS0822835 |
| **Disbursement Date:** October 6, 2023 | **Escrow Officer:** Michelle Gay |
| | **Email:** Michelle.Gay@heritagetco.com |

**Borrower:** Philip Guiliano, as to a 90% interest
**Borrower:** Fox Magdovitz, as to a 10% interest
**Seller:** Harvey Sender Bankruptcy Trustee for Michael J. Roberts, Debtor
**Property:** 245 Linden Dr
Boulder, CO 80304-0472
Lot 33 Spring Valley Estates

| | | $ DEBITS $ | CREDITS |
|---|---|---|---|
| **FINANCIAL CONSIDERATION** | | | |
| Sale Price of Property | | | 3,770,000.00 |
| **PRORATIONS/ADJUSTMENTS** | | | |
| County Taxes at $32,625.23 | 01/01/23 to 10/06/23 ($32,625.23 / 365 X 278 days) | 24,848.81 | |
| **COMMISSIONS** | | | |
| Real Estate Commission | RE/MAX of Boulder | 90,480.00 | |
| | $3,770,000.00 @ 2.4000% = $90,480.00 | | |
| Real Estate Commission | Wright Kingdom Real Estate | 105,560.00 | |
| | $3,770,000.00 @ 2.8000% = $105,560.00 | | |
| **TITLE & ESCROW CHARGES** | | | |
| Title - Real Estate Closing Fee | Heritage Title Company - Boulder | 190.00 | |
| Title - Tax Certificate | Heritage Title Company - Boulder | 13.50 | |
| CO 110.1-06 - Deletion - Standard Exceptions | Heritage Title Company - Boulder | 95.00 | |
| Title - Owner's Title Insurance | Heritage Title Company - Boulder | 7,074.00 | |
| Policies to be issued: | | | |
| Owners Policy | | | |
| Coverage: $3,770,000.00 Premium: $7,074.00  Version: ALTA Owner's Policy 2021 | | | |
| **GOVERNMENT CHARGES** | | | |
| Recording Fees ($272.00) | Heritage Title Company - Boulder | 76.00 | |
| CO - Other  $38.00 | | | |
| CO - Other  $38.00 | | | |
| **PAYOFFS** | | | |
| Payoff of First Mortgage Loan 0096094008 | Wells Fargo Home Mortgage | 418,164.06 | |
| Total Payoff | | 418,164.06 | |
| Payoff of Second Mortgage Loan 650-650-9094178-1998 | Wells Fargo Bank, N.A.(HELOC) | 288,415.21 | |
| Total Payoff | | 288,415.21 | |
| **MISCELLANEOUS CHARGES** | | | |
| Sewer Escrow | City of Boulder | 200.00 | |
| Water Escrow | Spring Valley Water District | 3,000.00 | |
| **Subtotals** | | 938,116.58 | 3,770,000.00 |
| **Balance Due TO Seller** | | 2,831,883.42 | |
| **TOTALS** | | 3,770,000.00 | 3,770,000.00 |

Exhibit 1
Page 1 of 2

**Aple.Appx. 65**

FINAL SELLER'S STATEMENT - Continued

I have carefully reviewed the Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Settlement Statement.

SELLER:

Michael J. Roberts,  Debtor

By: *Harvey Sender*

Harvey Sender, as Chapter 7 Trustee for the bankruptcy estate of Michael J. Roberts,
Debtor, under United States Bankruptcy Court for the District of
Colorado, Case No. 22-10521-JRG

Listing Agent/Broker

*Janet Leap*
RE/MAX of Boulder

To the best of my knowledge, the Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

*Rachel Dier*

Heritage Title Company - Boulder
Settlement Agent

**Exhibit 1**
**Page 2 of 2**

(HS0822835/113) October 03, 2023 02:03 PM

**Aple.Appx. 66**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:22-cv-02699-DDD

IN RE:

MICHAEL JOSEPH ROBERTS, SR.,

     Appellant,

v.

PDC, LLC;
TIMOTHY FLAHERTY;
TIMOTHY KNEEN; AND
RIVIERA COUNTRY CLUB, S. DE R.L. C.V.S.,

     Appellees.

---

### ORDER AFFIRMING BANKRUPTCY COURT ORDER AND JUDGMENT

---

In this bankruptcy appeal, appellant-debtor Michael Roberts, Sr. seeks to vacate the bankruptcy court's decision to convert the case from a Chapter 11 to a Chapter 7 proceeding. For the reasons outlined below, the bankruptcy court's decision is affirmed.

### PROCEDURAL AND FACTUAL BACKGROUND[1]

The present dispute began after Mr. Roberts, appellee-creditor Mr. Flaherty, and appellee-creditor Mr. Kneen formed appellee-creditor

---

[1] Much of the facts outlined in this section are taken from findings of fact made in opinions and orders issued by the Colorado state district court in the underlying lawsuit among the parties to this case. Those opinions and orders were before the bankruptcy court, and the court reviews the bankruptcy court's adoption of those findings under a "clearly erroneous" standard as outlined below.

Aple.Appx. 67

PdC, LLC—a Colorado LLC formed to purchase and develop real estate in Mexico. *See* Doc. 16-6 at 1–6. PdC also had a Mexican subsidiary, Riviera Country Club S. de R.L. de C.V.S ("Riviera"), which was used to purchase property in Mexico. *Id.* at 5–6. PdC and Riviera purchased real estate for several proposed Mexican real estate developments known as "Sereno." *Id.* at 6–7. Mr. Roberts was appointed as a manager of Riviera along with Messrs. Flaherty and Kneen. *Id.* at 6.

Several of the relevant properties that Riviera acquired were subject to liens held by third parties, and the properties were subject to foreclosure litigation at the time of purchase. *Id.* at 6–7. There was an internal dispute over settling the foreclosure litigation (with Mr. Roberts opposing settlement and Messrs. Flaherty and Kneen supporting settlement), but Riviera eventually settled with the lienholder of the properties in December 2015. *Id.* at 7. Pursuant to that settlement, Riviera would pay the lienholder $6.5 million in exchange for release of the lien. *Id.* As part of that payment, Riviera had to pay an initial $1 million, and Messrs. Flaherty and Kneen each loaned half of the funds for that payment to PdC/Riviera so that the entity could make that payment. *Id.* The remainder of the payment was due in early 2016, but Riviera made several extension payments to delay that final payment deadline to December 2016. *Id.* at 7–8. Eventually, Mr. Flaherty proposed loaning the remaining balance owed to PdC/Riviera to cover the payment. *Id.* at 8–9. Mr. Roberts objected and offered to loan the money himself. *Id.* at 9. The managers of PdC/Riviera eventually agreed to have Mr. Roberts loan the money to pay off the debt as memorialized in handwritten notes kept at Mr. Roberts's office. *Id.* at 9.

But instead of paying off the debt on behalf of the entities PdC and Riviera, Mr. Roberts "conceived a plan whereby he would secretly pay $5,500,000 to acquire personal ownership of real property worth

Aple.Appx. 68

$12,200,000 which belonged to an entity to which he owed a duty of loyalty." *Id.* at 10. As a note memorializing this plan reveals, Mr. Roberts planned to "skirt [Riviera] and sign away their rights and position by using [Mr. Roberts'] power of attorney." *See id.* at 8. Mr. Roberts's lawyer then appeared in Mexican court to have the payment and settlement approved, and Mr. Roberts or his counsel apparently represented to the court that Mr. Roberts had personally paid off the debt and had therefore acquired the ownership rights to the properties from PdC/Riviera. *Id.* at 10–11. Mr. Roberts then attempted to foreclose on the property and prevent PdC/Riviera's other managers from accessing the property (including through the use of guards armed with machetes). *Id.* at 10–13.

All of this eventually culminated in a state court case in Colorado between Mr. Roberts, on one side, and Messrs. Flaherty and Kneen (among others), on the other. That court found numerous instances of Mr. Roberts's misconduct not only pre-litigation but also during that pending state litigation. *See id.* at p. 20. For instance, the courts overseeing that litigation held Mr. Roberts in contempt for violating a preliminary injunction order, *id.*, struck Mr. Roberts's defenses and cross claims as a sanction, *see* Doc. 15 at 12, ordered Mr. Roberts to be incarcerated pursuant to contempt orders, *see id.*, and ordered Mr. Roberts to forfeit his passport due to fears he would flee, *see* Doc. 16-3 at 130–31. The state courts made various adverse findings against Mr. Roberts, including that he evaded service, fraudulently transferred his rights to the properties to defraud or hinder his creditors, fraudulently concealed his assets to hinder or delay his creditors, and intended to flee to Mexico with assets to avoid the state courts' jurisdiction. *See id.* at 131–45.

A few days before a significant state court hearing in his case, and while he was imprisoned pursuant to a state court contempt order, Mr.

- 3 -

Roberts filed the instant bankruptcy petition pursuant to Chapter 11 *See* Doc. 1 at 6. That filing paused the state court litigation, at least temporarily, until the state court found that the automatic bankruptcy stay pursuant to 11 U.S.C. § 362(b)(4) did not apply to at least part of those proceedings. *See id.* After the bankruptcy case started, on June 23, 2022, the state court issued a lengthy order awarding over $20 million in damages and interest to his creditors. Doc. 16-6 at 33.

Meanwhile, in the bankruptcy litigation, the creditors filed a motion to convert the proceeding from a Chapter 11 case to a Chapter 7 case on the basis that Mr. Roberts had filed his petition in bad faith. After holding a hearing on the motion, the bankruptcy court found that Mr. Roberts was "regularly evasive and non-responsive on cross-examination" and agreed "with the assessment of Roberts' lack of credibility made previously by three Denver District Court judges." Doc. 16-1 at 474. And on September 23, 2022, the bankruptcy court granted the creditors' motion and converted the case from Chapter 11 to Chapter 7. *Id.* That Order outlined Mr. Roberts's state-court litigation (and pre-litigation) misconduct, including several other adversary proceedings Mr. Roberts initiated contemporaneously. *Id.* at 474-79. The court summarized its order as follows:

> Roberts has engaged in a level of pre-petition litigation misconduct not previously seen by this Court. He never presented an excuse for noncompliance with court orders—or any efforts to show compliance—and exhibited utter disregard for valid orders of the Denver District Court. His bankruptcy filing attempts to alter not only the outcome of his financial affairs, but a bankruptcy outcome under which he never intends to purge his contempt of the Denver District Court. He seeks to wave a "magic wand" to sanitize his transgressions and remain in control of his assets as a fiduciary to his creditors for five more years. This case demands the swift appointment of a neutral third party in the form of a Chapter 7 trustee.

Aple.Appx. 70

Doc. 16-1 at 485.

## APPLICABLE LAW

Pursuant to 11 U.S.C. § 1112(b), a bankruptcy court "shall convert" a Chapter 11 bankruptcy case to a Chapter 7 bankruptcy case "or dismiss" the case, "whichever is in the best interests of the creditors and the estate," for "cause." The statute provides a list of sixteen instances that amount to "cause" for purposes of conversion or dismissal. 11 U.S.C. § 1112(b)(4). In an unpublished decision, the Tenth Circuit has found that these factors are non-exhaustive and that the debtor's "bad faith" may also amount to cause for purposes of conversion. *In re Winslow*, 949 F.2d 401, 1991 WL 261696, at *2 (10th Cir. 1991). This accords with published decisions in other circuits. *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings"); *In re Piazza*, 719 F.3d 1253, 1263 (3rd Cir. 2013) ("As interpreted by the Supreme Court and nearly ever federal court of appeals, 'for cause' under [11 U.S.C.] §§1112(b) and 1307(c) includes bad faith or a lack of good faith.").

"In determining whether a debtor has acted in bad faith, courts, in general, consider any factors which indicate that a petition was filed to abuse the purposes of the Bankruptcy Code, or to delay or frustrate the legitimate efforts of creditors to enforce their rights." *Winslow*, 1991 WL 261696, at *2. In the related context of a conversion from Chapter 13 to Chapter 7 pursuant to 11 U.S.C. § 1307(c), the Tenth Circuit evaluates bad faith under the "totality of the circumstances." *In re Gier*, 986 F.2d 1326, 1329 (10th Cir. 1993). Relevant factors for determining whether a Chapter 11 petition was made in bad faith include whether:

Aple.Appx. 71

- the debtor has one asset;

- the pre-petition conduct of the debtor has been improper;

- there are only a few unsecured creditors;

- the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;

- the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

- the filing of the petition effectively allows the debtor to evade court orders;

- the debtor has no ongoing business or employees; and

- the lack of possibility of reorganization.

*See In re Charfoos*, 979 F.2d 390, 393 (6th Cir. 1992) (borrowing test from *In re Little Creek*, 779 F.2d at 1072–73 and applying factors to dismissal under 11 U.S.C. § 1112(b))).

A bankruptcy court must not convert a case, however, if (1) "the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests" of the parties and the estate, and the debtor or another party establishes that (2) the bankruptcy plan will be confirmed within an appropriate timeframe, (3) there was reasonable justification excusing the grounds for conversion, *and* (4) the ground for conversion can be cured within a reasonable time. *See* 11 U.S.C. § 1112(b)(2).

District courts in the Tenth Circuit typically review a bankruptcy court's legal conclusions *de novo* and factual findings for clear error. *In re Cowen*, 849 F.3d 943, 946 (10th Cir. 2017). As to a bankruptcy court's decision to convert or dismiss a case pursuant to 11 U.S.C. § 1112(b)(2),

Aple.Appx. 72

other circuits have applied a similar "abuse of discretion" standard. *See In re Daughtrey*, 896 F.3d 1255, 1273-74 n.48 (11th Cir. 2018) (adopting "abuse of discretion" standard for review of a denial of a motion to convert and collecting authority from other circuits); *see also In re Gier*, 986 F.2d at 1328 (Tenth Circuit applying "clearly erroneous" standard to review of bankruptcy court's factual findings supporting dismissal of Chapter 13 petition due to bad faith).

## DISCUSSION

Mr. Roberts appeals the bankruptcy court's conversion of the case from Chapter 11 to Chapter 7 on the basis of his bad faith. In evaluating Mr. Roberts's bad faith, the bankruptcy court first reviewed the *Charfoos* factors, finding that seven of the eight factors weighed in favor of a finding of bad faith. In particular, the bankruptcy court found:

- Mr. Roberts's pre-petition conduct amounted to bad faith because he "committed fraud and breached his fiduciary duties; lied under oath multiple times; and disobeyed direct orders of the Denver District Court";

- But-for Mr. Roberts's prepetition misconduct, the PdC creditors would be the only significant unsecured creditors in the case;

- Mr. Roberts's property is effectively in foreclosure;

- Mr. Roberts filed his bankruptcy petition on the eve of a damages hearing that had already been continued three times and "was facing multiple millions of dollars in judgments against him.";

- Mr. Roberts filed for bankruptcy while in jail for civil

**Aple.Appx. 73**

contempt, and his petition secured his prompt release from jail without purging his contempt;

- Mr. Roberts is an individual investor who has no ongoing business or employees; and

- Mr. Roberts's plan lacked feasibility in part because it may violate the state courts' orders.

Doc. 16-1 at 481–82.

Mr. Roberts, particularly in his reply brief, primarily if not solely takes issue with several of these factual findings rather than the bankruptcy court's legal conclusions. I review these factual findings under a "clearly erroneous" standard. *In re Gier*, 986 F.2d at 1328.

First, as to the specific allegation that Mr. Roberts used his petition as a means to end his contempt related imprisonment, Mr. Roberts argues that the bankruptcy court misunderstood his purposes for filing. *See* Doc. 17 at 7-9. Mr. Roberts suggests that he filed the bankruptcy petition because he feared having to defend himself at the state court damages hearing from jail without access to his attorneys so he therefore elected to file in the bankruptcy court. *See id.* This explanation, though, does little to support a finding that he filed the petition for legitimate bankruptcy purposes. In fact, Mr. Roberts's admission that the "timing of the Petition was meant to enable the Petitioner to attend and meaningfully participate in the [state court] damage hearing" bolsters a finding that he filed the petition for reasons other than those underlying the bankruptcy code. Doc. 17 at 23. In any event, the bankruptcy court could have reasonably inferred that Mr. Roberts sought to use his bankruptcy petition as a means to free himself from confinement in light of all of his other pre-litigation misconduct,

**Aple.Appx. 74**

his recent and largely unsuccessful habeas filings, and the suspicious timing of the bankruptcy petition on the eve of a significant hearing in the state court litigation.

As to his prepetition conduct more generally, Mr. Roberts argues that the bankruptcy court impermissibly relied on the various state court orders finding that he committed fraud, lied under oath, and violated court orders, all in relation to the circumstances underlying his petition. *See* Doc. 17 at 17-21. Mr. Roberts's argument largely amounts to a re-litigation of the issues and arguments presented and rejected by the state court (and the bankruptcy court). In any event, Mr. Roberts presents no logical or legal authority for the proposition that it is improper to rely on or defer to a state court's findings of fact when evaluating bad faith in this context. And his suggestion that the state courts never made any findings of fraud or wrongdoing are belied by the text of those state court orders. *See, e.g.*, Doc. 16-3 at 131–144; Doc. 16-6 at 10 (finding that Mr. Roberts "lied" to his now creditors), 10–11, (finding that he made misrepresentations to a Mexican court), 12–13 (finding that his actions "were deliberate and intentional"), 20–21 (finding that he took "other intentional actions that deliberately violated the preliminary injunction entered against him").

Mr. Roberts also argues that his petition was not filed to avoid imminent adverse judgments or foreclosure. As to foreclosure, he argues that the Denver court never issued a writ commanding the sheriff to seize his property. But this misapprehends the bankruptcy court's finding that, "Although not posted for foreclosure, Roberts' property has been attached to satisfy his creditors—the same function as a foreclosure—and Roberts has been unsuccessful in defending against the attachment in state court." Doc. 16-1 at 483. This appears to fit neatly into one of the *Charfoos* factors weighing in favor of bad faith

despite Mr. Roberts's procedural arguments that his property has not been fully foreclosed upon. And as to filing the petition to avoid adverse state court judgments, the bankruptcy court did not err in inferring that, given all of Mr. Roberts's prelitigation misconduct, filing of separate actions, and fraudulent behavior, that he did file the petition to avoid such potential judgments and not for legitimate bankruptcy purposes.

As to unsecured creditors, Mr. Roberts argues that the parties to this case are not his largest unsecured creditor. Mr. Roberts suggests that there was "no evidence of amounts actually owing to" the creditors in this case but then immediately notes that the state court's award of $21 million in damages to the creditors was before the bankruptcy court. Doc. 17 at 21. He then suggests, without citation, that the state court order "ignored [Riviera's] debt." *Id.* But the state court order appears to have been properly submitted before the bankruptcy court, and Mr. Roberts's protestations that it should be undone must be directed to the state appellate courts, not this court.

Finally, Mr. Roberts argues that "unusual circumstances" compelled the bankruptcy court not to convert the case despite any alleged bad faith. He argues that his imprisonment and the state courts' other "flagrant violation[s] of [his] due process rights" were unusual circumstances that justified the filing of his bankruptcy petition. *See* Doc. 14 at 48-51. Here, Mr. Roberts appears to concede that undoing his imprisonment and staying various court orders were primary motivations for filing the bankruptcy petition—both of which are not proper bankruptcy purposes. *See In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 284 (4th Cir. 2007) (affirming dismissal of Chapter 11 petition on bad-faith grounds due to petitioner's use of petition to stall underlying court proceedings between the parties and rejecting petitioner's related due-process claims). His argument also ignores the

other requirements under 11 U.S.C. § 1112(b)(2), including whether the plan would be confirmed in time and whether the grounds for conversion were both justified and curable within a reasonable time. The bankruptcy court made no such findings, and this court sees no basis to invoke this exception.

To summarize, the bankruptcy court acted within its wide discretion to find that Mr. Roberts filed his petition in bad faith. That court based its decision on voluminous documents, including orders from multiple other judges, Mr. Roberts's own testimony at the hearing in front of the court, the court's assessment of his credibility, and even Mr. Roberts's filings before the bankruptcy court. The evidence of his bad faith was more than sufficient to allow the court to conclude that the petition was "filed to re-litigate and invalidate the judgments of the Denver District Court, manipulate the judicial system, and seek to regain control of Roberts' property." Doc. 16-1 at 483. Those are not proper bankruptcy purposes, and conversion was appropriate in these circumstances under 11 U.S.C. § 1112.

## CONCLUSION

The bankruptcy court's Order Converting Chapter 11 Case to Chapter 7 (Doc. 1-1) and associated Judgment (Doc. 1-2) are **AFFIRMED**, and Mr. Roberts's appeal is **DENIED**.

DATED: December 1, 2023                    BY THE COURT:

~~Daniel D. Domenico~~
United States District Judge

Aple.Appx. 77

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

IN RE:                                )
     ROBERTS, MICHAEL            )     Case No. 22-10521JGR
                                 )     Chapter 7
     Debtor                      )

---

# REPORT OF SALE

COMES NOW Dickensheet & Associates, Inc., Auctioneer, in the above captioned proceeding and states as follows:

1. On June 12th, 2023, the Trustee in the above-captioned case obtained an order from the Court for the sale of assets at public auction, and for the employment and compensation of the undersigned auctioneer.

2. The property consigned by the Trustee was sold at public online auction at www.Dickensheet.bidwrangler.com by Dickensheet & Associates, Inc., 1501 W Wesley Avenue, Denver, Colorado 80223. A list of each item sold, along with the price and the buyer, is attached. A list of registered buyers is also attached.

3. The total proceeds of $285,675.00 received for the property consigned by the Trustee were mailed or delivered to the Trustee on March 26th, 2024.

4. The undersigned was paid a commission of ten percent (10%) totaling $28,675.50 and expenses of $3,336.00 were incurred regarding this estate.

5. If any items consigned by the Trustee were not sold because no bids were received, the items have been returned to the Trustee or sold at a later auction date.

6. The undersigned hereby certified that neither he nor any of his employees acquired any interest, either direct or indirect, in any of the property sold.

DATED:  March 24th, 2024

                              Respectfully submitted,

                              Christine Dickensheet
                              Dickensheet & Associates, Inc.
                              1501 W Wesley Avenue
                              Denver, Colorado  80223

## CERTIFICATE OF MAILING

    I hereby certify that a copy of the foregoing REPORT OF SALE was CM/ECF or mailed, postage prepaid, to the following:

Harvey Sender
Chapter 7 Trustee
600 17th Street, Suite 2800 South
Denver, Colorado  80202

United States Trustee
District of Colorado
1961 Stout St #12-200
Denver, Colorado 80294

United States Bankruptcy Court
721 19th Street
Denver, Colorado  80202

DATED: March 24th, 2024

*Chstn Diosher*

# Seller Settlement



Settlement # 2-240149-1

Dickensheet & Associates, Inc
1501 W Wesley Ave
Denver, CO 80223
Phone: (303) 934-8322

## Seller Information

| | |
|---|---|
| Seller Name: | Bankruptcy, Roberts |
| Seller Number: | 2 |
| Company: | Harvey Sender, Trustee |
| Location: | 600 17th Street<br>Suite 2800<br>Denver, CO 80202 |
| Phone: | |
| Email: | |

## Auction Information

| | |
|---|---|
| Auction: | COLLECTOR, CLASSIC, SPECIALTY, OTHER VEHICLES, ATVs |
| Date: | 09/08/2023 00:00 |
| Location: | 1501 West Wesley Ave<br>Denver, CO 80223 |

| Lot Num | Description | Bidder | Lot SubTotal | Comm Total | Lot Net |
|---|---|---|---|---|---|
| 0298 | 1967 Ford Mustang Fastback, 7T028220298, KEY- - ON BEHALF OF THE US BANKRUPTCY COURT, ESTIMATION 45 DAY TITLE Year: 1967 Make: Ford Model: Mustang GTA Vehicle Type: Passenger Car Mileage:EXEMPT Body Type: Fastback 2+2  Drive Line: RWD Engine Type: 390 V8 Fuel Type: Gasoline Transmission: C6 Auto VIN #: 7TO2S220298 Features and Notes: The Marti Report shows a special paint code for this car. THERE IS NO BUYERS PREMIUM ON THIS VEHICLE. THE BUYER IS RESPONSIBLE FOR EMISSIONS CERTIFICATION WHERE APPLICABLE. | 5271 | $60,050.00 | ($6,005.00) | $54,045.00 |
| 0896 | 1996 Dodge Viper GTS, 1B3ER69E9TV200896, KEY- - ON BEHALF OF THE BANKRUPTCY COURT, POSSIBLE 45 DAY TITLE Year: 1996 Make: Dodge Model: Viper Vehicle Type: Passenger Car Mileage: 20,982 EXEMPT Body Type: 2 Door Coupe Trim Level: GTS Drive Line: RWD Engine Type: V10, 8.0L (488 CID); OHV 20V; SFI Fuel Type: Gasoline Transmission: 6-speed Manual VIN #: 1B3ER69E9TV200896 THERE IS NO BUYERS PREMIUM ON THIS VEHICLE. THE BUYER IS RESPONSIBLE FOR EMISSIONS CERTIFICATION WHERE APPLICABLE. | 5343 | $45,125.00 | ($4,512.50) | $40,612.50 |
| 2445 | 1970 Plymouth Barracuda AAR, BS23J0B292445, KEY- - ON BEHALF OF THE US BANKRUPTCY COURT-FACEBOOK LIVE VIDEO AVAILABLE-45 DAY TITLE, CORRECTED ENGINE DISPLACEMENT Year: 1970 Make: Plymouth Model: Barracuda  Vehicle Type: Passenger Car Mileage:EXEMPT Body Type: Coupe Drive Line: RWD Engine Type: 340 V8 6-Barrel Fuel Type: Gasoline Transmission: 4-speed Manual VIN #: BS23J0B292445 THERE IS NO BUYERS PREMIUM ON THIS VEHICLE. THE BUYER IS RESPONSIBLE FOR EMISSIONS CERTIFICATION WHERE APPLICABLE. | 5271 | $90,200.00 | ($9,020.00) | $81,180.00 |
| 3559 | 2015 Mercedes-Benz E-63 AMG S 4Matic, WDDHH7GB0FB143559, KEY- - ON BEHALF OF | 5150 | $26,600.00 | ($2,660.00) | $23,940.00 |

**Aple.Appx. 80**

| Lot Num | Description | Bidder | Lot SubTotal | Comm Total | Lot Net |
|---|---|---|---|---|---|
| | THE US BANKRUPTCY COURT, POSSIBLE 45 DAY TITLE Year: 2015 Make: Mercedes-Benz Model: E-Class Vehicle Type: Passenger Car Mileage:124,915 Body Type: 4 Door Wagon Trim Level: E63 AMG S 4Matic Drive Line: AWD Engine Type: V8, 5.5L; Twin Turbo Fuel Type: Gasoline Transmission:AUTO VIN #: WDDHH7GB0FB143559 THERE IS NO BUYERS PREMIUM ON THIS VEHICLE. THE BUYER IS RESPONSIBLE FOR EMISSIONS CERTIFICATION WHERE APPLICABLE. Experian Autocheck shows 2 calculated owners and 1 calculated accidents for this vehicle. Please review the terms and conditions for this sale and this item. | | | | |
| 8296 | 1967 Chevrolet Camaro, 12437L158296, KEY- - ON BEHALF OF THE US BANKRUPTCY COURT-POSSIBLE 45 DAY TITLE Year: 1967 Make: Chevrolet Model: Camaro Super Sport Vehicle Type: Passenger Car Mileage:EXEMPT Body Type: Coupe Drive Line: RWD Engine Type: 350 cu in, 4-Barrel Fuel Type: Gasoline Transmission: 4-speed Manual VIN #: 12437L158296 NO BUYERS PREMIUM ON THIS VEHICLE. THE BUYER IS RESPONSIBLE FOR EMISSIONS CERTIFICATION WHERE APPLICABLE. | 5185 | $41,075.00 | ($4,107.50) | $36,967.50 |
| 9176 | 2015 Land Rover Range Rover HSE, SALGS2VF5FA219176, KEY- - ON BEHALF OF THE US BANKRUPTCY COURT,  POSSIBLE 45 DAY TITLE Year: 2015 Make: Land Rover Model: Range Rover Vehicle Type: Multipurpose Vehicle (MPV) Mileage:110,213 Body Type: 4 Door Wagon Trim Level: HSE Drive Line: 4WD Engine Type: V6, 3.0L; Supercharged Fuel Type: Gasoline Transmission:AUTO VIN #: SALGS2VF5FA219176 THERE IS NO BUYERS PREMIUM ON THIS VEHICLE. THE BUYER IS RESPONSIBLE FOR EMISSIONS CERTIFICATION WHERE APPLICABLE. Experian Autocheck shows 1 calculated owners and 1 calculated accidents for this vehicle. Please review the terms and conditions for this sale and this item. | 5246 | $15,075.00 | ($1,507.50) | $13,567.50 |
| 10000 | 2000 YAMAHA YFS200 ATV, JY43JM034YA018632- - ON BEHALF OF THE US BANKRUPTCY COURT-NO TITLE Year: 2000 Make: Yamaha Model: YFS200 Vehicle Type: Motorcycle Mileage:NOT AVAILABLE Drive Line:RWD Engine Type: 1cyl, 195 cc; 2-Stroke Fuel Type: Gasoline Transmission:MANUAL THERE IS NO BUYERS PREMIUM ON THIS UNIT. NOT A TITLED UNIT, SALES TAX CHARGED. NO KEYS WERE LOCATED WITH ATVS. | 5340 | $650.00 | ($65.00) | $585.00 |
| 11000 | 2001 Yamaha YFS200, JY43JM0391A019779- - ON BEHALF OF THE US BANKRUPTCY COURT-NO TITLE Year: 2001 Make: Yamaha Model: YFS200 Vehicle Type: Motorcycle Mileage:NOT AVAILABLE Drive Line:RWD Engine Type: 1cyl, 195 cc; 2-Stroke Fuel Type: Gasoline Transmission:MANUAL THERE IS NO BUYERS PREMIUM ON THIS UNIT. NOT A TITLED UNIT, SALES TAX CHARGED. NO KEYS WERE LOCATED WITH ATVS. | 5105 | $975.00 | ($97.50) | $877.50 |
| 12000 | UNKNOWN YEAR YAMAHA GRIZZLY 600, VIN: ILLEGIBLE- - ON BEHALF OF THE US BANKRUPTCY | 5214 | $1,525.00 | ($152.50) | $1,372.50 |

| Lot Num | Description | Bidder | Lot SubTotal | Comm Total | Lot Net |
|---|---|---|---|---|---|
| | COURT-NO TITLE THERE IS NO BUYERS PREMIUM ON THIS UNIT. NOT A TITLED UNIT, SALES TAX CHARGED. NO KEYS WERE LOCATED WITH ATVS. | | | | |
| 13000 | 2006 Yamaha YFM660, JY4AM03Y86C082673- - ON BEHALF OF THE US BANKRUPTCY COURT-NO TITLE Year: 2006 Make: Yamaha Model: YFM660 Vehicle Type: Motorcycle Engine Type: 5V; SOHC; Liquid Cooled; 4-Stroke Fuel Type: Gasoline Transmission:AUTO THERE IS NO BUYERS PREMIUM ON THIS UNIT. NOT A TITLED UNIT, SALES TAX CHARGED. NO KEYS WERE LOCATED WITH ATVS. | 5147 | $2,375.00 | ($237.50) | $2,137.50 |
| 14000 | 2008 Arctic Cat 650 H1/ 500, 4UF08ATV98T207091- - ON BEHALF OF THE US BANKRUPTCY COURT-NO TITLE Year: 2008 Make: Arctic Cat Model: 650 H1/ 500 Vehicle Type: Motorcycle Mileage:NOT AVAILABLE Drive Line:4WD Engine Type: SOHC; Liquid Cooled; 4-Stroke Fuel Type: Gasoline Transmission:AUTO THERE IS NO BUYERS PREMIUM ON THIS UNIT. NOT A TITLED UNIT, SALES TAX CHARGED. NO KEYS WERE LOCATED WITH ATVS. | 5147 | $2,025.00 | ($202.50) | $1,822.50 |
| 11 | | | $285,675.00 | ($28,567.50) | $257,107.50 |

## Expenses

| Date | Type | Merchant | Description | Amount | Notes |
|---|---|---|---|---|---|
| | Seller | | Relocation of ATV's to Auction Site bu 303 Towing | $770.00 | |
| | Seller | | Relocation of Cuda and Camaro to Auction Site by 303 Towing | $442.00 | |
| | Seller | | Relocation of Mustang and Viper to Auction Site by 303 Towing | $400.00 | |
| | Seller | | Relocation of the Land Rover to Auction Site by 303 Towing | $185.00 | |
| | Seller | | Benny's Lock & Key-Key to Viper | $100.00 | |
| | Seller | | Advertising & Promotion | $1,239.00 | |
| | Seller | | Motor Vehicle Title Fees, Labor | $200.00 | |

Total Expenses: 7                                                      Total: $3,336.00

## Auction Summary

| Auction Summary | |
|---|---|
| Auction Gross | $285,675.00 |
| Commissions | ($28,567.50) |
| Expenses | ($3,336.00) |
| Credits | $0.00 |
| Auction Net | $253,771.50 |
| Total Paid | $285,675.00 |
| Balance Due | ($31,903.50) |

**Aple.Appx. 82**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re: | |
| MICHAEL J. ROBERTS, SR. | Case No. 22-10521-JGR |
| SSN/EIN: xxx-xx-3582 | Chapter 7 |
| Debtor. | |

---

### ORDER DENYING MOTION FOR STAY

---

This matter is before the Court on the Motion to Stay Pending Appeal (the "Motion) filed by Michael J. Roberts, Sr. ("Roberts" or "Debtor") on April 9, 2024 (Doc. 784), the Objection thereto filed by Harvey Sender (the "Trustee") on April 12, 2024 (Doc 788), the Joinder to the Trustee's Objection filed by Timothy Flaherty, Timothy Kneen, PdC, LLC, and Riviera Country Club, S. de R.L. C.V. on April 15, 2024 (Doc. 790), and the Joinder to Trustee's Objection filed by Richard Lang on April 15, 2024 (Doc. 791). The Motion requests this Court to stay the Judgment and Order granting the Joint Motion to Approve Settlement Agreement (the "Order")(Docs. 776 and 777), pursuant to Fed.R.Bankr.P. 8007(a)(1)(A), (e)(1), and (2). Debtor argues that without the stay, the performance of the settlement agreement would terminate the State Court appellate rights, disburse the assets of the Estate, and alienate the Mexican assets, all of which would render the appeal fruitless and moot. Instead, the Debtor argues that this Court should maintain the status quo until the outcome of the appeal.

The Court considers four factors when analyzing a stay:

(1) a strong likelihood of success on appeal;
(2) the threat of irreparable harm if the stay or injunction is not granted;
(3) the absence of harm to opposing parties if the stay or injunction is granted; and
(4) that the public interest supports a stay.

*United States v. Peck*, Nos. 23-4000, 23-4038, 2023 U.S. App. LEXIS 9782, at *2 (10th Cir. Apr. 17, 2023)(citing *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Id.* at 433-34

Roberts has failed to meet the burden to justify a stay because the Motion is devoid of any meaningful argument of the factors. This Court provided each party its due process, undertook a thorough analysis of the facts and law relating to the settlement, and found the settlement agreement was reasonable. Roberts fails to elucidate why this analysis was an abuse of discretion, and why the appeal has any likelihood of success.

Next, no irreparable harm will occur to Roberts. The Trustee has taken possession of almost all estate assets, and the only assets that remain outside of his control were placed there by Roberts. It is the Trustee's duty to act on any state court rights the estate may have, as they belong to the estate, and the Trustee is well-empowered by the Bankruptcy Code to terminate those rights. Simply put, Roberts, as a chapter 7 debtor, has no rights in the non-exempt property of the estate, and thus

1

Aple.Appx. 83

cannot be harmed by further administration of the estate and execution of the settlement agreement.

Further, a stay will prejudice the Trustee and creditors of the estate. The Trustee has been diligently working for the past year and one-half to take possession of the estate, liquidate that property, and resolve the pending litigation. Staying the Order would limit the ability to execute administration of the estate, and further delay distribution to creditors in a bankruptcy case that has been pending for more than two years.

Finally, the stay is not in the public interest. This litigation has continued for an excessively long period, utilized significant judicial resources at the federal and state court levels, and accrues attorney fees that reduce the overall recovery of creditors. It would be in the public's interest to end this saga, not prolong it.

Roberts also argues that the Court did not rule on the issue of his objections to claims of PdC, LLC and its affiliates in the Order, and further creditor distribution will render this argument on appeal a moot issue. Roberts objected to claims of all parties that make up the "PdC Creditors" (Docs. 440, 443, 446, 449, 452, 455, and 458) on February 16, 2023, including:

- Timothy Flaherty (claim no. 15);
- Timothy Keen (claim no. 20);
- PdC, LLC (claim no. 16);
- Riviera Country Club S. de R.L. de C.V. (claim no. 14);
- TMTBC, LLC (claim no. 19); PdC II, LLC (claim no. 18);
- Desarrollos Turisticos Riviera Xpu-Ha, A. de C.V.S.(claim no. 17)

The matters were held in abeyance pending the resolution of the settlement agreement (Doc. 543). The Court then resolved the issues of the claims and objections thereto by approving the settlement agreement.

In the settlement agreement, the PdC Creditors agreed to withdraw their claims, except PdC, LLC. When this Court approved the settlement agreement, the objections became moot because all claims except PdC, LLC's claim will be withdrawn.

The claim held by PdC, LLC (claim no. 16) consolidates the withdrawn claims and reduces the $22.8 million judgment awarded by the Denver District Court. The objection thereto (Doc. 440) contains identical arguments to the arguments this Court heard during the hearing on the motion to approve the settlement agreement. They are nothing more than yet another attempt to relitigate claims Roberts lost in the Denver District Court.

This Court provided great detail in the Order on why Roberts' arguments will not succeed on the merits before an appellate court. Further, upon approval of the settlement agreement, which reduced the PdC, LLC claim to one allowed, general unsecured claim of $19 million, the Court allowed PdC, LLC's claim, and overruled the objection.

Therefore, for the above reasons, the Debtor's Motion to Stay Pending Appeal is hereby DENIED.

Dated this 17th day of April, 2024.

**Aple.Appx. 84**

BY THE COURT:

_____

Joseph G. Rosania, Jr.
United States Bankruptcy Judge

**Aple.Appx. 85**

# EXHIBIT A

DATE FILED: October 4, 2018 2:44 PM
FILING ID: 35F10EDD1923C
CASE NUMBER: 2015CV31828

| | |
|---|---|
| **District Court, City and County of Denver, State of Colorado**<br>1437 Bannock Street<br>Denver, CO 80202<br>720-865-8301<br><br>**Plaintif:**<br>RICHARD LANG<br><br>v.<br><br>**Defendants and Cross Claimants:**<br>TIMOTHY FLAHERTY, TIMOTHY KNEEN, MICHAEL ROBERTS, CARL VERTUCA, and PdC, LLC,<br><br>And<br><br>Riviera Country Club S. de R.L. de C.V. ("RCC")<br>**Third Party Plaintiff**<br><br>v.<br><br>**Cross Claim Defendant:**<br>Michael Joseph Roberts, Sr.<br><br>And<br><br>**Third Party Defendants:**<br>Michael J. Roberts LLC,<br>Sandstone Ventures LLC | **▲ COURT USE ONLY ▲** |
| **Attorney for Defendant-Cross-Claimants:**<br>William Leone - #11403<br>Norton Rose Fulbright US LLP<br>1225 Seventeenth Street, Suite 3050<br>Denver, CO  80202<br>Phone:  (212) 318-3324<br>Email:  william.leone@nortonrosefulbright.com | Case Number: 2015cv031828<br><br>Division: 409 |
| **CROSS CLAIM AND THIRD PARTY COMPLAINT** | |

Aple.Appx. 86

Cross-Claimants Timothy Flaherty ("Flaherty"), Timothy Kneen ("Kneen"), Carl Vertuca ("Vertuca"), PdC, LLC ("PdC"), and Third Party Plaintiff Riviera Country Club, S. de R.L. de C.V. ("RCC"), (herein referred to collectively as "Claimants" or by their individual designation where appropriate) by and through their attorneys, Norton Rose Fulbright US LLP, bring this Cross Claim Complaint AND Third Party Complaint against Cross-Defendant Michael Roberts ("Roberts"), and Third Party Defendants  Michael J. Roberts LLC and Sandstone Ventures LLC and state as follows:

## I.  PARTIES AND JURISDICTION

1.      Cross-Claimant Flaherty is an individual who resides at 6428 East Exeter Blvd. Scottsdale AZ  85251.

2.      Cross-Claimant Kneen is an individual who resides at 8400 Witez Ct., Parker, Colorado  80134.

3.      Cross-Claimant Vertuca is an individual who resides at 5955 Cordwood Ct., Boulder, Colorado  80301.

4.      Cross-Claimant PdC is a Colorado limited liability company whose principal office is located at 1601 Blake Street, Suite 310, Denver, Colorado  80202.

5.      Third Party Plaintiff RCC is a Mexican limited liability company whose principal office is located in Quintana Roo, Mexico.  Kneen, Flaherty and Roberts were the initial managers of RCC.  RCC was a wholly owned subsidiary of PdC (99.999%) and its subsidiary PdC II (.0001%).  Unless relevant, references in this complaint to PdC include its 99.999% subsidiary RCC and its wholly owned subsidiary PdC II.

6.      Cross-Defendant Roberts is an individual who resides at 245 Linden Drive, Boulder, Colorado 80304 and who is an organizer, member, and manager of PdC.  Third Party defendant Michael J. Roberts LLC is, on information and belief, a Colorado LLC that is delinquent in its filings under Colorado law. Roberts and his LLC are alter egos for each other.  Cross defendant Michael J. Roberts, at all times relevant to this complaint, acted as the sole representative, agent, member and manager of Michael J. Roberts LLC and personally committed the tortious acts described below. Third Party Defendant Sandstone Ventures LLC is on information and belief a Colorado LLC owned and controlled by Michael J. Roberts.

7.      At all times relevant to this Complaint, Cross-Claimants Flaherty and Kneen and Cross-Defendant Roberts served as the only managers of PdC.  Cross-Claimant Vertuca was the Chief Financial Officer of PdC.

8.      This action concerns Cross-Defendant Roberts's breaches of his fiduciary duties and his misappropriation of corporate opportunities from PdC as well as his misrepresentations to

**MOVANTS' EXHIBIT 7**
**Page 2 of 20**

Aple.Appx. 87

Cross-Claimants and others, including his efforts to wrongfully interfere with a settlement agreement negotiated and entered into on behalf of PdC concerning the property it owns on Xpu-Ha Beach, south of Playa del Carmen, Mexico. The claims of the Cross Claimants and Third Party Plaintiff herein are collectively referred to as the "*Cross Claims*."

9.     This Court has jurisdiction over the subject matter at issue because this is a civil action for damages and/or equitable relief.  Colo. Const. Art. VI, § 9(1).

10.    This Court has personal jurisdiction over Defendant pursuant to C.R.S. § 13-1-124(1)(a)-(c) because Defendant transacted business within Colorado, committed a tortious act in Colorado, and owns, uses, or possess real property in Colorado.

11.    Venue is proper in this Court pursuant to C.R.C.P 13(g) because this Cross-Claim arises out of the transaction or occurrence that is the subject matter of the original action or relates to property that is the subject matter of the original action, or both.

## II.     FACTUAL ALLEGATIONS

12.    Cross-Claimants Flaherty, Kneen, Vertuca and Roberts formed PdC on or about July 25, 2007. PdC was formed for the purpose of developing a luxury beachfront resort near Playa del Carmen in Mexico (the "*Sereno Project*").

13.    Cross Defendant Roberts became a member and manager of PdC through a personal LLC called Michael J. Roberts, LLC.  Defendant Roberts was the sole agent of Michael J. Roberts LLC and all actions relevant to this Cross Complaint were undertaken by Roberts.

14.    On November 16, 2007 , PdC purchased the Initial Property through its subsidiary RCC.  The Initial Property was a strip of land extending to a beach on the Caribbean Sea south of Cancun near Xpu Ha Mexico.  It is shown in green on a map incorporated below and reproduced at paragraph 127.

15.    On November 23, 2007  Kneen, Flaherty, and Roberts, through a  Colorado LLC named TMTBC, purchased a Beach House that was located about 150 meters from the Initial Property. The Beach House was to be renovated and used, among other things, as a sales office and place for interested purchasers and investors to stay when visiting the Initial Property. The Beach House is shown in purple on the map at paragraph 127.

16.    The costs of renovation, expansion and maintenance for the Beach House have been allocated in various ways over the years to reflect the usage of the Beach House as among PdC and the owners.  However, since at least 2014, when the marketing activities of PdC slowed, the expenses of maintaining the Beach House were to be split evenly among the three owners.

17.    After the Beach House renovation, PdC used it as a marketing tool and allowed potential villa purchasers to stay in it. This marketing strategy was very effective, and by 2009 approximately 25 deposits had been placed on villas before the construction of the villas

**MOVANTS' EXHIBIT 7**
**Page 3 of 20**

Aple.Appx. 88

commenced. At all times, Roberts was involved in the decision to utilize the Beach House for marketing purposes.

18.     Kneen, Flaherty, Vertuca, and Roberts were also permitted to stay at the Beach House if they paid a fee. Roberts often used the Beach House, and sometimes for month-long visits. However, he did not pay the required fee when he stayed.

19.     On or around August 2008, PdC issued B-units to raise money for property acquisition, permitting and planning. The PPM for the B Share offering was professionally prepared by experienced securities lawyers in Denver Colorado and included specific disclosures and warnings that additional permits were needed for the project and that additional funds would be required to develop the project including a substantial construction loan. The PPM identified Roberts as a Class A Equity Voting Member and as a Manager of PdC. The PPM explicitly recognizes the fiduciary duties of Roberts in his various capacities, including his liability for breach of the duty of loyalty, acts of intentional misconduct, and for transactions from which he derives personal benefit. Plaintiff Lang was also a B Share purchaser.

20.     PdC eventually hired Chris Rauton to manage the property development. One of Rauton's primary responsibilities was to secure the necessary development permits for the Initial Property. Rauton told the PdC partners he had secured the proper permits. However, PdC was later advised that the permits Rauton obtained may not have been sufficient for the project's needs.

21.     In 2010, PdC hired SV Capital to replace Rauton and manage the project. Among other things, SV Capital was tasked with reviewing the existing permits and advising about the need to obtain additional permits.

22.     SV Capital advised Cross Claimants to purchase a neighboring piece of property from a man named Mustapha Bouzid Mohamed Arab (the "*Mustapha Property*") because it would expand the project and create lower densities, thereby helping to solve the permitting problems. The Mustapha Property was for sale for approximately $11.5 million. The Mustapha Property was titled in the name of Mohamed's company, Desarrollos Turisticos Riviera Xpu-Ha, A. de C.V.S..

23.     Mohamed informed SV Capital that the property was subject to a loan and lien held by Hoteles Turisticos Unidos, S.A. ("Hotusa"), a Spanish hotel group. Mohamed offered PdC the opportunity to pay $5.5 million to him upfront for the property for his equity, and the remaining $6 million to Hotusa to satisfy the loan later. SV Capital told PdC to take this offer for the sale of the property, and to treat Hotusa's lien as an outstanding loan. This structure was similar to any conventional purchase where a buyer elects to keep existing funding in place and assume it rather than take out a new loan. Here, the Hotusa loan could be paid off or negotiated. Because the PdC managers believed that there were potential infirmities in Hotusa's lien they worked to negotiate a settlement of Hotusa's lien for less than the face amount which would have also benefitted PdC.

24.     From late 2011 to early 2012, PdC, with full disclosure of the difficulties encountered to that point by the project, raised money for the purchase of the Mustapha Property and other costs relating to the revised development plan. PdC did this through a mezzanine round

of financing that included direct loans and loans through an entity known as RM Funding. Through various methods of funding Cross Claimant Flaherty contributed an additional sum of approximately $3.4 million, Cross Claimant Kneen contributed an additional $2.1 million. Cross Defendant Roberts contributed an additional $4.7 million. Four others contributed $1.675 million in the aggregate. Plaintiff Lang contributed the smallest amount, $250,000. Cross Defendant Roberts was a manager of RM Funding.

25.     SV Capital's staff included an attorney, who worked with Benjamin C. Rosen ("*Rosen*"), PdC and RCC's attorney, to organize the purchase and sale agreement for the Mustapha property.

26.     PdC, through its subsidiary RCC, purchased the Mustapha Property in February 2012. RCC received title to the property subject to the lien in favor of Hotusa.

27.     After purchasing the Mustapha Property, SV Capital proceeded to obtain what it considered to be the needed permits. In addition, SV Capital promised to seek and obtain a construction loan for the project. The purpose of the loan was to fund the amounts needed to pay the Hotusa loan, clear the Hotusa lien and pay for development of the now combined project consisting of the Initial Property and the Mustapha Property. The Beach House was to remain an asset of TMTBC. SV Capital obtained the needed permits, but did not obtain the needed loan. This financing was essential to the development of the property. As a result, PdC terminated SV Capital in October 2013. Cross Claimants continued efforts to obtain construction lending.

28.     Despite their best efforts, and in the long aftermath of the 2008 financial crisis, and after having spent seven years of effort in getting the Sereno Project off the ground, Cross Claimants were unable to obtain a construction loan. Due to the lack of financing necessary to develop the property, PdC decided in early 2014 to sell all of the property it had obtained and to use the sale proceeds to repay its lenders and investors.

29.     PdC hired Eric Littler ("Littler"), a luxury real estate advisor with extensive experience in beachfront real estate in Playa del Carmen, Mexico. Littler and PdC then decided they needed the help of a real estate company that had greater international sales experience and hired CBRE to help market the properties for sale.

30.     Littler and CBRE co-listed the properties, and received bids from several interested buyers. Littler attempted to market the Initial Property, the Mustapha Property and the Beach house together to maximize their value (the "*Combined Property*"). In order to complete a sale of the Combined Property, however, Hotusa's lien would need to be resolved.

31.     In November 2015, PdC, with the help of Rosen, negotiated with Hotusa for release of the lien. Roberts was aware of the negotiations in all material respects, both directly and through his counsel.

32.     On December 2, 2015, PdC, through its subsidiary RCC, entered into a settlement agreement with Hotusa. (the "*Settlement Agreement*"). Under the agreement, PdC would pay

**MOVANTS' EXHIBIT 7**
**Page 5 of 20**

Aple.Appx. 90

Hotusa $6.5 million to release the lien on the property. PdC paid Hotusa $1 million at close, and then had until February 28, 2016 to pay Hotusa the additional $5.5 million. If PdC failed to do so, Hotusa would not release its lien. However, PdC could extend the final date of payment by paying a fee.

33.     PdC paid Hotusa for two extensions under the Settlement Agreement, one for $250,000 and the other for $350,000. Flaherty, Kneen, and Roberts each contributed cash to pay Hotusa for the extensions. The final extension required full payment to Hotusa on or before December 30, 2016.

34.     During the last three quarters of 2016, Cross Claimants worked diligently to find a buyer for the Combined Property. During this time, Cross Defendant Roberts began to express interest in purchasing the property from PdC. Roberts was disgruntled over the Cross Plaintiff's decision to monetize the Combined Property and return capital to investors and lenders and instead wanted to develop the property.

35.     On or around March 2016, Roberts's Mexican attorney, Juan Carlos Ramirez Garcia ("*RamirezRamirez*"), asked Rosen if he could retain a complete copy of the file from the Hotusa settlement negotiations. Ramirez did not tell Rosen why he wanted the copy, but Rosen gave it to him after receiving permission to do so from Kneen, Flaherty, and Vertuca.

36.     Roberts approached Littler about possibly buying the property from PdC and developing it himself. Littler told Kneen, Flaherty, and Vertuca about Roberts's interest in buying the property.

37.     During the summer of 2016, Kneen, Flaherty, Vertuca, and Rosen understood that Roberts might be interested in developing the property himself. Although during this time, Roberts remained a member and manager of PdC, he refused to consent to offers from potential buyers of the property, and continued to contact Littler regarding his plans to purchase and develop the property. One such offer was for over $21 million for the Combined Property.

38.     In response, on September 29, 2016, PdC and PdC II resolved, by way of a formal minute of the meeting of the members of RCC, to reaffirm the provision in the company documents that all decisions of the Board of Managers of RCC, consisting of Messrs. Kneen, Roberts and Flaherty, require the affirmative vote of at least two out of three managers and that no individual manager could dispose of the company's assets or grant authority to any other party to represent the Company. Roberts was aware of the limitations on his authority. He was notified in the presence of a Mexican notary public regarding this limitation and he received these minutes and was thus informed that he did not have the authority to bind RCC by himself or to delegate authority to any third party.

39.     From October to November 2016, Littler helped Roberts with his plans to develop the property. Littler updated the PdC partners regarding Roberts's development plans. Littler and the PdC partners understood that Roberts intended to compete with other buyers to purchase the property for himself so that he could develop it.

40.     However, unknown to the Cross Claimants, Roberts was not planning on purchasing the property from PdC, but instead hatched a scheme, with the help of Ramirez, to misappropriate the benefit of the Settlement Agreement for himself, acquire Hotusa's right to foreclose under its underlying lien and its rights under the Settlement Agreement, and foreclose on the Mustapha property for his own benefit to pursue his plans for the Combined Property without having to account to PdC, Cross Claimants, or PdC's investors, members, managers and lenders, including Lang.  As part of his scheme, Roberts also intended to seize the Initial property and the Beach House.

41.     The first step to execute the scheme required Roberts to misappropriate PdC's right to pay Hotusa the agreed upon amount in the Settlement Agreement. That Settlement Agreement was an asset of PdC that had been negotiated over a period of many months at PdC's expense. PdC had already paid $1.6 million in a down payment and for extensions of the Settlement Agreement.  In order to misappropriate the benefit of the Settlement Agreement, Roberts, acting alone and through his agents, misrepresented to Hotusa that he had authority to act on behalf of PdC's wholly owned subsidiary, RCC.  In fact, Roberts lacked such authority, knew he lacked such authority; and, even if he had possessed such authority was bound to exercise it for the benefit of RCC.

42.     The second step in the scheme required Roberts to obtain Mexican Court ratification of the Settlement Agreement between Hotusa and RCC.  In order to accomplish this, Roberts first appeared before a Mexican Notary with Ramirez in November 2016 and granted Ramirez Power of Attorney to act for RCC, even though he had no authority to delegate such power.  He then instructed Ramirez to use the fraudulent power of attorney, to misrepresent to the Mexican Court that he was authorized to act as attorney in fact for RCC even though he had no such authority, and had not disclosed his actions to the managers of PdC.

43.     The third step in the scheme required Roberts to, after having pretended to be acting for RCC in obtaining ratification of the Settlement Agreement, to become subrogated to Hotusa's rights under the Settlement Agreement, again using the fraudulent power of attorney, thus effectively conveying to himself Hotusa's right to foreclose.

44.     Fourth, Roberts needed to prevent the remaining Members of PdC from attempting to perform the Settlement Agreement prior to December 30 so that he could step into Hotusa's shoes as the foreclosing party under the Settlement Agreement.  In effect, Roberts stole PdC's rights under the Settlement Agreement, and bought Hotusa's rights under the Settlement Agreement.  And, then he exercised Hotusa's rights to the detriment of his partners, co-members, and creditors of PdC, all for his personal benefit.

45.     Finally, Roberts needed to physically seize the entire Combined Property, including the Beach House of which he was only a one third owner.

46.     Cross Defendant Roberts implemented his scheme in secret without disclosing his intentions to the Cross-Claimants.  He sought to purchase the Hotusa lien without the PdC partners' knowledge or consent.  Roberts also made active attempts to conceal his involvement in the

scheme.  In early December, 2016 Ramirez advised Rosen of an "investor" represented by Elidé María Meriggi Pérez ("Meriggi") that was interested in buying out the Hotusa lien.  Ramirez did not give Rosen the investor's name, or any other identifying information or indicate that he was acting in concert with Roberts.  Nor did Ramirez advise Rosen that Meriggi was acting in concert with Roberts.

47.     One week later, Hotusa's lawyer told Rosen that he had received a letter of intent from a buyer represented by Meriggi to buy-out the $5.5 million lien.  According to Hotusa's lawyer, the buyer told Hotusa that he had the authority to act on behalf of RCC.

48.     Rosen told Hotusa not to accept the buyer's offer and that RCC would pay the $5.5 million balance on time.  At this time, Flaherty was prepared to pay the outstanding balance to Hotusa on behalf of PdC.  Rosen and Hotusa's attorney agreed that RCC would pay Hotusa, and then Rosen and the attorney would go together to court to ratify the settlement agreement.

49.     However, when Roberts learned that Flaherty offered to pay Hotusa on behalf of PdC, he objected and offered to pay Hotusa himself.  On December 13, 2016, Kneen, Vertuca, and Roberts met at Robert's office in Boulder, Colorado to discuss paying Hotusa the remaining balance due under the Settlement Agreement and moving forward with one of the sales opportunities arranged by Cross-Claimants.  They agreed that Roberts would fund the payment to Hotusa for the benefit of PdC under the Settlement Agreement and in exchange Roberts would get six months to put together a development plan for the property.  If Roberts failed to put together a plan in that time, PdC would sell the property to one of the potential buyers identified by Littler and CBRE and repay Roberts the $5.5 million.  The group called Rosen and repeated the agreement to him so that he could prepare documentation.

50.     Roberts knew that, after his meeting with Kneen and Vertuca, the PdC partners were operating under the assumption that they no longer needed to fund the performance under the Settlement Agreement because Roberts was going to fund it on PdC's behalf.  Based on Robert's assurances, PdC did not continue to seek other sources of funding, while Roberts continued his secret plan to buy the Hotusa lien for his own benefit.

51.     From December 14-16, 2016, Rosen worked on documenting the deal between Roberts and PdC.  However, Roberts stopped returning Kneen and Rosen's calls, texts, and emails.  Kneen tried to contact Roberts through Vertuca, but was unsuccessful.  Likewise, Ramirez stopped returning Rosen's communications.

52.     On December 15, 2016, unbeknownst to Kneen, Flaherty, Vertuca, or Rosen, Ramirez appeared in a Mexican court with Hotusa's attorney.  On Robert's instructions, Ramirez fraudulently misrepresented to the Mexican Court that he was acting as attorney in fact for RCC.  He did so by using the fraudulent power of attorney that falsely purported to identify Ramirez as RCC's attorney in fact.  Ramirez obtained the "ratification" of the December 2, 2015 Settlement Agreement.  Ramirez requested recognition as attorney-in-fact for RCC, and the court granted the request without knowing that Ramirez in fact lacked valid authority.  Neither Roberts nor his attorney Ramirez informed Kneen, Flaherty, Vertuca, or Rosen that they intended to ratify the

Aple.Appx. 93

settlement, nor did he obtain their consent. The court ratified the settlement on December 15, 2016.

53.     On December 16, 2016, Roberts, acting through the Michael J. Roberts Trust and Sandstone Ventures LLC (another Roberts alter ego) paid Hotusa $5.5 million. However, instead of paying the funds on behalf of PdC and releasing the lien in favor of PdC and its investors, lenders and creditors, Roberts purported to acquire Hotusa's lien and to foreclose on it personally. Roberts did not tell PdC or RCC about the payment, nor did he obtain the necessary approval from the PdC managers per the PdC Operating Agreement.

54.     Later that day, Meriggi, as attorney for Roberts, and Ramirez, as the purported attorney for RCC, filed a request in a Mexican court to have Roberts subrogated for Hotusa in the foreclosure action based on the payment of $5.5 million to Hotusa.

55.     Also on December 16, 2016, Roberts showed up at the property to stay at the Beach House.

56.     On December 19, 2016, Hotusa's attorney advised Rosen that Sandstone Ventures LLC had paid Hotusa $5.5 million.

57.     Also on December 19, 2016, Rosen spoke with Ramirez. Ramirez refused to disclose to Rosen that Roberts had paid Hotusa on his own behalf rather than on behalf of PdC.

58.     After learning that Roberts paid Hotusa, Kneen attempted to contact Roberts numerous times, but did not receive a response.

59.     The PdC Operating Agreement provides that members and managers can be held liable, among other things, for breaching their duty of loyalty to PdC or its members, or for any transaction from which they receive any improper personal benefit.

60.     On December 20, 2016, Rosen went to the Beach House to try and speak with Roberts, but was told that Roberts was not there. Later that evening, Rosen and Littler received a notice from Antonio Rodriguez ("Rodriguez"), the manager of the Beach House, that Roberts had brought in new security, and had instructed all staff not to let Rosen, Littler, or anyone associated with RCC or PdC into the Beach House or on to the Combined Property.

61.     On December 21, 2016, Roberts changed the locks on the Beach House and brought in additional security. Robert's additional security included approximately a dozen armed men. The guards were instructed not to permit Rosen or Littler on the property.

62.     Littler and Rosen tried numerous times to access the property from late December to February for an explanation, but each time they were denied access by Roberts's security. Kneen also attempted to access the property in January 2017, but was denied access. Kneen and Littler had planned on showing a potential buyer the property in mid-January, but the visit was cancelled after Kneen was denied access to the property.

37164632.1

63.     After Claimants learned what Roberts had done, and throughout early 2017, Rosen attempted to stop Roberts's foreclosure efforts in the Mexican courts and eventually, he was able to regain possession of the property for RCC and PdC through the involvement of the Mexican prosecutor's office.  Although Roberts continues to pursue foreclosure in Mexico, there is no litigation pending that includes as an issue whether Roberts has acted rightfully as a member of PdC or has breached his fiduciary duties to PdC, its members, its managers or its lenders.  To the contrary, the Mexican Court has held that that issue must be resolved in a separate proceeding. The rights and obligations of the PdC members and managers, most of whom reside in Colorado, are governed by Colorado law.

64.     Cross Claimants have expended millions of dollars in an effort to preserve the property for the benefit of PdC's members and lenders.  They paid to preserve PdC's rights under the Settlement Agreement to obtain title to the Mustapha property.  They have paid thousands of dollars each month to maintain development permits.  They have paid expenses associated with marketing the property to find a buyer.  They have offered to include the Beach House in sales structures to enhance the value of the Initial Parcel and the Mustapha Parcel.  After RCC and PdC regained possession of the property, they hired new security to secure the property from future take-over attempts by Roberts. The security costs Flaherty and Kneen approximately $40,000 a month. They have expended significant amounts in legal fees in Mexico and now in this case to prevent Roberts from misappropriating the Combined Property for his own benefit. They have expended hundreds of thousands of dollars to fund settlement of claims against PdC and defend PdC against litigation, of which Lang's is an example, seeking to establish super priority of certain investors over others.  At all times, Kneen, Flaherty and Vertuca have sought to ensure that the property is well managed, sold in due course, and the proceeds used to pay claims of competing stakeholders in accordance with their lawful priority.

65.     Roberts continues to try and foreclose on the property in Mexican courts.  His continued attempt to do so, and continued breaches of his duties to PdC, has damaged PdC as it effectively makes the Combined Property unmarketable despite significant interest in the property from a number of buyers.  But for Roberts's wrongful actions, PdC would be able to sell the property and use the proceeds to return as much as possible of the principal amounts invested or loaned by PdC's members and lenders.

66.     Roberts only gained the ability to obtain Hotusa's lien through (1) his misrepresentations to PdC and his assurances that that he would act on PdC and RCC's behalf in repaying Hotusa, and (2) his intentionally false and misleading statements to Hotusa which interfered with RCC's settlement with Hotusa, and (3) his intentionally false and fraudulent misrepresentations to the Mexican Court that he and Ramirez were acting on behalf of and with power of attorney from RCC.  PdC's other members were willing and able to repay Hotusa and refrained from doing so only when Roberts assured them that he would do so on PdC and RCC's behalf.  Even if Roberts had not made these affirmative misrepresentations, his duty of loyalty to PdC prevents him from converting PdC's rights under the Settlement Agreement to himself for nothing and repaying Hotusa for his own benefit.

Aple.Appx. 95

67.     Roberts's continued interference with PdC's assets and his continued breaches of his duties to PdC must cease so that PdC can sell the property as soon as possible so that it can repay its lenders and investors.  If not, PdC's negotiations with potential buyers are in jeopardy and future negotiations may take place in less favorable market conditions.

68.     Also, as long as the PdC is unable to sell the property due to Roberts's wrongful interference and breaches of his duties to PdC, PdC will need to pay reoccurring fees and expenses associated with the property, such as permitting fees, legal fees, security, staffing, and taxes. Roberts does not contribute to the payment of these costs and expenses.  In short, Roberts' wrongful conduct requires that PdC continue to expend significant resources maintaining the property, which will diminish the potential profits from any sale.

69.     Roberts' conduct alleged here was both willful and wanton.

## III.     CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Breach of Contract
### (Cross-Claimants PdC and RCC against Roberts)

70.     Cross-Claimants hereby incorporate all other Paragraphs of the Complaint as if fully set forth herein.

71.     Roberts entered into an oral contract with PdC and RCC on December 13, 2016 to pay Hotusa on behalf of PdC and RCC.  All conditions precedent to Robert's obligation to perform have occurred or been performed.

72.     Roberts failed to pay Hotusa on behalf of PdC and RCC. Rather, Roberts paid Hotusa for his own benefit.

73.     There is no excuse for Roberts's breach.

74.     As a result, Cross-Claimants have suffered damages in an amount to be determined, and including as appropriate, the value of the property misappropriated by Roberts,  legal fees incurred in protecting the property and the interests of PdC's stakeholders, damages relating to delays in sale of the property and diminution of sales price, security costs, Robert's share of ongoing maintenance costs, interest, attorney fees, and such other relief as may be established at trial or on motion, plus pre- and post-judgment interest and costs.

### SECOND CLAIM FOR RELIEF
### Promissory Estoppel
### (All Cross-Claimants against Roberts)

37164632.1

Aple.Appx. 96

75.     Cross-Claimants hereby incorporate all other Paragraphs of the Complaint as if fully set forth herein.

76.     Roberts made a promise to Cross-Claimants that he would pay Hotusa the remaining amount due on the settlement agreement on behalf of PdC and RCC.

77.     Roberts knew that his promise would induce Cross-Claimants not to make other funding arrangements for the settlement payment to Hotusa.

78.     Cross-Claimants reasonably relied on Roberts' promise by not arranging the necessary funding by the date the payment was due.

79.     Cross-Claimants reasonably relied on Roberts's promise to their detriment.

80.     Now, Roberts's promise must be enforced to prevent injustice.

## THIRD CLAIM FOR RELIEF
### Intentional Interference with Contractual Obligations
### (Cross-Claimants PdC and RCC against Roberts)

81.     Cross-Claimants hereby incorporate all other Paragraphs of the Complaint as if fully set forth herein.

82.     PdC, through its subsidiary RCC, had a Settlement Agreement with Hotusa.

83.     Roberts knew of the Settlement Agreement.

84.     Roberts's words and conduct intentionally interfered with Hotusa's performance of the settlement agreement, thereby causing Hotusa not to perform the settlement agreement with PdC and RCC.

85.     Roberts' interference was improper as Roberts was obligated to act in the best interest of PdC and RCC rather than his own interests and because Roberts used wrongful and fraudulent means. Roberts also violated his duties under C.R.S. 7-80-404, including sections 1(a), 1(c) and 3.

86.     As a direct and proximate result of Roberts's interference with the settlement agreement, PdC and RCC suffered damages in an amount to be determined at trial or on motion, plus pre- and post-judgment interest and costs.

## FOURTH CLAIM FOR RELIEF
### Tortious Interference with Business Relations
### (All Cross-Claimants against Roberts)

Aple.Appx. 97

87.     Cross-Claimants hereby incorporate all other Paragraphs of the Complaint as if fully set forth herein.

88.     Roberts engaged in improper conduct by going behind Cross-Claimants' backs to Hotusa without authorization to do so, holding himself out to Hotusa as an authorized representative of PdC and RCC, and personally paying Hotusa without PdC and RCC's consent for his own benefit and to PdC and RCC's detriment. Robert's improper conduct included violations of C.R.S. 7-80-404, including sections 1(a), 1(c) and 3.

89.     Roberts intended to induce Hotusa to cease its business relationship with Cross-Claimants.

90.     Roberts's conduct caused Hotusa to end its relationship with Cross-Claimants and to improperly subrogate its position to Roberts instead of Cross-Claimants.  As a result, Cross-Claimants have suffered damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### Misappropriation of Corporate Opportunity
### (Cross-Claimants PdC and RCC against Roberts)

91.     Cross-Claimants hereby incorporate all other Paragraphs of the Complaint as if fully set forth herein.

92.     At all times relevant to this complaint, Roberts was a manager of PdC and its subsidiary RCC.

93.     As a manager of PdC and RCC, Defendant had a fiduciary relationship with the companies.

94.     Defendant seized for his personal benefit a business opportunity that belonged to PdC and RCC by wrongfully paying Hotusa so that he would assume Hotusa's position personally and not for the benefit of PdC and RCC.

95.     PdC and RCC's business opportunity was actual and not theoretical because they had an opportunity—and the right—under the terms of the settlement agreement to pay Hotusa to release its lien.

96.     The business opportunity was in PdC and RCC's line of business because they are property development companies and the opportunity dealt with an interest in a property they own.

97.     PdC and RCC's interest in the business opportunity existed when Roberts was a fiduciary.

98.     As a result of Roberts's misappropriation of PdC and RCC's corporate opportunity, PdC and RCC have been damaged in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### Unjust Enrichment
### (All Cross-Claimants against Roberts)

99.     Cross-Claimants hereby incorporate all other Paragraphs of the Complaint as if fully set forth herein.

100.    Roberts benefited from Cross-Claimants' negotiation of the settlement agreement, the terms of the settlement agreement, the $1 million payment by Cross-Claimants to Hotusa at the close of the settlement agreement, the contributions of Kneen and Flaherty to the extensions of the final payment date, and from the financial contributions of Kneen and Flaherty to the maintenance of the property.

101.    Cross-Claimants conferred a benefit on Roberts by spending their own time and resources litigating against Hotusa and negotiating the settlement agreement with Hotusa.

102.    Cross-Claimants conferred a benefit on Roberts by paying Hotusa the first settlement payment of $1 million at the time the parties entered into the agreement contributing to the payment extensions, and maintaining the property from 2008 to present.  Cross claimants also conferred benefits on Roberts in numerous other ways including without limitation, his use of the Beach House which they paid to maintain, his use of the Beach House without paying the required fees, his receipt of the benefits of other payments made to fund the ongoing protection of the property from him and others, and other benefits for which he has not paid.

103.    Roberts accepted and retains those benefits and has now purported to be solely entitled to the value of these benefits for which he did not pay and to which he is not entitled.

104.    Under the facts and circumstances set forth in this Complaint, it would be inequitable to allow Roberts to retain the benefit conferred to the detriment of Cross-Claimants.

105.    Roberts' refusal to return the benefit to Cross-Claimants has damaged Cross-Claimants in an amount to be established at trial, plus pre- and post-judgment interest and costs.

## SEVENTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (Cross-Claimants PdC and RCC against Roberts)

106.    Cross-Claimants hereby incorporate all other Paragraphs of the Complaint as if fully set forth herein.

107.    Roberts was a fiduciary of Cross-Claimants given his role as a manager of PdC and RCC.

108.    As a fiduciary, Roberts owed duties of care and loyalty to PdC and RCC. These duties are outlined in PdC's Operating Agreement.

37164632.1

- 14 -

109. Roberts breached his fiduciary duties to PdC and RCC by acting in bad faith against the best interests of PdC, breaching his duty of honesty, misappropriating PdC and RCC's corporate opportunity, and not exercising the care that an ordinary prudent person would have exercised in a like position and in similar circumstances.

110. As a result, PdC and RCC have been damaged in an amount to be proven at trial. In addition, Cross-Claimants are entitled to recover their costs, reasonable attorneys' fees, and pre- and post-judgment interest.

<div align="center">

**EIGHTH CLAIM FOR RELIEF**
**Fraud**
**(All Cross-Claimants against Roberts)**

</div>

111. Cross-Claimants hereby incorporate all other Paragraphs of the Complaint as if fully set forth herein.

112. Roberts made a false statement of material fact to Cross-Claimants regarding his willingness and agreement to pay Hotusa on behalf of PdC and RCC.

113. Roberts knew the statement he made to Cross-Claimants was false.

114. Cross-Claimants did not know the falsity of Roberts' statement.

115. Roberts made the false statement with the intention that Cross-Claimants would not arrange funding to pay Hotusa the final settlement amount and would not pay Hotusa themselves. Roberts also intended that Hotusa would rely on his false statements in acquiescing in his misappropriation. Roberts also intended that the Mexican Court would be misled by his misrepresentations as to his authority and that of his agents. Finally, Roberts intended to deceive the Cross-Claimants about his true intentions and to proceed in secret to execute his scheme so as to prevent anyone from stopping him.

116. Cross-Claimants relied on Roberts' false statement of material fact and his misleading and deceptive omissions by refraining from making the final payment to Hotusa for the benefit of PdC, and, as a result, suffered damages and loss due to their inability to secure the lien release from Hotusa.

117. Cross-Claimants have been damaged in an amount to be proven at trial. In addition, Cross-Claimants are entitled to recover their costs, reasonable attorneys' fees, and pre- and post-judgment interest, as well as damages from Robert's willful and wanton conduct.

## NINTH CLAIM FOR RELIEF
### Fraudulent Misrepresentation
### (Cross-Claimants PdC and RCC against Roberts)

118.　Cross-Claimants hereby incorporate all other Paragraphs of the Complaint as if fully set forth herein.

119.　Roberts made a fraudulent misrepresentation of material fact by holding himself out to Hotusa and his agents as an authorized representative of PdC and RCC and by representing that PdC and RCC had consented to his actions.

120.　Hotusa relied on Roberts's fraudulent misrepresentation of his authority when Hotusa agreed to let Roberts pay the final settlement amount.

121.　Hotusa justifiably relied on Roberts' fraudulent misrepresentation.

122.　Hotusa's reliance on the fraudulent misrepresentation resulted in damages to Cross-Claimants PdC and RCC.

123.　Cross-Claimants have been damaged in an amount to be proven at trial. In addition, Cross-Claimants are entitled to recover their costs, reasonable attorneys' fees, and pre- and post-judgment interest.

## TENTH CLAIM FOR RELIEF
### Constructive Trust and Injunction
### (All Cross-Claimants against Roberts)

124.　Cross-Claimants hereby incorporate all other Paragraphs of the Complaint as if fully set forth herein.

125.　All three parcels (the Combined Property is defined as the Initial property, the two parcels comprising the Mustafa Property, and the Beach House) in the Combined Property are beneficially owned by either PdC or TMTBC. All three parcels must be managed for the benefit of the stakeholders in the property. These include the owners, managers, members and lenders. Each of these stakeholders has a financial interest that will be satisfied out of the stewardship and disposition of the property in accordance with their respective interests and priorities.

126.　**Mustapha Property**. PdC, through its subsidiary RCC, purchased the Mustapha Property (shown below in blue and yellow). Flaherty, Kneen, and other Mezzanine lenders contributed funds to PdC and RCC for the purchase of the property. Lang, Kneen, Flaherty, Vertuca, Roberts, and the other members and mezzanine lenders all have an interest in the disposition of the property based on the interests they obtained through the purchase of B Shares, through their interests in RM Funding and through their rights as a lender. Preservation of the Mustapha Property is essential for protection of these interests.

37164632.1

- 16 -

Aple.Appx. 101

127. **The Initial Property**. The Initial Property is adjacent to the Mustapha Property and to the Beach house. The green property below is the Initial Property. The blue and yellow properties below are the Mustapha Property and the purple property below is the Beach House.



128. The Initial property was acquired by PdC to be developed and managed for the benefit of its members.

129. The Beach House was acquired by the three members of TMTBC to be managed used and preserved for the benefit of its members. It was also used for the benefit of PdC and its members, including Lang.

130. Roberts has attempted to convert to his own use all three parcels and continues to attempt to misappropriate to his sole benefit all three parcels. The Combined Property has great value that can be accessed to repay loans and investments by the various stakeholders, including Lang, Kneen, Flaherty, Vertuca and Roberts, unless Roberts is allowed to misappropriate it to his own use.

131. Roberts breached his fiduciary duties to Cross-Claimants, took advantage of the confidential, fiduciary relationship he had with Cross-Claimants by dissuading them from allowing Flaherty to pay Hotusa and convincing them he would pay Hotusa on their behalf, by physically seizing the entire property including the Beach House, by concealing his intentions and efforts to obtain control over the Combined Property, and by attempting to gain control of the Combined Property through his own fraudulent efforts and efforts of others acting in concert with him. Roberts continues to breach his fiduciary duties by pursuing foreclosure of the Mustapha Property

in Mexico based on forged and fraudulent documentation. Roberts continues to interfere with the orderly management of the Combined Properties and their sale so that the proceeds of sale can be properly applied to the claims of stakeholders in accordance with their relative priorities.

132.    As a result, this court should exercise its equitable jurisdiction as follows:

A.   The Court should enjoin Roberts and all others acting in concert with him , and order Roberts to cease, all actions, direct or indirect, that are inconsistent with PdC's ownership of the Initial property and the Mustapha Property and with TMTBC's ownership of the Beach House, including without limitation his pursuit of foreclosure in the Mexican Courts in his individual capacity or for his individual benefit, his pursuit of litigation in the Mexican courts or any court other than this Court relating to the property, his efforts to deprive the other members of TMTBC of possession and enjoyment of the Beach House, and efforts to misappropriate ownership or control of the Initial Property.   All disputes concerning the rights of members and managers in PdC and TMTBC should be ordered to be submitted to this Court for adjudication.

B.   The Court should impose a constructive trust on the Combined Property in favor of the owners, members, investors and lenders for each respective property, in accordance with their interests as proven in this Court.

C.   Proceeds of sale or disposition of the property will be deposited in this court for distribution among competing claimants in accordance with their priorities and interests.

D.   All reasonable expenses necessary to preserve and maintain the property, including reasonable attorney fees or expenses, pending its final disposition and release by this Court shall be treated as a priority claim by any person advancing such sums for the benefit of the property and shall be paid out of the proceeds of sale or disposition of the Combined Properties as appropriate.

## ELEVENTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (Kneen, Flaherty, TMTBC against Roberts)

133.    Cross-Claimants hereby incorporate all other Paragraphs of the Complaint as if fully set forth herein.

134.    Roberts breached his fiduciary duty to Cross-Claimants Kneen and Flaherty by misappropriating to himself the Beach House, by hiring armed thugs to guard the property and prevent access to it by Kneen, Flaherty or either of their agents, and by interfering with efforts to incorporate the Beach House into the effort to achieve a higher sales price for the Combined Property. Although the Beach House is separately owned, some of the funds contributed by PdC's members were used to repair and maintain the Beach House for use as a marketing office for PdC and Cross-Claimants Kneen and Flaherty have consistently been willing to sell the house as part

MOVANTS' EXHIBIT 7
Page 18 of 20

Aple.Appx. 103

of a package deal to maximize the proceeds from sale of the Initial Property and the Mustapha Property.

135.    As a result of Robert's breach of fiduciary duty, Kneen and Flaherty have been damaged.

## IV.   PRAYER FOR RELIEF

Cross-Claimants request the entry of this Court's order and judgment in their favor and as against Defendant as follows:

(A)   An award of damages in an amount to be proven at trial;

(B)   For Cross-Claimants' costs, including expert witness fees, pre- and post-judgment interest and reasonable attorneys' fees;

(C)   Equitable relief in the form of an injunction preventing Roberts continuing to breach his fiduciary duties, including an injunction preventing him, either directly or through his agents, from continuing with foreclosure proceedings against the Mustapha Property; enjoining him from acting alone or in concert with others to impair the title to the Initial Property, enjoining him from continuing or commencing any further litigation in the Mexican courts relating to the ownership or control of the Combined Property, enjoining him from taking or causing action to physically prevent the rightful managers of PdC or TMTBC from gaining access to the property; enjoining him, either directly or through attorney Ramirez or any other third party, from attempting act on behalf of PdC and RCC, or hold themselves out as an agent or attorney in fact of PdC or RCC, before any judicial body in Mexico and enjoining him from taking actions that interfere with the marketing and sale of the property;

(D)   Equitable relief in the form of a constructive trust over the property; and

(D)   For such other and further relief as this court deems just and proper.

## V.  JURY DEMAND

**Cross-Claimants request trial by jury on all claims and issues subject to trial by jury.**

MOVANTS' EXHIBIT 7
Page 19 of 20

Aple.Appx. 104

Respectfully submitted this 4th day of October, 2018.

*/s/ William Leone*

*William Leone*
Norton Rose Fulbright US LLP
1225 Seventeenth Street, Suite 3050
Denver, CO  80202
Phone:  (212) 318-3324
Email: william.leone@nortonrosefulbright.com

*Attorney for Cross-Claimants Flaherty, Kneen, Vertuca, PdC, LLC, and Riviera Country Club, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October, 2018, a true and correct copy of the foregoing **CROSS CLAIM COMPLAINT** was served via ICCES to the following:

Phillip A. Parrott
Campbell Killin Brittan & Ray, LLC
270 Saint Paul Street, Ste. 200
Denver, CO  80206
    *Attorneys for Plaintiff*

 Williams & Daley LLC
 Darrell M. Daley, Esq., #16823
 Heather Joyce, Esq., #41230
 1503 Spruce Street
 Boulder, Colorado 80302
    *Attorneys for Michael Roberts*

**And by first class mail to:**

Michael J. Roberts
6688 Gunpark Drive
Boulder, CO  80301

s/  **Susan M. Morrissey**
Susan M. Morrissey

37164632.1

| | |
|---|---|
| 1 **District Court**<br>**Denver County**<br>2 **COLORADO**<br>**1437 Bannock Street**<br>3 **Denver, Colorado 80202**<br>4 | |
| 5 **BENJAMIN DAVID WOOD, et al.,**<br>6      Plaintiffs,<br>7 Versus<br>8 **TIMOTHY FLAHERTY, et al.,**<br>9      Defendants. | **\*FOR COURT USE ONLY\***<br><br>Case No. 2015CV31828<br>Div/Room: 409 |

10 For Plaintiffs:

11 Phillip Parrott, Esq.

12 For Defendants:

13 William Leone, Esq.

14 Eliot Turner, Esq. (pro hac vice)

15 For Third Party Defendants:

16 Thomas Mattson, Esq.

17

18      The matter came on for hearing on December 6, 2018, before

19 the HONORABLE KENNETH PLOTZ, Judge, Denver District Court, and

20 the following FTR proceedings were had.

21

22

23

24

25

**MOVANTS' EXHIBIT 8**
**Page 1 of 61**

Aple.Appx. 106

2

1                           I N D E X

2                                                              PAGE

3  PROCEEDINGS.................................................5

4      WITNESSES:

5      CALLED BY DEFENDANTS:

6      TIMOTHY KNEEN

7      Direct Examination by Mr. Leone..........................39

8      Voir Dire Examination by Mr. Parrott.....................47

9      Voir Dire Examination by Mr. Mattson.....................48

10     Cross-Examination by Mr. Mattson.........................79

11     Cross-Examination by Mr. Parrott.........................87

12

13     TIMOTHY FLAHERTY

14     Direct Examination by Mr. Leone..........................96

15     Cross-Examination by Mr. Mattson........................104

16     Redirect Examination by Mr. Leone.......................112

17

18     CARL VERTUCA

19     Direct Examination by Mr. Turner........................114

20     Cross-Examination by Mr. Mattson........................118

21     Cross-Examination by Mr. Parrott........................121

22     Recross-Examination by Mr. Mattson......................125

23

24

25

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 2 of 61

1    BENJAMIN ROSEN

2        Direct Examination by Mr. Turner...................127, 137

3        Cross-Examination by Mr. Mattson........................150

4        Cross-Examination by Mr. Parrott........................158

5        Redirect Examination by Mr. Turner......................161

6

7        CALLED BY THIRD PARTY DEFENDANTS:

8        MICHAEL ROBERTS

9        Direct Examination by Mr. Mattson.......................163

10       Cross-Examination by Mr. Leone..........................170

11

12   CLOSING STATEMENT BY MR. LEONE..........................192, 200

13   CLOSING STATEMENT BY MR. MATTSON............................196

14   CLOSING STATEMENT BY MR. PARROTT............................198

15   COURT'S FINDINGS AND ORDERS.................................203

16   TRANSCRIBER'S CERTIFICATE...................................212

17

18

19

20

21

22

23

24

25

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 3 of 61                    Aple.Appx. 108

1                          EXHIBITS

2                                                      Admitted

3    FOR DEFENDANTS:

4    1 - Photograph of Property w/Purple Square          52

5    3 - Chart of Investors/Investment Monies           116

6    4 - Second Amended Operating Agreement             185

7    9 - Settlement Agreement with Hattusa               61

8    11 - Forecast of Budget and Expenditures           117

9    12 - Organizational Chart and Diagram               42

10   17 - Photograph of Property w/Beach House           52

11   18 - Email from Mr. Rosen to Others, 12/14/16       67

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8                    Aple.Appx. 109
Page 4 of 61

1   **Motion to Amend / Preliminary Injunction Hearing**

2   **December 6, 2018**

3

4       THE COURT:  Good morning.  This case is 2015CV3182,

5   Lang and Riviera versus Flaherty, Kneen, Roberts, et al. -- and

6   my name is Kenneth Plotz, P-L-O-T-Z.  I am a senior judge that's

7   going to be sitting on the -- on the motions -- on the two

8   matters that we have here today -- and if I could have your

9   appearances.  Let's here from the Plaintiffs, first.

10      MS. PARROTT:  Good morning, Your Honor.  My name's

11  Phillip A. Parrott, P-A-R-R-O-T-T.  I'm number 11828, and I'm

12  here for the Plaintiff, Richard Lang, who's seated behind me.

13      THE COURT:  Thank you.

14      MR. MATTSON:  Good morning, Your Honor.  Thomas Reid

15  Mattson, 18077, on behalf of Third Party Defendants, Michael

16  Roberts, Sandstone Ventures and Michael J. Roberts LLC.

17      THE COURT:  All right.

18      MR. LEONE:  Good morning, Your Honor.  My name is Bill

19  Leone.  With me is Eliot Turner, an associate from our Austin

20  office, and Mr. Turner has filed his pro hac vice papers with the

21  Supreme Court.  We have a copy for Your Honor if you need to see

22  them.

23      THE COURT:  I'm sorry?

24      MR. LEONE:  He's filed his pro hac vice papers with the

25  Supreme Court.  We have a copy for you need --

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
**Page 5 of 61**                    Aple.Appx. 110

1                THE COURT:  Okay.

2                MR. LEONE:  -- need?

3                THE COURT:  No.  Thank you.

4                MR. LEONE:  With us today, Your Honor, are our clients.

5   We represent the -- three of the four original Defendants,

6   Mr. Flaherty, Mr. Kneen, Mr. Vertuca.  We also represent PDC LLC,

7   the limited liability company.  We are the parties that are

8   pursuing the cross-claims against Mr. Roberts, and are seeking to

9   bring in the Third Party Defendants on our cross-claim.

10               THE COURT:  Okay.  And you do have a motion to amend

11  that's pending?

12               MR. LEONE:  We have a motion to amend that's pending,

13  and the motion for preliminary injunction.

14               THE COURT:  Yes.  Let's take up the motion to amend

15  first -- and I read the motion, but I'll hear any comments that

16  either party -- any party wishes to make in that regard.  So why

17  don't you start since it's your motion, Mr. Leone.

18               MR. LEONE:  All right, Your Honor.

19               I anticipated that because of -- I think Judge

20  Torrington's order mentioned that she couldn't determine from the

21  papers whether or not the issues raised in the cross-claim in the

22  third party complaint were at issue in the Mexican proceedings --

23  and so I thought I would start with that, if that's where --

24               THE COURT:  Yeah.

25               MR. LEONE:  -- you'd like me to start.  There are four

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 6 of 61                                    Aple.Appx. 111

1    arguments that we have to make with respect to that, Your Honor.

2    I'll give you the labels first, and then I'll explain factually

3    how these work.

4           The first is that the legal issues in the Mexican

5    proceedings are different than the legal issues that are framed

6    in the cross-claim.  I'll go into that in detail in a minute, but

7    50,000 feet.

8           The cross-claim asserts claims against Mr. Roberts

9    based on his duties under Colorado law as a manager of a Colorado

10   LLC for a breach of fiduciary duty, misappropriation of the

11   corporate opportunity, fraud -- misrepresentation.  None of those

12   issues are present in the Mexican litigation.  Those claims just

13   simply haven't made in any proceeding down there, nor do we think

14   they probably could be made, because there are jurisdictional

15   issues that relate to those claims as to whether a Mexican court

16   would accept jurisdiction over claims against Mr. Roberts based

17   on his -- his duties unto a -- his co-managers and members of a

18   Colorado LLC -- that -- that operating agreement for that LLC,

19   PDC, is governed by Colorado law, and so we are skeptical that a

20   Mexican court would -- would even accept jurisdiction if somebody

21   offered it.

22          The second argument, Your Honor, is that the facts that

23   are needed to prove the legal claims in the two respective

24   jurisdictions are -- and here I'm going to hedge just a little

25   bit -- are 99 percent different.  In the Colorado proceeding, we

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
**Page 7 of 61**

Aple.Appx. 112

1  need to prove things like Mr. Roberts was a manager of the LLC.

2  Mr. Roberts owed a fiduciary duty to the other members.

3  Mr. Roberts hatched a plan to take the property -- the

4  opportunity that belonged to PDC and converted to himself.

5  Mr. Roberts concealed his plans from the other members -- these

6  are some of the facts that we have to prove in the Colorado

7  action.

8       None of those facts are at issue in the Mexican case.

9  There is one fact that overlaps between the two cases, and that

10 is -- I'm going to call it the fraud on the court fact.  As you

11 can tell from the motion and the cross-claim -- have you had a

12 chance to read the cross-claim by the way?

13      THE COURT:  Yes.

14      MR. LEONE:  Okay.  So you're aware from the cross-claim

15 that one of the facts that we have to support our claim is that

16 Mr. Roberts committed a fraud on the court in Mexico by having

17 his attorney pretend to be the attorney for one of PDC's

18 subsidiaries, and went into the court and pretended -- and sought

19 ratification of a settlement agreement that PDC was a party to,

20 and then subrogated to (indiscernible) rights, and -- and sought

21 to foreclose on the property.

22      The fraud on the court defense has been raised in the

23 Mexican proceeding, and it would be a fair statement to say that

24 that fact -- that one singular fact -- is certainly a fact that

25 would be proven here and there.  It just gives rise to different

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 8 of 61                              Aple.Appx. 113

1    kinds of relief.

2         In the Mexican -- in Mexico, if the fraud on the court

3    is proven, it will give rise to a criminal liability.  My

4    understanding is that there is a criminal case pending.  My

5    understanding, in fact, is that there's a subpoena that's been

6    issued by the Cancun court for Mr. Roberts to appear tomorrow to

7    respond to these charges -- and if fraud on the court is proven,

8    it might constitute a defense to the foreclosure action that he's

9    bringing -- and I'm going to get to that foreclosure action in a

10   minute, because that's really what most of the litigation is

11   about, but I -- I highlight that -- there's a -- so there's no

12   overlap in the legal issues.  There's no overlap in 99 percent of

13   the facts that need to be proven in the respective jurisdictions,

14   but there is one fact, the fraud on the court allegation that is

15   common to both.

16        The third argument we'll make, Your Honor, is that

17   there are procedural differences between what's happening in

18   Mexico and what's happening here in the U.S., and that those

19   different procedures mean that most of the claims that we want to

20   assert here in Colorado, we just can't assert in Mexico -- and

21   when I -- I explain to you the stages of the foreclosure

22   proceeding down there, I think you'll understand that the -- the

23   real issue that's being litigated in Mexico right now is whether

24   or not the fraud on the court defense can be asserted in the --

25   in the foreclosure action as a defense to foreclosure.  I think

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 9 of 61                                        Aple.Appx. 114

1   the -- the theory there is something like in a foreclosure

2   action, the parties -- the Court should be able to rely on the

3   facial validity of the documents, and if the documents are proper

4   on their face, then the foreclosure can proceed, and we're not

5   going to allow an extraneous defense like fraud on the court to

6   be asserted in that proceeding -- that if you want to assert that

7   as a defense or as a claim, you have to do it in some separate

8   proceeding.

9           I don't know how that's going to turn out in Mexico,

10  whether we'll -- they're going to be able to assert that fraud on

11  the court as a defense to the foreclosure or not, but again, when

12  I go through the stages of those cases, you'll see where it

13  lands, but the headline point is that there are procedural

14  differences between the two courts that will prevent us from

15  asserting the claims that we want to assert here down there.

16          Lastly, Your Honor, the fourth that we would make on

17  this is that that the relief sought here does not in -- in this

18  court -- does not depend on the outcome of anything in Mexico or

19  vice-a-versa.  In fact, in some ways, this case becomes stronger

20  if Mr. Roberts is successful in Mexico.  Our claim here in

21  Colorado is that Mr. Roberts had a duty to the partnership and to

22  the investors -- and to Mr. Lang, who's the original Plaintiff in

23  this case, not to self-deal, and not to take this corporate

24  opportunity, but to be a good custodian -- a good -- custodian is

25  probably right word -- caretaker of this asset -- PDC's only

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 10 of 61                                    Aple.Appx. 115

1  asset, and that what he's done here is he's tried to take that

2  asset for himself to the exclusion of everyone else.  If he's

3  successful in his foreclosure action, the deed will be done --

4  will have been done, and the liability -- I think, will be

5  certain here in the U.S.

6          If he's unsuccessful in his foreclosure action, we

7  still have the remaining claims as to whether or not he's

8  breached his fiduciary duty, et cetera.  So the outcome of that

9  case will not determine the outcome of this case -- and vice-a-

10  versa, we could -- we could be unsuccessful in all of our claims

11  here, but if he committed a fraud on the court in Mexico, he's

12  going to have to suffer the consequences in Mexico and -- and

13  those procedures are under -- underway.

14          So as I prepared for this morning, it occurred to me

15  that Judge Torrington was absolutely right to understand the

16  motion to amend.  You sort of need to understand the factual

17  background of how we got to this foreclosure situation.  So if

18  you'll bear with me I'll go through that, but if -- if I'm -- if

19  you know all this from the complaint, and you don't find this

20  helpful, just let me know and we'll -- I want to address what you

21  are interested in.

22          THE COURT:  Let me -- let me tell you -- I -- I have a

23  very general knowledge of the case, because I simply read the

24  file and that's it, but what I do know is that one of the issues

25  in this case is that there is a big loan that was heavily

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 11 of 61                    Aple.Appx. 116

1  leveraged that the corporation took out to finance -- to

2  partially finance some of this property -- and if I'm wrong, you

3  can correct me, please -- and I know that the allegation is that

4  Mr. Roberts assumed liability, or -- or assumed that loan and

5  either paid it off or attempted to pay it off by himself, and

6  then attempted to foreclose -- and -- and that's -- that's a -- I

7  realize that's a rudimentary -- basic knowledge about the case,

8  but that's what I do know -- just if -- if it helps any, Counsel

9  -- I'll say that.

10     MR. LEONE:  Okay.  I think that's mostly correct, Your

11  Honor, and -- and it's a confusing case, that's why I -- I --

12  want to start at the beginning so that -- and I know that you're

13  fresh to the case -- you haven't had this experience -- the long

14  exposure to it that Judge Torrington has.

15     So -- so let me start -- I'm going to put all this in

16  the cabin of explaining the Mexican litigation -- that the

17  primary litigation in Mexico today is a foreclosure action.  The

18  property being foreclosed on -- well, actually, let me -- Eliot

19  if you could give the Judge the binder.  We have some exhibits,

20  Your Honor, that I think will help do this, and both Counsel have

21  been provided with the exhibits.

22     And so if you'll look at exhibit -- oh, and Your Honor,

23  just to kind of show you the exhibit book -- to help -- to help

24  you -- tab A of the exhibit book is just a very rudimentary

25  chronology that is tied to the exhibits -- the numbered exhibits.

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-4420

MOVANTS' EXHIBIT 8
Page 12 of 61                    Aple.Appx. 117

1  I find that it's helpful sometimes to have a skeleton to attach

2  the information to and -- so we've included that for Your Honor;

3  it's a demonstrative exhibit.  It's -- it's just something we

4  prepared to help you.

5         And then tabs B and C are the primary pleading.  So the

6  exhibits start at Exhibit 1.  And if you'll look at Exhibit 1, we

7  have maps of the -- of the property and where it's located in

8  Mexico, and one of those maps is a drawing that shows the parcels

9  of property.  And there are -- I'm going to use three terms today

10 -- one is the initial property, which is the green strip

11 property; that's the ocean -- that's a highway in Mexico.  The

12 initial piece of property, the green property, was purchased by

13 PDC back in 2007 or 2008 for the purpose of building a resort;

14 condominiums and cabins and so forth.

15         Shortly after they purchased this property, they

16 learned of the existence of this little purple square down in the

17 lower right hand corner.  That's the beach house -- that's where

18 the beach house is located -- and it occurred to them that the

19 beach house presented an opportunity to buy it, use it for their

20 own use, and also use it as a marketing office and a sales office

21 for the sales of resort properties on the green or the initial

22 property.

23         A period of a couple of years passed as they tried to

24 develop the green property, the initial property -- and they

25 hired a consultant called SB Capital -- and that's in the

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 13 of 61                    Aple.Appx. 118

1 chronology, Your Honor -- and SB Capital recommended that they

2 purchase the adjoining properties shown in yellow and blue on the

3 map.  This yellow and blue property is what we call the Mustafa

4 property or the Hattusa property.

5       THE COURT:  Go ahead, please.

6       MR. LEONE:  Okay.  So the -- the Hattusa property was

7 available for purchase from this man named Mustafa, who wanted

8 about 12 million dollars for it.  The partners in PDC agreed that

9 that was a good price to pay for that property, and they began to

10 do due diligence on it, and during the due diligence they learn

11 that there was a lien against the property in the name of

12 Hattusa.  Hattusa is Spanish banking company -- a Spanish lender

13 -- a Spanish developer, that also extends credit -- and so

14 Hattusa had a -- a lien on this property for six and a half

15 million dollars.

16       So the decision was made at the recommendation of the

17 consultants to purchase the property by paying Mustafa his

18 equity, 5 million dollars -- and taking the property subject to

19 the Hattusa loan -- the Hattusa mortgage for six and a half

20 million.

21       So from its inception, from the first day that PDC

22 bought this property with Mr. Roberts' knowledge and

23 participation, there was a six and a half million dollar mortgage

24 on that property.  Now, Mr. Parrott and I have disagreements

25 about whether Mr. Parrott's client knew about the mortgage --

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 14 of 61

Aple.Appx. 119

1  whether he understood the mortgage -- that's the gravamen of his

2  complaint, the initial complaint in this case -- he -- his client

3  is not happy in the belief that he was unaware of the mortgage.

4  We contest that -- all the discovery on that is done.  We are not

5  seeking to reopen that discovery or extend that discovery -- that

6  case is basically ready -- that part of the case is ready to go

7  to trial.

8         However, the -- the -- the -- after the acquired the

9  Hattusa property, the strategy there was to try and negotiate

10 with Hattusa to clear the lien -- clear away the mortgage by

11 paying them something less than the face amount of their

12 mortgage.  The parties and their Mexican counsel thought that

13 there was conformities in the mortgage -- some deficiencies in it

14 that would make Hattusa easy to bargain with.  They went through

15 a period of trying to negotiate with Hattusa to release the lien.

16 I'm not going to go into what the infirmities were -- they --

17 they were subject of separate litigation down there.

18        In the end, they were able to reach a settlement with

19 Hattusa, that was actually a pretty good settlement.  After -- I

20 think, three years of litigation and negotiation, they were able

21 to settle and get Hattusa to release the lien for the principal

22 amount of the mortgage -- the six and a half million dollars --

23 so the attorney's fees were waived, interest was waived,

24 penalties were waived -- they actually -- essentially, got an

25 interest free loan for this parcel -- for this period of three --

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
**Page 15 of 61**

Aple.Appx. 120

1    three and a half years.

2              And in the process of what they spent -- PDC spent tons

3    of money on lawyers and accountants to -- to wrangle with Hattusa

4    down there, and they did that at their expense -- the partners

5    funded the -- the operation.  They -- PDC has no money.  PDC has

6    only this property asset.  So if PDC wants to do anything, the

7    partners have to put money into PDC.  And so Mr. Flaherty, Mr.

8    Kneen, continued to fund PDC to permit this.

9              So that brings then to the settlement.  They reached a

10   -- a settlement agreement with Hattusa in 2015 -- in December

11   2015 -- December 1st of 2015.  That settlement agreement is

12   Exhibit 9 in your binder, Your Honor, and it is the evidence that

13   we would present on the settlement.

14             Under that settlement agreement -- well, at the time of

15   the settlement, Hattusa had already commenced a foreclosure

16   action, and Hattusa, like any creditor, wanted to maintain that

17   foreclosure action as security, basically, in the even that PDC

18   didn't actually pay the money due under the settlement.  So that

19   if PDC did not pay the six and a half million dollar settlement,

20   then they could continue their foreclosure action.

21             PDC paid the first down payment on the settlement; it

22   was a million dollars.  Mr. Flaherty funded half, Mr. Kneen

23   funded half -- Mr. Roberts was asked to participate and declined.

24             Then during 2016, the first deadline was coming up that

25   they had to make the remaining payment, but they were able to

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 16 of 61                          Aple.Appx. 121

1   extend that deadline by paying a couple hundred thousand dollars.

2   By that time, Mr. Roberts had become interested in the property,

3   so he funded the extension -- most of the extension; they shared

4   the cost of the extension -- and then there was a second

5   extension that they again shared the cost of to bring the -- the

6   due date for the payment to Hattusa to December 30th of 2016.  So

7   that became the final date by which PDC had to pay Hattusa in

8   order to clear the title to the property.

9        Does that clear -- am I being clear so far?

10        THE COURT:  Mr. Roberts shared the obligation with PDC

11   or with an individual?

12        MR. LEONE:  The -- the settlement agreement itself was

13   --

14        THE COURT:  I just want to know what you're saying --

15   I'll hear from -- from you --

16        MR. LEONE:  Yeah.

17        THE COURT:  -- yeah, in just a second.

18        MR. LEONE:  The -- the total payments for the extension

19   had to come from our -- from -- from a PDC subsidiary, Riviera

20   Country Club -- and -- and I'll show you the guide.  I have --

21        THE COURT:  I just -- I just -- okay.  So it came from

22   a subsidiary and Mr. Roberts?

23        MR. LEONE:  The individuals had to put money into the

24   company --

25        THE COURT:  That's what I wanted to know.

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**Aple.Appx. 122**

1    MR. LEONE:  -- to pay -- to pay for the extension.
2 Mr. Roberts put in money -- Mr. Flaherty, Mr. Kneen put in money
3 to pay for the extensions.

4    THE COURT:  Okay.  That's what I wanted to know.

5    MR. LEONE:  Okay.

6    THE COURT:  Mr. Roberts didn't put it in as individual
7 according to your -- your statement?

8    MR. LEONE:  No.  He -- no, he put the money in.  I
9 think it -- all of them are treating the money they put into the
10 company -- to PDC, as a loan to PDC -- which I'll -- which I'll
11 get to a minute, and then PDC, through RCC would make the payment
12 under the settlement agreement.

13    So as December 30th was approaching, the deadline to
14 pay Hattusa was approaching to clear the title.  The -- there was
15 a disagreement between the partners.  Mr. Flaherty and Mr. Kneen,
16 who had been at this now since 2007 -- trying to develop the
17 property unsuccessfully, admittedly, wanted to sell it and return
18 as much money as they could to the investors and the other people
19 that had loaned to money to PDC over the years.  And if you'll
20 look at Exhibit 3 to our binder is a list of people that have put
21 money into PDC and/or the house over the years in -- in various
22 ways.

23    And -- and by the way, Your Honor, this is a -- this is
24 a summary exhibit that we prepared.  We believe it to be
25 materially accurate.  There's still some auditing going on to it,

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 18 of 61

Aple.Appx. 123

1  but it -- it will give you a good sense of what's happened here.

2  So the -- when PDC was first begun, there was a Class A

3  capital contribution, and you'll see there that -- that the first

4  three entries are larger numbers -- in the 3 million dollars plus

5  range.  Crystal Cascades is Mr. Flaherty.  JHK Ventures is Mr.

6  Kneen, and then, of course, there's Mr. Roberts who's put in -- I

7  think the -- the idea there was for them to put in equal amounts

8  to -- to start the company, and then they started to raise some

9  money from some other people.

10  Then there was a Class B offering, where they went out

11  and raised money from a whole group of people, including Mr. Lang

12  -- that's how Mr. Lang enters the case -- and that was all done

13  pursuant to an offering memorandum, that's Exhibit 2 in your book

14  that was prepared by Counsel.

15  And -- and then when -- as I mentioned -- you know, the

16  project didn't go smoothly.  They've tried to develop it.  They

17  had to fire a consultant.  They brought in a new consultant, but

18  as it went out the -- the PDC needed more money, and so they

19  began -- when I say they, I mean Mr. Roberts, Mr. Kneen,

20  Mr. Flaherty -- began to put more money in, and more money into

21  the company to pay for architect's drawings and permits -- and

22  all the things that go with trying to get a development off the

23  ground.

24  And in the end -- on the second page of Exhibit 3, Your

25  Honor, we have kind of a rough summary of how much money each

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 19 of 61

Aple.Appx. 124

1  person has put in over the life of the project.  Mr. Flaherty is

2  in for over 10 million dollars.  Mr. Kneen's in for over 8

3  million dollars.  Mr. Roberts is in for over 8 million dollars.

4  So -- and Mr. Lang is in for about $500,000.  So I don't -- I

5  don't highlight this for any reason to suggest that Mr. Lang's

6  contribution was unimportant or insignificant.  That's really not

7  part of our argument today, but I put it in simply to show that

8  the three principal parties here are Mr. Roberts, Mr. Kneen, and

9  Mr. Flaherty.

10         So the deadline is approaching, December 30th.

11  Mr. Kneen and Mr. Flaherty want to pay off this loan, sell the

12  property, and try to pay some people back.  By the way, there are

13  three managers of PDC -- Mr. Kneen, Mr. Flaherty, and Mr. Roberts

14  -- that was how it was formed.  We have the original operating

15  agreement in our exhibit binder here.  To this day, there are

16  three managers.  There are three managers to the PDC subsidiaries

17  -- the Riviera Country Club, the Mexican entity.  There are three

18  -- there are three members to the LLC that owns the beach house,

19  Mr. Flaherty, Mr. Kneen, and Mr. Roberts.  That structure is

20  pretty much intact, and pretty consistent across the board -- and

21  all the operating agreements say that if the managers want to do

22  anything, you have to have the consent of two of three; no one

23  manager can do anything by himself.

24         So as December 30th was approaching, Mr. Kneen and

25  Mr. Vertuca meet with Mr. Roberts to discuss -- how are we going

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 20 of 61                    Aple.Appx. 125

1  to come up with the money to pay the final payment to Hattusa to

2  release the lien and get the property?  Sell it -- just do

3  whatever we're going to do with it.

4          There is that disagreement that I told you about --

5  Mr. Roberts wants to develop the property, and he does not want

6  to sell it.  He's the minority of these three members, managers -

7  - but -- and at this meeting on December 13th, he is told by

8  Mr. Kneen that Mr. Flaherty is willing to come up with the money

9  to release the lien. Mr. Roberts objects and says no, I don't

10  want Flaherty into this for any more than he is.  I will come up

11  with the money to pay off the lien.

12          The parties leave that meeting on December 13th --

13  Mr. Flaherty, Mr. Kneen, Mr. Vertuca believe that Mr. Roberts has

14  agreed to advance the money necessary to pay off the Hattusa

15  lien, just was -- you know, as I showed you in Exhibit 3 -- for

16  the last five years -- six years these individuals have been

17  putting money into RCC or PDC -- or TMTVC, the house partnership

18  -- to pay the -- pay the bills, and so they think that that is

19  what Mr. Roberts was going to do -- and they call their lawyer,

20  Mr. Rosen, who's here with us today -- to prepare the documents -

21  - to reflect that Mr. Roberts is going to advance the funds --

22  they're going to pay off Hattusa and then, at his request, he

23  wanted six months to try and come up with the development plan

24  for the property.  If he was successful, then he would buy out

25  everybody else -- pay the investors, pay back Mr. Lang's

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 21 of 61

Aple.Appx. 126

1  (indiscernible) -- pay off -- pay as much -- a reasonable, fair

2  amount to the investors of PDC.

3       If he was unsuccessful in coming up with a development

4  plan, than the property would just revert back to trying to be

5  sold.  He would -- he would acquiesce to Mr. Kneen and

6  Mr. Flaherty's desire to sell the property to a third party, and

7  then distribute that money to the investors and lenders of PDC.

8  That's what they believed was the deal on December 13th.

9       Unbeknownst to them, two weeks prior to that, Mr.

10  Roberts had already executed a power of attorney to his lawyer in

11  Mexico -- this Juan Carlos, purporting to a point Mr. Juan Carlos

12  is the attorney in fact, for a PDC subsidiary -- of the party to

13  the Hattusa settlement.  And unbeknownst to them, Mr. Roberts and

14  Mr. Juan Carlos had already made a plan to go to the court in

15  Mexico to have that settlement agreement ratified -- there's a

16  step down there that you have to do with a settlement in a -- a

17  foreclosure proceeding, you have to get the settlement ratified

18  by the Court, but to do that, the parties to the settlement

19  agreement have to appear before the Court.

20       So Mr. Roberts, without any authorization from

21  Mr. Kneen or Flaherty, signed this power of attorney for Mr. Juan

22  Carlos -- they went into the court, they pretended to be

23  representing PDC/RCC -- they got the settlement agreement

24  ratified.

25       Next thing they -- they didn't disclose to Mr. Flaherty

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 22 of 61

Aple.Appx. 127

1  or Mr. Kneens -- that after that, they planned to pay off the

2  Hattusa loan using funds from Sandstone Ventures, which is a --

3  one of the third party defendants, Mr. Roberts -- one of

4  Mr. Roberts companies -- they were going to pay off the Hattusa

5  lien and then the third part of this is they were going to appear

6  in court again in Mexico -- again with this fraudulent power of

7  attorney -- again represent to the Court that they were

8  authorized to represent RCC/PDC, and they would then be

9  subrogated to or to take the place of Hattusa in the foreclosure

10 action, which is what they did.

11         On December the 16th at -- I don't know what time, but

12 it was late in the day.  Why is that important?  Because all the

13 courts in Mexico close at the end of the day on December 16th,

14 and they don't open up again until January the 4th.  So they

15 waited until the last day that the courts were opened in Mexico

16 to go in, take the Hattusa position, foreclose on the property,

17 and then the courts closed and there was nothing that

18 Mr. Flaherty or Kneen could do about it.  They couldn't even find

19 out what Mr. Roberts had done until the courts reopened in

20 January.  By then the -- the December 30th deadline has passed --

21 even if they had -- even if it hadn't passed, I'm sure there's

22 anything they could have done.

23         You'll see from the evidence that Mr. Roberts stopped

24 returning phone calls, stopped answering emails.  Mr. Rosen went

25 to see his attorney in Cancun and could not get an explanation

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 23 of 61                    Aple.Appx. 128

1  for what had happened.

2          Eventually, the learned from Hattusa that they had

3  received money from Sandstone and Mr. Roberts -- they actually

4  sent an email saying who are these guys that sent us money?  We

5  have money that arrived -- you know the night -- overnight on

6  Friday night into Saturday.  In an effort to find out what

7  happened, Mr. Rosen and others -- and a real estate broker went

8  to the property, they learned that Mr. Roberts had moved into the

9  property on December 16th, 2016.  He brought with him armed

10  guards; that he increased the number of armed guards -- and from

11  that point forward, Mr. Kneen, Mr. Flaherty -- Mr. Rosen were not

12  allowed to visit the property -- and then after the courts opened

13  in January, Mr. Rosen was able to see the documents that had been

14  filed -- these fraudulent -- this fraudulent power of attorney,

15  and they immediately -- and now, only now, Mr. Roberts was

16  standing in the shoes of Hattusa -- he now was the foreclosing

17  party, just as Hattusa had been -- and -- so he proceeded with

18  the foreclosure, and they defended on the grounds that there was

19  a fraud on the court.

20          Now, in the first -- there was -- there was proceeding

21  in the trial court -- in the state court in Mexico, that court

22  found that there was a fraud on the court and that the attempted

23  substitution of Mr. Roberts for Hattusa was invalid, void.  That

24  was appealed by Mr. Roberts' lawyers in Mexico.  The state

25  appellate court didn't rule on whether he had committed a fraud

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 24 of 61                          Aple.Appx. 129

1 on the court, it reversed that trial court decision, but on a

2 procedural ground. It reversed it on the grounds that even if

3 there was a fraud on the court, you can't assert it as a defense

4 to a foreclosure action, the papers are valid on their face.

5       Then PDC appealed that to the Mexican national court.

6 There's a state court system, a national court system in Mexico -

7 - you can appeal from the state court system to the national

8 court. In that appeal, the federal court has put a stay on the

9 foreclosure proceeding while it considers the procedural question

10 of whether the fraud on the court can be asserted as a defense in

11 a foreclosure action.

12       That's a mouthful, I know, and it's -- it's a long

13 history, but the current state of a play -- the play -- the

14 bottom line on this is that there's a case pending in the

15 national court in Mexico to determine whether or not the -- PDC

16 can assert fraud on the court as a defense in a foreclosure

17 action. If that case is decided unfavorably to PDC, then the

18 foreclosure will proceed immediately. That's the imminent harm

19 that really has propelled us into this court, because this court

20 has jurisdiction over Mr. Roberts. It doesn't have the ability

21 to order the Mexican court to do anything or not do anything, but

22 it has the ability to exercise jurisdiction over Mr. Roberts --

23 and he can be enjoined from continuing his efforts to foreclose

24 on the property -- wherever it's located. It's an asset

25 belonging to a Colorado LLC, and -- and there's a jurisdiction

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 25 of 61

Aple.Appx. 130

1 for this court to do that.

2         So -- so that's -- that is the most -- that is the

3 thing that the -- our clients fear the most is that -- that if

4 Mr. Roberts is able to complete, consummate his wrongful

5 foreclosure in Mexico, the property will be lost forever, and

6 there won't be -- PDC's only asset will be gone, and the only

7 asset available to satisfy claims like Mr. Lang's will be gone.

8         If on the other hand we're successful in that appeal,

9 in the national court, it won't end the case for us -- all it

10 will mean is that this one fact, this fraud on the court that

11 I've described to you can be asserted as a defense in the

12 foreclosure action, and they'll keep banging it out down in

13 Mexico about whether or not Mr. Roberts can continue on with his

14 foreclosure action -- unless, there's an injunction.  If there's

15 an injunction, then that will stop Mr. Roberts from doing any of

16 the things he's doing in Mexico, but if there is no injunction,

17 we just have to get really lucky for him not to be able to

18 consummate this scheme.  So --

19         THE COURT:  The motion to amend?

20         MR. LEONE:  What's that?

21         THE COURT:  We were talking about the motion to amend.

22         MR. LEONE:  So -- and -- and the motion to amend -- so

23 the question of the motion to amend is the -- yeah, is the -- are

24 these issues in front of the Mexican court?  I think by going

25 through that factual background, it should be clear that legally

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
Page 26 of 61

Aple.Appx. 131

1  and factually, the proceedings are distinct, and that that should

2  not be any kind of an impediment to amending the complaint.

3         Now, there are some other objections to the motion to

4  amend that were raised.

5         THE COURT:  Timeliness.

6         MR. LEONE:  There was a deadline to amend pleadings in

7  the complaint during -- in the -- in the case.  We -- I think

8  we've addressed that on our papers, but -- you know, let me step

9  back a little bit and try and give you some background on the

10 case that Judge Torrington had because she presided over it.

11        When the case -- this case was first filed there were

12 -- I don't know, four plaintiffs.  There was Mr. Lang, and there

13 was a Woods -- there was Castallano Trust -- there were a group

14 of plaintiffs.  Mr. Roberts and these three were co-defendants;

15 PDC was a defendant.  There was an effort, obviously, to try and

16 jointly defend the case.  There were lots of procedures that went

17 into place.  There was an arbitration; we moved to compel

18 arbitration.  First, Mr. Parrott objected, that resulted in the

19 case being split up.  One case went to arbitration; the other one

20 stayed here and was stayed.

21        The bottom line is that Mr. Flaherty and Mr. Kneen have

22 been able to successfully resolve almost all of those cases.

23 Mr. Lang is the only one left.  The others have all been settled.

24 In all those settlements, he -- they sought the participation of

25 Mr. Roberts to assist and never received; he's not participated

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 27 of 61                          Aple.Appx. 132

1  in any of those.  And so what we -- what we ended up with after

2  all of that -- arbitration, settlement negotiations -- we ended

3  up with one case left over, and that was Mr. Lang's case.  It was

4  scheduled for trial in May, and it was really then that we looked

5  at what that trial would look like, and by May of 2018, it became

6  clear that what was going on in Mexico -- what Mr. Roberts was

7  doing, the court's proceedings down there were not going to deal

8  with these issues.  We knew we had to deal with them in this

9  case, and rather than just come to trial and start presenting

10 evidence and essentially, cast blame on Mr. Roberts for

11 Mr. Lang's damages, it occurred to us that we really needed to

12 assert these claims.  We needed to -- once and for all, get the

13 disputes between the parties in one place.

14         And -- and there's another reason why we -- why we felt

15 we needed to bring these claims in this case.  Mr. Parrott filed

16 a second amended complaint.  He has a complaint, a first amended

17 complaint, and a second amended complaint -- so he's on his third

18 amended -- he's on his third complaint in the case.  This is our

19 first attempt to the cross-claim, if -- if that matters -- but

20 Mr. Parrott sensed the same thing that I sensed, which is that

21 this property is what this case is all about, and it's the only

22 asset of PDC -- and to get a final resolution of all the disputes

23 between the parties, we have to get control of the property, get

24 it sold, and then have some money to fight over, and then we can

25 -- then we can fight over who gets what money in what order --

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
**Page 28 of 61**                    **Aple.Appx. 133**

page

1   it's almost like a receivership.

2          Mr. Parrott asked for that relief in his second amended

3   complaint.  The relief we're asking for in this cross-claim and

4   third party complaint, is exactly the same relief that was

5   already t-upped in the case in the second amended complaint.  So

6   haven't really expanded the relief sought.  We haven't really

7   expanded the nature of the case in that sense.  We have expanded

8   the -- the factual -- facts that need to be proven in the case,

9   because now we need to do some discovery with Mr. Roberts.  I'm

10  sure he's going to want to do some discovery, and we have to get

11  those issues ready to try, as well.

12         So -- but for some timeliness -- from a timeliness

13  viewpoint, this case has been -- you know, characterized by a

14  steady progress towards getting things resolved, that's resulted

15  in some extensions of deadlines, to one stay in the case, to

16  multiple amended complaints.  I don't think there's any prejudice

17  at all to the parties of this amendment.  We recognize that there

18  was a deadline to amend pleadings.  We recognize that we're

19  asking for leave to amend after that deadline, but the case law

20  -- I think is clear that in the absence of prejudice, leave

21  should be freely granted -- and there just isn't any prejudice in

22  this case.  In fact, this -- this is exactly -- this is what

23  needs to be done in -- in the case.

24         So -- so we ask for that -- we ask for that leave to

25  amend.  Basically, aligns the relief that we're seeking with the

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 29 of 61                    Aple.Appx. 134

1 relief that Mr. Parrott is seeking. That -- that part of the

2 case we are in alignment. I'll let Mr. Parrott speak for

3 himself, but in terms of getting control of the property,

4 preventing Mr. Roberts from stealing this asset, I think we're in

5 alignment. After that, we have lots of things to disagree about.

6 Mr. Parrott has his theory as to how much money his client should

7 get and in what order; we disagree with it respectfully, but we

8 can -- we probably will be able to settle that problem if we get

9 control of the assets. If not, then that's what trials are for,

10 but there's no prejudice to his client of the relief we're

11 seeking. We're not going to reopen discovery in his case; it's

12 not going to cost his client anything -- and the only prejudice

13 that Mr. Roberts can point to is to say well, somebody is

14 bringing a claim against me -- you know, for my wrongdoing.

15 That's not prejudice.

16         If we don't amend the complaint in this case, then

17 we'll have to file a separate case, and then we'll seek to

18 consolidate it, because the -- the evidence that we have to

19 present is so overlapping and so intertwined, that I don't think

20 you could even bifurcate these cases, and that doesn't seem like

21 a logical thing to do.

22         So -- so it -- that's why we seek leave to amend.

23         THE COURT: Thank you. Mr. Parrott, let me hear from

24 you first.

25         MR. PARROTT: Your Honor, really I think you need to

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 30 of 61

Aple.Appx. 135

1   hear from Mr. Roberts, because as you can tell from our -- from

2   his attorney, not from Roberts.

3            THE COURT:  You mean, Mr. Mattson, right?

4            MR. PARROTT:  Yeah.  Mr. Mattson.

5            THE COURT:  Okay.

6            MR. PARROTT:  Mr. Roberts, the party through

7   Mr. Mattson.

8            THE COURT:  Yes, and I'm anticipating hearing him,

9   but --

10            MR. PARROTT:  Yeah.  We --

11            THE COURT:  -- I just -- you know, I heard Mr. Leone

12   say that you were practically aligned now on this, and I just

13   want to get that out whether or not you are, and then go to

14   Mr. Mattson.

15            MR. PARROTT:  My good friend Mr. Leone may have engaged

16   in a little bit -- I won't call it hyperbole, but expansion --

17   not aligned in the sense that we did ask for an injunction.  Our

18   injunction is very limited in our complaint, and basically

19   recognizes that -- that if this property in Mexico is sold -- if

20   there is money from this property, however money is generated,

21   before that money is distributed, we need to decide who gets that

22   money.  That was my injunction.  The injunction that -- I'll call

23   them the PDC parties represented by Mr. Leone is broader, so --

24   so it isn't exactly the same, but I do agree that we need

25   injunctive relief.  Why didn't I pursue my injunction?  Why

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 31 of 61

Aple.Appx. 136

1 didn't I come in here and ask for an injunction?  Simple -- you

2 would have asked me -- they would have asked me to post a bond.

3 I couldn't post a bond for something down in Mexico, so I didn't

4 -- that's why we didn't pursue that injunction, and because what

5 we really want is to make sure that this -- whatever proceeds --

6 whatever comes of this property, there's an injunction so that we

7 can argue the priority of the distribution of that money.

8          We do agree -- Mr. Lang, after being in this case since

9 May of 2015, has come to believe that really, his hope of

10 recovering is tied up in that property, primarily as it is the

11 greatest -- it is an asset out there which can be liquidated, and

12 once there's money there, then -- then they will get paid -- and

13 we haven't been paid today.  That's -- that's kind of our

14 position.  So we don't --

15          THE COURT:  You don't object to the motion to amend,

16 then?

17          MR. PARROTT:  We do not --

18          THE COURT:  That's what I'm trying to --

19          MR. PARROTT:  -- with one exception.  As long as what

20 Mr. Leone says is true, that we don't reopen discovery in

21 Mr. Lang's case -- that we don't reopen the opportunity for a

22 motion for -- all those deadlines that have passed which create

23 all the expense in a case to Mr. Lang -- that we not open those

24 up again.  Mr. Leone said that, and that's -- that's what we're

25 asking for -- that our case kind of sit there.

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 32 of 61          Aple.Appx. 137

1       And -- and we actually had an agreement, sort of worked

2   out regarding this in June, which said that -- that basically, --

3   so that Mr. Lang is not dragged down into what looks to us like a

4   big expensive hole of litigation -- that's all we ask.  And we

5   don't -- we don't re-t that case.

6       THE COURT:  All right.  Now, on behalf of Mr. Roberts,

7   Mr. Mattson?

8       MR. MATTSON:  Good morning again, Your Honor.

9       First off, there's a lot to unpack from Mr. Leone's

10  testimony, but let me cut to the chase that the -- the issue in

11  Mexico is finished, it's over -- and it wasn't a foreclosure, but

12  the entirety of the issue in Mexico is a done deal; the

13  property's in Mr. Roberts' name.  So I think what they're here

14  for, and the reason they filed a motion to amend and a motion to

15  enjoin -- for one, I think that the motion to enjoin would be

16  moot since it's already happened, and two, they lost in Mexico;

17  they were represented -- they were part of the settlement

18  agreement, it was signed on by all three managers of the PDC --

19  or of Riviera Country Club, Mr. Flaherty, Mr. Kneen, and Mr.

20  Rosen -- those were the three managers, they're not -- they're

21  not aligned like -- like Mr. Leone testified, they're different.

22      But anyway, they signed a settlement agreement.  The

23  Court enforced that settlement agreement, made it an order of the

24  court.  They had time certain to make a payment to Mister -- or

25  to the Hattusa group.  That payment wasn't -- was made by

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 33 of 61

Aple.Appx. 138

1  Mr. Roberts, individually, or by his -- through his -- one of his

2  other companies -- and they have already litigated all the issues

3  of whether or not it was done by fraud -- whether there was --

4  you know, everything you can think of -- and it's gone to all

5  different levels of appeal, but it's done.

6          So what we're here now is not to serve the ends of

7  speedy and efficient administration, but the claim here is we

8  lost in Mexico and this our only shot now, so we're going to come

9  back and revisit it in this courtroom.  Now, rather than go

10  through all the things that Mr. Leone said that were wrong, or at

11  least are contended by my client --

12          THE COURT:  Can I ask you question, Mr. Mattson -- it's

13  done, but on appeal.  Is that correct?

14          MR. MATTSON:  No.  The entirety of the appeal is

15  finished; everything is finished -- it's over.

16          THE COURT:  So we have a dispute here about whether

17  it's over or not?

18          MR. MATTSON:  I don't know that -- that these guys

19  know?

20          MR. LEONE:  Your Honor, Mr. Rosen is a Mexican licensed

21  attorney.  He's familiar with the litigation.  He's checked the

22  docket as of yesterday, and the case is not gone, and he'll

23  testify about that today.

24          MR. MATTSON:  His -- the case is not gone, because

25  there are criminal complaints against Mister -- Mr. Rosen.

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
Page 34 of 61

Aple.Appx. 139

1  They're called amarros (phonetic) -- imparros (phonetic), and

2  those -- those complaints are similar to our -- that there was a

3  fraud committed upon the court by the attorneys.  So no, it isn't

4  finished.  There's after effects with respect to the attorneys

5  involved.  With respect to the -- the race of the litigation;

6  it's done.  So I -- you can issue all the injunctions you want, I

7  don't think it's going to make any difference.

8         Given that, this case that Mr. Leone wants to bring,

9  it's too late, and to embroil these guys into a -- into a new --

10  into a whole new set of issues -- that frankly, I believe since

11  it's between these -- the four managers and members of the

12  original PDC, is subject to arbitration again.  If they want to

13  bring a law suit, and he wants to bring a law suit against them,

14  arbitrate it.  That's what we're going to do -- not in this court

15  -- this court's already had its time.  That's kind of the -- the

16  big picture.

17         With respect to the -- all the different requirements

18  for relief to amend, the essence of their claim is that they

19  failed to act.  Mr. Leone talked about the -- they had a meeting

20  -- and this was two years ago -- they had a meeting and

21  Mr. Roberts volunteered to just -- I'll -- I'll pay the 6 million

22  dollars, or the five and a half million that's due -- I'll just

23  take care of it.  We're all in a disagreement here, but I'll just

24  take care of it, and they didn't codify that in writing, or they

25  didn't realize that there was contention -- they just walked away

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 35 of 61

Aple.Appx. 140

1 from it and thought well, nothing is ever going to happen -- that

2 makes no sense.

3     So they failed to act on their own behalf. They, as

4 the -- as the two managers that wanted to -- that could have paid

5 off this property didn't do so; they ignored it and just expected

6 Mr. Roberts to pick up the tab. What they told him was that if

7 he -- if he doesn't pay it on behalf of PDC, that his capital

8 account would be reduced to zero and he's out -- and he's the one

9 that sunk 16 million dollars into this project already. He -- he

10 was going to have nothing if he didn't go in there and take it

11 for himself, and so that's what he's done.

12     So with respect to -- let me respond with respect to an

13 injunction because there are certain thresholds that have to be

14 met that are not clearly, but we'll get to that later, I assume

15 -- if it's even a point. But with respect to amending this

16 complaint and starting this all anew, and dragging Mr. Lang and

17 his attorney through this again, I think it's too late. I think

18 they lost their chance. And -- and the law reads that it -- it

19 will be freely given, but it's not without limits. You can't

20 wait a year after you know there's a problem, and then find out

21 -- oh, by the way we lost in Mexico, so now this is our only shot

22 -- we've got to try it this way. It's too late.

23     THE COURT: Thank you.

24     MR. MATTSON: Thanks.

25     THE COURT: Well, first of all let me say right now,

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 36 of 61

Aple.Appx. 141

1  there are factual matters here that I can't determine at the

2  outset based upon the statements of Counsel.  I think that we all

3  know that.

4          Regardless of the fact that these factual -- factual

5  balls, may I say, are in the air, the one thing I can rely on is

6  -- or the one thing that I -- I -- I don't think is in dispute

7  here -- or maybe it is, but I think that that would have to

8  resolved at a trial is this -- is that what Mr. Leone said is

9  we're not talking about what happened in Mexico.  We're talking

10 about the duties of a manager of a Colorado LLC.

11         Second, based upon that, I agree with Counsel for

12 Mr. Tuner that relief -- the relief sought doesn't depend upon

13 the outcome in the Mexican courts.

14         Third, I find that the trial efficiencies would be

15 served by consolidating this matter, and therefore, granting the

16 motion to amend.

17         And finally, I'm sure there -- there's some prejudice

18 in anybody bringing complaints against others and making

19 allegations against others, but that's not the type of prejudice

20 contemplated by our rules.  The motion to amend is granted, and

21 leave will be given for the cross-claimants to amend their

22 complaint as proposed in the pleadings right now.

23         Let's proceed with the motion for injunction, because

24 these -- these are matters which I am going to hear evidence on

25 and I'll make -- we've got about two hours.  I'll hear the

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 37 of 61

Aple.Appx. 142

1  evidence -- I'll make the <u>Rathke v. MacFarlane</u> findings as -- as

2  -- as I determine from the evidence.  So --

3          MR. PARROTT:  Your -- Your Honor --

4          THE COURT:  Yes.

5          MR. PARROTT:  -- is that motion to amend granted to

6  both parties?

7          THE COURT:  Yes.

8          MR. PARROTT:  Thank you.

9          MR. LEONE:  Thank you, Your Honor.  As for my lengthy

10 explanation of the case, I don't feel a need for any kind of

11 opening statement.  Shall we just call our first witness?

12         THE COURT:  Please

13         MR. LEONE:  We call to the stand, Mr. Timothy Kneen.

14         MR. MATTSON:  Your Honor, we'd ask for a sequestration

15 of witnesses.  I think that's only Mr. Rosen.

16         THE COURT:  That will be granted.  And I'll -- I'll

17 give each party an opportunity to have an advisory witness;

18 however, I don't know who's going to be a witness, or who's not

19 going to be a witness, so I'll leave it to Counsel to advise

20 people that walk in and out of the courtroom if you don't mind.

21         MR. LEONE:  Your Honor, we only have one non-party

22 witness, and that's Mr. Rosen.  We're happy to have him be

23 sequestered.  Mr. Kneen, Mr. Flaherty, and Mr. Vertuca are

24 parties.  I think they're entitled to be here.

25         THE COURT:  They are.

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 38 of 61                                    Aple.Appx. 143

1       MR. LEONE: Again, Mr. Rosen, if you can wait outside.

2       THE COURT: Mr. Kneen -- Kneen, I'm sorry. Would you

3 face me and raise your right hand, please?

4       Do you solemnly swear under the penalty of perjury that

5 the testimony you give before this Court shall be the truth, the

6 whole truth and nothing but the truth?

7       MR. KNEEN: Yes, Sir.

8       TIMOTHY KNEEN, DEFENDANT'S WITNESS, SWORN

9       THE COURT: Thank you. Please have a seat.

10      MR. LEONE: Does the witness have an exhibit binder

11 yet?

12      UNIDENTIFIED SPEAKER: No, the witness does not have --

13      MR. LEONE: Oh, we should give the witness -- okay.

14 Ready?

15      DIRECT EXAMINATION

16 BY MR. LEONE:

17   Q   Mr. Kneen, you've got a microphone in front of you, so

18 just make sure you address the Court. Can you state your name

19 please, for the record?

20   A   Timothy Kneen.

21   Q   And can you give us 60 seconds on your background, your

22 professional background?

23   A   Sure. For 30 years, I've worked as a financial

24 consultant in the Citi Group, Citi Bank type of world in the

25 various different companies that existed there, then done quite a

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 39 of 61

Aple.Appx. 144

1     Q    There's been a great deal of testimony about a meeting

2    that you had.  Some say December 13th; some say December 16th,

3    but it was in the end of December when you met with Carl Vertuca

4    and Tim Kneen in your office.  Can you describe the circumstances

5    of that meeting, and what was the conclusion?

6    A    We had been told -- the meeting by the way, to my

7    recollection was December 16th, Friday.  We had been told that

8    the -- my partners in this deal, the other members of the -- of

9    the LLCs, had received offers for sale and they were interested

10    in selling the property.

11    Q    And -- but was there -- what about the payment to

12    Hattusa; did you discuss that?  Did you come to a resolution?

13    A    Yes, the first thing I told Mr. Kneen going into that

14    meeting is that I was currently in court with my attorneys in

15    Mexico making payment on the lien.

16    Q    And does that -- does that statement coincide with the

17    documents that these folks have shown you that there was -- there

18    was somebody in court on December 16th making payments to

19    Hattusa?

20    A    I'm sorry.  Could you restate the question?

21    Q    Is there -- does that date of December 16th, does that

22    coincide with the documents that have been produced -- that in

23    fact, you had a man in Mexico --

24    A    In court making payment on the note; yes.

25    Q    Okay.  And if that had been made by that date, the date

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
**Page 40 of 61**

Aple.Appx. 145

1     THE COURT:  Mr. Parrott, do you have any witnesses?

2     MR. PARROTT:  No, Sir.  No, Sir.

3     THE COURT:  All right.  Let me hear your statements.

4 I'm particularly interested in what relief, specifically, what

5 you're asking for, because the language in your motion on page 16

6 -- perhaps I'm not understanding something.  So make your

7 argument, but I -- I wanted to point that out.

8     MR. LEONE:  Thank you, Your Honor.  There are really

9 two -- two kinds of relief we're asking for -- one, is an

10 injunction against Mr. Roberts, and I think the way we phrased

11 that in our proposed order and -- and we'd be happy to submit a

12 form of order to you based on our colloquy today was to enjoin

13 him from -- and all others acting in concert with him, that would

14 include any attorneys or agents that are directed by, paid by, or

15 otherwise acting in concert with him, to cease all actions,

16 direct or indirect, that are inconsistent with PDC's ownership of

17 the initial property and the Mustafa property -- and for the

18 beach house.

19     To our knowledge, the only legal action that he's taken

20 so far has been directed at the Mustafa property.  We're unaware

21 of any legal action against the beach house.  We're unaware of

22 any legal action against the initial property, although that will

23 be a topic of discovery.

24     So that's the first thing we're asking for -- is for a

25 cease and desist order against Mr. Roberts to prevent him, or his

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 41 of 61

Aple.Appx. 146

1   agents, from doing anything inconsistent with PDC's ownership of

2   the initial property -- that includes continued pursuit of

3   foreclosure, continued pursuit of this national court action that

4   Mr. Rosen mentioned, and pursuit of any other action in Mexico or

5   elsewhere.  And we will, Your Honor, in a form of order -- we can

6   provide the case numbers of those specific matters so that that

7   can be included in the text of the order.

8           The second form of relief that we're asking for on a

9   preliminary basis -- and I -- I realize I misspoke, there's

10  really three types of relief.  The second type relief we're

11  asking for is a constructive trust be imposed on the combined

12  property, and I think in our papers we cite the constructive

13  trust law in Colorado -- the cases that have recognized the

14  constructive trust.  It's an equitable remedy.  It basically is

15  designed to make sure that everyone that has an interest in a

16  piece of property, has their interest protected from a fraud or

17  improper taking of the property by -- by someone; in this case --

18  in breach of their fiduciary duty -- in this case, it would be a

19  breach of fiduciary duty by Mr. Roberts to exercise sole dominion

20  and control over property that rightfully should be managed by

21  the -- by the partnership.  And what that would mean is if the --

22  if a constructive trust is imposed on that property, it

23  essentially means that the managers of the business will have to

24  be able to continue to operate the property, but will have to

25  account to this Court for the proceeds so that they can be

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 42 of 61                                    Aple.Appx. 147

1 properly paid out.

2          And then the third -- a third type of remedy that we're

3 asking for is this -- this D -- the D to remedy that Mr. Parrott

4 raised -- and the -- the -- in our motion we drafted D probably

5 unduly, broadly; it's probably too expansive.  It says all

6 expenses necessary to preserve and maintain the property.  What

7 we stipulate -- we -- we modify that request.

8          The money that's being expended on the property protect

9 it presently we think should have a priority for repayment in the

10 -- when the property is sold, but those expenses are going to

11 have to be reasonable and necessary.  We're not asking you to

12 decide in advance that any particular expense is reasonable in

13 amount or type, or anywhere necessary -- we just want --

14 Mr. Flaherty has the right to make a decision, and Mr. Kneen has

15 to make a decision next week about whether to write more checks

16 to protect the property.  Their concern is that -- look, if they

17 keep writing checks -- and at the end they don't have any ability

18 to be repaid, these monies that they're spending on behalf of

19 everyone, that why would they continue to do that?  They're

20 becoming very insecure about the possibility that this is going

21 to go on for a long time, and they're not going to get repaid

22 these monies.  At some point they're going to stop -- and they've

23 been very good so far; they've spent -- like, I think,

24 Mr. Vertuca testified, a million and a half dollars in the last

25 23 months protecting the property, but they're not going to keep

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 43 of 61                    Aple.Appx. 148

1  doing it if they don't have some ruling that says -- you know,

2  that the monies they expend in this period, and only this period,

3  that a reasonable and necessary will be reimbursed to them upon

4  the sale of the property.

5         And you know, Your Honor, on this one, I can tell

6  you're a little bit troubled by this, and not sure about this

7  relief that I'm requesting.  Let me analogize it.

8         We did go through a process of considering whether we

9  should come in and move for a receiver -- appointment of a

10  receiver for the property, and one of the problems with that was

11  that receiverships are expensive -- it introduces another layer

12  of -- of dispute resolution, really, into the case.  We end up in

13  front of the receiver disputing what to do with the property and

14  then how the money should be distributed.  What we ended up with,

15  and our hope is that -- that this case is -- you know, simple

16  enough; it's one piece of property -- it's going to be sold.  We

17  know who has claims to the money.

18         Our hope is that the Court would essentially be able to

19  act as our receiver, and that the Court through an injunction can

20  get control over the property so that Mr. Roberts can't keep

21  doing what he's doing to take it for himself -- then the managers

22  can proceed in an orderly way to sell the property, and then the

23  money would be brought to the Court and accounted for here -- and

24  so it's going to take some time to make all that happen, and so

25  it's during that period of time that Mr. Flaherty and Mr. Kneen

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 44 of 61

Aple.Appx. 149

1   need to keep advancing money, and they need some assurance that

2   they'll be repaid that money at the end of the day.

3           And that would not be unusual in a receivership context

4   or bankruptcy context, where you have something that's like an

5   administrative claim, or where the receiver is incurring the

6   expenses of preserving the property.  The receiver's expenditures

7   to preserve the property always get priority when the property is

8   liquidated -- and so essentially, what we're asking for here is

9   the same kind of priority that a receiver would get, or a

10  bankruptcy trustee would get, to be able to spend money on an

11  administrative basis to protect the property and then receive

12  reimbursement for that as a priority out of -- what amounts to

13  the estate -- the receivership estate of the property.  So that's

14  -- that's the conceptual basis for that request, and that's --

15  that's the theory that we have in mind.

16          THE COURT:  Okay.  Mr. Mattson, if you'd like to go

17  first, and then I'll hear from Mr. Parrott.

18          MR. MATTSON:  Your Honor, I don't -- I don't understand

19  why this group is fighting so hard to set aside the redemption of

20  this property that took place in Mexico, because if it is set

21  aside, Hattusa gets the property.  I don't get it?  There's not

22  possible reason that this is more valuable or better for

23  everybody involved here if that property's gone.  It doesn't make

24  sense to me.

25          I understand -- hey, you stepped into our shoes -- you

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
**Page 45 of 61**

**Aple.Appx. 150**

1   -- you took over on behalf of the company -- you (indiscernible)

2   corporate purpose, we want our share still, I get that.  I don't

3   understand the first question; why are they doing this?  It makes

4   no sense at all.  There's got to be something else going on.

5        My client's concerned that there's something else going

6   on.  He -- he made an effort to protect the property for himself.

7   What they're asking for doesn't meet any of the criteria of what

8   you can -- in order to get a preliminary injunction.  To cease

9   all legal actions -- they just testified, or at least Mr. Leone

10   testified, that there is a subpoena out for -- for him to testify

11   in an Amparo.  Is he supposed to ignore that?  Is he supposed to

12   ignore anything that goes on in Mexico?  I don't know how this

13   Court can order that for Mr. Roberts?  It seems way over-

14   reaching, plus I -- I -- you know, from a practical matter, if

15   all operations are ceased in Mexico, what if this property ends

16   up back with Mr. (sic) Hattusa -- they all loose, I think.  I

17   know all these guys do.

18        And secondly, a constructive trust, I think that only

19   involves -- it sounds like a divorce case that there's a house

20   that they get to use -- a vacation house; they get it on certain

21   weekends -- and they get it on certain weekends.  Okay.  I

22   understand that part too, but that's not -- that has nothing to

23   do with the vacant properties that cost $100,000 a month to

24   manage -- but with all the fees and all.

25        I realize there would be Court supervision of these

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 46 of 61

Aple.Appx. 151

1  fees, so we can maybe hold back a little bit on the

2  administration of them, but the only thing that they want to

3  participate with -- the only thing that anybody's talked about is

4  -- is this beach house.  I get it; makes sense.  You guys want to

5  split up the time you get to spend there, that's perfectly

6  sensible, although it's not really part of this litigation.  It's

7  not part of this lawsuit; it has nothing to do with it.  I get

8  it.  I understand it.  I understand the complaint, but it's not

9  part of this lawsuit, so don't ask for this Court to enjoin or

10  mandatorily enjoin -- or impute or impose a constructive trust on

11  property that's not part of the deal.

12         And the third, with the priority of expenses they want

13  to spend -- they want to get paid -- they want to pay themselves,

14  they want to pay their -- their administrators, they want to pay

15  their accountants and attorneys -- maybe, that's part of a

16  lawsuit that comes on to allow an amendment to this -- that's

17  part of that lawsuit; that's not an injunction -- that's not a

18  preliminary injunction -- it's not -- it's not authorized by the

19  rule.

20         THE COURT:  Just -- just a moment please.  Let me hear

21  from Mr. Parrott?

22         MR. PARROTT:  Mr. Leone is right in my complaint as

23  second amended complaint.  We asked for an injunction that is not

24  as broad as the injunction requested by what I'll call the PDC

25  Defendants.  So it's hard for me to stand here and say don't give

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 47 of 61

Aple.Appx. 152

1    -- let's not have the injunction.

2         The -- the part I do complain about to get to the nub

3    is the paragraph D -- the fourth part of that, and I -- I very

4    much appreciate Leone's candor.  It is what you could order if

5    you were a bankruptcy judge, or if we had a receivership -- I

6    don't think it's what you can order here as part of an injunction

7    action.  You simply don't have the authority to make a -- a

8    perspective order with respect to that.

9         You've seen Exhibit 11.  You've seen those expenses,

10   and I thank Mr. Vertuca for putting it out there.  You have to

11   understand the position my client's in.  We are -- he -- he made

12   an investment with Mr. Roberts and these other people, and has no

13   ability to control this, nor has he heard any of this until we

14   came to court today.  So -- and I've told everybody in this case,

15   and it's part of my case -- breach of fiduciary duties don't seem

16   to be for everyone -- or fiduciary duties are for Mr. Lang, but

17   I'll quit whining about that.

18        The deal is on D, I don't think -- I just don't think

19   you have the authority to do that, and moreover, why you

20   shouldn't do that is part of these expenses -- as I understand

21   really through this hearing today, according to the PDC

22   Defendants are really the responsibility of Mr. Roberts, and yet

23   we're -- we're imposing the burden of that on Mr. Lang, who has

24   nothing to do with this, and no way to control it.

25        I think -- first of all, if the Court's inclined to

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
Page 48 of 61

**Aple.Appx. 153**

1 even consider that, then I think Mr. Leone has to make

2 application and come up with authority for what -- what he has

3 for that, and certainly the expenses -- and he's admitted that --

4 they have to be reasonable and they have to particular to what

5 we're talking about here; they can't be for the beach house, and

6 they can't be for that -- and there may be some overhead things

7 -- anyway, I just don't think you can do that, and I don't think

8 that ought to be part of any injunctive order, Your Honor.

9           I'll quit talking.

10           THE COURT:  Mr. Leone, now.

11           MR. LEONE:  Quickly, Your Honor.  And I have to confess

12 before I start, Mr. Parrott and I have known each other since

13 college.  We've practiced law together for many years -- have

14 great respect.

15           He's right on a couple of these things, and I -- but I

16 think we've anticipated them, so let me -- let me start with

17 Mr. Mattson's concern that he doesn't understand why we're trying

18 to set aside the payment to Hattusa.  We're not trying to set

19 aside the payment to Hattusa.  Nothing about this injunction

20 would do that.  Hattusa's been paid.  Hattusa has released its

21 lien, the property is now free and clear.  We believe that

22 through this constructive trust that title is properly vested in

23 PDC, because it was the owner of the property; it was the -- it

24 was the beneficiary of the settlement agreement with Hattusa.

25 That was the corporate opportunity that Mr. Roberts took when he

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 49 of 61                          Aple.Appx. 154

1 went in and paid Hattusa -- only instead of performing the

2 settlement agreement for the benefit of RCC and PDC, he performed

3 it for his own benefit, and so -- so the -- the problem here is

4 not with Hattusa -- that's done, the problem is with Mr. Roberts

5 now claiming that he is the sole owner of the property.

6       Now, when we get to the point that we sold the property

7 and the money has to be distributed, there's no question that

8 Mr. Roberts will have a claim for the 5 million dollars that he

9 paid to Hattusa to discharge the lien.  If Mr. Flaherty had made

10 the payment, he'd be making the same request.  If RCC had

11 borrowed the money from a bank to make the payment, that bank

12 would have insisted on taking a senior position.  So -- so that's

13 -- so that's the misunderstanding, I think, on Mr. Mattson's

14 part.  This injunction won't undue the Hattusa settlement in any

15 way.

16       The second thing that I think that he misunderstands

17 is, this injunction that we're asking for won't prevent

18 Mr. Roberts from defending himself in the criminal proceedings in

19 Mexico as to whether or not there was fraud on the court, but it

20 would prevent him from seeking to have the deed issued in his

21 name -- it would prevent him from seeking to have the foreclosure

22 proceeding -- you know, finalized on appeal.  It would -- it

23 would -- that order, in -- in all likelihood Mr. Rosen would take

24 that order down to the Mexican courts and say look, everybody

25 should just stand still for a minute, because in Colorado, which

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
Page 50 of 61

**Aple.Appx. 155**

1    is where this -- you know, ultimate owner of this property is

2    venued and located, there is a judicial proceeding underway to

3    determine whether Mr. Roberts acted in violation of his fiduciary

4    duties when he did this thing.  I think that will probably

5    protect the property, and so that -- that part of the injunction

6    is very important to us.

7           With respect to the -- the D remedy -- the priority

8    remedy, Mr. Parrott raises a good point, and the point is that a

9    number of these expenses are probably Mr. Roberts'

10   responsibility, and he's right -- and we've sued in our cross-

11   claim -- in our -- in our third party claim, we've sued for

12   damages, as well as injunctive relief -- and I guess the way I

13   envision this -- you know, spinning out here, is that now that we

14   have the amended complaint, there will be a period of discovery,

15   eventually we'll have a trial -- and hopefully, we'll be able to

16   do that on an expedited basis given the -- the status of the

17   property -- and in that proceeding, there may very well be a

18   couple of sources of funds that come into the court for PDC --

19   one will be proceeds for the sale of the property.  Another

20   source of funds might very well be damages paid by Mr. Roberts

21   for some of what we consider to be the harm and damage that's

22   been done to PDC and RCC as result of his conduct -- and so we're

23   -- we basically would be acting as -- in the same capacity that a

24   counsel for a receiver would be acting, where we're marshalling

25   the -- the resources of PDC, both through the claims against

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 51 of 61

Aple.Appx. 156

1  Mr. Roberts, and through the proceeds of the sale of the property

2  -- and then that will become the res -- the res of the property

3  -- the estate of RCC -- or PDC, excuse me, that can then -- then

4  people that have a claim to those can submit them and -- and

5  we'll get them resolved.

6          But -- but the final order -- the final injunctive

7  order should take into consideration the problem that Mr. Parrott

8  raises, and if you -- you know, if you give us guidance on it --

9  if you are inclined to grant an injunction and some form of

10  relief in that way, we are happy to prepare a -- you know,

11  better, more detailed form of order and submit it to the other

12  parties to review.

13          Thank you.

14          THE COURT:  Thank you.  I am going to grant equitable

15  -- partial equitable relief, in that I am going to enjoin

16  Mr. Roberts and all others acting in concert with him, to cease

17  all actions that are inconsistent with PDC's ownership of the

18  initial property, the Mustafa property, and with TMTVC's

19  ownership of the beach house -- and by saying that ceasing all

20  actions, direct or indirect, that are inconsistent with PDC's

21  ownership, I'm relying to a large extent on the second amended

22  restated operating -- operating agreement of PDC, LLC as set

23  forth in Exhibit 4, which was admitted for the purposes of this

24  hearing.  I -- so I'll get to the findings with regard to that

25  piece of the equitable relief that I am granting.

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 52 of 61                        Aple.Appx. 157

1      With regard to the constructive trust and depositing

2  the -- the sale proceeds and expenses in this court -- I -- I

3  understand, Mr. Leone, that receivership is expensive, but under

4  my view, I don't believe that I can encompass that within -- and

5  you knew I was having trouble with it, and I still am -- I don't

6  believe I can encompass within the purview of Rule 65 in a

7  preliminary injunction.

8      So -- because I -- I -- I don't think they meet the

9  requirements of Rathke v. MacFarlane.  I think you all know what

10  I'm talking about -- the case that sets forth the five

11  requirements or five elements, 648 P.2d 648, a Colorado 1982

12  case, which has been followed on down the -- on through the

13  decades. So with regard to the relief, I -- I grant it.

14      I do find that the -- Mr. Flaherty, Mr. Kneen, and

15  others, including Mr. Lang, do have a reasonable probability of

16  success on the merits, whether their plaintiffs, cross-claimants,

17  third party plaintiffs, or what.  I -- I made some limited

18  findings here, but -- you know, they're credibility findings too,

19  and -- and they are limited for the purposes of this hearing, but

20  first of all, I -- I find the testimony of Mr. Kneen and

21  Mr. Flaherty, as well as Mr. Vertuca -- I'm not sure if I'm

22  pronouncing that correct -- more credible than the testimony of

23  Mr. Roberts -- and I base that on Mr. Roberts testimony, the

24  manner in which he answered or avoided questions by Mr. Leone --

25  the fact that he didn't recall about any -- any security guards,

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 53 of 61

Aple.Appx. 158

1   refusing Mr. Kneen admittance -- the questions about the date --

2   and this -- and this really troubles me, and the questions and/or

3   his answers about the date of the Vertuca, Kneen, Roberts meeting

4   in Boulder -- whether that was the 13th or the 16th -- and that's

5   critical, but the evasive nature of those answers and so forth --

6   and that, and the other factors that I've talked about, all

7   supports a finding of a reasonable probability of success on the

8   merits.

9           The danger of real, immediate and irreparable injury

10  that may be prevented by injunctive relief is clear as far as

11  this Court's concerned.  Basically, without -- I'm convinced,

12  again, solely within the purview of this limited hearing, that

13  Mr. Roberts could do whatever he want -- wanted to do with the

14  particular assets that we're talking about, and that is all the

15  properties that are described on the map as set forth in Exhibit

16  1.

17          So there is danger of irreparable injury, and there's

18  no plain speedy and adequate remedy at law for the same reasons.

19  There is concurrent litigation in Mexico.  The parties don't

20  agree on what the status of that litigation is, but this is a

21  Colorado corporation, or a limited liability company -- we're not

22  talking about property, we're talking about the value of an

23  asset, and this lawsuit could take some time to resolve by the

24  time the actual suit is resolved; the property could be wasted,

25  gone, and investors would be left with nothing -- as they may be

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 54 of 61

Aple.Appx. 159

1   anyway, but -- or little, but preserving status quo as much as

2   possible is the goal of this Court under Rule 65.

3         That the granting of the preliminary injunction will

4   not disserve the public interest.  Well, it doesn't disserve the

5   public interest; that's about all I can say.

6         The balance of the equities favor the injunction for

7   the reasons I previously stated.  Yes, they do.  Again,

8   Mr. Roberts could simply run away with the -- the asset, and

9   again, all the investors would have nothing.

10         That the injunction will preserve the status quo.  Yes,

11   it will, because there was an agreement and the injection serves

12   to the hold the parties to that agreement.  So for that reason,

13   the limited relief is granted -- limited equitable relief is

14   granted.

15         I believe we need to discuss bond, so Mr. Leone, you

16   can start off.

17         MR. LEONE:  Your Honor, I guess would -- maybe I would

18   defer to Mr. Roberts' Counsel to talk about bond first.  I don't

19   know what they want.  I -- I am unaware of any imminent plans

20   that -- that he has for the property that would require a

21   significant bond.  When you think about the risk of an incorrect

22   decision, I don't -- I don't see much risk there, because I just

23   can't fathom what his belief is that he was entitled to take the

24   property.  So we would ask for a modest bond.  I haven't given

25   thought to what the amount of that should be.

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
**Page 55 of 61**

Aple.Appx. 160

1        THE COURT:  Okay.  Thank you.  Mr. Mattson, there was

2    something in the pleadings; I don't know if you filed that, or

3    previous counsel filed it?

4        MR. MATTSON:  With request to the security, I did --

5    under 65(c)?

6        THE COURT:  Yeah.  Was that your motion?

7        MR. MATTSON:  Yes.

8        THE COURT:  Okay.  Thank you.  Go -- I'd like to hear

9    from you.

10        MR. LEONE:  Your Honor, the only other thing, I would

11    say -- Mr. Parrott reminds me, we do already have a bond pending

12    in Mexico related to the foreclosure proceeding.

13        THE COURT:  And I'll have to hear about that, but I'd

14    like to hear from Mattson.

15        MR. MATTSON:  Yes.  My client's intention was to -- is

16    to develop this property, not fire sell it.  This Court's order

17    is not to fire sell it, I get that, but instead, to not do

18    anything with it -- but he's got a guy -- or he's got a --

19        THE COURT:  Not do anything inconsistent with the

20    operating agreement.

21        MR. MATTSON:  Fair enough.  With the current one, or

22    with the one that you've chose?

23        THE COURT:  Well, that's all I have in front of me.

24        MR. MATTSON:  Fair enough.  My client has a -- a

25    perspective developer that could turn this property into ten-fold

1  what -- what it's worth right now, and would like to proceed with

2  that; however, disclosure of that to his current partners given

3  their difficulty to get along, and likelihood that they would go

4  with this developer, I don't know much I can disclose or what

5  this Court would require me to disclose as to who and what it is,

6  but it's a significant amount of money.

7         THE COURT:  I'm not requiring you to disclose anything.

8         MR. MATTSON:  Well, the -- I mean, he can testify --

9         THE COURT:  I mean, you --

10         MR. MATTSON:  -- as to -- as to how much this thing is

11  going to be worth, and if doesn't come through, because this

12  Court has put a freeze on it, then I would like a bond for -- or

13  security for that amount.

14         THE COURT:  Well, I didn't put a freeze on it.  I

15  understand the difficulty that that puts you in, but I want that

16  to be clear.

17         MR. MATTSON:  I understand.

18         THE COURT:  All right.  Thank you.  Well, I'd like to

19  hear from Mr. Parrott too.

20         MR. LEONE:  Your Honor, maybe we can handle it this

21  way.  We already have a bond pending in Mexico that they had to

22  post as part of -- to get the stay of the national court action

23  -- you remember, Mr. Rosen talked about that.  It's a $300,000

24  bond that's already been posted -- because of the effect of that

25  stay order is to prevent Mr. Roberts from getting the deed in

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 57 of 61

Aple.Appx. 162

1  lieu of foreclosure, so that bond is already there.  I guess I

2  would propose maybe a $10,000 bond here for this injunction, and

3  then if Mr. Roberts is able to come to the court and show a

4  reason for a greater bond at some point in that, then he can --

5  he's always free to do that -- he's free to come back and ask for

6  a more substantial bond, but I'm just unaware of any current

7  circumstance that would require a large bond, and that's why I

8  offered $10,000.

9          THE COURT:  Except for the circumstance that

10  Mr. Mattson briefly highlighted -- and I -- well, maybe I

11  shouldn't have said that, but I have that in mind.

12          MR. LEONE:  I would hope, Your Honor, that maybe as a

13  result of this, this is often the case with a preliminary

14  injunction hearing, that the parties may be able to be referred

15  to alternative dispute resolution or a mediation, and maybe we

16  can work this out now that we have some -- we've had chance to

17  come and have -- have it out for a day.

18          MR. PARROTT:  Thank you.

19          THE COURT:  Mr. Parrott?

20          MR. PARROTT:  Just for the record, I have no position

21  on bond.

22          THE COURT:  Thank you.

23          MR. MATTSON:  Also, Your Honor, for the bond in Mexico,

24  it was a 3 million dollar bond.

25          THE COURT:  Did you say it was 3 million?

MOVANTS' EXHIBIT 8
Page 58 of 61

1        MR. ROSEN:  No, $300,000.

2        MR. MATTSON:  I heard wrong.

3        MR. ROSEN:  6 million pesos.

4        MR. MATTSON:  Okay.

5        THE COURT:  For the time being, I'll set it at $10,000.

6   I can always reconsider that if other information comes to the

7   attention of the Court.

8        Anything further from anyone?

9        MR. LEONE:  Your Honor, would you like us prepare a

10  written form of injunction for you, and circulate it to the other

11  parties?

12       THE COURT:  Yes, please.

13       MR. LEONE:  Okay.  We'll do that as quickly as

14  possible.

15       THE COURT:  All right.  Mr. Parrott?

16       MR. PARROTT:  Just one thing to go back.  The Court

17  granted the motion to amend -- in the course of speaking, we

18  discussed the stipulation, Mr. Leone and I have, okay -- but,

19  that will not reopen discovery or pretrial motions in the Lang

20  case.  I'd just like that to be part of the Court's order.

21       MR. MATTSON:  We'd stipulate that -- that, as well, and

22  we'll file our motion to amend concurrent with --

23       THE COURT:  Okay.

24       MR. LEONE:  Same here, Your Honor.

25       THE COURT:  All right.  It's noted.

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

MOVANTS' EXHIBIT 8
Page 59 of 61                    Aple.Appx. 164

1          MR. PARROTT:  Thank you very much, Your Honor.

2          THE COURT:  Thank you -- thank you all.  We'll take a

3    recess.

4          MR. LEONE:  Are we done, are we adjourned then?

5          THE COURT:  We're adjourned; yes.

6          MR. LEONE:  Okay.  Thank you, Your Honor.

7          MR. TURNER:  Thank you, Your Honor.

8          MR. PARROTT:  Thank you, Sir.

9          THE COURT:  Unless there's anything further?

10         MR. TURNER:  No.  I just heard recess, so I thought

11   we're in recess.

12

13        (Proceeding concluded at 3:39 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
**Page 60 of 61**                    Aple.Appx. 165

1                         CERTIFICATE

2

3        I, Julie Christman, certify that the foregoing is a correct

4   transcript from the electronic sound recording of the proceedings

5   in the above-entitled matter.

6        Signed this 6th day of February, 2019.

7

8                                    */s/ Julie Christman*

9                                    JULIE CHRISTMAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcribing Solutions
1624 Market Street #202-90925
Denver, Colorado 80202
720-389-9420

**MOVANTS' EXHIBIT 8**
**Page 61 of 61**                    Aple.Appx. 166

```
DISTRICT COURT
DENVER COUNTY COLORADO
520 WEST COLFAX AVENUE
DENVER, CO  80204
```

Benjamin David Wood et al

Petitioner,

Vs

Timothy Flaherty, et al

Respondent,

**\*FOR COURT USE ONLY\***

Case No. 15CV31828
Division/Rm: 409

For Petitioner:

Thomas Mattson

For Respondent:

William Leone

Elliot Turner, Pro hac vice

The matter came on for hearing on October 11, 2019, before the HONORABLE Eric M. Johnson, Judge of the District Court, and the following FTR proceedings were had.

Transcribing Solutions, LLC
1624 Market Street #202-90925
Denver, CO 80202
720-389-9420

**MOVANTS' EXHIBIT 11**
**Page 1 of 59**

Aple.Appx. 167

1                                **<u>INDEX</u>**

2   WITNESSES:                                                    PAGE

3        Respondent:

4        Mr. Benjamin Rosen

5             Direct Examination by Mr. Turner              27

6             Cross-Examination by Mr. Mattson             55

7             Redirect Examination by Mr. Turner           79

8

9        Mr. Michael Roberts

10            Direct Examination by Mr. Leone              83

11

12       Petitioner:

13       Juan Carlos Ramirez Garcia

14            Direct Examination by Mr. Mattson           100

15            Cross-Examination by Mr. Leone              133

16            Redirect Examination by Mr. Mattson         156

17

18       Respondent:

19       Mr. Benjamin Rosen

20            Redirect examination by Mr. Leone           158

21

22

23

24

25

1

2                     **October 11, 2019**

3                     **CONTEMPT HEARING**

4       THE COURT:  The Court is calling 15CV31828 Lang v

5 Flaherty et al. I would like to have entries of appearance

6 please?

7       MR. LEONE:  Good morning, Your Honor. Bill Leone from

8 law firm Norton Rose Fulbright on behalf of the cross and third

9 party plaintiffs, Mr. Flaherty, Mr. Kneen, Mr. Vertuca, PDC and

10 Riviera Country Club.

11       MR. TURNER:  Elliot Turner of Norton Rose Fulbright on

12 behalf of the same parties.

13       MR. MATTSON:  Thomas Mattson, 18077, on behalf of

14 Michael Joseph Roberts, Sr., Michael J. Roberts, LLC, Sandstone

15 Ventures, LLC. I think that's it.

16       THE COURT:  Okay.

17       MR. MATTSON:  The Roberts parties.

18       THE COURT:  Got it.

19       MR. PARROTT:  Good morning, Your Honor. Phillip

20 Parrott. P-A-R-R-O-T-T, number 11828, representing Rick Lang and

21 just mostly in an observing role today. I don't think I have a

22 speaking role other than this.

23       THE COURT:  Okay. – All right. So, my clerk mentioned

24 to me, I guess it's related to you, Mr. Leone that we appear not

25 to have; that you apparently appeared once before pro hac vice

1 but we don't appear to have the motion or the order in the system

2 granting your admission.

3         MR. LEONE:  From me, Your Honor?

4         THE COURT:  No. Who is appearing pro hac vice?

5         MR. TURNER:  Sorry. That's me, Elliot Turner.

6         THE COURT:  All right. Sorry about that.

7         MR. TURNER:  So, I believe it was filed but I don't

8 have a copy of that filing with me. We did file it with the

9 Colorado Supreme Court I know that, and served copies of the

10 motion on opposing Counsel, but I will provide the Court a copy

11 of that as soon as this hearing ends of that's acceptable?

12         THE COURT:  Okay. Yeah. We do have the Supreme Court

13 communication indicating it has the permission. I assume there's

14 no objection to Mr. Turner's appearing pro hac vice?

15         MR. MATTSON:  None.

16         THE COURT:  Okay. Well, let's just go ahead and take

17 care of it. Where are you licensed, sir?

18         MR. TURNER:  Texas and the District of Columbia.

19         THE COURT:  And never been disciplined?

20         MR. TURNER:  No. Not as part of the bar per se.

21         THE COURT:  We will leave that; the rest of that alone.

22 So you acknowledge that you're subject to Colorado Rules of

23 Professional Conduct, the Colorado Rules of Civil Procedure,

24 other court rules and you'll follow those rules throughout the

25 pro hac vice admission?

```
1          MR. TURNER:  I do and I will.

2          THE COURT:  All right, sir, and your local attorney?

3          MR. TURNER:  Bill Leone.

4          THE COURT:  All right then I will just go ahead and

5    enter a form of this to tighten things up a bit and enter an

6    order granting that pro hac vice admission.

7          MR. TURNER:  Thank you, Your Honor.

8          THE COURT:  All right. So, then today we are here on

9    the motion for issuance of the contempt citation. And Mr. Roberts

10   is present?

11         MR. MATTSON:  Correct, Your Honor.

12         THE COURT:  Mr. Roberts?

13         MR. ROBERTS:  Yes, sir.

14         THE COURT:  All right. Thank you, sir. Mr. Leone, you

15   have the floor.

16         MR. LEONE:  Thank you, Your Honor. Let me, first let me

17   just inquire of THE COURT. I don't, wasn't sure from the docket

18   how much time we have time today? We want to make sure we get

19   done in the time allotted.

20         THE COURT:  If I tell you 35 minutes, can we?

21         MR. LEONE:  Do whatever, whatever your docket requires.

22   We'll manage to; I don't think it will take very long.

23         THE COURT:  This is the only thing we have this

24   morning. I assumed since you have the burden, that we'll be

25   hearing from witnesses--
```

1          MR. LEONE:  Okay.

2          THE COURT:  --examinations and whatever, but if you

3  want to start off with a brief opening statement. I've read the;

4  I've done what I can to get up to speed on what appears to be a

5  relatively complicated matter and I've read closely the motion

6  for issuance of the contempt citation and the response but –

7          MR. LEONE:  Okay. Your Honor, thank you. That that is

8  helpful. What I expect to do today is make kind of a short

9  introduction to make sure the issue's framed for you. Then, we

10 have some deposition testimony to submit that we'll just submit.

11 We'll just submit the; we could give you the original transcript

12 and I'll highlight to you the pages that we'd like to submit. We

13 were able to take Mr. Roberts deposition for purposes of this

14 hearing in advance so I have just a small, small portions of

15 that. And then, Mr. Elliot will present Mr. Rosen's testimony.

16 Mr. Rosen can explain what things have happened in the Mexican

17 Courts and how they violate the injunction.

18         THE COURT:  And, I'm sorry, sir, just in your

19 statements if you would, please specifically; your, your motion

20 wasn't incredibly clear whether you were seeking punitive

21 sanctions or remedial sanctions. It felt like we were going the

22 remedial route and I'm treating this as remedial. We haven't put

23 in all the bells and whistles for punitive sanction, so if you

24 would also please layout for me specifically the; well, the order

25 that you'd like to see at the end of this should you prevail.

1      MR. LEONE:  Perfect. Perfect, Your Honor, and I can do

2  that. First thing I would; had done today was try and make sure

3  that we're all clear on who the parties are and how they relate

4  to each other, and I; but I don't want to waste your time if you

5  think you are up to speed on that. Do you have our, our map and

6  our diagram of the organization chart from the preliminary

7  injunction hearing? So, Your Honor, in that respect, I have

8  tendered to the Court just for efficiency purposes here. I have

9  the original deposition sealed of Mr. Michael Roberts when we get

10  to that, and I have two exhibits that we used in our preliminary

11  injunction hearing that were admitted by Judge Plotz; one was an

12  organization chart, Exhibit 12, the other was a map of the

13  properties, Exhibit 1. Actually, can we get some copies?

14      MR. MATTSON:  This is from your prior?

15      MR. LEONE:  These are just copies of the; from the

16  preliminary injunction hearing.

17      THE COURT:  From the hearing back on December 6th or

18  whatever it was?

19      MR. LEONE:  In December. That's right, Your Honor.

20      THE COURT:  Of last year?  All right, so this is

21  Exhibit 1 that had previously been admitted from that.

22      MR. MATTSON:  Does this look right? I have no objection

23  to the blank pages.

24      THE COURT:  I'm sorry?

25      MR. MATTSON:  I'd like; my page is blank. The pages are

1  blank.

2          THE COURT:  This is a new ambush style there.

3          MR. LEONE:  Your Honor, Exhibit 1 is a printout of the

4  map of the property and then some maps that were printed off from

5  the internet showing the location of the property in Mexico and

6  the way they print out off of the internet—-

7          MR. MATTSON:  Oh, I see.

8          MR. LEONE:  --there are some extra blank pages in

9  there. That's all.

10         MR. MATTSON:  Okay.

11         MR. LEONE:  This is the same exhibit we used.

12         THE COURT:  Right.

13         MR. MATTSON:  Then I don't have an objection to it. I

14 just kind of--

15         MR. LEONE:  So, Your Honor, I will start with Exhibit

16 1, the property to just kind of orient you to the, to the

17 property itself. On the first page of Exhibit 1, you see; and

18 these aren't the greatest, these are black and white copies. But

19 if you look at the; there's two light gray strips in the middle

20 of the property. These are the, the; and in the lower right hand;

21 just in the lower right hand portion, well at the bottom of the

22 map is the beach. That little, the light gray part at the bottom

23 is the ocean and that's a beach. And so, the properties we're

24 talking about today run from a road, Carretera Cancun to the

25 beach and then just on the beach down where it says L118-FR2

there's a small square property called the beach house, the beach property. So, these are the parcels we're talking about in the case today. One of those parcels was acquired initially it's called Serrano one and then there were two other parcels that were acquired together called Serrano two and three. So, one of those strips is Serrano one and the other one is Serrano two and three. And the beach house is a separate property, a third property. The, the property that's really in dispute right now is Serrano two and three because it was acquired under different circumstances than Serrano one and it was acquired under different circumstances than the beach house.  In a nutshell, is to remind, is to kind of reframe why we have an injunction and why we sought an injunction. The Serrano two and three property were subject to a mortgage from a company called Hotusa, when we acquired it. And the, the property was acquired if you look at Exhibit 12, the organization chart, it was acquired by a Mexican LLC called Riviera Country Club, that's a requirement of Mexican law having to do with property ownership in Mexico. So, there is a Mexican LLC called Riviera Country Club that's what we're referring to when we say RCC, the actual owner of the property. RCC is owned by PDC, which is a Colorado Limited Liability Company and PDC II, which is also a Colorado Limited Liability Company. The, so, when we talk about PDC, we are talking about the Colorado entities. Those two entities RCC and PDC have different governance structures perhaps. There's some ambiguity,

1   some uncertainty about the PDC ownership structure that's really

2   not really pertinent to this lawsuit today or to this claim

3   today, but the Riviera Country Club governance structure is quite

4   simple. There are three managers; Mr. Flaherty, Mr. Kneen, who we

5   represent, and Mr. Roberts. At the time of the preliminary

6   injunction hearing, we presented evidence of the RCC rules of

7   organization that require two of the three managers to act if

8   anything was to be done by RCC.

9         MR. MATTSON:  Objection, Your Honor. That one is

10   inaccurate and I don't know if he is testifying or if this is

11   just kind of an overall picture of how he sees it.

12         MR. LEONE:  This is just –

13         THE COURT:  This is an opening statement.

14         MR. LEONE:  Yep. We presented our evidence of the RCC

15   organizational documents. Our claim was that Mr. Roberts had

16   unilaterally intervened to take Serrano two and three from

17   Riviera Country Club and PDC. And, the way that he did that, we

18   argued to Judge Plotz, was that he first misrepresented to our

19   clients that he was intending to pay off the Hotusa mortgage on

20   behalf of RCC and PDC so that Hotusa's mortgage would be

21   eliminated, and then Riviera Country Club and PDC would be able

22   to either develop or sell the property for the benefit of all the

23   investors; one of whom is Mr. Lang, represented by Mr. Parrott. I

24   refer to Mr. Parrott as the patient Plaintiff in this case. It

25   began as his case, it seems it has taken on a different life now.

1  The claim was that he had misrepresented his intention to payoff

2  Hotusa on behalf of the entities and acquired the; or released

3  the lien of Hotusa for the benefit of the companies, which he was

4  the manager and then instead secretly, he paid Hotusa personally

5  in his personal right. Acquired Hotusa's rights to foreclose,

6  exercised them personally, and has been embarked on a plan down

7  there to foreclose on the property for his own personal account,

8  not for the benefit of the companies of which he was the manager.

9  We had a nearly a full day hearing with Judge Plotz about that.

10  We heard testimony from five witnesses. We introduced a number of

11  exhibits. Judge Plotz, I don't know if you have the transcript of

12  that hearing? Judge Plotz made findings about the credibility of

13  Mr. Roberts and the other witnesses. He found that there was

14  probability that we would prevail on the merits and he entered

15  from the bench, a preliminary injunction order and asked that we

16  prepare a written form of order for him, which we did.

17       THE COURT:  And so the parties are aware, I have not

18  had the opportunity; I have not been able to review the actual

19  transcript of that hearing but I have reviewed the order.

20       MR. LEONE:  Okay. So, the order itself was the subject

21  of some back and forth. We prepared a draft order. We submitted

22  to Mr. Mattson. Mr. Mattson had some objections. We ended up

23  submitting kind of dueling orders to the Court pointing out the

24  areas of disagreement and the Court ultimately accepted the form

25  of injunction that we had submitted. And, if, if; are we using

1  letters for our exhibits?

2          MR. TURNER:  No. We are using numbers.

3          MR. LEONE:  Okay. I would tender to the Court as

4  Exhibit 1, that preliminary injunction order.

5          THE COURT:  I, I have a copy of it.

6          MR. LEONE:  Okay. How about if I send you what we have.

7  (Unintelligible)

8          THE COURT:  That's fine. – So, are we calling this

9  Exhibit 1? Or are we calling -

10         MR. LEONE:  Your Honor, I'll come back and move for

11 admission of the organization chart and the map when we get to

12 that point. I just wanted to have those available.

13         THE COURT:  Okay.

14         MR. LEONE:  So, when I start using names, you have some

15 frame of reference. We'll, we'll treat those as demonstrative

16 exhibits, if that's okay?  So, we have the, we have the

17 injunction order and there are some things that I want to point

18 out to you, Your Honor. There are things that will be Germane to

19 the evidence that you'll hear today as to what portions of this

20 injunction have been violated. We'll start with paragraph one on

21 page five of the injunction. Again, given the backgrounds that

22 I've laid, this should make sense now. Roberts, Mr. Roberts, and

23 all others acting in concert with him including Sandstone, which

24 was the company that actually provided the money to pay of the

25 Hotusa loan and Roberts, LLC, as well as any attorneys or agents

1  acting pursuant to his instructions, shall cease all actions

2  direct or indirect that are inconsistent with the ownership of

3  the initial property and the Mustafa property. Serrano two and

4  three is the Mustafa property or the beach house by PDC through

5  his subsidiary RCC, including without limitation, his pursuit of

6  foreclosure in his individual capacity. I understand that we

7  have, we contend that that provision has been violated in this

8  case because Mr. Roberts and his attorney, whom I believe is in

9  the courtroom today, in Mexico have continued to pursue

10  foreclosure in his individual capacity.

11        MR. MATTSON:  I'm sorry, but number five? Did you say

12  number five or your order?

13        MR. LEONE:  No. I said--

14        THE COURT:  Number one on page five.

15        MR. MATTSON:  Oh, number one. Sorry. Thank you.

16        MR. LEONE:  On page six, paragraph three--

17        THE COURT:  And, and, and I'm sorry, Mr. Leone.

18  Counsel, if you have an objection under anything, just you know,

19  speak up. And if you'd pull the microphone, when you're ready to

20  speak, closer to you. Beautiful building built in the 1930's,

21  acoustics are horrible. If you are not speaking directly into the

22  microphone it will not make it onto the record. Oh, and also if

23  you need to talk to your client, there is a push button; there's

24  a push button on the base that will mute the microphone so it

25  will not be picked up, broadcast, or recorded. All right.

1      MR. LEONE:  Paragraph three of the injunction, Your

2  Honor, on page six. It says Roberts is further enjoined from

3  appearing on behalf of PDC subsidiary.

4      THE COURT:  And all of this, all this was laid out in

5  your motion? It's all on page five of your motion?

6      MR. LEONE:  Yes.

7      THE COURT:  Okay.

8      MR. LEONE:  So, I'll tell you what. I won't reread it.

9  I just, for purposes of the opening statement I just want to

10 explain the significance of it.

11     THE COURT:  Okay.

12     MR. LEONE:  So, for paragraph three; the reason that

13 paragraph three is in the injunction is because one of the means

14 by which Mr. Roberts was able to get into the position he is in

15 Mexico, is that after he paid Hotusa and acquired Hotusa's rights

16 under the settlement agreement, he had to appear in Mexican Court

17 to convince the Court that he had the right to step into their

18 shoes. And they required that RCC ascent to the proceeding;

19 ascent to the subjugation of Mr. Roberts for Hotusa; into,

20 stepping into Hotusa's shoes. Mr. Rosen will explain this in more

21 detail. In order to do that, he had to designate; RCC had to

22 designate someone with a Power of Attorney to act on its behalf.

23 Mr. Kneen was unaware of this. Mr. Flaherty was unaware of this.

24 Mr. Roberts got his attorney in Mexico to appear on behalf of RCC

25 even though he was only one of three managers. And that attorney

represented himself as representing and acting on behalf of RCC and it was through that false Power of Attorney that they were able to substitute essentially, Mr. Roberts for Hotusa in the foreclosure proceedings in Mexico. And so, it was very important to us to make sure that Mr. Roberts and this attorney, who had been the subject of what we call, the fraudulent Power of Attorney, that we presented evidence on to Judge Plotz in December, were specifically by name; you know, enjoined from doing anything further to continue with this effort to foreclose on the property. And so, if you read paragraph three it actually calls out by name the prohibition on Mr. Roberts and specific names of attorneys, Mr. Rudolpho Garcia Pliego and Juan Carlos Ramirez Garcia, to enjoin them from holding themselves out or from Mr. Roberts permitting them to hold themselves out as acting on behalf of RCC. So, so that was an important provision of the injunction. Paragraph five of the injunction goes farther to enjoin Mr. Roberts from holding himself out to anyone as a person who has legal power to dispose of the land. Paragraph six orders him to cease and desist from taking any action in any Court, other than this Court, to foreclose on the mortgage over lot nine and ten; that's Serrano one and Serrano two. Specifically, paragraph six of the injunction, it carries over on the next page.

THE COURT: I'm sorry, Serrano one and two or the Mustafa two and three?

1    MR. LEONE:  The Mustafa property, Serrano two and

2  three, and lot nine and ten are all the same thing.

3    THE COURT:  Okay.

4    MR. LEONE:  Then paragraph six of the injunction goes

5  on to specifically identify three particular cases that were then

6  pending in Mexico and enjoining him from taking action in those

7  proceedings to continue his pursuit of this foreclosure. Let me

8  explain something about the actions in Mexico, just to give you

9  kind of a roadmap. There are a couple of different baskets of

10 litigation down there. There is a foreclosure action, in which

11 Mr. Roberts is identified as the Plaintiff and that's the one

12 we're most concerned about because in that action he is

13 continuing to seek issuance of the deed from the Court. There is

14 only two steps I think, Mr. Rosen will explain it, maybe two

15 steps left in that process before he gets a deed to the property

16 and has control of it. And then there is a collection of cases

17 called the Amparo proceedings. The way to understand these is

18 that the foreclosure action is a little bit like a judicial

19 foreclosure would be in this country. The holder of the deed of

20 trust, you know, comes in and says I have the deed of trust, I'm

21 the holder, I'm entitled to foreclose, give me title to the

22 property. Whereas the Amparo proceeding is a collateral attack on

23 the foreclosure judgement. It's a, the Amparo action is in

24 Federal Court. The foreclosure action is in State Court. There is

25 a very complicated procedural history down there but it can boil

1 down, and Mr. Rosen will boil it down to as follows:  The, there

2 has been no decision on the merits of Mr. Kneen's, Mr.

3 Flaherty's, Mr. Vertuca's, PDC's, RCC's claims in this case that

4 Mr. Roberts fraudulently obtained this position under the Hotusa

5 settlement agreement and breached his fiduciary duties to PDC and

6 RCC. In fact, the most recent decision from the Federal Court

7 down there is that on a procedural, on procedural grounds those

8 claims have to be brought in a separate case.

9          THE COURT:  And how, what is it Matusa, Hotusa?

10          MR. LEONE:  Hotusa.

11          THE COURT:  H--

12          MR. LEONE:  H-O-T-U-S-A.

13          THE COURT:  Oh, that's right. I've seen it. Okay.

14          MR. LEONE:  I sometimes got confused myself between

15 Mustafa and Hotusa. Mustafa was the owner of the property and

16 Hotusa was the lender on the property; on Serrano two and three.

17 So, the, the reason we are in this Court and have been in this

18 Court from the time we filed our cross claims and counterclaims

19 is that this is where the LLC's; PDC, PDC II are incorporated.

20 This is where Mr. Roberts lives. Mr. Kneen has significant

21 connections to Colorado. Mr. Flaherty as well. Mr. Vertuca lives

22 here. And this is the place where we can litigate whether there

23 has been a breach of fiduciary duty or misappropriation of an

24 asset and that's what we're doing here. Then, in paragraph seven

25 of the injunction, Mr. Roberts was further ordered to instruct

1   Mr. Garcia, who was described during the hearing; to instruct Mr.

2   Garcia to immediately cease to appear or file any writ, brief or

3   document of any nature in the proceedings I've just described.

4   And then in paragraph eight, Mr. Roberts is ordered; then in

5   order to further preserve the status quo, he is ordered to take

6   all actions necessary to revoke or terminate any purported Power

7   of Attorney including the one to Mr. Ramirez Garcia; Juan Carlos

8   Ramirez Garcia, to act on behalf of RCC. Those are the most

9   important parts of the injunction. We learned, beginning in, I

10  don't know, February or March that Mr. Roberts was continuing to

11  file papers both in the Amparo proceedings and in the foreclosure

12  action, essentially continuing the; what we claimed to be the

13  fiction that he was authorized to act on behalf of RCC, to

14  perpetuate the fiction that he had given Mr. Juan Carlos Garcia a

15  valid Power of Attorney.

16          THE COURT:  I'm sorry, that was in the Amparo

17  proceeding and?

18          MR. LEONE:  And the foreclosure.

19          THE COURT:  Okay. And then –

20          MR. LEONE:  And the foreclosures.

21          THE COURT:  And the Amparo proceeding is a proceeding

22  to challenge the foreclosure?

23          MR. LEONE:  Yes. The history on the foreclosure

24  proceeding, there was a, there was a case. We won in the trial

25  court. We lost in the Appeals Court. Then you go to the Federal

Court down there and they were challenging; our clients were
challenging in the Federal Court, what had happened in the State
Court and in the end, the decision as Mr. Rosen will explain it,
was not the decision on the merits but it was the decision that
said if you want to litigate, Mr. Roberts' fraud, you're going to
have to do that in a separate proceeding. Basically, you know,
the papers for the foreclosure, there was irregularity. So, the
only way we can stop Mr. Roberts from taking the property is to
enforce the injunction that we have in this case. And, you know,
just by way of; let me move up to 50,000 feet for a minute. Your
Honor, because you; this is the first time we've really had a
chance to talk about the merits with you, our clients objectives
are very simple and have been consistent from the beginning. We
just want this property, which is the only asset of PDC/RCC to be
sold or developed. We want, we want it monetized in the most
optimal way. We think that's a sale and then we want all the
people to have a claim to the money to get what they are entitled
to. Some of that money is going to go to people like Mr. Lang.
Some of that money is going to go to my clients. Some of that
money will go to Mr. Roberts. But we have to get the property to
be administered and managed for all the people that have a stake
in it. And what's offensive in this case, as we presented to
Judge Plotz, is that Mr. Roberts has essentially tried to
circumvent all the other stakeholders, take the property for
himself, and foreclose on it in his personal right. He is just

1  one of many people that have invested millions and millions of

2  dollars on this property. So, in terms of long game, that's what

3  we are trying to do here. We're trying to stop Mr. Roberts from

4  taking the property for himself, trying to get our merits of our

5  case litigated in this Court and we're trying to get to a final

6  resolution of this; what really amounts to a business divorce

7  amongst all of these parties that have been together for a long

8  time. So, with that, Your Honor, I would, you have in front of

9  you Mr. Roberts' deposition and let me point to, you can open it,

10  I think now.

11          THE COURT:  All right. Is this still part of your

12  opening, or?

13          MR. LEONE:  No. This is, now I'm going to present.

14          THE COURT:  All right.

15          MR. LEONE:  I'm going to present Mr. Roberts'

16  testimony.

17          THE COURT:  Do you? Do you? Do you want, Mr. Mattson,

18  do you want to make--

19          MR. MATTSON:  Yes, sir. I'm chomping at the bit.

20          THE COURT:  --an opening statement then?

21          MR. LEONE:  Well, I would just close--

22          THE COURT:  Okay.

23          MR. LEONE:  --and my, the last thing in my opening

24  statement would be in Mr. Roberts' deposition you will see

25  numerous admissions that I think demonstrate a profound contempt

1  for the Court's injunction and his obligations to stop doing was

2  he's doing.

3        THE COURT:  And, Mr. Mattson, Mr. Roberts, just so that

4  you all are aware, I don't think it will make any; I don't think

5  it will matter but I was a Prosecutor for 15 years. I was a drug

6  Prosecutor. I worked with Federal Prosecutors. I used to train

7  HIDA agents and Federal agents and I was doing that while Mr.

8  Leone was US Attorney in Colorado. I'd never met him before but I

9  certainly worked with the US Attorneys and agents who are working

10 for him. So, I just wanted everyone to be aware of that but I

11 don't think it'll effect my ability to be impartial.

12       MR. MATTSON:  Thank you. Good morning again, Your

13 Honor. Thomas Mattson on behalf of the Roberts' parties. Mr.

14 Leone in his opening statement said, we just want to get the

15 property back so that the people that invested in this can get

16 their money back. Well, there's only one left. They settled the

17 case with everybody else. There's only Mr. Lang, he's the only

18 one left and the only parties that are going to get any money out

19 of this is Mr. Roberts, Mr. Kneen, Mr. Flaherty, Mr. Vertuca,

20 that's it. They can, they can stand up here and say, well, we're

21 just trying to help out all those people that invested. They're

22 all gone. That thing's over. So, and if you want to, if you want

23 to have an injunction on him selling the property, which was

24 their big concern, which was their beef when we went through this

25 hearing, fine. He's not going to sell the property and join it.

1  That was the purpose. All of this other rigmarole, we're going to

2  explain to you because it's baloney. Mr. Leone also said in his

3  opening, this is the place where we're going to litigate whether

4  or not there was a breach of fiduciary duty by him, or by him, or

5  by Vertuca. This is the place where we're going to do it, not in

6  Mexico. What went on in Mexico, wasn't an action by him, they are

7  reactions by this attorney that understands what's going on in

8  Mexico and not the, what I would call, unusual explanation of

9  Mexican law. But there, he's here to testify about, what goes on;

10  what's been going on in Mexico and they're not actions on behalf

11  of Mr. Roberts, they're reactions. They, they're, they have lost

12  three times by trying to appeal the case as it went. He bought

13  the property, we're admitting that. He's not going to sell it,

14  we're admitting that. He's going to keep it and, and whether they

15  develop it or sell it, that's going to be a joint decision, but--

16         THE COURT:  And did he buy the property, just time-

17  wise, did he buy the property before or after the injunction?

18         MR. MATTSON:  --before.

19         THE COURT:  Okay.

20         MR. MATTSON:  These guys came in after. The, the

21  purchase of the property was I think a year before. We had an

22  injunction and the injunction as drafted is a; it's a temporary

23  injunction and Judge Plotz for some reason made, accepted the

24  changes to make it a mandatory injunction, meaning you have to go

25  do some stuff. There are very few cases of temporary, because

it's temporary, under rule 65, we're trying to maintain the status quo but the orders that he submitted, that Judge Plotz for some reason signed off on, said you need to direct lawyers in Mexico to ignore whatever court orders are outstanding, and whatever that judge tells you to do in Mexico, you can't do it. And if you do, you are in violation of this court order and we're going to sue you for contempt. And that's what they've done. I haven't, I; the Mexican attorney that was involved in it and the Mexican attorney that was involved in it from their side are both here to offer testimony, which I think will be a lot more revealing than Mr. Leone's synopsis. So, I offer you that to the Court and I also offer that; and we will prove that his actions were reactions, mandatory injunctions from a Colorado Court telling Mexican attorneys what they have to do and that they can't respond, they have to sit on their hands. If Mr. Rosen files, files another lawsuit after the injunction, they're, they're a bunch of adages, Eleanor Roosevelt and so forth. You don't ask others to do what you yourself are not willing to do and this, this group here is saying, hey, let's preserve the status quo and then they go down to Mexico and start filing other law, new lawsuits. He can't sit on his hands for that or he didn't even get involved. It was the attorney's that were down there and their responses were direct orders from judges in Mexico. You, half of these things are criminal charges against each other. And we will clearly illustrate that Mr. Rosen has

1  something of a history of this. He is represented the Hotusa

2  group. He continues to represent Hotusa. He represents RCC who is

3  at odds with Hotusa. He represents Mr. Mustafa who is at odds

4  with the other two. He represents all three parties and even

5  signed contracts on behalf, on behalf of them in the same

6  instrument that was reported as a, as a court order. So, there is

7  a bad guy here and I'm trying to figure out; there is a portion

8  of my argument that we'll get to at the end here that I call the

9  elephant in the room. If he hadn't done this, if hadn't gone in

10 and made that five and one half million dollar payment to Hotusa,

11 you know what happens, and I think everyone understands it. I've

12 asked Mr. Lang this too. I don't get why they would not want him

13 to pay it because if he didn't, the property is gone. Hotusa gets

14 it, hook, line, and sinker, the entire project goes to Hotusa,

15 which is a--

16        THE COURT:  But, but isn't the crux paying it on his

17 own personal behalf versus paying on behalf of RCC?

18        MR. MATTSON:  --that's the breach. Yes, that is the

19 breach; that's the crux of the trial that we're going to have,

20 that's we've set. What, did he do that? Did he usurp a corporate

21 purpose? Yes, that's a breach of fiduciary duty. There are

22 reasons for it. There are defenses to it. Did he do it? We'll

23 address that too. Did he do that on behalf of these other people?

24 Yes, that's all part of a trial. It's not part of an injunction.

25        THE COURT:  And, and again, I'm sorry, but that was,

1  that was all before the injunction?

2          MR. MATTSON:  Yes. Yes. Yes.

3          THE COURT:  All right. So, let's just focus on the

4  allegations--

5          MR. MATTSON:  Of, of this injunction?

6          THE COURT:  --of the injunction and the alleged acts

7  and violation of that injunction.

8          MR. MATTSON:  Well, my point being, if he hadn't done

9  it. If this gets, if the man--

10          THE COURT:  There is, there is no property.

11          MR. MATTSON:  --there's nothing.

12          THE COURT:  Right.

13          MR. MATTSON:  There's no property. Hotusa gets it. So,

14  what is the deal that, I mean, are, are Kneen and Flaherty are

15  they unaware of that? Are they in with it? And I know Mr. Rosen

16  is in, in part of it because he represents both sides and we'll

17  illustrate that by testimony and direct proper evidence. And with

18  regard to the; procedurally, with regard to the deposition, I

19  haven't even read the deposition yet. We have not, we have an

20  opportunity under rule 30(e) to have a, to have a, a Errata sheet

21  submitted and Mr. Roberts has to sign his own deposition or;

22  within if he doesn't sign it and review it and submit his Errata

23  sheet within 35 days, then it's deemed admitted. But I'm not

24  going to bend the rules because I haven't even seen the thing.

25  So, it shouldn't be admitted. That's my opening. Thank you.

1    THE COURT:  All right. Well, that would be an
2 appropriate objection at a later time. Mr. Leone?

3    MR. LEONE:  You know, Your Honor, I'm not going to go
4 back and try and respond to some of these things because I don't
5 think they really have to do with the injunction.

6    THE COURT:  No. I'm, I'm expecting witnesses now.

7    MR. LEONE:  Yeah. Okay. Well, my plan was first to
8 present some of Mr. Roberts' own testimony from his deposition.
9 We have the sealed original certified transcript from the
10 reporter. I suspect that that she prepared and sealed that
11 because there was a waiver of read and sign. So, I would submit
12 some of that testimony.

13    THE COURT:  Okay, and--

14    MR. MATTSON:  And I object. I don't understand why
15 there's no waiver of it being signed and that would benefit my
16 point.

17    MR. LEONE:  The, the court reporter doesn't send the
18 sealed original deposition to us until it's either been read and
19 signed or there's been a waiver of signature and I, I can't swear
20 to it because I don't remember everything that happened in this
21 deposition but I think there was probably a waiver of signature.

22    MR. MATTSON:  No way.

23    MR. LEONE:  The deposition was on September the 16th, I
24 guess 30 days is tomorrow. Mr. Mattson says he hasn't even seen
25 it yet.

1    MR. MATTSON:  It's 35 days, it was submitted to me on

2 September 29th. I haven't read it. Your lack of preparation

3 doesn't mean that we have to bend the rules.

4    MR. LEONE:  Well, Your Honor, we can wait. I suppose we

5 can use these prior statements to cross-examine Mr. Roberts, if

6 he takes the stand today. We can start with our first witness.

7 We'll call Mr. Rosen as our first witness, Your Honor.

8 [Pause in proceedings 9:19:05 until 9:19:31]

9    THE COURT:  Mr. Rosen, please raise your right hand? Do

10 you solemnly swear under the penalty of perjury the testimony you

11 will give before this Court shall be the truth, the whole truth

12 and nothing but the truth?

13    MR. ROSEN:  I do.

14         **DIRECT EXAMINATION OF MR. ROSEN BY MR. TURNER**

15    Q.  Good Morning. Could you tell us your name?

16    A.  Benjamin Rosen.

17    Q.  Mr. Rosen, what do you do for a living?

18    A.  I'm an attorney.

19    Q.  Where?

20    A.  I'm licensed in Mexico and also in the state of

21 Washington.

22    Q.  Is RCC one of your clients?

23    A.  Yes. Yes.

24    Q.  Is PDC one of your clients?

25    A.  Yes.

1  judge and they are basically attacking the wrong ruling. So, what

2  I'm trying to say here is that Mr. Rosen filed an Amparo suit to

3  overrule the same or exact ruling that Mr. Rosen drafted and

4  signed and presented to Court to be validated. And--

5      Q.   So, he was, sorry.

6      A.   --yeah, and Mr. Roberts and myself just intervene as

7  third parties in it. That's it.

8      Q.   So, Mr. Rosen filed the Amparo to overturn the document

9  that he submitted, that he designed and signed?

10     A.   Yes, sir. That's correct.

11     Q.   Okay. Did RCC either through your representation or any

12 others, did they buy the property or did they buy a lawsuit?

13     A.   Riviera Country Club bought a debt, and a debt for 6.5

14 million dollars and that matter was solved through that

15 settlement that I was speaking of, minutes before. That

16 settlement later was presented to Court and became a res judicata

17 and that's it. That's what happened. Riviera Country Club

18 therefore just was set in a debtor's position and that's it.

19     Q.   Okay. We'll get to that in a second.

20     A.   Uh-huh.

21     Q.   Is that proceeding over or is it not, because I keep

22 hearing you sometimes say that it's; I'll let you answer the

23 question?

24     A.   I, I understand. Okay, so, yes those proceedings are

25 over. The minute that the settlement was approved by the Court

Aple.Appx. 194

1  and then it was converted to res judicata, the proceedings are

2  over. There are no more arguments or things to be presented to

3  Court.

4      Q.  Okay. Can you reverse what's already happened in Mexico?

5      A.  You cannot reverse a res judicata. That cannot be

6  overthrown.

7      Q.  In any way, no matter what this Court tells you to do,

8  or if they--

9      A.  That has already been reviewed and, and, and ruled upon.

10  So, yeah.

11      Q.  --and when, when was it over?

12      A.  It was over, the first stage was over when they filed

13  this settlement.

14      Q.  And when was that?

15      A.  Yes, and that was in December 2015 and then later in

16  December 2016 when it converted to a res judicata.

17      Q.  Okay.

18      A.  There it was over.

19      Q.  Now, you've heard testimony that Mr. Roberts

20  fraudulently and illegally gave you a Power of Attorney. Has that

21  issue been put to rest?  Is that, was that one of the issues in

22  Mexico that was a source of a claim?

23      A.  Yes, sir. Again, many times that matter has been

24  discussed in, in Courts in Quintana Roo. It has been ruled upon

25  and it has been established that I do hold valid Powers of

1  without any authority. Is that remotely accurate?

2      A.  No, I didn't start any lawsuits. They presented those

3  lawsuits. I had to defend myself and when I started against Mr.

4  Rosen in character of legal, Riviera Country Club, legal

5  representative was that criminal investigation.

6      Q.  Okay. So, bottom line here. If you did everything that

7  Mr. Leone wants you to do, if this Court's previous order for a,

8  the temporary restraining order, that this Court issued. If it's

9  construed as mandatory, compelling you to go file dismissals of

10  anything that is going in in Mexico, what would happen?

11      A.  I, those dismissals would be overthrown. I don't know if

12  that's the correct word. But since all of the Amparos have been

13  already ruled in those matters here, that is my Powers of

14  Attorney, whether or not Mr. Roberts had or has traitorous

15  position, and even telling that cannot be undone at this point.

16      Q.  So, as of the date for this Court's injunction, was

17  there anything that you could rescind, that you could make go

18  away, that affected this property?

19      A.  No. The relevancy of also your documents to 1002 and

20  the; well, these documents state that we are like two years and a

21  half late for that.

22      Q.  Thank you.

23          MR. MATTSON:  Oh, I would move to admit Roberts Exhibit

24  2003, or 1003?

25          THE COURT:  Objection?

183

```
1          THE COURT:  All right, any closing comments?

2          MR. LEONE:  Yes, Your Honor. Just by way of

3   housekeeping, we had had the organization chart and a map. I've

4   assigned those exhibit numbers now. The organization chart is

5   Defendant's Exhibit, or just Exhibit 7 and the map is Exhibit 6.

6          THE COURT:  Any objection if we admit?

7          MR. TURNER:  No objections.

8          THE COURT:  All right. Those will be admitted then.

9          MR. LEONE:  And then, Your Honor, a second housekeeping

10  matter? I guess we've agreed, we've provided you with a copy of

11  the transcript from the preliminary injunction hearing in the

12  extent you needed. I don't have any objection to incorporating in

13  that whatever exhibits were introduced during the preliminary

14  injunction hearing and we'll admit as evidence.

15         THE COURT:  Okay.

16         MR. MATTSON:  So, Your Honor, what number would you

17  like me to use for that because you want me to send or file

18  rather a zip of it.

19         THE COURT:  What are you up to, 1003, 1000, I don't

20  know. I think you're up to 1003, so this could be 1004?

21         MR. MATTSON:  Yeah. Okay. Thank you.

22         MR. LEONE:  Your Honor, the hour's late and you've

23  heard the testimony so, I'm not going to give a lengthy closing

24  but I do want to address the issue of remedy that we talked about

25  earlier.
```

184

1    THE COURT:  When the trial ends, I will just ask both

2 sides briefly; let's refocus a little bit. I've heard a lot about

3 a lot. I've heard a lot about 2015, a lot about 2016, but there

4 is specifically an injunction that was in place and if you would;

5 it's laid out somewhat in your, laid out somewhat in your motion

6 and you've argued it but if you would. It would be helpful to the

7 Court, specifically what action, specifically which part of the

8 injunction and then respond to that in your close, and then you

9 can also deal with what kind of relief you want to see and what a

10 Court can do.

11    MR. LEONE:  Okay. So, Your Honor, I guess the way to,

12 that I visualize this case is if you visualize a football field

13 and the foreclosure proceeding and the goal line is issuance of a

14 deed to Mr. Roberts, he's on the one-yard line. When we were here

15 in December, I don't know what yard line he was on but he was far

16 from the one-yard line. He was probably on the 40 or 50-yard

17 line. There was still lots of things that had to happen before he

18 could get this deed to the property. The Amparo cases had to be

19 resolved. The stay in the Amparo cases had to be lifted. Somebody

20 had to go back to the trial Court and ask for this record to be

21 certified and delivered to the notary. The notary had to prepare

22 a deed. The deed had to be delivered to the Court. The, the

23 possession had to be transferred. Somebody had to issue an

24 eviction notice. There are lots of things that have had to

25 happen. Our view is that everything that's happened since the

1 December 2018 injunction, is a contempt, and a violation of that

2 injunction and that we need to somehow remedy that by basically

3 turning the clock back. Now, it's a little, it goes a little

4 farther than that because what really happened in the December

5 injunction hearing was that the Court found that since December

6 of 2016, when Mr. Roberts first jumped into the shoes of Hotusa,

7 took over its position, and began to wrongfully seek to obtain

8 this property for himself. That everything done after that was a

9 breach of fiduciary duty and a misappropriation of that

10 settlement agreement. So, there really isn't any part of this

11 advancing of the ball from his 20 to the one-yard line that you

12 can say is rightful. Part of it was resolved in the preliminary

13 injunction hearing when the Court found that he, we would

14 probably succeed in proving that he had violated his fiduciary

15 duties and the contract. And the rest of it is in violation of

16 the injunction. So, one conceivable remedy that's easy to

17 administer, based on Mr. Rosen's testimony it seems to me, is

18 just simply dismiss or withdraw this foreclosure enforcement

19 proceeding that is pending down in Mexico. There's only a couple

20 of things left to be done before the deed is issued, but if those

21 things happen Mr. Roberts is going to have the title to the

22 property. He can sell it, encumber it, do all kinds of things

23 with it, and there may very well be this tax consequence that Mr.

24 Rosen testified to because of the way they've done it. If he

25 withdraws that action or dismisses it, then we can proceed to an

1 orderly disposition of the claims in this Court. If he's

2 successful and it turns out we're wrong and he is entitled to end

3 in the shoes of Hotusa and he's entitled to continue the

4 foreclosure action, he can go back to Mexico and he can file that

5 enforcement action and proceed from there. There will be lost

6 time but considering that everything that happened since December

7 of 2016, we've brought to this Court and there's been, and we

8 hope as a result of this hearing there will be a finding that,

9 that ball has been advanced by him through a combination of

10 breaches of duty and violations of the injunction. That's not an

11 unreasonable place to put the parties. If you couple that with,

12 with an order that you know, once he dismisses that action, he

13 not take any further action to obtain title to the property in

14 his own name until we've adjudicated that in this Court, that

15 should protect everyone on an interim basis. In addition to that,

16 you can order him to immediately revoke and terminate Mr.

17 Ramirez' Power of Attorney, which is what the prior Court ordered

18 and that he file that revocation immediately with the Court in

19 Mexico. You know, in conjunction with his request to dismiss or

20 withdraw that action. That is something that Mr. Rosen has said

21 could be done. That provides a remedy but the problem is that's

22 just basically another injunction, and we've already experienced,

23 Mr. Roberts' inability to comply with that injunction and so you

24 have to combine that with some sanction that will help assure

25 remedial, that the remedy will be implemented and I have thought

1  long and hard about this, Your Honor, and I only have two; I've

2  only got, it's a harsh remedy, but if, I would say to Mr.

3  Roberts, provide to this Court proof within seven days that you

4  have withdrawn and/or dismissed your enforcement proceeding, that

5  you've evoked the Power of Attorney and advised the Court of it

6  in Mexico, and if you don't, then I will enter a default

7  judgement against you on the liability part of this case. And

8  then we'll have a trial on damages. Or, alternatively, and you

9  know, jail time is part of remedial contempt. If it's something

10 that you can say, look I'm ordering you to do this and if you

11 don't do it, you know, you're going to go to jail until you do

12 it. It's like not paying child support or something. You're in

13 contempt. The only way I can get you to comply is to put you in

14 jail until you comply. You could do that. We're not asking for

15 that today, we're suggesting that Mr. Roberts have seven days to

16 stop this madness in Mexico, dismiss this foreclosure action, and

17 set the clock back to December of 2016, which is when we say this

18 breach occurred. I think that would be an appropriate combination

19 of remedies for remedial contempt along with of course, I think

20 the case law is pretty clear that we should be entitled to an

21 aware of attorney's fees for having to bring all of this and we

22 would ask the Court to give us the opportunity to tell Mr.

23 Mattson what those fees are, if he objects to them, then we can

24 have an exchange briefing about that and if we can't agree upon a

25 number, but I think that your order should include an award of

1 all of the attorney's fees we've expended in the last year, since
2 December of last year, trying to enforce that injunction. And I
3 will warn you in advance that will be a substantial number. It
4 will be in the hundreds of thousands of dollars.  If the Court
5 believes we need to present evidence on that today, let me know
6 and I can put Mr. Flaherty on in five minutes and he will tell
7 you how much attorney's fees he's incurred.

8            THE COURT:  There is a separate process for that.

9            MR. LEONE:  Yeah.

10            THE COURT:  Where, where do you suggest that I have the
11 authority to actually enter judgement on liability as a sanction
12 for remedial, you know, in this situation?

13            MR. LEONE:  Well, I can make the argument to you. I
14 don't have a case to cite to you today. But, the whole, whole
15 concept of the preliminary injunction is that there's irreparable
16 harm if it's not complied with and in this case, the irreparable
17 harm has always been the loss of a unique piece of property and
18 the, the depravation of the ability to develop it and sell it for
19 something that will help make the investors whole. And by the
20 way, now that we have the preliminary injunction exhibits in
21 there, you'll see there are dozens of other investors and
22 interested parties and lenders that have not been paid in this
23 case. This is not just Mr. Flaherty and Mr. Kneen, there, that is
24 in an exhibit in the preliminary injunction hearing. But the,
25 the; it's the irreparable nature of the injury that makes, that

1  make this case suitable for preliminary injunction. If he wins,

2  if he wins his tactic in Mexico in the next week, which is

3  possible, and he has title to the property in his new Mexican

4  entity, then all we have left is a claim for damages. But he will

5  have gotten the title to the property by violating this Court's

6  injunction and breaching his fiduciary duties. And if you say to

7  him, if you don't do what we told you to do; if you don't do what

8  we told you to do to avoid irreparable injury and do it now, then

9  I'm going to enter judgement against you. I think that would be;

10  we could, we could make it a fine of one million dollars a day or

11  500 thousand dollars a day or something, just say I'm going to

12  fine you this much per day until you give me that certification

13  from down in Mexico. That would be another approach, I suppose

14  that you could, that you could use.

15        THE COURT:  Do we have the record anything or was it

16  presented previously at the other hearing as to the value of the

17  property?

18        MR. LEONE:  I believe so, yes. We had Mr. Flaherty

19  testify that they had an offer for that property for 23 million

20  dollars, for all four properties, and part of the irreparable

21  harm here was that the four properties market better together

22  than they do individually and that if we lose Serrano two and

23  three, to Mr. Roberts' activities, it's going to impair the value

24  of the other parcels because as you see from the map, in order to

25  get to the beach house you have to traverse two and three and so

there's easement issues about getting to the beach house if we
lose two and three. But there was testimony previously about an
offer for 23 million. They can't do anything with this property
with this lawsuit clouding it, that's the other problem. That's
why, that's why in order to protect all of these investors we
need to bring it all to this Court and get it under control so
the property can be sold and the money split in an appropriate
way.

THE COURT:  All right. Thank you, sir.

MR. LEONE:  And, Your Honor, I didn't go through--

THE COURT:  Oh, okay.

MR. LEONE:  --I didn't go through chapter and verse of
the injunction, what's been violated. I can if you want but I
think I cited to those, to those paragraphs in my opening. I
think the evidence came in pretty nicely on all of it. He never
instructed Ramirez Garcia to terminate to revoke the Power of
Attorney. He never advised the Court in Mexico of the injunction.
And Ramirez says he never even knew about this injunction until a
week or two ago. There's a conflict of testimony about that. Mr.
Roberts didn't sent it to him. Mr. Roberts says he was depending
on Mr. Mattson. There is no evidence that it was ever given to
him except when we served it on him, on Mr. Ramirez, and he
denies that he ever got it. But we've presented evidence that it
was physically served on him. So, I don't think, I don't think
you can draw any other conclusion. Well, and then I suppose the

last thing on that is the sequence of events. This Court granted

its injunction on December 6th of 2018, and everything we've

submitted happened after that. It was like as soon as that

injunction was out there and we were trying to get it reduced to

writing, then they ramped up doing things down in Mexico. I don't

know if it was because they were in anticipation of the written

order or what but Exhibit 3 was December 28th, Exhibit 4 was

February 11th, and so, I don't think, I think it's a compelling

case that Mr. Roberts has very deliberately, either been

willfully and deliberately blind to this injunction and decided

it was an inconvenience that didn't need to be dealt with, or

that he willfully violated it or, or, or willfully allowed his

attorney's in Mexico to be oblivious, oblivious to it. And, and,

I'm not here to say whether Mr. Roberts did that, or you know, I

don't what he instructed Mr. Mattson, and I'm not going to try to

assign blame for that. I just know that our clients have been

grievously injured and that injunction has not been complied

with. Thank you.

          MR. MATTSON:   Okay. I'm not going to assign blame for

it? And my clients have been grievously injured? If there is a 23

million dollar offer out there, we can settle this right now.

This, this case is over. Is there a 23 million dollar offer?

          MR. LEONE:   Yes, there is, Your Honor, and it's not

appropriate for this part of the proceeding but--

          MR. MATTSON:   Okay.

1    MR. LEONE:  --we've tried to engage Mr. Roberts for

2 months and months to have a civilized conversation about how to

3 solve this.

4    THE COURT:  Well, then I'll expect, I'll expect to see

5 a notice of settlement on Tuesday but until then.

6    MR. MATTSON:  I think—-

7    THE COURT:  All right. Let's—

8    MR. MATTSON:  Okay.

9    THE COURT:  --to be blunt, sir, we're, what I really

10 need you to address is, you know, the – It appears as though from

11 the verbiage used from some of the witnesses that the, Judge

12 Plotz' order was deemed less than binding. A lot of it seems very

13 clear ordered to instruct Mr. Ramirez to cease appearing, revoke

14 any Power of Attorney whether it was properly provided initially

15 or not. I honestly don't care. Judge Plotz looked at your client

16 and said, you will do X. Taking, you know, Mr. Roberts being

17 enjoined cease and desisting from taking any action in any Court,

18 contrary to the rights of RCC. And I hear your argument even if I

19 accept, I'll accept at face value the testimony that if something

20 is filed and somehow has to respond, I'll accept that. It doesn't

21 say they have to respond in a way that's adverse to the interest

22 of RCC, and that's the injunction. That's what he was saying. He

23 said neither you, your attorneys, your agents, nobody will do

24 anything down in Mexico that's adverse to the possessory

25 interests of PDC and RCC and the fact that someone shows up and

1  has to show up, great. Someone did have to respond. Wonderful.

2  But the response, please address that argument. The response very

3  well could have been never mind, let the stay, let the stay

4  remain in effect, or never mind, let's cease the enforcement

5  operations.

6      MR. MATTSON:  But the purpose, they're trying to

7  perverse the property for RCC, for these people. The problem with

8  what's going on down there, is that there's a rollover of this

9  property. If they get rid of Roberts, I bet in 10 years they'll

10  sell it again. That's part of our trial that this thing continues

11  to be roiled in litigation.

12      THE COURT:  All right, well, we'll get to the trial

13  when we're set for a trial.

14      MR. MATTSON:  When we get to it.

15      THE COURT:  But there was an order from a judge that

16  said, do not do anything adverse to the possessory interest of

17  these other parties and what I've heard even in the light most

18  favorable to your side and from, even from, Senior Ramirez, is

19  they were actually fighting the interests of RCC and everyone

20  else.

21      MR. MATTSON:  With respect to that order, Your Honor, I

22  would like you to take a look—-

23      THE COURT:  To which order?

24      MR. MATTSON:  --well, to the order of the Court and

25  then the one that was submitted by Mr. Leone over my objection,

1  three different times he submitted and he kept adding new things

2  to it including what is really—-

3      THE COURT:  All I know, all I know is that I've got an

4  order issued by Judge Plotz.

5      MR. MATTSON:  And, it's unusual, in that it is a

6  mandatory injunction. You need to go do this. And his example of

7  the, the putting somebody in jail for not paying their child

8  support.

9      THE COURT:  All right, it may be unusual, sir, but it

10  is the order of the Court and that's the order that is alleged to

11  have been breached. I haven't seen any motions that this was

12  ultra vires or anything else. I've got an order of a Court

13  ordering Mr. Roberts to do certain things and to abstain from

14  having him or his agents do certain things and the testimony I've

15  heard including from Mr. Roberts and Mr. Senior Ramirez, is, that

16  was not complied with. Things were still done affirmatively. And

17  then Mr. Roberts specifically was ordered to do certain things,

18  revoke Powers of Attorney, inform people of the injunction, and

19  it appears that wasn't done. That's really what I need you to

20  focus on. I mean, if I'm missing something, I'm happy to, I want

21  you to point it out to me.

22      MR. MATTSON:  It would appear that you've made up your

23  mind but if an injunction reads, you; if I have an injunction

24  against Mr. Roberts and I'm not allowed to be anywhere around him

25  as injunctions typically are, they preserve the status quo. They

1  don't actively pursue something. If I'm not allowed to be around

2  him and I come over to him, I come over this his house and walk

3  in his front door and slap him in the face. I get to go to the

4  Court and say, well, he's violated the 100 yard, the 100 yard

5  rule. He's clearly within 100 yards of me. He didn't run away. He

6  didn't actively participate in a scam.  So, by doing so, he's in

7  contempt. That's not the way it works. This is an equitable

8  remedy. The whole purpose of a preliminary injunction is an

9  equitable remedy. And your equitable, the way that they're asking

10 the Court to look at this is, is it's equitable for us to go down

11 there and push this as far as we can. You have to sit on your

12 hands. That's not what the judge said. That's never what he said

13 at all. Not even close to what he said. Yeah, he, retired Judge

14 Plotz, signed the document over my objection. Mr. Leone said,

15 well, you can appeal it. Well, it's not a final order. I can't

16 really appeal a temporary restraining order. It's temporary. It's

17 right in the, it's right in, in the caption. So, in an equitable

18 sense for him or his agents to react to things that they're

19 doing, is inequitable. To, to fault them for their own actions

20 for reacting to what has happened is inequitable. And that's what

21 the purpose of this, of a restraining order is. We haven't, we

22 haven't proceeded to our case in chief, and the case law is

23 replete with if everything that they're looking for in their

24 trial gets awarded to them, in a temporary restraining order, or

25 a contempt citation for violation of a restraining order,

1  everything they want they win?

2         THE COURT:  And so, again, I appreciate your arguments

3  in the hypothetical but the order we have says Roberts, as well

4  as any attorneys or agents acting pursuant to his instructions,

5  shall cease all actions direct and indirect that are inconsistent

6  with the ownership of the initial property, Mustafa property, by

7  PDC through its subsidiary RCC.

8         MR. MATTSON:  Yeah, all the testimony was about—-

9         THE COURT:  So, they are, so if RCC is acting in a way

10 that furthers its ownership interests; your analogy to the

11 husband showing up and violating the restraining order in that

12 way breaks down. They are, if they, RCC takes actions to further

13 the ownership interests of RCC, and Mr. Roberts and his agents

14 are acting against that, how is that not a violation of what,

15 what was written?

16        MR. MATTSON:  Because some of their actions, what

17 they've done would make it so that the property ends up with

18 Hotusa. These guys get nothing. That was the elephant in the

19 room. If they, if they were successful, it doesn't go back to

20 RCC, it goes to Hotusa.

21        THE COURT:  That hasn't been the evidence presented.

22 The testimony presents it was exactly opposite of that. I mean.

23        MR. MATTSON:  I don't—-

24        THE COURT:  Who testified that the property would end

25 up going back to Hotusa? The, the evidence I heard was exactly

1   the opposite of that.

2          MR. MATTSON:  It was the evidence that was presented in

3   the initial, in the initial temporary restraining order. If it

4   hasn't been presented today then that's my fault. – But the case

5   remains, the property is not going to be sold. That was the, that

6   was the big concern for these guys was that Roberts was going to

7   keep the property for himself and they were all going to be out

8   of luck. And that's not going to happen.  That's not going to

9   happen; one, it can't, and two, most of this is already done. It

10  was done. It was already given away back in December. It was

11  given away a year before that. The property was already gone.

12  I'll let the Court take a look at some of the full transcripts of

13  what has transpired in Mexico and it might be more apprised of

14  the situation rather than snippets that were presented here.

15         THE COURT:  And, what is it then specifically you're

16  calling my attention to?

17         MR. MATTSON:  Exhibits 1001, 1002, 1003, 1004.

18         THE COURT:  Okay. What did you? Okay.

19         MR. MATTSON:  Thank you.

20  [Pause in proceedings from 5:14:25 until 5:15:00]

21         THE COURT:  All right, a remedial contempt proceeding.

22  If it appears that the failure to perform an act that was within

23  the power of the person to perform that act, the person may be

24  fined or imprisoned until its performance Shapiro v Shapiro 115

25  Colorado 498. The burden of proof is on the moving party. Moving

1  party has a burden of going forward and proving, making a prima

2  facie showing that the underlying court order has been violated.

3  At that point, the contemnor would have the burden of proving an

4  inability to comply with the Court's prior orders that was the Re

5  Marriage of Lamutt 881 P.2d 445 Court of Appeals 1994. The Court

6  does find that Mr. Roberts was under an order to perform the

7  order by Judge Plotz on January 24th, 2019, order granting motion

8  for a preliminary injunction was entered. It was not appealed and

9  it does order and did order Mr. Roberts to affirmatively take

10 certain actions. Very telling was Mr. Roberts testimony itself,

11 his own testimony, where he indicated that he did not take any

12 actions to fulfil Judge Plotz' orders indicating he did not know

13 the contents of the order, wasn't told the contents of the order,

14 possibly was discussed with the attorney, with his attorney, and

15 he knew nothing about Judge Plotz' order. The Court, just in

16 viewing Mr. Mattson's performance in front of me today, he finds

17 that hard to believe, Mr. Mattson is a thorough attorney. He has

18 represented his clients exceedingly well today. He was prepared

19 in a fundamental duty of an attorney, would have been having a

20 discussion with this client as to this. The Court finds it hard

21 to believe that Mr. Roberts would have known nothing about the

22 contents of this order. And regardless, he was ordered to do

23 certain actions and keeping oneself purposefully ignorant of

24 obligations is not a defense. At the very least, through his own

25 testimony, Mr. Roberts has admitted that he did not take all

1  necessary actions to revoke or terminate any purported Power of
2  Attorney granted any person, paragraph eight, of the preliminary
3  injunction. Through his testimony, it was established that he did
4  not instruct Senior Ramirez Garcia to immediately cease appearing
5  or filing any writ, brief or document of any nature as the agent
6  or attorney in fact of RCC, contrary to paragraph seven. Mr.
7  Roberts' testimony that he signed certain papers and certain
8  exhibits that were in Spanish and he had no idea what they were
9  or the effect that they would have, I guess if it were a document
10 or one action, the Court could believe that. But as a matter of
11 pure chance when attorneys and agents in Mexico are taking
12 numerous actions, all of which are beneficial to Mr. Roberts, and
13 none of which are in furtherance, all are contrary to RCC, at
14 some point, just the probabilities that every single action being
15 in his favor and he had no idea what these actions were,
16 stretches credulity. I find Mr. Roberts has violated paragraph
17 six of Judge Plotz' order where he was ordered to cease and
18 desist from taking any action where he intends to impose or
19 assert himself as a surrogate creditor of RCC or rightful owner,
20 owner of the land, and/or to foreclose on the mortgage, etc.
21 Paragraph five, Mr. Roberts is ordered from enjoining holding
22 himself out before any third party, I don't recall hearing any
23 evidence as to that and find that he has not violated that
24 paragraph of Judge Plotz' order. And then again, the Court does
25 formally find that Mr. Roberts has violated Judge Plotz' order

1   contained in paragraph one, where Judge Plotz; Mr. Roberts is the

2   enjoined party, what other people do or don't do is not subject

3   to this order. Mr. Roberts was the one subject to this order. Mr.

4   Roberts was the one who was ordered as to himself, as well as any

5   attorneys or agents acting pursuant to his instruction, to cease

6   all actions direct or indirect that are inconsistency with the

7   ownership of the initial property. I disagree with Mr. Mattson's

8   well-crafted argument. I understand the argument that if RCC does

9   something in Mexico, well I disagree that if RCC does something

10   in Mexico that is consistent with its ownership of the property

11   that Mr. Roberts or his agents or his attorneys had to oppose

12   that because Mr. Roberts was enjoined from acting in any way

13   directly or indirectly in a manner inconsistent with the

14   ownership of the property. And by opposing actions by RCC and its

15   subsidiaries and others that were consistent with their

16   ownership, he's necessarily acting contrary to that. I accept

17   Senior Ramirez' testimony that certain actions are final

18   decisions. You referred to them as res judicata that cannot be

19   undone, but his testimony in some places did match up with Mr.

20   Rosen's testimony, and one of those areas was that this action is

21   not final. There are some steps left and apparently it is this

22   enforcement area. - I'm sorry, I was looking up. There it is. - I

23   did hear and understand Mr. Roberts arguments, Mr. Mattson's

24   well-made pleas, that if Mr. Roberts hadn't done anything, the

25   property would be gone, everyone; no one would have anything. I

don't know if that's true or not, even if assuming it's true, my

job is not to litigate this matter, my job is not to second guess

the actions of Plaintiffs in this matter, whether the course

they're pursuing is smart or would have it ended up in the

property being gone somewhere else, that's just not my job. My

job isn't also right now to decide the breaches or who did what,

when inappropriately, that's what the trial will be for, but for

today I think it is important that we, to borrow Mr. Leone's

metaphor to the extent I can, stop this ball at the one-yard

line. Mr. Roberts, you did indicate that you did not understand

or know the contents of the previous judge's orders, so I am

telling you right now. You are ordered to vacate, vitiate, void,

and immediately exterminate any Powers of Attorneys you have

provided to Rudolpho Garcia Pliego and Juan Carlos Ramirez Garcia

and/or Eledi Maria Maredi Perez (phonetic) and any other person

or entity to whom you have granted Powers of Attorney in your

capacity as a member or manager of RCC. To the extent Plaintiff's

take action in Mexico that is intended to secure RCC's interests

in the property, you are not to act inconsistent with that. I

certainly think it is within, there has been no testimony that in

Mexico once you have initiated an enforcement action that you

have to see it through, that you're somehow on some conveyer belt

that you cannot get off of. So, what has been referred to as this

enforcement action, I am ordering that you provide proof of the

dismissal of the enforcement action. I do not know that I can say

provide proof of the dismissal within seven days, I certainly

can't force a Court in Mexico to act within seven days, but I can

order that you, your attorneys on your behalf, file the necessary

paperwork to dismiss the enforcement action and I want that by

Tuesday. Monday ought not to be a holiday in Mexico, so it could

be prepared this weekend and it could be filed on Monday. I'm

ordering all parties to be back in this courtroom on Tuesday at

8:30 in the morning, so we can review that. I guess I should also

state that Judge Plotz' order also ordered Mr. Roberts to provide

copies of the injunction to the Mexican authorities and to take

steps to have that order given affect in Mexico and that also was

not done and I think that is also uncontroverted that that was

not done, again by Mr. Roberts' own testimony. He did nothing as

to the injunction in Mexico. Also, by Tuesday I want the

injunction filed with appropriate Courts in Mexico, following

appropriate mechanisms for enforcement of foreign judgements. And

that's to be done also; have proof of that also done by Tuesday.

I do not know whether I would have the authority or if it would

be a proper remedy to enter judgement on liability. I will say

that I will research that and if furthermore, Judge Plotz' order

is still in full force and effect. I'm not doing anything to

change Judge Plotz' order so anything and everything in the

original injunction is still valid. As I was saying, if Mr.

Roberts, you through your attorneys and agents or anyone else,

continues to act adversely to RCC's interests in this property,

1  and if quite frankly the ball gets advanced from that one-yard

2  line to the end zone where suddenly RCC cannot do anything to

3  secure its interest because of the actions you, your attorneys,

4  and your agents have been taking in Mexico and potentially

5  continue to take in Mexico, the Court at that time will consider

6  any and all options that I legally have. And at that point given

7  the value of the properties and the nature of the dispute and the

8  dollar values involved, the Court's decision would be

9  proportional to any damage that has been done to Plaintiff's in

10  violation of the injunction. I do have the authority to put you

11  in jail until certain actions are done. I'm not going to do that

12  today. I really do not want to put you in jail. I have the

13  authority to fine you as requested by Mr. Leone, in an extreme

14  amount, you know, every day until certain things are done. I'm

15  not inclined to do that right now. I want to see compliance with

16  Judge Plotz' order. Mr. Roberts, I will also order you to sit

17  down with your attorney and go over Judge Plotz' order so you can

18  no longer say that you do not know the contents of it. And I very

19  much; you know, Mr. Mattson, you kept talking about maintaining

20  the status quo and I think the status quo Judge Plotz was

21  attempting to maintain was not maintained and that was not

22  specifically due to the actions of your client and his attorneys

23  and his agents. So, the word and the spirit of the order was

24  violated by Mr. Roberts. I very much want to see that stop. And

25  just so that we're clear, you're answer to subpoena to be here,

1  that subpoena continues until Tuesday. If you fail to appear on
2  Tuesday, I can issue a warrant for your arrest. I can place you
3  in jail for failing to appear. And I will issue a warrant for
4  your arrest if you do not show up on Tuesday. I have no reason to
5  believe that you wouldn't, I just want to be clear as to what the
6  potential penalties could be. Mr. Leone, initially from you I
7  have not gone as far as you asked. The fact that I have not done
8  so, do you see that as potentially fatal or are we okay were we
9  are so far, at least until Tuesday?

10      MR. LEONE:  Your Honor, I think we're fine were we are
11  until Tuesday. We will also look for some authority on what
12  potential remedial sword you can impose, the default remedy to
13  see if we can find any case law to help you with that and then
14  attorney's fees was the only other question.

15      THE COURT:  Mr. Mattson I have no doubt you and Mr.
16  Roberts disagree vehemently with my findings and disagree
17  vehemently with my decision. That being the case notwithstanding
18  that, do you have any problems with; do you foresee any problems
19  with what I have ordered at least up until Tuesday?

20      MR. MATTSON:  The only issue as I understand it, you
21  have to show; we need to show you that efforts are being made. I
22  don't, efforts are being in Mexico. These are the filings and
23  this is the order. The Mexican Court has seen this order before,
24  this Mexican Court that's involved right now has already seen
25  this order from Judge Plotz and we will resubmit it. But I cannot

1  control what the Court in Mexico does with it.

2         THE COURT: No, you can't but I'm sure that there is, I

3  guess, don't know what you mean by seen it. Judge Plotz' order

4  was very specific and said you will present it in a way--

5         MR. MATTSON: Yeah. We did.

6         THE COURT: --that makes it enforceable in Mexico.

7         MR. MATTSON: Yeah.

8         THE COURT: And I don't have any evidence that that was

9  done.

10         MR. MATTSON: I realize that.

11         THE COURT: And I understand that you can't--

12         MR. MATTSON: But, as long as the Court understands

13  that all I can do is try to get them to do that, or utilize.

14         THE COURT: --that I agree with.

15         MR. MATTSON: Okay. Thank you. That's it.

16         THE COURT: I don't think that there's anything that

17  would stop anything from being filed on Monday.

18         MR. MATTSON: No, I agree.

19         THE COURT: It has to have the rest of the Court's

20  order, so to be clear pursuant to in Re Marriage of Cyr and Kay

21  186 P.3d 88 the Court finds that Mr. Roberts had been under an

22  order to perform, that he refused, and refused to perform that

23  order and that he had the ability to perform it. He still has the

24  ability to comply with and all of that as to Judge Plotz' order

25  and that as of today he has the ability to continue to perform

1 and abide by Judge Plotz' order. As to attorney's fees, the Court

2 finds that the, at best, level of ignorance in the effort to

3 ignore an order by a judge and to not take any of the actions,

4 strike that. I can't say he did not take any actions. But his own

5 testimony indicated, Mr. Roberts' own testimony indicating that

6 he did not even bother to inform himself of Judge Plotz' order,

7 ignores the fact that Mr. Roberts would have been sitting in this

8 Court when Judge Plotz at least ruled from the bench, and where

9 he enjoined Mr. Roberts and all others acting in concert with him

10 to cease all actions inconsistent with PDC's ownership of the

11 initial property, the Mustafa property, and with TMTVC's

12 ownership of the beach house, that I know Mr. Roberts' heard, and

13 the breach therefore if not intentional is a willful and wanton

14 disregard of the Court's orders. And because of that, does

15 justify attorney's fees in bringing this contempt motion. I

16 believe you were asking, Mr. Leone, for attorney's fees as to

17 everything done in Mexico? Is it, or just only as to, I think the

18 rule allows me to issue attorney's fees in so far as it goes to

19 the contempt hearing.

20      MR. LEONE:  Yes, Your Honor, we would limit our fee

21 request to the fees and expenses incurred in seeking the contempt

22 in this Court for our firm and then Mr. Rosen's firm also has

23 incurred fees in connection with defending against the

24 contemptable, if that's a word, contemptable actions in Mexico.

25 So, we would include a component for that as well. But we will

1  try to limit it to only fees incurred, approximately caused by

2  the contempt. We won't try to stretch it.

3      THE COURT:  Well, I, I don't know. You're going to have

4  to provide me authority for proximately caused by the contempt

5  Eichhorn v Kelley 56 P.3d 124 Colorado Court of Appeals, 2002,

6  which was affirmed on appeal indicated that 107(d)(2)

7  specifically allows an award of attorney's fees as a remedial

8  sanction and as I read that case, it's as to this hearing. So,

9  certainly expense is getting witnesses here, time in court,

10  preparation, responses, preparation of your motion, etc. I think

11  falls within the four corners of that. So, I will ask you to

12  submit fees and costs and if you would please, in that, break out

13  directly incurred in preparing the contempt motion, preparation

14  for the contempt motion, preparation for today's hearing and

15  today's hearing as one section, and then everything else that you

16  think you have authority for, that I can, that you argue that I

17  can order, as a separate section. Please do it in that way to

18  make it clear to the Court and to opposing Counsel. Obviously,

19  Mr. Mattson you have the right, and your client have the right to

20  challenge reasonableness of those fees. And well, there's a

21  procedure for that and I'm sure everyone's aware of that. I won't

22  put a time limit on when you submit it, so whenever you submit it

23  is fine.

24      MR. MATTSON:  One last thing. One last thing, Your

25  Honor. With respect to Mr. Senior Ramirez Garcia Ramirez,

1 proceedings that may have the names RCC or the name Roberts in

2 the heading or anywhere in the document but that are essentially;

3 what would you call the documents that are, they are not really

4 criminal proceedings between Mr. Rosen and Mr.—-

5       THE COURT:  Well, the criminal is outside the purview

6 of the conjunction.

7       MR. MATTSON:  But it's not; but it's not; that's what

8 I'm asking. But it's not going to say criminal. They have

9 different headings that are quasi-criminal. We would like that to

10 be; I think they understand that this is excluded from this

11 temporary restraining order. Is that fair?

12       MR. LEONE:  Your Honor, I just don't know what quasi-

13 criminal means in this context. I think.

14       THE COURT:  I think there are probably regardless of

15 verbiage or regardless of the language there are events that

16 occur that are criminal that apparently are between Mr. Ramirez

17 Garcia and Mr. Rosen and/or others and that would affect their

18 rights, affect their freedoms, and affect their liberties.

19 Obviously, I think that is, in that effect of any particular

20 action, as to Mr. Ramirez Garcia or as to Mr. Rosen, that is

21 outside of the Court's order but anything that actually affects

22 the interest in the land is within today's order and Judge Plotz'

23 order.

24       MR. MATTSON:  Point being, understood the point being

25 that there may be and somewhere in the document referenced to

1 this property because that's what they, that's what they're

2 fighting about.

3        THE COURT:  All right, well—-

4        MR. MATTSON:  That's it not misconstrued by—-

5        THE COURT:  Okay, well Counsel, if two months from now

6 we are here and I'm presented with filings in a Mexican Court by

7 your Plaintiffs and the testimony is this is a criminal matter

8 and the testimony or and the property is simply mentioned and

9 it's not actually affecting the interest in the property, then I

10 think it's clearly outside of where we, of what, of what I'm

11 ordering and what I'm talking about.

12        MR. MATTSON:  Okay.

13        THE COURT:  But, Judge Plotz, used the word direct or

14 indirect and I do not want, I do not appreciate, again I'm not

15 accusing anybody of anything, but I will simply say, I will not

16 be caught to any gamesmanship and trying to play fast and loose

17 with things. If it ends up effecting the interest in the property

18 that's not criminal in any way shape or form directly or

19 indirectly. If it is effecting the interest in the property

20 that's not the criminal matters that you're talking about. Okay.

21 Well, there is a condition for Mr. Roberts who didn't understand

22 before so I just want to be clear to everybody as to what, what

23 I'm saying. Anything else today from Plaintiff?

24        MR. LEONE:  No, Your Honor. Thank you for your patience

25 I know it's late in the day.

1        THE COURT:  And from Defense?

2        MR. MATTSON:  No thanks.

3        THE COURT:  We'll be in recess.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE

I, **Brenda J. Cramer**, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Signed this 8th day of **January 2020**

**SIGNATURE**

*Brenda Cramer*

**Brenda J. Cramer**

DATE FILED: January 6, 2020 8:55 PM
CASE NUMBER: 2015CV31828

**District Court, City and County of Denver, State of Colorado**
1437 Bannock Street
Denver, CO 80202
720-865-8301

**Plaintiffs:**
RICHARD LANG
v.

**Defendants and Cross Claimants:**
TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL VERTUCA, and PdC, LLC,

And

Riviera Country Club S. de R.L. de C.V. ("RCC")
**Third Party Plaintiff**

**v.**

**Cross Claim Defendant:**
Michael Joseph Roberts, Sr.

And

**Third Party Defendants:**
Michael J. Roberts LLC,
Sandstone Ventures LLC

▲ ▲

**COURT USE ONLY**

Case Number: 2015cv031828

Division: 409

---

**Order Re: Contempt Citation issued to Michael J Roberts, Sr.**

---

Cross claimants and third-party claimants Timothy Flaherty, Timothy Kneen, Carl Vertuca, PdC, LLC and Riviera Country Club S. de R.L. de C.V. ("Movants") filed a Motion for Issuance of Contempt Citation which was properly served upon cross-claim defendant and third-party defendants, collectively the "Roberts Defendants." The Court granted the motion and issued a citation to show cause to the Roberts Defendants. A hearing was on October 11, 2019, in which the Court accepted evidence and heard the testimony of witnesses.

At issue was whether or not the Roberts Defendants should be held in contempt of court for disobeying the orders this Court issued January 24, 2019 (by Judge Plotz). All findings of fact and conclusions of law made herein are based on what I find to be a preponderance of the admissible, credible, persuasive evidence. Since I sat as the factfinder in this case, in assessing credibility I have applied the same standards that jurors are permitted to apply as set forth in CJI

– Civ. 3:16 (2019). For the following reasons, this Court finds Michael Joseph Roberts, Sr is in contempt for failing to comply with certain portion of this Court's January 24, 2019, Order Granting Motion to Amend and Motion for Preliminary Injunction ("1/24/19 Order" or "Plotz Order").

1. The Court finds Mr. Roberts had the ability to comply with numbered paragraph 1 of the 1/24/19 Order, and that he has not done so. That paragraph ordered Mr. Roberts to cease all actions, direct and indirect, that are inconsistent with the ownership of the Initial Property and the Mustapha Property by PdC through its subsidiary RCC, and with TMTBC's ownership of the Beach house. The testimony of Mr . Roberts as well as his attorney in Mexico, Mr. Juan Carlos Ramirez Garcia established that Mr. Roberts had Mr. Ramirez Garcia continue to file documents in Mexico in furtherance of foreclosure proceedings related to the above properties in direct violation of Judge Plotz's order.

2. The Court finds Mr. Roberts had the ability to comply with numbered paragraph 7 of the 1/24/19 Order, and that he has not done so. That paragraph ordered Mr. Roberts to instruct Mr. Juan Carlos Ramirez Garcia to immediately cease to appear or file any writ, brief of document of any nature as the agent or attorney-in-fact of RCC before any natural or legal person, public or private, administrative or jurisdiction authorities. The testimony of Mr. Roberts was that he did not comply with this order. Further the testimony of Mr. Juan Carlos Ramirez Garcia indicated that he, in fact, continued to file such documents at Mr. Roberts' request in Mexican Courts. That Mr. Ramirez Garcia did file such papers under Mr. Roberts orders, in contravention of the 1/24/19 Order, was corroborated by Mr. Benjamin Rosen, , a licensed attorney in Mexico and the United States.

3. The Court finds Mr. Roberts had the ability to comply with numbered paragraph 8 of the 1/24/19 Order, and that he has not done so. That paragraph ordered Mr. Roberts to revoke or terminate any purported power of attorney granted to any person, including Mr. Juan Carlos Ramirez Garcia, to act on behalf of RCC. The testimony by Mr. Roberts was that he did not comply with this order of the Court. Further, the testimony of Mr. Ramirez Garcia made clear that he continued to filed actions and pleadings in Mexican Courts on behalf of Mr. Roberts and RCC after 1/24/19. From this, this Court infers that Mr. Roberts did not revoke or terminate the power of attorney granted to Mr. Ramirez Garcia. The fact of the existence of such filings was corroborated by the testimony of Mr. Benjamin Rosen.

4. Mr. Roberts can purge this finding of contempt by:

   a. Transferring, fully, to RCC any ownership interest in the disputed properties (specifically identified in the 1/24/19 Order) that he has, and/or that any entity he has an interest in purports to have (specifically, but not limited to Logistics Mexico Desarrollos Inmobiliarios y Publicitarios S.A. de C.V—hereinafter "Logistics Mexico").

   b. Ceasing any and all actions in Mexico inconsistent with RCC's ownership rights in the disputed properties. This includes the filing of new actions as well as continuing to pursue actions that have already been filed.

c. Other that to transfer ownership rights of the disputed properties to RCC, Mr. Roberts and any entity in which he is a member (or in which he has an ownership interest) shall cease all actions in Mexico for damages against RCC, the cross-claimants, and/or the third-party plaintiff for alleged interference with his (or any entity's, including but not limited to Logistics Mexico's) ownership interest in the disputed properties. This includes the filing of new actions as well as continuing to pursue actions that have already been filed.

d. Mr. Roberts will terminate the authority of Messrs. Rodolfo Garcia Pliego, Juan Carlos Ramirez Garcia, and/or Elide Maria Meriggi Perez to do any legal work of any type on behalf of RCC.

5. Until the Court has been satisfied that conditions(a), (b), (c), and (d) above have been fulfilled, the following sanctions will be in place, effective January 8, 2020, until the contempt is purged:

   a. Mr. Roberts will be fined $1,000 per day.

   b. Mr. Roberts is to be held in the custody of the Denver County Sheriff.

6. Understanding that judicial proceedings in Mexico, as in the United States, can take a not-insignificant amount of time, Mr. Roberts may petition this Court to suspend the accrual of the daily fine and to release Mr. Roberts from custody once appropriate actions compliant with this Order have been filed in Mexico.

7. Mr. Roberts' attorney is hereby ordered to ensure that a copy of this order is delivered to Mr. Roberts, and further he is to read, or otherwise explain its contents to Mr. Roberts. The explanation may be done orally or via email if that is a method of communication he has used in the past to communicate with Mr. Roberts.

8. Since the October 11, 2019, show-cause hearing, cross-claim and third-party plaintiffs have provided this Court with additional argument, and evidence, that Mr. Roberts remains non-compliant with the 1/24/19 Order. They further allege that Mr. Roberts, in fact, is continuing to take affirmative actions contrary to Judge Plotz's Order as well as the orders the Court issued orally directly to Mr. Roberts on October 11, 2019. In issuing this order, the Court has not considered, nor relied upon in any way, the arguments and evidence submitted to in since October 11, 2019. The Court will consider taking action on the newly submitted information only when asked to do so and when that information is properly before this Court.

9. Mr. Roberts is to comply with all requirements of the 1/24/19 Order, which are incorporated herein and which remain in full force and effect. This Order is to be read *in pari materia* with the 1/24/19 Order. Further violations of the 1/24/19 Order, or failure to transfer ownership interest in the disputed properties to RCC may result in additional remedial or criminal contempt proceedings against Mr. Roberts.

10. Costs and reasonable attorney's fees in connection with the contempt proceeding are hereby authorized for work done on the motion for contempt citation up to and including the October 11, 2019, show cause hearing. Movants to file bill of costs/fees within 14 days.

DATED this Sixth day of January 2020.

BY THE COURT

Eric M. Johnson
District Court Judge

MOVANTS' EXHIBIT 12
Page 4 of 4

**Aple.Appx. 229**

<table>
<tr>
<td>

DISTRICT COURT
CITY & COUNTY OF DENVER
1437 Bannock Street
Denver, Colorado 80202

**Plaintiffs:**
RICHARD LANG

v.

**Defendants and Cross Claimants:**
TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL
VERTUCA, and PdC, LLC

And

**Third Party Plaintiff**
Riviera Country Club S. de R.L. de C.V. ("RCC")

**v.**

**Cross Claim Defendant:**
Michael Joseph Roberts, Sr.

And

**Third Party Defendants:**
Michael J. Roberts LLC,
Sandstone Ventures LLC

</td>
<td>

DATE FILED: June 19, 2020 1:21 AM
CASE NUMBER: 2015CV31828

▲ **COURT USE ONLY** ▲

Case Number:
2015CV31828

Courtroom: 409

</td>
</tr>
</table>

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS MATTER comes before the Court as a result of a bench trial held on January 24, 2020. The Court has reviewed all admitted evidence, the entire Court file, previous rulings, and all applicable case and statutory law. The Court makes the following findings of fact and conclusions of law and enter the following order for judgment.

All findings of fact and conclusions of law made herein are based on what has been found to be a preponderance of the admissible, credible, persuasive evidence. Since the Court sat as the factfinder in this case, in assessing

credibility it has applied the same standards that jurors are permitted to apply as set forth in CJI-Civ 3:16 (2019).

I.    Relevant Procedural History

On December 6, 2019, this Court, then presided over by the Honorable Kenneth Plotz, held an evidentiary hearing on a motion for preliminary injunction against Michael Roberts, and certain Roberts' entities (collectively known as the Roberts' Defendants or Third-Party and Cross Claim Defendants).

On January 2, 2020, all parties withdrew their demand for a jury trial on all issues and agreed to a sequence of bench trials on bifurcated issues. The parties, obviously using unearthly powers of persuasion, then bewitched the Court into agreeing to the suggested bifurcated series of bench trials. The initial issues for this Court to decide, it was agreed, would be the governance structure of the corporations involved in this matter, PdC, LLC (Pdc) and Riviera Country Club S. de R.L. de V.C. (RCC). The trial on that matter was held on January 24, 2020, where all parties were represented by counsel, though Cross Claim and Third-Party Defendant, Mr. Michael Roberts, Sr. (Mr. Roberts), choose not to appear. The trial proceeded, and the Court heard the testimony of five witnesses: Timothy Flaherty, Timothy Kneen, Carl Vertuca, Benjamin Rosen, and Juan Carlos Ramirez Garcia. During the trial, the Court admitted numerous exhibits as well as accepted evidence admitted during the preliminary injunction hearing pursuant to Colo. R. Civ. P. 65(a)(2).

II.   Findings of Fact

    a.    Governance of PdC

1. This action concerns the PdC's efforts to acquire and develop a beachfront resort on Xpu-Ha Beach, south of Playa del Carmen, Quintana Roo, Mexico. The plan was to acquire three adjacent parcels of land, referred to as Sereno I, II, and III. Defendants offered and sold investments in securities related to Sereno through PdC. Sereno I was the first parcel acquired by PdC when it was formed in or about 2007. PdC began attempts to acquire Sereno II and III starting in 2012.

2. PdC is a Colorado limited liability company. PdC has two subsidiaries: (a) PdC II, another Colorado limited liability company whose sole member is PdC, and (b) RCC.

3. Because Mexican law does not allow foreign nationals to directly own real estate located along Mexico's coastline, RCC was formed to own the land that PdC wanted to acquire and develop for the financial benefit of its members. RCC is limited liability company organized under Mexican law. Ex. 12.

4. RCC has two members, PdC and PdC II. PdC owns over 99% of RCC. PdC's wholly owned subsidiary PdC II owns the remaining less than 1% of RCC. RCC. *Id.*[1]

5. PdC appointed Messrs. Roberts, Kneen, and Flaherty as managers of its subsidiary RCC.

6. PdC has been governed by four different operating agreements. Both the Third and the Fourth Amended and Restated Operating Agreement of PdC, LLC, vested management authority in a board of managers. Exs. 42 and 43, both at ¶ 7.3.1.

7. PdC's Fourth Operating Agreement, executed in May 2012, selects Colorado law to govern the agreement, the rights and obligations of the parties to the agreement, and any claims or disputes relating to those matters. Ex. 43 ¶ 11.14.

8. By 2012 PdC required additional funding to obtain Sereno II and III. On May 25, 2012, another entity, RM Funding, was created to loan up to $6.7 million to PdC. The RM Funding operating agreement names the managers of RM Funding as Messrs. Flaherty, Kneen, Roberts, and Gui Cipriani. Ex. 46. Of the $6.7 million RM Funding raised to loan to PdC, $1.5. million was to be contributed from an entity called G Ventures, LLC, which was controlled by Mr. Cipriani. *Id.* Another $3 million was to be contributed by Ciro Properties, which was owned 50/50 by Mr. Cipriani and Mr. Roberts. *Id.*

9. At some point in May of 2012, PdC executed its Fourth Amended and Restated Operating Agreement of PdC, LLC. Ex. 43. This operating agreement provides that the initial voting managers would be Messrs. Tim Kneen, Tim Flaherty, and Mark Cooley, but that once "new loan financing has provided aggregate funds…in the amount of $5 million…the Class D member [RM Funding] shall cause the Current Managers to be replaced with the following Board of

---

[1] At trial all parties agreed that the less than ("<") and greater than (">") symbols were reversed in Ex. 12 and that the percentage ownership, as stated, are correct.

Managers nominated and elected by the Class D Members: Tim Kneen, Tim Flaherty, Mike Roberts, and Gui Cipriani." Ex. 43 ¶7.3.4(iii). The new loan financing was also referred to as the "Aggregate Funding." *Id.* RM Funding is the sole Class D member of PdC. Ex. A-2 of Exhibit 43. The Board of RM Funding was to be "initially composed of five (5) positions [sic]...Initially the Board shall consist of Tim Flaherty, Tim Kneen, Mike Roberts and Gui Cipriani." Exhibit 46.

10. The uncontroverted testimony by Messrs. Flaherty, Kneen, and Vertuca was that Mr. Cipriani never made any contributions to RM Funding or to PdC. Messrs. Flaherty and Kneen testified that the amounts Cipriani was to contribute were instead paid by Messer Flaherty, Kneen, Roberts, and, nominally, unnamed others.

11. Both Mr. Kneen and Mr. Flaherty testified specifically, and credibly, that in order to secure their agreement to provide additional funding (to make up for Mr. Cipriani's lack of funding), Mr. Roberts agreed with them that Mr. Cipriani would have no part in RM Funding or PdC, and, from that point forward, that PdC would have three managers (Flaherty, Kneen, and Roberts) and that a majority vote of those three would be required in order for PdC to act.

12. No evidence, testimonial or documentary, was provided to this Court by, or on behalf of, Mr. Cipriani. Messrs. Flaherty and Kneen testified that since 2012 they have neither seen nor heard from Mr. Cipriani. All evidence presented to this Court was that since failing to fund his portion of RM Funding, Mr. Cipriani has had nothing to do with RM Funding or PdC in any way.

13. Having orally agreed with Mr. Roberts to the above modification to the Fourth Operating Agreement, Messrs. Kneen and Flaherty then made the contributions that fulfilled the "aggregate funding" from RM Funding to PdC.

14. Mr. Vertuca testified that since the late 1990's he has been personal friends with Mr. Roberts, and that it was Mr. Roberts who got him involved with PdC. Since 2007, Mr. Vertuca has worked as the financial officer for PdC. His job included paying PdC's and RCC's bills, funding RCC through PdC, setting up various accounts, and, importantly, tracking all contributions made to PdC and RCC. Mr. Vertuca testified that except for some nominal amounts, RCC was 100% funded through contribution made to PdC.

15.     As to how PdC conducted itself, Mr. Vertuca was aware that Mr. Cipriani was, at one point, supposed to invest, but that no money received by PdC was ever paid by Mr. Cipriani.  Mr. Vertuca testified that Mr. Roberts never mentioned to him that Mr. Cipriani was to have any role in PdC, that at no time prior to this litigation has Mr. Roberts ever acted as if Mr. Cipriani was a manager of PdC, and that he was never asked to provide Mr. Cipriani any of the accountings that he has regularly provided to PdC managers since 2007.  He further testified that in his capacity as PdC's financial officer, that after 2012 his understanding was that the Board of Managers consisted of Messer Roberts, Kneen, and Flaherty.  Further, Mr. Vertuca testified that to the best of his knowledge there was never a notice of manager meeting issued under the Fourth Operating Agreement that included Mr. Cipriani, and, similarly, that to his knowledge no meeting of managers ever included Mr. Cipriani.  Mr. Vertuca was clear in his testimony that approval for every payment he made on behalf of PdC and RCC was authorized by a vote of only Messrs. Roberts, Kneen, and Flaherty.  On this issue he was explicit:  at no time did Mr. Roberts, or any other member or manager of PdC or RCC ever state, or suggest, that Mr. Cipriani's vote was needed; PdC operated at all times as a three-member Board of Managers.

16.     It was also uncontroverted that (a) the Fourth Amended Operating Agreement was never amended, in writing, to reflect Mr. Cipriani's ouster; and (b) at no time after Mr. Cipriani reneged on his obligation to fund RM Funding (and thus PdC) did Mr. Cipriani communicate with PdC or RM Funding.

17.     The testimony from all witnesses was that PdC operated with three managers, with the approval of two of three managers necessary to approve any action by PdC, at all times prior to, and after, the signing of the Fourth Operating Agreement.  For example, Mr. Vertuca testified that he would receive approval by Messrs. Flaherty, Kneen, and Roberts to pay taxes, permit fees, and other bills on behalf of PdC and RCC related to the Sereno II and III properties.  There was no testimony that Mr. Roberts ever objected to decisions being made solely by himself, Mr. Kneen, and Mr. Flaherty acting a three-person board of managers.

18.     The Fourth Operating Agreement, like the third, establishes that PdC's managers could be held liable for ""(i) for any breach of the Member or Manager's duty of loyalty to the LLC or its Members; (ii) for acts of omissions

Aple.Appx. 234

which involve gross negligence, reckless conduct, intentional misconduct, or a knowing violation of the law, or (iii) for any transaction from which the Member or Manager received any improper personal benefit." Ex. 43 ¶ 7.5; *see also* Ex. 42 ¶ 7.5. The agreement also provides that "no Member shall have any authority, right or power, by virtue of being a Member, to bind the LLC, or to manage or control, or to participate in the management or control of, the business and affairs of the LLC in any manner whatsoever." Ex. 43 ¶ 7.3.2.

      b.   <u>Governance of RCC</u>.

19.     Though a Mexican LLC, the parties have placed the governance structure of RCC before this Court. As all of PdC's purposes and goals are necessarily accomplished through RCC, this Court must make findings of fact specific to the governance structure of RCC and events that have taken place in Mexico.

20.     The oral and documentary evidence established that Messrs. Roberts, Kneen, and Flaherty held their positions as RCC Managers as designees of PdC.

21.     Regarding Sereno II and Sereno III, the evidence at the hearing on the preliminary injunction and at trial established that when these parcels were acquired by RCC from Mr. Mustapha Boudiz they were subject to a lien held by a Spanish company, Hoteles Turisticos Unidos, S.A. (Hotusa). Further, at the time of RCC's acquisition of the properties, Mr. Boudiz and Hotusa were in what was described by witnesses from both sides as "foreclosure litigation" in Mexican courts over the property. When it purchased Sereno II and III, the lien was intact, thus RCC acquired Mr. Boudiz's position as a defendant in the Hotusa foreclosure action and became owner of record of the properties. This much was admitted by all parties.

22.     The testimony of Messrs. Flaherty and Kneen, as well as exhibit 52, established that in December 2015, the board of managers of PdC, through RCC, discussed settling the foreclosure litigation with Hotusa. Messer Flaherty and Kneen were in support—and so voted--while Mr. Roberts was opposed. There was no evidence presented indicating that Mr. Roberts claimed that Messrs. Flaherty and Kneen lacked the necessary votes to approve the settlement or that they would need to seek Mr. Cipriani's vote to approve the settlement agreement.

23.    Eventually, in December 2015, Hotusa and RCC signed the settlement agreement.  Under the agreement, RCC would pay Hotusa $6.5 million, and in exchange Hotusa would release its liens against Sereno II and III.  The settlement agreement required RCC to make an initial $1 million payment to Hotusa.  Messrs. Flaherty and Kneen testified that they each loaned $500,000 to PdC so that RCC could make the initial settlement payment to Hotusa, and that the balance of the settlement amount was due to Hotusa on February 29, 2016, unless RCC made periodic extension payments of $250,000.  RCC paid several extension payments which moved the deadline to pay Hotusa the balance of the settlement funds to December 31, 2016.

24.    At this point, PdC realized that the balance would likely have to be funded by one of PdC's members.  Kneen and Flaherty testified that Mr. Flaherty agreed that he would loan $5.5 million to PdC to fund the payment by RCC to Hotusa, but that Mr. Robert's objected to this plan.  Mr. Roberts objected because if Mr. Flaherty paid Hotusa he and Mr. Kneen would insist that PdC (through RCC) sell the property quickly so that the members could cash out and end what had become a much longer process than anticipated; whereas Mr. Roberts thought PdC should continue to try to develop the property after the settlement.

25.    Thereafter, at a meeting held on December 13, 2016, Mr. Kneen met with Mr. Roberts at Mr. Roberts's office in Boulder, CO, to further discuss how PdC should move forward.  Mr. Vertuca testified that he attended this meeting in person and that Mr. Rosen participated by telephone.  At the meeting, Mr. Roberts again objected to Mr. Flaherty loaning PdC the money needed to pay Hotusa, and instead offered to loan the money to PdC himself so long as PdC would attempt to develop the property.  In the end, Messrs. Kneen and Flaherty agreed that Mr. Roberts would pay of Hotusa on behalf of RCC, and that in exchange RCC would grant Mr. Roberts six months to fund a development plan.  The complete terms and agreement of the parties was memorialized by Mr. Kneen in a contemporaneously created writing admitted as exhibit 50.  Mr. Vertuca testified that he watched Mr. Kneen write exhibit 50 and that each and every point of exhibit 50 was individually read over and approved by Mr. Roberts.

26.    Mr. Kneen testified that he made sure to go over each and every point individually with Mr. Roberts because (a) this was an important decision to PdC, and (b) he wanted to make certain that what he wrote was exactly what Mr. Roberts had agreed to.  He testified that Mr. Roberts "is a visual person"

and works better when he sees things in writing.  After the meeting, Mr. Rosen, in Mexico, sent emails to others to effectuate the agreement memorialized in exhibit 50.

27.    Again, there was no evidence presented that at any point anyone contemplated that Mr. Cipriani needed to be involved in these discussions or that his vote, or input, was needed or even sought by anyone.  On the contrary, the testimony of Mr. Vertuca, Mr. Kneen, and Mr. Rosen, buttressed by documentary evidence, show that all decisions were made by Messrs. Flaherty, Kneen, and Roberts; and that Mr. Cipriani's name was never mentioned.

28.    Exhibit 51 was accepted into evidence and indicates that before certain extension payments were due, Mr. Roberts was privately considering whether he "could skirt RCC and sign away their rights and position by using [his] power of attorney?"  This is relevant, because in late November 2016, and unbeknownst to Messrs. Flaherty and Kneen, Mr. Roberts purportedly granted a substitute power of attorney on behalf of RCC to Senior Juan Carlos Ramirez Garcia, Mr. Roberts's personal attorney.  Messrs. Flaherty and Kneen testified that they never gave Mr. Roberts permission to grant Snr. Ramirez a power of attorney.

29.    What happened after the December 13th meeting, in sum, is that on December 15, 2016, Sr. Ramirez, ignoring the emails from Mr. Rosen with instructions on how to effectuate the December 13th plan and using the power of attorney granted solely by Mr. Roberts, appeared in a Mexican court, purportedly on behalf of RCC, to have the settlement agreement between Hotusa and RCC judicially ratified.  Sr. Ramirez again appeared in a Mexican court on December 16, 2016, along with an attorney representing Mr. Roberts personally, and told the court that RCC had not paid the amount due to Hotusa, but that Mr. Roberts, personally, had paid.  The result being that Mr. Roberts managed to purchase Hotusa's position and stepped in to its shoes.  Messrs. Flaherty and Kneen did not know, nor did they authorize, Sr. Rodriguez to appear on behalf of RCC; neither did they know what Mr. Roberts was doing when he paid Hotusa, personally, instead on behalf of RCC and PdC.

30.    At other hearings, in open court, Mr. Roberts, personally and through his attorney, admitted his subrogation from Hotusa.  He has also admitted that he has continued the foreclosure proceedings against Sereno II and III.

31.     Messrs. Kneen and Flaherty did not learn what Mr. Roberts had done until after January 1, 2017—after the Christmas holiday in Mexico--when Mr. Rosen was able to access court records in Mexico. Once Messrs. Flaherty and Kneen learned that Roberts was attempting to foreclose on Sereno II and III, personally, they immediately took steps to try and stop his efforts and to secure the properties for RCC, and therefor PdC.

32.     Evidence was presented at trial that Mr. Roberts has exercised unilateral control over the property for himself, going to far as to hire armed guards to prevent the remaining managers of PdC, or their representatives, from accessing the property.

33.     Mr. Roberts did not appear or testify at trial.  However, he did testify at a hearing held on December 6, 2018, to consider Cross and Third-Party Claimants' Motion for Preliminary Injunction.  In particular, Roberts denied that any meeting was held on December 13, 2016, and he denied that he had any plan to convert either the Settlement Agreement with Hotusa to his own benefit or to take the properties for his own benefit.

34.     This Court has reviewed, and accepted, Mr. Roberts's testimony from the preliminary injunction hearing.  This Court finds the testimony of Messrs. Rosen, Kneen, and Vertuca is corroborated by the evidence of a contemporaneous email sent on December 14th from Mr. Rosen as well as by exhibits 50 and 51.  The same evidence undermines Mr. Roberts's testimony. Considering the evidence presented at trial, as well has Mr. Roberts's later admissions, the Court finds that Mr. Roberts's prior testimony at the preliminary injunction hearing was false. Exhibit 50 proves the December 13, 2016, meeting occurred; and exhibit 51 proves that Mr. Roberts was planning to "skirt RCC" and take the properties for his own benefit.

35.     This Court finds credible both trial exhibit 50, as well as Messrs. Kneen's, Vertuca's, and Rosen's testimony about the events that transpired at, and after, the December 13, 2016, meeting.

III.    Conclusions of Law

Beginning with RCC, Mr. Roberts's attorney has argued in pleadings and in court that the law of Mexico is that the majority capitol investor has the authority to act as the manager/agent of the entity.  Neither the testimony of Sr.

Ramirez nor Mr. Rosen support this argument. Further, the plain language of RCC's corporate documents indicate something else entirely.

In testifying about the limitations on the powers of a manager under Mexican LLC law, Mr. Rosen, a licensed attorney in both the U.S. and Mexico, explained that "powers of attorney, in general, in Mexico, are divided into several types:"

A. The broadest power is "power of attorney for acts of dominion or ownership." This power, he explained, is typically reserved to a board or, in the case of a sole manager LLC, to the sole manager. This "power of attorney" allows the board to, for example, sign away title to, encumber, or mortgage property.

B. The next level of power of attorney under Mexican law deals with "acts of administration" which he testified allows a person with this power to sign contracts and do things in the ordinary course of business other than conveying title to property, or mortgaging or encumbering property.

C. The next level allows a person handle matters associated with promissory notes and secured transactions.

D. The fourth level deals with lawsuits and collections.

Sr. Ramirez, testifying on behalf of Mr. Roberts, agreed to the accuracy of Mr. Rosen's basic outline of "powers of attorney" under Mexican law.

Translations of RCC's corporate documents were provided to the Court as exhibits D and 41. There are differences in the translations, but Sr. Ramirez and Mr. Rosen agreed that each was functionally accurate and complete, though Sr. Ramirez did prefer exhibit D's translation, and Mr. Rosen' preferred exhibit 41's. The Court will refer to exhibit D.

The "transitorial provisions" section of RCC corporate document indicates that Messrs. Roberts, Kneen, and Flaherty are the Managers of RCC "and are vested with all the authority contemplated in clause fourteen above." Exhibit D, Transitorial Provision One, roman numeral IV. Clause fourteen speaks to the authority of the managers and quotes articles 2554 of the Federal Civil Code of Mexico and article 1710 of the State Civil Code. These provisions reflect the levels of powers-of-attorney testified to by Mr. Rosen. Further, both articles 2554 and 1710 indicate if there is to be a limitation on the powers of managers to execute acts of ownership, "such restrictions shall be expressed." Exhibit D, clause fourteen.

RCC's corporate document does express a limitation to the power-of-attorney over acts of ownership—it provides that two managers, jointly, must agree for "[p]ower of attorney for acts of ownership and bind the company in transactions, that is to issue and underwrite negotiable instruments, and to become surety and guarantor" pursuant to Mexican laws related to negotiable instruments and credit transaction. Exhibit D, Transitorial Provision One, roman numeral IV(c). It further provides that for the managers to delegate powers, that is, "to grant powers-of-attorney," the approval of two managers is required. *Id.*

When asked, neither Mr. Rosen nor Sr. Ramirez indicated that there was any law in Mexico that would prevent RCC's managers from observing their fiduciary duties, imposed to PdC and PdC II by Colorado law, in exercising the authority granted to them as managers of RCC under Mexican law.

For the above-stated reasons, this Court holds that Mr. Roberts, acting alone, had no power under Mexican law, as evidenced by exhibit D, to appoint Sr. Ramirez to appear in a Mexican Court on behalf of RCC and that he had no authority to appoint Sr. Ramirez to make arguments in court relating RCC's ownership of Sereno II and III or the settlement agreement. This is because the granting of such power-of-attorney to Sr. Ramirez required the approval of two managers, and neither Messrs. Flaherty nor Mr. Kneen ever added their approval to Mr. Roberts's. Further, the arguments Sr. Ramirez made on behalf of RCC to further Mr. Roberts's interests were "acts of ownership" related to RCC ownership of the subject properties and its attempts to secure clear title to Sereno II and III.

The Court reaches the same conclusion when it analyses this situation under applicable Colorado law. As noted above, at all times and regardless of their number, PdC's managers have owed fiduciary duties, including a duty of loyalty, to PdC and its members. Ex. 43 ¶ 7.5; *See LaFond v. Sweeney,* 345 P.3d 932, 939 (Colo. Ct. App. 2012), aff'd 343 P.3d 939 (Colo. 2015).

A Delaware court has said that the duty of loyalty "requires an unselfish and undivided loyalty to the [company, which] demands that there shall be no conflict between duty and self-interest." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) (quoting *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939)). The *Weinberger* court was looking at a situation in which person held multiple directorships and went on to hold that "[t]here is no dilution of this obligation where one holds dual or multiple directorships, as in a parent-subsidiary

transaction." *Weinberger*, 457 A.2d at 710. Similarly, the Colorado LLC Act provides that an LLC's managers have a duty not to convert the business of the LLC for their own personal gain. Colo. Rev. Stat. § 7-80-404(1)(b).

Because Messrs. Flaherty, Kneen, and Roberts held their positions as managers of RCC by virtue of an appointment by PdC, and served as managers of RCC at the same time they served as managers of PdC and PdC II, they were bound by principles of Colorado fiduciary duty law and agency law to exercise their powers as managers of RCC for the benefit of PdC, PdC II, and their respective investors and stakeholders. *Weinberger*, 457 A.2d at 710 ("[I]ndividuals who act in a dual capacity as directors of two corporations one of whom is parent and the other subsidiary, owe the same duty of good management to both corporations"); *see also* Restatement of the Law (Third) – Agency § 8.01 ("An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship."); *see also MDM Group Assocs., Inc. v. CX Reinsurance Co. Ltd.*, 165 P.3d 882, 889 (Colo. App. 2007) (recognizing that "[i]n the principal agency context, it is the agent who owes a fiduciary duty to the principal as a matter of law").

Mr. Robert's fiduciary duty applied to his actions as a manager of RCC and as the holder of a power of attorney to act for PdC through RCC. As noted above, the holder of a power of attorney is obligated to exercise that power in the best interests of his principal.

This Court holds that under Colorado law, Mr. Roberts's attempt to foreclose on Sereno II and III for himself, at the expense of RCC and its parent PdC, which he pursued without informing or receiving the approval of PdC's other managers while using the settlement agreement that RCC executed with Hotusa, violated his fiduciary duties to PdC and its stakeholders.

The Court further holds that all RCC actions approved by Messrs. Flaherty and Kneen, jointly, were lawful, and thus enforceable, under both Mexican LLC law as described above, as well as under Colorado law considering the duties of loyalty owed by them to the LLC and its members. This includes Messrs. Flaherty and Kneen's authority to grant powers-of-attorney and to hire Mexican counsel to represent RCC's interests in Mexican courts.

As to PdC, this Court needn't determine whether it is controlled by three or four Managers in order to find that all actions taken unilaterally by Mr. Roberts's action were contrary to PdC's Fourth Operating Agreement. The

uncontroverted, and overwhelming, evidence is that no other manager of PdC gave Mr. Roberts authority or permission to take any action that furthered his attempts to pay Hotusa, personally, instead of on behalf of RCC. Mr. Roberts only had authority and permission to execute the plan evidenced by exhibit 50 as Mr. Roberts as well as Messrs. Flaherty and Kneen approved of that plan. Mr. Roberts had no authority to hire Sr. Ramirez on behalf of PdC or RCC, he had no authority to order Sr. Ramirez to represent RCC in a Mexican court to dispose of RCC's ownership interest in the subject properties, and he had no authority to take any other action he took unilaterally.

The Court now turns to the legality of the actions taken by PdC that were jointly authorized by Messrs. Flaherty and Kneen. The Court holds that the Fourth Amended and Restated Operating Agreement of PdC, LLC was modified such that the Mr. Cipriani was removed from the replacement board leaving a replacement board of three comprised of Messrs. Kneen, Flaherty, and Roberts. The modification was made by the remaining replacement managers after Mr. Cipriani defaulted on his obligation to provide any funding to PdC via RM Funding, and it is evidenced by the four-year course of performance from May 2012 to at least December 2016 when all PdC decisions were made by a two-manager majority out of three.

Despite the provision requiring that all modifications of Fourth Operating Agreement be in writing, a contract may be modified by oral agreement between the parties. *Colorado Inv. Servs., Inc. v. Hager*, 685 P.2d 1371, 1376–77 (Colo. App. 1984). This is consistent with the common law rule that "even where the contract specifically states that no non-written [modification] will be recognized, the parties may yet alter their agreement by parol. This rule stems from the notion that contracting parties cannot today restrict their power to contract with each other tomorrow." Calamari & Perillo, Contracts, 3rd Ed, §5-14(b), pg. 264 (internal citation omitted).

The only evidence presented was that Mr. Cipriani never paid anything to PdC or to RM Funding, and that as a result of his non-payment the other managers, including Mr. Roberts, agreed that Mr. Cipriani would have no part to play in either RM Funding or PdC. The Court finds this testimony credible as it is a logical reaction by the other parties, who had invested multi-millions, to not want their investment controlled by someone with no money at stake. Further, PdC's course of performance from 2012 forward confirms the modification of the Fourth Operating Agreement. At all times after May 2012, PdC operated as a three-manager LLC. Mr. Vertuca testified to this, as did

Messrs. Flaherty and Kneen.  Further, the documentary evidence clearly proves that Mr. Robert's himself acted in conformance with that modification to the operating agreement.[2]  *See, e.g.* exhibit 52.  Finally, there was no evidence presented to this Court that after defaulting Mr. Cipriani ever showed any interest in PdC whatsoever much less that he ever attempted to exercise any authority as a manager of PdC.  That established fact supports the testimony of Messrs. Flaherty and Kneen that they, along with Mr. Roberts, told Mr. Cipriani that he was "out" of RM Funding and PdC after he failed to fund and others had to make up that financial shortfall.  To this day, eight years later, no party has made this Court aware of evidence that would suggest that Mr. Cipriani believes himself to be a member or manager of PdC.  It is only now, in the face of this litigation, that Mr. Roberts has decided that Mr. Cipriani is to be considered a manager of PdC.  A self-serving epiphany to be certain.

IV.    Order

        For the reasons stated above, this Court hereby enters Orders consistent with the Court's holdings above.  Attorney for Defendant and Cross-Claimants and Third-Party Plaintiff are to coordinate with all other parties to set this matter for a one-hour status conference via Webex within the next two weeks.  Webex instructions will be issued to the parties prior to the status conference.

                **SO ORDERED** this Friday, June 19, 2020


                BY THE COURT:


                Eric M. Johnson
                District Court Judge


---

[2] Mr. Roberts's counsel did admit exhibit O, a 2015 email from Mr. Vertuca indicating that Mr. Cipriani's approval was not required so long as "we have the other three," but that email had to do with RM Funding, not PdC.  The modification of PdC's operating agreement was independent of anything that may or may not have happened with RM Funding, and the modification was proven by the uncontroverted testimony of Messrs. Flaherty and Kneen, the other managers of PdC, and a four-and-a-half-year course of performance, at a minimum, by Messrs. Flaherty, Kneen, and Roberts (May 2012 to December 2016).

DENIED BY COURT
04/10/2021

DATE FILED: April 10, 2021 5:15 PM
CASE NUMBER: 2015CV31828

| | |
|---|---|
| **District Court, City and County of Denver, State of Colorado**<br>1437 Bannock Street<br>Denver, CO 80202<br>720-865-8301 | |
| **Plaintiff**:<br>RICHARD LANG<br><br>v.<br><br>**Defendants and Cross Claimants**:<br>TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL VERTUCA and PdC, LLC<br><br>v.<br><br>**Cross Claim Defendant**:<br>MICHAEL JOSEPH ROBERTS, SR.<br><br>and<br><br>**Third Party Plaintiff**:<br>RIVIERA COUNTRY CLUB S. de R.L. de C.V.<br><br>v.<br><br>**Third Party Defendants**:<br>MICHAEL J. ROBERTS LLC and<br>SANDSTONE VENTURES LLC. | **ERIC MARTIN JOHNSON**<br>District Court Judge<br><br>▲ COURT USE ONLY ▲<br><br>Case No. 2015CV31828<br><br>Div. 409 |
| ***Attorneys for Cross Claim Defendant Michael J. Roberts, Sr***.<br>Richard B. Podoll, Atty. Reg. #8775<br>Robert A. Kitsmiller, Atty. Reg. #16927<br>Jacqueline E.M. Hill, Atty. Reg. #47789<br>Corrie Caler, Atty. Reg. #47435<br>PODOLL & PODOLL, P.C.<br>5619 DTC Parkway, Ste. 1100<br>Greenwood Village, CO 80111<br>Tel: (303) 861-4000<br>Fax: (303) 861-4004<br>rich@podoll.net<br>bob@podoll.net<br>jacqui@podoll.net<br>corrie@podoll.net | |
| **MOTION TO DECLARE ORDERS VOID AS VIOLATING ROBERTS'S CONSTITUTIONAL DUE PROCESS RIGHTS** | |

COMES NOW Michael J. Roberts ("Roberts") by and through his attorneys, Podoll & Podoll, P.C., and respectfully submits his Motion to Declare Orders Void as Violating Roberts' Constitutional Due Process Rights.

## CERTIFICATE OF CONFERRAL

Roberts's attorneys have conferred with counsel for Plaintiff, counsel for Cross Claimants, and counsel for Third Party Plaintiff, who oppose the relief requested in this Motion.

## I. INTRODUCTION

This Court has issued orders to compel Crossclaim Defendant Michael Joseph Roberts. Sr., ("Roberts") to abide by the injunction issued by the Court and for discovery violations even while Roberts was complying with the injunction. This Court at the urging of Cross-Claimants Flaherty, Kneen, Vertuca, PdC, LLC, and Third-Party Plaintiff Riviera Country Club, S. de R.L. de C.V. ("RCC," collectively referred to as "Claimants") has imposed a fine of $1,000 per day, has frozen Roberts's assets and issued a warrant for Robert's arrest.

These orders effectively precluded Roberts from participating in the hearings, presenting evidence, and advising the Court of the false testimony and revisionist history presented by Claimants. The resulting orders violated Roberts due process rights. Further, the Orders of this Court which purported to usurp the exclusive jurisdiction of Mexican courts, compel Roberts to take steps in the Mexican legal proceedings that he could not do, and then punish him for his non-compliance were beyond the jurisdiction of this Court.[1]

The purpose of the injunctive relief in this case was to protect the real property in Mexico and preserve the status quo pending a trial on the merits of the claim that Roberts usurped a

---

[1] Subject matter jurisdiction is addressed in a separate brief filed contemporaneously herewith.

**MOVANTS' EXHIBIT 22**
**Page 2 of 15**

Aple.Appx. 245

corporate opportunity. Roberts purchased the lien that would have foreclosed all of the real property of RCC and its affiliates. RCC would have lost all properties two hours after Robert's paid Hotusa. There is no evidence that Kneen or Flaherty took any steps to save RCC's property other than proposing terms to Roberts that included Roberts paying Hotusa. Roberts never agreed to these terms, many of which would have needed to be worked out at a later date.

At the present time RCC owns the properties, and Roberts stands in the position of a lien creditor. Therefore, Roberts has not violated the preliminary injunction and the status quo has been maintained. The portions of the injunction which commanded Roberts to terminate the authority of his counsel and take no further action in the Courts of Mexico ignored Mexican law and commanded Roberts to take actions precluded by Mexican law.[2] Despite the hyperbole and histrionics of Claimants, the alleged failure by Roberts to abide by this Court's Preliminary Injunction Order is based upon immaterial conduct and ignores the law in Mexico.

Although RCC continues to hold title to the real estate and with the status quo thus maintained, this Court issued orders to compel Roberts to take actions which were precluded by Mexican law, and which he could not do. The contempt orders of this Court were not merely improvidently granted, they were procedurally improper, denying Roberts his due process rights.

## II. PROCEDURAL BACKGROUND

Judge Plotz held a hearing on the issuance of a preliminary injunction order on December 6, 2018. The oral order commanded Roberts, and all others acting in concert with him, to cease all actions that are inconsistent with PdC's ownership of the initial property, Mustapha property, and

---

[2] The provision of the injunction with which Roberts had no ability to comply are analyzed by Roberts's expert, David Lopez, which analysis is incorporated in Roberts's Motion to Vacate Orders Based Upon Lack of Subject Matter Jurisdiction.

**MOVANTS' EXHIBIT 22**
**Page 3 of 15**

Aple.Appx. 246

with TMTBC, LLC's ownership of the beach house and includes all direct or indirect actions that are inconsistent with PdC's ownership. (Trans. 12/6/2018 Hearing at pp. 203-206.) Subsequent to the hearing Claimants filed an expansive written Temporary Injunction Order that was granted on January 24, 2019, by the Court.

Claimants alleged that Roberts violated the Temporary Injunction Order. Claimants failed to personally serve Roberts with the affirmation and exhibits, not putting him on sufficient notice of the contempt allegations and the purported evidence against him.

The Court conducted a hearing on the allegations and found Roberts in contempt, finding that Roberts and his attorney in Mexico, Juan Carlos Ramirez Garcia ("Juan Carlos") continued to file documents in furtherance of the Foreclosure Case, continued to appear in Mexican courts on behalf of RCC and that Roberts failed to revoke or terminate Juan Carlos's power of attorney and that Juan Carlos continued to file documents in Mexican courts on behalf of RCC and Roberts. *See* Order Re: Contempt Citation issued to Michael J. Roberts, Sr. (Jan. 6, 2020), at 2." This Court ordered punitive sanctions imposing a $1,000/day fine and issuing an arrest warrant for Roberts.

This Court also erred in issuing the Order of Contempt and imposing remedial sanctions as the purge clause inappropriately incorporated allegations raised in pleadings filed by the Claimants after the October 11, 2019 contempt hearing. The Court failed to afford Roberts due process with respect to these additional allegations.

### III. ARGUMENT

#### A. STANARD OF REVIEW

A Court may grant a party relief from a judgment at any time which is void because of lack of jurisdiction or for a violation of procedural due process pursuant to C.R.C.P. 60(b)(3).

4

*McGuire v. Champion Fence & Contrst., Inc.*, 104 P.3d 327, 329 (Colo.App. 198)(citing *Rainsberger v. Klein*, 5 P.3d 351 (Colo. App. 1999)); *see also Werth v. Heritage Int'l Holdings*, 70P.3d 627, 629 (Colo.App. 2003) (citing *First National Bank v. Fleisher*, 2 P.3d 706 (Colo. 2000)). C.R.C.P. 60 is not a substitute for appeal, but instead is meant to provide relief in the interest of justice in extraordinary circumstances. *Harriman v. Cabela's Inc.*, 371 P.3d 758, 761 (Colo.App. 2016). Roberts is raising challenges to the Order for Contempt and Order Reducing On-Going Remedial Fines to Judgment pursuant to both C.R.C.P. 60(b)(3) and (5).C.R.C.P. 60 states, in pertinent part, "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons…3) the judgment is void…and… (5) any other reason justifying relief from the operation of the judgment."

**B. THE COURT VIOLATED ROBERTS PROCEDURAL DUE PROCESS RIGHTS BY ISSUING A CITATION THAT FAILED TO COMPLY WITH THE REQUIREMENTS OF C.R.C.P. 107**

The Court should have denied the Motion for Contempt. It was based upon the Affirmation of Mr. Rosen which was deficient in substance and form. Mr. Rosen's Affirmation failed to include any basis of knowledge or notice of the preliminary injunction order which is necessary for the affidavit to establish a prima facie case, if proven, of contempt. Further, the Affirmation failed to comply with the requirements of C.R.C.P. 108. It was never notarized nor sworn before a judicial officer. The law is clear, that an affidavit or verified motion is required for the Court's jurisdiction over allegations of indirect contempt to attach. These defects in the Affirmation, should have caused the Court to deny the Motion for Contempt. Instead the Court issued a Show Cause Citation in violation of Roberts's procedural due process rights.

5

The Colorado Supreme Court has "repeatedly held that compliance with the procedure governing contempt matters is essential before jurisdiction to punish for contempt attaches." *Urbancich v. Mayberry*, 316, 236 P.2d 535, 538 (Colo. 1951). The Judgment of indirect contempt must be vacated because the Court failed to comply with the procedural requirements of C.R.C.P. 107, denying Roberts his right to due process. Specifically, the affidavit on which the contempt citation relied was fatally deficient.

In order to initiate an indirect contempt proceeding, a Motion for Contempt must be supported by an affidavit that establishes a prima facie case for contempt. *See Knox v. Knox*, 517 P.2d 1350, 1352 (Colo.App. 1973). Rosen's Affirmation failed to establish that Roberts had notice or knowledge of the underlying temporary preliminary injunction. Notice or knowledge is a fundamental requirement of an affidavit to establish indirect contempt and for the jurisdiction of the Court to attach to the contempt proceedings.[3] *Id*. In *Knox*, the Court specifically states

> "[t]o invoke the jurisdiction of the court in cases of constructive contempt, the affidavit supporting the motion for citation for contempt must state allegations of fact which, if established, constitute the offense. (The affidavit initiating a proceeding for contempt for violation of an order or decree of a court **is fatally defective unless it alleges that the contemnor had notice or knowledge of the existence of the order** at the time he is claimed to have violated it. The ultimate aim of such requirements is to notify the alleged contemnor of the nature of the charge so that he may prepare a proper defense. *Id*. (internal cites omitted). [*Emphasis added.*]

The issue in *Knox* was whether or not an affidavit for contempt sufficiently alleged that Mr. Knox had knowledge of the custody and visitation orders issued as part of a divorce degree.

---

[3] Although the affidavit must establish notice and/or knowledge of the court order, the Court need not find a willful violation of that order to impose remedial sanctions. *In re Marriage of Cyr*, 186 P.3d 88, 92 (Colo.App. 2008).

**MOVANTS' EXHIBIT 22**
**Page 6 of 15**

Aple.Appx. 249

In that case, the affidavit stated Mr. Knox "willfully" violated the provisions of the decree. The Court held that element of knowledge was met by the use of "willfully" within the affidavit and was sufficient to invoke the jurisdiction of the court. *Id.*

Here, the Affirmation fails to establish any notice or knowledge that Roberts had of the temporary injunction order. Only paragraph 5 of the Affirmation references the injunction, but fails to state, much less establish, any sufficient basis of notice or knowledge of the temporary injunction order by Roberts. Paragraph 5 of the Affirmation states:

> All Roberts' filings described below and in Schedule 1 and the exhibits were made **after** this Court issued a ruling from the bench "enjoin[ing] Roberts and all others acting in concert with him, to cease all actions that are inconsistent with PdC's ownership of the property." Affirmation of Benjamin Rosen. *Emphasis added.*

Unlike the affidavit in the *Knox* case, Mr. Rosen's Affirmation makes no assertion that Roberts was advised, put on notice, served or had any other actual or constructive knowledge of the order.

## C. THE AFFIDAVIT WAS NOT NOTARIZED.

Because indirect contempt occurs outside the presence of the court, a court may issue a contempt citation only when it appears by motion and affidavit that contempt has been committed. C.R.C.P. 107(c). The affidavit must comply with C.R.C.P. 108. In this case, the Motion for Contempt was supported by Rosen's Affirmation which is not notarized as required by C.R.C.P. 108 (2019). Consequently, the Court was without any legal authority to issue a contempt citation. *Thomas v. People*, 23 P. 326, 327 (Colo. 1890).

MOVANTS' EXHIBIT 22
Page 7 of 15

The Motion for Contempt was filed on April 22, 2019. The 2019 version of C.R.C.P. Rule 108 controls the form of an affidavit. Specifically, C.R.C.P. 108 (2019)[4], stated: "An affidavit may be sworn to either within or without this state before any officer authorized by law to take and certify the acknowledgment of deeds conveying lands." The 2020 changes to the rule are not retroactive and are therefore not applicable to the determination of the validity of the affirmation in this case. *See* C.R.C.P. 108 (2020). In order to comply with the requirements of C.R.C.P. 108, the annotations of Rule 108 further clarify that "officers authorized to take acknowledgments of deeds" are public notaries. *See* C.R.S. §§ 24-12-104, 24-12-105, and 38-30-126 to 38-30-135.

In this case, the Affirmation submitted contains no certificate of notarization. The record is devoid of any indication that Mr. Rosen swore or affirmed his Affirmation under oath by any judge, magistrate, referee, court clerk or deputy court clerk. The Affirmation does not comport with the requirements of C.R.C.P. 108. *See Comm. for Better Health Care for All Colo. Citizens v. Meyer*, 830 P.2d 884, 894, (Colo. 1992). It is an invalid affidavit and cannot support a Motion for Contempt pursuant to C.R.C.P. 107.

By issuing the Show Cause Citation without a sufficient basis to do so, this Court exceeded its jurisdiction over Roberts. The order is void. The Court must vacate the Order for Contempt, rescind the order of remedial sanctions, and vacate the subsequent order converting the fines accrued to a judgement in favor of the Claimants.

---

[4] This rule was amended on March 5, 2020. The changes were effective March 5, 2020. The current amendment allows for unsworn declarations that comply the requirements of C.R.S. § 13-27-101 *et seq*., but that is not applicable to the proceedings in this case.

8

Aple.Appx. 251

## D. THE COURT AUGMENTED ITS ORDER FOR CONTEMPT WITH FILINGS SUBSEQUENT TO THE CONTEMPT HEARING

The Court violated Roberts's rights to due process by incorporating subsequent pleadings of the Claimants' into remedial sanctions and the purge clause in the order of contempt. On April 22, 2019, the Claimants' filed a Motion for Contempt which outlined 8 specific allegations for contempt of court[5]. The Motion for Contempt does not make any allegations that Roberts violated the preliminary injunction order for seeking damages against RCC in relation to the Mexican foreclosure proceedings. In addition, the Motion for Contempt was not modified to include any additional allegations prior to the October 11, 2019 hearing.

After the October 11, 2019, contempt hearing, Claimants' filed three (3) additional status pleadings related to allegations of continued contempt. These were not personally served on Roberts nor was a show cause date set to address these allegations. On December 23, 2019, Claimants filed an Emergency Supplement to the Cross-Claimant's Motion for Issuance of a Contempt Citation. It is in this pleading that Claimants first raise an issue of Roberts's seeking Damages against RCC in relation to the Mexican foreclosure proceedings. In fact, the motion states that this claim filed in Mexico was not filed until December 16, 2019, two months after the contempt proceedings in this case. *See* Emergency Supplement to Contempt.

---

[5] The allegations in the original Motion for Contempt are: (1) acting in a manner inconsistent with the ownership of the Properties; (2) appearing on behalf of RCC through his agent Ramirez; (3) interfering with or hindering the sale or promotion of the Properties; (4) holding himself out as an owner or person who controls, directs, manages, and/or administers RCC by allowing Ramirez to continue to file 37284276.2 7 motions and briefs before the courts in Mexico on behalf of RCC; (5) taking action to assert himself as a subrogated creditor of RCC through his agents Ramirez and Garcia Pliego; (6) failing to instruct Ramirez and Garcia Pliego to immediately cease to appear as the agent or attorney-in-fact of RCC; (7) failing to revoke or terminate Ramirez's purposed power of attorney to represent RCC; and (8) failing to remit the order to the competent Mexican judicial authority.

9

Aple.Appx. 252

The Court issued an order to address the emergency supplement and a hearing was held on January 2, 2020. None of the notice requirements of C.R.C.P. 107(c) were followed related to the Emergency Supplement.

On January 6, 2020, the Court found that Roberts had violated the temporary injunction order in three ways: (1) by continuing to pursue the foreclosure proceedings, (2) failing to instruct Juan Carlos to cease to appear on behalf of RRC, and (3) for failing to revoke the Juan Carlos power of attorney. The Court's order refers to specific violation of the Temporary Injunction Order, not to the allegations of the Motion for Contempt. The Court, in paragraph 8 of the Order on Contempt, specifically stated, "In issuing this order, the Court has not considered, nor relied upon in any way, the arguments and evidence submitted to in since October 11, 2019." However, the Court's purge clause clearly contradicts this. The Court incorporated a remedy directly related to the December 23, 2019 Emergency Supplement pleading into the purge clause. In paragraph 4, subparagraph c, which is part of the purge clause, the Court's Orders states:

> c. Other that [sic] to transfer ownership rights of the disputed properties to RCC, Roberts and any entity in which he is a member (or in which he has an ownership interest) ***shall cease all actions in Mexico for damages against RCC***, the crossclaimants, and/or the third-party plaintiff for alleged interference with his (or any entity's, including but not limited to Logistics Mexico's) ownership interest in the disputed properties. This includes the filing of new actions as well as continuing to pursue actions that have already been filed. *Emphasis added.*

It is clear the Court did in fact consider, and also relied upon, the subsequent pleadings in crafting the Court's Order. Roberts, in order to purge the contempt, was required to take affirmative action resulting from the allegations raised in the Emergency Supplement.

10

In *Wright v. District Court of Second Judicial District*, 561 P.2d. 15, (Colo. 1977), the Court held that since the purpose of the contempt citation is to give the defendant notice of the charge, the defendant cannot be convicted under a citation of any contempt other than that charged. *Id.* It logically follows that a defendant cannot be convicted or punished for a charge not brought forth in the contempt citation. Roberts had no notice or hearing on whether or not his filing of a damages suit was a violation of the Court's Temporary Injunction Order or whether or not the filing of a damages suit was in fact against the ownership interest of the property in Mexico. In addition, Roberts was unable to present evidence or defenses on whether or not he has the ability to perform the Court's requirement.

The sanctions in this case are severe. They include a $1,000/day fine and imprisonment until Roberts complies. These sanctions require Roberts to comply with paragraph 4, subparagraph c, to purge the contempt found by the court. Requiring Roberts to comply with an order for which he had no notice or hearing, or face fines or imprisonment, is an egregious violation of his right to due process and an erroneous deprivation his rights to property and liberty.[6] Furthermore, striking subparagraph c of paragraph 4 does not cure this deprivation of due process. In this case the Court did, to an unknown extent, rely on and incorporate the subsequent pleadings into the order on contempt and the purge clause crafted by the Court. It is impossible to delineate which of the Court's findings were based on the initial hearing and which were unduly influenced by the subsequent pleadings. Despite the questionable legal basis for the order to terminate the damages

---

[6] Further, as explained in the Affidavit of David Lopez, Exhibit A, Roberts did not have the ability to comply with the Court's Order, nor did the Court have authority under Mexican law to force Roberts to compel the Mexican Court to cease all actions in the foreclosure case. (*See* Lopez Affidavit, p. 3.1)

MOVANTS' EXHIBIT 22
Page 11 of 15

Aple.Appx. 254

claim, Roberts has substantially complied with the Court's Order on Contempt including, but not limited to, requesting to withdraw from the enforcement action including withdrawing the damages claim against RCC. (Lopez Aff. ¶4.2.)[7]

Since it is unclear to what extent the subsequent pleadings tainted the Order of Contempt which imposed remedial sanctions on Roberts, the only appropriate remedy is that the sanctions should be rescinded, and the contempt order vacated. Roberts's rights to due process were largely ignored. Pursuant to C.R.C.P. 60(B)(3), the Order of Contempt, the remedial sanctions, and the subsequent Judgements should be voided for lack of jurisdiction and violation of due process.

### E. THE ARREST WARRANT ALSO PREVENTED ROBERTS FROM MEANINGFUL PARTICIPATION IN THE BIFURCATED TRIAL.

The warrant for Roberts's arrest and the Order of Contempt further denied Roberts's due process rights by preventing him from meaningfully participating in the January 24, 2020, corporate governance trial. *See Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)(" Right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society"). Due process requires at a minimum that there be notice and an opportunity to be heard at a meaningful time and in a meaningful manner. This insures fairness and protection from an arbitrary or mistaken deprivation of property. *First Bank v. State, Dep't of*

---

[7] The Affidavit of David Lopez is attached hereto as Exhibit A. Mr. Lopez is an expert in the law of Mexico. He has reviewed, among other documents in this case and the case(s) in Mexico, this Courts orders, particularly Judge Plotz's Order granting a motion for Preliminary Injunction and Judge Johnson's order holding Roberts in contempt for failing to comply with the Preliminary Injunction ¶¶ 1, 7 and 8.

12

*Regulatory Agencies, Div. of Banking*, 852 P.2d 1345, 1351 (Colo.App. 1993) (*citing Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).

The Court denied Roberts's request to quash or stay the arrest warrant the day before the trial on corporate governance. This effectively precluded Roberts from meaningfully participating in the trial. Roberts was unable to present evidence or assist in the defense against the merits of the governance at trial. Had the warrant been quashed, he would have participated in the bifurcated trial. (*See* TR. Trans. 1-24-2020, Exhibit B hereto, at p.3, lines 9-13.

Meaningful participation as required by due process, includes the requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. *Whiteside v. Smith*, 67 P.3d 1240, 1258, (Colo. 2003)(*citing Boddie v. Connecticut*, 401 U.S. 371, 379, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971)). A court must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause. *Id.* Because the Court proceedings were conducted in violation of Roberts's rights to due process the Court orders from those hearings must be vacated.

## IV. CONCLUSION

The Court found Roberts to be in contempt and issued extreme orders to compel compliance with the Court's injunction. Roberts substantially complied with the injunction but could not satisfy mandatory commands which were precluded by the law of Mexico. Still, the intent of the injunction to preserve the status quo pending trial upon the claim of usurpation of corporate opportunity was maintained. Title to the properties remains in RCC.

**MOVANTS' EXHIBIT 22**
**Page 13 of 15**

Aple.Appx. 256

The extreme orders entered by the Court largely to compel Roberts to take actions prohibited by the Court in Mexico violated Robert's right to due process. The motion for contempt was based upon an acknowledgment of Claimant's Mexican counsel which was not notarized. The contempt Order was based upon assertions made subsequent to the motion for contempt and those allegations were not properly served upon Roberts. The effect of the contempt Order prevented Roberts from meaningfully participating in trial. In these proceedings, Roberts's rights to due process were essentially ignored. The contempt Order must be vacated.[8]

Respectfully submitted this 13th day of December 2020

PODOLL & PODOLL, P.C.

By: /s/Richard B. Podoll

Richard B. Podoll, Reg. #8775
Robert C. Podoll, Reg. #8776
Robert A. Kitsmiller, Reg. #16927
Jacqueline E.M., Reg. #47789
Corrie Caler, Attorney Reg. #47435

---

[8] Roberts is filing separate motions to vacate the judgment against Roberts for Breach of Fiduciary Duty and to vacate the pre-judgment attachment.

Aple.Appx. 257

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Colorado Courts E-filing system this 13th day of December 2020, addressed to:

***Attorney for Defendant-Cross-Claimants***
William Leone, Atty. Reg. #11403
NORTON ROSE FULBRIGHT US LLP
1125 Seventeenth Street, Suite 3050
Denver, CO 80202
Tel: (212) 318-3324
William.leone@nortonrosefulright.com

***Attorneys for Plaintiff Richard Lang***
Phillip A. Parrott, Atty. Reg. #11828
Margaret R. Pflueger, Atty. Reg. #39780
CAMPBELL KILLIN BRITTAN & RAY, LLC
270 Saint Paul Street, Ste. 200
Denver, CO 80206
pparrott@ckbrlaw.com
mpflueger@ckbrlaw.com

***Attorneys for Michael J. Roberts, Sr., and Michael J. Roberts, LLC***
Otto K. Hilbert, II, Atty. Reg. #18363
OTTO LAW
The Masonic Building
535 16th Street Mall, Suite 810
Denver, CO 80202
Tel: (303) 324-3748
otto@otto.law

By:   _/s/Samantha J. McKinley_____
        Samantha J. McKinley

15

DENIED BY COURT
04/10/2021

DATE FILED: April 10, 2021 5:19 PM
CASE NUMBER: 2015CV31828

| | |
|---|---|
| District Court, City and County of Denver, State of Colorado<br>1437 Bannock Street<br>Denver, CO 80202<br>720-865-8301 | **ERIC MARTIN JOHNSON**<br>District Court Judge |
| **Plaintiff**:<br>RICHARD LANG<br><br>v. | |
| **Defendants and Cross Claimants**:<br>TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL VERTUCA and<br>PdC, LLC<br><br>and | ▲ COURT USE ONLY ▲ |
| **Third Party Plaintiff**:<br>RIVIERA COUNTRY CLUB S. de R.L. de C.V.<br><br>v. | Case No. 2015CV31828<br><br>Div. 409 |
| **Cross Claim Defendant**:<br>MICHAEL JOSEPH ROBERTS, SR.<br><br>and | |
| **Third Party Defendants**:<br>MICHAEL J. ROBERTS LLC and SANDSTONE VENTURES LLC. | |
| ***Attorneys for Cross Claim Defendant Michael J. Roberts, Sr***.<br>Richard B. Podoll, Atty. Reg. #8775<br>Robert A. Kitsmiller, Atty. Reg. #16927<br>Jacqueline E.M. Hill, Atty. Reg. #47789<br>Corrie Caler, Atty. Reg. #47435<br>PODOLL & PODOLL, P.C.<br>5619 DTC Parkway, Ste. 1100<br>Greenwood Village, CO 80111<br>Tel: (303) 861-4000<br>Fax: (303) 861-4004<br>rich@podoll.net<br>bob@podoll.net<br>jacqui@podoll.net<br>corrie@podoll.net | |
| **MOTION TO VACATE BREACH OF FIDUCIARY DUTY FINDING AND TO VACATE<br>DECEMBER 21-22, 2020 DAMAGES HEARING** | |

Defendant Michael J. Roberts, Sr. ("Roberts"), by and through his attorneys Podoll &

Podoll, P.C., hereby submits this Motion to Set Aside Judgment on Plaintiffs claim for breach of

fiduciary duty as follows:

## Certificate of Conferral

Roberts's attorneys have conferred with counsel for Plaintiff, Counsel for Cross-Claimants, and counsel for Third-Party Plaintiff who oppose the relief requested in this Motion.

## I. INTRODUCTION

The Court's order of judgment on the breach of fiduciary duty cross-claim against Roberts was entered without notice and an opportunity to be heard. The order was entered in violation of Roberts's due process rights and is therefore void. It was also entered based on an error of law governing fiduciaries and based on an unenforceable and factually unsupported agreement to agree. Because the judgment for breach of fiduciary duty is void, the hearing on damages set for December 21-22, 2020 must be vacated.

## II. FACTUAL BACKGROUND

The facts giving rise to this suit are laid out in Roberts's Motion for Emergency Hearing and will not be repeated here. Roberts incorporates those facts by this reference. C.R.C.P. 10(c).

## III. PROCEDURAL HISTORY

### A.    This Litigation

The instant lawsuit involves, *inter alia*, claims by Flaherty and Kneen that Roberts breached his fiduciary duties to RCC and PdC by paying Hotusa and assuming its lien position in December 2016. The case presented complexities including the corporate structure and international law conflicts about corporate governance. The Court indicated it would first consider issues of corporate governance and consider issues regarding the parties' performance and any breaches of fiduciary duty at a later date. (*See* 01/02/20 Minute Order.)

2

Aple.Appx. 260

**B.** **The Corporate Governance Hearing**

    1.    <u>The Scope of the Bifurcated Hearing</u>

The corporate governance hearing was held on January 24, 2020 (the "Governance Hearing"). Roberts was effectively precluded from testifying at the hearing by the Court's refusal to suspend an unjustified and procedurally defective arrest warrant. (*See* Motion to Declare Orders Void as Violating Roberts's Constitutional Due Process Rights, filed contemporaneously herewith.) The Court denied Roberts's motion to suspend the arrest warrant the day before trial, ensuring that Roberts could not participate.

At the start, the Court reconfirmed that the scope of the hearing was limited to corporate governance issues. (*See* Governance Hearing Transcript at 10:2-6, Exhibit A, hereto) ("Court:…in my mind governance just meant what document controls, what are the basic rules, and then we would be getting in – into issues of performance, and lack of performance and breaches of duties at a second, at a, at a different hearing."). This was also Roberts and his counsel's understanding. (*Id*. at 10:9-10.) In limiting testimony, the Court affirmed that "[w]e're talking governance issues at this point…so let's not get too far astray." (*Id*. at 265:10-14.)

At the conclusion of the hearing, the Court explicitly asked each of the parties' counsel to confirm the scope of the hearing. Counsel for Lang, Mr. Parrot, affirmed that the Court should answer the questions of "who governs RCC, who governs PdC" (*Id*. at 312:5-313:8.) Counsel for Flaherty and Kneen, Mr. Leone, asked the Court to address the powers of the managers versus the owners under the RCC and PdC bylaws. (*Id*. at 313:13-314:25.) Counsel for Roberts, Mr. Mattson, confirmed that those issues were the extent of the intended scope of the hearing. (*Id*. at 315:1-7.)

**MOVANTS' EXHIBIT 23**
**Page 3 of 13**

Aple.Appx. 261

2.    <u>Limited Testimony Presented at the Governance Hearing About RCC's Ability to Satisfy the Hotusa Loan</u>

At the hearing, Flaherty vaguely testified about his attempts to finance the payment due under the Hotusa settlement prior to December 2016 to keep the property from foreclosure. (Tr. 01/24/20 147:21-148:1; 148:24-149:3.) Because the stated purpose of the Governance Hearing was to determine corporate governance, Roberts's attorney did not press the issue of whether Flaherty or Kneen could show that funds were available to RCC to make this payment, or what the source of those funds would have been. (*See id.* at 153-169; 211-227.) Cross Claimants neither testified nor otherwise demonstrated that RCC would have been able to procure the funds needed to make the Hotusa payment by December 16, 2016.

**C.    The Court's June 2020 Judgment**

Despite the explicitly limited scope of January 2020 hearing, and the agreement of the parties on the record, the Court issued an Order finding that Roberts had ***breached*** his fiduciary duties to PdC by making the settlement payment, acquiring the Hotusa lien position and attempting to foreclose. (Findings of Fact and Conclusions of Law—Phase 1, 06/19/20).

**IV. Argument**

The June 2020 Order adjudicated issues outside the scope of the Governance Hearing and violated Roberts's due process rights. Every case has two stories. Here, Roberts has a right under Colorado law and a constitutional due process right to be heard and to have his story told. He was deprived of this opportunity.

Moreover, the breach of fiduciary duty judgment rests upon misapplication of the law governing the obligation of an LLC member not to usurp a company opportunity. The limited testimony at the Governance Hearing did not show that RCC had the financial ability to timely

4

Aple.Appx. 262

pay the Hotusa Loan. Therefore, it was improper for the Court to find that Roberts breached his fiduciary duty to RCC or PdC by personally paying Hotusa and acquiring Hotusa's lien position.

A cornerstone of the finding of breach of fiduciary duties was the determination that unsigned, handwritten notes, which included multiple "agreements to agree" was somehow a binding contract. An agreement to agree is unenforceable under Colorado law and cannot support a breach of fiduciary duty judgment. Contemporaneous emails demonstrate that no agreement was reached.

The judgment for breach of fiduciary duty must be vacated and a trial on the fiduciary claims must be set. Further, this Court set a hearing on December 21, 2020, to determine damages resulting from Roberts's purported breach. Since no trial has been held on the breach of fiduciary duty claims, a trial on damages is premature.

## A. Standards for a Request to Vacate a Non-Final Order

"[A]ny order, however designated, which adjudicates fewer than all the claims is subject to revision at any time before entry of judgment adjudicating all the claims." *Forbes v. Goldenhersh*, 899 P.2d 246, 247 (Colo. App. 1994) The Court has the power to vacate its findings on the breach of fiduciary duty claim under its inherent power to alter interlocutory judgments. C.R.C.P. 121 § 1-15(11).[1]

---

[1] Because the June 2020 Order was not a final judgment, the requirements of C.R.C.P. 59 and 60 do not apply. *See United Bank of Boulder, N.A. v. Buchanan*, 836 P.2d 473, 476 (Colo. App. 1992) ("C.R.C.P. 60(b) applies to "relieve a party [from] a *final* judgment, order or proceeding.") (emphasis original); *Berry v. Westknit Originals, Inc.*, 145 Colo. 48, 49, 357 P.2d 652, 653 (1960) ("judgment or decree is not final which determines the action as to less than all of the defendants…").

5

5

Aple.Appx. 263

**B.** **The Order Finding Roberts Breached his Fiduciary Duties Is Void Because it Was Entered Without Notice or an Opportunity to Be Heard and Violated Roberts Right to Due Process**

To find that Roberts breached his fiduciary duties would require full consideration of a number of factual issues, including the enforceability of an agreement to agree, and RCC's ability to pay off Hotusa. (*See* §§ (IV)(C-D), *infra*.) Neither Roberts nor his attorney had any notice that they needed to present this evidence on January 24, 2020 given that the scope of the hearing was expressly and repeatedly *limited to corporate governance issues*. (*See* § III(B)(1), *supra*.) The Order adjudicating that Roberts breached his fiduciary duties to RCC and/or PdC, without hearing this evidence and without giving Roberts notice and an opportunity to be heard, violated Roberts's due process rights.

Notice and the opportunity to be heard "are prerequisite to due process in civil proceedings" *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 164, 71 S. Ct. 624, 644 (1951); *Feeney v. Colo. Ltd. Gaming Control Comm'n*, 890 P.2d 173, 174 (Colo. App. 1994). It is well settled that due process requires a litigant receive a full and fair trial on every issue raised. See *Skaggs v. Otis Elevator Co*., 164 F.3d 511 (10th Cir. 1998).

Where a Court provides the parties with notice that a hearing will be limited to certain issues, it violates the parties' due process rights where it subsequently determines issues beyond the scope of that notice. *Dupont v. Southern Nat'l Bank of Houston, Inc*., 771 F.2d 874 (5th Cir. 1985) (by determining the issue of property ownership after only hearing evidence on the validity and irrevocability of the trusts, the trial court effectively denied the defendant the opportunity to litigate the separate ownership issue).

6

Where, as here, a defendant chooses not to present evidence at trial in reliance on a court's ruling based on what it is considering at that juncture, a final order based on different grounds or different reasoning denies the defendant due process of the law. [2] *Id. see also Carter v. Moorehouse Parish School Board*, 441 F.2d 380, 382 (5th Cir. 1971) ("Had appellants known the real basis of the court's proposed ruling, they might well (would undoubtedly) have chosen to offer evidence in rebuttal. A ruling based on evidence which a party has not been allowed to confront or rebut is one which denies due process."); *In re Endrex Invest., Inc*., 111 B.R. 939, 944 (D. Colo. 1990).

"A judgment may be void, and not merely erroneous…[where] the procedure used to enter the judgment violated due process rights. Thus, if a judgment is entered without sufficient notice to the defendant, such judgment offends against due process, and it must be vacated upon request. *Best Tr.*,792 P.2d at 303.

## C. Breach of Fiduciary Duty Judgment Is Based on Errors of Law

In the June 2020 Order, the Court proffered a simplistic, tautological, and incorrect formulation of Roberts's fiduciary liability:

[Manager of LLC] + [Acquisition of Asset] = [Breach].

(*See* Order, 06/19/20 at p. 12.)

This woefully misstates the law. A manager of an LLC who acquires an asset can only be held liable for breach of fiduciary duty where other elements are met. The correct formulation is:

[Manager of LLC] + [Acquisition of Asset] + [LLC has connection
to the Asset] + [The Asset is essential to the LLC] + [The LLC has
the ability to acquire the Asset] + [No Waiver by LLC] = [Breach].

---

[2] These due process violations are not cured by the Court's purported reliance on the evidence presented at the Preliminary Injunction Hearing. (*See* Order at ¶ 33-34.) Whether the Court should have granted the preliminary injunction required different evidence for rebuttal and different standards than that required to find Roberts alleged breach of fiduciary duty. *See Carter*, 441 F.2d at 381.

7

*See* Begert, M. *The Corporate Opportunity Doctrine and Outside Business Interests.*, 56 U. Chi. L. Rev. 827, 833 (1989).

Here, Roberts was not given notice or the opportunity to present or refute evidence about (1) RCC's ability to satisfy the Hotusa loan and (2) the members' consent to his payment and assumption of the lien position. The lack of competent evidence in this regard (and Roberts lack of notice and opportunity to present or refute that evidence) makes the breach of fiduciary duty judgment deficient as a matter of law.

    1.    Roberts Was at Liberty to Acquire the Hotusa Lien Position for Himself Because RCC Was Financially Unable or Unwilling to Satisfy the Hotusa Lien

The law is clear in Colorado, and just about everywhere else, that a member of an LLC does not breach his fiduciary duties by acquiring an asset that the LLC is financially unable or unwilling to acquire. *Three G Corp. v. Daddis*, 714 P.2d 1333, 1336 (Colo. App. 1986). "Where the corporation is unable to avail itself of the business opportunity, there can be no usurpation of a corporate opportunity." Begert, *supra* (quotation omitted); *see also Bator v. Mines Development, Inc.,* 32 Colo. App. 320, 513 P.2d 220 (1973) ("…A corporation cannot be said to have an actual or expected interest in an asset or property when it does not have the financial capability to purchase it."); *Collie v. Becknell*, 762 P.2d 727, 729 (Colo. Ct. App. 1988) (same); *Astarte, Inc. v. Pac. Indus. Sys.*, 865 F. Supp. 693, 707 (D. Colo. 1994) ("in order for the opportunity to be usurped, the [opportunity] must have been within the corporation's expectation…it is not sufficient …to show only that a proposed opportunity possesses value to it, but [the corporation] must also show that there is a practical, not a mere theoretical, basis for the opportunity.").

Here, there can be no finding of breach of fiduciary duty without competent evidence that RCC had the *ability* to make the Hotusa payment and therefore undertake the opportunity allegedly

8

MOVANTS' EXHIBIT 23
Page 8 of 13

Aple.Appx. 266

usurped. Cross Claimants would have needed to procure an additional $5.5 million in three days, after they had already received and likely squandered $17 million in unaccounted for investor funds. This is inconceivable. Neither Flaherty nor Kneen demonstrated that funds were available to RCC or where those funds would have come from. Flaherty's testimony was that he "was trying to find lenders" or "see if there was somebody interested" under "commercially reasonable terms" (Exhibit A at 147:21-148:1) showed that Cross-Claimants had, at best, a mere theoretical basis to make the payment on behalf of RCC.

This did not demonstrate a "practical basis" for RCC to satisfy the Loan before December 16, 2016. *Astarte*, 865 F. Supp. at 707. Nor did it show a "practical basis" to satisfy the Loan between December 13th and December 16th, 2016, when the Hotusa Loan needed to be paid. This testimony indicated that RCC had no more than a "mere theoretical" ability to procure the necessary funds.

More importantly, these issues were outside the scope of the Governance Hearing. (*See* § IV(B), *supra*.) Roberts was precluded from testifying at all based on the Court's erroneous contempt order. Neither party presented complete evidence regarding the circumstances surrounding the payoff to Hotusa in December 2016. (*See, e.g.*, Tr. 01/24/20 at 265:7-14.) The attorney for Roberts in Mexico, Juan Carlos Ramirez Garcia, testified at 5:45 p.m. at the end of the one-day corporate governance hearing. (*Id.* at 284:25-285:1.) Again because of the Court's admonishment "not [to] get too far astray" from the "governance issues," counsel for Roberts focused his examination on the governance issues—not on the parties' negotiations or the circumstances surrounding the Hotusa payoff. (*Id.* at 284:25-285:1; 286-293.) At a properly-noticed trial, Roberts would have the opportunity to present evidence to address whether Kneen

Aple.Appx. 267

and Flaherty were unwilling or unable to invest funds to make the Hotusa payment. It was manifest error for the Court to enter judgment on the breach of fiduciary duty claim, based solely on Cross Claimants self-serving testimony, and without hearing evidence and argument Roberts would have could have presented to the contrary.

**D.  The December 2016 Handwritten Notes Cannot Be an Enforceable Contract**

   1.  <u>An Agreement to Agree is Unenforceable</u>

The law is well established in Colorado that an agreement to agree is not enforceable. "In essence, the parties merely 'agreed to agree,' to negotiate and reach agreement at some future time…" *Griffin v. Griffin*, 699 P.2d 407, 409 (Colo. 1984) As a matter of law in Colorado, "such agreements are unenforceable because the court has no power to force the parties to reach agreement and cannot grant a remedy." *Id*. (citing 1 *Corbin on Contracts* § 95 at 397 (1963); 1 Williston, *A Treatise on the Law of Contracts* § 45 at 149-52 (Jaeger 3d ed. 1963); *Restatement (Second) of Contracts* § 33 (1981)).

The Court found that "the complete terms and agreement of the parties was memorialized by Mr. Kneen in a contemporaneously created writing admitted as exhibit 50." (Order ¶ 25.) This agreement is apparently encompassed in Kneen's handwritten notes setting forth 10 points, and unsigned by Roberts. (Exhibit B, hereto.) The evidence shows that this was *not* the agreement between the parties. (*See* § IV(C)(2), *supra*.) A majority of the handwritten terms—at least six of the ten—require future negotiation and agreement.

10

The interest rate and terms of the Super Mezz loan would need to be negotiated.[3] The terms

of the new form of equity to be issued to Super Mezz had to be determined and agreed upon.[4] The

specific "fractional interest" in the beach house had to be negotiated with all investors.[5] The parties

would need to agree on the terms of a listing agreement with a real estate broker, and agree what

constituted a "viable offer."[6] RCC and Roberts had to enter a future agreement when/if "the

conditions of 4, 5, and 6 have been met."[7] RCC and Roberts would have to agree what would

constitute "lost revenue" due to Roberts under the proposal.[8]

Regardless of Kneen and Flaherty's self-serving testimony that Roberts agreed to the

unsigned, handwritten terms, any such "agreement" as a matter of law would be unenforceable. It

could not show that Roberts breached any agreement or that he breached fiduciary duties. *See*

*Olympus Managed Health Care, Inc. v. Am. Housecall Physicians, Inc*., 853 F. Supp. 2d 559, 569

(W.D.N.C. 2012) (rejecting argument that board member "violated his fiduciary duty by causing

Olympus to walk away from a merger with AHP due to his own self-interest" where "the Merger

Agreement never came into force [and] because none of the contracts AHP contends were breached

were enforceable.")

Frankly, as the Court noted in the Governance Hearing, it is inconceivable that

sophisticated real estate investors would rely on an alleged oral agreement that Roberts would put

---

[3] "(2)    Super Mezz pays [Roberts] same interest [Super Mezz] pays everyone else."
[4] "(5)    If these conditions are met, Kneen and Flaherty agree to convert Mezz's holdings into a new form of equity in partnership with MR Development on property."
[5] "(6)    Kneen and Flaherty agree to turn the beach house to fractional for all investors."
[6] "(7)    [Roberts, Kneen, and Flaherty] all agree to put entire property up for sale June 1, 2021 and take the most viable offer that the majority of the partners *can agree upon*." (emphasis added.)
[7] "(8)    RCC will *enter into an agreement* with Roberts that says they will accept any deal he brings that meets conditions of 4, 5, and 6." (emphasis added.)
[8] "(9)    RCC will also agree to pay Roberts any lost revenue over $1 million, up to $1.5 million, less the 18% interest he is receiving."

11

$ 5.5 million into RCC. (*Id*. at 44:17-24.) Yet, that is exactly what Kneen and Flaherty assert they did. They offer no explanation for Roberts not having signed the handwritten note. They only testified that he read it over twice and agreed. Such testimony defies credulity, especially where there is contemporary evidence the following day that the notes were just a proposal and not an agreement. Further, there is no *per se* breach of fiduciary duty where an individual becomes a creditor for an entity to which it also owes fiduciary duties. *See W. Inn Corp. v. Heyl*, 452 S.W.2d 752, 759 (Tex. Civ. App. 1970).

## Conclusion

Roberts's constitutional due process rights have been egregiously violated. He did not have notice of a trial on the claims of breach of fiduciary duty against him and was erroneously precluded from testifying. He had no opportunity to present his evidence or argument nor to rebut the limited evidence presented by the Cross-Claimants. The legal analysis of breach of fiduciary duty set forth in the Order is also deficient. Roberts's alleged breach of fiduciary duty is also predicated on an agreement to agree, which is unenforceable as a matter of law.

WHEREFORE, Roberts respectfully requests the breach of fiduciary duty judgment be vacated, the damage hearing set for December 21-22, 2020 be vacated, and this matter be set for trial on the breach of fiduciary duty claims.

Respectfully submitted this 13th day of December 2020.

PODOLL & PODOLL, P.C.


*s/Richard B. Podoll*
Richard B. Podoll, Atty. Reg. #8775
Robert A. Kitsmiller, Atty. Reg. #16927
Jacqueline E.M. Hill, Atty. Reg. #47789

Aple.Appx. 270

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December 2020 a true and correct copy of the foregoing was served via the Colorado Courts E-filing system upon the following:

William Leone, Atty. Reg. #11403
Norton Rose Fulbright US LP
1200 17th Street, Suite 1000
Denver, CO 80202
william.leone@nortonrosefulbright.com
***Attorneys for Defendant Cross Claimants Flaherty, Kneen, Vertuca, and PdC, LLC and Third-Party Plaintiff Riviera Country Club S. de.R.L. de C.V.***

Phillip A. Parrott
Campbell Killin Brittan & Ray, LLC
270 Saint Paul Street, Ste. 200
Denver, CO 80206
pparrott@ckbrlaw.com
***Attorneys for Plaintiff Richard Lang***

Otto K. Hilbert, Esq.
Otto Law
The Masonic Building
535 16th Street Mall, Suite 810
Denver, CO 80202
otto@otto.law

By: *s/Samantha J. McKinley*
Samantha J. McKinley

13

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202<br>Tel: (303) 441-3771 | DATE FILED: April 10, 2021 5:16 PM<br>CASE NUMBER: 2015CV31828<br><br>**ERIC MARTIN JOHNSON**<br>District Court Judge |
| **Plaintiff:**<br>RICHARD LANG,<br>v.<br>**Defendants:**<br>TIMOTHY FLAHERTY, TIMOTHY KNEEN, MICHAEL ROBERTS, CARL VERTUCA, and PdC, LLC, a Colorado limited liability company,<br><br>**Cross-Claimants**:<br>TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL VERTUCA, and PdC, LLC, a Colorado limited liability company,<br>v.<br>**Cross Claim Defendants:**<br>MICHAEL JOSEPH ROBERTS, SR and SANDSTONE VENTURES, LLC,<br><br>**Third Party Plaintiff:**<br>RIVIERA COUNTRY CLUB, S. de R.L. de C.V.<br>**v.**<br>**Third Party Defendants:**<br>MICHAEL J. ROBERTS, LLC,<br>SANDSTONE VENTURES, LLC. | ▲ COURT USE ONLY ▲<br><br>Case No.: 2015 CV 031828 |
| ***Attorneys for Defendants***<br>Richard B. Podoll, Atty. Reg. #8775<br>Robert C. Podoll, Atty. Reg. 8776<br>Robert A. Kitsmiller, Atty. Reg. #16927<br>Jacqueline E.M. Hill, Atty. Reg. #47789<br>Corrie Caler, Atty. Reg. #47435<br>PODOLL & PODOLL, P.C.<br>5619 DTC Parkway, Ste. 1100<br>Greenwood Village, CO 80111<br>Tel: (303) 861-4000 Fax: (303) 861-4004<br>rich@podoll.net; rob@podoll.net<br>bob@podoll.net; jacqui@podoll.net<br>corrie@podoll.net | |
| **MOTION TO VACATE OR MODIFY THE PRELIMINARY INJUNCTION AND TO VACATE JUDGMENTS FOR FRAUD UPON THE COURT PURSUANT TO C.R.C.P. 60(b)** | |

Cross-Claim Defendant, Michael Joseph Roberts Sr., by and through his attorneys, Podoll & Podoll, P.C. and for his Motion to Vacate or Modify the Preliminary Injunction states as follows:

## I.    INTRODUCTION

On December 6, 2018, this matter came before the Honorable Kenneth Plotz on Cross-Claimants' Motion for preliminary injunction. Judge Plotz ordered Roberts to "cease all actions that are inconsistent with PdC's ownership of the initial property, the Mustafa property, and TMTVC's [sic] ownership of the beach house…" However, PdC did not own the initial property or the Mustafa property. TMTBC did not own the beach house. Neither Colorado entity could own any real property in Mexico under Mexican Law. Roberts could not perform any actions "inconsistent with" an entity's ownership of property it does not—and could not—own.

### 1.    *The Preliminary Injunction Was Obtained by Fraud.*

The Preliminary Injunction is predicated on false representations concerning the ownership of Mexican property. Through a series of misrepresentations in their Cross Claims and then at the Preliminary Injunction Hearing, Cross-Claimants succeeded in deceiving Judge Plotz. They led him to believe that two Colorado limited liability companies— PdC, LLC, and TMTBC, LLC—owned the Mexican properties. Neither Colorado company owned, nor could have owned, Mexican beach front property. Such ownership is proscribed by Mexican law.

Riviera Country Club, S de R.L. de C.V. ("RCC") owned the Sereno properties and Xpu-Ha, S. de R.L. de C.V. ("Xpu-Ha"), owned the beach house. Both are Mexican entities. Judge Plotz did not have subject matter jurisdiction to adjudicate the rights of Mexican entities to Mexican property. He was misled into believing his injunction addressed the rights of Colorado limited liability companies. The Preliminary Injunction was procured by a fraud upon the Court.

**MOVANTS' EXHIBIT 24**
**Page 2 of 16**

Further, PdC was the applicant for the injunction, but has no claim to ownership of the Mexican property. PdC claims it is entitled to a constructive trust over the Mexican properties. PdC cannot obtain a constructive trust since it has no claim of ownership. In addition, this Court has no jurisdiction to order a constructive trust upon real property in Mexico.[1]

There is no basis for a preliminary injunction preserving the status quo of title to Mexican property since PdC has no cognizable claim to the property. The preliminary injunction and all orders that arose from the preliminary injunction, including the contempt citation, the contempt order, the arrest warrant, and the judgments upon the contempt fines, including the January 22, 2021 Order re Cross-Claimants' Motion for Entry of Judgment, must be vacated.

### 2. If the Preliminary Injunction Is Not Vacated, It Must Be Revised to Limit Its Scope

After hearing evidence which consumed much of the day, Judge Plotz granted "partial equitable relief" (Exhibit A, Prelim. Inj. Tr., December 6, 2018 at 203:14-15). The specific relief he granted was enjoining "Mr. Roberts and others acting in concert with him, to cease all actions that are inconsistent with PDC's ownership of the initial property, the Mustafa property, and TMTVC's [sic] ownership of the beach house…" (*Id.* at 203:16-19.)

Subsequently, in an Order tendered the next month, Cross-Claimants' counsel dramatically expanded the scope of the injunction to enjoin damage actions and to affect proceedings in Mexico that had nothing to do with the ownership of Mexican properties. (A copy of the January 24, 2019, Preliminary Injunction Order is attached hereto as Exhibit B.)

Although Roberts has complied with the injunction and has not sought to obtain title to the Mexican properties, Cross-Claimants obtained an Order of Contempt by misrepresenting the

---

[1] *See* Motion for Judgment on the Pleadings separately submitted by Roberts.

3

Aple.Appx. 274

proceedings in the Mexican Courts. When Roberts responded to actions initiated by RCC in the Mexican courts attempting to void the Hotusa lien, Cross-Claimants fraudulently alleged violations of the injunction.

Once the Court was fraudulently convinced that Roberts was intentionally violating the injunction, Claimants obtained Orders which further expanded the injunction and went well beyond maintaining the status quo. In its 12/01/2020 Minute Order, this Court recalled that it had ordered Roberts to "withdraw or dismiss the foreclosure proceedings." The Court further ordered that additional pleadings to accomplish the withdrawal of the foreclosure be done within the next week. These orders seek to reverse the status quo and unlike foreclosure actions in the United States would result in the loss of the lien that Roberts paid $5.5 million to acquire. This would aid Claimants in their scheme to steal the money Roberts paid for the Hotusa lien.[2] Claimants' goal is not to maintain the status quo. It is rather to deprive Roberts of both his money and the Hotusa lien rights he acquired.

Based upon the fraud of Cross-Claimants, this Court (1) entered punitive sanctions, including fines of $1,000 per day and an arrest warrant, and (2) entered judgment for Cross-Claimants for the amount of the fines it levied. This series of events allowed Cross-Claimants to harass Roberts in execution proceedings, and further their plan to "get Roberts in jail and settling," all contrary to justice. (*See* Exhibit D, hereto).

Cross-Claimants sought to further impede Roberts's ability to defend himself in this litigation by procuring a pre-judgment writ of attachment. The Cross-Claimants asserted a false ground to obtain the writ, yet another fraud upon the Court. (*See* Roberts Traverse.) This has prevented Roberts from

---

[2] After a Court in Mexico initially ruled for Claimants and canceled the transfer of the lien to Roberts, Cross-Claimants sent a letter to Roberts gloating about their theft of his $5.5 million. *See* Exhibit C attached hereto: Email from Rosen dated May 9, 2017 (Accordingly, you have nothing to show for the $5.5 million and RCC is under no obligation to pay you.")

4

accessing his assets to defend himself in this case. He also cannot come back in the country to meaningfully participate in this litigation without being arrested.

What makes the contempt order and the sanction order in this case even more insidious is Cross-Claimants have no way of prevailing on the merits of their claims. The claims asserted belong to RCC, not to Cross-Claimants personally. Cross-Claimants lack standing to assert RCC's claims.

The claims asserted on behalf of RCC in the Third-Party Complaint are also woefully deficient. This Court does not have subject matter jurisdiction to determine issues relating to a Mexican corporation and Mexican property. Those matters are exclusively committed to the jurisdiction of the Mexican courts. Further, RCC is not a defending party. A third-party complaint is a vehicle through which a pass-through claim may be asserted. The claim RCC has asserted is not a pass-through claim.

The last thing Cross-Claimants and Third-Party Plaintiff want is for this case to be fairly tried. Even the claims wrongfully asserted by PdC are built upon evident falsehood. By 2016 RCC was drowning in debt. There was no conceivable way it could pay the Hotusa lien. Cross-Claimants have admitted as much in contemporaneous correspondence. Roberts breached no fiduciary duty by paying Hotusa personally and assuming its lien position.

To make matters worse, even if there were a breach of fiduciary duty, under their own theory, Cross-Claimants and RCC have no damages. RCC's own expert places the value of all three Sereno properties at $12.3 million. Cross-Claimants' contemporaneous documents show more than $24 million of debt. Even the value of Roberts's lien alone, with interest, is almost $8 million, which is in addition to another $5.3 million previously loaned by Roberts. RCC had no equity in the Mexican property, and PdC had no equity in RCC.

Through this Motion Roberts asks to put the preliminary injunction side show where it belongs; on the side. Roberts asks to litigate this case on the merits. Towards that end, Roberts asks that the preliminary injunction, if it is not vacated, be modified to conform with the partial equitable relief Judge Plotz granted at the preliminary injunction hearing, and that the sanctions be vacated.

## II. ARGUMENT

### A. THE PRELIMINARY INJUNCTION SHOULD BE VACATED, BECAUSE IT WAS PROCURRED BY FRAUD UPON THE COURT.

The Preliminary Injunction Order in this case was procured through false representations concerning the ownership of Mexican beach front property. In the Cross Claims, Cross-Claimants misrepresented that PdC purchased the initial property. RCC was the purchaser of the Mexican property. (*See* Supplemental Lopez Aff., Ex. E, at ¶ 7.) They misrepresented that TMTBC purchased the beach house. Xpu-Ha was the purchaser of the beach house. (*Id.*) They misrepresented that PdC purchased the Mustapha property. RCC purchased the Mustapha property. (*Id.*) They misrepresented that PdC entered into a settlement agreement with Hotusa. RCC entered into the settlement agreement. (*Id.*) They assert Roberts usurped PdC's rights under the settlement agreement to repay the Hotusa lien., PdC had no rights under the settlement agreement. (*Id.*)

Cross-Claimants doubled down on their misrepresentations at the Preliminary Injunction hearing. They falsely represented that PdC was a party to the settlement agreement; falsely stated that PdC purchased the initial property; falsely stated that PdC bought the Mustapha property; falsely described Mexican real properties an asset belonging to a Colorado LLC; and falsely represented the title and ownership of Mexican coastal real property could be vested in PdC, a non-Mexican entity (*Id.* at ¶ 8.)

6

Judge Plotz was deceived. In granting limited injunctive relief he enjoined actions "inconsistent with PdC's ownership of the initial property, the Mustapha property, and TMTBC's ownership of the beach house." (*See* Ex. A, Hearing Tr. at 203:14-15; *see also* Ex. E, Supplemental Lopez Aff., at ¶ 8.) Only Mexican nationals can own Mexican beach front property. (*See Id.* at ¶ 16.) Mexican nationals and foreign owners of Mexican nationals commit their disputes exclusively to the Courts of Mexico and relinquish the protections of foreign governments. (*Id.* at ¶ 13.) Injunctive relief should not be loosely granted. *Crosby v. Watson*, 144 Colo. 216, 219, 355 P.2d 958, 960, 1960 Colo. LEXIS 454, *5.

The Preliminary Injunction Order, based on false representations of the ownership of Mexican property, must be vacated. A court retains the power to vacate an order based upon fraud. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (The "historic power of equity to set aside fraudulently begotten judgments" is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."); *see also Peterson v. Vanderlip*, 278 P. 607, 609 (Colo. 1929) ([T]he authority of a court to set aside its judgment, when the action is demanded by justice is not dependent upon statute. The power is inherent, and may, in a proper case, and upon a proper showing, be exercised at any time.") The contempt order, sanction order, sanction judgment, and arrest warrant were all the product of the Preliminary Injunction Order that was entered as a result of the fraudulent application of Cross-Claimants. Justice demands that the Preliminary Injunction Order and the punitive orders that were entered as the result of the Preliminary Injunction Order be vacated. *Clemes v. Fox*, 53 P. 225, 228 (Colo. 1898) ("[A] court of equity would have jurisdiction, for good cause shown, and upon the grounds of fraud or mistake, to vacate at a subsequent term one of its own judgments.").

7

**B. THE JUDGMENTS ENTERED ON THE SANCTION AWARD MUST BE SET ASIDE FOR FRAUD UPON THE COURT PURSUANT TO RULE C.R.C.P. 60(b).**

C.R.C.P. 60(b) provides the basis for setting aside a judgment. While relief predicated upon mistake, inadvertence, surprise or excusable neglect, must be asserted within 182 days, the Court may set aside a judgment for fraud upon the Court beyond this limitation. (*See* C.R.C.P. 60(b).)

Here a judgment on the sanction order in the amount of $186,000 was entered on July 9, 2020. A second judgment for $127,000 was entered on November 20, 2020. The November judgment was entered within the 182-day limit, and the July judgment was entered more than 182 days prior to this Motion A third Order entering judgment against Roberts was entered on January 22, 2021, well within the time period for both setting it aside.

However, the timing of the Orders is not determinative. The judgments were entered because of the fraud upon the Court in obtaining the Preliminary Injunction. Judge Plotz did not have subject matter jurisdiction to enter orders affecting a Mexican corporation's title to real property. (*See* Lopez Supplemental Affidavit, Exhibit E, at ¶¶ 15-17.) His orders were entered because he was affirmatively misled into believing Colorado limited liability companies owned the Mexican property. This was not possible. (*Id.* at ¶ 15.) The sanction order was entered because of the fraud of the Cross-Claimants in misrepresenting the ownership of the Mexican property. Due to the fraud upon the Court, the judgments must be vacated.

**C. THE PRELIMINARY INJUNCTION MOTION SHOULD BE CONFORMED TO THE LIMITED PARTIAL EQUITABLE RELIEF JUDGE PLOTZ GRANTED.**

An injunction is **overly broad** when it prohibits acts which the court does not have the authority to proscribe. *State ex rel. Meyer v. Ranum High Sch.*, 895 P.2d 1144, 1145 (Colo. App. 1995). <u>**An injunction also is overly broad if it contains prohibitions which are unnecessary to effectuate the purposes of the injunction.**</u> *Osborn & Caywood Ditch Co. v. Green*, 673 P.2d 380,

8

383 (Colo. App. 1983) (modifying an injunction because its terms were "more restrictive than as required by the facts"). *People v. Wunder*, 2016 COA 46, P26, 371 P.3d 785, 790, 2016 Colo. App. LEXIS 393, *10. An **injunction** must be "narrowly **tailored** to remedy the specific **harm** shown." *Neb. Dep't of Health & Human Servs. v. Dep't of Health and Human Servs.*, 435 F.3d 326, 330, 369 U.S. App. D.C. 214 (D.C. Cir. 2006) (quotation marks omitted). The need for narrow **tailoring**, moreover, is particularly important in the context of a **preliminary injunction** or temporary restraining order, where the court has yet finally to resolve the merits of the dispute." *United States Ass'n of Reptile Keepers v. Jewell*, 106 F. Supp. 3d 125, 126, 2015 U.S. Dist. LEXIS 65351, *2.

Importantly, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. V. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)), and any relief to be granted "must be narrowly tailored to the harm shown," *Neb. Dep't of Health & Human Servs. v. U.S. Dep't of Health & Human Servs.*, 435 F.3d 326, 330, 369 U.S. App. D.C. 214 (D.D.C. 2006) (overturning injunctive relief ordered by district court where relief granted was not part of plaintiff's complaint).

9

In granting the preliminary injunction motion, Judge Plotz stated:

> I'm going to grant equitable relief - - partial equitable relief, in that I am going to enjoin Mr. Roberts and all others acting in concert with him, to cease all actions that are inconsistent with PDC's ownership of the initial property, the Mustafa property, and with TMTVC's ownership of the beach house. . .

(Tr., at 203:14-19.)

Judge Plotz clarified as follows:

> The danger of real, immediate and irreparable injury that may be prevented by injunctive relief is clear as far as this Court's concerned. Basically, without - - I'm convinced, again, solely within the purview of this limited hearing, that Mr. Roberts could do whatever he want - - wanted to do with the particular assets that we're talking about, and that is all the properties that are described on the map as set forth in Exhibit 1.
>
> So there is a danger of irreparable injury, and there's no plain speedy and adequate remedy at law for the same reasons. There is concurrent litigation in Mexico. The parties don't agree on what the status of that litigation is, but this is a Colorado corporation, or a limited liability company - - we're not talking about property, we're talking about the value of an asset, and this lawsuit could take some time to resolve by the time the actual suit is resolved; the property could be wasted, gone, and investors would be left with nothing - - as they may be anyway, but - - or little, ***but preserving status quo as much as possible is the goal of this Court under Rule 65.***

(*Id.* at 205:9 – 206:2.)

Finally, Judge Plotz clarified:

> That the injunction will preserve the status quo. Yes, it will, because there was an agreement and the injunction serves to the hold the parties to that agreement. ***So for that reason, the limited relief is granted - - limited equitable relief is granted***.

(*Id.* at 206:10-14.)

The limited relief Judge Plotz ordered and the intent of his order was to preserve the status

quo. That is the purpose of a preliminary injunction. *City of Golden v. Simpson*, 83 P.3d 87,96 (Colo.

Aple.Appx. 281

2004). The status quo as intended by Judge Plotz has been maintained. RCC is, and always has been, the owner of all of the Sereno properties. Xpu-Ha is, and always has been, the owner of the beach house.

Roberts took no action to re-title the Property after the injunction was issued. However, the application for the injunction, the subsequent requests for a contempt order, for discovery sanctions, for an arrest warrant, and for a pre-judgment attachment were all the product of fraud. The application for contempt alleged that Roberts violated the injunction by filing Court pleadings in Mexico in support of his lien. Claimants deceived the Court by implying that the filings were Robert's initiative to pursue title to the Mexican properties when in fact the pleadings were in response to the actions filed by RCC to challenge the assignment of the Hotusa lien.

The request for discovery sanctions was pursued by Claimants who had received thousands of documents in discovery without advising the Court. In fact, seven boxes of documents were provided on the same day that Claimants moved for discovery sanctions, falsely alleging that Roberts had only produced 14 documents. Months later, in their Motion for Discovery Sanctions, Claimants still hid from the Court that Roberts had produced **all of the documents in his possession relevant to the Mexican investment.** After Roberts protested, including a picture of the seven boxes of documents produced, Claimants fraudulently attributed the production to Roberts's assistant, who they misrepresented as a third party.

The request for a warrant for Roberts's arrest pursued a fraudulent plan which Claimants hatched in 2017 to have Roberts incarcerated so he would be forced to settle. The arrest warrant was issued after additional false accusations of Roberts's filings in Mexico which only served to protect the lien he had paid $5.5 million to obtain, and were filed in response to Cross-Claimants' efforts to steal his money.

11

Aple.Appx. 282

The fraudulently-obtained injunction, the fraudulent expansion of the injunction and the false allegations of its violations precipitated the contempt order, sanction order, sanction judgment, and arrest warrant, which, combined with the falsely supported attachment order has created an effective barrier which has precluded Roberts from defending himself against the groundless and frivolous claims that Claimants assert.

The scope of the injunction must be reduced to merely preserving title in RCC and Xpu-Ha. Roberts is in compliance with that directive and always has been. There is no basis for the contempt order and sanction orders. These orders were also procured by fraud and should be vacated.

**D. ROBERTS'S ABILITY TO LITIGATE THIS CASE HAS BEEN SEVERELY IMPAIRED BY THE IMPROPERLY EXPANDED SCOPE OF THE LIMITED EQUITABLE RELIEF JUDGE PLOTZ ORDERED.**

The focus of this case has been largely upon the alleged violations of the preliminary injunction which have nothing to do with the limited scope of relief Judge Plotz ordered at the preliminary injunction hearing.

As matters now stand Roberts's assets are frozen and he cannot come into the country without being arrested. He is ready, willing, able, and anxious to participate in this case, and devote whatever resources are necessary to vindicate himself from the baseless claims Cross-Claimants and RCC have asserted. He asks that the preliminary injunction order be modified and conformed to Judge Plotz's express and unambiguous directives. Further, he requests the contempt citation, sanction order, judgment on the sanction order, and arrest warrant, be vacated or stayed so he can fully participate in this litigation.

12

### E. CROSS-CLAIMANTS AND THIRD-PARTY PLAINTIFF HAVE FAILED TO STATE COGNIZABLE CLAIMS.

The multiple frauds upon the Court perpetrated by Cross-Claimants that have successfully prevented Roberts from defending himself in this case are even more egregious because Cross-Claimants have not stated cognizable claims. On January 6, 2021, Roberts filed a Motion for Judgment on the Pleadings. That Motion demonstrates that the Cross-Claimants have no standing to assert the many claims they have brought. Standing is jurisdictional *Denver Urban Renewal Auth. V. Byrne*, 618 P.2d 1374, 1379 (Colo. 1980); *Anderson v. Suthers*, 338 P.3d 384, 387 (Colo. App. 2013). Those claims all belong to RCC.

Further, as a Third-Party Claimant, RCC hasn't even sued Roberts. RCC sued two limited liability companies owned by Roberts. The Third-Party claims are not proper third-party claims because they are not pass-through claims. No Third-Party claims are even included in the Cross Claims filed by Cross-Claimants. (*See* Roberts's Motion for Judgment on the Pleadings.)

Cross-Claimants misrepresented that the claims belonged to the Colorado Companies PdC and TMTBC because RCC, a Mexican corporation owning Mexican beachfront property cannot bring its dispute to an American Court. Under the Mexican constitution and the law of Mexico, the Mexican courts have exclusive jurisdiction over RCC, the real property owned by RCC, and any dispute involving RCC, or its members or Mexican real property. (*See* Supplemental Lopez Aff., Ex. E hereto at ¶¶ 13-17.)

### F. CROSS-CLAIMANTS' ASSERTION THAT RCC WAS ABLE TO PAY THE HOTUSA LIEN IS YET ANOTEHR FRAUD.

Even limited evidence now available to Roberts demonstrates that RCC had no ability to pay the Hotusa Lien. (*See* Exhibit F hereto, emails demonstrating RCC was out of money, was desperately trying to sell the property, could not sell the property, could not obtain loans or investors and had no

**Aple.Appx. 284**

other way to pay the Hotusa lien.) Cross-Claimants prepared a document showing RCC's debt in August of 2016 was approximately $28 million, in addition to the $14 million it received in equity contributions. (*See* Exhibit G.) In 2016, Cross-Claimants were writing to investors giving them the bad news that even in a sale of the properties, the investors would not receive the return of their investments.

The long and short of it is, RCC was drowning in debt in December 2016. It had no way of paying the Hotusa lien. It had no way to attract investors to pay the Hotusa lien. It had no way of borrowing money to pay the Hotusa lien. It had tried for years to sell the Sereno properties and had been unable to do so. By December 2016, RCC was out of time. The objective evidence demonstrates that RCC had no ability to pay the Hotusa lien. This RCC does not dispute. Instead, Cross-Claimants resort to a hail Mary. A desperate after-the-fact lie by Flaherty that he would have written a check. Contemporaneous evidence contradicts this fabrication. (*See* Ex. F.) Flaherty was unwilling to write a check, as Cross-Claimants admitted to investors in October 2016. *Id.*

By December 2016, RCC was so deep in debt it had no way of surviving or paying the Hotusa lien. The RCC ship had truly sunk. In December of 2016, the only difference between RCC and the Titanic was that the Titanic had a band.

Still Cross-Claimants filed groundless claims against Roberts based upon still more fraud: that they had an agreement with Roberts to pay the Hotusa lien for RCC; that Flaherty would pay the Hotusa lien; that these claims belonged to PdC; and that Roberts breached duties to PdC by paying the Hotusa lien personally. While Cross-Claimants pretend in this Court to be victims, they are perpetrators of multiple frauds. Cross-Claimants' fraudulent actions are well portrayed by their attempt to steal the $5.5 million paid by Roberts to purchase the Hotusa lien. (*See* Exhibit C.)

14

The damages alleged by Cross-Claimants are imaginary. RCC had no equity in the property as demonstrated by Cross-Claimants own schedule showing $24 million in debt. According to Cross-Claimants' damage expert the Sereno properties were only worth $19 million in 2016. (*See* Exhibit H.) Even based upon a sale which Claimants were not able to arrange, PdC would not have received any distributions. All of the proceeds would have gone to pay the enormous debt RCC had incurred.

Like the claims fraudulently asserted by PdC, any damage claim belonged to RCC, but had to be brought in Mexico. PdC has no claim to damages because no distribution was available to PdC based upon the insolvent condition of RCC.

### III.    CONCLUSION

Cross-Claimants' conduct in misrepresenting the ownership of Mexican beach front properties to obtain the Preliminary Injunction Order, then proffering a vastly expanded preliminary injunction order and swearing out a false pre-judgment attachment affidavit should be severely sanctioned. Through this motion, Roberts does not ask for sanctions, he asks for fairness and justice.

Cross-Claimants and RCC have no cognizable claims. Roberts did not breach fiduciary duties. RCC has no damages. Roberts asks that the preliminary injunction order be vacated or modified to conform to the limited relief Judge Plotz granted, and that the contempt order, sanction judgment, and arrest warrant and prejudgment attachment be vacated or stayed, so he can defend himself against Cross-Claimants' unfounded claims.

DATED this 26th day of January 2021.

*Respectfully submitted,*

**PODOLL & PODOLL, P.C.**

By: */s/ Richard B. Podoll*
         Richard B. Podoll

15

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via the Colorado Courts E-filing system this 26th day of January 2021, addressed to:

***Attorney for Defendant-Cross-Claimants***
William Leone, Atty. Reg. #11403
NORTON ROSE FULBRIGHT US LLP
1125 Seventeenth Street, Suite 3050
Denver, CO 80202
Tel: (212) 318-3324
william.leone@nortonrosefulright.com

***Attorneys for Plaintiff Richard Lang***
Phillip A. Parrott, Atty. Reg. #11828
Margaret R. Pflueger, Atty. Reg. #39780
CAMPBELL KILLIN BRITTAN & RAY, LLC
270 Saint Paul Street, Ste. 200
Denver, CO 80206
pparrott@ckbrlaw.com
mpflueger@ckbrlaw.com

By: */s/Samantha J. McKinley*
Samantha J. McKinley

16

DENIED BY COURT
04/10/2021

DATE FILED: April 10, 2021 5:14 PM
CASE NUMBER: 2015CV31828

ERIC MARTIN JOHNSON
District Court Judge

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**

1437 Bannock Street
Denver, CO 80202
720-865-8301

**Plaintiff**:
RICHARD LANG

v.

**Defendants and Cross Claimants**:
TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL VERTUCA and PdC, LLC

and

**Third Party Plaintiff**:
RIVIERA COUNTRY CLUB S. de R.L. de C.V.

v.

**Cross Claim Defendant**:
MICHAEL JOSEPH ROBERTS, SR.

**Third Party Defendants**:
MICHAEL J. ROBERTS LLC and
SANDSTONE VENTURES LLC.

▲ COURT USE ONLY ▲

Case No. 2015CV31828

Div. 409

*Attorneys for Cross Claim Defendant Michael J. Roberts, Sr.*
Richard B. Podoll, Atty. Reg. #8775
Robert A. Kitsmiller, Atty. Reg. #16927
Jacqueline E.M. Hill, Atty. Reg. #47789
Corrie Caler, Atty. Reg. #47435
PODOLL & PODOLL, P.C.
5619 DTC Parkway, Ste. 1100
Greenwood Village, CO 80111
Tel: (303) 861-4000
Fax: (303) 861-4004
rich@podoll.net
bob@podoll.net
jacqui@podoll.net
corrie@podoll.net

**ROBERTS'S MOTION TO VACATE ORDERS BASED UPON LACK OF SUBJECT MATTER JURISDICTION**

Michael J. Roberts, Sr. ("Roberts"), by and through his attorneys, Podoll & Podoll, P.C. hereby submits his Motion to Vacate Orders Based Upon Lack of Subject Matter Jurisdiction, as follows:

<div align="center">

**CERTIFICATE OF CONFERRAL**
</div>

Roberts's attorneys have conferred with counsel for Plaintiff, counsel for Cross Claimants, and counsel for Third Party Plaintiff, who oppose the relief requested in this Motion.

<div align="center">

**I.  INTRODUCTION**
</div>

This Court's orders holding Crossclaim Defendant Michael Joseph Roberts. Sr., ("Roberts") in contempt and sanctioning him for discovery violations have had a chilling effect in this case. The Court's order imposing a $1,000/day fine as well as a warrant for Robert's arrest have unfairly prejudiced Roberts and affected his substantial rights, including his right of due process.[1] The Court lacked subject matter jurisdiction to order Roberts to take action in Mexico that was illegal, procedurally improper, and beyond Roberts's ability to do, and to then punish him when he could not comply. The orders must be vacated. The Affidavit of David Lopez (hereafter "Lopez Aff. ¶____") which supports the relief requested herein is attached hereto as Exhibit A and incorporated by this reference as if fully set forth.

The Preliminary Injunction which Roberts' is alleged to have violated, placed Roberts in an untenable position at the mercy of both Mexican law and the Law of the State of Colorado. While this Court had *in personam* jurisdiction over Roberts, it did not have subject matter

---

[1] Contemporaneously herewith, Roberts has filed a Motion to vacate the contempt order in this case, including the imposition of fines and a warrant for Roberts' arrest as a consequence of violating Roberts's due process rights. Roberts hereby incorporates the Procedural Background section of that Motion.

<div align="center">

2
</div>

**Aple.Appx. 289**

jurisdiction, or the power to compel Roberts to do or refrain from doing something in Mexico that was either substantively or procedurally proscribed by Mexican law, and beyond Roberts's ability to do. When Roberts was unable to comply with the Court's Order, he was held in contempt, fined, and a warrant was issued for his arrest.

As Mr. Lopez opines, it was not possible for Roberts to comply with the Preliminary Injunction because orders entered by the court in Mexico two years before the Preliminary Injunction Order was entered prevented such compliance.

> In this case, as a matter of Mexican law, the ratification of the Settlement Agreement concluded the Foreclosure Case, except as to execution – just as a U.S. court judgment fully and finally adjudicates a lawsuit, except as to execution of the judgment. Moreover, under Quintana Roo law, a settlement has, with respect to the parties, the same effect and authority as *res judicata*. CCQR, Art. 3141.

> Moreover, it is a fundamental principle of Mexican law generally and of Quintana Roo law in particular that parties cannot exempt themselves from observance of the law by agreement or alter the law by agreement. CCQR, Art. 8. Thus, even if all of the parties and the Colorado court desired that the Mexican judge in the Foreclosure Case act in a manner inconsistent with Mexican law by terminating or suspending the execution of Roberts' lien, the Mexican judge had no discretion to do so.

(Lopez Aff. ¶¶ 3.1-3.3.) Mr. Lopez correctly notes that: "In this context, Roberts was caught between a U.S. court not trained in Mexican law ordering him (subject to the penalty of contempt) to do something in a Mexican court that the Mexican judge in charge of that court told Roberts he could not do." (*Id.*)

Mr. Lopez also opines that Roberts did not have the ability to control his attorney in Mexico, Juan Carlos Ramirez Garcia ("Juan Carlos") as he would have a U.S. lawyer, because

MOVANTS' EXHIBIT 25
Page 3 of 9

> Roberts did not have the same degree of control over Ramirez that Roberts enjoys over his U.S. lawyers and, as a matter of Mexican law, could not dictate to Ramirez that Ramirez act strictly in accordance with the Preliminary Injunction. Ramirez, as a licensed Mexican lawyer, determined that performing certain acts – such as ceasing to pursue execution in the Foreclosure Case or ceasing to act as RCC's agent so long as the power of attorney granted him remained in effect – would violate Mexican law and that he, therefore, had a legal duty to follow Mexican law, not the Colorado court's order.

(*Id.* at ¶ 4.5.)

It is a long-established general rule of law that no state court or government has authority beyond its own borders, each state being sovereign as to its own territory and those residing therein. Such recognition as is given our laws or court orders by other states is based solely upon full faith and credit, comity, contract due to uniform acts, or compact. *Solliday v. District Court of Denver*, 313 P.2d 1000, 1004 (Colo. 1957) (stating this proposition does not require the citation of authority).

## II. ARGUMENT

### A. STANARD OF REVIEW

A judgment rendered by a court lacking subject matter jurisdiction is void, and defects in subject matter jurisdiction may be raised at any time. *Olson v. Hillside Cmty. Church Sbc*, 124 P.3d 874, 878 (Colo.App. 2005) (*citing In re Water Rights of Columbine Ass'n*, 993 P.2d 483, 488 (Colo. 2000); *In re Marriage of Mallon*, 956 P.2d 642, 645 (Colo. App. 1998); s*ee also Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo. 1986) (noting that subject matter jurisdiction may be raised for the first time before the Colorado Supreme Court)).

> Whether a court possesses jurisdiction over a claim is dependent upon the nature of the claim and the relief sought. *Trans Shuttle, Inc. v. Pub. Utils. Comm'n*, 58 P.3d 47, 50 (Colo.

Aple.Appx. 291

2002); *Columbine Assocs.*, 993 P.2d at 488. In our analysis, we consider the substance of the claim, including the facts alleged and the relief requested. *Trans Shuttle*, 58 P.3d at 50. If a court does not have power to resolve a dispute, then it does not have subject matter jurisdiction over the claim. *Skyland Metro. Dist. v. Mountain W. Enter., LLC*, __ P.3d __, __ 2007 Colo. App. LEXIS 1118, *15 (Colo. App. No. 04CA2605, June 14, 2007) ; *Brown*, 141 P.3d at 87

*SR Condos., LLC v. K.C. Constr., Inc*., 176 P.3d 866, 870, 2007 Colo. App. LEXIS 2483, *8-9.

## B. THIS COURT EXCEEDED ITS POWER AND AUTHORITY BY ORDERING ROBERTS TO ENGAGE IN CONDUCT ILLEGAL, PROCEDURALLY IMPROPER OR IMPOSSIBLE IN MEXICO

In this case, the Court attempted to interject itself into Mexican court proceedings by ordering Roberts to take action or refrain from taking action in preexisting cases between the parties here, involving real property located in Mexico. The *in personam* jurisdiction the Court had over Roberts was insufficient to alter proceedings in Mexico which had already become final. This Court had no jurisdiction to order a Mexican court to act or refrain from acting. It also had no power (or jurisdiction) to compel Roberts to do what the Mexican court would not permit him to do. Roberts's expert, David Lopez, explains the lack of power and authority of the Court to compel Roberts to take steps in the Mexican courts that he was not able to take.

3.1 The clearest example that the Preliminary Injunction ordered Roberts to act in a Mexican court in a way that was illegal or not possible under Mexican law relates to paragraph 1 of the Preliminary Injunction. In that paragraph, Judge Plotz ordered Roberts to "cease a actions, direct or indirect, that are inconsistent with ownership of the Initial Property and the Mustapha Property by PdC through its subsidiary RCC, and with TMTBC's [sic ownership of the Beach House, including without limitation his pursuit of foreclosure in his individual capacity or for his individual benefit ...." The evidence shows that it *was* not possible for Roberts to comply with this directive in the Foreclosure Case.

As a matter of Mexican law, Judge Plotz did not have jurisdiction *(competencia)* to order the judge of the Third Civil Court to cease

MOVANTS' EXHIBIT 25
Page 5 of 9

all actions in the Foreclosure Case. Similarly Judge Plotz did not have authority under Mexican law to force Roberts to compel the Mexican court to cease all actions in the Foreclosure Case.

3.2     The ratification of the Settlement Agreement by HOTUSA and Ramirez on behalf of RCC on December 15, 2016 - which was over 2 years before the Preliminary Injunction issued-was a crucial event because it constituted the Mexican court's adoption of the agreement not as merely an arrangement between private parties but as an order of the Court itself. Thus, the provision in the Settlement Agreement that HOTUSA was entitled to execute upon the properties if RCC defaulted and put title into Roberts's name (or that of his designee) without the need for further litigation in the Foreclosure Case was rendered a directive of the Mexican court. From that Court's perspective, once the Settlement Agreement was ratified, there was no altering the consequences of a default by RCC - the matter was closed, *res judicata.* To later attempt to alter the terms of the Settlement Agreement would be to suggest that the parties committed a fraud upon the Mexican court when they presented it to the Court and then later sought its ratification.

Roberts's subrogation for HOTUSA on December 16, 2016 - which similarly was over 2 years before the Preliminary Injunction issued - also was a crucial event because once Roberts substituted for HOTUSA under the Settlement Agreement it became unavoidable (absent a further subrogation) that execution on the properties in favor of Roberts individually would occur if RCC defaulted, which it did on December 30, 2016.

Once these 2 pivotal events occurred, it was not possible thereafter for Roberts to cease pursuit of execution if RCC defaulted because, from the perspective of the Mexican court, the matter was closed and not subject to alteration. Thus, when Judge Plotz ordered Roberts on January 24, 2019 to "cease all actions, direct or indirect, that are inconsistent with ownership of the [properties by RCC and Xpu Ha], including without limitation his pursuit of foreclosure in his individual capacity or for his individual benefit," it was not possible for Roberts to do that in the Third Civil Court. Similarly, when Judge Plotz ordered Roberts on January 24, 2019 to cease "efforts to misappropriate ownership or control of the Initial Property, the Mustapha Property or the Beach House," it was not possible for Roberts to comply in the Third Civil Court in Mexico.

6

In this context, Roberts was caught between a U.S. court not trained in Mexican law ordering him (subject to the penalty of contempt) to do something in a Mexican court that the Mexican judge in charge of that court told Roberts he could not do.[2]

_____

[2] The Mexican court's November 6, 2019 admonishment of Roberts (*see* 1 l.7(p) *supra)* for filing a document to inform it of the Preliminary Injunction and order to terminate the execution proceeding proves that the Mexican court was unwilling to entertain any alteration of the proceedings that ratification of the Settlement Agreement and RCC's default on it had set in motion.

(Lopez Aff. ¶¶ 3.1-3.2)

The Court's orders were not harmless. They lacked authority and purported to punish Roberts through fines and jail for failure to comply. This Court lacked jurisdiction to require a Mexican court to do or refrain from doing anything, even indirectly through Roberts. Mexico is an independent sovereign and is not bound to honor an order of this Court simply because it has directed Roberts to achieve a result in Mexico that the Mexican court determined could not be accomplished. The property at issue, the foreclosure proceeding in Mexico, and the decisions of the Mexican court regarding the property (all part of this Court's Preliminary Injunction and contempt orders) are beyond the power of this court to control or change. "Subject matter jurisdiction is defined as a court's power to resolve a dispute in which it renders judgment." *Levine v. Katz*, 167 P.3d 141, 144 (Colo. App. 2007) (citations omitted).

This Court had no power, and therefore lacked subject matter jurisdiction to order Roberts to accomplish something that was not possible under Mexican law. The Court's Preliminary Injunction, the Contempt Citation, the fines and penalties imposed by the court, the judgment entered by the court and the warrant for Roberts' arrest must all be vacated.

**MOVANTS' EXHIBIT 25**
**Page 7 of 9**

Aple.Appx. 294

Here, the Court lacked subject matter jurisdiction to alter Mexican court proceedings, or to order Roberts to do what he could not do in the Mexican courts.

DATED this 13th day of December 2020.

Respectfully submitted,

PODOLL & PODOLL, P.C.

By: /s/Richard B. Podoll
        Richard B. Podoll

Aple.Appx. 295

<center>**CERTIFICATE OF SERVICE**</center>

I hereby certify that a true and correct copy of the foregoing was served via the Colorado Courts E-filing system this 13th day of December 2020, addressed to:

***Attorney for Defendant-Cross-Claimants***
William Leone, Atty. Reg. #11403
Norton Rose Fulbright US LLP
1125 Seventeenth Street, Suite 3050
Denver, CO 80202
Tel: (212) 318-3324
William.leone@nortonrosefulright.com

***Attorneys for Plaintiff Richard Lang***
Phillip A. Parrott, Atty. Reg. #11828
Margaret R. Pflueger, Atty. Reg. #39780
Campbell Killin Brittan & Ray, LLC
270 Saint Paul Street, Ste. 200
Denver, CO 80206
pparrott@ckbrlaw.com
mpflueger@ckbrlaw.com

***Attorneys for Michael J. Roberts, Sr., and Michael J. Roberts, LLC***
Otto K. Hilbert, II, Atty. Reg. #18363
Otto Law
The Masonic Building
535 16th Street Mall, Suite 810
Denver, CO 80202
Tel: (303) 324-3748
otto@otto.law

<div align="right">By:   <u>/s/Samantha J. McKinley</u><br>Samantha J. McKinley</div>

<center>9</center>

<table>
<tr>
<td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**

1437 Bannock Street
Denver, CO 80202
720-865-8301

</td>
<td>

**DENIED BY COURT**
**04/10/2021**

DATE FILED: April 10, 2021 5:24 PM
CASE NUMBER: 2015CV31828

**ERIC MARTIN JOHNSON**
District Court Judge

</td>
</tr>
<tr>
<td>

**Plaintiff**:
RICHARD LANG

v.

**Defendants and Cross Claimants**:
TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL VERTUCA and PdC, LLC

and

**Third Party Plaintiff**:
RIVIERA COUNTRY CLUB S. de R.L. de C.V.

v.

**Cross Claim Defendant**:
MICHAEL JOSEPH ROBERTS, SR.

**Third Party Defendants**:
MICHAEL J. ROBERTS LLC and
SANDSTONE VENTURES LLC.

</td>
<td>

▲ COURT USE ONLY ▲

Case No. 2015CV31828

Div. 409

</td>
</tr>
<tr>
<td colspan="2">

*Attorneys for Cross Claim Defendant Michael J. Roberts, Sr.*

Richard B. Podoll, Atty. Reg. #8775
Robert A. Kitsmiller, Atty. Reg. #16927
Jacqueline E.M. Hill, Atty. Reg. #47789
Corrie Caler, Atty. Reg. #47435
PODOLL & PODOLL, P.C.
5619 DTC Parkway, Ste. 1100
Greenwood Village, CO 80111
Tel: (303) 861-4000
Fax: (303) 861-4004
rich@podoll.net
bob@podoll.net
jacqui@podoll.net
corrie@podoll.net

</td>
</tr>
<tr>
<td colspan="2" align="center">

**ROBERTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

</td>
</tr>
</table>

Michael J. Roberts, Sr. ("Roberts"), by and through his attorneys, Podoll & Podoll, P.C.

hereby submits his Motion for Judgment on the Pleadings, as follows:

Aple.Appx. 297

Roberts' attorneys have conferred with counsel for Cross Claimants and Third Party Plaintiff, who opposes the relief requested in this Motion.

## I. INTRODUCTION

Defendants Timothy Flaherty, Timothy Kneen, Carl Vertuca, and PdC, LLC have asserted various cross claims against Roberts. At its core, the claims allege that Roberts personally acquired a lien upon the property owned by RCC thereby usurping the corporate opportunity of RCC for his personal benefit. Cross claimants assert eleven claims including breach of fiduciary duty, usurpation of corporate opportunity, breach of contract, promissory estoppel and fraud.

The claims asserted by cross claimants must be dismissed on the pleadings because the claims do not belong to cross claimants. They belong to RCC. The purported cross claimants have no standing to assert the claims of RCC against Roberts.

Although RCC attempts to join this action as a Third Party Plaintiff Roberts is not a third party defendant. Rather the claims of RCC purport to be stated against two limited liability companies, Sandstone Ventures LLC and Michael J. Roberts LLC.

The claims asserted by RCC are also not proper third party claims. Only a defending party may assert a third party complaint. The purpose is to pass through the liability that a plaintiff has asserted against the defendant. The Plaintiff in this action has asserted no claims against RCC.

RCC is a Mexican entity doing business in Mexico and jurisdiction of disputes pertaining to RCC is vested exclusively in the Courts of Mexico. This Court lacks subject matter jurisdiction over claims asserted by RCC, and the purported claims of RCC should be dismissed due to *Forum Non Conveniens*.

2

In addition, the claim for a constructive trust would adjudicate the title and impress constraints on the title to real property in Mexico. It is beyond the jurisdiction of this Court to impose a constructive trust.

## II. THE PROPERTIES AND THE DEBT FOR THE PROPERTIES BELONG TO RCC

As pleaded in the Cross Claims, Flaherty, Kneen, Vertuca and Roberts formed PdC on or about July 25, 2007. Cross Claim and Third Party Complaint at paragraph 12. TMTBC, a Colorado limited liability company, was owned in 2007 by Roberts, Kneen and Flaherty. Cross Claim and Third Party Complaint at paragraph 15.[1]

RCC purchased the initial property in November 2007. Cross Claim and Third Party Complaint at paragraph 14. TMTBC purchased the Beach House in November 2007. Cross Claim and Third Party Complaint at paragraph 15. RCC purchased the Mustapha Property in February 2012. Cross Claim and Third Party Complaint at paragraph 26. In purchasing the Mustapha Property, RCC undertook an additional 6 million dollars of debt. Cross Claim and Third Party Complaint at paragraph 23. All properties acquired by RCC were located in Mexico. Cross Claim and Third Party Complaint at paragraphs 14, 15, and 22.

RCC was financially unable to develop the property it had purchased. Cross Claim and Third Party Complaint at paragraph 28. RCC determined to sell its property but had to procure a release of the 6 million dollar lien it had accepted in the purchase of the Mustapha Property. Cross Claim and Third Party Complaint at paragraph 30. To release the lien, RCC entered into a Settlement Agreement paying Hotusa 1 million dollars and promising to pay the remaining 5.5 million dollars in February 2016. Cross Claim and Third Party Complaint at paragraph 32, After extensions, full

---

[1] TMTBC isn't identified in the caption as a party and is not mentioned in the introductory sentence or in the identification of parties section of the Cross Claim and Third Party Complaint, but appears otherwise unannounced as a claimant in the Eleventh Claim for Relief in Breach of Fiduciary Duty.

**MOVANTS' EXHIBIT 26**
**Page 3 of 16**

Aple.Appx. 299

payment of the 5.5 million dollars was ultimately due on or before December 30, 2016. Cross Claim and Third Party Complaint at paragraph 33.

The properties are owned by RCC. The debt obligation to Hotusa and the Settlement Agreement providing for the payment of the debt were obligations of RCC. Flaherty, Kneen and Vertuca were members of PdC. PdC was a member of RCC. The interests of Flaherty, Kneen and Vertuca in PdC was a personal property membership interest. *See,*C.R.S. 7-80-702 (1)*.* The interest of PdC in RCC was a personal property interest. *Id.* Only RCC owned the properties in Mexico. Only RCC, a Mexican company could own beach properties in Mexico. *Brady v. Brown*, 51 F.3d 810, 818, (9th Cir. 1995).[2]

Similarly, in acquiring the Mustapha Property, RCC took on the existing debt and took the Mustapha Property subject to the Hotusa lien. Cross Claim and Third Party Complaint at paragraph 23. In the Settlement Agreement, RCC agreed to repay the remaining 5.5 million dollars of debt and Hotusa agreed upon receipt to release its lien. Cross Claim and Third Party Complaint at paragraph 32. The properties belonged to RCC, and any corporate opportunity to repay the Hotusa indebtedness belonged to RCC, not to Flaherty, Kneen, Vertuca or PdC.

### III. THE CLAIMS FOR USURPING THE OPPORTUNITY TO PAY THE HOTUSA DEBT BELONG TO RCC.

The First Claim for Breach of Contract, the Third Claim for Intentional Interference with Contractual Relations, the Fifth Claim for Misappropriation of Corporate Opportunity, the Seventh Claim for Breach of Fiduciary Duty and the Ninth Claim for Fraudulent Misrepresentation are pleaded on behalf of PdC and RCC. PdC is a member of RCC. The claims belong to RCC, not

---

[2] "ARTICLE 7. Foreigners, foreign companies, and Mexican companies without an exclusion of foreigners clause may not acquire direct dominion (title) over land and water in a 100-kilometer strip along the country's borders or in a 50-kilometer strip inland from its coast."

4

Aple.Appx. 300

PdC. The "proper entities to complain are the LLCs that directly suffered harm, not its member-owners, who only indirectly suffered harm." *Taylor v. Moskow,* 2014 U.S. Dist. LEXIS 77272, *11-12, 2014 WL 2573990.  It is the company that must bring suit as opposed to the members. *See, A.R.A. Mfg. Co. v. Cohen,* 654 P.2d 857, 860 (Colo. 1982).

The claim for breach of contract alleges a contract with PdC and RCC to pay Hotusa to retire the lien undertaken by RCC on the properties owned by RCC. The breach of contract action belongs to RCC, the owner of the properties and the obligor of the Hotusa debt. Similarly, the Third Claim for Interference with Contractual Relations and the Fifth Claim for Misappropriation of Corporate Opportunity relate to the Hotusa lien and belong only to RCC. The Ninth Claim for Fraudulent Misrepresentation alleges a misrepresentation to Hotusa and belongs to none of the parties here.

Similarly, the Second Claim for Promissory Estoppel, the Fourth Claim for Tortious Interference with Business Relations, the Sixth Claim for Unjust Enrichment, the Eighth Claim for Fraud, and the Tenth Claim for Constructive Trust are pleaded on behalf of all cross claimants. These claims do not belong to Flaherty, Kneen, Vertuca, or PdC, who are only involved as members.

The Second Claim for Promissory Estoppel and the Fourth Claim for Interference with Business Relations also involve the Hotusa lien and belong solely to RCC. Likewise, the Sixth Claim for Unjust Enrichment only pertains to RCC who would have benefitted by the payment of the Hotusa lien it accepted and would be harmed by the loss of the properties it owned.

The Eighth Claim for Fraud alleges that Roberts misled Cross Claimants concerning his willingness and agreement to pay Hotusa for RCC. The debt was owed by RCC and the lien

5

encumbered RCC's properties. Only RCC could have relied upon the alleged fraud, that is if reliance upon a statement of willingness or a fraudulent breach of contract were even possible.[3]

The Tenth Claim for Constructive Trust involves only the properties owned by RCC, and thus also belongs only to RCC.

The Eleventh Claim for Relief for Breach of Fiduciary Duty alleges the wrongful assertion of dominion over the beach house. The beach house belongs to TMTBC which is not a party to this action. The action if cognizable would belong only to TMTBC, not its members.

Each and every claim brought by Cross Claimants belongs exclusively to RCC or to non-parties. Where the allegations of the complaint show that the loss, if any, was to all shareholders alike, the right to sue belongs to the corporation and may be brought by individual shareholders only as a derivative action. *Buechner v. Rouse*, 538 P.2d 117, 120 (Colo. Ct. App. 1975).

None of the Cross Claimants, identified as Flaherty, Kneen, Vertuca and PdC, may maintain these claims. None of them have suffered direct harm from the usurpation of RCC's corporate opportunity or from the loss of RCC's real property. A member may only assert a direct claim where the member has suffered injuries separate and distinct from the injury to the limited liability company. *Kim v. Grover C. Coors Trust,* 179 P.3d 86, 89-90 (Colo.App.2007).

Cross Claimants agree and have previously espoused these principles in this action. Defendants Flaherty, Kneen, Vertuca and PdC wrote in their motion to dismiss the claims of Plaintiff:

> The majority of Lang's claims for fraud, securities misrepresentations and omissions, and unjust enrichment must be dismissed pursuant to C.R.C.P. 12(b)(1) because Lang lacks standing to assert these claims, which are derivative claims that belong to the company. *See Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004) (holding that for a court to have jurisdiction, "the plaintiff 36577602.1 - 5 - must have standing to bring the case"); *Durdin v. Cheyenne Mount. Bank*, 98 P.3d

---

[3] A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000).

6

Aple.Appx. 302

899,902 (Colo. Ct. App. 2004) ("Standing is a jurisdictional prerequisite that requires a named plaintiff to bring suit only to protect a cognizable interest.").

Colorado's limited liability statute defines a derivative suit as a suit by a member "in the right of a domestic limited liability company." C.R.S. § 7-80-713. In applying this definition, one looks to "(1) who suffered the alleged harm, and (2) who would receive the benefit of any remedy." *Young v. Bush*, 277 P.3d 916, 930 (Colo. Ct. App. 2012). Thus, a claim is not derivative only where the plaintiff "has suffered injuries separate and distinct from the injury to the LLC or the other members." *Id*. This rule prevents members from asserting claims where they are only indirectly harmed by the decreased value of their membership interest, and also prevents a multiplicity of suits by the various members. *See Nicholson v. Ash*, 800 P.2d 1352, 1356 (Colo. Ct. App. 1990) (applying this reasoning to the derivative action rule applicable to corporations, which applies the same test as that applied to the LLC statute). A derivative claim may only be asserted after written demand upon the company, allowing an investigation into whether it is in the best interests of the company to pursue the derivative claims. C.R.S. §§ 7-80-714 *et seq*. No such written demand was made or alleged by Lang.

Similarly, Cross Claimants Flaherty, Kneen, Vertuca and PdC cannot bring claims against Roberts because those claims belong to RCC. It is undisputed that Cross claimants only connection to the actions complained of are as a member of RCC (in the case of PdC) or as a member of PdC (in the case of Flaherty, Kneen and Vertuca). No allegation of harm unique to the members is alleged in the Cross Claims. No damage separate and distinct from the damage to RCC is alleged. No compliance with Rule 23.1 or with Article 80 of Title 7 of the Colorado Statutes is alleged. "Where it is obvious from the face of the complaint that the requisite demand upon shareholders was not made and no explanation for the lack of demand is offered, an action by the stockholder will not lie." [citation omitted.] *Van Schaack v. Phipps*, 558 P.2d 581, 585 (Colo. Ct. App. 1976).

These claims belong to RCC. Cross Claimants Flaherty, Kneen, Vertuca and PdC have no standing to assert them. Accordingly, this Court has no jurisdiction to hear them. *Durdin v. Cheyenne Mount. Bank*, 98 P.3d 899,902 (Colo. Ct. App. 2004). The claims of Flaherty, Kneen, Vertuca and PdC must be dismissed.

7

## IV. RCC HAS STATED NO COGNIZABLE CLAIMS

RCC does not assert cross claims. It is identified as a third party plaintiff attempting to assert claims against Sandstone Ventures, LLC and against Michael J. Roberts LLC. It has not obtained the authorization of this Court to join this action and assert independent claims herein. It merely showed up as an additional party in the Motion of Cross Claimants Flaherty, Kneen, Vertuca and PdC to amend their pleadings pursuant to C.R.C.P. 13, 14, and 15.

RCC was not a party defendant in this action. No motion to intervene was made. Instead, on October 4, 2018, after three years of litigation, Defendants Flaherty, Kneen, Vertuca and PdC moved to amend their pleadings to assert cross claims. The motion to amend was granted and the Cross Claims of Defendants Flaherty, Kneen, Vertuca and PdC were accepted.

In the amended pleadings of Flaherty, Kneen, Vertuca and PdC, non-party RCC was identified as a Third Party Plaintiff in the caption. This was improper because RCC was not a defendant. In their Motion to Amend, Defendants Flaherty, Kneen, Vertuca and PdC request leave of the Court for RCC to bring third party claims pursuant to C.R.C.P. 14 against Michael J. Roberts LLC and Sandstone LLC. C.R.C.P. 14 permits a **defending party** to bring third party claims:

> (a) **When Defendant May Bring in Third Party.** At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

However, RCC was not a defending party. C.R.C.P. 14 is inapplicable. C.R.C.P. 14 is also inapplicable because a third party claim must allege that another party is responsible for the damages that defendant may incur to the Plaintiff. There is no such allegation in the purported third party claims of non-party RCC.

8

Further, the new third party claims were not asserted against Roberts. They were asserted against Sandstone Ventures LLC and Michael J. Roberts LLC who also were not parties to this action. No third party claims were asserted against Roberts as the cross claimants concede in their Motion to Amend Pleadings:

> "The Third Party Claims are brought by Riviera Country Club ("RCC" that is a subsidiary of PdC and holds title to the property in Mexico. The Third Party Defendants, Michael J. Roberts LLC and Sandstone LLC are LLCs [sic] owned, controlled and used by Roberts to commit the wrongful conduct alleged in the Complaint."

Motion to Amend Pleadings at paragraph 5 [formatting error in original].

The pleadings establish the issues for decision. Courts may not decide issues outside of those raised in the pleadings. *See, Lynn v. Bosco,* 182 Conn. App. 200, 213, 189 A.3d 601, 610 (Conn.App. 2018). [I]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings. *Kisen Kaisha, Ltd. v. Indomar, Ltd.,* 173 Conn. 269, 272, 377 A.2d 316 (1977).

RCC has not asserted claims against Roberts.[4] RCC has not asserted valid third party claims. Thus, the procedurally defective attempt of Defendants Flaherty, Kneen, Vertuca and PdC to sneak claims into this action on behalf of RCC against Sandstone Ventures LLC and Michael J Roberts LLC must be dismissed.

## V. THIS COURT HAS NO JURISDICTION OVER THE CLAIMS OF OR AGAINST RCC.

Presumably, RCC did not move to intervene because Mexican law and the governing documents of RCC commit the resolution of all disputes involving RCC to the Courts of Mexico.

---

[4] Cross claimants attempted to blur this distinction in the cross claims they filed by defining both the cross claims and third party claims as "cross claims" and indicating that each of the claims stated in their pleading was stated against Roberts individually. Regardless of this sleight of hand, RCC only attempts to state claims against the two designated entities. No claims have been asserted by RCC against Roberts individually.

As Mexican law requires, RCC's Articles of Incorporation (Acta Constitutiva) state that its foreign shareholders (PdC and PdC II) are to be considered as Mexican nationals, subject themselves to Mexican law and the jurisdiction of Mexican courts and relinquish their right to invoke the laws of their home country and its jurisdiction. Otherwise, RCC could not have purchased Mexican beach front property. *See Brady v. Brown,* 51 F3d 810, 816-817 (9th Cir. 1995) ("Article 27, Section I of the Mexican Constitution provided: "Under no circumstances may foreigners acquire direct ownership of lands or waters within a zone of . . . fifty kilometers along the shores of the country."); and see *Wong v. Tenneco,* 39 Cal 3d 126, 134 (Cal. 1985):

> Since 1917, Mexico's Constitution has expressly prohibited alien ownership or control of Mexico's land or waters. This restriction represents that country's abiding commitment to the preservation and management of scarce resources for the benefit of the Mexican people, a commitment fostered by a sobering history of exploitation of the land, and its people, by foreign interests.
>
> Mexico's statutory law governing foreign investment contains ownership limitations similar to those expressed in its Constitution. However, neither the Constitution nor the statute wholly preclude foreign investment in Mexico's resources. Foreigners who agree to respect the autonomy and ultimate authority of the Mexican government may acquire ownership interests in many of the country's natural resources.

*Wong v. Tenneco*, 39 Cal. 3d 126, 134, (Cal. 1985).

All disputes involving not only RCC as a Mexican national, but also involving its shareholders, PdC and PdC II, are exclusively committed to the Courts of Mexico as they involve RCC.[5]

To the extent that the contrived pleadings of Flaherty, Kneen, Vertuca, and PdC could be construed to state claims by RCC against Roberts personally, this Court would lack subject matter jurisdiction to hear those claims and, on this basis too, the cross claims must be dismissed. In

---

[5] Apparently ignorant of this provision, cross claimants attempt in their cross claims to state claims through PdC alleging that PdC was acting through its subsidiary RCC. Even if this contrivance could have been effective to make the claims of RCC become the claims of PdC, this court would still lack jurisdiction since Mexican law commits the disputes of the shareholders to the Courts of Mexico as though the shareholders were also Mexican nationals.

MOVANTS' EXHIBIT 26
Page 10 of 16

Aple.Appx. 306

California, the Courts have dismissed actions which should have been committed to the Courts and Laws of Mexico based upon principles of comity. *Id.* Other Courts have refused to entertain such actions based upon *Forum Non Conveniens.*

The Second Circuit Court of Appeals has cited with approval the decision of the Ninth Circuit Court of Appeals holding that the proper result is a dismissal for *forum non conveniens* of a dispute with a clear Mexican locus of events which led to the litigation:

> "The plaintiff falls back on its United States citizenship as the sole and only possible basis for suing these defendants in a court of the United States. This is not enough. In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.

*Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 156 (2d Cir. 1980), (citing *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.,* 556 F.2d 975 (9th Cir.1977) (per curiam), *cert. denied,* 434 U.S. 1035, 54 L. Ed. 2d 783, 98 S. Ct. 770 (1978)),

These rulings are even more significant since these parties have already litigated their disputes in the Courts of Mexico and Cross Claimants lost. Having lost in Mexico, Cross Claimants continue their legal battles against Roberts in this forum.

> When a danger of injustice, oppression or vexation has been found, the Courts have not hesitated to dismiss the complaints of American plaintiffs for Forum non conveniens. [citations omitted.]

> Moreover,
>> courts must consider the expansion of American business and industry in considering the application of certain traditional legal concepts to international commercial disputes. International trade by American concerns will not be assisted and may even be hindered if "we insist on a parochial concept that all disputes must be resolved under our laws and in our courts." ( Bernuth Lembcke Co., supra, 1976 A.M.C. at 2176, Quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972).)

11

*Ionescu v. E. F. Hutton Co. (France) S. A.*, 465 F. Supp. 139, 146 (S.D.N.Y. 1979).

Not only is the property located in Mexico, but all of the events at issue occurred in Mexico and all non-party witnesses are located in Mexico. Attempting to litigate the claims of RCC in Colorado would impermissibly burden the witnesses and the Court.

> Thus, while there is substantial reason to view Iran as a convenient forum for the adjudication of this suit, the only fact pointing towards New York as an appropriate forum is that the defendants are American corporations, some of whom have their headquarters in this city. However, it seems clear to me that if plaintiff is going to be able to prove his claims, the great bulk of his proof will have to come from Iran, and that plaintiff's case will have to rely heavily on the knowledge of individuals in that country who participated in the events leading to NIOC's purchase of the shares. Yet this court has no subpoena power over any of these people. *See Fitzgerald v. Texaco, Inc., supra,* 521 F.2d at 451. Furthermore, prosecution of this case here would constitute an unacceptable burden on this court, adding to an already overburdened docket a complex case of potentially huge proportions but with insignificant connection to matters of local interest.

*Farmanfarmaian v. Gulf Oil Corp.*, 437 F. Supp. 910, 926 (S.D.N.Y. 1977).

The District of Columbia Court of Appeals has recognized:

> Federal courts have recently begun to acknowledge that judicial unwillingness to dismiss actions to competent courts abroad on grounds of citizenship alone may merely reflect an unthinking orientation overly protective of American plaintiffs even those who reside abroad and "insufficiently sensitive to the ability of foreign courts to perform their adjudicatory functions fully as well as do the courts of the United States."

*Pain v. United Techs. Corp.*, 205 U.S. App. D.C. 229, 637 F.2d 775, 796-97 (1980) (quoting *Recent Developments, Federal Courts: Forum Non Conveniens*, 20 Harv.Int'l L.J. 404, 412 (1979)).

*Forum non conveniens* is used by the Courts to dismiss suits of questionable jurisdiction as is presented by the present case in which the parties dispute arises from an alleged breach of contract or fiduciary duties involving conduct in Mexico directly pertaining to and involving title to property in Mexico and centering upon the rights of a Mexican corporation.

**MOVANTS' EXHIBIT 26**
**Page 12 of 16**

Aple.Appx. 308

The doctrine of forum non conveniens is designed to preserve the discretion of the trial court as to exercise of jurisdiction. It should not therefore be transmuted into a device overly protective of the discretion of plaintiffs to sue in inconvenient forums when all other private and public factors clearly favor dismissal.

*Pain v. United Techs. Corp.*, 205 U.S. App. D.C. 229, 637 F.2d 775, 799 (1980).

The claims of RCC are the claims of a Mexican National, owned by companies who must be treated as Mexican Nationals in the affairs of RCC. As Mexican Nationals, the claims of RCC and claims against RCC must be resolved by Mexican law in the Courts of Mexico. Therefore, if RCC had properly attempted to assert claims in this action (which it has not), this Court would lack jurisdiction to hear them. The claims of RCC in this matter must be dismissed.

## VI. THIS COURT HAS NO JURISDICTION OVER THE CLAIM FOR A CONSTRUCTIVE TRUST.

In their cross claims, Flaherty, Kneen, Vertuca, and PdC seek a constructive trust upon the Mexican property. Such a remedy impresses a restriction upon title to Mexican property and is beyond the jurisdiction of this Court.

A constructive trust is a remedial device designed to prevent unjust enrichment. G. Palmer, 1 *Law of Restitution,* § 1.3 at 12 (1978). *See also, In re Marriage of Allen,* 724 P.2d 651, 657 (Colo. 1986); *Page v. Clark,* 592 P.2d 792, 797 (1979). In general, "a constructive trust is imposed . . . because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property". *Restatement (Second) of Trusts,* ch. 12, introductory note at 326 (1959). The remedy of a constructive trust requires a determination of who holds title and who should hold title. It is a flexible doctrine in which the Court can impose conditions upon title and order who is to benefit from legal title. This cannot be done with title to real estate in a foreign country.

13

It is widely acknowledged that a domestic Court cannot directly affect title to property in a foreign country. *See, eg. Fall v. Eastin,* 215 U.S. 1, 541 L.Ed. 65, 30 S. Ct. 3 (1909). The most common exception is that a domestic Court with in personam jurisdiction may order a title holder to convey that title.

> The territorial limitation of the jurisdiction of courts of a State over property in another State has a limited exception in the jurisdiction of a court of equity, but it is an exception well defined. A court of equity having authority to act upon the person may . . . decree a conveyance of land situated in another jurisdiction, and even in a foreign country, and enforce the execution of the decree by process against the defendant . . . Its decree is made effectual through the coercion of the defendant.

*Kerns v. Kerns*, 53 P.3d 1157, 1164 (Colo. 2002) (citing *Fall*, 215 U.S. at 8, 9-10).[6]

However, a constructive trust is not that simple. It is an equitable remedy involving determinations of title and remedies imposing restrictions on title. As the United States District Court for the Southern District of New York wrote:

> In addition, the subject matter of the dispute is in Mexico. Dismissal under the doctrine of *forum non conveniens* is all the more justified in light of the plaintiff's request that the Mexican property be placed in constructive trust. As defendant has pointed out, there is serious doubt as to whether this Court could assert jurisdiction over this Mexican property or fashion an adequate remedy, should a remedy be required.

*Mohr v. Allen*, 407 F. Supp. 483, 489 (S.D.N.Y. 1976). In *Mohr v. Allen, supra,* the Federal District Court in the Southern District of New York considered a dispute involving a claimed oral contract with a Mexican National to develop a hotel property in Mexico, exactly the situation in this case. This Court cannot adjudicate title to real property in Mexico.

---

[6] The dispute in *Kearns* involved the propriety of a lis pendens recorded in Colorado based upon a lawsuit in Utah seeking to impose a constructive trust upon Colorado real property. While the Colorado Supreme Court ruled that Colorado would give full faith and credit to a judgment of another state, including a constructive trust, the Courts in Mexico have already indicated that matters involving Mexican property, and its owners, are exclusively determined in the Mexican Courts, not the Courts of the United States. Subsequently, the legislature has limited lis pendens to actions pending in the Courts of Colorado.

14

Aple.Appx. 310

## VII.   CONCLUSION

The Cross Claims of Flaherty, Kneen, Vertuca and PdC LLC must be dismissed for lack of standing, because the fraud claim alleges fraud upon a non-party, and because this Court lacks jurisdiction to impose a constructive trust upon Mexican Property owned by a Mexican National. The Third Party Claims of RCC must be dismissed because they are not Third Party Claims. RCC is not a defending party nor do its claims purport to pass through responsibility for damages claimed by the Plaintiff.   The claims of RCC should also be dismissed because this Court lacks subject matter jurisdiction over disputes involving RCC which are exclusively subject to the laws and the Courts of Mexico. Alternatively, the claims of RCC should be dismissed based upon comity or *forum non conveniens.*

Respectfully submitted,

Podoll & Podoll, P.C.


By:  */s/Richard B. Podoll*
　　　　　Richard B. Podoll

15

Aple.Appx. 311

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Colorado Courts E-filing system this 6th day of January 2021, addressed to:

*Attorney for Defendant-Cross-Claimants*
William Leone, Atty. Reg. #11403
Norton Rose Fulbright US LLP
1125 Seventeenth Street, Suite 3050
Denver, CO 80202
Tel: (212) 318-3324
William.leone@nortonrosefulright.com

*Attorneys for Plaintiff Richard Lang*
Phillip A. Parrott, Atty. Reg. #11828
Margaret R. Pflueger, Atty. Reg. #39780
Campbell Killin Brittan & Ray, LLC
270 Saint Paul Street, Ste. 200
Denver, CO 80206
pparrott@ckbrlaw.com
mpflueger@ckbrlaw.com

*Attorneys for Michael J. Roberts, Sr., and Michael J. Roberts, LLC*
Otto K. Hilbert, II, Atty. Reg. #18363
Otto Law
The Masonic Building
535 16th Street Mall, Suite 810
Denver, CO 80202
Tel: (303) 324-3748
otto@otto.law

By:  */s/Samantha J. McKinley*
Samantha J. McKinley

16

1  Denver County District Court
   1437 Bannock Ave.
2  Denver, CO 80202

3

4  Benjamin Wood, et al

5  Plaintiff,

6  vs.

7  Timothy Flaherty, et al          **\*FOR COURT USE ONLY\***

   Defendant,
8
                                    Case No. 15CV31828
9                                   Division 409

10 For Plaintiff:

11 Phillip Parrott, et al

12 For Defendant:

13 William Leone, et al

14

15     The matter came on for hearing on August 6, 2021, before

16 the HONORABLE Marie Avery Moses, Judge of the Denver County

17 District Court, and the following FTR proceedings were had.

18

19

20

21

22

23

24

25

Transcribing Solutions
3758 E. 104th Ave. Suite 524
Thornton, Colorado 80233
720-389-9420

**MOVANTS' EXHIBIT 31**
**Page 1 of 69**                    Aple.Appx. 313

1                                   <u>INDEX</u>

2                                                           PAGE

3   Witnesses for Defendant:

4   David Lopez

5           Direct Examination by Mr. Podoll          46

6           Cross Examination by THE COURT            93

7           Cross Examination by Mr. Leone            98

8           Redirect Examination by Mr. Podoll        175

9

10  Witnesses for Cross-Claimant:

11  Michael Roberts

12          Direct Examination by Mr. Lodzow          184

13          Cross Examination by Mr. Leone            212

14          Redirect Examination by Mr. Lodzow        228

15

16  Benjamin Rosen

17          Direct Examination by Mr. Leone           213

18          Voir Dire by Mr. Lodzow                   238

19          Cross Examination by Mr. Podoll           243

20

21

22

23

24

25

1                           **AUGUST 6, 2021**

2                        **HEARING ON CONTEMPT**

3        THE COURT:  Good morning. THE COURT is on the record in

4 15CV31828, Wood V Flaherty et al. Will Counsel enter their app-

5 earance please?

6        MR. PARROTT:  Good morning, Your Honor. Phillip A.

7 Parrott.

8        THE COURT:  Nice to see you again.

9        MR. PARROTT:  Good to see you again. I'm here briefly

10 observing and will probably leave. Thank you very much for having

11 me.

12        THE COURT:  Understood. Thank you.

13        MR. LEONE:  Bill Leone, Your Honor and Eliot Turner

14 appearing on behalf of the Defendants Cross Claimants and 3rd

15 Party Claimants; Flaherty, Keen, Vertuca PDC and RCC I believe is

16 the list.

17        THE COURT:  Sounds about right, Thank you.

18        MR. PODOLL:  Good morning, Your Honor. Richard Podoll

19 also here representing Michael Roberts are Robert Podoll, Gary

20 Lodzow, Lindsay Heidelberg (phonetic) and Mr. Roberts, he's

21 present in the Court as well.

22        THE COURT:  Thank you all. As you know we are back to

23 mask mandates in the courtroom. That makes it warmer so I've

24 tried to turn the air conditioning. Let me know if you all are

25 supper uncomfortable and we can try to turn it down a little bit

1   more.

2       It also makes it harder for everybody to hear. So, when you

3   are speaking, please make sure you're speaking into the micr-

4   ophone. If it means you need to stay seated, I do not consider it

5   disrespectful at all. I'm more interested in making sure that

6   there is an appropriate or an accurate record being made.

7       So, you know particularly when there's more than one of you

8   at a table make sure you're passing that microphone back and

9   forth when you are speaking so that -- so that it picks up.

10      All right. We are here today for a hearing with respect to

11  Mr. Roberts efforts to purge the contempt.

12      I am aware that Mr. Lodzow on behalf of Mr. Roberts filed

13  Defendant's motion to vacate the contempt proceeding. Or alte-

14  rnative to order a criminal jury trial on the contempt proce-

15  edings.

16      I have reviewed that. I have also reviewed Cross-Claimants

17  opposition to Roberts' motion to vacate or have a jury trial.

18      As an initial matter, this is a remedial contempt proceeding

19  and therefore under the Colorado Rules it does not require a jury

20  even though incarceration is a potential penalty. So, the request

21  for a jury is denied.  The --

22              UNIDENTIFIED FEMALE VOICE:  Your Honor.

23              THE COURT:  Yes.

24              UNIDENTIFIED FEMALE VOICE:  May we be heard on that

25  motion by chance prior to the order?

1          THE COURT:  First of all, I can't hear you from back
2   there. So, you have violated the microphone rule.
3          UNIDENTIFIED FEMALE VOICE:  We are requesting if we may
4   be heard on that motion prior to a ruling?
5          THE COURT:  I don't think that's necessary. You all
6   have made your, you have set forth your position in your plea-
7   ding. So, I don't know what other record you need to make?
8          UNIDENTIFIED FEMALE VOICE:  Okay.  Thank you.
9          THE COURT:  Uh-huh. With respect to the motion to
10  vacate the contempt proceedings, as I understand the motion it
11  relates to a lack of notice from -- a lack of notice with respect
12  the contempt citation. And -- and there are a couple of layers to
13  that.
14      The first is that the contempt citation itself does not
15  specifically identify the orders that have allegedly been viol-
16  ated or the sanctions that are being requested.
17      However, THE COURT does find that all of that information
18  was pled with particularity and sufficiently in the motion for
19  contempt with the attached affidavit.
20      THE COURT does find that Mr. Roberts was properly served
21  with the motion and the affidavit. I am basing that finding on --
22  the affidavit of service of M. Aragon (phonetic). The portions of
23  the deposition transcript where a record was made as to what
24  documents were served on Mr. Roberts. And the email which pro-
25  vided the process server with the documents that would be served

1  on Mr. Roberts.

2       I also find that if there was a concern with notice, if

3  those documents were not properly served or if there was a claim

4  that they were not properly served that should have been raised

5  at the time of the initial contempt proceedings.

6       THE COURT does not find that based on the record before it

7  that there is sufficient information from which I could determine

8  that the motion and the affidavit were not served on Mr. Roberts

9  and that there was a lack of notice.

10      So, for those reasons I do believe that Mr. Roberts had

11  proper service prior to the underlying contempt proceedings

12  initiating.

13      There also seems to be several arguments made regarding the

14  validity of the underlying finding of contempt.

15      My review of the record and the pleadings and Judge

16  Johnson's orders and the transcripts and the electronic FTR

17  recordings that I have been able to listen and the minute orders

18  in this case; persuade me that there was no defect in the under-

19  lying contempt proceedings.

20      That Mr. Roberts has been found in remedial contempt of

21  court. That the -- that Judge Johnson has issued orders as to Mr.

22  Roberts sentence.

23      And that what is clear from the record is that Judge Johnson

24  has given Mr. Roberts numerous opportunities to purge the con-

25  tempt and this is for a lack of a better explanation this is Mr.

1  Roberts' final opportunity to demonstrate to THE COURT that he

2  has purged the contempt and has complied with THE COURT's orders

3  before THE COURT does impose the sentence.

4  Which as I understand Judge Johnson's order is the on-going

5  fines and also the jail sentence until such time is the contempt

6  has been purged.

7  So, with those initial remarks I am certainly willing to

8  hear from Counsel as to how they think today needs to proceed.

9  And Mr. Lodzow I see you are ready to speak so why don't I hear

10 from you?

11 And again, sir if you like to -- if you prefer to stand the

12 podiums the best place.

13 MR. LODZOW:  Judge, first of all with the mask, which

14 is kind of a new twist, THE COURT will have to tolerate my moving

15 around a little bit. I have some you know issues that are on --

16 on play.

17 And so, I may have to take a break, do some stretching, take

18 the mask off for a few moments, those kinds of things. They've

19 caused some of the problems in the past in which I'm generally

20 aware, but we wanted to be here to give our client and I think

21 THE COURT's direction in the case should suggest that the client

22 is here because he wants his day in Court, wants the ability to

23 speak --

24 THE COURT:  And let's do this because I'm already hav-

25 ing trouble --

1          MR. LODZOW:  Okay.

2          THE COURT:  -- and I -- I know it's hard. Is there any-

3    one in the room that is uncomfortable with the attorney that is

4    speaking removing their mask? If anyone is uncomfortable with

5    that, we will absolutely keep masks on. So, all right with that,

6    who -- whomever is --

7          MR. LODZOW:  I think Mr. Leone raised his hand about me

8    and my making --

9          THE COURT:  Just specific to Lodzow. Okay. So, let's --

10   let's --

11         MR. LODZOW:  Thank you.

12         THE COURT:  Yeah.

13         MR. LODZOW:  All right. So, I think what I wanted to

14   start by saying is that I think a good sign in the case that --

15   you know THE COURT has taken control of the case. And at times

16   when the client -- client's lawyers' the present lawyers were in

17   court issues were a little more defined.

18       He made a bond. Came to court, came to court knowing you

19   know that this was hanging over his head for some period of time.

20   And we want to be able to, excuse me, describe to THE COURT what

21   he -- he did, he couldn't do.

22       What this specific order, purge order has to comport with

23   due process because of course the order itself has to be a type

24   of an order that talking as we see it is that this COURT's job

25   here maybe to fashion a new order based on future acts rather

1    than taking into account you know the prospect of penalty for

2    prior acts.

3        And because that's exactly what the case we cite in our

4    brief talks about. We're talking about ah COURT –

5            THE COURT:  Which -- which case?

6            MR. LODZOW:  The --

7            THE COURT:  The which one?

8            MR. LODZOW:  Is it Gompers --

9            UNIDENTIFIED FEMALE VOICE:  Gompers.

10           MR. LODZOW:  Gompers, is the case which I think we cite

11   in the pleading in the beginning of the week. That's as Supreme

12   Court case.

13           UNIDENTIFIED FEMALE VOICE:  Part of it wasn't (inau-

14   dible).

15   [Pause]

16           MR. LODZOW:  The Yelli case is also cited because he

17   likes that case.

18           THE COURT:  Yeah. I know that.

19           UNIDENTIFIED MALE VOICE:  It has a great name even if

20   it's misspelled.

21           THE COURT:  And --

22           MR. LODZOW:  But at the end of the day, I think the

23   case that we cited talks about the complexity of this type of

24   case and -- and the issues in that case seem to mirror no matter

25   how we Judge Johnson decided this was a remedy, you know remedial

1  case.

2      You'll also note that along the way he said criminal charges

3  could well be on the way based on updates that he was getting

4  from Mr. Leone.

5          THE COURT:  Yeah. And -- and -- and just to be clear

6  about that that was one of the ones where I did go back and

7  listen and I did look at the minute order and while that was said

8  it was resolved that -- that they were not pursing the punitive

9  contempt or the criminal contempt.

10     So that is why I do view this purely as a remedial contempt

11 so.

12         MR. LODZOW:  All right. And if THE COURT can also the

13 Bagwell case.

14         THE COURT:  Bagwell? Yeah. I'm looking at that.

15         MR. LODZOW:  That's who I was going to argue, I want

16 you to be at least be aware of that case because we think in

17 large measure it should control what goes on from this point

18 forward.

19     So, we're -- we're indicating to THE COURT that we if this

20 what we think is going to happen; let me tell you what I think

21 what the burdens are.

22     It seems to me that the Plaintiff have the burden of going

23 forward and they have to make on today's date a prima facia

24 showing, an evidentiary showing, showing that indeed since the

25 last time he was in court and we're talking about what happens

1   today. That as of today's date he is able to kind of comply with

2   the purge order.

3       He has the ability based on the language of the order to do

4   that. And whatever ruling THE COURT makes has to deal with future

5   acts rather than past acts because it's -- it's our conception

6   here of the Supreme Court case and some caselaw in Colorado that

7   we cite; that punishing someone and potentially put -- putting

8   them in jail for past acts is exactly what I've been spending 50

9   or 55 years defending.

10      THE COURT:  Yeah. And -- and let -- and let me clear. I

11  agree that if I am to impose a remedial jail sentence today, I

12  need to find that Mr. Roberts was the present ability today to

13  comply with the orders so that he can get himself of jail; right?

14      So, so that is my frame of reference for today and -- and

15  again I am aware that this is not a punitive contempt. This is

16  not, he has done something bad in the past and I am punishing him

17  now.

18      MR. LODZOW:  Right.

19      THE COURT:  So, I am -- I think I'm clear on the pos-

20  ture.

21      MR. LODZOW:  Yeah. I -- I think so. I mean the caselaw

22  that we cite I think defines this in a little more specificity.

23      But in -- in terms of what this hearing is all about I mean

24  it concerns me that it isn't a hearing to put him in jail. It's a

25  hearing to decide based upon the purge order and the language of

1   the purge order.

2      And the component of that A, B, C and D that are outlined by

3   THE COURT, that he did what was possible, he took steps to take

4   care of those issues where he could and where he wasn't able to

5   because of the language of these particular subsections.

6      You'll hear our position on that as well. So, that's in part

7   why we're here. Now again and I can if you want me to just make

8   the argument, my instinct about this with the record that's kind

9   of replete with the many many many different issues and volumes

10   in the case that goes back to 2015.

11      The remedial order here conceptually has to do with the

12   damages sustained by the Plaintiff. What language better? Okay.

13      So, it is our position that when THE COURT does what it's

14   going to do and makes its decision the bottom -- the bottom line

15   becomes this is really about a question of damages.

16      Because what this caselaw says is when Judge Johnson, which

17   doesn't, he really doesn't exactly do that. When Judge Johnson

18   picks out this $1000 a day number; that part of the requirement

19   is that that has to do and relates to the damages sustained by

20   the Plaintiff. That money in theory is meant to go to the Plain-

21   tiff.

22      And so along with that if you know it's our theory one,

23   probably that you probably should make this final determination

24   once you hear the damage claim.

25      Because once conceptually if they haven't sustained any

1  damages and this remedial contempt has to do in -- in the last

2  analysis with damages sustained and that's where that monies

3  supposed to go in theory.

4      Then the damage hearing which is not too far away, could

5  well kind of take up both issues. Or after you take the evidence

6  in this case you make the decision based upon were there any

7  damages. And if you make that determination then conceptually the

8  purpose for the remedial order is to compensate the Plaintiff's

9  for their damages.

10     And I think that's a little bit of what we're saying today

11 in part. And that is there is no damage. We've kind of trumped

12 that well in front of this COURT in other hearings.

13     But the substance of THE COURT's doing here I think is to

14 make sure the status quo stays in place and in the heart of that

15 was that this property down in Mexico, which you've already heard

16 now, by the way it going to be owned by the Nissan (phonetic)

17 Company and still is -- is the substance of the case.

18     I think if I come out of any case in my life thinking about

19 what this has taught me is you get what you buy. And at the end

20 of the day, it seems to me that the issue here could also be

21 handled by continuing this whole hearing until the damage case.

22     Because a crude damage hearing, one that kind of takes up

23 all the issues I think would moot this if you found there were no

24 damages.

25         THE COURT:  Mr. Lodzow, my understanding though In Re

1 the Estate of Hossack, says that remedial fines do not have to be

2 limited to actual damages suffered.

3      MR. LODZOW: Limited to that but I think the touchtone

4 of the remedial resolve has to do with making sure that they

5 don't lose their asset and if they don't, you know keep their

6 asset and never lose a dime because of it and they still own it.

7     Then you know that's -- that's what its limited to I guess

8 remedially you could have in certain circumstances other parts.

9 But the heart I think of this particular rent, this smacks of a

10 complex combination of circumstances.

11     And so conceptually I think clarity, that case says, that's

12 an interesting case. People say it's not limited to that doesn't

13 mean it doesn't have anything to do with the issue.

14     I think we cited caselaw that talks about the purpose behind

15 the remedy, number one is to smack somebody around. Get their

16 attention.

17     And make sure if you you know if they actually ignoring

18 their ability to comply with this purge order and make a point of

19 doing that then I think there's two parts to it. But is as Mr.

20 Leone says in his pleadings, we looked at them about eight

21 o'clock last night, you know this is due a Pavlovian life treat

22 somebody to kind of pay attention to the court orders. That's

23 kind of that theory.

24     Well, I suggest to you that you will hear evidence that and

25 the nature of the evidence is that you know since we've taken up

1   the case, which has been in about December, that he has.

2       And you'll hear evidence in that regard.

3       But the bottom-line it it's our position that damages are

4   really the touchtone and the theory behind the initial Judge who

5   did this injunction was to you know don't disobey that asset.

6       At the end of the day all of attention was paid I mean very

7   very specifically about don't mess with the asset. Don't do

8   anything that you know your -- your actions decrease the value of

9   the asset and keep the status quo.

10      I think the evidence you will hear and you've already heard

11  is that nothing has happened to that, you know say pandemics,

12  outlaws from cartels, you know red seaweed whatever the other

13  thing was are -- are really kind of the enemies of these three

14  people who at one time were good friend, you know socialized with

15  each other and knew each other.

16      I think the bottom-line and now can't help you know but find

17  fault with each other. And then you have a sideshow going on I

18  think we will be able that we hope.

19      That this is has become kind of a vendetta down in Mexico.

20  And it's not our vendetta. It' a vendetta between a lawyer that

21  we choose that we can't discount or get rid of.

22      And Mr. Rosen who's the lawyer or counsel for the Plaintiffs

23  or Cross-Claimants. So, I -- I think we -- we plan on offering

24  evidence that will give you a picture as best we can it is as of

25  today. And I think that's if we go back through the history,

Aple.Appx. 327

1  we've been told a number of different times that's not our chore

2  and we should stay away from that and we will but we're going to

3  talk about is today.

4      And what happened today is we will put on evidence going to

5  make this a bit of an opening statement if THE COURT heard most

6  of it anyway, is our plans are to satisfy you that this client

7  made a good faith effort.

8      Once and this -- this firm took up the cause for him with

9  lawyers who knew what the issues were. Coupled with help from an

10 expert that you'll hear from today about a very very complex set

11 of Mexican laws that don't come easily for the best of experts

12 who I think we have here who actually has been Mr. Leone's firm

13 expert on two or three different times is going to kind of

14 present testimony to you between the evidence we put up that the

15 client has made a good faith belief as of today's day as of

16 today's date, you will hear kind of the actions taken by lawyers

17 who represent him at one time or another, steps than the took,

18 documents were filed down in Mexico which kind of implicated this

19 County.

20     You'll see that in Mr. Leone's pleadings. You know like it

21 took 30 days for him to file something in the Courts down in

22 Mexico which basically quickly said thank you no thank you we're

23 not going to pay attention to this period.

24     So, it's very very difficult to get the attention of you

25 know the Courts in Mexico.

1     So, we're hopeful that THE COURT sees it our way and in the

2    worst-case scenario THE COURT as it just did taking up the

3    (inaudible) issue hold onto any final judgment until you've heard

4    the issue about damages. Because there is a marriage. There's a

5    nexus. There's a relationship between the two.

6     Everything about this case boils down to everything in the

7    multi-million dollar sense. Everything boils down to the asset,

8    concern about the asset, keeping the asset in place which what is

9    it in the last three days it's been sold; without much you know

10   problem at all.

11     The issue was they, you know sold it for less than they

12   think they should sell if for and you'll have to hear about that

13   when the damage issue comes up.

14     Those are I think and let me just ask if there's any other

15   questions (inaudible). We have two people (inaudible) and the

16   Judge.

17  [Pause]

18     MR. LODZOW:  Of course, the youngest and the smartest

19   said a few things. Number one, --

20     THE COURT:  There's one other distinction that she has.

21     MR. LODZOW:  Youngest, smartest --

22     THE COURT:  And the only woman.

23     UNIDENTIFIED MALE VOICE:  How about female?

24     MR. LODZOW:  Oh (inaudible) I never see that issue

25   Judge so that's I didn't say that.

1    THE COURT:  I see that.

2    MR. LODZOW:  I know and I'm glad you do; Judge. I'm

3  (inaudible) ignored because it doesn't really have factor really

4  with me.

5    Here -- here's what I was going to the script that didn't

6  say something about.

7    This injunction was put in place two years ago; two years

8  ago. And the property was still in RCC hands, it's been sold or

9  leased in some fashion or another within the last 30 to 45 days.

10    RCC has not been back divested of ownership, they still have

11  ownership. They've always had ownership. And so that is also kind

12  of underlying theme here because those injunctions that we we're

13  talking about are to preserve the status quo.

14    That that's really what the process is about and low and

15  behold that's the status quo. No matter what evidence you hear

16  right at the present time because you've already heard evidence

17  in the record that indicates that. Thank you, Judge.

18    THE COURT:  Thank you. Mr. Leone or Mr. Elliott?

19    MR. TURNER:  Somehow Your Honor, Mr. Turner's name has

20  converted to Mr. Elliott.

21    THE COURT:  Oh.

22    MR. TURNER:  The first name Elliott, last name Turner.

23    THE COURT:  My sincere apologies.

24    MR. LODZOW:  It all right, it's ET.

25    MR. TURNER:  That's all right. Your Honor, thank you

1 and good morning. So, let me address your first question which

2 was what are the, how should the hearing go today?

3    Mr. Lodzow said the Plaintiffs have a burden today. I don't

4 think we have a burden at all.

5    The contempt citation is in place, the contempt order is in

6 place, the purge order is in place, I think the burden is on the

7 Defendant to so either; one he has complied with the purge order

8 or two, if they want to argue that they are no longer able to

9 comply with the purge order then the burdens on them to demons-

10 trate that.

11    They contested their ability to comply at the time of the

12 contempt hearing. Judge Johnson made specific findings that they

13 were able to comply with his order. And he tailored the order to

14 match what they were able to do at the time.

15    It would be an odd result if we were required to again and

16 again and again relitigate and represent our contempt case. It

17 would be a never-ending cycle.

18    So, I think the state of the -- the case today is that

19 there's been a finding of contempt, a specific purge order was

20 entered and the burden is on the Defendant to show either comp-

21 liance or if he wants to prove an inability to comply today, he

22 can attempt to do that.

23    We think that they will never be able to do that. If requ-

24 ired to rebut that case we have evidence as recent as three weeks

25 ago he was still signing more pleadings in Mexico and still

1  claiming that he owns the property and he has not even attempted

2  to purge this contempt.

3      With respect to some of the rest of this, I'm not quite sure

4  to be honest -- to be honest with you what the thrust of the arg-

5  ument was. So, I'm just going to try and follow the order in

6  which the statements were made.

7      One of the things Mr. Lodzow says is this has turned into a

8  vendetta in Mexico between Mexican attorneys that they have that

9  they can't control or can't get rid of and Mr. Rosen.

10     That's not really true. Mr. Roberts has been working with

11 those attorneys in Mexico and has been signing pleadings that

12 have been filed in three separate cases down there.

13     One is a criminal case in which Mr. Roberts through his

14 attorneys down there, how have been seeking criminal sanctions

15 against Mr. Rosen, Mr. Flaherty, Mr. Keen and Tony the houseboy,

16 for a lack of a better word. Tony's the person who takes care of

17 the house down there.

18     Claiming that they have interfered with his right to the

19 property. And that he is the true owner of the property and that

20 they should go to jail because they have been litigating in

21 Mexico to prevent him from perfecting his foreclosure.

22     That entire case is in violation of the purge order. And it

23 shows Mr. Roberts cooperation and act -- active support of his

24 lawyers.

25     The second case that he's been fighting --

1     THE COURT: When -- when was that criminal case filed?

2 I know I've seen it.

3     MR. TURNER: Your Honor I don't know when it was filed,

4 Mr. Rosen can tell us but the last pleading or the last appear-

5 ance that was held on Mr. Roberts' on behalf was on July 12th of

6 2021 just a few weeks ago.

7     MR. LODZOW: Do you have a cite on that?

8     MR. TURNER: We'll -- we'll get that to you.

9     MR. LODZOW: Okay.

10     MR. TURNER: The second case Your Honor is the what we

11 call the bond or the damages case. In that case Mr. Rosen and the

12 other Mexican lawyers representing the claimants in Mexico had

13 been contesting the foreclosure in Mexico.

14     And Mr. Roberts lawyers took the position that the delay

15 that as caused by their -- our attempts to stop the foreclosure

16 had damaged him because he should have the property so he could

17 sell it or develop it. And required that a bond be posted to

18 protect against any damages that he might suffer is he was unable

19 to take the property.

20     The appeal has not gone well for the Claimants in Mexico

21 because the Mexican Courts have taken the view that in a fore-

22 closure proceeding you can't raise fraud and reach a fiduciary

23 duty that we have asserted against Mr. Roberts here. And sort of

24 a holder in due course concept.

25     So, Mr. Roberts has been pursing damages against the

1  Claimants for them attempting to stop him from foreclosing.

2      That damages action was specifically ordered to be ceased

3  and dismissed. And he agreed to do that and signed the papers to

4  dismiss that damages action.

5      Those papers were filed with the Court in Mexico and the

6  trial court in Mexico did dismiss the damages action and the bond

7  claim based on Mr. Roberts' signed documents asking that that be

8  done. And then after the trial court dismissed the bond damages

9  claim Mr. Roberts filed an appeal of that dismissal.

10     And on July 16th of this year, again just a couple of weeks

11  ago Mr. Roberts' attorneys obtained an order from the Court in

12  the appeals court down there to deliver the bond to him for

13  collection against our clients based on their assertion of their

14  rights that he was not entitled to foreclose on the property. And

15  that just happened a few weeks ago.

16     The third action is perhaps and -- and by the way let's see

17  the third action that he's participated in since the purge order

18  or the contempt order. Is the I call it the special mortgage

19  trial.

20     Some background is due here. The special mortgage trial is

21  the basically the proceeding by which he's foreclosing on the

22  property. Hatusa had commenced the foreclosure action and he

23  stepped into their shoes and took over the prosecution of that.

24  In order to do that Mr. Juan Carlos, Mr. Roberts' lawyer had to

25  appear in the Court and confess judgment on behalf of RCC.

1    And the was the power of attorney that's been at issue that

2 he fraudulently represented to the Court in Mexico that he

3 represented RCC and was confessing judgment so that Mr. Roberts

4 could proceed with the foreclosure.

5    That case has been through numerous appeals in the State and

6 Federal system down there.

7    But on February 22nd of this year in response to our attempts

8 to stay any further proceedings in that case Mr. Roberts person-

9 ally signed and we can present that to you at some point, we'll

10 ask him about if he testifies. Personally, signed pleadings in

11 that case in which he answered the allegations and filed what's

12 called an adhesive appeal.

13    Essentially, he asked the Appellate Court in Mexico to make

14 a conclusive forever and final determination that he is the

15 rightful owner of the property that RCC lacks rights and that no

16 one else has an interest in the property.

17    So, in all three cases he has continued to litigate and in

18 two of those he has signed -- he has signed the pleading person-

19 ally and we can have him identify his signature. Mr. Rosen can

20 identify his signature.

21    So, we don't think there's be an effort on his part to purge

22 rather this request to continue the case until the damages trial

23 like the request in December to continue the damages trial, like

24 the nine motions that were filed, like the Rule 120 or 121

25 proceeding that was filed, like the separate lawsuit that was

1  filed in Arapahoe County are all really designed for one purpose;

2  that's to delay there proceedings so that Mr. Roberts can contin-

3  ue his campaign to take the property.

4      Now Mr. Lodzow says well nothing's happened to the property

5  it's just there and it's been sold and you heard that now.

6      I don't fault Mr. Lodzow because he's not very involved in

7  the case so I've given leeway on getting the facts wrong.

8      There are four parcels of property as you know. And I know

9  if you have the diagram or not, I was going to bring one but we

10 don't have an easel to a piece of paper.

11          THE COURT:  I have an easel.

12          MR. TURNER:  Oh, there's one perfect.

13          UNIDENTIFIED MALE VOICE:  Can I Your Honor?

14          THE COURT:  Please. While -- while we're getting the

15 easel just hang on one second. I have one question. And just so

16 you all know I have read the affidavit of David Lopez dated

17 December 11, 2020.

18      In Mr. Lopez' affidavit he uses a word I don't know what it

19 means. He talks about the Amparo case. Is that one of these three

20 that you've talked about or is that something else?

21          MR. TURNER:  It is part of the, I'm going to say the

22 special mortgage trial. It was the Amparo --

23          THE COURT:  Okay.

24          MR. TURNER:  -- is a word for a federal appeal as I

25 understand it.

1          THE COURT:  Okay.

2          MR. TURNER:  The process is that you go to state court

3    and you appeal to the state appellate court and then you can go

4    to a Federal court in Mexico to challenge that and that I -- I

5    say it's a collaterals attack on the state court proceedings; but

6    it's called a Amparo in Mexico and Mr. Rosen can explain it much

7    better than I can.

8          THE COURT:  Okay.  I - I just wanted to get my three

9    cases straight so. All right. Thank you.

10         MR. TURNER:  So, if I can I think I can be heard at the

11   easel?

12         THE COURT:  Only if you take your microphone and shoot.

13         MR. TURNER:  Okay.

14         THE COURT:  Are at least put it on the corner there on

15   the table or something.

16         MR. TURNER:   I promise not to drop the mic at the end

17   of my --

18       So, there's a beach and there's a road and there are four

19   pieces of property. Serena One was a strip like that that went

20   from the road to the beach.

21       Two, and three were next to it. These were the Mostafa

22   property that had the loan and the lien against it from Hatusa.

23         THE COURT:  Two and three.

24         MR. TURNER:  Two and three. This was the second parcel

25   that was acquired by PDC through its subsidiary RCC. And then

1 | there is the fourth parcel which we call the beach house --

2 | THE COURT: Okay.

3 | MR. TURNER: -- the beach house which is owned by the

4 | TMT Entity through its Mexican subsidiary's Xpuha - X-P-U-H-A.

5 | THE COURT: Okay. Oh, all right that makes sense now to

6 | me.

7 | MR. TURNER: Okay. And to access the beach house you

8 | from the road you need to travel over parcel number three and

9 | there's an easement for that that permits that to happen.

10 | So, the property that has been sold and we're preparing our

11 | revisions to our damage analysis is Serena One.

12 | Serena One was never encumbered by Hatusa, it's not part of

13 | the foreclosure proceedings in Mexico. The damage that we claimed

14 | originally to Parcel number one was -- was that by encumbering

15 | Parcels two and three with his litigation in Mexico we could not

16 | market these properties as a unified whole.

17 | THE COURT: Which you argue as more valuable.

18 | MR. TURNER: Which we are arguing as more valuable.

19 | THE COURT: Right.

20 | MR. TURNER: Given that we have been singularly unsucc-

21 | essful in getting Mr. Roberts to comply with the preliminary

22 | injunction given his -- his defiance even after there was a trial

23 | on the merits and giving his refusal to purge the contempt, given

24 | the fact the he signed all the agreements to return -- to clear

25 | the title and then reneged on them our clients finally gave up

1 and said we will never -- we're never going to get him to comply

2 until THE COURT intervenes and imposes contempt remedies.

3     So, they sold Parcel number one at a discounted price but

4 the -- the net proceeds of that sale are being held in an

5 account. We're going to propose a procedure to THE COURT to

6 either deposit them here or hold them in an account and they will

7 become part of the damage trial scheduled in December to figure

8 out what needs to be done with those net proceeds.

9         THE COURT: Okay.

10         MR. TURNER: Two and three and four have not been sold.

11 Two and three and four have been leased to the same person who

12 purchased number one. We are hopeful that the buyer of number one

13 will want to purchase two, three and four if we can ever get the

14 title cleared and if Mr. Roberts will fulfill his duties to clear

15 that title.

16     That's why this proceeding today still has relevance because

17 if Mr. Roberts is incarcerated with an order that he will stay

18 there until he clears the title, we think there's a chance that

19 he will clear the title and we will be able to sell the remaining

20 properties.

21     The purchase price in round numbers for Serena Number One

22 was five million dollars. We think we might be able to get

23 another 10 or more for two, three and four. We're not sure, no

24 one really knows because the title has been encumbered for so

25 long by Mr. Roberts but that's just to give THE COURT an idea of

1  round numbers.

2      But this case is far from moot and the contempt is far from

3  moot because what we need Mr. Roberts to do is come to grips with

4  the fact that he is not a manager of PDC, RCC or of RCC any

5  longer. That he is a minority of managers of PDC. And that the

6  managers of PDC control the disposition of this property and they

7  want to sell it for the best price that they can get and we want

8  him to stop violating THE COURT's injunctions, to stop the liti-

9  gation in Mexico so that we can do that in an orderly fashion.

10     So, when Mr. Lodzow said the property has all been sold,

11 he's just wrong.

12     Now the other thing that Mr. Lodzow said is that the prop-

13 erty is still there, nothing has happened since the preliminary

14 injunction; that's just wrong.

15     At the time of that the preliminary injunction was entered

16 we were in the early stages of litigating the foreclosure in

17 Mexico. We were still in the middle of the Amparo proceeding.

18     And at that time, it would have been completely possible for

19 Mr. Roberts to suspend all activity in that litigation and

20 maintain the status quo; he didn't do it.

21     When we finally got to the contempt hearing we explained to

22 THE COURT that he had moved the ball farther towards the line and

23 that was the analogy that Judge Johnson liked a lot.

24     And we listed all the court proceedings down there that he

25 had participated in that further that scheme.

1    And that point the Judge said, okay the solution then is for
2 you to dismiss those cases and go back to square one.

3    He wasn't ordered to relinquish his lien holder rights, he
4 was not ordered to give up a position other than to say I told
5 you not to continue proceedings in Mexico and you have continued
6 them, now you have to dismiss them and go back to square one.

7    Kinda like chutes and ladders. you fell down the chute you
8 go back to the first square. you almost got to square 100 sorry I
9 have small grandchildren so chutes and ladders has become rele-
10 vant to my life again.

11    That was the state of play when we had our mediation with
12 Judge Nottingham. In that mediation we agreed.

13    MR. LODZOW:  Your Honor I'm going to object to Counsel
14 what in mediation of privilege and communications that came of
15 that (inaudible).

16    THE COURT:  Yeah.

17    MR. LODZOW:  -- this COURT is to do.

18    THE COURT:  I agree, the only thing I care about is
19 what happened either before mediation or after mediation. I care
20 nothing about what happened in mediation.

21    MR. TURNER:  Your Honor --

22    THE COURT:  Even if promises were made.

23    MR. TURNER:  -- Your Honor I have to make my record on
24 this because I'm not trying to get communications from the
25 mediation in, this was not a mediation. It resulted in five

1  agreements to purge his contempt.

2          MR. LODZOW: (Inaudible)

3          MR. TURNER:  Please if I can finish, Your Honor?

4          MR. LODZOW:  (Inaudible) record (inaudible)

5          THE COURT:  Okay.  Mister -- Mr. Lodzow we are in a
6  trial to THE COURT so --

7          MR. LODZOW:  I know.

8          THE COURT:  -- he can make his record and I can dis-
9  regard it if I find it's appropriate so, you may -- make the
10 record and then I will let you know whether or not I'm consider-
11 ing that in anyway shape or form which is unlikely that I am.

12         MR. TURNER:  Okay.

13         THE COURT:  But let's hear what you've got to say.

14         MR. LODZOW:  As long we have repeating objection and
15 understand what THE COURT said and I for THE COURT and you know
16 based on (inaudible)

17         THE COURT:  And Mr. Lodzow as adamant as you are the
18 record won't pick it up if you're standing.

19         MR. LODZOW:  Oh okay.

20         THE COURT:  So, I you -- you do have a continuing
21 objection. I go it.

22         MR. LODZOW:  Right and Mr. Leone and I had this battle
23 before THE COURT's and again I think we're we should be entitled
24 to have a hearing on what's happening today and the abilities
25 today and the same history that I don't think is relevant with

1 regards to the issues about his abilities today is being trumpe-

2 ted to poison the record. It's (inaudible)

3          MR. TURNER:  It's --

4          THE COURT:  I -- I have the ability to disregard things

5 so, you can say it and I may or may not consider it. I'll let you

6 know.

7          MR. TURNER:  All right. And look I appreciate that and

8 I know you'll be fair on this issue but the -- the mediation was

9 to agree on a set of agreements that would purge his contempt.

10 That's why it's relevant here.

11      And it was done and then his Counsel, Mr. Hilbert appeared

12 before this COURT on October 18th

13          THE COURT:  What year?

14          MR. TURNER:  2020.

15          THE COURT:  We have to say what year now so,

16          MR. TURNER:  Yes. I'm sorry October 18, 2020.

17          THE COURT:  Okay.

18          MR. TURNER:  October, right? We don't have the trans-

19 cript of that hearing. We tried mightily to get it but THE

20 COURT's recording equipment was not working that day.

21          THE COURT:  Yeah.

22          MR. TURNER:  So, there's a recording but there's no --

23 there's no sound on it.

24          THE COURT:  Yeah. I heard that as well.

25          MR. TURNER:  But in that hearing before Judge Johnson,

1   Mr. Hilbert

2         MR. LODZOW:  Same objection this is testimony being

3   given by (inaudible).

4         THE COURT:  Okay. I -- I'm letting him make his record

5   at this point.

6         MR. TURNER:  Okay.

7         THE COURT:  Again, I may or may not consider it. We'll

8   figure that out.

9         MR. TURNER:  And -- and the reason I'm happy Mr.

10   Parrott is here because he was in this conference and he and I

11   have spoken to him prior to today to make sure that my recollect-

12   ion of this hearing is absolutely accurate.

13     Mr. Hilbert told THE COURT,

14         MR. LODZOW:  Your Honor (inaudible)

15         MR. TURNER:  -- oh please can I just finish.

16         MR. LODZOW:  I'm finished. It's bolstering. So suddenly

17   he's putting his own position in front of THE COURT about bolst-

18   ering the before the People.

19     Let him make his record without bolstering.

20         THE COURT:  Sustained.

21         MR. TURNER:  All right. In the hearing on October 18th

22   Mr. Hilbert represented to THE COURT that Mr. Roberts has purged

23   his contempt by executing these five agreements.

24     He represented to THE COURT that Mr. Roberts was going to

25   retain new lawyers, Hogan Lovells to represent him in Mexico to

Aple.Appx. 344

1 solve the problem of the rouge Mexican lawyers.

2      And he asked THE COURT to vacate the arrest warrant to

3 vacate the arrest warrant.

4      He also asked THE COURT to vacate the Writ of Attachment

5 that was against Mr. Roberts' properties and THE COURT said to

6 him in that hearing this is not between Mr. Leone and you, this

7 is between Mr. Roberts and THE COURT.

8      And until he has followed through on this purge, taking

9 these agreements to Mexico with lawyers and gotten them approved

10 and implemented this purge I'm not going to lift the arrest war-

11 rant.

12      What followed after that Your Honor has been a cascade of

13 events in Mexico where Mr. Roberts has continually attempted to

14 undermine these agreements that he signed and were notarized to

15 purge his contempt.

16      This is why this is relevant. This was not a negotiation, it

17 was not a confident mediation, it resulted in signed agreements

18 that were notarized and were presented to this COURT by Mr.

19 Roberts' attorneys as evidence that he had purged his contempt

20 and then -- and then he went to Mexico. This was like October

21 yeah 18th. I think we might have that date wrong. It might have

22 been September 18th.

23      Because we know that on October 17th from his passport infor-

24 mation he went to Mexico.

25      Now one of the things he was supposed to do to purge his

1  contempt that he promised THE COURT he would do on the September

2  18th hearing, I apologize for getting the date wrong initially,

3  but I'm pretty sure its September 18th now. Is that right Elliot?

4         MR. ELLIOT:  Let me double check.

5         MR. TURNER:  He's double checking. One of the things he

6  told THE COURT was they were going to appear in court in Mexico,

7  advise the criminal Judge that had a criminal hearing scheduled

8  that he -- that Mr. Juan Carlos no longer represented him. That

9  he revoked his power of attorney that was part of the purge

10 order. And that he was not claiming to be the owner of the prop-

11 erty. That was part of the purge order. That he was giving up

12 these positions.

13     I have a number of emails that we can present to you today.

14 Mister -- Mr. Hilbert writing to us saying we have a deal he is

15 going to be there; I'm going to be there.

16         THE COURT:  Well, let me -- let me interrupt for -- for

17 just a minute. First of all, I did find the minute order that

18 says, and it is September 18th that Mr. Hilbert appeared and the

19 FTR didn't pick it up. So, I -- I do understand that the date is

20 September 18th.

21     I am less concerned about what deals were made in mediation

22 and what Mr. Roberts did or did not do on those agreements.

23     I'm much more concerned with as we sit here today, has he

24 done the things that Judge Johnson said he needed to do to purge

25 the contempt?

1    And as I understand it that involves things like actually

2 getting the power of attorney revoked and the attorney you know

3 authority suspended. So, --

4        MR. TURNER:  I -- I left -- I understand now why this

5 disconnect. Why this is so relevant to me and you are skeptical

6 about it.

7    The five agreements were the follow: Number One,

8        THE COURT:  And -- and I understand Mr. Lodzow still

9 has --

10        MR. TURNER:  Continuing objection.

11        THE COURT:  -- yeah continuing objection.

12        MR. TURNER:  -- this why I say these are the purged

13 agreements. These were he purge agreements.

14    Number One; was to revoke Juan Carlos power of attorney and

15 actually then became to revoke both Juan Carlos and the uncles,

16 his uncles' power of attorneys in Mexico.

17        THE COURT:  Mr. Juan Carlos' uncle?

18        MR. TURNER:  Yes. Juan Carlos was representing our,

19 pretending to represent RCC and Pleipliego Garcia was repress-

20 enting Mr. Roberts. Both of those were to be revoked.

21        THE COURT:  Okay.

22        MR. TURNER:  Number Two; it was to assign all of Mr.

23 Roberts' foreclosure rights to RCC; just like --

24        MR. LODZOW:  Can -- can I just absolutely --

25        MR. TURNER:  -- like number --

1   MR. LODZOW:  He's talking about something that doesn't

2   count. Can I just make a point? As I understand it these have

3   nothing to do with the citation and purge order we're here today

4   for. So, I just want to make a record.

5   THE COURT:  Okay.

6   MR. TURNER: So, they do because these were agreements

7   that would have purged the contempt.

8   The second agreement was to assign his foreclosure rights to

9   RCC. Now Mr. Lopez and Mr. Lodzow says that Mr. Lopez is going to

10  get to say well he doesn't get to assign this. There's nothing he

11  can do today. As of October of 2020 he was saying that he would

12  do it and he signed agreements to do it and he would attempt to

13  do it.

14  The third agreement was to dismiss the foreclosure action.

15  because once he assigned his foreclosures rights to the debtor,

16  RCC there would be merger of the interests and the foreclosure

17  action would no longer be appropriate.

18  So, it -- it was to dismiss the foreclosure action following

19  the assignment of the rights.

20  Those are the most important agreements. There are two other

21  agreements that oh the fourth agreement was to decease to decease

22  and desist. Stop the damage action which was part of the purge

23  order. That's the one we already talked about that he -- we

24  filed. He didn't file, we filed it.

25  And THE COURT dismissed it and he appealed it and claimed he

1  was still the owner of the property.

2      So, these -- these the issue today is is he able to purge

3  his contempt. These agreements are relevant because number one he

4  attempted or he said he was going to purge his contempt by sign-

5  ing these agreements.

6      Then he told this COURT that he had purged his contempt by

7  signing these agreements. Then he fled to Mexico and instead of

8  terminating Juan Carlos and Pleipliego Garcia he's double down

9  with them and he's still signing pleadings with them undermining

10 those purge agreements.

11     So far from trying to purge his contempt, he's just multip-

12 lying his contempt. This is not an irrelevant mediation that just

13 was unsuccessful and we shouldn't talk about it.

14     This was designed to purge his contempt, get him out of jail

15 free card, clear the title to the property so that we could

16 market it and sell it and then have a damages hearing.

17     And he blew it all up with his lawyers in Mexico. So, that's

18 why its relevant and we I we need to cross-examine. We spent a

19 fortune; we drafted these agreements for him because his lawyers

20 wouldn't do it. We went to the Consulate with him on several

21 occasions.

22         MR. LODZOW:  Judge stop (inaudible)

23         THE COURT:  Yeah.

24         MR. LODZOW:  If you he got -- if you got cheap

25 (inaudible) or it got expansive (inaudible) nothing (inaudible).

1    THE COURT: Yeah. So, so --

2    MR. TURNER: All right.

3    THE COURT: -- so, so here's where I am on this. When I

4 am looking at the contempt order that Judge Johnson issued,

5 signed on the 6th day of January 2020.

6    Judge Johnson, says in par on page two paragraph four, Mr.

7 Roberts can purge this finding of contempt by doing A-B-C and D;

8 okay?

9    Those are the things that I think that Judge Johnson has

10 said are the four ways that this contempt can be purged.

11    So those are the four things I am looking at to see whether

12 he has done those things. My understanding is the Mr. Lodzow is

13 going to tell me that I have read this in Mr. Lopez' affidavit

14 that Mr. Roberts has tried doing L-M-N-O-P; right? These other

15 four things over here.

16    To the extent that L-M-N—O-P are the things that you that

17 that he did because of mediation I am considering that he did L-

18 M-N-O-P. You know whether that came from mediation or not.

19    On the other hand, those mediation agreements as I underst-

20 and never became an order of THE COURT. So, I am not treating

21 those things as an order of THE COURT or -- or anything along

22 those lines.

23    So, that's where I am on those things.

24    MR. TURNER: But that -- that's fine Your Honor because

25 your right there -- there would be other ways for him to purge

1  his contempt. And if you just bear with me for one second longer,

2  I'll tell you what the -- what the two issues -- what the two

3  ways were.

4      One was to do the way these five agreements set forth; which

5  was to assign his foreclosure rights. The purpose of having him

6  sign hie foreclosure rights was to prevent the title from finally

7  and fully transferring to him and his Mexican entity that they

8  created down there, the Logisticos Company.

9      The reason for that was because there was a hope that by

10 doing that the basis and tax basis and the property would be

11 preserved. And then when it was sold there would be a smaller tax

12 penalty to be paid for the sale of the property.

13     The other way he could purge his contempt is to just simply

14 assign all his right title and interest to the property back to

15 RCC. Its gonna -- it's gonna will likely create a tax liability

16 and we will seek that to recover that from him in the damages

17 trial.

18     But he can purge his contempt that way too or any other way

19 that he can think of and he and Mr. Lopez can think of to do what

20 Judge Johnson ordered him to do; which was to return clear and

21 clean title applicable and legal to RCC so that RCC and PDC can

22 market the property.

23     The history of this case is that --

24     THE COURT:  Isn't -- and -- and I will like to hear

25 from both parties on that, isn't that what Judge Johnson said

1  paragraph Four A of the contempt order; transferring fully to to

2  RCC any ownership interest in the disputed properties?

3          MR. TURNER:  Yes.

4          THE COURT:  Does everybody agree that that's what A is

5  talking about?

6          MR. TURNER:  And its -- and it's not just legal title

7  the history of this case RCC has held this legal title but it is

8  encumbered by his foreclosure action. He calms to be the --

9          THE COURT:  Yeah.

10         MR. TURNER:  -- lien creditor; right?

11         THE COURT:  Yeah -- yeah I know. I know.

12         MR. TURNER:  Okay. So, he has to relinquish all of that

13 to RCC so that we can market the property.

14         MR. LODZOW:  Your Honor Four (inaudible).

15         THE COURT:  I can't hear you.

16         MR. LODZOW:  Oh, I'm sorry.

17         THE COURT:  You gotta sit.

18         MR. LODZOW:  Let me -- let me clear this right here.

19 Four A is no such thing. Four A says transfer and fully to RCC

20 any ownership interest in disputed properties. He's got a lien,

21 that's like a first mortgage or mortgage against the property.

22         THE COURT:  That's enough I --

23         MR. LODZOW:  It doesn't say give up the lien rights.

24         THE COURT:  Yeah. Well --

25         MR. LODZOW:  Excuse me?

1    THE COURT:  I understand that lien rights are similar

2  to ownership interest particularly when you're trying to forecl-

3  osure on them and become the owner.

4    MR. LODZOW:  Well, if you foreclosure and become an

5  owner Mr. Roberts has never done that.

6    THE COURT:  Well, he's trying to.

7    MR. LODZOW:  He -- he is not -- he's pursued the fore-

8  closure action, he stands as lien creditor, he has not claimed

9  title to the property which RCC or Cross-Claimants prove when

10  they sold Serena One. They couldn't have sold Serena One --

11    THE COURT:  No, well he doesn't have a lien on number

12  one. He has a lien on two and three.

13    MR. LODZOW:  Right, he has a lien on two and three and

14  those it's undisputed RCC has ownership interest of those proper-

15  ties.

16    THE COURT:  That's not --

17    MR. LODZOW:  They could have sold subject to his lien.

18  Just like if you -- if you own a house --

19    THE COURT:  No but correct, correct me if I'm wrong. If

20  he foreclosures on two and three.

21    MR. LODZOW:  Right.

22    THE COURT:  That gives him an ownership interest;

23  correct?

24    MR. LODZOW:  If he completes a foreclosure action and

25  the procedure in Mexico, which you can ask Mr. Lopez about to

1  explain, okay? Is that the property would have to be titled in

2  his name then he has an ownership interest? Now he stands as a

3  lien creditor.

4          THE COURT:  Okay. Got it.

5          MR. TURNER:  Your Honor I don't mean not only by Mr.

6  Parrott and I had this discussion, he is holding a lien by virtue

7  of fraud and breach of a fiduciary duty.

8          THE COURT:  Yeah. I got that.

9          MR. TURNER:  And that's been adjudicated.

10          THE COURT:  Right.

11          MR. TURNER:  So, we don't think that's --

12          THE COURT:  By Judge Johnson.

13          MR. TURNER:  -- legitimate. That's -- that's why we

14  have these remedies.

15          THE COURT:  understood.

16          MR. TURNER:  All right. Your Honor I think that's

17  really the only points I want to make to clarify what Mr.

18  Lodzow's presentation. But we are anxious to hear if there is a

19  way that Mr. Roberts can demonstrate that he has in fact purged

20  his contempt; because if there's we are unaware of it.

21          THE COURT:  Yep. So, the way I would like to proceed

22  from here is

23          MR. LODZOW:  Your Honor would THE COURT like to hear

24  from us we'd like to proceed here no offense.

25          THE COURT:  Excuse me?

1    MR. LODZOW:  Does THE COURT want to hear about who have

2  to offer as witnesses because if THE COURT finds it's our burden,

3  we're ready to proceed.

4    THE COURT:  Yeah. I do -- I do think it is your burden

5  but it's not much of a burden because we're just a preponderance

6  of the evidence so I do think that I need to hear from Mr.

7  Roberts as to whether he has complied and if you are claiming he

8  does not have the present ability I need that evidence.

9    MR. LODZOW:  Your Honor first and we have evidence Your

10  Honor our first witness will be presented by co-counsel.

11    THE COURT:  I'm sorry?

12    MR. LODZOW:  My first witness will be presented by -

13  our first witness will be presented by Mr. Podoll.

14    THE COURT:  Okay.

15    MR. LODZOW:  Thank you, Your Honor. Your Honor may we

16  have a short restroom break?

17    THE COURT:  Sure. Why don't we just --

18    MR. LODZOW:  It's a long walk down the hall.

19    THE COURT:  I know you guys are all the way on the

20  other end. So, we'll be back at 10:20.

21    MR. LODZOW:  Okay. Thank you, Your Honor.

22    THE COURT:  Yep.

23  [Pause]

24    THE COURT:  Since everyone is back, we will go back on

25  the record in 15CV31828. Mr. Podoll would you like to call your

He knows what the rules are.

MR. ROBERTS:  Thank you.

MR. LEONE:  Can Mr. Rosen step down Your Honor?

THE COURT:  Yes. Thank you, Mr. Rosen.

MR. ROSEN:  Thank you, Your Honor.

THE COURT:  I didn't mean to estrange you.

MR. ROSEN:  No that's -- thank you.

[Pause]

THE COURT:  Okay. Mr. Leone are you ready to begin?

MR. LEONE:  Yes, Your Honor. Your Honor, I'll try to be three minutes or less.

THE COURT:  You can take all five.

MR. LEONE:  We no pleasure in being here in these proceeding today. We've always wanted one thing and that is for Mr. Roberts to comply with the rights of our clients.

And there are million ways that he can comply that are still available to him today.

I don't know whether he can still assign his foreclosure rights because that well has been poisoned so severely in Mexico when he filed it, when we filed it and then he challenged it.

But he can certainly try. He can quitclaim all of his right title and interest in the property back to RCC.

If he's successful in getting the property he can convey it back to RCC.

What he does not yet accept and what his lawyers do not yet

1 accept and you can tell from the questioning is that he's not

2 entitled to the property. He obtained his lien, mortgage,

3 interest through fraud and breach of fiduciary duty and he's just

4 never accepted that so he continues to battle to the point where

5 he wants everyone put in prison down there that has dared to

6 disagree with him. And he still does it as of a month ago. It

7 just has to come to an end.

8 And -- and the court system has been very patient with him

9 for a couple of years now. Our clients don't understand how it

10 can take this long for – for him to comply with what he's been

11 ordered to do.

12 We come here, we present evidence, we have trials, we get –

13 we get rulings. And then he just ignores them and he just goes

14 back to his same old things back down in Mexico.

15 I thought that his testimony about well he doesn't know what

16 happening and the lawyers are doing it and they're rouge is just

17 so incredible it should be disregarded.

18 He signed documents in his lawyer's office that continued

19 the collection action that objected to the assignment of the

20 rights back to RCC. Even after he had been here in front of Judge

21 Nottingham, signed these agreements and his lawyers told THE

22 COURT that it was all done. That had purged his contempt and he

23 was going to hire new lawyers in Mexico to make sure everything

24 got implemented.  He didn't do any of that.

25 Judge Johnson, commented several times that this entire

1  situation's of his making. It's not my making, it's not the

2  Judge's making. It's Mr. Roberts making.

3      And I really think that if the reality of this comes home to

4  him through him being incarcerated until he comes to his view

5  that he needs to comply with THE COURT's orders and does what

6  needs to be done to comply that we can get this case done.

7      And we can get this property sold and we can whoever needs

8  to be paid paid.

9      So, I don't have anymore. I heard the evidence and it's a

10  short day—it's a long day but you've been paying very close

11  attention so I don't need to review all the evidence. Thank you.

12      THE COURT:  Thank you. Mr. Lodzow, I'm going to give

13  you Mr. Leone's extra time so you now have seven minutes.

14      MR. LODZOW:  Your Honor, I have to tell you that

15  there's a little chilling quality to THE COURT having shared some

16  court  -- but let me suggest to you, one, that I have authority.

17  They can all be correct.

18      My client will take the steps to kind of assign interest or

19  indeed, some of the other options are in place.  Assuming is $5

20  million investment in the case that's somehow protected through

21  the process.  And that's number one.  Number two, I sense that

22  what we're doing here is kind of suggesting ways outside actually

23  the purge documents, because I think --

24      THE COURT:  And, yeah.  And -- and let me be clear.  I

25  did understand Mr. Leone to be suggesting that I impose different

1  standards for purging.  And I agree with you.  I cannot do that

2  under Rule 107.  The purge instructions need to be in writing.

3  The only writing we have is Judge Johnson's order of

4  January 6, 2020.  So, I am not going to impose additional or

5  different purge requirements.

6          MR. LODZOW:  And -- and, Your Honor, the best it seems

7  we could do in the case is to put an expert, who I think was

8  basically consistent with regard to kind of the issues concerning

9  the purge issues.

10      And I happen to think that when you're thinking about

11  putting someone in jail and the whole issue of the case really

12  boils down to a lien, there is not one reference to the term lien

13  in that entire document.  Pretty easy to do.

14      And I think again, notice and due process kind of deal with

15  the idea that in defending a case like this -- and it feels like

16  I'm giving a closing argument in a criminal case -- it really

17  does, Judge.  I can't believe the Sheriff's in the courtroom.

18  I'm more used to that probably than you.

19      So what I'm saying to THE COURT I think is if indeed the

20  Court thinks that there's been some effort in -- in not to purge,

21  I think the testimony is at a minimum goes to the intent of our

22  client.  And in a purge setting or in a setting where somebody

23  may go to jail, I think he's got to intent -- he himself has got

24  to intent to prove a violate -- you know, the orders of the

25  Court.  And you're still talking about prior actions.  So you're

1 | talking about historical actions here, right?

2 | And (inaudible) again that means you're talking about
3 | potentially -- you know, with the Sheriff's in the back of the
4 | courtroom, putting him in jail.

5 | If -- if indeed that is the Court's instinct, we'd ask for a
6 | stay. He's on a $200,000 bond.

7 | So if -- if THE COURT decides that a jail sentence in part,
8 | I think the opportunity to secure his attendance at the next
9 | hearing is pretty propound at 200,000. It's probably in the top
10 | three or four bonds I've ever heard of. Which is saying
11 | something in my age.

12 | So THE COURT has $200,000 to kind of shake with if he
13 | doesn't come. He came back. You know, what -- what I'm seeing
14 | from Mr. Leone is this -- you know, this is some gargantuan
15 | fight. It's about a transaction that had a lot of nuances to it.
16 | It was complex. It had lawyers from all over the place, each
17 | whom seem to kind of -- with regard to the lawyers involved --
18 | step away from issues that were clearly involved in this case.
19 | That is to be him on the five million and get the property.

20 | I -- I think we have at least created an issue for you to
21 | concern yourself with with regard to his intent on a case that
22 | involves I think two process requirements.

23 | And if you're inclined to kind of make one of these
24 | conditions a -- a condition -- and I know that Judge Johnson's
25 | already said that -- I think that -- you know, the fair steps

1  would be to let us take steps to look at that and make decisions,

2  because he's got to do probably something that's not there.

3      I mean if you really got to think about it, what he's got to

4  do is he's -- he's going to have to do something to make them

5  happy about property rights, which means some legal action on his

6  part to do that.  And it's not about ceasing something, it's

7  about doing something in the future.  And if you're going to put

8  the guy in jail and you know exactly how difficult Mexico can be,

9  it can take 30, 45 days before you get a postcard to Mexico, let

10  alone get the lawyers in this case or new lawyers -- and that's a

11  suggestion.

12      We probably can't involve Hogan.  But at the end of the day,

13  we'll try and find someone that can kind of navigate for him in

14  the appropriate -- based upon some -- something that THE COURT

15  imposes and gives us some short stay -- and I'd ask for something

16  like a week -- he's not going anywhere.  He would've run.  He

17  could've stayed in Mexico.  He didn't have to put two hundred

18  grand down.

19      When THE COURT came up, we thought and he thought this was

20  an ability to kind of get up and tell a story that has all kinds

21  of complex issues in it.  And the history of animus between

22  lawyers, partnerships, and everything else.

23      So here's what I'm asking specifically.  If -- if THE COURT

24  is inclined to impose a jail sentence, we're asking for a stay

25  for some reasonable period of time to do two things.

1      We want to look at an appeal -- you know that's -- that's --

2  that's -- the lawyers in the past depend -- admonish because they

3  didn't take the right steps to appeal things.

4      And so at the end of the day we want to look at that and

5  that's the truth.  And we're trying to check into it now.  And

6  two, we want the opportunity to sit down with the client and as

7  lawyers and perhaps with the help of a lawyer from Mexico, over

8  the next week or so, what do you have to do and what's the time

9  frame it can get done?  Because we could do everything Mr. Leone

10  said, and it could take a month and a half to get it done.

11      So giving us a stay I think is more consistent with due

12  process than not.  And perhaps the resources of the Sheriffs

13  don't have to be involved here.

14      And we'll come back to court if you give us that stay with

15  this group of attorneys and we'll abide by THE COURT order or we

16  will have taken the steps to do what they want.  And that is,

17  give it to them and forget about his position and his money.

18  That's really what they want.

19      So if you -- you know, if we're constrained to do that and

20  the price is liberty, we're going to probably do what's

21  necessary, and that's exactly what we think is happening here --

22  to get that done.

23      So we'd ask for a stay, because I think the Court's inclined

24  to kind of impose some sentence here.

25          THE COURT:  So the two issues before THE COURT today

1   are whether there has been evidence that Mr. Roberts has complied

2   with the preliminary injunction and if he is in compliance with

3   preliminary injunction.

4      And if he is not in compliance with the preliminary

5   injunction, has he purged the contempt by doing the things that

6   were laid out specifically in Judge Johnson's order.

7      Today THE COURT has heard testimony from Mr. Lopez, an

8   expert in Mexican law.  From Mr. Roberts.  And from Mr. Rosen.

9      First, with respect to Mr. Roberts, THE COURT finds that Mr.

10   Roberts's testimony is not credible.

11      THE COURT finds that Mr. Roberts in his testimony could

12   remember things that were favorable to him, but claimed not to

13   remember things that might not have been favorable to him.  In

14   other words, Mr. Roberts -- the -- the majority of Mr. Roberts's

15   testimony was not credible.

16      One of the things that came to my mind today -- this may not

17   interest you, so I'll try to keep it short -- my son plays

18   baseball.  At the end of each baseball game they are required to

19   rake the field -- get the infield back in to order.  And for a

20   whole season I watched my son carry a rake around the infield and

21   he never once raked the field.

22      That is what THE COURT views Mr. Roberts as doing in this

23   case.  The evidence of the things that Mr. Roberts claims to have

24   done to satisfy both the preliminary injunction and the purge

25   instructions were designed to have no effect.

So when he went to the Mexican Consulate to supposedly revoke the power of attorney, he gave statements to them to assure that they would find that it was of no effect.

When he purported to withdrawal the -- one of the actions in Mexico as explained in Exhibit 11, he put sufficient statements in it to convey to the Mexican court that it was not his intent to do the things he said he was doing. That he was specifically -- had -- had a gun held to his head from Judge Johnson.

In other words, all of the things that he claims to have done to purge contempt were designed to be ineffective and designed to thumb his nose at the prior orders of THE COURT.

THE COURT finds that for the last 19 months since the contempt order was issued in -- on January 6, 2020, Mr. Roberts throughout that time has had the ability to number one, comply with the permanent injunction issued by Judge Plotz. And he has had the ability to do the things he needed to do to purge contempt under the contempt order.

Mr. Lodzow has asked for a stay. The problem with that request is that Mr. Roberts has already had 19 months to do the things that he needed to do. You come before THE COURT today asking for additional time to do the things that have always been within Mr. Roberts's power. He simply has not wanted to do them.

To support that finding, number one, I rely on Exhibit 11, where he -- well, I reply on Exhibit 11. And I rely on the description of what occurred with the Mexican Consulate with

1  respect to the power of attorney.  I also rely on Exhibits N as

2  in Nancy and O.  Both of those documents were executed by Mr.

3  Roberts and it is clear to THE COURT that he continued to operate

4  as if attorney Carlos Ramirez was his attorney and was acting at

5  his direction.

6      So, for those reasons I find that Mr. Roberts continues to

7  be in violation of paragraph one of the preliminary injunction;

8  paragraph seven of the preliminary injunction; and paragraph

9  eight of the preliminary injunction.

10     In addition, THE COURT finds that Mr. Roberts has not

11 complied with paragraphs 4(a), 4(b), 4(c), and 4(d) of Judge

12 Johnson's purge order.

13     Most blatantly is with respect to paragraph 4(c), where Mr.

14 Roberts was ordered as part of his purge to cease all actions in

15 Mexico for damages against RCC.  And I'm sorry, I don't remember

16 which one -- whether it was Exhibit N or Exhibit O, but by

17 signing those pleadings, I find that he directly violated that.

18 So instead of ceasing he continued to act to forward the actions

19 in Mexico.  And he continued to pursue actions that had already

20 been filed.

21     So with that THE COURT is going to impose sentence -- the

22 following sanctions today.  With respect to the contempt order --

23 Judge Johnson's January 6, 2020 contempt order -- Mr. Roberts

24 will continue to be fined $1,000 per day as long as he remains in

25 contempt of court.

1    And 4(b), Mr. Roberts will be held in the custody of the

2  Denver County Sheriff until such time as he purges.  I am not

3  altering in any way the four purge paragraphs that have been

4  outlined by Judge Johnson.

5    If Mr. Roberts's counsel would like some indication from THE

6  COURT as to what I would consider satisfaction of those, I am

7  happy to provide that.  If you want to stick with the record as

8  has been made in Judge Johnson's contempt order, it's up to you

9  all.

10    MR. LODZOW:  Well, Judge, in all due respect we need to

11  know -- he can't -- can't physically do exactly what these purge

12  orders require by sitting in jail.  That makes it punitive in

13  terms of past action.

14    But having said that, if there is a -- you know, if there is

15  an outlet or key -- and tell us what the key is and we'll see if

16  we can do the key -- and THE COURT understands that whatever we

17  do tomorrow, the next day, or the next day, could take a month or

18  two in Mexico.

19    And that we shouldn't be taxed with if -- you know, they

20  said, all we got to do is give him a quit claim deed and it's

21  going to go away --

22    THE COURT:  Uh-huh.

23    MR. LODZOW:  -- that -- that doesn't happen in a

24  million years in Mexico.  No offense.  So conceptually we'd like

25  to maybe come back to THE COURT --

1          THE COURT:  Uh-huh.

2          MR. LODZOW:  -- and indicate to THE COURT what the plan

3   is perhaps -- you know, sometime next week to tell you what

4   you're telling us and what we can do.  That's the best we can do.

5          THE COURT:  Well -- well -- I -- I think -- here's what

6   I will do.  I will set a return -- well, I mean he -- first of

7   all, Mr. Roberts will be taken into custody today.

8      And I will let you all work out what documents need to be

9   signed by Mr. Roberts.  It sounded to me like there were

10  documents previously prepared and agreed to that would have

11  effectuated things, but that Mr. Roberts undermined those.

12     So I'm not inclined to let Mr. Roberts out just by signing

13  the -- the documents, because I think that leads us down the

14  exact same road we've already been, which he signs documents and

15  then he instructs people to undermine those documents.

16     So I want to be careful not to do that.  So I will -- I can

17  set a review hearing for the week of August 16th.  I am wide open

18  on Monday the 16th and Tuesday the 17th.

19     So I am out of state next week.  If you all file a

20  stipulation and everyone agrees that contempt has been purged

21  next week, email it to my court clerk and I can take action on it

22  if it's next week.  But if there is a dispute, the earliest we

23  can appear is on -- on the 16h.

24         MR. LODZOW:  Your Honor, just briefly.  And I

25  appreciate what THE COURT's saying.

1          THE COURT:  So, please --

2          MR. LODZOW:  I know you mean no disrespect.  Please

3    feel free to have a seat so I can hear you.

4          MR. LODZOW:  Well, look --

5          THE COURT:  I just need a record.

6          MR. LODZOW:  I think we'd rather have you tell us

7    something specifically.  Mr. Leone is a good lawyer.  They would

8    love a fire sale here or for us to lose $5 million on the

9    execution.  That's what this is all about.

10       And so at the end of the day I think you made -- you know,

11   THE COURT has said, look, this has the purge process.  And if you

12   look at these -- the language in the purge document there's

13   nothing he can do in jail consistent with this that would really

14   purge this, because he has -- doesn't have the ability to do

15   anything.

16       So he's purged almost from the minute you put him in jail.

17   So it's kind of -- you know, that to me is kind of sufficient and

18   he gets it.

19         THE COURT:  Are you -- are you suggesting he can't sign

20   and notarize documents in jail?  I -- I'm truly asking.

21         MR. LODZOW:  No.  No.

22         THE COURT:  Because I think you can.

23         MR. LODZOW:  I -- I -- I'm suggesting that if you let -

24   - you know, let it be up to Mr. Leone, then conceptually he's in

25   jail and the only way he gets out of jail is if he signs

Aple.Appx. 368

1  something that Mr. Leone wants him to sign.  I'm -- I'm -- and

2  that's going to be brutal.

3      So all I'm asking you to do is if you have some ideas, set

4  them on the record now so that we can talk to the lawyer not

5  about the impossible -- we can't do anything about that, but we

6  can talk to -- you know, our client about complying with an order

7  that you think will suffice as quickly as possible.

8      And if you think it will suffice and -- and you know, that's

9  THE COURT's order, then we think you should let the guy out of

10 jail.  Because otherwise it's this ethereal he'll get out when

11 Mr. Leone likes the deal?

12      THE COURT:  No.  No.  No.  And that -- that's why I'm

13 -- I am giving you the option that the very next day that I am

14 back on the bench on the 16th I can -- I can be here to resolve

15 whatever those issues are.  We can certainly go off the record

16 for a few minutes for you all to have time to talk about what can

17 be accomplished.

18      MR. LODZOW:  Doesn't THE COURT want to tell us that?  I

19 mean if THE COURT just tells us what we have to satisfy -- it's

20 not Leone.

21      THE COURT:  No.  You have to satisfy me.

22      MR. LODZOW:  Right.  So if you have -- you know, if you

23 have a magic -- you know, kind of formula in your mind's eye we

24 have to know what the formula is to even talk to the client about

25 it.  If you have an idea about a moment that makes you content

1  with regard to a resolution of his being in jail, which --

2          THE COURT:  Uh-huh.

3          MR. LODZOW:  -- we think is kind of an illegal

4  sentence, but being in jail then we can't do much unless we know

5  what you have in your mind.  And that's tough to read.

6          THE COURT:  What I have in mind is having Mr. Roberts

7  provide instructions to every attorney that he has thus far

8  retained in Mexico that is acting on his behalf or RCC's behalf,

9  that their powers of attorney have been revoked and they are to

10  take absolutely no action with respect to the lien foreclosure,

11  the damaged bond thing, the criminal actions against any of the

12  parties to this case.

13      All of the things that we've been talking about that he is

14  doing, we need to have him -- and he's doing most of it through

15  his attorneys -- so he needs to revoke that.  And he needs to not

16  revoke it in the way that he has here (inaudible), which is

17  revoke and undermine.

18          MR. LODZOW:  All right.  We understand that.  What

19  else?  I mean if that's enough -- if -- if that satisfies you --

20  you know, we'll have that done by -- before the close of business

21  on Monday.

22          THE COURT:  And I would think you need an

23  acknowledgement from those attorneys that they agree -- that they

24  are bound by that revocation.

25          MR. LODZOW:  This fellow is never -- he's not going to

1  sign anything when -- if he does that he (inaudible), and the

2  exchange to him.  But that -- that record is pretty consistent.

3  This -- this lawyer thinks -- you know, we -- we call him a bit

4  of a wild card.  This lawyer thinks that indeed if he tells this

5  guy to stop --

6          THE COURT:  Uh-huh.

7          MR. LODZOW:  -- in terms of his -- his activity, he's

8  going to jail.  That's the other side of this coin if the -- the

9  Court misses.  But Mr. Rosen --

10         THE COURT:  Well -- well then I guess what we would

11 need would be an order from the Mexican court that he is no

12 longer.  And that could take a while, which is why you've had 19

13 months to deal with this, which is why I'm not particularly

14 sympathetic.  I mean this has been the order for 19 months.  And

15 the only actions that Mr. Roberts has taken are designed to skirt

16 this.

17         MR. LODZOW:  And what is the problem in giving him a

18 stay until the 16th, right?  And give us the opportunity to --

19 then we're going to have to probably see about hiring counsel.

20         THE COURT:  Right.

21         MR. LODZOW:  And -- and --

22         THE COURT:  Which -- which I understand Mr. Roberts has

23 already started that process with Hogan.

24         MR. LODZOW:  Well he couldn't afford counsel at the

25 time they wanted.  And he's pretty exhausted on money.  And he's

1  pretty behind on fees anyway.

2          THE COURT:  Yeah.

3          MR. LODZOW:  So that's the story.

4          THE COURT:  Mr. Podoll.  I need you on the microphone.

5          MR. PODOLL:  Sorry.  Your Honor, we have a -- a

6  knowledged expert in Mexican law here.  Mr. Leone's firm has used

7  him.  We've used him.

8          THE COURT:  Uh-huh.

9          MR. PODOLL:  Okay.  Why don't we get clarity and

10 definition on exactly what Mr. Roberts can do --

11         THE COURT:  Yeah.

12         MR. PODOLL:  -- okay.  While we're here.

13         THE COURT:  I -- I just was offering you all -- I was

14 just offering you all that opportunity to go off the record and

15 have that conversation, but Mr. Lodzow didn't want it.  If you're

16 renewing it, I would love it.  We'll go off the record for 10

17 minutes and then you all can talk about -- and everybody can tell

18 me what they think is going to solve this problem.

19         MR. PODOLL:  Are there any other components to solving

20 the problem other than what you've just said?  We need to know

21 that.

22         THE COURT:  I am -- I am bound by contempt order 4(a),

23 (b), (c), and (d).

24         MR. PODOLL:  Right.  But we're talking about (c) and

25 what -- you -- you said, Your Honor, well this is the -- you

1  know, this is the one that -- you know, you find the most blatant

2  or however you -- you worded it.  Okay.  He doesn't have an

3  ownership interest.  He's a lien creditor.  Okay.

4          THE COURT:  Well I haven't found that, but --

5          MR. PODOLL:  I -- I know you haven't found it.

6          THE COURT:  Yeah.

7          MR. PODOLL:  We're talking about purging the contempt

8  and getting him out or keeping him out of jail -- okay.  And

9  you're telling us, okay.  You want this done effectively.

10          THE COURT:  Uh-huh.

11          MR. PODOLL:  Okay.  If we can all agree on what it

12  means to get the revocation of the powers done effectively

13  between us in the next ten minutes, is that going to keep him out

14  of jail?  Because if you wait for the Mexican courts to do it, it

15  could be months.

16          THE COURT:  I understand that.  It could be a lot less

17  than 19 months is my point.  So -- yes, well don't act surprised

18  that these are the rules.  These have been the rules for 19

19  months.  So we'll go off the record.  I suggest for 10 minutes.

20  If you need 15, goodness knows I'm okay with that.  So we're off

21  the record.

22      (Recess taken from 5:25 to 5:47 p.m.)

23          MR. LODZOW:  -- profoundly --

24          THE COURT:  Okay.  Hang on.  We are back on the record.

25          MR. LODZOW:  Oh.  I'm sorry.  I think the chances for

1  resolution will be profoundly increased -- because I think we've

2  talked about the elements.  Mr. Leone has there's been a prior

3  deal and can't trust -- you know, the players because last time

4  around, Mr. Otto got fired.  We look at that.  But the point is,

5  one -- you know, the client is going into a COVID hotbed.

6      This is the time -- you know, more than ever with the issue

7  about the Delta Virus -- about burying a guy in a COVID infected

8  jail that seems to me something that -- you know, THE COURT could

9  take some stay on it until THE COURT comes back in town.

10      I will tell you in good faith, we -- you know, talked to our

11  expert about who we can hire.  There's an ability we hope to do

12  that.  Mr. Leone knows firms that he's talking about take a lot

13  of money, even to get up front on these cases.  We'd have to see

14  what -- you know, the ability to hire someone.  We have someone

15  that will help us with that.

16      But doing all those things even -- you know, kind of signing

17  up with a law firm and the guy's in jail -- you know, that's

18  tricky as well.  So I'm asking again for THE COURT to consider a

19  stay.  We'll come back on the 16th.  You shouldn't put this guy

20  in jail on these facts and this history.  I know THE COURT

21  prolongs it over 19 months, it's about the ability today.  And

22  THE COURT kind of focused on the history than putting him in

23  jail.

24      So in that -- in that regard I think a stay is no prejudice

25  to anyone.  I mean you got 200,000 in cash -- in real money.  And

1 again, coming back in front of you on the 16th, if we've gotten

2 nothing done, then we've got nothing done and he goes back to

3 jail.  That's pretty easy.

4    And so I just don't think -- Leone kind of -- because of Mr.

5 Leone -- who we've worked together on cases for many years and

6 very -- very complex case -- very -- you know, doesn't trust our

7 predecessors and has some concern about trust with some of the

8 people that they've allowed.

9    So that makes it very difficult to even kind of put

10 something together that works.  You -- you have to know that when

11 you set that up for him to make a bond, they didn't think he was

12 going to be here.  I think everybody in this room thought he

13 wouldn't show up to some extent -- the 200 would go.

14        THE COURT:  I had confidence he would be here.

15        MR. LODZOW:  Well I'm glad you did, because -- you

16 know, I wanted to make sure he met me in the morning.  And he's

17 kind of spent -- you know, the moments working with us lawyers to

18 try and get -- you know, kind of this to this day, which has been

19 a difficult day.  So I -- at the worst you put this on the board

20 on the 16th because --

21        THE COURT:  Yep.  Let -- let -- let's do that.  So I --

22 Mr. Roberts will be taken into custody this evening.  I will set

23 for 9:00 a.m. on Monday the 16th.

24    If -- if Defendants wish to present evidence to me before

25 the 16th, that Mr. Roberts has purged, here are the instructions.

1     You are to file a notice with THE COURT on -- on the efiling

2  system.  You are also to email my court clerk -- I think you all

3  have that email, but I will give it to you again.  It is

4  o2courtroom409@judicial.state.co.us.  Signify that it's an urgent

5  matter and that the Judge has instructed you to bring it to my

6  attention.

7     And even though I am on vacation, I will take my computer

8  and my Webex so that we can have an emergency hearing sometime

9  next week if there have been significant steps taken by Mr.

10  Roberts to purge.

11     So we are set for 9:00 a.m. for the -- the review hearing

12  just to see what progress has been made.  But if something -- if

13  Mr. Roberts does make a serious undertaking before that time --

14  before the 16th, I will certainly get on Webex with you all as

15  soon as I get that information.

16        MR. PODOLL:  So we understand, you're looking to Mr.

17  Roberts to make a serious effort and call it to your attention?

18        THE COURT:  Correct.

19        MR. PODOLL:  Because frankly the idea of getting an

20  agreement -- okay -- between the parties -- just from the

21  discussion we have is going to be a non-starter.

22        THE COURT:  Right.  That --

23        MR. PODOLL:  So it seems that -- that what we can do --

24  is I understand what THE COURT wants us to do and Mr. Roberts to

25  do is to make sure that we're going to terminate the authority of

1  the Mexican attorneys in a manner that will stick.  That's what

2  we're going to be focused on, is that correct?

3        THE COURT:  And ceasing these actions that he has set

4  into motion in Mexico.

5        MR. PODOLL:  Right.  Right.  So it's basically stopping

6  the actions in Mexico and re -- doing whatever he can do --

7        THE COURT:  Right.

8        MR. PODOLL:  -- in a way that's going to work to revoke

9  the power of attorney of the Mexican attorney -- the powers of

10  the Mexican attorneys?

11        THE COURT:  Right.  And -- and just to be clear, I am

12  only looking -- I understand that Mr. Roberts is only capable of

13  doing what Mr. Roberts is capable of doing.

14    This -- this sentence is not contingent on other people

15  doing things; right?  Because he can't be held in jail while

16  we're waiting for other people to do things.  What he can be --

17  you know, for example.

18    If one of the -- if one of the things that you do to show to

19  me that he is purging the contempt is that he signs another

20  document that looks like Exhibit 11, that is not going to be

21  sufficient.

22        MR. PODOLL:  Got it.

23        THE COURT:  Right?

24        MR. PODOLL:  Got it.

25        THE COURT:  So when he is telling THE COURT's to do

1  something and undermining it on the other hand, that's not going

2  to be sufficient.

3  MR. PODOLL:  Okay.  So basically, we will then put

4  together something as quickly as we can to satisfy the Court that

5  we are working (inaudible) regarding the Mexican --

6  THE COURT:  Be careful with the microphone.

7  MR. PODOLL:  I'm sorry.  Terminate the authority of the

8  Mexican attorneys and to stop taking any actions that -- you

9  know, might be addressed in the purge clause?

10  THE COURT:  Yes.  Mr. Leone?

11  MR. LEONE:  Your Honor, this always happens.

12  THE COURT:  Uh-huh.

13  MR. LEONE:  The four conditions in the purge order are

14  crystal clear.

15  THE COURT:  Yep.

16  MR. LEONE:  And that's what needs to be done.  And Mr.

17  Podoll --

18  THE COURT:  Yep.

19  MR. LEONE:  -- is trying to skinny it down to, well if

20  we revoke the lawyer's authority that will be enough.  He's

21  negotiating this purge order with you and --

22  THE COURT:  No, he's not.  Let me --

23  MR. LEONE:  Okay.

24  THE COURT:  -- let me be clear.  He is not negotiating

25  it.  The purge order 4(a) through (d) is sufficient.  And -- and

Aple.Appx. 378

1    when you think you have met those things, then you come back to

2    me.

3        MR. PODOLL:  Okay.  And, Your Honor, it's hard to

4    divorce this from the damage trial that we have --

5        THE COURT:  I disagree.  Okay.

6        MR. PODOLL:  -- on October 15th.

7        THE COURT:  So we are all done --

8        MR. PODOLL:  Okay.

9        THE COURT:  -- tonight.  The Sheriffs have been

10   incredibly indulgent and have waited an extra hour while we try

11   to get clarity on that.

12       So with that, we need to let Mr. Roberts be escorted.  If

13   you need to continue to make a record after he has been escorted,

14   we can.  But -- but I need to let the Sheriffs go.

15   (Pause)

16       Okay.  If you all need to make a record while I attend

17   to the Sheriff's needs.

18       MR. LODZOW:  To make a record?  I'm sorry.

19       THE COURT:  Yeah.  I -- Mr. Podoll was taking about the

20   damages hearing and I interrupted him because we had to get Mr.

21   Roberts on the road.  But I'm just saying, if you need to finish

22   making a record you can do that while I am getting the Sheriff

23   the order he needs?

24       MR. PODOLL:  Okay.  Could I have one moment to confer

25   with my co-counsel, Your Honor?

1          THE COURT:  Sure.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATE

2

3          I, Sherrie O'Brien, certify that the foregoing is a

4    correct transcript from the electronic sound recording of the

5    proceedings in the above-entitled matter.

6

7          Signed this 15th day of August, 2021.

8

9

10                         SHERRIE O'BRIEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| **District Court, City and County of Denver, State of Colorado**<br>1437 Bannock Street<br>Denver, CO 80202<br><br>**Plaintiffs:**<br>RICHARD LANG<br>v.<br><br>**Defendants and Cross Claimants:**<br>TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL VERTUCA, and PdC, LLC,<br><br>And<br><br>Riviera Country Club S. de R.L. de C.V. ("RCC")<br>**Third Party Plaintiff**<br><br>**v.**<br><br>**Cross Claim Defendant:**<br>Michael Joseph Roberts, Sr.<br><br>And<br><br>**Third Party Defendants:**<br>Michael J. Roberts LLC,<br>Sandstone Ventures LLC | ▲   COURT USE ONLY   ▲ |
| | Case Number: 2015CV31828<br><br>Division: 409 |
| **Order Re: August 6, 2021 Hearing on Contempt** | |

This matter came before the Court for an evidentiary hearing on August 6, 2021 to determine whether Cross Claim Defendant, Michael Roberts, Sr., (hereinafter "Roberts") remained in contempt of court or whether he had purged the contempt as required by the Order issued by Judge Johnson on January 24,

1

2020.  Roberts appeared in person and was represented by Gary Lozow, Richard Podoll and Robert Podoll. Defendants and Cross Claimants, Timothy Flaherty, Timothy Kneen, Carl Vertuca and PdC, LLC, and Third-Party Plaintiff Riviera Country Club S. de R.L. de C.V. ("RCC") (collectively "Movants") appeared through their attorneys William Leone and Elliot Turner.  The Court heard testimony from David Lopez, Esq., Roberts, and Benjamin Rosen, Esq.  Exhibits 2, 4, 11, N and O were received into evidence.  Having heard the evidence, having reviewed the court file, having reviewed Roberts' *Motion to Vacate the Contempt Proceedings, or Alternatively to Order a Criminal Jury Trial on the Contempt Proceedings*, and the *Objection* thereto, the Court FINDS and ORDERS:

1.  On January 24, 2019, Judge Plotz issued a Preliminary Injunction in this matter, which provided in relevant part:

> "1. Roberts, and all others acting in concert with him, including but not limited to Sandstone and Roberts LLC, as well as any attorneys or agents acting pursuant to his instructions shall cease, all actions, direct or indirect, that are inconsistent with ownership of the Initial Property and the Mustapha Property by PdC through its subsidiary RCC, and with TMTBC's ownership of the Beach House, including without limitation his pursuit of foreclosure in his individual capacity or for his individual benefit, efforts to deprive the other members of TMTBC of possession and enjoyment of the Beach House, and efforts to misappropriate ownership or control of the Initial Property, the Mustapha Property or the Beach House.
>
> . . .
>
> 7. In order to implement this injunction, Roberts is further ordered to instruct Mr. Juan Carlos Ramírez García, who was described during the hearing, as a person who Robert's attempted to authorize to act on behalf of RCC, to immediately cease to appear or file any

2

writ, brief of document of any nature as the agent or attorney-in-fact of RCC before any natural or legal person, public or private, administrative or jurisdictional authorities, including those already mentioned in section II above;

8. In order to further preserve the status quo, Roberts is ordered to take all actions necessary to revoke or terminate any purported power of attorney granted to any person, including Mr. Juan Carlos Ramirez Garcia, to act on behalf of RCC and advise the Mexican Courts in any proceeding affecting the title to the Initial Property, the Mustapha Property or the Beach House, of the terms of this injunction."

2. On April 22, 2019, cross claimants and third-party claimants Timothy Flaherty, Timothy Kneen, Carl Vertuca, PdC, LLC and RCC ("Movants") filed a Motion for Issuance of Contempt Citation ("Contempt Motion."). This Contempt Motion was supported by an "Affirmation" of Benjamin Rosen, Esq. which in turn referenced seven (7) exhibits detailing instances in which Roberts allegedly violated the preliminary injunction. This Contempt Motion, Affirmation and Exhibits were all served on Roberts' counsel of record, Tom Mattson, on April 22, 2019 through the CCES e-filing system. The Court takes judicial notice that Mr. Mattson opened or "read" the CCES files for the Contempt Motion and the Rosen Affirmation on April 22, 2019. Mr. Mattson filed a Response to the Contempt Motion on May 7, 2019, prior to the Court issuing the Contempt Citation. On September 13, 2019, the Contempt Citation and the Contempt Motion were personally served on Roberts. *See* Ex. B to Movants' Opposition to Roberts' Motion to Vacate Contempt Proceedings or Alternatively Hold a Jury Trial, *Affidavit of Service by M. Aragon* (filed Oct. 8, 2019); see Ex. C to Movants'

3

Objection, *Roberts Dep. Tr.* at 35:22-25 (Sept. 16, 2019) ("Let the record reflect that an outside process server has delivered to Mr. Roberts the motion for contempt with the citation to show cause and the associated materials."); and Ex. D to Movants' Objection, *Email with attachments from S. Morrissey to Checkmate, Inc.* (Sept. 13, 2019) (attaching contempt materials to be served on Roberts, including affidavit).

3. A hearing was held on October 11, 2019, in which the Court accepted evidence and heard the testimony of witnesses. At issue in the October 11, 2019 hearing was whether Roberts should be held in contempt of court for disobeying the Preliminary Injunction orders issued by this Court on January 24, 2019.

4. Following the October 11, 2019 hearing, Judge Johnson issued a ruling from the bench finding Roberts in contempt of court for violation of certain provisions of the preliminary injunction. Judge Johnson entered orders requiring Roberts to perform certain actions to remedy his prior violations of the preliminary injunction and ordered all parties to return to court on October 15, 2019 to determine whether Roberts had completed the actions required to remedy his contempt of court. At the October 15, 2019 hearing, it appeared that Roberts had taken some steps to remedy his contempt, but the court set a further review hearing on October 28, 2019 to determine whether Roberts' actions had the necessary effect of remedying the contempt. At the October 28, 2019 review hearing, it was determined that the actions taken by Roberts were wholly

4

insufficient to remedy his prior violations of the preliminary injunction. Judge Johnson informed Roberts that he needed to take additional steps to remedy the prior violations, and informed Roberts that remedial sanctions would be imposed if Roberts failed to comply. A follow-up hearing was scheduled for November 14th.

5. On November 14, 2019, Roberts only appeared by telephone and had a bad connection. The Court ordered that Roberts appear in person at a hearing rescheduled for December 16, 2019. Roberts failed to appear at the December 16, 2019 hearing and a bench warrant was issued.

6. Thereafter, on January 6, 2020, Judge Johnson entered a written order concerning contempt. The January 6, 2020 order contained the following relevant findings:

    a. [T]his Court finds Michael Joseph Roberts, Sr is in contempt for failing to comply with certain portion of this Court's January 24, 2019, Order.

    b. The Court finds Mr. Roberts had the ability to comply with numbered paragraph 1 of the 1/24/19 Order, and that he has not done so. That paragraph ordered Mr. Roberts to cease all actions, direct and indirect, that are inconsistent with the ownership of the Initial Property and the Mustapha Property by PdC through its subsidiary RCC, and with TMTBC's ownership of the Beach house. The testimony of Mr. Roberts as well as his attorney in Mexico, Mr. Juan Carlos Ramirez Garcia established that Mr. Roberts had Mr. Ramirez Garcia continue to file documents in Mexico in furtherance of foreclosure proceedings related to the above properties in direct violation of Judge Plotz's order.

    c. The Court finds Mr. Roberts had the ability to comply with numbered paragraph 7 of the 1/24/19 Order, and that he has not done so. That paragraph ordered Mr. Roberts to instruct Mr. Juan

<div align="center">5</div>

Carlos Ramirez Garcia to immediately cease to appear or file any writ, brief of document of any nature as the agent or attorney-in-fact of RCC before any natural or legal person, public or private, administrative or jurisdiction authorities. The testimony of Mr. Roberts was that he did not comply with this order. Further the testimony of Mr. Juan Carlos Ramirez Garcia indicated that he, in fact, continued to file such documents at Mr. Roberts' request in Mexican Courts. That Mr. Ramirez Garcia did file such papers under Mr. Roberts orders, in contravention of the 1/24/19 Order, was corroborated by Mr. Benjamin Rosen, a licensed attorney in Mexico and the United States.

d. The Court finds Mr. Roberts had the ability to comply with numbered paragraph 8 of the 1/24/19 Order, and that he has not done so. That paragraph ordered Mr. Roberts to revoke or terminate any purported power of attorney granted to any person, including Mr. Juan Carlos Ramirez Garcia, to act on behalf of RCC. The testimony by Mr. Roberts was that he did not comply with this order of the Court. Further, the testimony of Mr. Ramirez Garcia made clear that he continued to filed actions and pleadings in Mexican Courts on behalf of Mr. Roberts and RCC after 1/24/19. From this, this Court infers that Mr. Roberts did not revoke or terminate the power of attorney granted to Mr. Ramirez Garcia. The fact of the existence of such filings was corroborated by the testimony of Mr. Benjamin Rosen.

7. Importantly, Judge Johnson's January 6, 2020 written order contained Paragraph 4 which advised Roberts in writing of the steps he needed to take to purge himself of contempt. Specifically, Paragraph 4 provided, "Mr. Roberts can purge this finding of contempt by:

a. Transferring, fully, to RCC any ownership interest in the disputed properties (specifically identified in the 1/24/19 Order) that he has, and/or that any entity he has an interest in purports to have (specifically, but not limited to Logistics Mexico Desarrollos Inmobiliarios y Publicitarios S.A. de C.V—hereinafter "Logistics Mexico").

6

b. Ceasing any and all actions in Mexico inconsistent with RCC's ownership rights in the disputed properties. This includes the filing of new actions as well as continuing to pursue actions that have already been filed.

c. Other than to transfer ownership rights of the disputed properties to RCC, Mr. Roberts and any entity in which he is a member (or in which he has an ownership interest) shall cease all actions in Mexico for damages against RCC, the crossclaimants, and/or the third-party plaintiff for alleged interference with his (or any entity's, including but not limited to Logistics Mexico's) ownership interest in the disputed properties. This includes the filing of new actions as well as continuing to pursue actions that have already been filed.

d. Mr. Roberts will terminate the authority of Messrs. Rodolfo Garcia Pliego, Juan Carlos Ramirez Garcia, and/or Elide Maria Meriggi Perez to do any legal work of any type on behalf of RCC."

8. The January 6, 2020 Contempt Order imposed the following sanctions on Roberts until Roberts had fulfilled the requirements of Paragraphs 4(a), (b), (c) and (d):

a. Mr. Roberts will be fined $1,000 per day.
b. Mr. Roberts is to be held in the custody of the Denver County Sheriff.

9. After a series of court proceedings at which Mr. Roberts did not appear, this matter was set for an evidentiary and sentencing hearing on August 6, 2021 to determine whether Roberts remained in contempt of court or whether he had purged the contempt as required by Paragraphs 4(a), (b), (c) and (d) of the January 6, 2020 Order. Before imposing a sentence of imprisonment, the Court was required to determine whether Roberts had the ability to comply with the

7

underlying Preliminary Injunction and the purge requirements of the January 6, 2020 Order.

10. Prior to the August 6, 2021 hearing, Roberts' counsel filed a motion to vacate the contempt proceedings, or in the alternative to have the matter heard by a criminal jury. In support of the request to vacate the contempt proceedings, counsel argued that the Contempt Citation did not adequately advise Roberts of the contempt allegations which were being made against him. While the Contempt Citation does not contain a recitation of those allegations, the allegations are laid out in great detail in the Contempt Motion, supporting Rosen Affirmation and Affirmation Exhibits, all of which were served on Roberts' counsel on April 22, 2019 and personally served on Roberts on September 13, 2019. The Court finds this constitutes proper notice pursuant to C.R.C.P. 107.

11. In support of the request for a jury trial, Roberts cited to *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833–34 (1994). However, the facts of *Bagwell* are entirely distinguishable from those at issue in this matter, and there is no right to a jury trial in a remedial contempt proceeding where the alleged contemnor will not face more than six months imprisonment. *Kourlis v. Port*, 18 P.3d 770 (Colo. App. 2000) (when the maximum sentence does not exceed six months in prison, the alleged contemnor is not entitled to a jury trial); *Fort v. People ex rel. Co-op. Farmers' Exchange*, 256 P. 325, 81 Colo. 420 (1927) (one charged with contempt is not entitled to trial by jury); and *Wyatt v.*

**MOVANTS' EXHIBIT 32**
**Page 8 of 14**

Aple.Appx. 389

*People*, 28 P. 961, 17 Colo. 252 (1892) (respondent in contempt proceedings is not entitled under the constitution to a trial by jury).

12. As an initial matter, the Court finds that the testimony of Roberts was not credible in many respects. Roberts appeared only able to recall events that were favorable to his version of events and claimed he was unable to recall other events that would have been unfavorable to his positions. Roberts testified in a manner that defied logic and common sense. There were numerous times that Roberts made statements (such as referring to Mr. Juan Carlos Ramirez as "my attorney" and then correcting himself to refer to Mr. Ramirez as "RCC's attorney") which revealed that he was struggling to keep his story straight.

13. Irrespective of the general lack of credibility associated with the testimony of Roberts, there were some things that were established by Roberts' testimony. First, Roberts acknowledged that he was aware of the January 6, 2020 Contempt Order. Specifically, Roberts described his interactions with several of his lawyers surrounding the terms of the Contempt Order. Second, Roberts acknowledged that he did sign the documents introduced into evidence at the August 6, 2021 hearing as Exhibits N, O and 11. Third, Roberts is a savvy businessman with a history of engaging in litigation. Fourth, Roberts has been able to retain and pay numerous lawyers in Colorado and Mexico to represent his interests through the course of this litigation/partnership dispute.

9

14.   At the August 6, 2021 hearing, Roberts presented the testimony of David Lopez, Esq., an expert in Mexican law.  Mr. Lopez testified as to his opinion that Roberts had satisfied Purge Paragraph 4(a) of the Contempt Order because in Mr. Lopez's view, Roberts did not have any ownership interest in the subject property because he only held a lien interest which he was in the process of foreclosing (whereby he would then become the owner of the property).  In Mr. Lopez's view, Roberts was also in compliance with Purge Paragraph 4(b) because Mr. Lopez did not view maintaining the foreclosure proceedings on the lien as being contrary to RCC's ownership rights in the subject properties. Mr. Lopez also opined that Roberts had complied with Purge Paragraph 4(c) because Roberts had ceased all actions in Mexico for damages against RCC.  On this point, however, Mr. Lopez conceded that if Roberts was continuing to file pleadings in Mexico to pursue damages against RCC, that would be contrary to Purge Paragraph 4(c).  Finally, Mr. Lopez opined that Mr. Juan Carlos Ramirez was acting outside of Roberts' direction and Roberts was legally unable, under Mexican law, to revoke the Power of Attorney that Roberts had previously granted to Mr. Ramirez.

15.   Movants introduced Exhibits N and O into evidence, documents Roberts acknowledged signing, which were pleadings filed in the Mexican courts within the past year wherein Roberts continued to pursue the damages action against RCC and which related to advancing Roberts' interests in an appeal in an action

MOVANTS' EXHIBIT 32
Page 10 of 14

related to enforcement/foreclosure of the lien. However, Roberts claimed, without any credibility whatsoever, that he did not know what the documents were when he signed them. He claimed that on two separate occasions, Mr. Ramirez did not tell him anything about the nature of the documents, but told Roberts that Roberts must sign the documents or Roberts would face criminal prosecution. The Court finds this version of events to be completely incredible. The Court finds that Roberts, working in conjunction with Mr. Ramirez, who was working at the direction of Roberts, filed these documents with the Mexican courts, knowing that they were in direct violation of the preliminary injunction and the Contempt Order. As acknowledged by Mr. Lopez, these actions by Roberts were contrary to the requirements of Purge Paragraph 4(c).

16. With respect to the requirement that Roberts revoke Mr. Ramirez's Power of Attorney, Roberts testified that he had tried to accomplish that task by signing such a revocation at the Mexican consulate in Denver. However, Roberts acknowledged that when he was at the Mexican consulate for this purpose, he informed the notary that he was not signing the document voluntarily and that he was only signing the document because he was compelled to do so by Judge Johnson. As a result of Roberts' statements, the notary would not process the revocation document. The Court finds that Roberts deliberately sabotaged the notarization of the revocation of the power of attorney so that Mr. Ramirez could continue to act at the direction of Roberts, contrary to the preliminary injunction

11

and the Contempt Order. Roberts did not present any evidence that he had made any other attempts to revoke the power of attorney or that any revocation was ever delivered to Mr. Ramirez or the Mexican courts.

17. Similarly, Roberts presented the Court with Exhibit 11 which was a document signed by Roberts and submitted to the Mexican court purporting to withdraw Roberts' claims in the damages action. However, Roberts again ensured that his submission would be rejected by the Mexican court because Roberts included in Exhibit 11 a statement that he was only withdrawing his damages claim because he had been ordered to do so by Judge Johnson. The Court finds that Roberts drafted Exhibit 11 in such a manner that he knew it would be thrown out by the Mexican court and that it would not have any binding authority.

18. With respect to the revocation of the Ramirez power of attorney, the Court also rejects Roberts' argument that the October 2020 email from Roberts' then attorney, Otto Hilbert, constituted a revocation of that power of attorney. The Hilbert email (Exhibit 2) does not reference the power of attorney, does not reference revocation, and indeed, instructs Mr. Ramirez to continue working on certain matters at Roberts' direction. This is additional corroboration that Mr. Ramirez continued to take direction from Roberts. Roberts also testified that he did not give Mr. Ramirez any instructions after the October 2020 Hilbert email. Again, the Court finds this testimony completely incredible in light of Roberts

12

Aple.Appx. 393

having continued to meet with Mr. Ramirez and having continued to advance Mexican litigation in concert with Mr. Ramirez. To the extent that Roberts has claimed that Mr. Ramirez is acting outside of Roberts' instruction, there has been no credible evidence presented on that point. All evidence is that Mr. Ramirez continues to act entirely consistent with Roberts' interests in foreclosing on the HOTUSA lien.

19. The Court finds that all of the actions that Roberts has purportedly taken to comply with the preliminary injunction and the Contempt Order have been merely theatrics designed to make it appear that Roberts is complying with court orders. Indeed, the Court finds that all of Roberts' actions with respect to the court actions in Mexico have been attempts to undermine and circumvent the orders of this Court.

20. The Court finds that at all times, including the present time, Roberts has had the ability to comply with the preliminary injunction and the January 6, 2020 Contempt Order's purge clauses. Roberts is an experienced businessman and has retained a fleet of well-compensated lawyers in Colorado and Mexico. At all times, Roberts has had the ability to direct his attorneys to act consistently with the preliminary injunction and the Contempt Order, but he has instead done the exact opposite.

21. Roberts has requested a stay of the jail sentence that has been imposed to give him additional time to comply with the purge clauses of the Contempt

13

Order.  However, Roberts has done nothing to explain why he needs additional time to purge the contempt. Roberts has had nineteen (19) months to comply with the Contempt Order dated January 6, 2020, but he has refused to do so and continues to act in defiance of those orders.

22.  Accordingly, the Court remands Roberts to the custody of the Denver County Sheriff for a term of imprisonment not to exceed six months.  The Court has scheduled a review hearing for August 16, 2021 at 9:00am for Roberts to present to the Court information and documentation concerning the efforts he has undertaken, consistent with the January 6, 2020 Contempt Order, to purge his contempt. Should Roberts believe that he has taken meaningful steps to purge the contempt prior to August 16, 2021, his counsel may request an emergency hearing with Division 409.

Done and signed this 8th day of August 2021, *nunc pro tunc* August 6, 2021.

SO ORDERED.

_____
Marie Avery Moses
District Court Judge

MOVANTS' EXHIBIT 32
Page 14 of 14

| | |
|---|---|
| **District Court, City and County of Denver, State of Colorado**<br>1437 Bannock Street<br>Denver, CO 80202 | |
| **Plaintiffs:**<br>RICHARD LANG<br>v.<br><br>**Defendants and Cross Claimants:**<br>TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL VERTUCA, and PdC, LLC,<br><br>And<br><br>RIVIERA COUNTRY CLUB S. de R.L. de C.V. ("RCC")<br>**Third Party Plaintiff**<br><br>**v.**<br><br>**Cross Claim Defendant:**<br>MICHAEL JOSEPH ROBERTS, SR.<br><br>And<br><br>**Third Party Defendants:**<br>MICHAEL J. ROBERTS LLC,<br>SANDSTONE VENTURES LLC | ▲ **COURT USE ONLY** ▲ |
| | Case Number: 2015CV31828<br><br>Division: 409 |

## ORDER RE: JULY 23, 2021 HEARING ON TRAVERSES OF AUGUST 20, 2020 WRIT OF ATTACHMENT

THIS MATTER came before this Court for hearing on July 23, 2021, upon Cross-Claim Defendant Roberts' (hereinafter "Roberts") two traverses of the Writ of Attachment issued by the Court on August 20, 2020. Roberts appeared in person and was represented by Richard Podoll, Robert Podoll, Corrie Caler and

1

Gary Lozow. Defendants and Cross Claimants, Timothy Flaherty, Timothy Kneen, Carl Vertuca and PdC, LLC, and Third-Party Plaintiff Riviera Country Club S. de R.L. de C.V. ("RCC") (collectively "Cross Claimants") appeared through their attorneys William Leone and Eliot Turner. Roberts and Cross-Claimant Timothy Kneen (hereafter "Kneen") testified. The Court found much of Mr. Roberts' testimony to lack credibility. By way of example, Mr. Roberts tended to provide elaborate answers to questions which he thought would aid his case, but claimed not to remember information that would have been detrimental to his case. The Court having reviewed the traverses and the related pleadings filed by the parties, having heard the evidence presented at the hearing and having reviewed the exhibits admitted into evidence, finds, concludes, and orders as follows.

<p style="text-align:center"><strong>FINDINGS OF FACT</strong></p>

On October 4, 2018, Cross Claimants filed a motion to amend the pleadings and assert cross claims and third-party claims against Michael Roberts, along with his entities Sandstone Ventures, LLC and Michael J. Roberts, LLC. **Motion to Amend (Oct. 4, 2018)**.

The proposed cross claim complaint asserted claims against Roberts, Sandstone, and Michael J. Roberts LLC, for breach of contract, tortious interference, promissory estoppel, misappropriation of corporate opportunity,

<p style="text-align:center">2</p>

<p style="text-align:center"><strong>MOVANTS' EXHIBIT 34</strong><br/><strong>Page 2 of 22</strong></p>

fraud, fraudulent misrepresentation, and breach of fiduciary duty, among other things.

Cross Claimants alleged that Roberts falsely represented that he would pay, on behalf of PdC, LLC, a Colorado limited liability company, the balance due under a settlement agreement between PdC's subsidiary Riviera Country Club ("RCC") and a company called Hotusa, which would extinguish a lien held by Hotusa on properties RCC owned. Cross Claimants further alleged that Roberts violated his fiduciary duties to PdC as one of its managers by attempting to foreclose on those properties individually. Cross Claimants sought injunctive relief and this Court held a hearing on their motion to amend and motion for a preliminary injunction. At the end of the hearing, the Court granted the motion to amend and partially granted the requested injunctive relief.

In August 2019, during the time after the injunction issued and following the issuance of a contempt citation, Roberts transferred the rights he acquired from Hotusa to a Mexican company he formed called Logistics Mexico Desarollos Inmobiliarios y Publicatorios S.A. de C.V. (Logistics) for no consideration. **Cross Claimants' Ex. K**. The purpose of this transfer was to allow Logistics to take title to the properties in Mexico since Roberts, who is not a Mexican national, could not take title to the properties himself.

Roberts was later found in contempt for violating the injunction. **Contempt Order (Jan. 6, 2020)**. In January 6, 2020 contempt order, this Court

3

ordered that Roberts be jailed and pay a $1,000 per day fine until he purged his contempt. Among other things, the contempt order provided Roberts could purge his contempt by fully transferring to RCC any ownership interest in the disputed properties that he (or any entity in which Roberts had an interest) had. The Court also awarded Cross Claimants attorneys' fees.

Following the initial contempt proceedings, the Court held a trial on Cross Claimants' breach-of-fiduciary-duty claims on January 24, 2020. After that trial, the Court held that Roberts had breached his fiduciary duties by acquiring the lien rights from Hotusa for himself and attempting to foreclose on the properties. **Findings of Fact & Conclusion of Law at pp. 12-13 (June 19, 2020)**.

On July 8, 2020, the Court scheduled a trial on damages related to Roberts's breach to be held on December 21 and 22, 2020.

In June and July 2020, this Court entered judgments against Roberts for the attorneys' fees award related to the contempt proceedings and the fines for his continued contempt. The court entered judgment against Roberts for $103,155.15 in attorneys' fees and $1,802.48 in costs related to the contempt proceedings on June 23, 2020. **Order re: Cross Claimants' Statement of Attorneys' Fees and Costs Pursuant (June 23, 2020)**. The Court reduced the ongoing remedial contempt to a $186,000 judgment against Roberts on July 9, 2020. **Order Reducing On-Going Remedial Contempt Fines to Judgment (July 9, 2020)**. Those judgments remain outstanding.

**MOVANTS' EXHIBIT 34**
**Page 4 of 22**

Aple.Appx. 399

On July 22, 2020, after the court issued its judgments against Roberts, Cross Claimants served post-judgment interrogatories on Roberts seeking information about his assets. **Cross Claimants' Ex. H**. Roberts did not answer and still has not answered those interrogatories although they were served over a year ago and due to be returned before the writ of attachment was issued.

On August 18, 2020, the Cross Claimants sought an *ex parte* motion for a writ of attachment against Cross Claim Defendant Michael J. Roberts, Sr.

Cross Claimants sought the writ on several grounds:

1.     Roberts was indebted to Cross Claimants for judgments the Court had already entered against him;

2.     Roberts was liable to Cross Claimants for breaching his fiduciary duties and their damages could be as high as $30 million dollars;

3.     Roberts had evaded service, including by refusing to submit to an arrest warrant that had been issued for him;

4.     Roberts's principal bank account was nearly empty when garnished and that he had refused to answer interrogatories regarding his assets; and

5.     Roberts was about to depart the state with the intention of removing himself from the Court's jurisdiction (with Poland as his expected destination), making enforcement of judgments impossible.

The Court granted the motion and issued the writ of attachment on August 28, 2020.

At the time the writ of attachment was issued, an arrest warrant had been outstanding for Roberts since December 16, 2019. **Minute Order (Dec. 16, 2019)**. That warrant was issued for Roberts's repeated failure to personally appear at hearings as ordered by the Court.

At the time the writ of attachment issued, Roberts had also been found in contempt and subject to a purge order since January 6, 2020. **Contempt Order (Jan. 6, 2020)**. That order, among other things, required Roberts to be jailed until he purged his contempt. At no time after the contempt order was entered until the writ was issued did Roberts appear in court or otherwise surrender himself. (After he first failed to appear in November 2019, Roberts did not appear in court again until the July 23, 2021 hearing.)

On May 9, 2020, the Court ordered Roberts to surrender his passport. Roberts did not do so until August 2021. Indeed, despite the Court order to surrender his passport, in October 2020, after the writ of attachment issued, Roberts relocated to Mexico. Roberts testified that he remained in Mexico until March 2021, when he returned to Colorado. Roberts did not inform the Court that he had returned to Colorado in March 2021, nor did he surrender himself or his passport upon his return.

6

Cross Claimants attempted to collect on the judgments they obtained and issued writs of garnishment to various financial institutions. When Cross Claimants did so, Roberts's current attorneys filed papers expressing their intent to oppose those efforts. Among the grounds that Roberts raised in his objection to Cross Claimants' collection efforts were that he was required to be personally served with the writs of garnishment and notices of exemption. **See Notice of Intent to Respond (Dec. 8, 2020)** (arguing that "despite the caption, the requested relief is that substitute service be permitted, in lieu of personal service, on Mr. Roberts as required by C.R.C.P. 4"); **Roberts's Response to Motion to Enter Clerk to Direct Judgment (Dec. 14, 2020)** (arguing that motion is "procedurally deficient" because Cross Claimants "acknowledge that they have not personally served Roberts with the writ of garnishment" and "failed" to support the motion with "an affidavit of the person attempting service").

As reflected in the above described pleadings, Roberts objected to anything other than personal service despite earlier promises to the Court on October 15, 2019 that he could be served through his attorneys. **Roberts Ex. 78(A)**. Roberts made those promises after Cross Claimants had attempted to serve him with a contempt citation. **Roberts Ex. 75**; **Cross Claimants' Ex. C** (detailing attempted service during summer 2019). Shortly after Roberts promised to accept service through his attorney, he failed to appear as ordered by this Court and did not surrender himself after a warrant for his arrest was issued.

**MOVANTS' EXHIBIT 34**
Page 7 of 22

At the July 23, 2021 traverse hearing, Kneen testified that Cross Claimants had been unable to sell the properties in Mexico due to litigation with Roberts in Mexico over who owns the properties.

Kneen, who has an ownership interest in the properties through PdC, testified that the litigation with Roberts in Mexico had diminished the properties' values. Roberts introduced evidence that the properties he had attempted to foreclose on were by themselves worth between $12 million and $16 million in 2016. **Roberts Ex. 66**. Roberts also testified that he believed the properties' value was higher than $15 million. Kneen testified that the properties' values had declined since Roberts began his attempted foreclosure. Cross Claimants' are seeking damages for the diminished value of the properties – or their total value at the time Roberts began his foreclosure attempt if they are not returned to PdC.

Kneen also testified that another parcel in Mexico, unencumbered by the lien Roberts acquired from Hotusa, had been bought for $9 million in 2008. Kneen testified that he and PdC's other manager, Tim Flaherty, would have liked to sell the properties together because they would fetch a higher value together, but had not been able to do so as a result of the litigation. Despite their interest in selling the properties together, Kneen said that PdC decided to sell the unencumbered parcel in 2021 for $5 million. Cross Claimants are seeking damages for the diminished value of this parcel. Kneen also testified that he and

8

Flaherty had each spent approximately $3 million on costs related to maintenance of the properties in Mexico after Roberts began his foreclosure attempt. Cross Claimants are also seeking damages for these expenditures.

## CONCLUSIONS OF LAW

Colorado Rule of Civil Procedure 102(a) allows, "in an action to recover damages for tort committed against the person or property of a resident of this state," "nonexempt property of the party against whom the claim is asserted" to be "attached by an *ex parte* order of the court in the manner and on the grounds prescribed in this Rule" before judgment.

To obtain an attachment, "the party asserting the claim . . . his agent or attorney, or some credible person for him, shall file . . . an affidavit setting forth that the defendant is indebted to the plaintiff, or that the defendant is liable in damages to the plaintiff for a tort committed against the person or property of a resident of this state, stating the nature and amount of such . . . claim for damages, and setting forth facts showing one or more of the causes of the attachment in section (c) of this Rule." C.R.C.P. 102(b).

Rule 102(c) lists the potential grounds that justify issuance of an attachment, including those provisions relevant here:

1.     The defendant conceals himself or stands in defiance of an officer, so that process of law cannot be served upon him. C.R.C.P. 102(c)(3).

MOVANTS' EXHIBIT 34
Page 9 of 22

2.     The defendant has fraudulently conveyed, transferred, or assigned his property or effects, or a material part thereof, from this state with the intent to defraud, delay, or hinder one or more of his creditors, or to render process or execution unavailing if judgment is obtained. C.R.C.P. 102(c)(5).

3.     The defendant has fraudulently concealed, removed, or disposed of his property or effects, or a material part thereof, with the intent to defraud, delay, or hinder one or more of his creditors, or to render process or execution unavailing if judgment is obtained. C.R.C.P. 102(c)(6).

4.     The defendant has departed or is presently about to depart from this state, with the intention of having his property or effects, or a material part thereof, removed from the state. C.R.C.P. 102(c)(9).

Following the issuance of the attachment, a defendant may file a traverse and put at issue the grounds for the attachment. C.R.C.P. 102(n)(1). If at the hearing on the traverse, the plaintiff "establish[es] the reasonable probability that any one of the causes alleged in the affidavit exists" the "attachment shall be sustained, otherwise the same shall be dissolved." Id. The attachment may also be sustained even if the evidence at the traverse does not support the original grounds for attachment if "the evidence does tend to prove another cause of attachment in existence at the time of the issuance of the writ." C.R.C.P. 102(o).

MOVANTS' EXHIBIT 34
Page 10 of 22

Aple.Appx. 405

Roberts first challenges the sufficiency of the affidavit that was submitted with the motion for writ of attachment, which he characterizes as being made on "information and belief." The affidavit, which incorporated and verified the allegations in the motion, however, was made on "knowledge, information, and belief." **See Aug. 18, 2020 Leone Affidavit ¶ 2**. After Roberts sought to depose Cross Claimants' attorney, William Leone, before the traverse, the parties stipulated that Leone would not testify in support of the writ of attachment. That stipulation did not provide that Leone had no personal knowledge of the matters set out in the motion, only that he "has no personal knowledge of the matters set forth therein, other than as may be proven through other competent evidence." **Stipulation Regarding Testimony of William Leone ¶ 4 (Apr. 2, 2021)**. At the traverse, Cross Claimants set forth evidence establishing grounds for the attachment, many of which would be properly the subject of judicial notice under Colorado Rule of Evidence 201, e.g., Roberts's failure to answer interrogatories, the issuance of a warrant for his arrest, the entry of judgments against him, or other evidence, e.g., Roberts's testimony that he did not surrender himself after the warrant issued or that he failed to appear as ordered by the Court. C.R.C.P. 102 requires once these matters are put in traverse, that the Cross Claimants establish their existence by a reasonable probability and C.R.C.P. 102 contemplates that the proof to sustain the attachment may even differ from that relied on to grant it in the first place. C.R.C.P. 102(o).

**MOVANTS' EXHIBIT 34**
**Page 11 of 22**

Aple.Appx. 406

Accordingly, the Court rejects Roberts's argument that the Leone Affidavit was deficient as to those grounds on which Cross Claimants have advanced to sustain the attachment and proven by a reasonable probability through other evidence at the July 23, 2021 hearing.

Here, the evidence establishes that Roberts was indebted to Cross Claimants and that Roberts was liable to them for breaching his fiduciary duties as a manager of PdC.

At the time this Court issued the writ of attachment, the Court had entered judgments totaling almost $300,000 against Roberts and it had already found that Roberts breached his fiduciary duties in attempting to misappropriate the properties owned by PdC's subsidiary in Mexico. The testimony at the traverse hearing, as well as exhibits introduced by Roberts, showed that the value of those properties he attempted to foreclose on could have been as high as $16 million in 2016. Kneen testified that the value of the properties had diminished and that PdC had been unable to sell the parcels encumbered by Roberts's actions due to the litigation. Roberts has also not relinquished his interests in the properties in Mexico. Kneen testified that he and one of PdC's other managers – Tim Flaherty – have spent approximately $3 million each to maintain the properties since Roberts began his foreclosure attempts.

Accordingly, the Court FINDS that Cross Claimants have established a reasonable probability that Roberts was indebted to Cross Claimants – given 1)

12

the existing judgments entered against him at the time the writ issued; 2) the Court's January 24, 2020 findings that Roberts was liable to Cross Claimants in damages for his breaches of fiduciary duty – and evidence taken at the traverse hearing about the properties' values and the effect of Roberts's breach on the properties' values.

The Court also finds that there were sufficient grounds for issuance of the writ of attachment under Rule 102(c) at the time the attachment was issued.

**1.     Roberts concealed himself and stood in defiance of an officer so that process of law could not be served upon him.**

At the time the attachment issued, an arrest warrant had been outstanding for Roberts for over 8 months. The warrant was issued because Roberts failed to appear in court as he had been ordered to do after the October 11, 2019 contempt hearing. Nor did Roberts appear at the December 16, 2019 hearing as ordered by the Court. Roberts also did not surrender himself following that hearing, the issuance of the arrest warrant or following the issuance of the contempt order

Roberts argues that he did not conceal himself or stand in defiance of an officer so that process of law could not be served upon him because before the arrest warrant was issued and Roberts failed to appear, he had agreed to accept service of process through his attorney.

**MOVANTS' EXHIBIT 34**
**Page 13 of 22**

**Aple.Appx. 408**

The Court rejects this argument for two reasons.

First, "process of law" is broader than simply agreeing to accept service of papers through one's attorney. *See, e.g., Isis Litig., LLC v. Svensk Filmindustri*, 170 P.3d 742 (Colo. App. 2007) (holding post-judgment interrogatories are "process" and noting multiple meanings of "process" including "a summons or writ, [especially] to appear or reason in court" as well as "the means whereby a court compels a compliance with its demands"); *See also* 72 C.J.S. Process § 1 ("'Process' is a direction or demand that the person to whom it is directed perform, or refrain from doing, some prescribed act.").

Here Roberts has defied the Court's orders throughout this litigation. Initially, he violated this Court's preliminary injunction. Following the contempt hearing he failed to appear in court despite being ordered to do so. The Court gave Roberts an additional opportunity to appear before issuing an arrest warrant. Roberts did not appear and the warrant issued. Following the issuance of the contempt order on January 6, 2020, the Court ordered that Roberts be jailed until he had purged his contempt. Roberts again failed to appear at hearings after the contempt citation issued. He did not surrender himself, nor did he surrender his passport as ordered and he remained at large, forestalling any compliance with the Court's contempt order. Shortly following the issuance of the attachment, Roberts went to Mexico where he remained by his own admission for approximately 6 months.

In sum, Roberts violated this Court's orders, he has not let the Court know about his whereabouts, he did not appear as directed, or surrender himself after a warrant was issued for his arrest. Nor did he surrender himself to be jailed until he complied with the Court's contempt order. The Court finds that such conduct, irrespective of Roberts' questionable agreement to authorize his attorney to accept service on his behalf, qualifies as "conceal[ing] himself or stand[ing] in defiance of an officer, so that process of law cannot be served upon him."

Second, Roberts's pattern is consistent with his conduct throughout this case of evading service. After the Court issued a contempt citation, Roberts demanded that he be personally served with the citation even though he was out of the country at the time. Cross Claimants' attempts to serve him or secure acceptance of service from his attorney were unsuccessful. *See, e.g.*, **Roberts Ex. 75**. Although Roberts did agree that he could be served through his attorney later in 2019, it was only shortly after that that he failed to appear in court despite the Court's explicit orders that he do so. In addition, despite his prior agreement to accept service through his attorneys, he later appeared to challenge or repudiate that agreement as his current attorneys objected to Cross Claimants' attempts to collect judgments on the grounds that Roberts was not personally served with writs of garnishment and notices of exemption. *See* **Notice of Intent to Respond (Dec. 8, 2020)**.

**MOVANTS' EXHIBIT 34**
**Page 15 of 22**

Aple.Appx. 410

Roberts's refusal to submit himself to process is also demonstrated by his failure to answer the Rule 69 interrogatories that Cross Claimants' served. Rule 69 interrogatories are "process" under Colorado law. *Isis Litig.*, 170 P.3d at 747. The rule requires that the judgment debtor appear before the clerk of court within 21 days after the interrogatories are served and sign the answers to the interrogatories under oath and file them with the Court. Roberts had not done so at the time the writ issued and has still not done so.

**2.      Roberts fraudulently transferred, assigned, or conveyed the rights he acquired from Hotusa from the State of Colorado with the intent to defraud, delay, or hinder his creditors, or to render process or execution unavailing if judgment is obtained.**

Cross Claimants' claims center on whether Roberts' actions in attempting to acquire the properties previously encumbered by the Hotusa lien – referred to by the parties as the Mustapha Property or Sereno II and III – violated his duties to PdC. Through the January 24, 2019 Preliminary Injunction, this Court enjoined Roberts from taking "all actions, direct or indirect, that are inconsistent with ownership of the Initial Property or the Mustapha Property by PdC through its subsidiary RCC." Roberts admitted through his testimony at the preliminary injunction hearing, the contempt hearing, as well as the traverse hearing that he bought Hotusa's rights under its lien and that he did so for himself. The Court found those actions violated his duties to PdC. Roberts further admitted that he

16

created a Mexican company called Logistics to which he transferred the rights he acquired from Hotusa without consideration and that the purpose of this transfer was so that Logistics could take title to the Mustapha Properties.

Roberts made the transfer to Logistics after Cross Claimants had sued him, after he had been enjoined for taking actions inconsistent with PdC's ownership – through RCC – of the properties, and while a contempt citation for violating the injunction was pending against him. After Roberts was found in contempt, he was ordered to convey back to RCC whatever ownership interest in the properties he or Logistics purported to have. At the time the writ of attachment issued, Roberts had not conveyed any interests back to RCC and he still has not.

The Court finds that there is a reasonable probability that Roberts' August 2019 transfer of the rights he acquired from Hotusa was fraudulent and made with the intent to hinder his creditors. The transfer was made by Roberts, a Colorado resident, to a Mexican company he formed, thus making the transfer "from the state." At the time Roberts made the transfer in August 2019, he had been subjected to claims regarding the properties by Cross Claimants and enjoined from taking actions inconsistent with RCC's ownership of the properties. Pursuant to C.R.S. § 38-8-105(2)(d), intent to defraud can be shown where transfer made after "debtor had been sued or threatened with suit". Roberts also retained control over the property as he is the sole administrator of

17

**Aple.Appx. 412**

Logistics. C.R.S. § 38-8-105(2)(b) (intent to defraud can be shown where after transfer "debtor retained possession or control of the property transferred"). Furthermore, the transfer was made without consideration. *See* C.R.S. § 38-8-105(2)(h).

**3.      Roberts fraudulently concealed his assets with an intent to hinder or delay his creditors, or render collection unavailing if judgment is obtained.**

Rule 69 is intended to "assist judgment creditors in enforcing final money judgments." *Isis Litig.*, 170 P.3d at 746. It is meant, like its federal counterpart, to be "an effective and efficient means of securing the execution of judgments." *Id.* (*quoting United States v. McWhirter*, 376 F.2d 102, 106 (5th Cir. 1967)). Courts appropriately recognize that "the scope of post-judgment discovery is broad, . . . and a [judgment creditor] is entitled to a very thorough examination of a judgment debtor with respect to its assets." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 293 (E.D.N.Y. 2011) (denying motion to quash subpoena seeking 20 categories of documents related to assets and liabilities served to assist in collection of $94,845.45 sanctions award); *see FDIC v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995) (post-judgment discovery is very broad to permit a judgment creditor to discovery assets upon which execution may be made). At the time the writ of attachment issued, Roberts had not answered Cross Claimants' Rule 69 interrogatories. Roberts was under an obligation to do so, but he did not.

**MOVANTS' EXHIBIT 34**
**Page 18 of 22**

In discussing the tort of fraudulent concealment, the Colorado Supreme Court has recognized that a defendant fraudulently conceals information when he or she does not disclose material information when he or she is under an obligation to do so. *Ackmann v. Merchants Mortg. & Trust Corp.*, 645 P.2d 7, 13 (Colo. 1982). Moreover, the Colorado Supreme Court has recognized that "concealment" and "non-disclosure" are the same in this context. *Id.* at n.2 (noting that "We use the terms concealment and non-disclosure interchangeably. While the Colorado Jury Instructions draw a distinction between these terms, that distinction is not important for purposes of this case, and we use these terms in their more general sense. See CJI 2d 19:5 and 19:6.").

Thus, Roberts' failure to answer the interrogatories about his assets establishes he had not disclosed – and thus concealed – his assets at the time the writ of attachment issued. Because he has still not complied with his obligation to answer his Rule 69 interrogatories, the full scope of his failure to disclose cannot be fully ascertained. However, at the traverse hearing, Roberts testified that one of his wholly owned businesses maintains an operating account at a Mexican bank. Roberts did not point to any evidence that he previously had disclosed that information. Indeed, the one document his counsel introduced as evidence of Roberts's disclosure of assets, a schedule of entities in which Roberts had an interest in 2011, **Roberts Ex. 98**, did not list any bank accounts.

Furthermore, given that the purpose of post-judgment interrogatories is to aid judgment creditors in their collection efforts, Roberts's failure to answer them demonstrates an intent to hinder and delay Cross Claimants' collection efforts.

**4.     Roberts was about to depart to Mexico, with the intention of having his property or effects, or a material part thereof, removed from the state. C.R.C.P. 102(c)(9).**

Shortly after the issuance of the attachment, in October 2020, Roberts left Colorado for Mexico, where he remained for approximately 6 months. In August 2019, Roberts transferred his interest in the properties that are the subject of the litigation to a Mexican company that he controlled. The rights that Roberts transferred were intended to let his Mexican company take title to the properties, which the evidence demonstrates are likely worth millions of dollars. Rule 102(c)(9) contemplates that a defendant may not yet have completed his scheme and thus allows the Court to consider their future plans and activities in issuing a writ of attachment. *See* C.R.C.P. 102(c)(9) ("The defendant . . . is presently about to depart from this state"). By transferring the rights he acquired from Hotusa to a Mexican company in August 2019 and then leaving the country in October 2020, Roberts not only fraudulently conveyed the these assets, but also made it harder for Cross Claimants to pursue them, since his departure from Colorado frustrated this Court's ability to exercise jurisdiction over him and the significant assets he transferred to a Mexican company that without Roberts's

**MOVANTS' EXHIBIT 34**
**Page 20 of 22**

presence would likely be beyond the jurisdiction of this Court. *See, e.g., Goya Foods, Inc. v. Unanue-Casal*, 275 F.3d 124, 129 (1st Cir. 2001) (noting defendants' transferring of assets abroad in violation of court order and subsequent flight from jurisdiction after being ordered to appear frustrated and delayed enforcement of judgment); *Empire Blue Cross and Blue Shield v. Finkelstein*, 111 F.3d 278, 282 (2d Cir. 1997) (noting a defendant's flight can affect ability to enforce judgment).

## CONCLUSION

For the reasons addressed above, the Court holds that Cross Claimants have demonstrated by a reasonable probability that Roberts is indebted to them and liable to them for torts committed against the property of residents of this state, that those damages could be as high as many millions of dollars, and that cause to issue the writ of attachment existed under subsections (c)(3), (c)(5), (c)(6), and (c)(9) of Colorado Rule of Civil Procedure 102.

Accordingly the Court ORDERS that:

Roberts's Traverse of the Writ of Attachment is DENIED; and that

The Writ of Attachment is SUSTAINED.

Done and signed this 6th day of October, 2021.

BY THE COURT:

_Marie A. Moses_ (signature)

_____

Marie Avery Moses
District Court Judge

MOVANTS' EXHIBIT 34
Page 22 of 22

Aple.Appx. 417

| District Court, City and County of Denver, State of Colorado<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: June 23, 2022 3:23 PM<br>CASE NUMBER: 2015CV31828 |
|---|---|
| **Plaintiffs:**<br>RICHARD LANG<br>v.<br><br>**Defendants and Cross Claimants:**<br>TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL VERTUCA, and PdC, LLC,<br><br>And<br><br>RIVIERA COUNTRY CLUB S. de R.L. de C.V. ("RCC")<br>***Third Party Plaintiff***<br><br>**v.**<br><br>**Cross Claim Defendant:**<br>MICHAEL JOSEPH ROBERTS, SR.<br><br>And<br><br>***Third Party Defendants:***<br>MICHAEL J. ROBERTS LLC,<br>SANDSTONE VENTURES LLC | **COURT USE ONLY** |
| | Case No.: 2015CV31828<br><br>Division: 409 |
| **ORDER REGARDING APRIL 20 & 22, 2022 HEARING ON DAMAGES** | |

## PROCEDURAL BACKGROUND

A bench trial was held on January 24, 2020 on Cross-Claim Defendant Michael Roberts' (hereinafter "Roberts") liability. Following the trial, the Court entered findings of fact and conclusions of law which held that Roberts "violated his fiduciary duties to PdC and its stakeholders." Findings of Fact and Conclusions of Law (June 20, 2019) at 12 ("Phase 1 Findings"). Those Phase 1 Findings are referenced and incorporated herein.

MOVANTS' EXHIBIT 42<br>Page 1 of 32
Aple.Appx. 418

After the Phase 1 trial, the Court granted Cross-Claimants Timothy Flaherty, Timothy Kneen, Carl Vertuca and PdC, LLC (hereinafter "Cross-Claimants") leave to amend their complaint to seek exemplary damages under C.R.S. § 13-21-102. Later, this Court granted Cross-Claimants' motion for sanctions based on Roberts' discovery violations and the Court entered a default judgment against Roberts, striking his answer to Cross-Claimants' complaint and striking Roberts' counter cross claims. Sanctions Order (Oct. 20, 2020).

On April 20 and 22, 2022 the second phase of trial, on damages, was held. Under Colorado Rule of Civil Procedure 65 (a)(2) the Court received admissible evidence from the preliminary injunction hearing, and has considered the evidence admitted at the first phase of the trial in reaching its findings of fact and conclusions of law.

At the damages trial, the Court received additional testimony from witnesses: Flaherty, Kneen, Vertuca, Roberts, Eric Littler (real estate broker retained by Cross-Claimants to sell the properties), Byron Bridges (appraiser retained by Cross-Claimants), and David Lopez (expert in Mexican law hired by Roberts) and Lari Masten (expert in accounting hired by Roberts). The Court also admitted into evidence several exhibits offered by both Cross-Claimants and Roberts.[1]

Finally, the Court reviewed the parties' briefs related to damages, filed on December 7, 2020 (Cross-Claimants' Pre-Trial Brief), May 4, 2021 (Cross-Claimants' Brief on Issues to be Heard at Damages Trial), May 17, 2021 (Roberts'

_____

[1] Both parties labeled their exhibits using numbers. Cross-Claimants' exhibits are referred to as "CC Exhibit __." Roberts' exhibits are referred to as "R Exhibit __."

Aple.Appx. 419

Brief Re: Scope of Hearing), May 24, 2021 (Cross-Claimants' Reply Brief on Issues to be Heard at Damages Hearing), February 10, 2022 (Roberts' Trial Brief), and February 18, 2022 (Cross-Claimants' Response to Roberts' Trial Brief), as well as Cross-Claimants' Amended Damages Summary presented at trial that itemizes damages and sets forth legal authority for each category of damages. The Court now enters these findings of fact and conclusions of law based on the evidence presented by the parties as well as the applicable law.

## FINDINGS OF FACT

1.    PdC, LLC ("PdC") is a Colorado limited liability company.

2.    PdC's operating agreement selects Colorado law to govern the agreement, the rights and obligations of the parties to the agreement, and any claims or disputes relating to those matters. Ex. 43 (Jan. 2020 Trial) ¶ 11.14 ("This Agreement, the rights and obligations of the parties hereto, and any claims or disputes relating thereto, shall be governed by and construed in accordance with the laws of the State of Colorado (but not including the choice of law rules thereof)").

3.    PdC is managed by a board of managers. Ex. 43 (Jan. 2020 Trial) ¶ 7.3.1 ("The Members hereby unanimously agree that full responsibility for the management and the business and affairs of the LLC shall be delegated to the Board of Managers.").

4.    Cross Claim Defendant Michael Roberts was a manager of PdC and Riviera Country Club S. de R.L. de C.V. ("RCC"). Apr. 22 Tr. (Roberts) 194:2-7. PdC's other initial managers were Tim Kneen and Tim Flaherty. Like Roberts, both Kneen and Flaherty are managers of PdC. Dec. 2018 Tr. (Kneen) 40:3-7; *id.*

MOVANTS' EXHIBIT 42
Page 3 of 32

Aple.Appx. 420

42:7-10. Mr. Roberts acknowledged that, as a manger, he had fiduciary duties as a manager both of PdC and RCC, including a duty of loyalty to the companies, their members, and creditors, as well as a duty to avoid self-dealing. Apr. 22 Tr. (Roberts) 194:8-195:1; Dec. 2018 Tr. (Roberts) 171:15-20.

5.      As set forth in Section 7.5 of PdC's Fourth Amended and Restated Operating Agreement, although in most circumstances, members and managers of PdC are not liable for monetary damages for breaches of fiduciary duty, PdC's members and managers are still liable "(i) for any breach of the Member or Manager's duty of loyalty to the LLC or its Members; (ii) for acts of omissions which involve gross negligence, reckless conduct, intentional misconduct, or a knowing violation of the law, or (iii) for any transaction from which the Member or Manager received any improper personal benefit." Ex. 43 (Jan. 2020 Trial) ¶ 7.5. That same provision was included in the earlier versions of PdC's operating agreement. *See, e.g.*, Ex. 4 (Jan. 2020 Trial) ¶ 7.3.1; Ex. 42 (Jan. 2020 Trial), ¶ 7.3.1.

6.      PdC was formed to acquire and develop beach front real estate near Playa del Carmen, Quintana Roo, Mexico. Ex. 43 (Jan. 2020 Trial) ¶ 3.1 ("The sole purposes of the LLC shall be to invest in asserts for the Member by directly or indirectly purchasing, acquiring, buying, selling, owning, trading in, holding leasing, managing and otherwise dealing in and with real property and improvements or with other investments and to do any and all things necessary, convenient, or incidental to that purpose, constituting the 'Properties' in the Playa Del Carmen, Mexico area …."); Jan. 2020 Tr. (Flaherty) 117:5-16; 120:1-6.

7.      Because Mexican law does not allow foreign nationals to directly own

MOVANTS' EXHIBIT 42
Page 4 of 32

Aple.Appx. 421

real estate on Mexico's coast, RCC was formed to own the land that PdC wanted to acquire and develop. Jan. 2020 Tr. (Flaherty) 120:7-10.

8.    PdC appointed Roberts as a manager of its subsidiary RCC. RCC's other managers, also appointed by PdC, were Kneen and Flaherty. Roberts, Kneen, and Flaherty held their positions as RCC Manager as designees of PdC to act on behalf of PdC in implementing its business plan.

9.    PdC acquired the first parcel, known as "Sereno I") in 2006 for $8,000,000. In 2008, a property which the parties refer to as the "Beach House", was acquired by a separate Mexican entity Xpu-Ha BeachHouse, S. de R.L. de C.V., which the parties refer to as Xpu-Ha, owned by TMTBC, LLC. Kneen, Roberts and Flaherty owned TMTBC, LLC. Neither PdC nor RCC had any ownership interest in the Beach House.

10.   In 2012, PdC, through RCC, acquired two parcels next to Sereno I for the purchase price of $11,500,000. See CC Ex. 13, pg. 5. These subsequently purchased parcels are known as Sereno II and Sereno III. When Sereno II and Sereno III were purchased, $6,000,000 was paid as a down payment, and there was a remaining $5,500,000 "Hotusa" lien as discussed in the following paragraph. Apr. 22 Tr. (Roberts) 165: 20-25.

11.   Sereno II and Sereno III were acquired from Mustapha Boudiz. At the time PdC, through RCC, acquired the parcels they were subject to a lien held by a Spanish company, Hoteles Turisticos Unidos, S.A. ("Hotusa"). At the time of RCC's acquisition of Sereno II and Sereno III, Boudiz and Hotusa were in foreclosure litigation over the property. By buying Sereno II and III with the lien

MOVANTS' EXHIBIT 42
Page 5 of 32

intact, RCC acquired Boudiz's position as a defendant in the Hotusa foreclosure litigation and became owner of record of the properties.

12.    In December 2015, PdC considered settling the foreclosure litigation with Hotusa. Roberts opposed settling with Hotusa. Ex. 52 (Jan. 2020 Trial). Flaherty and Kneen favored settling with Hotusa and voted to do so. Roberts dissented and was upset that Flaherty and Kneen outvoted him. Apr. 22 Tr. (Roberts) 197:15-16.

13.    Hotusa and RCC signed a settlement agreement in December 2015. Under the agreement, RCC would pay Hotusa $6.5 million, and in exchange Hotusa would release its lien against Sereno II and III. Ex. 9 (Jan. 2020 Trial), Hotusa Settlement Agreement.

14.    The settlement agreement required RCC to make an initial $1 million payment to Hotusa. *Id.* Flaherty and Kneen loaned $500,000 each to PdC so that RCC could make the initial payment to Hotusa. Apr. 20 Tr. (Vertuca) 231:12-19; CC Ex. 7; Jan. 2020 Tr. (Flaherty) 142:23- 143:12; Dec. 2018 Tr. (Kneen) 54:25-55:17.

15.    The balance of the settlement amount was due to Hotusa on February 29, 2016, unless RCC made a $250,000 extension payment to Hotusa. Ex. 9 (Jan. 2020 Trial).

16.    Before the extension payment was due, Roberts contemplated whether he "could skirt RCC and sign away their rights and position by using [his] power of attorney?" CC Ex. 34.

17.    In late November 2016, Roberts purported to grant a substitute

MOVANTS' EXHIBIT 42
Page 6 of 32

Aple.Appx. 423

power of attorney on behalf of RCC to Juan Carlos Ramirez Garcia, Roberts' personal attorney or the nephew of Roberts' personal attorney. Apr. 22 Tr. (Roberts) 208: 3-25-209:1-22. Flaherty and Kneen were not aware that Roberts had done so at that time. Flaherty and Kneen never gave Roberts their permission to grant Ramirez a power of attorney on behalf of RCC to be used to acquire Sereno II and III for himself. Apr. 20 Tr. (Kneen) 159: 12-20.

18.    RCC, using funds contributed to PdC by Roberts, Flaherty, and Kneen, funded several extension payments under the settlement agreement, which made December 31, 2016 the final due date to pay Hotusa the balance of the settlement payment.  Kneen and Flaherty contributed another $50,000 each to fund extension payments under the settlement agreement. Apr. 20 Tr. (Vertuca) 231:2-11.

19.    Although Kneen and Flaherty had hoped to either find a lender to pay the balance of the money due to Hotusa or satisfy the balance through a sale of the properties, by late 2016 they realized that the balance would likely have to be funded by one of PdC's members. Apr. 22 Tr. (Flaherty) 9:7-14. Kneen and Flaherty discussed potential sources of funding and Flaherty agreed that he would loan $5.5 million to PdC to fund the payment by RCC to Hotusa. Flaherty was not only willing, he also had the funds to do so. Apr. 22 Tr. (Flaherty) 5:22-6:3; *id.* 7:15-8:3; *id.* 35:25-36:4; *id.* (Littler) 59:19-61:20; Jan. 2020 Tr. (Flaherty) 147:12-148:20, *id.* 154:25-155:6; Dec. 2018 Tr. (Kneen) 61:12-23; Dec. 2018 Tr. (Flaherty) 96:10-21, *id.* 97:21-98:13.

20.    On December 13, 2016, Kneen and Carl Vertuca, PdC's chief financial officer, met with Roberts at Roberts' office in Boulder to discuss

MOVANTS' EXHIBIT 42
Page 7 of 32

Flaherty's offer to loan PdC the money it needed to pay Hotusa. Apr. 20 Tr. (Kneen) 206:25-207:13; Apr. 22 Tr. (Vertuca) 106:8-15; Jan. 2020 Tr. (Kneen) 191:24-192:17; Dec. 2018 Tr. (Kneen) 61:24-62:8; *id.* 62:17-63:9.

21.    Roberts objected to Flaherty loaning PdC the money needed to pay Hotusa and instead offered to loan the money to PdC himself. Apr. 20 Tr. (Kneen) 207:7-207:13; Dec. 2018 Tr. (Kneen) 63:10-65:3. But Roberts wanted to impose certain conditions on his loan, including the right to continue pursuing development of the property for another six months, rather than offer it immediately for sale as Kneen and Flaherty preferred. Jan. 2020 Tr. (Kneen) 192:18-193:7. In the end, Kneen and Flaherty were willing to agree to Roberts' terms and the parties memorialized the basic terms of the agreement at the meeting in handwritten notes that Roberts kept in his files. CC Ex. 55; Apr. 22 Tr. (Flaherty) 38:2-39-4; Apr. 22 Tr. (Vertuca) 106:21-107:4; *id.* 110:1-20; Jan. 2020 Tr. (Vertuca) 93:16-94:19; *id.* 97:5-15; *id.* 98:25-3; *id.* 100:11-20; Jan. 2020 Tr. (Flaherty) 149:8-150:5; Jan. 2020 Tr. (Kneen) 193:11-194:23; Dec. 2018 Tr. (Vertuca) 118:2-12.

22.    Following the meeting, Kneen and Roberts called PdC's attorney Ben Rosen and Kneen instructed Rosen to draft up the necessary documents to formalize the agreement reached at the meeting, which Rosen attempted to do. R Exhibit 23; Jan. 2020 Tr. (Kneen) 194:24-195:25; Jan. 2020 Tr. (Rosen) 254:6-255:6; Dec. 2018 Tr. (Kneen) 66:8-22.

23.    During his meeting with Kneen and Vertuca, Roberts did not tell them that he planned to pay Hotusa for himself personally, rather than on behalf

MOVANTS' EXHIBIT 42
Page 8 of 32

of RCC or PdC, or that he planned to foreclose on Sereno II and Sereno III. Nor did Roberts tell Flaherty that those were his plans or ask their permission to carry them out. Indeed, Roberts lied to Kneen and Vertuca, telling them he would pay Hotusa on behalf of PdC, when, in fact, he planned to do the opposite. Had Roberts not lied to and misled Cross-Claimants, they would have been able pay Hotusa themselves and Roberts would not have been able to foreclose on the properties. Roberts conceived of a plan whereby he would secretly pay $5,500,000 to acquire personal ownership of real property worth $12,200,000 which belonged to an entity to which he owed a duty of loyalty.

24.    Ramirez appeared in court in Mexico on December 15, 2016, purportedly on behalf of RCC to have the settlement agreement between Hotusa and RCC judicially ratified. Ramirez did not have permission from Flaherty and Kneen to do so, as they were unaware of his actions. *See* Phase 1 Findings.

25.    On December 16, 2016, the last day the courts in Mexico were open before the beginning of January the next year, Ramirez again appeared in court purportedly on behalf of RCC, along with an attorney representing Roberts "personally." *See* Phase 1 Findings.

26.    Ramirez told the court that RCC had not paid Hotusa, but that Roberts had, and thus had purchased Hotusa's position and stepped in to its shoes while RCC had defaulted. Ramirez did not have permission from Flaherty and Kneen to represent on behalf of RCC that Roberts had subrogated to Hotusa's position. Flaherty and Kneen were not aware of Ramirez's plan to do so. *See* Phase 1 Findings.

MOVANTS' EXHIBIT 42
Page 9 of 32

Aple.Appx. 426

27. Following his subrogation from Hotusa, Roberts continued the foreclosure proceedings against Sereno II and III, and sought to take the property. Roberts did so by, among other things, bringing in armed guards to prevent PdC's other managers or their representatives from accessing the property and continuing his litigation. Dec. 2018 Tr. (Kneen) 70:20-71:5; *See* Phase 1 Findings.

28. Kneen and Flaherty did not learn what Roberts had done until after January 1, 2017, when Rosen was first able to access court records in Mexico related to Roberts' subrogation and foreclosure attempt. Once Flaherty and Kneen learned that Roberts had attempted to foreclose on Sereno II and III they immediately took steps to try and stop his efforts in the Mexican litigation. *See* Phase 1 Findings.

29. Roberts admits that he bought Hotusa's position and proceeded to foreclose on the properties for himself personally. Apr. 22 Tr. (Roberts) 186:9-12. He has also asserted that, despite the testimony of Kneen and Vertuca, he told Kneen and Vertuca that he was going to buy Hotusa's position for himself, rather than for PdC, and that he also told them he was going to take the properties for himself. Kneen and Vertuca both deny that Roberts ever told them that this was his plan. The Court does not find Roberts' testimony on this point to be credible. If Kneen and Vertuca had known that was Roberts' plan, they would have proceeded to have Flaherty lend PdC the money to make the final payment to Hotusa.

30. Roberts said that he bought Hotusa's position and foreclosed on the properties because he believed that PdC and the Sereno Project had been

MOVANTS' EXHIBIT 42
Page 10 of 32

Aple.Appx. 427

mismanaged and that only by buying Hotusa's position could he protect his investment in PdC. Apr. 22 Tr. (Roberts) 166:1-3; *id.* 187:2- 8; *id.* 188:22-189:1; *id.* 199:12-14; *id.* 231:25-323:8. Although Roberts claims that he did not intend to harm PdC or its other stakeholders (or their investments), he made no provision to protect their interest through his actions at the time he took them and still has not in the now more than five years since he breached his duties to PdC. Apr. 22 Tr. (Roberts) 199:22-200:24.

31.     The evidence also establishes that Roberts, long dissatisfied and frustrated with Kneen and Flaherty's decisions, *e.g.*, Apr. 22 Tr. (Roberts) 164:5-24, *id.* 166:23-167:2, *id.* 167:19- 21; *id.* 196:5-7, *id.* 199:7-14, *id.* 203:4-16, Jan. 2020 Tr. (Kneen) 181:2-11, *id.* 190:21-191:23, had been plotting to buy out Hotusa's position and foreclose on the properties since early 2016, when he wrote a note to himself pondering whether he "could skirt RCC and sign away their rights and position by using [his] power of attorney?" CC Ex. 54; Apr. 22 Tr. (Roberts) 206:14-207:12; 208:3-6. Roberts then executed on his scheme by granting Ramirez a power of attorney on behalf of RCC and instructing him to appear in the Mexican courts to sign away RCC's position and allow Roberts to foreclose on Sereno II and Sereno III. Apr. 22 Tr. (Roberts) 208:3-209:12; Dec. 2018 Tr. (Rosen) 132:1-133:11. Roberts' actions were deliberate and intentional. Apr. 22 Tr. (Roberts) 200:13-17. His plan required him to vest his agents with authority or purported authority to execute the scheme on his behalf. Dec. 2018 Tr. (Roberts) 172:25-173:3.

32.     Following Roberts' actions in December 2016, Roberts took physical

MOVANTS' EXHIBIT 42
Page 11 of 32

possession of not just Sereno II and III (the properties he attempted to foreclose on), but Sereno I and the Beach House. During this period Roberts hired guards armed with machetes to keep others off the properties and he instructed those guards to deny access to PdC's other managers, Kneen and Flaherty, as well as Eric Littler, the real estate broker PdC had engaged to market the properties, and Ben Rosen, PdC's attorney in Mexico. Apr. 22 Tr. (Littler) 53:11-20; *id.* (Roberts) 202:3-25-203:1-16.

33.     In early 2017, Roberts wrote Kneen a text message telling him that he would "not be allowed to access the property or any portion of it. This includes Casa Sereno [the Beach House] or any of the properties to which Riviera Country Club and or Hotusa formerly had rights, but no longer do." CC Ex. 51; *see also* Apr. 20 Tr. (Kneen) 114:3-115:16; *id.* 135:15-18. In this text message, Roberts wrote that the prohibition on entry extended to third parties. Roberts, in this litigation, at various points asserted that the rights he acquired from Hotusa extended to all RCC's properties and the Beach House as well. Roberts' Answer & Counter Cross Claim Complaint (Feb. 22, 2020) ¶¶ 90-91, 118 (claims "rights" Roberts acquired allowed foreclosure on initial property and Beach House in addition to Sereno II and III); Roberts' Response to Motion for Issuance of Contempt Citation ¶4 (May 7, 2019) (asserting Hotusa's foreclosure rights extended to Sereno I and Beach House in addition to Sereno II and III).

34.     In the second quarter of 2017, PdC's managers were able to regain physical possession of the properties. Apr. 20 Tr. (Kneen) 115:19-22. PdC hired additional security to guard against further attempts by Roberts to retake the properties. Apr. 20 Tr. (Kneen) 115:23-116:17; *id.* 119:6-19; Apr. 22 Tr. (Littler)

MOVANTS' EXHIBIT 42
Page 12 of 32

Aple.Appx. 429

63:9-23. PdC's actions were reasonable because Roberts took and held physical possession of the property by force.

35.    After January 1, 2017, Roberts no longer made any contributions to PdC. Rather, any expenses PdC or RCC needed to meet were covered by contributions that Kneen and Flaherty made to PdC. As described by PdC's chief financial officer, Vertuca, when RCC or PdC had financial obligations they needed to meet, he would ask that Kneen and Flaherty contribute money to PdC and then he would either route the monies they contributed to RCC in Mexico for payment there or in some cases make payments directly to the vendors from PdC's bank account. Vertuca kept track of all the company's expenditures. Apr. 20 Tr. (Vertuca) 225:10-226:11; Jan. 2020 Tr. (Vertuca) 88:5-25.

36.    In total, Flaherty and Kneen contributed $2,613,250 to PdC since January 1, 2017. CC Ex. 4. Flaherty contributed $1,296,625 to PdC and Kneen contributed $1,316,625 to PdC during this time period.

37.    The funds that Flaherty and Kneen contributed to PdC were used to fund expenses related to the Mexican properties. These expenses included, but were not limited to, costs (a) for security to protect the properties; (b) for taxes; (c) to maintain permits that PdC had obtained to allow the properties to be developed; (d) to maintain beach concessions that allowed commercial uses of the properties; and (e) to fund litigation in Mexico against Roberts to try and prevent his foreclosure on the properties. Kneen, Flaherty, and Vertuca all testified that the expenses that PdC incurred were reasonable and necessary both to protect the properties and try and maintain their value. Apr. 20 Tr. (Kneen) 137:6-138:21; Apr. 20 Tr. (Vertuca) 238:14-25.

MOVANTS' EXHIBIT 42
Page 13 of 32

Aple.Appx. 430

38.　　Eric Littler, the real estate broker who was engaged by PdC to help market the properties, testified credibly that permits for development and concessions enhance a property's value. If permits are lost, a property's value can decrease by as much as 33 percent to 50 percent. Apr. 22 Tr. (Littler) 63:24-64:7; Apr. 20 Tr. (Kneen) 127:16-128:8.

39.　　Kneen likewise testified that the permits and concessions were obtained at considerable expense, had to be renewed each year, and he considered them to be valuable to potential purchasers. Apr. 20 Tr. (Kneen) 120:2-122:9; *id.* 122:25-124:1. It was for that reason that PdC maintained the permits and concessions even after Roberts began his foreclosure attempts. Apr. 20 Tr. (Kneen) 121:4-122:7; *id.* 126:11-128:8; Apr. 22 Tr. (Littler) 65:13-66:4; Apr. 20 Tr. (Vertuca) 235:4-19.

40.　　Throughout 2016, PdC marketed Sereno I, II, and III and the Beach House to prospective buyers. At the time, the final settlement payment to Hotusa had not been made. But, PdC received interest from several potential purchasers. Kneen and Flaherty would have preferred to sell the properties *after* Hotusa had been paid rather than selling when buyers might perceive them as a "distressed property." Apr. 20 Tr. (Kneen) 183:6-25. It was their view that because of the need to pay Hotusa, buyers might make lower offers than if Sereno II and III had been unencumbered by the need to repay Hotusa. Having the ability to market the properties free of encumbrances was one reason Flaherty was willing to provide the funds to pay Hotusa.

41.　　Following January 1, 2017, even after Roberts had begun his foreclosure attempt, PdC still attempted to sell the properties. Apr. 20 Tr. (Kneen)

MOVANTS' EXHIBIT 42
Page 14 of 32
Aple.Appx. 431

129:21-130:2. These efforts were frustrated by Roberts' actions. Apr. 20 Tr. (Kneen) 109:14-18; *id.* 130:3-9; Jan. 2020 Tr. (Kneen) 198:12-199:1. For example, in January 2017, Kneen traveled to the properties before a meeting with representatives from a prospective buyer, CIM, and attempted to visit the property. Apr. 20 Tr. (Kneen) 98:3-22. Kneen was denied entry and told he was not allowed on the property. Apr. 20 Tr. (Kneen) 101:16-20; *id.* 102:2-103:5. Eric Littler, the broker PdC engaged to market the properties, was also denied entry to the properties in January 2017. Apr. 22 Tr. (Littler) 52:18- 53:12; *id.* 74:12-16. As a result, Kneen had to cancel the visit by CIM's representative. Apr. 20 Tr. (Kneen) 108:2-22; Apr. 22 Tr. (Littler) 53:21-25; Dec. 2018 Tr. (Kneen) 73:4-14. As noted earlier, Roberts wrote to Kneen telling him he was not allowed on the properties. CC Ex. 51.

42.     Roberts' actions also allowed for adverse market conditions to develop following 2017, which affected and depressed the properties' values. Apr. 20 Tr. (Kneen) 143:11-146:10.

43.     Nonetheless, PdC still attempted to sell the properties and received expressions of interest from a number of potential buyers. Apr. 22 Tr. (Littler) 56:10-23. These offers were, however, all contingent on being able to provide clear title to the properties or reaching some sort of settlement with Roberts that would allow the buyer to take the properties free from encumbrances. *See* Apr. 20 Tr. (Kneen) 208:24-209:3.

44.     As Littler testified, after buyers were informed regarding the scope of the dispute in Mexico with Roberts, they did not consummate any of the proposed sales and told Littler that the dispute with Roberts was the reason for not

MOVANTS' EXHIBIT 42
Page 15 of 32

Aple.Appx. 432

proceeding with the purchase of the property. Apr. 22 Tr. (Littler) 54:1-55:16; *id.* 57:10-59:9; *id.* 79:3-7; *see also* Apr. 20 Tr. (Kneen) 146:11-16; *id.* 208:24-209:3; *id.* 211:9-24.

45.     Kneen and Flaherty waited several years before they tried to sell unencumbered Sereno I because they believed that selling the properties together was preferable (and likely to receive a higher value) than selling them piecemeal since the permits they obtained were for a development that required use of Sereno I, II, and III. Kneen and Flaherty also believed that it would be beneficial to sell the Beach House with Sereno I, II, and III since that would increase the amount of beach front owned by a potential purchaser and developer of the properties. Apr. 20 Tr. (Kneen) 131:19-134:10; *id.* 135:19-136:16; Apr. 22 Tr. (Littler) 55:17-56:9; Jan. 2020 Tr. (Flaherty) 122:19-123:3.

46.     Kneen, and Flaherty both believed that due to the interest in the properties they would have been able to sell the properties in 2017 had there not been a dispute with Roberts.

47.     Cross-Claimants presented testimony from Byron Bridges, an appraiser who has extensive experience valuing real estate in Mexican resort communities. Bridges was qualified as an expert in real estate valuation without objection. Apr. 20 Tr. 52:19-25. His expert report was also admitted into evidence without objection. Apr. 20 Tr. 64:3-6; CC Ex. 13.

48.     Bridges testified that Sereno II and Sereno III were worth $12,200,000.00 as of January 1, 2017 had they been free of encumbrances (including being free from the Hotusa lien). Apr. 20 Tr. (Bridges) 59:9-15. Kneen and Flaherty testified that although they had reviewed the appraisal and they

MOVANTS' EXHIBIT 42
Page 16 of 32
Aple.Appx. 433

generally agreed with it, if anything, they continue to believe that the properties were worth more than $12,200,000 in 2017. Apr. 20 Tr. (Kneen) 142:1-143:10.

49.     Roberts did not present any expert evidence to contradict Bridges' valuation or put on any evidence as to Roberts' opinion of the properties' value in 2017 or at that present time. Roberts' counsel questioned Kneen, Flaherty, and Bridges about the values contained in several expressions of interest, but as Bridges testified, expressions of interest are not given very much weight by appraisers since unlike sales, they do not represent a final transaction. Apr. 20 Tr. (Bridges) 93:16-94:13. Bridges' analysis relied on comparable land sales, which were adjusted to reflect for differences in market conditions. Apr. 20 Tr. (Bridges) 95:14-96:2. Importantly, Bridges testified that, given the status of the litigation in Mexico, no purchaser would be willing to buy Sereno II and III from Cross-Claimants because they would be at risk of immediately losing the properties because of the Hotusa lien foreclosure. Apr. 20 Tr. (Bridges) 59:25-60:12. In other words, because of Roberts' ongoing efforts to foreclose on the Hotusa lien and his efforts to make it impossible to unwind transactions related to the foreclosure, Sereno II and Sereno III are not worth anything to Cross-Claimants at this time since no one would be willing to buy them from Cross-Claimants only to lose them to Roberts.

50.     Although Kneen and Flaherty had wanted to sell all three Sereno properties and the Beach House together, in 2021 they concluded, based on the high costs of continuing to hold the property, and Robert's ongoing recalcitrance, refusal to abide by settlement agreements he had signed, and renewed litigiousness, that it was unlikely they would be able to do so any time soon. As

MOVANTS' EXHIBIT 42
Page 17 of 32

Aple.Appx. 434

a result, Kneen and Flaherty decided to sell Sereno I by itself. Apr. 20 Tr. (Kneen) 130:14-131:4; *id.* 131:19-132:8.

51.     In 2021, Cross-Claimants were able to sell Sereno I which was unencumbered by the Hotusa lien. The purchase price for the sale of Sereno I was $5 million to be paid in installments. CC Ex. 37. Bridges testified that had Sereno I been sold in 2017, it would have sold for $6.7 million. Apr. 20 Tr. (Bridges) 58:5-25; CC Ex. 13 at iii. The Court finds that the value of Sereno I declined by $1.7 million from January 1, 2017 until it was sold. The decline in value was because market conditions deteriorated after 2017. Apr. 22 Tr. (Littler) 64:8-12. Because of the chaos regarding property ownership that resulted from Roberts' decision to buy with his personal funds and foreclose upon the Hotusa lien, Cross-Claimants were unable to sell Sereno I in 2017. Roberts' actions regarding the Hotusa lien and the hiring of armed guards was a proximate cause of the Cross-Claimants' inability to sell Sereno I in 2017. Given Cross-Claimants' ability promptly to sell the unencumbered Sereno I once they decided that it was no longer possible to wait to try to sell all properties together, coupled with the interest Cross-Claimants had received regarding the properties in 2016 and 2017, the Court finds that had Roberts not attempted to foreclose on Sereno II and Sereno III, Cross-Claimants could have sold Sereno in 2017 for $6.7 million. Roberts' actions with respect to the Hotusa lien and the hiring of armed guards damaged the Cross-Claimants in the amount of **$1,700,000** with respect to Sereno I.

52.     Similarly, given Cross-Claimants' ability promptly to sell the unencumbered Sereno I once they decided that it was no longer possible to wait

MOVANTS' EXHIBIT 42
Page 18 of 32

Aple.Appx. 435

to try to sell all properties together, coupled with the interest Cross-Claimants had received regarding the properties in 2016 and 2017, the Court finds that had Roberts not attempted to foreclose on Sereno II and Sereno III, Cross-Claimants could have sold Sereno II and Sereno III in 2017 for $12,200,000. However, in order to have achieved this sales price, Flaherty would have been required to pay off the $5,500,000 remaining Hotusa lien. In other words, the Sereno II and Sereno III properties had net equity of **$6,700,000** as of January 1, 2017.

53.     Roberts also took other intentional actions that deliberately violated the preliminary injunction entered against him and increased the harm suffered by Cross-Claimants. For example, Roberts transferred the rights he obtained from Hotusa to a Mexican company he controlled called Logistics Desarrollos Publicitarios e Inmobiliarios ("Logistics") in July 2019. Apr. 22 Tr. (Roberts) 214:24-14. Roberts transferred the rights because he, as a U.S. citizen, could not directly hold title to Sereno II and III, so title would need to be issued to a Mexican citizen or company. Apr. 22 Tr. (Roberts) 215:25-216:4. Then, after Roberts had been held in contempt for violating the preliminary injunction by, among other things, acting inconsistently with RCC's ownership of Sereno II and Sereno III, Roberts transferred his shares in Logistics to two Mexican nationals in December 2019. Roberts now claims that he no longer controls Logistics, and in the bankruptcy proceeding Roberts filed, he filed an adversary proceeding seeking to reclaim the shares he transferred – for no consideration – to the Mexican nationals. CC Ex. 52. Put another way, not only did Roberts' actions deprive Cross-Claimants of the ability to sell Sereno II and III – he has now transferred

MOVANTS' EXHIBIT 42
Page 19 of 32

effective legal control over the properties to persons beyond the jurisdiction of this Court. Thus, Roberts' actions have caused the total loss of Sereno II and III to Cross-Claimants.

54. Because of the legal chaos created by Roberts' actions, PdC was required to expend funds to guard and maintain the Sereno I, II and III properties since the properties could not be sold in 2017. Vertuca testified as to those expenses, and Exhibit CC 6 and CC 7 were admitted into evidence. Based on those exhibits and Vertuca's testimony, the Court finds that the following expenses were incurred by PdC as a direct result of Roberts' breach of duty of loyalty and his intentional misconduct:

> Advisory Business Administration Security 2017: $346,851.00
> Advisory Business Administration Security 2018: $58,500.00
> RCC for Maint. Expenses (detailed on Ex. CC 6) 2017: $267,500.00
> RCC for Maint. Expenses (detailed on Ex. CC 6) 2018: $418,500.00
> RCC for Maint. Expenses (detailed on Ex. CC 6) 2019: $16,000.00
> RCC for Maint. Expenses (detailed on Ex. CC 6) 2020: $64,000.00
> RCC for Maint. Expenses (detailed on Ex. CC 6) 2021: $198,850.00
> RCC for Maint. Expenses (detailed on Ex. CC 6) 2022: $88,000.00
> **Total:** **$1,458,201.00**

55. Cross-Claimants requested additional amounts be included in any damages award related to carrying the Sereno properties. However, those amounts are not included here because: 1) the requested amounts were for attorneys fees and expert fees (incurred in Mexico and the US) and there has been no finding as to reasonableness; 2) there was no testimony which persuasively linked the salary paid to Vertuca to Roberts' conduct; 3) there was not sufficient testimony provided which tied accounting and bank fees to Roberts' conduct; 4) Cross-Claimants would have incurred closing costs related to Sereno I regardless of Roberts' conduct.

MOVANTS' EXHIBIT 42
Page 20 of 32
Aple.Appx. 437

56.     Since Roberts first tried to foreclose on the properties in December 2016, the parties have been involved in foreclosure litigation in Mexico. Although Roberts was enjoined from asserting that he was the owner of properties by this Court in December 2018, he nonetheless continued to pursue litigation based on his purported ownership in Mexico after the injunction was issued. In one case, he was awarded 12,215,746 pesos in damages against RCC. CC Ex. 49; Apr. 20 Tr. (Kneen) 155:3-13; id. 157:13-20. As of June 17, 2022, the peso-to-dollar exchange rate was 20.4290. https://fred.stlouisfed.org/series/DEXMXUS.[2] Thus the value of the damages award Roberts wrongfully obtained against RCC in Mexico is **$597,961** (U.S. dollars). Cross-Claimants would not have been required to pay this judgment but for Roberts' breach of duty of loyalty and intentional misconduct.

57.     Cross-Claimants also introduced evidence from Brian Bridges at the April 20 and 22 hearings regarding the loss of value related to the Beach House. However, as reflected in Bridges' appraisal report, the property itself increased in value, but there was substantial deferred maintenance that reduced the overall value of the property. However, there was not a sufficient link established between Roberts' conduct and the deferred maintenance to permit this Court to find that Roberts' conduct caused the decrease in value to the Beach House.

## CONCLUSIONS OF LAW

58.     This Court has jurisdiction over the parties and the subject matter

---

[2] The court can take judicial notice of the exchange rate from the Federal Reserve website or other publicly available publications to determine the value of a judgment entered in U.S. Dollars. *See, e.g., Cagan v. Gadman*, 2012 WL 5422270, at *7 n.3 (Oct. 31, 2012).

in this action. Because this matter is centered on the activities of members to a Colorado limited liability company, PdC, this present dispute is not subject to the "Calvo Clause" contained in RCC's Articles of Incorporation.

59.    At all times, PdC's managers have owed fiduciary duties, including a duty of loyalty, to PdC and its members. *See LaFond v. Sweeney,* 345 P.3d 932, 939 (Colo. App.   2012), *aff'd* 343 P.3d 939 (Colo. 2015).

60.    Each version of PdC's operating agreement made the existence of that duty explicit by allowing managers to be held liable for monetary damages for breaching their duty of loyalty, as well as other acts of intentional misconduct. *See, e.g.*, Ex. 43 (Jan. 2020 Trial) ¶ 7.5.

61.    The duty of loyalty "requires an unselfish and undivided loyalty to the [company, which] demands that there shall be no conflict between duty and self-interest." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) (quoting *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939)); *see also* Black's Law Dictionary 545 (8th ed. Bryan A. Garner, ed.) (duty of loyalty is "[a] person's duty not to engage in self-dealing or otherwise use his or her position to further personal interests rather than those of the beneficiary").

62.    Likewise, the Colorado Limited Liability Company Act says the managers of a limited liability company have a duty not to convert the business of the limited liability company for their own personal gain or to compete with the limited liability company in the conduct of the limited liability company's business before the dissolution of the limited liability company. Colo. Rev. Stat. § 7-80-404(1)(b) & (1)(c).

63.    Importantly "[t]here is no dilution of this obligation where one holds

Aple.Appx. 439

dual or multiple directorships, as in a parent subsidiary transaction." *Weinberger*, 457 A.2d at 710.

64.     Because Flaherty, Kneen, and Roberts held their positions as managers of RCC by virtue of an appointment by PdC, and served as managers of RCC at the same time they served as managers of PdC , they were bound by principles of Colorado fiduciary duty law and agency law to exercise their powers as managers of RCC for the benefit of PdC and its respective investors and stakeholders. *Weinberger*, 457 A.2d at 710 ("[I]ndividuals who act in a dual capacity as directors of two corporations one of whom is parent and the other subsidiary, owe the same duty of good management to both corporations"); *see also* Restatement of the Law (Third) – Agency § 8.01 ("An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship."); *see also MDM Group Assocs., Inc. v. CX Reinsurance Co. Ltd.*, 165 P.3d 882, 889 (Colo. App. 2007) (recognizing that "[i]n the principal agency context, it is the agent who owes a fiduciary duty to the principal as a matter of law").

65.     Robert's fiduciary duty applied to his actions as a manager of RCC and as the holder of a power of attorney to act for PdC through RCC. The holder of a power of attorney is obligated to exercise that power in the best interests of his principal. *See* C.R.S. §15-14-714.

66.     Roberts' attempt to foreclose on Sereno II and III for himself, at the expense of RCC and its parent PdC, which he pursued without informing or receiving the approval of PdC's other managers and using the settlement agreement that RCC executed with Hotusa, violated Roberts' fiduciary duties to

Aple.Appx. 440

PdC and its stakeholders by violating his duty of loyalty and engaging in intentional misconduct.

67.    As set forth in the comments to the Restatement of the Law (Third) – Agency, Roberts' actions are a textbook violation of fiduciary duty:

> P engages A to manage P's business of dealing in property. P furnishes A with a power of attorney that states that A "shall have power to do and perform for me any and all acts that I might do and perform myself if personally present concerning any property, real or personal, in which I might own any interest of any type, including but not limited to the signing and delivery of any and all deeds, deeds of trust, promissory notes, leases and other instruments that I might personally sign and deliver." P makes no other relevant manifestation to A. A executes a deed that conveys Blackacre, owned by P, to A for no consideration. At P's election, A's conveyance of Blackacre is ineffective. A's conveyance of Blackacre to A is inconsistent with A's duty to act loyally for P's benefit.

Restatement of the Law (Third) – Agency cmt. B.

*68.*    A plaintiff is entitled to recover "any loss of the Plaintiff's property or assets caused by the breach of fiduciary duty." Colorado Jury Instruction 26:5. Actual damages recoverable for breach of fiduciary include: (a) anything of value defendant received by the breach; (b) any loss of property caused by the breach; (c) any loss of profits or income; (d) any loss or damage incurred by plaintiff as a result of a third person making a claim because of the breach. *Id.*

69.    A defendant's breach need not be the only cause of the plaintiff's loss. It is enough if defendant's conduct joins with some other act or failure to act to cause all or some of the plaintiff's injury. CJI 9:20; Restatement (Second) Torts §442(b); *Kaiser Foundation Health Plan v. Sharp*, 741 P,2d 714, 719 (Colo. 1987) (en banc) (defendant's conduct need not be the only cause of the injury).

70.    A party injured by a breach of fiduciary duty is entitled to recover

prejudgment interest at a rate of 8% compounded annually on their damages. *See* C.R.S. § 5-12-102(1)(b) ("Interest shall be at the rate of eight per cent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, which ever first occurs."); *Vento v. Colo. Nat'l Bank–Pueblo*, 907 P.2d 642, 647 (Colo. App. 1995) (C.R.S. § 5-12-102(1)(b) "is to be liberally construed to permit recovery of prejudgment interest on money or property wrongfully withheld" and that "one who is damaged by a breach of a duty may recover prejudgment interest from the date of the breach since it is the breach itself that makes the conduct wrongful").

71. Exemplary damages are available where damages are assessed for "a wrong done to the person or to personal or real property" and the "injury . . . is attended by circumstances of fraud, malice, or willful and wanton conduct." C.R.S. § 13-21-102(1)(a).

72. That extends to cases where a plaintiff is injured by a breach of fiduciary duty. *Virdanco, Inc. v. MTS Int'l*, 820 P.2d 352, 354 (Colo. App. 1991) ("An award of exemplary damages is appropriate in breach of fiduciary duty cases which are attended by wanton and reckless conduct."); *see also Mahoney Mktg. Corp. v. Sentry Builders of Colo., Inc*, 697 P.2d 1139, 1141- 42 (Colo. App. 1985) (same); *Holter v. Moore & Co.*, 681 P.2d 962, 967 (Colo. App. 1983) (same).

73. Exemplary damages may be awarded in a bench trial. *Sky Fun 1 v. Schuttloffel*, 27 P.3d 361 (Colo. 2001) (provisions of C.R.S. §13-21-102 apply equally to exemplary damages awarded by a judge and punitive damages may be awarded by a judge).

MOVANTS' EXHIBIT 42
Page 25 of 32

Aple.Appx. 442

74.     A judge may increase exemplary damages up to three times actual damages if defendant continues actions subject of claims in a willful and wanton manner during the pendency of the action or acted in a willful or wanton manner to aggravate plaintiff's damages during the pendency of the case, defined as the where the defendant knew or should have known that his conduct would aggravate the injury. Colo. Rev. Stat. § 13-21-102(3). Entitlement to exemplary damages must be proved beyond a reasonable doubt. C.R.S. §13-25-127.

75.     Roberts' actions in attempting to foreclose on the properties have damaged Cross-Claimants. Those damages Cross-Claimants sustained fall into several categories.

        a.  For Sereno II and Sereno III, Roberts' actions have caused a total loss of those properties. Roberts admits that he intentionally bought Hotusa's rights and attempted to foreclose on the properties for himself. Dec. 2018 Tr. (Roberts) 163:12-16. Not only did Roberts transfer those rights to a Mexican company he controlled, Logistics, so it could take title, but Roberts did so while he had been enjoined from conveying those rights. Even after Roberts was enjoined and held in contempt for violating the preliminary injunction, Roberts conveyed his rights in Logistics to Mexican nationals, who are beyond the jurisdiction of this Court. Roberts concedes that he no longer controls Logistics or the rights to Sereno II and III. Roberts has filed a fraudulent transfer lawsuit in his bankruptcy proceeding against the Mexican nationals to whom he gave Logistics in an attempt to recover the company and rights to the properties.

        b.  Roberts has lost control of the rights he held to Sereno II and III, rights he acquired intentionally in violation of his fiduciary duties to Cross-

MOVANTS' EXHIBIT 42
Page 26 of 32
Aple.Appx. 443

Claimants, and which he then transferred away in further violation of his fiduciary duties and the orders of this Court. Apr. 22 Tr. (Lopez) 154:7-155:4 (testifying that Logistics has the right to foreclosure judgment and receive deed to Sereno II and III). Although Roberts has sued in the bankruptcy proceeding to try to recover Logistics, there are questions as to whether the U.S. Bankruptcy Court has jurisdiction over Mexican national defendants in that case. Had Roberts not violated his duties, Cross-Claimants would have been able to sell Sereno II and Sereno III in 2017 for a price of $12,200,000, less the $5,500,000 Hotusa lien that was required to have been paid off. As a result of Roberts' actions, Cross-Claimants have been damaged by the loss of the entire value of Sereno II and Sereno III in 2017—**$6,700,000**.

    c. Roberts' actions also delayed Cross-Claimants' ability to sell Sereno I and the Beach House, which they had hoped to sell with Sereno II and Sereno III. Roberts' breach frustrated Cross-Claimants' ability to sell all the properties together as they were unable to sell Sereno II and Sereno III after Roberts began his foreclosure attempts. In addition, his claims that his "ownership" extended to Sereno I and the Beach House further complicated efforts. As a result of Roberts' actions, Cross-Claimants are entitled to the diminution in value in Sereno I from the time that Roberts began his wrongful actions through today. That diminution in value is **$1,700,000** for Sereno I. However, with respect to the Beach House, the value of the property did not decrease between 2017 and the present time. While Cross-Claimants argue that there has been some decrease in value of the property, they attribute the decline in value to issues regarding deferred maintenance. The Court does not find that

MOVANTS' EXHIBIT 42
Page 27 of 32

Aple.Appx. 444

these deferred maintenance issues are directly attributable to Roberts' conduct. Therefore, the Court does not find any damages related to the Beach House.

d. Cross-Claimants are also entitled to recover as damages the funds they were required to spend as a result of Roberts' misconduct to maintain the properties and to resist Roberts' foreclosure actions, which were efforts to mitigate their damages. In total, excluding Mexican and US legal fees, those funds were **$1,458,201.00**. *See* Paragraphs 54 and 55 above.

e. Roberts' continued pursuit of legal actions in Mexico in violation of his fiduciary duties has likewise damaged Cross-Claimants, not only by requiring them to spend funds to defend such actions, but also by Roberts' receipt of damages awards in the Mexican litigation. That Mexican litigation damages award was for 12,215,746 pesos. At the June 17, 2022 peso-to-dollar exchange rate, that entitles Cross-Claimants to a damages award of **$597,961**.

f. Exemplary damages are available for a breach of fiduciary duty and a plaintiff must prove their entitlement to exemplary damages beyond a reasonable doubt. Cross-Claimants have met their burden to do so and an award of exemplary damages is appropriate. Here, Roberts' conduct was both willful and wanton and attended by circumstances of fraud. Roberts admits that he bought Hotusa's position and foreclosed on the property, and that the reason for his doing so was to protect *his* investment. Although Roberts claims he did not intend to harm other investors in PdC, his testimony is not credible. He made no provision to protect them from his actions in December 2016 or at any time since. Indeed, his contemporaneous messages to Kneen suggest that he never intended to

MOVANTS' EXHIBIT 42
Page 28 of 32
Aple.Appx. 445

protect PdC. CC Ex. 33. Roberts' willful conduct is further evidenced by the fact that he began scheming to breach his duties ten months before he bought Hotusa's positions – questioning whether he could use the power of attorney he "could skirt RCC and sign away their rights and position by using [his] power of attorney?" Ex. 51 (Jan. 2020 Trial). He then instructed his agents in Mexico to carry out his scheme in Mexico using the Mexican courts to do so. *See* Jan. 2020 Tr. (Rosen) 247:14-248:2. Roberts also acted fraudulently. Roberts concealed his scheme from Cross-Claimants – he did not disclose that he planned to buy Hotusa's position and foreclose on it himself. Apr. 20 Tr. (Kneen) 159:4-20; Apr. 22 Tr. (Littler) 62:16-19; Jan. 2020 Tr. (Flaherty)146:4-20; Jan. 2020 Tr. (Kneen) 196:5-17; *id.* 227:13-21; Dec. 2018 Tr. (Kneen) 65:4-16; Dec. 2018 Tr. (Vertuca) 118:13-15; Dec. 2018 Tr. (Vertuca) 173:7-17. He also actively misled Cross-Claimants by telling them that he was willing to pay Hotusa on behalf of PdC. Roberts' scheme also involved other acts of fraudulent conduct – first by using powers of attorney granted to him by RCC in Mexican litigation against RCC's interest, which he did not disclose, Jan. 2020 Tr. (Flaherty) 152:2-153:3, and without their permission and later by transferring the rights he wrongfully obtained to Logistics and then transferring that shell company to strawmen he now claims not to exercise control over. Roberts has also consistently throughout this litigation undertaken intentional conduct that has served to *aggravate* Cross-Claimants' injury – namely Roberts continued to breach his fiduciary duties and to violate this Court's preliminary injunction, by pursuing legal actions in Mexico based on his claims of ownership to Sereno II and Sereno III. After a contempt citation had been issued, Roberts transferred his wrongfully obtained rights to a

MOVANTS' EXHIBIT 42
Page 29 of 32
Aple.Appx. 446

shell company in Mexico and after being held in contempt he transferred his ownership in that shell company to two Mexican nationals – a fact he concealed from the Court and Cross-Claimants for almost two years and which has had the effect of making it impossible for Roberts to return the wrongfully obtained interests to Cross-Claimants and clear title to the properties. After this occurred, Roberts further lied to Cross-Claimants by executing documents that purportedly would have had the effect of clearing title to Sereno II and Sereno III, but at the time he did so he knew he no longer had any authority to act on behalf of Logistics or ability to convey the rights to Sereno II and Sereno III. Finally, in assessing the appropriate amount of an exemplary damage award, the Court is mindful that the damages award must be proportionate to the defendant's wrongdoing, commensurate with the defendant's financial ability to pay, and that the award serves the purposes of punishment and deterrence. *See Palmer v. A.H. Robins Co.*, 684 P.2d 187, 216 (Colo. 1984). Based on the magnitude of Roberts' misconduct, his ability to pay, and the purposes of exemplary damages, Cross-Claimants are entitled to an award of punitive damages in the amount of **$5,500,000.00**.

g. Cross-Claimants have also asked for an award of attorneys' fees. Colorado generally follows the American rule, but has recognized certain exceptions, including for breaches of fiduciary duty. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 821 n.2 (Colo. 2002) ("Exceptions to the American rule recognized in Colorado include those based on . . . .: the 'common fund' doctrine, *County Workers Comp. Pool v. Davis*, 817 P.2d 521 (Colo. 1991); a party's bad faith and lack of candor in dealing with the court, *Johnston v. Dist. Court*, 196 Colo. 1, 580 P.2d 798 (1978); breach of fiduciary duty or breach of trust, *Buder v. Sartore*, 774

Aple.Appx. 447

P.2d 1383 (Colo. 1989); *Heller v. First Nat'l Bank, N.A.*, 657 P.2d 992 (Colo. App. 1982); and a party's wrongful act proximately causing the wronged party to become engaged in litigation with others, *Publix Cab Co. v. Colo. Nat'l Bank*, 139 Colo. 205, 338 P.2d 702 (1959)."). Attorneys' fees incurred as damages are another exception to the American Rule, Restatement (Second) Torts, §633(b)(1). The Court of Appeals has also recognized that attorneys' fees incurred as damages are appropriate in cases "similar to" a slander title action. *Sussex Real Estate v. Sbrocca*, 634 P.2d 999, 1002 (Colo. App. 1981); *cf. Swartz v. Bianco Family Trust*, 874 P.2d 430 (Colo. App. 1993) (attorney fees incurred seeking an order to return property, set aside transfers and to void a conveyance are recoverable damages). Cross-Claimants are entitled to an award of their U.S. and Mexican attorneys fees under both exceptions to the American Rule and are ordered to submit an application for their fees' under Colorado Rule of Civil Procedure 121, Section 1-22(2).

76.     Roberts' assertion that there were no damages because PdC and RCC had debt that exceeded the value of the property is rejected for the reasons asserted in Cross-Claimants' briefs on their entitlement to damages. To the extent that PdC and RCC had unsecured debts, creditor claims, preferred debt, or other forms of capital invested, they were entitled to utilize the value of the property to pay or compromise those debts to the extent practical. Roberts' actions which reduced or eliminated the equity in the assets owned by RCC and PdC damaged RCC and PdC, rendering an award of damages appropriate. Roberts cites no authority for the proposition that a corporation or LLC with debt is not entitled to recover damages for wrongs against it.

MOVANTS' EXHIBIT 42
Page 31 of 32

Aple.Appx. 448

77.    The Court has calculated the following amounts of pre-judgment interest on the different components of damages:

| Category | Damages Amount | Interest Amount |
|---|---|---|
| Sereno I | $1,700,000 | $797,857.73 |
| Sereno II and III | $6,700,000 | $3,849,775.64 |
| II & III 2017 Expenses | $614,351 | $288,332.17 |
| II & III 2018 Expenses | $477,000 | $171,953.23 |
| II & III 2019 Expenses | $16,000 | $4,155.39 |
| II & III 2020 Expenses | $64,000 | $16,621.57 |
| II & III 2021 Expenses | $198,850 | $33,088.64 |
| II & III 2022 Expenses | $88,000 | $7,040.00 |
| Mexican Damages | $597,961 | N/A |
| Exemplary | $5,500,000 | N/A |
| **TOTAL** | **$15,956,162.00** | **$5,168,824.37** |

78.    Accordingly, the Court enters judgment in favor of Cross-Claimants in the amount of **$10,456,162.00** in actual damages, **$5,500,000** in exemplary damages and **$5,168,824.37** in prejudgment interest on actual damages. The Court will separately enter an award of attorneys' fees following Cross-Claimants' submission under Rule 121, Section 1-22(2).

Done and signed this 23rd day of June, 2022.

BY THE COURT

Marie Avery Moses
District Court Judge

MOVANTS' EXHIBIT 42
Page 32 of 32

Aple.Appx. 449

| District Court, City and County of Denver, State of Colorado<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: January 26, 2023 6:15 PM<br>CASE NUMBER: 2015CV31828 |
|---|---|
| **Plaintiffs:**<br>RICHARD LANG<br><br>v.<br><br>**Defendants and Cross Claimants:**<br>TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL VERTUCA, and PdC, LLC,<br><br>And<br><br>**Third Party Plaintiff:** RIVIERA COUNTRY CLUB S. de R.L. de C.V. ("RCC")<br><br>v.<br><br>**Cross Claim Defendant:**<br>MICHAEL JOSEPH ROBERTS, SR.<br><br>And<br><br>**Third Party Defendants:**<br>MICHAEL J. ROBERTS LLC,<br>SANDSTONE VENTURES LLC | ▲ COURT USE ONLY ▲ |
| | Case No.: 2015CV31828<br><br>Division: 409 |

| **ORDER REGARDING REASONABLENESS AND NECESSITY OF ATTORNEYS FEES INCLUDABLE IN DAMAGES AWARD** |
|---|

In its June 23, 2022 *Order Regarding April 20 & 22, 2022 Hearing on Damages*, this Court determined that Claimants are entitled to an award of their attorneys fees as part of their damages. This Court directed Claimants to submit an application for their fees under Colorado Rule of Civil Procedure 121, Section 1-22(2). This matter is before this Court based on the Claimants' Application for Attorneys Fees and Cross-Claim Defendant

Michael J. Roberts' objections to the reasonableness and necessity of the requested attorneys fees.

Mr. Roberts initially requested that a hearing be held on the reasonableness and necessity of the requested fees, but Mr. Roberts withdrew that request pursuant to a *Waiver of Hearing on Reasonableness and Uncontested Motion to Vacate hearing on Reasonableness of Attorney's Fees* filed on January 23, 2023. Claimants, noting that Mr. Roberts' Chapter 7 Bankruptcy Trustee consented to Mr. Roberts' waiver of the hearing on the reasonableness and necessity of the requested fees, consented to vacating the hearing which was scheduled for January 27, 2023.

Based on the agreement of all interested parties, this Court VACATES the January 27, 2023 hearing on the reasonableness and necessity of Claimants' requested attorneys fees. The Court will rule on the reasonableness and necessity of the requested fees based on the information that has been submitted to this Court in support of and in opposition to the requested fees.

This Court has considered the following in determining the reasonableness and necessity of the attorneys fees requested by Claimants:

1) This Court's file;

2) Claimants' Application for Attorneys' Fees filed July 22, 2022;

3) Ex. A to Claimants' Application for Attorneys' Fees - Declaration of William Leone with attached spreadsheets reflecting redacted billing entries;

4) Ex. B to Claimants' Application for Attorneys' Fees - Declaration of Elliot Turner;

5) Ex. C. to Claimants' Application for Attorneys' Fees - Declaration of Brent Cohen with attached spreadsheets reflecting redacted billing entries;

6) Ex. D to Claimants' Application for Attorneys' Fees - Declaration of Benjamin Rosen with attached billing ledgers;

7) Ex. E to Claimants' Application for Attorneys' Fees - Podoll & Podoll Proof of Claim;

8) Ex. F to Claimants' Application for Attorneys' Fees - Foster Graham Proof of Claim;

9) Ex. G to Claimants' Application for Attorneys' Fees - Connelly Law Proof of Claim;

10) Mr. Roberts' Response to Claimants' Application for Attorneys' Fees and Request for a Hearing;

11) Ex. A to Mr. Roberts' Response to Claimants' Application for Attorneys' Fees and Request for a Hearing – Affidavit of Robert Kitsmiller;

12) Claimants' Reply in Support of Their Application for Attorneys' Fees; and

13) Expert Report of Stanley Garnett filed December 29, 2022 with attachments.


### ORDER

1. **Sufficiency of Documentation Supporting Claimants' Application for Attorneys' Fees**

As an initial matter, the Court rejects Mr. Roberts' argument that the Claimants' Application for Attorneys' Fees did not include sufficient supporting documentation from which this Court can assess the reasonableness and necessity of the fees billed by Norton Rose Fulbright US LLP and Lewis Roca Rothgerber Christie LLP.

Mr. Roberts has argued that C.R.C.P. 121 § 1-22(2) requires every motion for attorney fees and costs to include a written fee agreement between the attorney and client. Mr. Roberts argued that the Claimants' Application for Attorneys' Fees was deficient because written engagement letters were not included. But C.R.C.P. 121 § 1-22(2) "does not require a written fee agreement or other materials evidencing the fee agreement to accompany a motion for attorney fees and costs. . . ." *Nesbitt v. Scott*, 457 P.3d 134, 139 (Colo. App. 2019).

Additionally, Mr. Roberts has argued that this Court should not award Claimants any fees associated with spreadsheet billing entries that contain redactions. C.R.C.P. 121 § 1-22(2)(b) "does not specify that a 'particular or definite' type of supporting documentation . . . must accompany a motion for attorney fees and costs." *Nesbitt v. Scott*, 457 P.3d at 138. The Court has reviewed all of the billing information provided and has concluded that the redactions to the billing entries of Norton Rose Fulbright US LLP and Lewis Roca Rothgerber Christie LLP do not preclude meaningful review of the billing entries. Although certain inform is redacted such as names of some individuals and matters related to case strategy, the information that is not redacted provides sufficient information from which the Court can ascertain the type of work being performed and the amount of time expended.

However, Mr. Roberts' complaints regarding the sufficiency of the billing information provided by Benjamin Rosen are well founded. The Court is generally aware that Mr. Rosen provided a significant amount of valuable legal work for Claimants, the vast majority of which was necessary because of Mr. Roberts' breach of fiduciary duties. However, the Court is completely unable to ascertain from the billing information provided what work was done in any particular month or whether the work performed related to efforts to retain title to the property or whether it related to ancillary criminal matters. This Court is unable to perform the analysis required under the lodestar method utilizing the very limited billing information provided by Mr. Rosen. Without descriptions of the work performed (other than identification of a general category of activity such as "communications" or "review"), this Court cannot determine if any of the time entries are reasonable. Further, the expert report of Mr. Garnett did not in any way express an opinion regarding the reasonableness or necessity of the fees charged by the attorneys working in Mexico. Because of the deficient documentation regarding the nature of the work performed by Mr. Rosen and other attorneys working in Mexico, the Court has no way of determining

that the requested attorneys fees were reasonable or necessary. Therefore, Claimants'

request for $1,376,098.51 in fees associated with the work of Mr. Rosen and other attorneys

working on behalf of Claimants in Mexico is DENIED.

### 2. Legal Standard

An award of attorney fees must be reasonable. *Tallitsch v. Child Support Servs.,*

*Inc.*, 926 P.2d 143, 147 (Colo. App. 1996). To determine a reasonable amount of attorney

fees, the trial court must calculate a "lodestar" amount, which represents the number of

hours reasonably expended by the attorneys multiplied by a reasonable hourly rate. *Id.* The

court may then adjust the lodestar amount upward or downward by applying the factors

listed in Colorado Rule of Professional Conduct Rule 1.5. *Id.*

### 3. Norton Rose Fulbright US LLP Fees

Claimants assert that this Court should award as damages $1,790,730.23 of

attorneys fees incurred by Claimants' attorneys at Norton Rose Fulbright US LLP. The

Declarations of Mr. Leone and Mr. Turner reveal that Claimants incurred fees at Norton

Rose Fulbright in the amount of $2,130,514.82 related to litigating their claims against Mr.

Roberts. This sum does not include fees incurred on litigation matters related to other

parties (such as Plaintiff Lang's claims). From this overall amount of $2,130,514.82, counsel

has deducted $136,866.26 and $3,948.30 because Mr. Roberts has already been ordered to

pay those amounts to Claimants related to certain contempt proceedings and discovery

violations. The remaining amount of $1,989,700 has been further reduced by 10% by

counsel as a professional courtesy. The resulting amount of $1,790,730.23 is the amount of

fees Claimants seek as damages for the legal services provided by Norton Rose Fulbright.

### a. Hours Reasonably Expended

The fees requested related to the work performed by Norton Rose Fulbright

attorneys and staff totaled 3,387 hours accrued over the past four years of litigation against

Mr. Roberts. Mr. Roberts has lodged a general objection that the time spent by Claimants' attorneys was "excessive" and "unreasonable." While Mr. Roberts lodges these general objections, he does not provide any examples as to what specific work he deems to be unnecessary or unreasonable. Indeed, it is hard for this Court to understand Mr. Roberts' objection to Norton Rose Fulbright's fees of $1,989,700 which were incurred over a four-year period (April 2018 to July 2022), where it appears that Mr. Roberts incurred approximately $1,602,665 in attorney fees litigating the same matters between December 2020 and September 2022. *See* Bankruptcy Proof of Claim filed by Podoll & Podoll, Foster Graham, and Connelly Law.

Indeed, the Court finds that all of the hours incurred by Norton Rose Fulbright attorneys and staff were reasonable given the protracted litigation that was occasioned by Mr. Roberts' litigation tactics.

### b. Hourly Rates

The following hourly rates were charged by the Norton Rose Fulbright attorneys:

> William Leone (partner): $775-$850—average $812.50
> Eliot Turner (partner): $575-$695—average $635
> Michael Cross (senior associate): $575
> Alex Cummings (associate): $330-$405—average $367.50
> Alexis Wilpon (associate): $400-$500—average $450

In evaluating the reasonableness of attorneys' fees, the Colorado Supreme Court has held that courts should look "at market rates for attorneys of comparable skill, experience, and reputation." *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 387 (Colo. 1994). The Declarations of Mr. Leone and Mr. Turner support a finding that the rates charged by the Norton Rose Fulbright attorneys comport with the market rates for attorneys of comparable skill, experience and reputation.

Mr. Roberts asserts that the hourly rates charged by the Norton Rose Fulbright attorneys are unreasonable because they are "more akin to the rates of lawyers in New

York." *See Affidavit of Robert Kitsmiller*. However, other than providing information regarding the "average hourly rates in Colorado in 2021" according to "Clio", Mr. Kitsmiller's Affidavit does not provide any information from which this Court can assess "the fee customarily charged in the locality for *similar legal services*." *See* C.R.P.C. Rule 1.5(a)(3) (emphasis added).

The Court has reviewed the information provided by Mr. Garnett regarding the hourly rates charged by partners at large Denver firms as reported in the National Law Journal as of 2019 and found to have been reasonable by other courts in Colorado. Specifically, this Court is considering the National Law Journal Survey information reflecting that equity partners in the Mountain region in the 9th decile of survey respondents charged $650 per hour and partners with eight to nine years of experience bill $500 per hour in the 9th decile. *See Garnett Report*, pp. 4-5, *citing Merrill v. Contract Freighters, Inc.*, 2021 U.S. Distr. LEXIS 159469 at *9 (D. Colo. Aug. 4, 2021); *First Mercury Ins. Co. v. Wonderland Homes*, 2021 U.S. Dist. LEXIS 136485 at 13-14 (D. Colo. July 22, 2021); and *Miller v. Bahakel Commc'ns, Ltd.*, 2022 WL 1469546 at *2 (D. Colo. May 9, 2022).

In reviewing the detailed information provided approved by other Colorado courts, this Court FINDS that the rates charged by Norton Rose Fulbright US LLP are approximately 20% higher the rates reflected in the National Law Survey. For example, Mr. Leone's average rate of $812.50 is approximately 20% higher than the $650 per hour charged by equity partners in the 90th percentile of Denver's large law firms. Mr. Turner's average rate of $635 is also approximately 20% higher than the $500 per hour charged by junior partners in Denver law firms.

Therefore, for purposes of determining a reasonable hourly rate under the loadstar method, based on the fee customarily charged in Denver for similar legal services, the

Court finds that the fees charged by Norton Rose Fulbright should be decreased by 20%. To calculate an appropriate reduction based on customary hourly rates, the Court has reduced the $1,989,700 charged by Norton Rose Fulbright by 20% to arrive at $1,591,760.

### c. Rule 1.5 Factors

The Court has considered the Rule 1.5 Factors to determine whether the lodestar amount of $1,591,760 should be adjusted upwards or downwards.

### (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

Norton Rose Fulbright has represented Claimants in this case since 2015, but are only seeking fees incurred since 2018. In its representation since 2018, Norton Rose Fulbright has appeared for six evidentiary hearings that lasted a total of seven days: a preliminary injunction hearing, a contempt hearing, a liability trial, a traverse hearing, a purge hearing, and a two-day damages trial. In addition, there have been twelve status conferences held, both virtually and requiring in-person appearances. Claimants' counsel have obtained a preliminary injunction against Mr. Roberts, a finding that Mr. Roberts had violated that injunction and was in contempt of court, a finding of liability after trial that Mr. Roberts breached his fiduciary duties, sanctions, including a default judgment against Mr. Roberts for his discovery violations, a prejudgment attachment against Mr. Roberts's assets, which was sustained against Mr. Roberts's traverse, and finally, after a trial on damages in April 2022, a judgment of $21,124,986.40 against Mr. Roberts. The main question involved in this litigation required Norton Rose Fulbright to navigate Colorado and Mexico law related to breach of fiduciary duty, which presented novel and difficult issues. The work required to see a case from start to finish, for any attorney, is extensive, and that is especially the case here, where Norton Rose Fulbright handled sophisticated issues in multiple countries against a particularly litigious opponent.

(2)     The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer

By representing Claimants in the litigation Norton Rose Fulbright was not necessarily precluded from representing other potential clients. Norton Rose Fulbright has spent at least 3,387 hours on this litigation over a four-year period.

(3)  The fee customarily charged in the locality for similar legal services.

As addressed above, the Court has found that the Norton Rose Fulbright hourly rates were approximately 20% higher than the hourly rates charged in Denver for similar legal services. The Court has already discounted the requested fees to account for this differential.

(4)  The amount involved and the results obtained

Claimants have obtained a judgment against Mr. Roberts for $21,124,986.40. They have been successful at every stage of litigation, resulting in a preliminary injunction, a finding of contempt, a finding that Mr. Roberts breached his fiduciary duties, a prejudgment writ of attachment, and a default judgment. Claimants have successfully defeated numerous motions that Mr. Roberts filed and have also defeated Mr. Roberts' attempts to appeal the court's contempt order. Given that Norton Rose Fulbright's attorneys' fees in this case are approximately 10% of the judgment against Roberts, and the fact that the attorneys have consistently obtained favorable results, the amount of attorneys' fees requested is reasonable.

(5)  The time limitations imposed by the client or by the circumstances.

Mr. Roberts' own conduct imposed unique limitations on the litigation. Over half of the cost of this litigation arose after Mr. Roberts hired Podoll & Podoll, P.C. in December 2020. Mr. Roberts and his attorneys' scorched earth litigation tactics were primarily responsible for creating the need for protracted litigation which required Claimants to

spend significant, additional time on this litigation, thereby resulting in an increase of fees ultimately charged.

**(6) The nature and length of the professional relationship with the client.**

Norton Rose Fulbright has represented Claimants since 2015. Norton Rose Fulbright has been involved in this litigation since 2015, nearly eight years' worth of work since Claimants began pursuing claims against Roberts.

**(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and**

The Norton Rose Fulbright attorneys are experienced, reputable, and sophisticated. Mr. Leone is a partner at Norton Rose Fulbright in both their Denver and New York offices. In Denver, he leads the firm's litigation practice. For four years, he also led the White Collar and Government Investigations and litigation practices in New York. He graduated from the University of Colorado School of Law in 1981. He served as the U.S. Attorney for the District of Colorado from 2004 to 2006. He focuses his practice on business litigation and has experience litigating fiduciary duty matters. Mr. Turner was a senior associate at Norton Rose Fulbright when this litigation began; he is now a partner in the firm's D.C. and Houston offices. He graduated from the University of Texas School of Law in 2008. He clerked for two federal judges after law school: Judge Lamberth (D.D.C.) and Judge Kravitch (11th Cir.). Mr. Turner specializes in business and antitrust litigation, and he also has experience litigating fiduciary duty matters. Michael Cross, Alex Cummings, and Alexis Wilpon have all worked at Norton Rose Fulbright as associates. Mr. Cross graduated from Cornell Law School in 2009. Ms. Cummings graduated from the University of Texas School of Law in 2017. Ms. Wilpon graduated from Georgetown University Law Center in 2017. Each of Claimants' attorneys are experienced, reputable, and sophisticated, all of which justify their fees.

(8) **Whether the fee is fixed or contingent.**

Norton Rose Fulbright's fees were neither flat fee nor contingent. Rather, the fees were based on hourly rates that were fixed for each year of the litigation and generally increased incrementally each year in accordance with local custom and market rates.

    d.   <u>Total reasonable and necessary attorney fees incurred by Norton Rose Fulbright</u>

Under the loadstar method, the Court has concluded that $1,591,760 is a reasonable amount of attorneys fees for the work performed by Norton Rose Fulbright. The Court has considered the Rule 1.5 factors described above which amply support the amount of fees charged by Norton Rose Fulbright. Considering the Rule 1.5 factors, the Court concludes that the loadstar fees are a reasonable amount of attorneys fees. Therefore, the Court awards Claimants **$1,591,760** as reasonable attorneys fees for the work performed by Norton Rose Fulbright, LLC.

    4.   **Lewis Roca Rothgerber Christie LLP's Fees**

Claimants assert they should be awarded $278,574.50 of attorneys fees charged by Claimants' bankruptcy counsel, Lewis Roca Rothgerber Christie LLP. Specifically, Claimants argue that they were required to retain bankruptcy counsel when Mr. Roberts filed for bankruptcy in the middle of these proceedings and Claimants were required to seek relief from stay to obtain an award of damages. Claimants assert that all of the $278,574.50 incurred by bankruptcy counsel was reasonable and necessary to pursue their interests in this action.

Mr. Roberts has objected to the fees charged by bankruptcy counsel on the grounds that 1) this Court did not award fees to Claimants for the bankruptcy proceedings and 2) the fees charged by Mr. Caby are higher than the customary fees in the Denver area.

a. Inclusion of Bankruptcy Fees

The Court FINDS that it is appropriate to include some of the fees that were incurred by Claimants in the bankruptcy proceeding as damages in this action because such fees were a necessarily part of Claimants efforts to secure a judgment against Mr. Roberts and to combat the efforts of Mr. Roberts to delay these proceedings. But for the efforts of bankruptcy counsel in obtaining relief from stay, this matter could not have proceeded to judgment. The rationale for the "breach of fiduciary duty" exception to the American rule is that "an award of attorneys' fees is necessary to make a party whole in an action for . . . breach of fiduciary duty." *People v. District Court, City and County of Denver*, 808 P.2d 831, 835 n.5 (Colo. 1991). Here, the bankruptcy fees accrued as part of Claimants efforts to obtain a relief from stay (which was granted on March 25, 2022) and thus must be paid by Mr. Roberts to Claimants to make Claimants whole from Mr. Roberts' breach of fiduciary duty. It is proper to include these fees as damages.

However, having reviewed the fees of Claimants' bankruptcy counsel, it appears that Claimants are seeking fees incurred between November 2021 (before Mr. Roberts filed for bankruptcy) through July 8, 2022 (three and half months after the stay was lifted). The Court does not find that fees incurred prior to Mr. Roberts' February 18, 2022 bankruptcy filing or after the March 25, 2022 grant of relief from stay are related to Claimants' efforts to establish damages in this action. Therefore, the Court will not award such fees as damages.

The Court has calculated that Lewis Roca Rothgerber Christie, LLC billed $104,544 in fees between February 22, 2022 and March 25, 2022. This represented 181.4 hours of work.

### b. Hours Reasonably Expended

Other than a general challenge to the inclusion of bankruptcy attorney fees in the damages award, Mr. Roberts does not challenge the reasonableness of the number of hours worked by Claimants' bankruptcy counsel. The Court has reviewed all billing entries between February 22, 2022 and March 25, 2022 and finds such hours to be necessary and reasonably related to prosecution of the relief from stay. The Court FINDS that 181.4 hours were reasonable given the needs of the proceedings to obtain a release from stay.

### c. Hourly Rates

The following hourly rates were charged by the Norton Rose Fulbright attorneys:

Brent Cohen (partner): $640
Chad Caby (partner): $545

In evaluating the reasonableness of attorneys' fees, the Colorado Supreme Court has held that courts should look "at market rates for attorneys of comparable skill, experience, and reputation." *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 387 (Colo. 1994). The Declaration of Mr. Cohen supports a finding that the rates charged by the Lewis Roca Rothgerber Christie attorneys comport with the market rates for attorneys of comparable skill, experience and reputation.

While Mr. Roberts objects to Mr. Caby's hourly rate generally, he does not provide this Court with any argument as to why Mr. Caby's hourly rate is unreasonable, nor does he provide any information from which this Court can assess "the fee customarily charged in the locality for *similar legal services*." *See* C.R.P.C. Rule 1.5(a)(3) (emphasis added).

The Court has reviewed the information provided by Mr. Garnett regarding the hourly rates charged by partners at large Denver firms as reported in the National Law Journal as of 2019 and found to have been reasonable by other courts in Colorado. Specifically, this Court is considering the National Law Journal Survey information

reflecting that equity partners in the Mountain region in the 9th decile of survey respondents charged $650 per hour and partners with eight to nine years of experience bill $500 per hour in the 9th decile. *See Garnett Report*, pp. 4-5, *citing Merrill v. Contract Freighters, Inc.*, 2021 U.S. Distr. LEXIS 159469 at *9 (D. Colo. Aug. 4, 2021); *First Mercury Ins. Co. v. Wonderland Homes*, 2021 U.S. Dist. LEXIS 136485 at 13-14 (D. Colo. July 22, 2021); and *Miller v. Bahakel Commc'ns, Ltd.*, 2022 WL 1469546 at *2 (D. Colo. May 9, 2022).

In reviewing the detailed information regarding fees charged by top tier firms in Denver provided approved by other Colorado courts, this Court FINDS that the rates charged by Lewis Roca Rothgerber Christie LLP are fairly consistent with the rates reflected in the National Law Survey. Thus, the Court FINDS that the Lewis Roca Rothgerber Christie hourly rates are reasonable and consistent with the fees customarily charged in this locality for *similar legal services*.

Because the Court finds that the hourly rates of Lewis Roca Rothgerber Christie LLP were reasonable, and that the 181.4 hours expended between February 22, 2022 and March 23, 2022 were reasonable, applying the loadstar method yields a total amount of $104,544.

### d. <u>Rule 1.5 Factors</u>

The Court has considered the Rule 1.5 Factors to determine whether the lodestar amount of $104,544 should be adjusted upwards or downwards.

**(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.**

The Lewis Roca bankruptcy attorneys did a significant amount of work in a very short period of time. Because of the complexities of the litigation in this case and Mr. Roberts' litigious nature, the matters to be presented in support of Claimants' request for

relief from stay were similarly complex. Without the assistance of bankruptcy counsel, Claimants would not have been able to proceed with establishing a judgment against Mr. Roberts in the amount of $21,124,986.40.

**(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer**

By representing Claimants in the bankruptcy litigation Lewis Roca Rothgerber Christie LLP was not necessarily precluded from representing other potential clients.

**(3) The fee customarily charged in the locality for similar legal services.**

As addressed above, the Court has found that the Lewis Roca Rothgerber Christie LLP hourly rates were consistent with the fees customarily charged by large firms in Denver for similar legal services.

**(4) The amount involved and the results obtained**

Claimants have obtained a judgment against Mr. Roberts for $21,124,986.40. Because such an award would not have been possible without the relief from stay obtained by Lewis Roca Rothgerber Christie LLP attorneys, the amount of attorneys' fees requested is reasonable.

**(5) The time limitations imposed by the client or by the circumstances.**

Mr. Roberts and his attorneys' scorched earth litigation tactics were primarily responsible for creating the need for protracted litigation which required Claimants to hire bankruptcy counsel in this action and to spend significant, additional time on this litigation.

**(6) The nature and length of the professional relationship with the client.**

Lewis Roca Rothgerber Christie LLP has represented Claimants since November 2021. The attorney work that this Court is considering for the fee award took place over a one-month period during which 181.4 hours were billed.

(7) **The experience, reputation, and ability of the lawyer or lawyers performing the services; and**

The Lewis Roca Rothgerber Christie LLP attorneys are experienced, reputable, and sophisticated. Mr. Cohen has been licensed to practice law in Colorado for over forty years and his practice focuses on bankruptcy. Mr. Caby has been practicing law for over twenty years and specializes in bankruptcy.

(8) **Whether the fee is fixed or contingent.**

Lewis Roca Rothgerber Christie LLP's fees were neither flat fee nor not contingent. Rather, the fees were based on fixed hourly rates.

e. <u>Total reasonable and necessary attorney fees incurred by Norton Rose Fulbright</u>

Under the loadstar method, the Court has concluded that $104,544 is a reasonable amount of attorneys fees for the work performed by Lewis Roca Rothgerber Christie LLP. The Court has considered the Rule 1.5 factors described above which generally support the amount of fees charged by Lewis Roca Rothgerber Christie LLP. Considering the Rule 1.5 factors, the Court concludes that the loadstar fees are a reasonable amount of attorneys fees, but that a slight downward deviation is appropriate because of the short period of time during which the bankruptcy attorneys fees were generated. Therefore, the Court awards Claimants **$100,000** as reasonable attorneys fees for the work performed by Lewis Roca Rothgerber Christie LLP.

<u>CONCLUSION</u>

For the reasons stated above, the Court awards Claimants **$1,691,760** ($1,591,760 + $100,000) as reasonable and necessary attorney fees incurred in pursuing their claims against Mr. Roberts in this action.

## JUDGMENT

It is therefore adjudged and decreed as follows:

Judgment shall enter against Cross-Claim Defendant Michael Joseph Roberts, Sr. and in favor of Cross-Claimants Timothy Flaherty, Timothy Kneen, Carl Vertuca, PdC, LLC and Riviera Country Club S. de R.L. de C.V. in the amount of **$1,691,760**, plus post-judgment interest at the legal rate that will accrue until this judgment amount, plus any accrued interest, is fully paid.

Dated this 26th day of January, 2023.

BY THE COURT:

_____
Marie Avery Moses
District Court Judge

DISTRICT COURT, DENVER COUNTY, COLORADO

Court Address:  1437 Bannock Street
                Denver, CO 80202

_____

**Plaintiff:**

RICHARD LANG

v.

**Defendants and Cross Claimants**:

TIMOTHY FLAHERTY, TIMOTHY KNEEN, CARL VERTUCA and PdC, LLC

and

**Third Party Plaintiff**:

RIVIERA COUNTRY CLUB S. de R.L. de C.V.

v.

**Cross Claim Defendant**:

MICHAEL JOSEPH ROBERTS, SR.

and

**Third Party Defendants**:

MICHAEL J. ROBERTS LLC and SANDSTONE VENTURES LLC.

DATE FILED: April 10, 2023 2:35 PM
CASE NUMBER: 2015CV31828

☐    **COURT USE ONLY**    ☐

_____

Case Number:  **15CV31828**

Ctrm:  **409**

## ORDER

     This matter came before the Court on a hearing regarding status on April 10, 2023.  The Court having heard extensive argument from counsel on behalf

of all parties, including the Chapter 7 Bankruptcy Trustee, and now being advised, find and order as follows.

The Court is not persuaded that the orders of the bankruptcy court granting relief from the automatic stay permit the further litigation of the issues identified at the status hearing in this court. Moreover, the Court is persuaded that the Chapter 7 Trustee is the exclusive holder of Michael Robert's litigation and appellate rights, and that Roberts will be permitted to raise pertinent objections and defenses within the context of the bankruptcy proceedings.

Accordingly, the Court grants the request to stay these proceedings pending final approval of the settlement agreement by the bankruptcy court. The parties will file a status report within 35 days of this order apprising the Court of the status of the bankruptcy, and every 35 days thereafter until a final order is issued in the bankruptcy proceeding.

**SO ORDERED**, this 10th Day of April, 2023

BY THE COURT:

_____
Martin Egelhoff
District Court Judge

2

# Register of Actions

| | Filed by Plaintiff/Petitioner |
|---|---|
| | Filed by Defendant/Respondent |
| | Filed by Court |

**Case Number:** 2015CV031828

**Case Type:** Fraud

**Case Caption:** Wood, Benjamin David et al v. Flaherty, Timothy et al

**Division:** 409

**Judicial Officer:** Martin Egelhoff

**Court Location:** Denver County - District

**Related Case Number:** 2021CV30401 - Arapahoe County

**Appellate Case Number:** 2021SA155 - Supreme Court
2021CA789 - Court of Appeals
2021MD9 - Supreme Court
2021CA248 - Supreme Court
2021CA1209 - Court of Appeals
2021SC746 - Supreme Court
2021SA295 - Supreme Court
2021CA1846 - Court of Appeals
2022CA128 - Court of Appeals

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| N/A | 04/11/2023 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A (Details) | 04/10/2023 2:35 PM | Martin Egelhoff | Denver County - District | N/A | Order | Order re: Stay of Proceedings Pending Bankruptcy Determinations | Public |
| N/A | 04/10/2023 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 54D0BFC93746D | 04/07/2023 12:00 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Response | Response to Status Report | Public |
| F70AAB6B3CE03 | 04/06/2023 12:54 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Notice | Notice of Transcript Filing w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Notice of Transcript Filing | Protected |
| 8E5C9B7BCBA3E | 04/05/2023 7:47 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Report | Status Report for April 10 Status Conference | Public |
| N/A | 04/05/2023 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 8A8CFDD8C29DB | 04/03/2023 5:10 PM | Brenton L Gragg, Michael Thomas Gilbert | Allen Vellone Wolf Helfrich and Factor P C | Harvey Sender | Entry of Appearance | Entry of Appearance | Public |
| N/A (Details) | 04/02/2023 5:54 PM | Martin Egelhoff | Denver County - District | N/A | Order (Related Document) | Order:Roberts' Motion for Forthwith Release of Appearance Bond w/attach | Public |
| 8FBE897923540 | 03/30/2023 5:38 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion | Motion to Strike Lis Pendens | Public |
| | | | | | Proposed Order | Proposed Order Re: Motion to Strike Lis Pendens | Public |
| 7275CE3D6610A | 03/30/2023 5:34 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Exhibit - Attach to Pleading/Doc | Exhibit A to Roberts' Motion for Forthwith Release of Appearance Bond - Redacted Statement from F Trust | Protected |
| 5527368C4070C | 03/30/2023 5:08 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | Roberts' Motion for Forthwith Release of Appearance Bond w/attach | Public |
| | | | | | Proposed Order | Proposed Order Re: Motion for Forthwith Release of Bond | Public |
| C866BB65F3B68 | 03/28/2023 4:10 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion | Motion For New Trial w/attach | Public |
| | | | | | Proposed Order | Proposed Order re: Motion for New Trial | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Motion For New Trial - Excerpt of RCC Articles | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Motion For New Trial - Affidavit of David Lopez | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Motion For New Trial - Excerpt of June 19, 2020 Findings and Conclusions | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to Motion For New Trial - Photograph of Production of Documents | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit E to Motion For New Trial - Translated Decision of Mexican Federal Court | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit F to Motion For New Trial - Cross Claimants' 2014 Loan Recap | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit G to Motion For New Trial - RM Funding Loan Agreement | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit H to Motion For New Trial - RM Funding Promissory Note | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| 69EE61243B17B | 03/23/2023 3:50 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Reply | Roberts' Reply In Support of Motion to Confirm Status of Pre-Trial Orders | Public |
| 7DC2DCB5E111D | 03/20/2023 7:51 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Carl Vertuca (more) | Filing Other | Claimants' Opposition to Roberts's Motion to Confirm Status of Pretrial Orders | Public |
| 82BB481CAE625 | 03/16/2023 1:29 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Report | Status Report | Public |
| N/A | 03/15/2023 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A | 03/08/2023 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A (Details) | 03/02/2023 1:15 PM | Martin Egelhoff | Denver County - District | N/A | Order (Related Document) | Order:Notice of Settlement | Public |
| FEFB88DA91FDC | 03/01/2023 5:57 PM | Margaret Reidy Pflueger, Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Notice (Related Document) | Notice of Settlement | Public |
| 3A6A7DAA341E0 | 02/27/2023 4:09 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) Proposed Order (Related Document) | Roberts' Motion to Confirm Status of Pretrial Orders Proposed Order Re: Motion to Confirm Status of Pretrial Orders | Public Public |
| N/A (Details) | 02/27/2023 1:13 PM | Martin Egelhoff | Denver County - District | N/A | Order (Related Document) | Order: Plaintiff Richard Lang's Unopposed Motion for Extension of Time for Filing Case Management Order on Lang's Claims Against Defendant Michael Roberts- Granted | Public |
| 8F25A8E3786D3 | 02/24/2023 3:41 PM | Margaret Reidy Pflueger, Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion (Related Document) Proposed Order | Plaintiff Richard Lang's Unopposed Motion for Extension of Time for Filing Case Management Order on Lang's Claims Against Defendant Michael Roberts PROPOSED ORDER GRANTING PLAINTIFF RICHARD LANGS UNOPPOSED MOTION FOR EXTENSION OF TIME FOR FILING CASE MANAGEMENT ORDER ON LANGS CLAIMS AGAINST DEFENDANT MICHAEL ROBERTS | Public Public |
| N/A (Details) | 01/27/2023 10:08 AM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order:Motion to Set Trial on Plaintiff Richard Lang's Claims | Public |
| N/A | 01/27/2023 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 01/26/2023 6:15 PM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | ORDER REGARDING REASONABLENESS AND NECESSITY OF ATTORNEYS FEES INCLUDABLE IN DAMAGES AWARD | Public |
| N/A (Details) | 01/26/2023 9:37 AM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order:Response to Motion for Status Conference | Public |
| EBDD6ED36C1E1 | 01/24/2023 10:47 AM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Response (Related Document) | Response to Motion for Status Conference | Public |
| 8BD021F9857F2 | 01/24/2023 9:37 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Filing Other Exhibit - Attach to Pleading/Doc | CLAIMANTS STATEMENT REGARDING ROBERTSS REQUEST TO VACATE HEARING ON ATTORNEYS FEES W/ATTACH Exhibit A to CLAIMANTS STATEMENT REGARDING ROBERTSS REQUEST TO VACATE HEARING ON ATTORNEYS FEES - Email from M. Gilbert (counsel for Chapter 7 Trustee) waiving hearing | Public Protected |
| 76024B2CA82DF | 01/23/2023 6:34 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion Proposed Order | Waiver of Hearing on Reasonableness and Uncontested Motion to Vacate Hearing on Reasonableness of Attorney's Fees PROPOSED ORDER RE UNOPPOSED MOTION TO VACATE HEARING ON REASONABLENESS OF FOR ATTORNEYS FEES | Public Public |
| N/A (Details) | 01/20/2023 12:26 PM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order:Motion to Compel Production of Unredacted Time Records and for Continuance of the Scheduled Hearing on Reasonableness of Fees | Public |

**MOVANTS' EXHIBIT 50**
**Page 2 of 66**

Aple.Appx. 470   2/66

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| 7C6C68E93E974 | 01/19/2023 9:53 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Reply | Reply in Support of Motion to Compel Production of Unredacted Time Records and for Continuance of Scheduled Hearing on Reasonableness of Fees | Public |
| E0CA679285BA4 | 01/17/2023 3:52 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Filing Other | CLAIMANTS OPPOSITION TO ROBERTSS MOTION TO COMPELAND MOTION FOR EXTENSION OF TIME | Public |
| N/A (Details) | 01/12/2023 3:00 PM | Marie Avery Moses | Denver County - District | N/A | Order | Expedited Briefing Schedule for Motion to Compel Production of Unredacted Time Records and for Continuance of the Scheduled Hearing on Reasonableness of Fees | Public |
| B502C6F29C358 | 01/12/2023 2:06 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion to Compel (Related Document) / Proposed Order (Related Document) | Motion to Compel Production of Unredacted Time Records and for Continuance of the Scheduled Hearing on Reasonableness of Fees / (Proposed) Order re Motion to Compel Production of Unredacted Time Records and for Continuance of the Scheduled Hearing on Reasonableness of Fees | Public / Public |
| N/A (Details) | 01/12/2023 1:54 PM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order:Stipulated Motion to Dismiss with Prejudice only the Claims Asserted by Plaintiff Richard Lang Against Timothy Flaherty, Timothy Kneen, Carl Vertuca, and PdC, LLC | Public |
| 7FF5624D58113 | 01/10/2023 12:06 PM | Margaret Reidy Pflueger, Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion to Dismiss (Related Document) / Proposed Order | Stipulated Motion to Dismiss with Prejudice only the Claims Asserted by Plaintiff Richard Lang Against Timothy Flaherty, Timothy Kneen, Carl Vertuca, and PdC, LLC (Also filed on behalf of Defendants Timothy Flaherty, Timothy Kneen, Carl Vertuca, and PdC, LLC) / Proposed Order regarding Stipulated Motion to Dismiss with Prejudice only the Claims Asserted by Plaintiff Richard Lang Against Timothy Flaherty, Timothy Kneen, Carl Vertuca, and PdC, LLC | Public / Public |
| F6143DFF62380 | 12/29/2022 2:59 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Notice / Exhibit - Attach to Pleading/Doc | Notice of Filing of Expert Report of Stanley Garnett w/attach / Exhibit 1 to Notice of Filing of Expert Report of Stanley Garnett - Expert Report of Stanley Garnett | Public / Protected |
| 3C2C6467F10D2 | 12/28/2022 6:47 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Pdc Llc (more) | Witness List | Claimants' Proposed Witness List | Public |
| 130C9062444BF | 12/28/2022 6:45 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Exhibit List | Claimants' Proposed Exhibit List | Public |
| N/A (Details) | 12/09/2022 11:59 AM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order:CLAIMANTS' UNOPPOSED MOTION FOR CONTINUANCE OF ATTORNEYS FEE HEARING AND RELATED DEADLINES | Public |
| 95B2FA71E7247 | 12/07/2022 7:48 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Riviera Country Club S De Rl De Cv, Timothy Flaherty (more) | Motion (Related Document) | CLAIMANTS' UNOPPOSED MOTION FOR CONTINUANCE OF ATTORNEYS FEE HEARING AND RELATED DEADLINES | Public |
| 1189D0D78520D | 11/15/2022 10:19 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Report | Status Report | Public |
| 8D6F420F1F0F4 | 09/30/2022 3:09 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Notice | NOTICE OF SETTING | Public |
| F1FA1432AEFA8 | 09/27/2022 3:08 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Report / Exhibit - Attach to Pleading/Doc | SEPTEMBER 27, 2022, STATUS REPORT WITH ATTACH / Exhibit TO SEPTEMBER 27, 2022, STATUS REPORT - ORDER CONVERTING CHAPTER 11 CASE TO CHAPTER 7 | Public / Protected |
| N/A (Details) | 09/16/2022 5:11 PM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order: Claimants' Application for Attorneys' Fees | Public |

**MOVANTS' EXHIBIT 50**
**Page 3 of 66**

**Aple.Appx. 471** 3/66

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| 4D94357DF5944 | 09/02/2022 6:13 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Reply | CLAIMANTS' REPLY IN SUPPORT OF THEIR APPLICATION FOR ATTORNEYS' FEES | Public |
| 9DD693F34C136 | 08/26/2022 6:30 PM | Laura Knopp | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Response *(Related Document)* <br> Exhibit - Attach to Pleading/Doc *(Related Document)* | RESPONSE TO CLAIMANTS' APPLICATION FOR ATTORNEYS' FEES AND REQUEST FOR A HEARING (with attach) <br> EXHIBIT A to RESPONSE TO CLAIMANTS' APPLICATION FOR ATTORNEYS' FEES AND REQUEST FOR A HEARING - AFFIDAVIT OF ROBERT A. KITSMILLER | Public <br> Protected |
| N/A (Details) | 08/24/2022 1:42 PM | Marie Avery Moses | Denver County - District | N/A | Order *(Related Document)* | ORDER GRANTING UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO CLAIMANTS' APPLICATION FOR ATTORNEYS' FEES | Public |
| 9A7F228462EB8 | 08/16/2022 3:05 PM | Laura Knopp | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion *(Related Document)* <br> Proposed Order | UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO CLAIMANTS' APPLICATION FOR ATTORNEYS' FEES <br> PROPOSED ORDER RE: UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO CLAIMANTS' APPLICATION FOR ATTORNEYS' FEES | Public <br> Public |
| 1EBDABF68C122 | 07/22/2022 7:41 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Filing Other *(Related Document)* <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc | Claimants' Application for Attorneys Fees with attach <br> Ex. A to Claimants' Application for Attorneys' Fees - Declaration of W. Leone <br> Ex. B to Claimants' Application for Attorneys' Fees - Declaration of E. Turner <br> Ex. C. to Claimants' Application for Attorneys' Fees - Declaration of B. Cohen <br> Ex. D to Claimants' Application for Attorneys' Fees - Declaration of B. Rosen (Part 1) <br> Ex. D to Claimants' Application for Attorneys' Fees- Declaration of B. Rosen (Part 2) <br> Ex. D to Claimants' Application for Attorneys' Fees - Declaration of B. Rosen (Part 3) <br> Ex. E to Claimants' Application for Attorneys' Fees - Podoll & Podoll Proof of Claim <br> Ex. F to Claimants' Application for Attorneys' Fees - Foster Graham Proof of Claim <br> Ex. G to Claimants' Application for Attorneys' Fees - Connelly Law Proof of Claim | Public <br> Protected <br> Protected <br> Protected <br> Protected <br> Protected <br> Protected <br> Protected <br> Protected <br> Protected |
| N/A (Details) | 07/15/2022 9:22 AM | Marie Avery Moses | Denver County - District | N/A | Order *(Related Document)* | ORDER GRANTING CLAIMANTS UNOPPOSED MOTION FOR EXTENSION OF TIME THEIR APPLICATION FOR ATTORNEYS FEES | Public |
| DD42201D9F8F6 | 07/13/2022 3:41 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Motion *(Related Document)* | CLAIMANTS UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE THEIR APPLICATION FOR ATTORNEYS FEES | Public |
| A8C91C10C9E1A | 06/28/2022 10:51 AM | Michael Kevin Cross | Norton Rose Fulbright US LLP | Timothy Kneen, Carl Vertuca (more) | Notice of Withdrawal | Notice of Withdrawal of Counsel | Public |
| N/A (Details) | 06/23/2022 3:23 PM | Marie Avery Moses | Denver County - District | N/A | Order *(Related Document)* | Order Regarding April 20 & 22, 2022 Hearing on Damages | Public |
| 7F5CB6624179E | 06/14/2022 9:39 AM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Notice <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc | CLAIMANTS NOTICE OF FILING TRANSCRIPTS (with attach) <br> Exhibit to CLAIMANTS NOTICE OF FILING TRANSCRIPTS - Transcript (12-06-2018) (suppressed - transcript of court proceeding) <br> Exhibit to CLAIMANTS NOTICE OF FILING TRANSCRIPTS - Transcript (01-24-2020) | Public <br> Suppressed <br> Suppressed <br> Suppressed <br> Suppressed |

**MOVANTS' EXHIBIT 50**
**Page 4 of 66**

**Aple.Appx. 472**    4/66

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | (suppressed - transcript of court proceeding) | |
| | | | | | | Exhibit to CLAIMANTS NOTICE OF FILING TRANSCRIPTS - Transcript (04-20-2022) (suppressed - transcript of court proceeding) | |
| | | | | | | Exhibit to CLAIMANTS NOTICE OF FILING TRANSCRIPTS - Transcript (04-22-2022) (suppressed - transcript of court proceeding) | |
| BAD912819D604 | 05/25/2022 10:44 AM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Exhibits - Trial/Hearing | Defendant's Exhibit 1 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 2 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 3 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 4 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 5 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 6 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 7 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 10 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 11 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 12 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 13 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 14 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 16 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 17 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 18 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 19 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 20 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 21 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 22 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 23 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 24 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 25 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 27 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 28 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 30 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 31 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 35 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 40 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 41 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 42 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 43 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 39 Revised | Protected |
| | | | | | Filing Other | Defendant's Exhibits Admitted at the Damages Hearing on April 20, 2022 and April 22, 2022 (attach) | Public |
| DD012F88734BA | 05/25/2022 10:39 AM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Exhibits - Trial/Hearing | Defendant's Exhibit 75 | Protected |
| | | | | | Filing Other | Defendant's Exhibits Admitted at the Damages Hearing on April 20, 2022 and April 22, 2022 (with attach) | Public |
| 6996DB28A903B | 05/25/2022 10:20 AM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Exhibits - Trial/Hearing | Defendant's Exhibit 1 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 2 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 3 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 4 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 5 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 6 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 7 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 10 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 11 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 12 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 13 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 14 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 16 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 17 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 18 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 19 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 20 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 21 | Protected |

**MOVANTS' EXHIBIT 50**
**Page 5 of 66**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 22 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 23 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 24 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 25 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 27 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 28 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 30 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 31 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 35 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 40 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 41 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 42 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 43 | Protected |
| | | | | | Exhibits - Trial/Hearing | Defendant's Exhibit 39 Revised | Protected |
| | | | | | Filing Other | Defendant's Exhibits Admitted at the Damages Hearing on April 20, 2022 and April 22, 2022 (with attach) (unsigned) | Public |
| 8E0F614BFDD41 | 05/24/2022 11:09 AM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 2 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 4 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 5 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 6 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 7 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 10 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 13 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 23 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 24 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 25 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 26 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 27 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 28 - Part 1 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 28 - Part 2 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 33 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 34 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 51 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 52 | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit 55 | Protected |
| | | | | | Filing Other | CLAIMANTS EXHIBITS ADMITTED AT THE DAMAGES HEARING ON APRIL 20TH AND APRIL 22ND, 2022 (with attach) | Public |
| 531C563AED8F1 | 05/20/2022 5:50 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Filing Other (Related Document) | CROSS AND THIRD PARTY CLAIMANTS PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW | Public |
| 680F1CF6E8406 | 05/20/2022 4:58 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Proposed Order (Related Document) | Proposed Findings of Fact, Conclusions of Law and Judgment | Public |
| N/A (Details) | 05/16/2022 2:00 PM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order Granting Claimants' Agreed Motion for Extension of Time to File Proposed Findings of Fact and Conclusions of Law | Public |
| N/A (Details) | 05/12/2022 1:57 PM | Non-Party | N/A | Non-Party | Filing Other | Copy of Colorado Court of Appeals ORDER OF THE COURT (21CA1846) | Public |
| 283E9F81595E2 | 05/11/2022 3:16 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Motion (Related Document) | Claimants' Agreed Motion for Extension of Time to File Proposed Findings of Fact and Conclusions of Law | Public |
| | | | | | Proposed Order | Proposed Order Granting Claimants' Agreement Motion for Extension of Time | Public |
| A8EB1D5D6AC76 | 04/27/2022 12:13 PM | Lindsey Dene Idelberg | Foster Graham Milstein & Calisher LLP | Michael Joseph Roberts Sr. | Notice of Withdrawal | Notice of Withdrawal of Attorneys Gary Lozow and Lindsey Idelberg | Public |
| N/A | 04/27/2022 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A | 04/27/2022 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A | 04/22/2022 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| 8C06EDCE82434 | 04/21/2022 10:08 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Additional Designation of Record | Cross Claimants' Supplemental Transcript Designations (with attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Cross Claimants' Supplemental Transcript Designations - Supplemental December 2018 Preliminary Injunction Designations (suppressed - transcript of court proceeding) | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Cross Claimants' Supplemental Transcript Designations - Supplemental January 24, 2020 Trial Designations (suppressed - transcript of court proceeding) | Suppressed |
| AAB97AF45B4E8 | 04/21/2022 6:21 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Brief | Hearing Brief re: Mortgage Creation | Public |
| N/A | 04/20/2022 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| C7B1A951C6AA0 | 04/19/2022 12:12 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr., Ciro Propt Llc | Notice | Notice of Filing Notice of Removal (with attach) | Public |
| | | | | | Notice of Removal | Notice of Removal (US District Court - District of Colorado) (Filed as Exhibit A to Notice of Filing Notice of Removal) | Public |
| AD931DA95EF0D | 04/19/2022 10:49 AM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Exhibit List | Cross Claim Defendant Roberts' Amended Trial Exhibits | Public |
| N/A | 04/18/2022 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 4DF44417E6F53 | 04/15/2022 8:13 PM | Michael Kevin Cross | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Exhibit List | Cross Claimants' Amended Exhibit List | Public |
| N/A | 04/15/2022 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A (Details) | 04/11/2022 12:00 AM | Non-Party | N/A | Non-Party | Mandate from Appeals Court | Mandate from the Colorado Court of Appeals (22CA128) | Public |
| N/A | 04/07/2022 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 04/05/2022 10:57 AM | Marie Avery Moses | Denver County - District | N/A | Notice | NOTICE OF VIRTUAL HEARING | Public |
| CA82F9C6B37C6 | 04/05/2022 8:53 AM | Sean Connelly | Connelly Law LLC | Michael Joseph Roberts Sr. | Notice of Withdrawal | Notice of Withdrawal of Attorney Sean Connelly | Public |
| 7076C5AE2F4DE | 04/01/2022 4:43 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Notice | CLAIMANTS NOTICE REGARDING BANKRUPTCY STAY AND DAMAGES TRIAL (with attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to CLAIMANTS NOTICE REGARDING BANKRUPTCY STAY AND DAMAGES TRIAL - 2022.03.25 [00092.00] Order Granting Motion For Relief From Stay | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to CLAIMANTS NOTICE REGARDING BANKRUPTCY STAY AND DAMAGES TRIAL - Status Report | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to CLAIMANTS NOTICE REGARDING BANKRUPTCY STAY AND DAMAGES TRIAL - 2022.03.15 [00066.00] Adversary case 22-01052. Complaint by Michael J Roberts Sr. | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to CLAIMANTS NOTICE REGARDING BANKRUPTCY STAY AND DAMAGES TRIAL - New Amparo | Protected |
| N/A (Details) | 03/23/2022 3:43 PM | Amber Roth | Denver County - District | N/A | Notice of Electronic Record Certified to COA or SC | Notice of Electronic Record Certified to Court of Appeals (21CA1846) | Public |
| N/A (Details) | 03/11/2022 | Amber Roth | Denver County - District | N/A | Affidavit | FTR AFFIDAVIT (21CA1846) | Public |
| N/A | 03/11/2022 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A (Details) | 02/23/2022 | Non-Party | N/A | Non-Party | Filing Other | COPY OF COA ORDER (21CA1846) | Public |
| N/A (Details) | 02/22/2022 11:05 AM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order:Unopposed Motion for Release From Incarceration | Public |
| 53AA2362E3992 | 02/22/2022 4:25 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | Unopposed Motion for Release From Incarceration | Public |
| | | | | | Proposed Order | | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Proposed Order re Unopposed Motion for Release From Incarceration | |
| N/A (Details) | 02/22/2022 | Non-Party | N/A | Non-Party | Filing Other | COPY OF COA ORDER (22CA128) | Public |
| N/A | 02/22/2022 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 02/21/2022 11:14 AM | Marie Avery Moses | Denver County - District | N/A | Order | Order Regarding Unopposed Motion to Continue Hearing of February 22 and 23, 2022 | Public |
| 1B4AD34AD8282 | 02/21/2022 11:00 AM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Bankruptcy Notice | NOTICE OF PENDENCY OF CHAPTER 11 BANKRUPTCY | Protected |
| BB040AE2728DA | 02/18/2022 2:03 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion to Continue (PTY) | Unopposed Motion to Continue Hearing of February 22 and 23 2022 | Public |
| | | | | | Proposed Order | PROPOSED ORDER RE UNOPPOSED MOTION TO CONTINUE HEARING OF FEBRUARY 22 AND 23 2022 | Public |
| 77D692549E6AB | 02/18/2022 1:04 PM | Lindsey Dene Idelberg | Foster Graham Milstein & Calisher LLP | Michael Joseph Roberts Sr. | Notice (Related Document) | Cross Claim Defendant Michael Roberts' Notice of Filing of Verified Petition for Writ of Habeas Corpus (with attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit to Cross Claim Defendant Michael Roberts' Notice of Filing of Verified Petition for Writ of Habeas Corpus - Verified Petition for Writ of Habeas Corpus (case #22-cv-00436, U.S. District Court) | Protected |
| 1D9D39DA1D578 | 02/18/2022 11:34 AM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Response | CLAIMANTS RESPONSE TO ROBERTSS TRIAL BRIEF | Public |
| | | | | | Exhibit List | CROSS CLAIMANTS AMENDED EXHIBIT LIST | Public |
| N/A (Details) | 02/18/2022 | Genevieve Rotella | Denver County - District | N/A | Affidavit | FTR AFFIDAVIT REQUESTING EXTENSION (21CA1846) | Public |
| 879664961B313 | 02/16/2022 3:35 PM | William Leone Esq., Michael Kevin Cross | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Filing Other | Cross Claimants' Transcript Designations (with attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Cross Claimants' Transcript Designations - Preliminary Injunction Hearing Designations | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 to Cross Claimants' Transcript Designations - January 24, 2020 Trial Designations | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 3 to Cross Claimants' Transcript Designations - July 23, 2021 Hearing Designations | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 4 to Cross Claimants' Transcript Designations - August 6, 2021 Hearing Designations | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 5 Part 1 to Cross Claimants' Transcript Designations - September 2019 Roberts Deposition Designations | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 5 Part 2 to Cross Claimants' Transcript Designations - September 2019 Roberts Deposition Designations | Protected |
| | | | | | | Exhibit 5 Part 3 to Cross Claimants' Transcript Designations - September 2019 Roberts Deposition Designations/Doc | |
| 49447850CD384 | 02/16/2022 3:28 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Exhibit List | CROSS CLAIM DEFENDANT ROBERTS AMENDED TRIAL EXHIBITS | Public |
| | | | | | Witness List | CROSS CLAIM DEFENDANT ROBERTS AMENDED WITNESS LIST | Public |
| N/A | 02/15/2022 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| ACB7882147630 | 02/11/2022 4:58 PM | Gary Lozow | Foster Graham Milstein & Calisher LLP | Michael Joseph Roberts Sr. | Request (Related Document) | Request for Distribution of Fees | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order re Request for Distribution of Fees | Public |
| 9E1EB8DCD42F6 | 02/10/2022 5:39 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Brief (Related Document) | Roberts' Trial Brief with attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit A to Roberts' Trial Brief - Vertuca Capital Stack | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit B to Roberts' Trial Brief - $16.5 million waterfall | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | Exhibit C to Roberts' Trial Brief - Amended and Restated Loan Agreement | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | Exhibit D to Roberts' Trial Brief - Accounting of Mezzanine/RM Funding Loans | |
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | Exhibit E to Roberts' Trial Brief - Kneen/Rosen December 14, 2016 Emails | |
| N/A | 02/04/2022 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A (Details) | 01/31/2022 | Non-Party | N/A | Non-Party | *Filing Other* | Copy of Court of Appeals Order (22CA128) | Public |
| N/A (Details) | 01/30/2022 1:00 PM | Marie Avery Moses | Denver County - District | N/A | *Order (Related Document)* | Order Denying Cross Claimants' Motion to Preclude Proposed Testimony of Lari B. Masten and David Lopez | Public |
| N/A (Details) | 01/27/2022 | Genevieve Rotella | Denver County - District | N/A | *Letter* | APPEAL REQUIREMENT LETTER (22CA128) | Public |
| 502DCE885FB9D | 01/26/2022 12:56 PM | Sean Connelly | Connelly Law LLC | Michael Joseph Roberts Sr. | *Designation of Record on Appeal* | Designation of Record on Appeal and Transcripts | Public |
| N/A (Details) | 01/25/2022 | Non-Party | N/A | Non-Party | *Filing Other* | COPY OF COA ORDER (21CA1846) | Public |
| N/A (Details) | 01/24/2022 12:14 PM | Marie Avery Moses | Denver County - District | N/A | *Order* | Notice and Order for Reset In-Person Hearing | Public |
| N/A (Details) | 01/24/2022 | Non-Party | N/A | Non-Party | *Filing Other* | COPY OF SC ORDER (21SC746) | Public |
| N/A (Details) | 01/24/2022 | Non-Party | N/A | Non-Party | *Mandate from Appeals Court* | COA MANDATE (21CA1209) | Public |
| A02349609EFEB | 01/21/2022 4:35 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | *Report* | Joint Status Report Regarding Resetting Damage Hearing (also filed on behalf of all DEF, and third party PTF) | Public |
| N/A (Details) | 01/21/2022 3:09 PM | Genevieve Rotella | Denver County - District | N/A | *Affidavit* | FTR AFFIDAVIT (21CA1846) | Public |
| 740E3B5B6689C | 01/21/2022 10:33 AM | Sean Connelly | Connelly Law LLC | Michael Joseph Roberts Sr. | *Filing Other* *Exhibit - Attach to Pleading/Doc* | Copy of Appellant's Emergency Motion to Stay January 2022 Jail Sentence Pending Appeal (with attach) Appendix to Copy of Appellant's Emergency Motion to Stay January 2022 Jail Sentence Pending Appeal (suppressed - transcript of court proceeding) | Public Suppressed |
| N/A (Details) | 01/21/2022 | Genevieve Rotella | Denver County - District | N/A | *Affidavit* | FTR AFFIDAVIT (21CA1846) | Public |
| N/A (Details) | 01/21/2022 | Non-Party | N/A | Non-Party | *Advisory Notice - NAPF* | ADVISEMENT OF FILING NOTICE OF APPEAL (22CA128) | Public |
| N/A | 01/21/2022 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 1EC3B427A8C5E | 01/20/2022 7:01 PM | Sean Connelly | Connelly Law LLC | Michael Joseph Roberts Sr. | *Notice of Appeal* *Exhibit - Attach to Pleading/Doc* | Notice of Appeal (with attach) Exhibit to Notice of Appeal (Court of Appeals) | Public Protected |
| A1F6484863D4D | 01/20/2022 6:57 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | *Response* | Response to Objections Regarding Distributions of Sales Proceeds | Public |
| N/A (Details) | 01/20/2022 4:34 PM | Marie Avery Moses | Denver County - District | N/A | *Order (Related Document)* | Order Granting Unopposed Motion to Continue Hearing of January 21, 2022 | Public |
| E6D0DCDAC7163 | 01/20/2022 3:57 PM | Laura Knopp | Podoll and Podoll PC | Michael Joseph Roberts Sr. | *Response (Related Document)* *Exhibit - Attach to Pleading/Doc (Related Document)* | CROSS CLAIM DEFENDANT'S RESPONSE TO PRECLUDE PROPOSED TESTIMONY OF LARI B. MASTEN AND DAVID LOPEZ (with attach) EXHIBIT A - CROSS CLAIM DEFENDANT'S RESPONSE TO PRECLUDE PROPOSED TESTIMONY OF LARI B. MASTEN AND DAVID LOPEZ | Public Protected |
| 4CD482BAA4EC1 | 01/20/2022 3:30 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | *Motion to Continue (PTY) (Related Document)* *Proposed Order* | Unopposed Motion to Continue Hearing of January 21, 2022 Proposed Order re Unopposed Motion to Continue Hearing of January 21, 2022 | Public Public |
| 786EB3B89727A | 01/19/2022 5:16 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Carl Vertuca (more) | *Trial Management Certificate* *Exhibit - Attach to Pleading/Doc* *Exhibit - Attach to Pleading/Doc* *Exhibit - Attach to Pleading/Doc* | Trial Management Certificate w/ attach Exhibit A - Cross Claimants' Summary Damages Table | Public Protected Protected Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B - Cross Claimants' Witness List | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C - Roberts's Witness List | Protected |
| | | | | | | Exhibit D - Cross Claimants' Exhibit List | |
| | | | | | | Exhibit E - Roberts's Exhibit List | |
| N/A (Details) | 01/19/2022 4:26 PM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order Supplementing Disbursement Order | Public |
| N/A (Details) | 01/19/2022 2:34 PM | Marie Avery Moses | Denver County - District | N/A | Order | Notice of Virtual Pre-Trial Conference | Public |
| N/A | 01/19/2022 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 4348A3D6A7A80 | 01/18/2022 11:20 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Notice | Cross Claimants' Notice of Filing of Trial Management Certificate | Public |
| | | | | | Trial Management Certificate | Trial Management Certificate (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Trial Management Certificate - Cross Claimants' Summary Damages Table | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Trial Management Certificate - Cross Claimants' Proposed Witness List | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Trial Management Certificate - Roberts's Proposed Witness List | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to Trial Management Certificate - Cross Claimants' Proposed Exhibit List | Protected |
| | | | | | | Exhibit E to Trial Management Certificate - Roberts's Proposed Exhibit List | |
| D85AEB15D3D4E | 01/18/2022 8:09 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Objection | CROSS CLAIMANTS OBJECTION TO REQUEST TO APPROVEDISTRIBUTION OF PROCEEDS | Public |
| 535A26CD94408 | 01/18/2022 4:54 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | Unopposed Motion to Supplement Disbursement Order | Public |
| | | | | | Proposed Order | Proposed Order Supplementing Disbursement Order | Public |
| A6B768A4191FA | 01/18/2022 2:39 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Response | Plaintiff Richard Lang's Response in Partial Opposition to the Roberts Defendants' Proposed Disbursement of Funds in Their Notice of Sale of Beaver Creek Condominium | Public |
| N/A (Details) | 01/18/2022 9:31 AM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | ORDER REGARDING CROSS CLAIM DEFENDANT ROBERTS MOTION TO RECUSE | Public |
| D55457EED92B0 | 01/14/2022 7:28 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | MOTION TO RECUSE (with attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to MOTION TO RECUSE | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to MOTION TO RECUSE | Protected |
| | | | | | Proposed Order | Proposed Order of Recusal | Public |
| N/A (Details) | 01/13/2022 3:24 PM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order Granting Unopposed Motion to Release Lis Pendens | Public |
| 9F259B2BD5814 | 01/13/2022 1:57 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | Unopposed Motion to Release Lis Pendens | Public |
| 45E843F840387 | 01/13/2022 12:37 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Motion (Related Document) | Cross Claimants' Motion to Preclude Proposed Testimony of Lari B. Masten and David Lopez (with attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Cross Claimants' Motion to Preclude Proposed Testimony of Lari B. Masten and David Lopez - Masten Report | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Cross Claimants' Motion to Preclude Proposed Testimony of Lari B. Masten and David Lopez - Lopez Affidavit | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Cross Claimants' Motion to Preclude Proposed Testimony of Lari B. Masten and David Lopez - Lopez Supplemental Affidavit | Protected |
| | | | | | Proposed Order | Exhibit D to Cross Claimants' Motion to Preclude Proposed Testimony of Lari B. Masten and | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | David Lopez - Lopez Second Supplemental Affidavit | |
| | | | | | | Proposed ORDER GRANTING CROSS CLAIMANTS MOTION TO PRECLUDE PROPOSED TESTIMONY OF LARI B. MASTEN AND DAVID LOPEZ | |
| E3D4035241F1D | 01/10/2022 1:06 PM | Gary Lozow | Foster Graham Milstein & Calisher LLP | Michael Joseph Roberts Sr. | Notice *(Related Document)* | Cross Claim Defendant Michae Roberts' Notice of Filing (1) Petition for Writ of Habeas Corpus and Order to Show Cause and Complaint for Injunctive Relief and (2) Emergency Motion to Stay Habeas Petitioner's State Custody Sentence and Order for Immediate Release on Bond Pending Determination of His Petition for Writ of Habeas Corpus (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Protected |
| | | | | | | Attachment to re: Petition for Writ of Habeas Corpus and Order to Show Cause and Complaint for Injunctive Relief | |
| | | | | | | Attachment re: Emergency Motion to Stay Habeas Petitioner's State Custody Sentence and Order for Immediate Release on Bond Pending Determination of His Petition for Writ of Habeas Corpus | |
| N/A | 01/06/2022 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 01/05/2022 | N/A | N/A | Michael J Roberts Llc | Exhibit - Attach to Copy of Petition's emergency motion to stay jail sentence pending certiorari review filed w/Supreme Court (21SC746) | Protected |
| N/A (Details) | 01/05/2022 | N/A | N/A | Michael J Roberts Llc | Filing Other | Copy of Petition's emergency motion to stay jail sentence pending certiorari review filed w/Supreme Court (21SC746) w/attach | Public |
| N/A (Details) | 01/05/2022 | N/A | N/A | Michael Roberts | Commitment Mittimus Issued - Amended | Commitment Mittimus Issued - Amended | Public |
| N/A | 01/05/2022 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 01/04/2022 10:14 PM | Marie Avery Moses | Denver County - District | N/A | Order *(Related Document)* | Order Partially Granting Request to Approve Distribution Proceeds | Public |
| N/A (Details) | 01/04/2022 1:26 PM | Marie Avery Moses | Denver County - District | N/A | Order | Order Unsealing Certain Documents | Public |
| N/A (Details) | 01/04/2022 1:08 PM | Marie Avery Moses | Denver County - District | N/A | Filing Other | 2nd Judicial District, State of Colorado Policy Regarding Use of Freelance Court Reporters in Civil Cases | Public |
| N/A (Details) | 01/04/2022 12:45 PM | N/A | N/A | Michael Roberts | Commitment Mittimus Issued - Amended | Commitment Mittimus Issued - Amended | Public |
| N/A | 01/04/2022 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A | 01/04/2022 | N/A | N/A | N/A | Commitment Mittimus - Issued | N/A | |
| 812914CECD615 | 01/03/2022 8:03 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Report | Roberts Status Report | Public |
| 45151FFB33C29 | 01/03/2022 7:25 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Report | Roberts Status Report (with attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 38 to Roberts Status Report - Unanimous Resolution of RCC | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 39 to Roberts Status Report - Revocation of POA Pliego and Colin | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 40 to Roberts Status Report - Revocation of POA on behalf of Logistics Mexico | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 41 to Roberts Status Report - Appeal of Prosecutor's Decision not to recognize Olea | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 42 to Roberts Status Report - Amparo Case No. 829-2021 | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 43 to Roberts Status Report - Amparos Case Nos. 859-2021 and 895-2021 resolution and discussion of virtual ratification | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 44 to Roberts Status Report - 21-12-29 Virtual | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | Exhibit - Attach to Pleading/Doc | Appearance Petition | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 45 to Roberts Status Report - EM from Roberts to Estermann | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 46 to Roberts Status Report - EM from Estermann | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 47 to Roberts Status Report - Acta Logisitcs (Dec-16-2019) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 48 to Roberts Status Report - EM from JEH to BL and BR | Protected |
| | | | | | | Exhibit 49 to Roberts Status Report - EM from ET | |
| | | | | | | Exhibit 50 to Roberts Status Report - 20200819 Aseguramiento Poliza De Fianza Mp Ocr | |
| | | | | | | Exhibit 51 to Roberts Status Report - 20200819 Aseguramiento Poliza De Fianza Mp | |
| | | | | | | Exhibit 52 to Roberts Status Report - 20200821 Oficio Aseguramiento Folios Rpp | |
| | | | | | | Exhibit 53 to Roberts Status Report - 20200824 Aseguramiento Fge Folios Electronicos Rcc | |
| | | | | | | Exhibit 54 to Roberts Status Report - 20201105 Acuerdo Admite Amparo 825-20-Iii-Inc Vs Admva Aseguramiento | |
| | | | | | | Exhibit 55 to Roberts Status Report - 20201105 Oficios 825-20-Iii-Inc-Se Niega Susp Prov Vs Admva Aseguramiento | |
| | | | | | | Exhibit 56 to Roberts Status Report - Denuncia Fraude Y O Fraude Procesal (Aseguramiento De Bienes).docx | |
| | | | | | | Exhibit 57 to Roberts Status Report - Criminal Complaint Translation | |
| | | | | | | Exhibit 58 to Roberts Status Report - 20201105 Acuerdo Admite Amparo 825-20-Iii-Inc Vs Admva Aseguramiento (Translation) | |
| | | | | | | Exhibit 59 to Roberts Status Report - 22-01-03 Opinion RUFA LOGISITCS MEXICO DESARROLLOS INMOBILIARIOS Y PUBLICITARIOS S.A. DE C.V | |
| | | | | | | Exhibit 60 to Roberts Status Report - Emails with Leone | |
| EF305B1EF39F2 | 01/03/2022 6:14 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Notice (Related Document) | Notice of Sale of Beaver Creek Condominium, Request to Approve Distribution Proceeds, and Request for Forthwith Hearing (with attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit A to Notice of Sale of Beaver Creek Condominium, Request to Approve Distribution Proceeds, and Request for Forthwith Hearing - Expert Report of Lari Masten | Protected |
| | | | | | Proposed Order (Related Document) | Proposed Order Re: Notice of Sale of Beaver Creek Condominium, Request to Approve Distribution Proceeds, and Request for Forthwith Hearing | Public |
| F6C5553E77786 | 01/03/2022 2:58 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Report | Cross Claimants' January 4, 2022 Hearing Status Report (with attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Cross Claimants' January 4, 2022 Hearing Status Report - December 21 Heredia Email | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 to Cross Claimants' January 4, 2022 Hearing Status Report - December 30 Turner Email | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 3 to Cross Claimants' January 4, 2022 Hearing Status | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Report - December 20 Rosen Email | |
| | | | | | | Exhibit 4 to Cross Claimants' January 4, 2022 Hearing Status Report - December 16 Rosen Email Chain | |
| C922B2B96821C | 12/28/2021 7:51 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | *Notice (Related Document)* | Notice of Intent to Introduce Testimony on an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 (with attach) | Public |
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | Exhibit A to Notice of Intent to Introduce Testimony on an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 - Affidavit of Lopez | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | Exhibit B to Notice of Intent to Introduce Testimony on an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 - Supplemental Affidavit of Lopez | Protected |
| | | | | | | Exhibit C to Notice of Intent to Introduce Testimony on an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 - Second Supplemental Affidavit of Lopez | |
| | | | | | | Exhibit D to Notice of Intent to Introduce Testimony on an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 - Lopez CV | |
| N/A | 12/28/2021 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 80BF6713FAA6D | 12/21/2021 9:17 AM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | *Report* | Roberts Status Report (with attach) | Public |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 1 to Roberts Status Report - PayPal Records | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 2 to Roberts Status Report - Document Checklist from BR | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 3 to Roberts Status Report - Logistics Unanimous Consent (Roberts Executed) | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 4 to Roberts Status Report - 12-3 Email from Roberts to Estermann | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 5 to Roberts Status Report - 12-6 Email from Roberts to Estermann | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 6 to Roberts Status Report -12-7 Email from JEH to Estermann | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 7 to Roberts Status Report - 12-8 Email from Roberts to Estermann | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 8 to Roberts Status Report - 12-9 Email from Estermann to Roberts | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 9 to Roberts Status Report - 12-9 Letter from Hill to Estermann | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 10 to Roberts Status Report - FedEx Records re Estermann shipment | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 11 to Roberts Status Report - 12-16 Email from Roberts to Estermann | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 12 to Roberts Status Report - 12-16 Emails from JEH and Roberts to Estermann | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 13 to Roberts Status Report - 12-17 Recording of Conversation with FedEx | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 14 to Roberts Status Report - 12-18 Email from Roberts to Estermann | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 15 to Roberts Status Report - Text Messages to Estermann | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 16 to Roberts Status Report - 12-20 Email from Roberts to Estermann | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 17 to Roberts Status Report - 12-20 Email from Hill to Estermann | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit 18 to Roberts Status Report - 12-18 Email from B. Rosen re Foreclosure Appeals | |
| | | | | | | Exhibit 19 to Roberts Status Report - Email from B. Rosen | |

**MOVANTS' EXHIBIT 50**
**Page 13 of 66**

**Aple.Appx. 481**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Exhibit 20 to Roberts Status Report - 12-03 Email from Hill re FedExes Sent to NRF, CO SOS, and MX Counsel | |
| | | | | | | Exhibit 21 to Roberts Status Report - B.5 Filed in MX | |
| | | | | | | Exhibit 22 to Roberts Status Report - B.7 filed in Control 41-2020 | |
| | | | | | | Exhibit 23 to Roberts Status Report - B.8 Filed Amparo | |
| | | | | | | Exhibit 24 to Roberts Status Report - POA Filed in Amparo 829/2018 Incidental | |
| | | | | | | Exhibit 25 to Roberts Status Report - POA Filed in Amparo 829/2018 Principal | |
| | | | | | | Exhibit 26 to Roberts Status Report - POA Filed in Carpeta 1106 | |
| | | | | | | Exhibit 27 to Roberts Status Report - POA filed in Control 41-2020 | |
| | | | | | | Exhibit 28 B.5 to Roberts Status Report - -- MJR petition requesting Prosecutor to dismiss the proceedings (executed and apostilled) | |
| | | | | | | Exhibit 29 B.7 to Roberts Status Report - -- MJR desisting prosecution as victim and granting pardon (executed and apostilled) | |
| | | | | | | Exhibit 30 B.8 to Roberts Status Report - -- MJR desisting amparo against appeals court ruling dismissing case against Tony (executed and apostilled) | |
| | | | | | | Exhibit 31 to Roberts Status Report - Email from Portillo to Rosen re Criminal Cases | |
| | | | | | | Exhibit 32 to Roberts Status Report - Email from Castano to Rosen | |
| | | | | | | Exhibit 33 to Roberts Status Report - Translation of MR Victim Interview | |
| | | | | | | Exhibit 34 B.6 to Roberts Status Report - Proposed Affidavit | |
| | | | | | | Exhibit 35 to Roberts Status Report - Boarding Pass | |
| | | | | | | Exhibit 36 to Roberts Status Report - Travel Itinerary | |
| | | | | | | Exhibit 37 C.9 to Roberts Status Report - -- Michael desisting bond execution and amparo (executed and apostilled) | |
| N/A | 12/21/2021 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A | 12/21/2021 | N/A | N/A | N/A | Minute Order - Print | | |
| A6CA3A51D931D | 12/20/2021 5:26 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Report<br><br>Exhibit - Attach to Pleading/Doc<br><br>Exhibit - Attach to Pleading/Doc | Cross Claimants' December 21, 2021 Hearing Status Report (with attach)<br><br>Exhibit 1 to Cross Claimants' December 21, 2021 Hearing Status Report - Email from J. Hill to W. Leone<br><br>Exhibit 2 to Cross Claimants' December 21, 2021 Hearing Status Report - Email from B. Rosen to R. Portillo | Public<br><br>Protected<br><br>Protected |
| N/A | 12/17/2021 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A (Details) | 12/16/2021 1:33 PM | Marie Avery Moses | Denver County - District | N/A | Order<br>(Related Document) | Order:Motion to Modify Order to Sell Beaver Creek Condominium (w/attachments) | Public |
| N/A (Details) | 12/15/2021 11:45 PM | Marie Avery Moses | Denver County - District | N/A | Order<br>(Related Document) | Order Granting Stipulated Motion to Modify Order to Sell Beaver Creek Condominium | Public |
| 5F08390A7BB30 | 12/14/2021 5:21 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion<br>(Related Document)<br><br>Proposed Order<br>(Related Document) | Stipulated Motion to Modify Order to Sell Beaver Creek Condominium (also filed on behalf of DEF Timothy Flaherty, DEF Timothy Kneen, and DEF Carl Vertuca) | Public<br><br>Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|-----------|------------|------------|--------------|--------------|----------|----------------|-------------------|
| | | | | | | Proposed Order Granting Stipulated Motion to Modify Order to Sell Beaver Creek Condominium | |
| 8B8120DE93214 | 12/10/2021 6:19 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Report | Roberts Status Report (with attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Roberts Status Report -- Logistics Resolution | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Roberts Status Report -- Document Checklist | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Roberts Status Report -- MJR petition requesting Prosecutor to dismiss the proceedings | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to Roberts Status Report -- MJR desisting prosecution as victim and granting pardon | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | | Exhibit E to Roberts Status Report -- MJR desisting amparo against appeals court ruling dismissing case against Tony | |
| | | | | | | Exhibit F to Roberts Status Report -- Email from B. Rosen to R. Portillo | |
| | | | | | | Exhibit G to Roberts Status Report -- Translation of MJR Dec 2019 Appearance | |
| | | | | | | Exhibit H to Roberts Status Report -- Proposed Affidavit in Criminal Hearing | |
| | | | | | | Exhibit I to Roberts Status Report -- MJR desisting bond execution and amparo | |
| | | | | | | Exhibit J to Roberts Status Report -- Emails re sale of BC Condo | |
| N/A (Details) | 12/10/2021 | Non-Party | N/A | Non-Party | Filing Other | COPY OF COA ORDER (21CA1846) | Public |
| N/A (Details) | 12/06/2021 | Genevieve Rotella | Denver County - District | N/A | Affidavit | FTR AFFIDAVIT (21CA1846) | Public |
| N/A | 12/06/2021 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 20FA643D1602B | 11/30/2021 11:51 AM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Designation of Record on Appeal | Copy of Designation of Transcripts (Court of Appeals) | Public |
| N/A | 11/30/2021 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 11/29/2021 | Non-Party | N/A | Non-Party | Filing Other | COPY OF COA ORDER (21CA1846) | Public |
| N/A (Details) | 11/24/2021 1:17 PM | Genevieve Rotella | Denver County - District | N/A | Letter | APPEAL REQUIREMENT LETTER (21CA1846) | Public |
| N/A (Details) | 11/22/2021 5:21 PM | Marie Avery Moses | Denver County - District | N/A | Filing Other | Freelance Court Reporter for November 22, 2021 Hearing | Public |
| N/A (Details) | 11/22/2021 | Non-Party | N/A | Non-Party | Advisory Notice - NAPF | ADVISEMENT OF FILING NOTICE OF APPEAL (21CA1846) | Public |
| N/A | 11/22/2021 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| CD9A6493F3CF2 | 11/21/2021 7:51 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Brief | BRIEF REGARDING NOVEMBER 22, 2021 HEARING (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to BRIEF REGARDING NOVEMBER 22, 2021 HEARING -Timeline of Purge Efforts | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to BRIEF REGARDING NOVEMBER 22, 2021 HEARING - Proposed Criminal Aff | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to BRIEF REGARDING NOVEMBER 22, 2021 HEARING - Email from B. Rosen to V. Olea, 11/17/21 | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to BRIEF REGARDING NOVEMBER 22, 2021 HEARING - Email from B. Rosen to V. Olea, 09/27/29 | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit E to BRIEF REGARDING NOVEMBER 22, 2021 HEARING - Email from B. Rosen to V. Olea, 10/18/21 | Protected |
| E256A1AE5A0F4 | 11/21/2021 7:23 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Reply | Reply in Support of Motion to Modify Order to Sell Beaver Creek Condominium | Public |
| BC366CAA712F2 | 11/19/2021 5:36 PM | Michael Kevin Cross, William | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Filing Other | CROSS CLAIMANTS OPPOSITION TO ROBERTS | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | Leone Esq. | | | | MOTION TO MODIFY ORDER TO SELL BEAVER CREEK CONDOMINIUM | |
| AE4894EF9FF1B | 11/19/2021 5:33 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Report | CROSS CLAIMANTS NOVEMBER 22, 2021 HEARING STATUS REPORT (w/attach) | Public |
| | | | | | | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to CROSS CLAIMANTS NOVEMBER 22, 2021 HEARING STATUS REPORT | Protected |
| | | | | | | Exhibit B to CROSS CLAIMANTS NOVEMBER 22, 2021 HEARING STATUS REPORT | |
| N/A | 11/18/2021 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A | 11/16/2021 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 23A3D84F122B3 | 11/12/2021 6:16 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | Motion to Modify Order to Sell Beaver Creek Condominium (w/attachments) | Public |
| | | | | | | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit A to Motion to Modify Order to Sell Beaver Creek Condominium - Affidavit of Cuomo | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit B to Motion to Modify Order to Sell Beaver Creek Condominium - Emails between R. Podoll and E. Turner | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit C to Motion to Modify Order to Sell Beaver Creek Condominium - Declaration of Roberts | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order re Motion to Modify Order to Sell Beaver Creek Condominium | |
| 54ECE11FF94F4 | 11/12/2021 5:33 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Report | November 12, 2021 Status Report | Public |
| 8D871360CC7A5 | 11/04/2021 7:57 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Disclosure Certificate | Disclosures Pursuant to October 29, 2021 Order | Public |
| N/A | 10/29/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 1B007C9454132 | 10/28/2021 9:13 PM | Michael Kevin Cross | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Report | Cross Claimants' October 28, 2021 Status Report w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Cross Claimants' October 28, 2021 Status Report - Oct. 14, 2021 Email | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Cross Claimants' October 28, 2021 Status Report - Oct. 19, 2021 Email | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Cross Claimants' October 28, 2021 Status Report - Roberts Deposition | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to Cross Claimants' October 28, 2021 Status Report - Roberts's Text Messages | Protected |
| 2BCD09B578B9E | 10/28/2021 5:53 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Report | October 29, 2021 Status Report | Public |
| A493792F773CF | 10/28/2021 4:04 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | Motion for Release of Asset from Attachment and Request for Emergency Hearing at Status Conference on October 29, 2021 w/attachment | Public |
| | | | | | | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit A to Motion for Release of Asset from Attachment and Request for Emergency Hearing at Status Conference on October 29, 2021 | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order re Motion for Release of Asset from Attachment and Request for Emergency Hearing at Status Conference on October 29, 2021 | |
| N/A (Details) | 10/27/2021 10:10 AM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order Granting Defendants' Partially Unopposed Motion for an Extension of Time to File Response to Motion for Partial Summary Judgment | Public |
| C2B39F76C8A2B | 10/15/2021 8:52 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Report (Related Document) | Joint Status Report w/attachments | Public |
| | | | | | | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Joint Status Report Exhibit A - Oct. 8, 2021 Email from Podoll to Turner | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Joint Status Report Exhibit B - Oct. 14 Email from Turner to Podoll | |

**MOVANTS' EXHIBIT 50**
**Page 16 of 66**

**Aple.Appx. 484**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| 18BD74BCAAB46 | 10/14/2021 2:12 PM | Michael Kevin Cross | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Proposed Order | Proposed Order Granting Defendants Unopposed Motion for Extension of Time to Respond Ciro Motion for Partial Summary Judgment | Public |
| 21D6F18795748 | 10/13/2021 7:39 PM | Michael Kevin Cross | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Motion *(Related Document)* | Defendants' Partially Unopposed Motion for an Extension of Time to File Response to Motion for Partial Summary Judgment | Public |
| N/A | 10/08/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 8575CA0CBBB2E | 10/07/2021 6:22 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Report | STATUS REPORT FOR OCTOBER 8, 2021 HEARING (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to STATUS REPORT FOR OCTOBER 8, 2021 HEARING - Olea Affidavit | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to STATUS REPORT FOR OCTOBER 8, 2021 HEARING - Statements to Control Court and Prosecutor in Criminal Cases | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to STATUS REPORT FOR OCTOBER 8, 2021 HEARING - Appeal of Prosecutor Decision | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to STATUS REPORT FOR OCTOBER 8, 2021 HEARING - Notice of September 29 Hearing | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit E to STATUS REPORT FOR OCTOBER 8, 2021 HEARING - Correspondence with CO SOS | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit F to STATUS REPORT FOR OCTOBER 8, 2021 HEARING - October 7, 2021 POA | Protected |
| | | | | | | Exhibit G to STATUS REPORT FOR OCTOBER 8, 2021 HEARING - Tercero Time Reports | |
| | | | | | | Exhibit H to STATUS REPORT FOR OCTOBER 8, 2021 HEARING - Online Logistics Records | |
| 565933EDBDFD4 | 10/07/2021 7:49 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Filing Other | CROSS CLAIMANTS STATUS REPORT (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to CROSS CLAIMANTS STATUS REPORT - September 17, 2021 Email from E Turner to R Podoll | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to CROSS CLAIMANTS STATUS REPORT - September 17, 2021 Email from R Podoll to E Turner | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to CROSS CLAIMANTS STATUS REPORT - September 27, 2021 Email from E Turner to J Hill and R Podoll | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to CROSS CLAIMANTS STATUS REPORT - September 30, 2021 Email from E Turner to R Podoll | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit E to CROSS CLAIMANTS STATUS REPORT - September 7, 2021 Email from B Leone to R Podoll et al. | Protected |
| | | | | | | Exhibit F to CROSS CLAIMANTS STATUS REPORT - Translation of September 21 Hearing | |
| | | | | | | Exhibit G to CROSS CLAIMANTS STATUS REPORT - October 6 Email from E Turner to R Podoll | |
| N/A (Details) | 10/06/2021 4:19 PM | Marie Avery Moses | Denver County - District | N/A | Order *(Related Document)* | ORDER RE: JULY 23, 2021 HEARING ON TRAVERSES OF AUGUST 20, 2020 WRIT OF ATTACHMENT | Public |
| 2B852243F710A | 10/06/2021 4:01 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Filing Other | JOINDER IN PLAINTIFF LANGS OBJECTION IN OPPOSITION TO CROSS CLAIMANTS NOTICE REGARDING USE OF PROCEEDS | Public |
| A71CCFCD45B91 | 10/06/2021 3:50 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Notice | NOTICE OF SETTINGS | Public |
| N/A (Details) | 09/30/2021 12:00 PM | Non-Party | N/A | Non-Party | Filing Other | Copy of Order of Court from the Colorado Court of Appeals | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | 21SA295 Petition of Michael Joseph Roberts, Sr. for C.A.R. 21 Relief shall be, and the same hereby is, DENIED. | |
| 4559FBC25A5F0 | 09/29/2021 12:48 PM | Sean Connelly | Connelly Law LLC | Michael Joseph Roberts Sr. | Notice<br><br>Filing Other | Cross Claim Defendant Michael Roberts Notice of Filing of Petition for Order to Show Cause Pursuant to C.A.R. 21 (w/attach)<br><br>Copy of Petition of Michael Joseph Roberts, Sr. for C.A.R. 21 Relief (Colorado Supreme Court Filing) | Public<br><br>Public |
| EC70C3069C7B1 | 09/27/2021 5:04 PM | Margaret Reidy Pflueger, Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Objection | Objection in Opposition to Cross Claimants' Notice Regarding Use of Proceeds | Public |
| N/A (Details) | 09/27/2021 12:00 AM | Non-Party | N/A | Non-Party | Mandate from Appeals Court | Copy of Mandate from the Colorado Court of Appeals 21CA789 Appeal is Dismissed with Prejudice | Public |
| N/A (Details) | 09/27/2021 12:00 AM | Non-Party | N/A | Non-Party | Filing Other | Copy of Order of the Court from the Colorado Court of Appeals 21CA1209 Appeal is Dismissed for lack of Jurisdiction. Court Denies Appellants Motion to Stay Jail | Public |
| 9CF889ABBF5A5 | 09/24/2021 3:27 PM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Notice | CROSS CLAIMANTS NOTICE REGARDING USE OF PROCEEDS | Public |
| N/A (Details) | 09/23/2021 2:15 PM | Non-Party | N/A | Non-Party | Certificate | CLERKS CERTIFICATE FOR MULTIDISTRICT LITIGATION (21MD9) (RECEIVED FROM ARAPAHOE 21CV30401) | Public |
| N/A | 09/23/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| A6EA51C7E7A80 | 09/17/2021 5:41 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Request (Related Document) | Request for Forthwith Determination of Traverse Hearing or in the Alternative, for an Emergency Hearing to Modify Orders Freezing Roberts' Assets | Public |
| 9DC28E7BFB8A4 | 09/17/2021 5:35 PM | Richard Podoll | Podoll and Podoll PC | Ciro Properties Llc | Motion<br><br>Exhibit - Attach to Pleading/Doc<br>Exhibit - Attach to Pleading/Doc<br>Exhibit - Attach to Pleading/Doc<br>Exhibit - Attach to Pleading/Doc<br>Exhibit - Attach to Pleading/Doc<br>Exhibit - Attach to Pleading/Doc<br>Proposed Order | Motion for Partial Summary Judgment w/ Attach<br>Exhibit A Attachment to Plaintiff's Motion for Partial Summary Judgment - Promissory Note<br>Exhibit B Attachment to Plaintiff's Motion for Partial Summary Judgment - Declaration of Michael J. Roberts Sr.<br>Exhibit C Attachment to Plaintiff's Motion for Partial Summary Judgment - Promissory Note<br>Exhibit D Attachment to Plaintiff's Motion for Partial Summary Judgment - Amended and Restated Promissory Note<br>Exhibit E Attachment to Plaintiff's Motion for Partial Summary Judgment - Letter of Richard B. Podoll<br>Exhibit F Attachment to Plaintiff's Motion for Partial Summary Judgment - Email<br>Proposed Order Re Motion for Partial Summary Judgment | Public<br>Protected<br>Protected<br>Protected<br>Protected<br>Protected<br>Protected<br>Public |
| N/A (Details) | 09/17/2021 4:39 PM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order Regarding Cross Claimants' Partially Unopposed Motion to Continue All Pending Hearings | Public |
| 4F1FB49F81E2E | 09/16/2021 11:48 AM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Response (Related Document) | Response to Cross Claimants' Partial Unopposed Motion to Continue All Pending Hearings | Public |
| ADB9AFE6AE588 | 09/14/2021 10:30 AM | Sean Connelly | Connelly Law LLC | Michael Joseph Roberts Sr. | Designation of Record on Appeal | Amended Designation of Transcripts | Public |
| 293A08801079E | 09/13/2021 9:38 AM | Michael Kevin Cross, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Entry of Appearance | NOTICE OF ENTRY OF APPEARANCE | Public |
| 6310F1C848F78 | 09/08/2021 3:07 PM | Sean Connelly | Connelly Law LLC | Michael Joseph Roberts Sr. | Notice of Appeal | Copy of Amended Notice of Appeal (Court of Appeals) | Public |
| N/A (Details) | 09/08/2021 12:00 AM | Non-Party | N/A | Non-Party | Filing Other | COPY OF ORDER PURSUANT TO CRCP 42.1(i) (SUPREME COURT FILING 21MD9) | Public |

**MOVANTS' EXHIBIT 50**
**Page 18 of 66**

**Aple.Appx. 486**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| N/A (Details) | 09/03/2021 3:22 PM | Marie Avery Moses | Denver County - District | N/A | Order *(Related Document)* | Order Re: CROSS CLAIMANTS MOTION TO FILE UNDER SEAL | Public |
| N/A | 09/03/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 1334B12A87468 | 09/02/2021 6:16 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Report | Status Report for September 3 2021 Hearing w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A - Affidavit of Victor Olea | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-1 - Billing Report for Olea Firm since 8/15 | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-2 - POA for New Counsel in Mexico | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-3 - Pliego Revocation | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-4 - Notice of Revocation served on Pliego | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-5 - Email regarding service and Notary | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-6 - Logistics Revocation | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-7 - Logistics Power of Attorney | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-8 - Email from Rosen to Olea | Protected |
| | | | | | | Exhibit A-9 Email from Portillo to Rosen | |
| | | | | | | Exhibit B - Re-Notarized Documents | |
| | | | | | | Exhibit C - Email re Expediting SOS | |
| | | | | | | Exhibit D - Emails re New Unanimous Resolution | |
| 140F62D72B56C | 09/02/2021 4:54 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Motion *(Related Document)* | CROSS CLAIMANTS PARTIALLY UNOPPOSED MOTION TO CONTINUE ALL PENDING HEARINGS (Suppressed pursuant to court order dated 9/3/21) | Suppressed |
| | | | | | Motion *(Related Document)* | | Public |
| | | | | | | CROSS CLAIMANTS MOTION TO FILE UNDER SEAL | |
| N/A | 08/30/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| DE5650A16CF35 | 08/26/2021 8:38 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Designation of Record on Appeal | Designation of Transcripts | Public |
| N/A (Details) | 08/19/2021 6:36 PM | Marie Avery Moses | Denver County - District | N/A | Order *(Related Document)* | Order Regarding Motion to Expedite Transcripts | Public |
| 6FC3EAAF88C37 | 08/19/2021 5:08 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Affidavit *(Related Document)* | Affidavit of Richard B. Podoll, Esq. (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit A to Affidavit of Richard B. Podoll, Esq. - Roberts passport | Protected |
| A5ECBB5F34ACF | 08/19/2021 1:11 PM | Sean Connelly | Connelly Law LLC | Michael Joseph Roberts Sr. | Designation of Record on Appeal | Designation of Transcripts (w/ attach.) | Public |
| | | | | | Accepted without Docketing | | Suppressed |
| | | | | | | Transcript Request Forms | |
| N/A | 08/19/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 1578904996717 | 08/18/2021 5:33 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion *(Related Document)* | Motion to Expedite Transcripts (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Motion to Expedite Transcripts - Transcript Request Forms | Protected |
| | | | | | Proposed Order | | Public |
| | | | | | | Proposed Order re Motion to Expedite Transcripts | |
| N/A (Details) | 08/18/2021 5:30 PM | Marie Avery Moses | Denver County - District | N/A | Order | Order Re: August 18, 2021 Hearing on Contempt | Public |
| 463C55C4FA431 | 08/18/2021 11:36 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Report | CROSS CLAIMANTS STATUS REPORT (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to CROSS CLAIMANTS STATUS REPORT - August 17, 2021 Email from E. Turner to J. Hill and attachments | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to CROSS CLAIMANTS STATUS REPORT - August 18, 2021 Email from J. Hill to E. Turner | Protected |
| D7E7E15433AE9 | 08/18/2021 11:04 AM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Report *(Related Document)* | Status Report for August 18, 2021 Hearing (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit 1 to Status Report for August 18, 2021 Hearing - Secretary of State apostille form | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Protected |
| | | | | | | | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit 2 to Status Report for August 18, 2021 Hearing - FedEx to Colorado Secretary of State | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit 3 to Status Report for August 18, 2021 Hearing - Executed powers of attorney to new counsel in Mexico | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit 4 to Status Report for August 18, 2021 Hearing - Revocation of powers of attorney (Logistics Mexico) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit 5 to Status Report for August 18, 2021 Hearing - Revocation of powers of attorney (Pliego and Colin) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit 6 to Status Report for August 18, 2021 Hearing - Olea Affidavit (with Exhibits A-D) | |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit 7 to Status Report for August 18, 2021 Hearing - Signed Unanimous Resolution proposed by Olea | |
| | | | | | | Exhibit 8 to Status Report for August 18, 2021 Hearing - Proposed Unanimous Resolution to Revoke POA Logistics Mexico | |
| N/A | 08/18/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A | 08/17/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 08/16/2021 12:00 AM | Non-Party | N/A | Non-Party | Filing Other | Copy of Certification to the Chief Justice Pursuant to CRCP 42.1(h) (Supreme Court Filing 21MD9) | Public |
| N/A | 08/16/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | | |
| 7A9E9FA413CDC | 08/15/2021 9:40 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Filing Other | CROSS CLAIMANTSS OPPOSITION TO ROBERTSS EMERGENCY MOTION FOR STAY OF JAIL SENTENCE AND RELEASE FROM DENVER COUNTY JAIL (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | | Exhibit A to CROSS CLAIMANTS OPPOSITION TO ROBERTSS EMERGENCY MOTION FOR STAY OF JAIL SENTENCE AND RELEASE FROM DENVER COUNTY JAIL - August 5, 2021 Filing by Roberts (English Translation) | |
| | | | | | | Exhibit B to CROSS CLAIMANTS OPPOSITION TO ROBERTSS EMERGENCY MOTION FOR STAY OF JAIL SENTENCE AND RELEASE FROM DENVER COUNTY JAIL - August 5 2021 Filing by Roberts (Spanish) | |
| 30543C13AEE62 | 08/15/2021 5:33 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Report | Status Report for August 16, 2021 Hearing (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Status Report for August 16, 2021 Hearing -- Third Supplemental Affidavit of Lopez | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-1 to Status Report for August 16, 2021 Hearing - Form Revocation of Pliego POA | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-2 to Status Report for August 16, 2021 Hearing - Form Revocation of Ramirez POA by Roberts obo RCC | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-3 to Status Report for August 16, 2021 Hearing - Form Revocation of Ramirez POA by Flaherty obo RCC | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-4 to Status Report for August 16, 2021 Hearing - Form Revocation of Ramirez POA by Kneen obo RCC | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-5 to Status Report for August 16, 2021 Hearing - Resume of Mr. Olea | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-6 to Status Report for August 16, 2021 Hearing - Resume of Mr. Tercero | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A-7 to Status Report for August 16, 2021 Hearing - Mexican Bar Association Information | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Exhibit B to Status Report for August 16, 2021 Hearing -- Signed Revocation of Pliego POA | |
| | | | | | | Exhibit C to Status Report for August 16, 2021 Hearing -- CO SOS Form regarding Apostille | |
| | | | | | | Exhibit D to Status Report for August 16, 2021 Hearing -- 12/14/16 Email from Rosen to Kneen, Vertuca, and Roberts | |
| N/A (Details) | 08/13/2021 2:56 PM | Genevieve Rotella | Denver County - District | N/A | Letter | Appeal Requirement Letter | Public |
| N/A (Details) | 08/13/2021 2:54 PM | Non-Party | N/A | Non-Party | Advisory Notice - NAPF | Copy of Advisment of Filing Notice of Appeal from the Colorado Court of Appeals 21CA1209 Appeal is due 10/14/21 | Public |
| 9AA0EEFEA0CC8 | 08/13/2021 7:24 AM | Sean Connelly | Connelly Law LLC | Michael Joseph Roberts Sr. | Entry of Appearance | Entry of Appearance of Sean Connelly | Public |
| | | | | | Motion | Emergency Motion for Stay of Jail Sentence and Release from Denver County Jail | Public |
| | | | | | Proposed Order | PROPOSED ORDER RE EMERGENCY MOTION FOR STAY OF JAIL SENTENCE AND RELEASE FROM DENVER COUNTY JAIL | Public |
| N/A | 08/13/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 7F398FA137720 | 08/12/2021 5:35 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Notice of Appeal | Copy of Notice of Appeal (Court of Appeals) | Public |
| N/A (Details) | 08/12/2021 12:00 AM | Non-Party | N/A | Non-Party | Filing Other | COPY OF ORDER OF COURT FROM THE COLORADO SUPREME COURT 21SA248 Emergency Motion for Stay of Contempt Order and Immediate Release from Jail is Denied. | Public |
| N/A (Details) | 08/12/2021 12:00 AM | Non-Party | N/A | Non-Party | Filing Other | Copy of Order of Court from the Colorado Court of Appeals 21CA789 Upon consideration of the motion to dismiss, the Court GRANTS the motion ORDERS that the appeal is DISMISSED with prejudice as untimely filed, for the reasons stated in appellees motion to dismiss the appeal. | Public |
| N/A | 08/12/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| FAFB3E09DA6CB | 08/11/2021 12:27 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Notice | Notice of Emergency Motion for Stay of Contempt Order and Immediate Release from Jail w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit to Notice of Emergency Motion for Stay of Contempt Order and Immediate Release from Jail - Emergency Motion for Stay of Contempt Order and Immediate Release from Jail | Protected |
| EAA5DAF69A516 | 08/11/2021 10:45 AM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Notice | Notice of Petition for Order to Show Cause to C.A.R. 21 Relief | Public |
| | | | | | Filing Other | Advisory Copy of Petition of Michael Joseph Roberts, Sr. for C.A.R. 21 Relief (Colorado Supreme Court Filing) | Public |
| N/A (Details) | 08/10/2021 9:52 AM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order re: Motion for Emergency Hearing | Public |
| 71BD9335A8AF9 | 08/10/2021 8:20 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Response | CROSS CLAIMANTS STATEMENT IN RESPONSE TO ROBERTS MOTION FOR AN EMERGENCY HEARING (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to CROSS CLAIMANTS STATEMENT IN RESPONSE TO ROBERTS MOTION FOR AN EMERGENCY HEARING - August 4, 2021 Order | Protected |
| 7C3122E827322 | 08/09/2021 2:13 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | Motion for Emergency Hearing (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit A to Motion for Emergency Hearing - Irrevocable Instruction to Stand Down (Juan Carlos Ramirez Garcia) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | | Protected |
| | | | | | | | Protected |
| | | | | | | | Protected |
| | | | | | | | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit B to Motion for Emergency Hearing - Irrevocable Instruction to Stand Down (Marco Eduardo Moncada Ibarra) | |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit C to Motion for Emergency Hearing - Irrevocable Instruction to Stand Down (Rodolfo Garcia Pliego) | |
| | | | | | Proposed Order *(Related Document)* | Exhibit D to Motion for Emergency Hearing - Affidavit of Podoll | |
| | | | | | | PROPOSED ORDER RE: MOTION FOR EMERGENCY HEARING [OR] PROPOSED ORDER FOR STAY OF EXECUTION | |
| N/A (Details) | 08/09/2021 8:56 AM | Marie Avery Moses | Denver County - District | N/A | Order *(Related Document)* | Order Granting Motion to Expedite Transcript | Public |
| N/A | 08/09/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A | 08/09/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A (Details) | 08/08/2021 2:33 AM | Marie Avery Moses | Denver County - District | N/A | Order | Order Re: August 6, 2021 Hearing on Contempt | Public |
| CB1B72686D15A | 08/07/2021 7:13 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion *(Related Document)* | Motion to Expedite Transcript | Public |
| | | | | | Proposed Order | Proposed Order re Motion to Expedite Transcript | Public |
| N/A (Details) | 08/06/2021 6:20 PM | N/A | N/A | Michael Roberts | Commitment Mittimus - Issued | Commitment Mittimus - Issued | Public |
| N/A | 08/06/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 576A477699CE7 | 08/05/2021 5:32 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Filing Other | Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Response | | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order (part 1 of 7) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order (part 2 of 7) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | | Exhibit D to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order (part 3 of 7) | |
| | | | | | | Exhibit D to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order (part 4 of 7) | |
| | | | | | | Exhibit D to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order (part 5 of 7) | |
| | | | | | | Exhibit D to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order (part 6 of 7) | |
| | | | | | | Exhibit D to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order (part 7 of 7) | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Exhibit E to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order | |
| | | | | | | Exhibit F to Cross Claimants' Opposition to Roberts's Motion to Vacate the Contempt or Alternatively Hold a Jury Trial on the Contempt Order | |
| | | | | | | Cross Claimants' Opposition to Roberts's Notice of Intent to Introduce Testimony of an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 (w/attach) | |
| | | | | | | Exhibit A to Cross Claimants' Opposition to Roberts's Notice of Intent to Introduce Testimony of an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | |
| | | | | | | Exhibit B to Cross Claimants' Opposition to Roberts's Notice of Intent to Introduce Testimony of an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | |
| | | | | | | Exhibit C to Cross Claimants' Opposition to Roberts's Notice of Intent to Introduce Testimony of an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | |
| | | | | | | Exhibit D to Cross Claimants' Opposition to Roberts's Notice of Intent to Introduce Testimony of an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | |
| | | | | | | Exhibit E to Cross Claimants' Opposition to Roberts's Notice of Intent to Introduce Testimony of an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | |
| | | | | | | Exhibit F to Cross Claimants' Opposition to Roberts's Notice of Intent to Introduce Testimony of an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | |
| | | | | | | Exhibit G to Cross Claimants' Opposition to Roberts's Notice of Intent to Introduce Testimony of an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | |
| | | | | | | Exhibit H to Cross Claimants' Opposition to Roberts's Notice of Intent to Introduce Testimony of an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | |
| 2884ED6C97E9A | 08/02/2021 5:55 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Notice (Related Document) | Notice of Filing of Transcript (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit A to Notice of Filing of Transcript - Transcript of July 23, 2021 Hearing (Suppressed, Transcript) | Suppressed |
| | | | | | Proposed Order (Related Document) | (Proposed) Order re: Traverse of Writ of Attachment | Public |
| C5239D64C153E | 08/02/2021 5:48 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Proposed Order (Related Document) | Cross Claimants' Proposed Findings of Fact and Conclusions of Law | Public |
| 985915DB9DFA3 | 08/02/2021 5:08 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Notice | NOTICE OF CROSS CLAIMANTS EXHIBITS ADMITTED AT JULY 23, 2021 HEARING (w/attach) | Public |
| | | | | | Exhibits - Trial/Hearing | | Protected |
| | | | | | Exhibits - Trial/Hearing | | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit A | Protected |
| | | | | | Exhibits - Trial/Hearing | Cross Claimants' Exhibit C | Public |
| | | | | | | Cross Claimants' Exhibit H | |
| | | | | | | Cross Claimants' Exhibit K | |
| 88B6E9136CAAB | 08/02/2021 2:20 PM | Gary Lozow | Foster Graham Milstein & Calisher LLP | Michael Joseph Roberts Sr. | Motion (Related Document) | Defendant's Motion to Vacate the Contempt Proceedings, or Alternatively, to Order a Criminal Jury Trial on the Contempt Proceedings (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit 1 to Defendant's Motion to Vacate the Contempt Proceedings, or Alternatively, to Order a Criminal Jury Trial on the Contempt Proceedings | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit 2 to Defendant's Motion to Vacate the Contempt Proceedings, or Alternatively, to | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Order a Criminal Jury Trial on the Contempt Proceedings | |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit 3 to Defendant's Motion to Vacate the Contempt Proceedings, or Alternatively, to Order a Criminal Jury Trial on the Contempt Proceedings | |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit 4 to Defendant's Motion to Vacate the Contempt Proceedings, or Alternatively, to Order a Criminal Jury Trial on the Contempt Proceedings | |
| | | | | | Proposed Order *(Related Document)* | Exhibit 5 to Defendant's Motion to Vacate the Contempt Proceedings, or Alternatively, to Order a Criminal Jury Trial on the Contempt Proceedings | |
| | | | | | | Exhibit 6 to Defendant's Motion to Vacate the Contempt Proceedings, or Alternatively, to Order a Criminal Jury Trial on the Contempt Proceedings | |
| | | | | | | Exhibit 7 to Defendant's Motion to Vacate the Contempt Proceedings, or Alternatively, to Order a Criminal Jury Trial on the Contempt Proceedings | |
| | | | | | | Exhibit 8 to Defendant's Motion to Vacate the Contempt Proceedings, or Alternatively, to Order a Criminal Jury Trial on the Contempt Proceedings | |
| | | | | | | Proposed Order re Defendant's Motion to Vacate the Contempt Proceedings, or Alternatively, to Order a Criminal Jury Trial on the Contempt Proceedings | |
| N/A (Details) | 07/27/2021 1:59 PM | Genevieve Rotella | Denver County - District | N/A | Affidavit | Transcribers Affidavit | Public |
| 33D129731B0EF | 07/27/2021 10:01 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Riviera Country Club S De Rl De Cv, Timothy Kneen (more) | Accepted without Docketing | Transcript Request Form (07-23-21 Hearing) | Protected |
| N/A (Details) | 07/27/2021 12:00 AM | Genevieve Rotella | Denver County - District | N/A | Affidavit | Transcribers Affidavit | Public |
| N/A | 07/27/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| ABA6CED52DFD9 | 07/26/2021 11:11 AM | Gary Lozow | Foster Graham Milstein & Calisher LLP | Michael Joseph Roberts Sr. | Notice | Notice of Intent to Introduce Testimony on an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | Public |
| N/A | 07/26/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 5DAB2B602D5D9 | 07/25/2021 9:03 PM | Corrie Elizabeth Caler Esq. | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Notice | Notice of Cross Claim Defendant's Exhibits Admitted at Traverse Hearing | Public |
| | | | | | Exhibits - Trial/Hearing | | Protected |
| | | | | | Exhibits - Trial/Hearing | Roberts Exhibit 53 | Protected |
| | | | | | Exhibits - Trial/Hearing | Roberts Exhibit 57 | Protected |
| | | | | | Exhibits - Trial/Hearing | Roberts Exhibit 66 | Protected |
| | | | | | Exhibits - Trial/Hearing | Roberts Exhibit 70 (1st Page Only) | Protected |
| | | | | | Exhibits - Trial/Hearing | Roberts Exhibit 75 | Protected |
| | | | | | Exhibits - Trial/Hearing | Roberts Exhibit 78(A) | Protected |
| | | | | | Exhibits - Trial/Hearing | Roberts Exhibit 95 | Protected |
| | | | | | Exhibits - Trial/Hearing | Roberts Exhibit 98 | Protected |
| | | | | | Exhibits - Trial/Hearing | Roberts Exhibit 103 | Protected |
| | | | | | Notice of Withdrawal | Roberts Exhibit 104 | Public |
| | | | | | | Roberts Exhibit 105 | |
| | | | | | | Notice of Limited Withdrawal | |
| N/A (Details) | 07/23/2021 12:40 PM | Non-Party | N/A | Non-Party | Filing Other | Copy of Entire Register of Actions Uploaded for Purposes of Appeal 21CA789 | Protected |
| N/A (Details) | 07/23/2021 10:14 AM | Marie Avery Moses | Denver County - District | N/A | Order | Order Regarding Stipulation Regarding Intervenors' Motion to Discharge Writ of Attachment | Public |
| N/A | 07/23/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| B9575127120C8 | 07/22/2021 4:39 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Objection | Objection to Variance of Affidavit on Traverse of Writ of Attachment | Public |
| B95C05392DBC7 | 07/22/2021 4:35 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Brief *(Related Document)* | Hearing Brief re: Traverse of Writ of Attachment w/attachment | Public |
| | | | | | | | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Hearing Brief re: Traverse of Writ of Attachment - Oct. 15, 2019 Hearing Transcript | |
| 1ABCF44BAD9CA | 07/22/2021 4:15 PM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Proposed Order | Proposed Order Re Stipulation | Public |
| | | | | | Stipulation | Stipulation (Also filed on behalf of Michael Roberts Sr) | Public |
| N/A | 07/21/2021 12:00 AM | N/A | N/A | N/A | Warrant Canceled | N/A | |
| N/A | 07/21/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 14A42EDF4E693 | 07/19/2021 2:50 PM | Corrie Elizabeth Caler Esq. | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Notice | Notice of Tender Pursuant to July 12, 2021 Order w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A Notice of Tender to Notice of Tender Pursuant to July 12, 2021 Order | Protected |
| N/A (Details) | 07/17/2021 3:48 PM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order: Stipulation to Release Funds- So Ordered | Public |
| DCCB5A3444BEB | 07/12/2021 8:25 PM | Corrie Elizabeth Caler Esq. | Podoll and Podoll PC | Magdalena Ania Roberts, Michael Joseph Roberts Sr. | Stipulation (Related Document) | Stipulation to Release Funds | Public |
| | | | | | Proposed Order | Proposed Order Re: Stipulation to Release Funds | Public |
| N/A (Details) | 07/12/2021 12:01 PM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order:Proposed Order Regarding Release of Funds to Pay Bond | Public |
| 1F1E30D1C42F0 | 07/08/2021 5:44 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Carl Vertuca (more) | Notice | Notice of Joint Proposed Order | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order Regarding Release of Funds to Pay Bond | Public |
| N/A (Details) | 06/30/2021 2:39 PM | Marie Avery Moses | Denver County - District | N/A | Order | Order Re: Notice of Hearings | Public |
| N/A | 06/30/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A | 06/29/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| B1733C8D99DB7 | 06/28/2021 4:40 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Designation of Record on Appeal w/ attach | Designation of Transcripts w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit to Designation of Transcripts -- Court Reporter Transcript Request Form | Protected |
| 85F303616DFAC | 06/28/2021 4:12 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Report | Cross Claimants Status Report | Public |
| CA6876F6555D0 | 06/28/2021 4:12 PM | Gary Lozow | Foster Graham Milstein & Calisher LLP | Michael Joseph Roberts Sr. | Filing Other | Status Conference Position Statement | Public |
| N/A (Details) | 06/28/2021 12:00 AM | Non-Party | N/A | Non-Party | Filing Other | Copy of Order to Show Cause Pursuant to CRCP 42.1 from the Colorado Supreme Court 21MD9 | Public |
| 8A4F299680A21 | 06/25/2021 5:54 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion (Related Document) | Motion to Set Trial on Plaintiff Richard Lang's Claims | Public |
| 9E3F386F4A156 | 06/23/2021 9:54 PM | Corrie Elizabeth Caler Esq. | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Filing Other | Status Conference Position Statement | Public |
| A8B01DA3B2E49 | 06/14/2021 3:46 PM | Taylor V Carrillo | Podoll and Podoll PC | Magdalena Ania Roberts, Michael Joseph Roberts Sr. | Designation of Record on Appeal | Advisory Copy of Designation of Transcript | Public |
| 8CBB9E278B4E3 | 06/14/2021 3:41 PM | Taylor V Carrillo | Podoll and Podoll PC | Magdalena Ania Roberts, Michael Joseph Roberts Sr. | Designation of Record on Appeal | Designation of Transcript | Public |
| 45AC85AB8A9C0 | 06/14/2021 12:36 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Notice of Hearing | Notice of Status Conference (06-30-21) | Public |
| A91686265FF6D | 06/11/2021 3:34 PM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Notice | Notice of Setting | Public |
| N/A (Details) | 06/09/2021 12:00 AM | Genevieve Rotella | Denver County - District | N/A | Affidavit | FTR Affidavit | Public |
| N/A | 06/09/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A | 06/09/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| F2381D805048C | 06/08/2021 6:23 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Reply | REPLY IN SUPPORT OF MOTION TO DETERMINE AMOUNT OF JUDGMENTAGAINST GARNISHEE UBS PURSUANT TO COURTS APRIL 26, 2021 ORDER | Public |
| N/A (Details) | 06/03/2021 10:27 AM | Genevieve Rotella | Denver County - District | N/A | Letter | Appeal Requirement Letter | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| N/A (Details) | 06/03/2021 12:00 AM | Marie Avery Moses | Denver County - District | N/A | Order (Related Document) | Order: UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE REPLY IN SUPPORT OF MOTION TO DETERMINE AMOUNT OF JUDGEMENT AGAINST GARNISHEE UBS PURSUANT TO COURTS APRIL 26, 2021 ORDER- Granted | Public |
| N/A (Details) | 06/02/2021 12:00 AM | Non-Party | N/A | Non-Party | Advisory Notice - NAPF | Copy of Advisement of Filing Notice of Appeal from the Colorado Court of Appeals 21CA789 Record on Appeal is due 08/03/21 | Public |
| F3443AD45E60C | 06/01/2021 5:39 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Notice of Appeal | Notice of Appeal w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Appendix A to Notice of Appeal | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Appendix B to Notice of Appeal | Protected |
| N/A | 06/01/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 87841ACFC87E3 | 05/28/2021 11:02 AM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Magdalena Ania Roberts, Michael Joseph Roberts Sr. | Motion (Related Document) | UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE REPLY IN SUPPORT OF MOTION TO DETERMINE AMOUNT OF JUDGEMENT AGAINST GARNISHEE UBS PURSUANT TO COURTS APRIL 26, 2021 ORDER | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE REPLY IN SUPPORT OF MOTION TO DETERMINE AMOUNT OF JUDGEMENT AGAINST GARNISHEE UBS PURSUANT TO COURTS APRIL 26, 2021 ORDER | Public |
| EA40DE54113A0 | 05/27/2021 1:49 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Accepted without Docketing | Transcript Request Form (11-14-19) | Protected |
| | | | | | Accepted without Docketing | Transcript Request Form (4-14-21) | Protected |
| 3ACE3DC21BAA0 | 05/24/2021 5:37 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Response | Cross Claimants' Response in Opposition to Roberts's Motion to Determine Amount of Judgment Against Garnishee UBS w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Cross Claimants' Response in Opposition to Roberts's Motion to Determine Amount of Judgment Against Garnishee UBS | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 to Cross Claimants' Response in Opposition to Roberts's Motion to Determine Amount of Judgment Against Garnishee UBS | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 3 to Cross Claimants' Response in Opposition to Roberts's Motion to Determine Amount of Judgment Against Garnishee UBS | Protected |
| | | | | | Reply | Cross Claimants' Reply Brief on Issues to be Heard at Damages Trial | Public |
| N/A (Details) | 05/18/2021 10:00 AM | Non-Party | N/A | Non-Party | Filing Other | Copy of Order of Court from the Colorado Supreme Court 21SA155 Petition for a Rule to Show Cause Pursuant to CAR 21 shall be and the same hereby is Denied. | Public |
| BB319F7C53BE4 | 05/17/2021 7:56 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Magdalena Ania Roberts, Michael Joseph Roberts Sr. | Brief | Brief re Scope of Hearing w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Brief re Scope of Hearing | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Brief re Scope of Hearing | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Brief re Scope of Hearing | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to Brief re Scope of Hearing | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit E to Brief re Scope of Hearing | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit F to Brief re Scope of Hearing | Protected |
| 9E339A2C45D3A | 05/12/2021 1:59 PM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Notice | Notice to Set | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| N/A | 05/11/2021 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 56155662F06B5 | 05/04/2021 2:43 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Brief | CROSS CLAIMANTS BRIEF ON ISSUES TO BE HEARD AT DAMAGES TRIAL w/ Attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A Cross Claimants Exhibit 5 Attachment to CROSS CLAIMANTS BRIEF ON ISSUES TO BE HEARD AT DAMAGES TRIAL | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B Cross Claimants Supplemental Exhibit 8 Attachment to CROSS CLAIMANTS BRIEF ON ISSUES TO BE HEARD AT DAMAGES TRIAL | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | | Exhibit C Cross Claimants Supplemental Exhibit 9 Attachment to CROSS CLAIMANTS BRIEF ON ISSUES TO BE HEARD AT DAMAGES TRIAL | |
| | | | | | | Exhibit D Cross Claimants Exhibit 11 Attachment to CROSS CLAIMANTS BRIEF ON ISSUES TO BE HEARD AT DAMAGES TRIAL | |
| | | | | | | Exhibit E Cross Claimants Exhibit 12 Attachment to CROSS CLAIMANTS BRIEF ON ISSUES TO BE HEARD AT DAMAGES TRIAL | |
| 4F7407B47C634 | 05/03/2021 7:02 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | Motion to Determine Amount of Judgment Against Garnishee UBS Pursuant to Court's April 26, 2021 Order w/Attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit A Attachment to Motion to Determine Amount of Judgment Against Garnishee UBS Pursuant to Court's April 26, 2021 Order - Writ of Garnishment | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit B Attachment to Motion to Determine Amount of Judgment Against Garnishee UBS Pursuant to Court's April 26, 2021 Order - Writ of Garnishment | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit C Attachment to Motion to Determine Amount of Judgment Against Garnishee UBS Pursuant to Court's April 26, 2021 Order - Answer to Writ of Garnishment | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | | Protected |
| | | | | | Proposed Order (Related Document) | Exhibit D Attachment to Motion to Determine Amount of Judgment Against Garnishee UBS Pursuant to Court's April 26, 2021 Order - Answer to Writ of Garnishment | Protected |
| | | | | | | Exhibit E Attachment to Motion to Determine Amount of Judgment Against Garnishee UBS Pursuant to Court's April 26, 2021 Order - Roberts Declaration | Public |
| | | | | | | Exhibit E-1 Attachment to Motion to Determine Amount of Judgment Against Garnishee UBS Pursuant to Court's April 26, 2021 Order - Trust FUAD | |
| | | | | | | Proposed Order re Motion to Determine Amount of Judgment Against Garnishee UBS Pursuant to Court's April 26, 2021 Order | |
| 5B47F2BEDA26B | 04/28/2021 2:50 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Notice to Garnishee/Release of Funds - Proposed | NOTICE TO GARNISHEE, APPLICATION OF FUNDS TO JUDGMENT, AND RELEASE OF FUNDS TO JUDGMENT CREDITOR (105,108.63) | Public |
| | | | | | Notice to Garnishee/Release of Funds - Proposed | NOTICE TO GARNISHEE, APPLICATION OF FUNDS TO JUDGMENT, AND RELEASE OF FUNDS TO JUDGMENT CREDITOR (186,133.00) | Public |
| N/A (Details) | 04/26/2021 8:36 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Motion to Direct Clerk to Enter Judgment on Cross Claimants Writs of Garnishment and Notices of Exemption and Pending Levies w/attach- Granted | Public |
| N/A (Details) | 04/26/2021 8:35 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Cross Claimants' Motion to Modify Writs of Attachment to | Public |

**MOVANTS' EXHIBIT 50**
**Page 27 of 66**

**Aple.Appx. 495**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Allow Management of Trusts by UBS w/attach- Granted | |
| N/A (Details) | 04/23/2021 10:12 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Stipulation (Also filed on behalf of Cross Claim Def. Timothy Flaherty)- Approved | Public |
| N/A (Details) | 04/23/2021 10:10 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: STIPULATION TO VACATE THE EMERGENCY HEARING SET ON APRIL 26, 2021 TO ALLOW PARTIES TO ENGAGE IN MEDIATION (Also filed on behalf of Cross Claim Defendant Michael Joseph Roberts, Sr., Intervenors Crystal Smittkamp andMichael J. Roberts Jr., Plaintiff Richard Lang, Timothy Kneen, Carl Vertuca and PdC LLC)- Approved | Public |
| 208F7C2336F2A | 04/23/2021 8:21 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Stipulation (Related Document) | STIPULATION TO VACATE THE EMERGENCY HEARING SET ON APRIL 26, 2021 TO ALLOW PARTIES TO ENGAGE IN MEDIATION (Also filed on behalf of Cross Claim Defendant Michael Joseph Roberts, Sr., Intervenors Crystal Smittkamp andMichael J. Roberts Jr., Plaintiff Richard Lang, Timothy Kneen, Carl Vertuca and PdC LLC) | Public |
| D8706205DC746 | 04/22/2021 12:59 PM | Corrie Elizabeth Caler Esq. | Podoll and Podoll PC | Magdalena Ania Roberts, Michael Joseph Roberts Sr. | Stipulation (Related Document) | Stipulation (Also filed on behalf of Cross Claim Def. Timothy Flaherty) | Public |
| | | | | | Proposed Order | Proposed Order -Stipulation | Public |
| N/A (Details) | 04/15/2021 4:26 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order:PROPOSED ORDER RE: STIPULATION TO VACATE THE EMERGENCY HEARING SET ON APRIL 16, 2021 TO ALLOW PARTIES TO ENGAGE IN MEDIATION | Public |
| N/A (Details) | 04/14/2021 3:11 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Proposed Order Allowing UBS Financial Services to Manage Trust Accounts in Which Intervenors Claim an Interest- Granted | Public |
| E498257AABA4E | 04/14/2021 12:31 PM | Corrie Elizabeth Caler Esq. | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Objection | Objection to Cross Claimants Request for Production | Public |
| | | | | | Stipulation | STIPULATION TO VACATE THE EMERGENCY HEARING SET ON APRIL 16, 2021 TO ALLOW PARTIES TO ENGAGE IN MEDIATION (Also filed on behalf of Intervenors Crystal Smittkamp and Michael J. Roberts Jr., Plaintiff Richard Lang, and Cross Claim Defendants Timothy Flaherty, Timothy Kneen, Carl Vertuca and PdC LLC) | Public |
| | | | | | Proposed Order (Related Document) | PROPOSED ORDER RE: STIPULATION TO VACATE THE EMERGENCY HEARING SET ON APRIL 16, 2021 TO ALLOW PARTIES TO ENGAGE IN MEDIATION | Public |
| N/A | 04/14/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 04/13/2021 11:49 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: MOTION FOR EMERGENCY HEARING TO MODIFY OR STAY ROBERTS WARRANT AND REQUEST TO MODIFY OR STAY CONTEMPT PURGE CLAUSE TO CORRECT WRONGFUL FORFEITURE REQUIREMENT w/ Attach-Granted | Public |
| N/A (Details) | 04/13/2021 2:44 PM | Eric Martin Johnson | Denver County - District | N/A | Notice of Hearing | NOTICE OF STATUS CONFERENCE | Public |
| N/A (Details) | 04/10/2021 5:38 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Cross Claimants' Motion for Entry of Judgment Under Colorado Rules of Civil Procedure 54(b), 58, and 79(a)- So Ordered | Public |
| N/A (Details) | 04/10/2021 5:32 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order:Motion for Clarification of Arrest Warrant and Bond Status and to Reduce $300,000.00 Cash Bond to a Reasonable Bond and Stay of Execution of Sentence (w/attach) | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| N/A (Details) | 04/10/2021 5:24 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Roberts' Motion for Judgment on the Pleadings-Denied | Public |
| N/A (Details) | 04/10/2021 5:19 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Motion to Vacate Breach of Fiduciary Duty Finding and December 21-22, 2020 Damages Hearing w/attach- Denied | Public |
| N/A (Details) | 04/10/2021 5:16 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Motion to Vacate and/or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) w/ attach- Denied | Public |
| N/A (Details) | 04/10/2021 5:15 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Motion to Declare Orders Void as Violating Roberts Constitutional Due Process Rights w/attach- Denied | Public |
| N/A (Details) | 04/10/2021 5:14 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Motion to Vacate Orders Based Upon Lack of Subject Matter Jurisdiction w/attach- Denied | Public |
| 80567180E778E | 04/09/2021 6:23 PM | Corrie Elizabeth Caler Esq. | Podoll and Podoll PC | Magdalena Ania Roberts, Michael Joseph Roberts Sr. | Exhibit - Attach to Pleading/Doc | Exhibit - A Notice of Intent to Introduce Testimony-Lopez Affidavit Attachment to Notice of Intent To introduce Testimony on an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit - B Notice of Intent to Introduce Testimony-Lopez Affidavit Attachment to Notice of Intent to introduce Testimony on an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit - C Notice of Intent to Introduce Testimony-Lopez Affidavit Attachment to Notice of Intent To introduce Testimony on an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit - D Notice of Intent to Introduce Testimony-Lopez Affidavit Attachment to Notice of Intent To introduce Testimony on an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 | Protected |
| | | | | | Notice | Notice of Intent To introduce Testimony on an Issue of Foreign Law Pursuant to C.R.C.P. 44.1 w/ Attach | Public |
| 78A0BD0AAB0D3 | 04/09/2021 12:27 PM | Corrie Elizabeth Caler Esq. | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | MOTION FOR EMERGENCY HEARING TO MODIFY OR STAY ROBERTS WARRANT AND REQUEST TO MODIFY OR STAY CONTEMPT PURGE CLAUSE TO CORRECT WRONGFUL FORFEITURE REQUIREMENT w/ Attach | Public |
| | | | | | Proposed Order | Proposed Order MOTION FOR EMERGENCY HEARING TO MODIFY OR STAY ROBERTS WARRANT AND REQUEST TO MODIFY OR STAY CONTEMPT PURGE CLAUSE TO CORRECT WRONGFUL FORFEITURE REQUIREMENT | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit-21-04-09 Motion for Emergency Hearing to Modify or Stay_Ex A - Rosen Email Attachment to MOTION FOR EMERGENCY HEARING TO MODIFY OR STAY ROBERTS WARRANT AND REQUEST TO MODIFY OR STAY CONTEMPT PURGE CLAUSE TO CORRECT WRONGFUL FORFEITURE REQUIREMENT | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit-21-04-09 Motion for Emergency Hearing to Modify or Stay_Ex B - Text from Littler Attachment to MOTION FOR EMERGENCY HEARING TO MODIFY OR STAY ROBERTS WARRANT AND REQUEST TO MODIFY OR STAY CONTEMPT PURGE CLAUSE TO CORRECT WRONGFUL FORFEITURE REQUIREMENT | Protected |
| 5F1511A51BC93 | 04/08/2021 9:30 PM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Brief | Hearing Brief | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| FF236E90A71F7 | 04/08/2021 9:26 PM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Filing Other | ALTERNATIVE JOINDER IN CROSS CLAIM DEFENDANTS TRAVERSE OF WRIT OF ATTACHMENT | Public |
| N/A (Details) | 04/08/2021 3:02 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Stipulation (also filed on behalf of plaintiff, Timothy Flaherty, Timothy Kneen, Carl Vertuca, PdC LLC; defendants, Michael J. Roberts Sr. and Magdalena Roberts) (protected-bank acct numbers)- So Ordered | Protected |
| N/A (Details) | 04/08/2021 3:02 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Stipulation Regarding Testimony of William Leone (Also filed on behalf of Cross Claim Plaintiffs Timothy Flaherty, Timothy Kneen, Carl Vertuca and PdC LLC)- So Ordered | Public |
| F5F245D9C2BDC | 04/07/2021 4:57 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Filing Other (Related Document) | Second Traverse of Writ of Attachment | Public |
| | | | | | Affidavit | Affidavit of Michael Roberts | Public |
| A78427687A0EB | 04/07/2021 2:56 PM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Stipulation (Related Document) | Stipulation (also filed on behalf of plaintiff, Timothy Flaherty, Timothy Kneen, Carl Vertuca, PdC LLC; defendants, Michael J. Roberts Sr. and Magdalena Roberts) (protected-bank acct numbers) | Protected |
| N/A (Details) | 04/05/2021 2:09 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order Granting Motion to Intervene and Join Intervenors Crystal Smittkamp and Michael J. Roberts, Jr., Motion to Discharge Attachment Pursuant to C.R.S. 102(w) w/attachments | Public |
| 7DCCA6BFDC683 | 04/02/2021 5:45 PM | Richard Podoll | Podoll and Podoll PC | Magdalena Ania Roberts | Motion to Intervene (Related Document) | Motion to Intervene and Join Intervenors Crystal Smittkamp and Michael J. Roberts, Jr., Motion to Discharge Attachment Pursuant to C.R.S. 102(w) w/attachments | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Motion to Intervene and Join Intervenors Crystal Smittkamp and Michael J. Roberts, Jr., Motion to Discharge Attachment Pursuant to C.R.S. 102(W) - Magdalena Ania Roberts Successor Trust | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Motion to Intervene and Join Intervenors Crystal Smittkamp and Michael J. Roberts, Jr., Motion to Discharge Attachment Pursuant to C.R.S. 102(W) - Thomas H. Roberts, Jr. 1983 Charitable Trust | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Motion to Intervene and Join Intervenors Crystal Smittkamp and Michael J. Roberts, Jr., Motion to Discharge Attachment Pursuant to C.R.S. 102(W) - Magdalena Ania Roberts Education Trust | Protected |
| | | | | | Proposed Order | Proposed Order re Motion to Intervene and Join Intervenors Crystal Smittkamp and Michael J. Roberts, Jr., Motion to Discharge Attachment Pursuant to C.R.S. 102(W) | Public |
| 4C5F73E75ADE9 | 04/02/2021 1:25 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Stipulation (Related Document) | Stipulation Regarding Testimony of William Leone (Also filed on behalf of Cross Claim Plaintiffs Timothy Flaherty, Timothy Kneen, Carl Vertuca and PdC LLC) | Public |
| N/A (Details) | 04/01/2021 3:01 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order Granting Unopposed Motion for Extension of Time to File Brief Relating to Calling Attorney Leone to Testify | Public |
| N/A (Details) | 03/31/2021 9:04 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: PROPOSED ORDER RE RELEASE OF 1989 TRUSTS- So Ordered | Public |
| FFF98F37E20CD | 03/31/2021 6:11 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | Unopposed Motion for Extension of Time to File Brief Relating to Calling Attorney Leone to Testify | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order re Unopposed Motion for Extension of Time to File Brief Relating to Calling Attorney Leone to Testify | Public |
| N/A | 03/30/2021 12:00 | N/A | N/A | N/A | Minute Order - No Print | N/A | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | AM | | | | | | |
| 40262F0AB1D47 | 03/26/2021 1:39 PM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Proposed Order *(Related Document)* | PROPOSED ORDER RE RELEASE OF 1989 TRUSTS | Public |
| N/A (Details) | 03/26/2021 12:39 PM | Eric Martin Johnson | Denver County - District | N/A | Order | NOTICE AND ORDER FOR IN-PERSON HEARING | Public |
| EF84227CE1A04 | 03/25/2021 8:56 AM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Filing Other | Plaintiff Richard Langs Statement In Opposition To Pending Motions Of The Roberts Parties | Public |
| N/A | 03/25/2021 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 03/23/2021 9:09 AM | Eric Martin Johnson | Denver County - District | N/A | Order | NOTICE AND ORDER FOR RESET OF HEARING | Public |
| BE351283831ED | 03/18/2021 9:25 PM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Notice of Hearing | Notice of Setting | Public |
| N/A (Details) | 03/18/2021 2:20 PM | Eric Martin Johnson | Denver County - District | N/A | Order *(Related Document)* | Order:REQUEST FOR EMERGENCY HEARING | Public |
| 9E4C074F86752 | 03/16/2021 1:36 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Notice *(Related Document)* | Notice of Errata in Brief in Support of and Joinder in Intervenor's Request for Emergency | Public |
| AEA937C03460D | 03/15/2021 8:55 PM | Corrie Elizabeth Caler Esq. | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Exhibit - Attach to Pleading/Doc | Exhibit - A Attached to Brief in Support of and Joinder in Intervenor's Request for Emergency Hearing | Protected |
| | | | | | Brief *(Related Document)* | Brief in Support of and Joinder in Intervenor's Request for Emergency Hearing w/ Attach | Public |
| 747FD843AD67B | 03/13/2021 12:22 PM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Reply | REPLY TO CROSS CLAIMANTS RESPONSE TO INTERVENING PARTIES REQUEST FOR EMERGENCY HEARING | Public |
| DDFEAEC7678E7 | 03/12/2021 5:01 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Response | Cross Claimants' Response to Intervenors' Request for and Emergency Hearing | Public |
| 67CFE99E329BD | 03/12/2021 10:10 AM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Request *(Related Document)* | REQUEST FOR EMERGENCY HEARING | Public |
| | | | | | Proposed Order | PROPOSED ORDER RE REQUEST FOR EMERGENCY HEARING | Public |
| 8859B1A54FA66 | 02/23/2021 9:36 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Reply *(Related Document)* | Robert's Reply in Support of Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit A Attachment to Roberts' Reply in Support of Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - TRO Hearing transcript excerpt | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit B Attachment to Roberts' Reply in Support of Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - Cross Claimants' production - Cross Claimants' Production | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit C Attachment to Roberts' Reply in Support of Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - Dutka deposition excerpt | Protected |
| | | | | | | Exhibit D Attachment to Roberts' Reply in Support of Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - production | |
| ECBA16FE277CD | 02/19/2021 9:01 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Reply *(Related Document)* | Roberts's Reply in Support of Motion for Entry of Judgment on the Pleadings w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit A to Roberts's Reply in Support of Motion for Entry of Judgment on the Pleadings - handwritten agreement | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Exhibit B to Roberts's Reply in Support of Motion for Entry of Judgment on the Pleadings - Operating Agreement | |
| | | | | | | Exhibit C to Roberts's Reply in Support of Motion for Entry of Judgment on the Pleadings - Lopez Affidavit | |
| A7E1988FEADF8 | 02/16/2021 7:57 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Response | Cross Claimants' Response in Opposition to Roberts's Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgment for Fraud upon the Court Pursuant to C.R.C.P. 60(b) w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Cross Claimants' Response in Opposition to Roberts's Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgment for Fraud upon the Court Pursuant to C.R.C.P. 60(b) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | | Exhibit B to Cross Claimants' Response in Opposition to Roberts's Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgment for Fraud upon the Court Pursuant to C.R.C.P. 60(b) to Pleading/Doc | |
| | | | | | | Exhibit C to Cross Claimants' Response in Opposition to Roberts's Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgment for Fraud upon the Court Pursuant to C.R.C.P. 60(b) (1 of 4) | |
| | | | | | | Exhibit C to Cross Claimants' Response in Opposition to Roberts's Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgment for Fraud upon the Court Pursuant to C.R.C.P. 60(b) (2 of 4) | |
| | | | | | | Exhibit C to Cross Claimants' Response in Opposition to Roberts's Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgment for Fraud upon the Court Pursuant to C.R.C.P. 60(b) (3 of 4) | |
| | | | | | | Exhibit C to Cross Claimants' Response in Opposition to Roberts's Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgment for Fraud upon the Court Pursuant to C.R.C.P. 60(b) (4 of 4) | |
| | | | | | | Exhibit D to Cross Claimants' Response in Opposition to Roberts's Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgment for Fraud upon the Court Pursuant to C.R.C.P. 60(b) | |
| | | | | | | Exhibit E to Cross Claimants' Response in Opposition to Roberts's Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgment for Fraud upon the Court Pursuant to C.R.C.P. 60(b) | |
| N/A (Details) | 02/11/2021 4:44 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order re Unopposed Motion for Extension of Time to File Reply in Support of Motion for Judgment on the Pleadings | Public |
| 3723D5DDAFA18 | 02/10/2021 4:39 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | Unopposed Motion for Extension of Time to File Reply in Support of Motion for Judgment on the Pleadings | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order re Unopposed Motion for Extension of Time to File Reply in Support of Motion for Judgment on the Pleadings | Public |
| 53E5FBC71A508 | 02/05/2021 5:17 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Response | Cross Claimants' Response in Opposition to Roberts's Motion for Judgment on the Pleadings w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Cross Claimants' Response in Opposition to | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Roberts's Motion for Judgment on the Pleadings | |
| N/A (Details) | 01/28/2021 2:18 PM | Eric Martin Johnson | Denver County - District | N/A | Order *(Related Document)* | Order:Unopposed Motion for Extension of Time to File Response to Roberts's Motion for Judgment on the Pleadings | Public |
| EDAD01767CE99 | 01/27/2021 1:46 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Motion *(Related Document)* | Unopposed Motion for Extension of Time to File Response to Roberts's Motion for Judgment on the Pleadings | Public |
| 4A1CB2F398700 | 01/26/2021 6:54 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion *(Related Document)* | Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit A to Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - 12/06/2018 Preliminary Injunction hearing transcript | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit B to Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - 1/24/2019 Preliminary Injunction Order | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit C to Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - Rosen email | Protected |
| | | | | | Proposed Order *(Related Document)* | | Public |
| | | | | | | Exhibit D to Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - 5/3/2018 text thread | |
| | | | | | | Exhibit E to Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - Supplemental Affidavit of Lopez | |
| | | | | | | Exhibit F to Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - Selected emails | |
| | | | | | | Exhibit G to Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - Revised capital stack | |
| | | | | | | Exhibit H to Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) - Appraisal Report | |
| | | | | | | Proposed Order re Motion to Vacate or Modify the Preliminary Injunction and to Vacate Judgments for Fraud Upon the Court Pursuant to C.R.C.P. 60(b) | |
| 71E4E608463B9 | 01/25/2021 2:03 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Notice *(Related Document)* | Notice of Errata and Substitution of Exhibit w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Amended Exhibit B to Roberts's Reply in Support of Traverse of Writ of Attachment | Protected |
| 5304433BE563A | 01/22/2021 11:50 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Reply *(Related Document)* | Roberts's Reply in Support of Motion to Declare Orders Void as Violating Roberts's Constitutional Due Process Rights w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | Exhibit A to Roberts's Reply in Support of Motion to Declare Orders Void as Violating Roberts's Constitutional Due Process Rights - text thread | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Public |
| | | | | | Reply *(Related Document)* | Exhibit B to Roberts's Reply in Support of Motion to Declare Orders Void as Violating Roberts's Constitutional Due Process Rights - Texts with Littler | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc *(Related Document)* | | Public |
| | | | | | Reply *(Related Document)* | Exhibit C to Roberts's Reply in Support of Motion to Declare Orders Void as Violating Roberts's | Protected |
| | | | | | | | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | Constitutional Due Process Rights - 8/18/2020 hearing transcript | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | Reply in Support of Roberts's Motion to Vacate Orders Based Upon Lack of Subject Matter Jurisdiction w/ attach | |
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | Exhibit A to Reply in Support of Roberts's Motion to Vacate Orders Based Upon Lack of Subject Matter Jurisdiction - Affidavit of Lopez | |
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | Exhibit B to Reply in Support of Roberts's Motion to Vacate Orders Based Upon Lack of Subject Matter Jurisdiction - Supplemental Affidavit of Lopez | |
| | | | | | *Exhibit - Attach to Pleading/Doc (Related Document)* | Reply in Support of Traverse of Writ of Attachment w/ attach | |
| | | | | | | Exhibit A to Reply in Support of Traverse of Writ of Attachment - Supplemental Affidavit of Lopez | |
| | | | | | | Exhibit B to Reply in Support of Traverse of Writ of Attachment - 6/2017 emails | |
| | | | | | | Exhibit C to Reply in Support of Traverse of Writ of Attachment - 12/2014 emails | |
| | | | | | | Exhibit D to Reply in Support of Traverse of Writ of Attachment - 10/2016 emails | |
| | | | | | | Exhibit E to Reply in Support of Traverse of Writ of Attachment - 11/2016 emails | |
| | | | | | | Exhibit F to Reply in Support of Traverse of Writ of Attachment - 7/2016 emails | |
| AC2D22DFF30C1 | 01/22/2021 11:43 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | *Reply* | Reply in Support of Motion to Vacate Breach of Fiduciary Duty Findings w/ attach | Public |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit - A to Reply in Support of Motion to Vacate Breach of Fiduciary Duty Findings - 12-16-14 Email to Investors | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit - B to Reply in Support of Motion to Vacate Breach of Fiduciary Duty Findings - 11-30-16 Emails | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit - C to Reply in Support of Motion to Vacate Breach of Fiduciary Duty Findings - 07-29-16 Emails | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit - D to Reply in Support of Motion to Vacate Breach of Fiduciary Duty Findings - Supplemental Disclosure and Privilege Log | Protected |
| | | | | | *Exhibit - Attach to Pleading/Doc* | Exhibit - E to Reply in Support of Motion to Vacate Breach of Fiduciary Duty Findings - Roberts 09.16.19 Transcript | Protected |
| N/A (Details) | 01/22/2021 12:44 PM | Eric Martin Johnson | Denver County - District | N/A | *Order* | Order Granting June 9, 2020 Cross-Claimants' Motion for Entry of Judgment under Colorado Rules of Civil Procedure 54(b), 58, and 79(a). | Public |
| N/A (Details) | 01/20/2021 2:10 PM | Eric Martin Johnson | Denver County - District | N/A | *Order (Related Document)* | Order re Unopposed Motion for Extension of Time to File Reply in Support of Traverse | Public |
| N/A (Details) | 01/19/2021 9:21 AM | Eric Martin Johnson | Denver County - District | N/A | *Order (Related Document)* | Order Granting Unopposed Motion for Extension of Time to file (1) Reply in Support of Motion to Vacate Breach of Fiduciary Duty Judgment, (2) Reply in Support of Motion to Vacate Orders Due to Lack of Subject Matter Jurisdiction, and (3) Reply in Support of Motion to Declare Orders Void as Violating Due Process Rights | Public |
| 96DF64E480D23 | 01/15/2021 7:51 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | *Motion (Related Document)* | Unopposed Motion for Extension of Time to File Reply in Support of Traverse | Public |
| | | | | | *Proposed Order (Related Document)* | Proposed Order re Unopposed Motion for Extension of Time to File Reply in Support of Traverse | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| 3B4A4C3D7BC5C | 01/14/2021 10:21 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion *(Related Document)* | Unopposed Motion for Extension of Time to file (1) Reply in Support of Motion to Vacate Breach of Fiduciary Duty Judgment, (2) Reply in Support of Motion to Vacate Orders Due to Lack of Subject Matter Jurisdiction, and (3) Reply in Support of Motion to Declare Orders Void as Violating Due Process Rights | Public |
| | | | | | Proposed Order *(Related Document)* | Proposed Order re Unopposed Motion for Extension of Time to file (1) Reply in Support of Motion to Vacate Breach of Fiduciary Duty Judgment, (2) Reply in Support of Motion to Vacate Orders Due to Lack of Subject Matter Jurisdiction, and (3) Reply in Support of Motion to Declare Orders Void as Violating Due Process Rights | Public |
| 73406D830053C | 01/08/2021 5:42 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Response | Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate w/attached | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Response | | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit E to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit F to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit G to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit H to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | | Exhibit I to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | |
| | | | | | | Exhibit J (1 of 4) to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | |
| | | | | | | Exhibit J (2 of 4) to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | |
| | | | | | | Exhibit J (3 of 4) to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | |
| | | | | | | Exhibit J (4 of 4) to Cross Claimants' Supplement to their Responses to the Roberts Parties' Motions to Vacate | |
| | | | | | | Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit A to Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit B to Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit C to Cross Claimants' Supplement to their Response in | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|-----------|-----------|-----------|--------------|--------------|----------|----------------|-------------------|
| | | | | | | Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit D to Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit E to Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit F to Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit G to Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit H to Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit I (1 of 4) to Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit I (2 of 4) to Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit I (3 of 4) to Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| | | | | | | Exhibit I (4 of 4) to Cross Claimants' Supplement to their Response in Opposition to Roberts's Traverse of Attachment | |
| 5FB9F445ABAB6 | 01/08/2021 3:38 PM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Reply | VERIFIED REPLY TO CROSS CLAIMAINTS RESPONSE IN OPPOSITION TO INTERVENORS MOTION TO DISCHARGE ATTACHMENT PURSUANT TO CRCP RULE 102(W) w/attached | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to VERIFIED REPLY TO CROSS CLAIMAINTS RESPONSE IN OPPOSITION TO INTERVENORS MOTION TO DISCHARGE ATTACHMENT PURSUANT TO CRCP RULE 102(W) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | | Exhibit B VERIFIED REPLY TO CROSS CLAIMAINTS RESPONSE IN OPPOSITION TO INTERVENORS MOTION TO DISCHARGE ATTACHMENT PURSUANT TO CRCP RULE 102(W) | |
| | | | | | | Exhibit C VERIFIED REPLY TO CROSS CLAIMAINTS RESPONSE IN OPPOSITION TO INTERVENORS MOTION TO DISCHARGE ATTACHMENT PURSUANT TO CRCP RULE 102(W) | |
| | | | | | | Exhibit D VERIFIED REPLY TO CROSS CLAIMAINTS RESPONSE IN OPPOSITION TO INTERVENORS MOTION TO DISCHARGE ATTACHMENT PURSUANT TO CRCP RULE 102(W) | |
| | | | | | | Exhibit E VERIFIED REPLY TO CROSS CLAIMAINTS RESPONSE IN OPPOSITION TO INTERVENORS MOTION TO DISCHARGE ATTACHMENT PURSUANT TO CRCP RULE 102(W) | |
| | | | | | | Exhibit F VERIFIED REPLY TO CROSS CLAIMAINTS RESPONSE IN OPPOSITION TO INTERVENORS MOTION TO DISCHARGE ATTACHMENT PURSUANT TO CRCP RULE 102(W) | |
| | | | | | | Exhibit G VERIFIED REPLY TO CROSS CLAIMAINTS RESPONSE IN OPPOSITION TO INTERVENORS MOTION TO DISCHARGE ATTACHMENT | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | PURSUANT TO CRCP RULE 102(W) | |
| | | | | | | Exhibit H VERIFIED REPLY TO CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS MOTION TO DISCHARGE ATTACHMENT PURSUANT TO CRCP RULE 102(W) | |
| 8CCAF89D52664 | 01/06/2021 4:44 PM | Robert C Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion (Related Document) | Roberts' Motion for Judgment on the Pleadings | Public |
| | | | | | Proposed Order | Proposed Order re: Robert's Motion for Judgment on the Pleadings | Public |
| N/A (Details) | 12/31/2020 12:05 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order:PROPOSED ORDER RE: STIPULATED MOTION FOR EXTENSION OF TIME TO FILE REPLY TO RESPONSE TO MOTION FOR DISCHARGE ATTACHMENT PURSUANT TO CRCP RULE 102 W | Public |
| CEAA2D2039C92 | 12/30/2020 12:59 PM | Joseph Andrew Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Motion | STIPULATED MOTION FOR EXTENSION OF TIME TO FILE REPLY TO RESPONSE TO MOTION FOR DISCHARGE ATTACHMENT PURSUANT TO CRCP RUL 102 W | Public |
| | | | | | Proposed Order (Related Document) | PROPOSED ORDER RE: STIPULATED MOTION FOR EXTENSION OF TIME TO FILE REPLY TO RESPONSE TO MOTION FOR DISCHARGE ATTACHMENT PURSUANT TO CRCP RULE 102 W | Public |
| 9B6E43B798334 | 12/28/2020 9:36 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Carl Vertuca (more) | Response | CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT w/ Attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A -- Affidavit of Process Server Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B - 6688 Gunpark Sale Flyer Excerpt Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc | | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C - Ramirez Revocation Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D - Assignment Agreement Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit E - Cancellation Agreement Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit F - Recognition Agreement Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit G - Withdrawal Agreement Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit I - MJR JR 1967 Trust Formation Document Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT(Suppressed Per Order DTD on 12/01/2020 | |
| | | | | | | Exhibit J - CR JR 1967 Trust Formation Document Attachment | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|-----------|-----------|-----------|--------------|--------------|----------|----------------|-------------------|
| | | | | | | to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT (Suppressed per Order DTD on 12/01/2020) | |
| | | | | | | Exhibit K - Part 1 -- Entity Chart Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit K - Part 2 -- Entity Chart Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit M - Part 1 -- Journal Entries Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit M - Part 2 -- Journal Entries Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit H - Part 1 - Withdrawal Brief Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit H - Part 2 - Withdrawal Brief Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit H - Part 3 - Withdrawal Brief Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit H - Part 4 - Withdrawal Brief Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit L - Part 1 Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit L - Part 2 Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| | | | | | | Exhibit L - Part 3 Attachment to CROSS CLAIMANTS RESPONSE IN OPPOSITION TO INTERVENORS TRAVERSE OF WRIT OF ATTACHMENT | |
| N/A | 12/24/2020 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 9E26CBA1E0A3B | 12/21/2020 3:02 PM | Adam Reginald Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Response | INTERVENING PARTIES RESPONSE TO CROSS CLAIMANTS MOTION TO MODIFY WRITS OF ATTACHMENT TO ALLOW MANAGEMENT OF TRUSTS BY UBS | Public |
| N/A | 12/21/2020 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A | 12/21/2020 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| C0E5794D94757 | 12/20/2020 4:01 PM | Gary Lozow | Foster Graham Milstein & Calisher LLP | Michael Joseph Roberts Sr. | Motion *(Related Document)* <br> Exhibit - Attach to Pleading/Doc *(Related Document)* <br> Exhibit - Attach to Pleading/Doc *(Related Document)* <br> Proposed Order *(Related Document)* | Motion for Clarification of Arrest Warrant and Bond Status and to Reduce $300,000.00 Cash Bond to a Reasonable Bond and Stay of Execution of Sentence (w/attach) <br><br> Attachment to Motion for Clarification of Arrest Warrant and Bond Status and to Reduce $300,000.00 Cash Bond to a Reasonable Bond and Stay of | Public <br> Protected <br> Protected <br> Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Execution of Sentence - 12-16-2019 Minute Order | |
| | | | | | | Attachment to Motion for Clarification of Arrest Warrant and Bond Status and to Reduce $300,000.00 Cash Bond to a Reasonable Bond and Stay of Execution of Sentence - 1-2-2020 Minute Order | |
| | | | | | | (Proposed) Order re Motion for Clarification of Arrest Warrant and Bond Status and to Reduce $300,000.00 Cash Bond to a Reasonable Bond and Stay of Execution of Sentence | |
| 975F14D66607A | 12/18/2020 3:54 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Response | Cross Claimants' Response to Traverse of Writ of Attachment (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Cross Claimants' Response to Traverse of Writ of Attachment | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 to Cross Claimants' Response to Traverse of Writ of Attachment | Protected |
| 2977D078C5281 | 12/17/2020 4:02 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Response | Cross Claimants' Response to Traverse of Writ of Attachment w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Cross Claimants' Response to Traverse of Writ of Attachment | Protected |
| N/A (Details) | 12/17/2020 11:47 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order:Motion for Emergency Hearing w/attach | Public |
| N/A (Details) | 12/17/2020 11:46 AM | Eric Martin Johnson | Denver County - District | N/A | Order | Order Correcting Dates in Court's Previous Order Re: Motion to Continue the Damage Trial | Public |
| N/A (Details) | 12/17/2020 11:42 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order Re: Motion to Continue the Damage Trial | Public |
| N/A (Details) | 12/17/2020 11:16 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: MOTION AND NOTICE TO WITHDRAW AS ATTORNEY OF RECORD- Granted | Public |
| 8A4EB41F82F47 | 12/17/2020 10:49 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Response | Cross Claimants' Response to Roberts's Motion to Continue w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Cross Claimants' Response to Roberts's Motion to Continue (Part 1 of 3) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Cross Claimants' Response to Roberts's Motion to Continue (Part 2 of 3) | Protected |
| | | | | | | Exhibit 1 to Cross Claimants' Response to Roberts's Motion to Continue (Part 3 of 3) | |
| 1C218C652B9C4 | 12/17/2020 10:13 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Response | Cross Claimants' Response to Roberts's Motion to Vacate this Court's Breach of Fiduciary Duty Findings and the December 21-22 Damages Trial w/ attach | Public |
| | | | | | Exhibits - Trial/Hearing | | Public |
| | | | | | Exhibits - Trial/Hearing | Exhibit 1 to Cross Claimants' Response to Roberts's Motion to Vacate this Court's Breach of Fiduciary Duty Findings and the December 21-22 Damages Trial | Public |
| | | | | | | Exhibit 2 to Cross Claimants' Response to Roberts's Motion to Vacate this Court's Breach of Fiduciary Duty Findings and the December 21-22 Damages Trial | |
| BC539924FD0AD | 12/17/2020 10:05 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Response | Cross Claimants' Response to Roberts's Motion to Declare Orders Void as Violating Roberts's Constitutional Due Process Rights w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Cross Claimants' Response to Roberts's Motion to Declare Orders Void as Violating Roberts's Constitutional Due Process Rights | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 to Cross Claimants' Response to Roberts's Motion to Declare Orders Void as Violating Roberts's Constitutional Due Process Rights | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 3 to Cross Claimants' Response to Roberts's Motion to | Protected |

**MOVANTS' EXHIBIT 50**
**Page 39 of 66**

**Aple.Appx. 507**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Roberts's Constitutional Due Process Rights | |
| | | | | | | Exhibit 4 to Cross Claimants's Response to Roberts's Motion to Declare Orders Void as Violating Roberts's Constitutional Due Process Rights | |
| E43126FB6EE8D | 12/16/2020 4:00 PM | Lindsey Dene Idelberg | Foster Graham Milstein & Calisher LLP | Michael Joseph Roberts Sr. | Entry of Appearance | Entry of Appearance of Lindsey Idelberg | Public |
| 12F97766CAB97 | 12/16/2020 3:43 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Response | Cross Claimants' Response to Roberts's Motion to Vacate Orders Based Upon Lack of Subject Matter Jurisdiction | Public |
| 850F2B38F7123 | 12/15/2020 6:08 PM | Robert Kitsmiller | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion *(Related Document)* | Motion to Continue the Damage Trial or, in the Alternative, to Preclude Expert Testimony, Evidence of Damages and Undisclosed Exhibits | Public |
| | | | | | Proposed Order | Proposed Order Motion to Continue the Damage Trial or, in the Alternative, to Preclude Expert Testimony, Evidence of Damages and Undisclosed Exhibits | Public |
| 85A5FEC060906 | 12/15/2020 3:20 PM | Gary Lozow | Foster Graham Milstein & Calisher LLP | Michael Joseph Roberts Sr. | Entry of Appearance | Entry of Appearance | Public |
| CC40699D1434E | 12/14/2020 4:58 PM | Jacqueline Elizabeth Meyer Hill | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Response *(Related Document)* | Response to Motion to Direct Clerk to Enter Judgment on Cross Claimants Writs of Garnishment and Notices of Exemption and Pending Levies | Public |
| E760088845506 | 12/13/2020 8:06 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Motion *(Related Document)* | Motion to Vacate Breach of Fiduciary Duty Finding and December 21-22, 2020 Damages Hearing w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Proposed Order | Exhibit A to -Motion to Vacate Breach of Fiduciary Duty Finding and December 21-22, 2020 Damages Hearing-- 01/24/20 Hearing Transcript (Suppressed) | Public |
| | | | | | Motion *(Related Document)* | | Public |
| | | | | | | | Protected |
| | | | | | Proposed Order | Exhibit B to Motion to Vacate Breach of Fiduciary Duty Finding and December 21-22, 2020 Damages Hearing -- Kneen Notes | Public |
| | | | | | Filing Other *(Related Document)* | Proposed Order re Motion to Vacate Breach of Fiduciary Duty Finding and December 21-22, 2020 Damages Hearing | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Motion to Vacate Orders Based Upon Lack of Subject Matter Jurisdiction w/attach | Public |
| | | | | | Motion *(Related Document)* | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Motion to Vacate Orders Based Upon Lack of Subject Matter Jurisdiction -- Lopez Affidavit | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc | | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc | | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc | | Suppressed |
| | | | | | Proposed Order | Proposed Order re Motion to Vacate Orders Based Upon Lack of Subject Matter Jurisdiction | Public |
| | | | | | Motion *(Related Document)* | Traverse of Writ of Attachment w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Traverse of Writ of Attachment -- Bek Affidavit | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Traverse of Writ of Attachment -- Roberts Sr. Affidavit | Protected |
| | | | | | Proposed Order | Exhibit C to Traverse of Writ of Attachment -- Roberts Jr. Affidavit | Public |
| | | | | | | Exhibit D to Traverse of Writ of Attachment -- Smittkamp Affidavit | |
| | | | | | | Motion to Declare Orders Void as Violating Roberts Constitutional Due Process Rights w/attach | |
| | | | | | | Exhibit A to Motion to Declare Orders Void as Violating Roberts Constitutional Due Process Rights -- Lopez Affidavit | |
| | | | | | | Exhibit B to Motion to Declare Orders Void as Violating Roberts Constitutional Due Process Rights -- PI Transcript (part 1) (Suppressed) | |
| | | | | | | Exhibit B to Motion to Declare Orders Void as Violating Roberts Constitutional Due Process Rights -- PI Transcript (part 2) (Suppressed) | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Exhibit B to Motion to Declare Orders Void as Violating Roberts Constitutional Due Process Rights -- PI Transcript (part 3) (Suppressed) | |
| | | | | | | Exhibit B to Motion to Declare Orders Void as Violating Roberts Constitutional Due Process Rights -- PI Transcript (part 4) (Suppressed) | |
| | | | | | | Proposed Order re Motion to Declare Orders Void as Violating Roberts Constitutional Due Process Rights | |
| | | | | | | Motion for Emergency Hearing w/attach | |
| | | | | | | Exhibit A to Motion for Emergency Hearing -- December 2016 Email Thread | |
| | | | | | | Exhibit B to Motion for Emergency Hearing -- January 24, 2020 Hearing Transcript (Suppressed) | |
| | | | | | | Exhibit C to Motion for Emergency Hearing -- Roberts Affidavit | |
| | | | | | | Proposed Order re Motion for Emergency Hearing | |
| 5612432A65585 | 12/08/2020 2:26 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Entry of Appearance | Entry of Appearance | Public |
| | | | | | Notice | Notice of Intent to Respond to Defendant and Cross-Claimant's Motion to Direct Clerk to Enter Judgement on Cross Claimants Writs of Garnishment and Notices of Exemption and Pending Levies | Public |
| 2DCB5BC210616 | 12/08/2020 2:04 PM | Richard Podoll | Podoll and Podoll PC | Michael Joseph Roberts Sr. | Entry of Appearance | Entry of Appearance | Public |
| | | | | | Notice | Notice of Intent to Respond to Defendant and Cross-Claimant's Motion to Direct Clerk to Enter Judgment on Cross Claimants Writs of Garnishment and Notices of Exemption and Pending Levies | Public |
| 9E2BAFFD1FCF8 | 12/07/2020 7:56 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Brief | Cross Claimants' Pretrial Brief | Public |
| 3CE6485954AB4 | 12/04/2020 1:08 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Proposed Order (Related Document) | Proposed Order Allowing UBS Financial Services to Manage Trust Accounts in Which Intervenors Claim an Interest | Public |
| 1926E6478579B | 12/03/2020 9:07 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Riviera Country Club S De Rl De Cv (more) | Motion (Related Document) | Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Oct. 30, 2020 Email from A. Ausmus to E. Turner and attachment | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Nov. 1 Email from E. Turner to A. Ausmus and attachment | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Nov. 10 Email from E. Turner to A. Ausmus | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Nov. 12 Email from E. Turner to A. Ausmus | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit E to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Nov. 13 Email from E. Turner to A. Ausmus | Protected |
| | | | | | | Exhibit F to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Nov. 18 Email from E. Turner to A. Ausmus | |
| | | | | | | Exhibit G to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Nov. 23 Email from E. Turner to A. Ausmus | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|-----------|-----------|-----------|-------------|-------------|----------|---------------|-------------------|
| | | | | | | Exhibit H to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Nov. 25 Email from E. Turner to A. Ausmus | |
| | | | | | | Exhibit I to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Nov. 25 Email from A. Ausmus to E. Turner | |
| | | | | | | Exhibit J to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Nov. 30 Email from E. Turner to A. Ausmus | |
| | | | | | | Exhibit K to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Dec. 1 Email from E. Turner to A. Ausmus | |
| | | | | | | Exhibit L to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Nov. 30 Email from A. Ausmus to E. Turner | |
| | | | | | | Exhibit M to Cross Claimants' Motion to Modify Writs of Attachment to Allow Management of Trusts by UBS - Redline Comparing Proposed Stipulation and Proposed Order | |
| B9B43443174DA | 12/03/2020 12:21 PM | Joseph Andrew Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Motion | Motion to Discharge Attachment Pursuant to C.R.C.P. Rule 102 (w) w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Motion to Discharge Attachment Pursuant to C.R.C.P. Rule 102 (w) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Motion to Discharge Attachment Pursuant to C.R.C.P. Rule 102 (w) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Motion to Discharge Attachment Pursuant to C.R.C.P. Rule 102 (w) | Protected |
| | | | | | Proposed Order | PROPOSED ORDER | Public |
| N/A | 12/02/2020 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A (Details) | 12/01/2020 5:25 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order - Stipulated Protective Order | Public |
| C3433D6A70DBB | 11/25/2020 2:54 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Motion (Related Document) | Motion to Direct Clerk to Enter Judgment on Cross Claimants Notices of Exemption and Notices of Garnishment and Pending Levies w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Motion to Direct Clerk to Enter Judgment on Cross Claimants Writs of Garnishment and Notices of Exemption and Pending Levies | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Motion to Direct Clerk to Enter Judgment on Cross Claimants Writs of Garnishment and Notices of Exemption and Pending Levies | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Motion to Direct Clerk to Enter Judgment on Cross Claimants Writs of Garnishment and Notices of Exemption and Pending Levies | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to Motion to Direct Clerk to Enter Judgment on Cross Claimants Writs of Garnishment and Notices of Exemption and Pending Levies | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order Directing Clerk to Enter Judgment on Cross Claimants Writs of Garnishment and Notices of Exemption and Pending Levies | |
| 51E153C314415 | 11/25/2020 2:44 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Riviera Country Club S De RI De Cv, Timothy Kneen (more) | Motion | Motion for Protective Order | Public |
| | | | | | Proposed Order (Related Document) | Order - Stipulated Protective Order | Public |
| N/A | 11/20/2020 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A (Details) | 11/13/2020 2:02 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Proposed Order Re Motion to Intervene as a Matter of Right-Granted | Public |

**MOVANTS' EXHIBIT 50**
**Page 42 of 66**

**Aple.Appx. 510**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| N/A (Details) | 11/13/2020 10:12 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: MOTION AND NOTICE TO WITHDRAW AS ATTORNEY OF RECORD- Denied | Public |
| N/A (Details) | 11/13/2020 10:11 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: CROSS CLAIMANTS SECOND MOTION FOR FURTHER ENTRY OF JUDGMENT UNDER COLORADO RULES OF CIVIL PROCEDURE 54(b), 58, and 79(a)- So Ordered | Public |
| N/A | 11/13/2020 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 41D95C81AF4F9 | 11/12/2020 2:47 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Affidavit | Affidavit of Mailing (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Affidavit of Mailing | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Affidavit of Mailing | Protected |
| N/A (Details) | 11/12/2020 8:56 AM | Eric Martin Johnson | Denver County - District | N/A | Order | RE: Webex Hearing | Public |
| FA218D152EE9E | 11/10/2020 11:24 AM | John Andrew Chanin Esq. | Foster Graham Milstein & Calisher LLP | Ubs Bank Usa, Ubs Financial Services Inc | Writ of Garn - Exempt w/Levy - Answer (Related Document) | D: MICHAEL J. ROBERTS SR.; G: UBS FINANCIAL SERVICES INC; ANSWER: YES, $186,133.00; SETOFF: NO | Public |
| | | | | | Writ of Garn - Exempt w/Levy - Answer (Related Document) | D: MICHAEL J. ROBERTS SR.; G: UBS FINANCIAL SERVICES INC; ANSWER: YES, $105,108.63; SETOFF: NO | Public |
| 61388B109C065 | 11/09/2020 9:03 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Witness List | Witness List | Public |
| 39AC8C7292A0A | 11/09/2020 9:01 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Kneen (more) | Exhibit List | Proposed Exhibit List | Public |
| N/A (Details) | 11/03/2020 11:48 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Stipulation Regarding Transfer of Funds to Preserve Assets (Also filed on behalf of Michael Roberts, Michael J. Roberts LLC, and Sand Stone Ventures, LLC)- Approved | Public |
| N/A (Details) | 11/03/2020 11:47 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: MOTION BY NON-PARTIES UBS FINANCIAL SERVICES INC. AND UBS BANK USA FOR AN ORDER AUTHORIZING THE USE OF UBS ACCOUNT ASSETS TO REPAY A SECURED LOAN OWED BY THE MICHAEL J. ROBERTS JR. SUCCESSOR TRUST U/A DTD 12/21/1967- So Ordered | Public |
| N/A (Details) | 11/03/2020 | Genevieve Rotella | Denver County - District | N/A | Writ of Garn - Exempt w/Levy - Issued (Related Document) | D: Michael J. Roberts Sr; G: UBS Financial Services Inc; Writ of Garnishment with Notice of Exemption and Pending Levy | Public |
| N/A (Details) | 11/03/2020 | Genevieve Rotella | Denver County - District | N/A | Writ of Garn - Exempt w/Levy - Issued (Related Document) | D: Michael J. Roberts Sr; G: UBS Financial Services Inc; Writ of Garnishment with Notice of Exemption and Pending Levy | Public |
| N/A | 11/03/2020 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 54A73A6DEABBF | 11/02/2020 4:59 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Carl Vertuca (more) | Response (Related Document) | Response to Motion to Withdraw | Public |
| N/A (Details) | 11/02/2020 | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Granting Cross Claimants' Motion for Issuance of Writs of Garnishment to Collect on Contempt and Attorneys' Fees Judgments- So Ordered | Public |
| E6E26F03C1BC9 | 10/27/2020 11:16 AM | Otto K Hilbert II | Hilbert Law Firm | Michael J Roberts Llc, Michael Joseph Roberts Sr. (more) | Motion to Withdraw (Related Document) | MOTION AND NOTICE TO WITHDRAW AS ATTORNEY OF RECORD | Public |
| | | | | | Proposed Order | PROPOSED ORDER GRANTING MOTION TO WITHDRAW AS ATTORNEY OF RECORD | Public |
| DAE9B467312E4 | 10/26/2020 2:20 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Kneen (more) | Motion (Related Document) | Cross Claimants' Motion for Issuance of Writs of Garnishment to Collect on Contempt and Attorneys' Fees Judgments | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order Granting Cross Claimants' Motion for Issuance of Writs of Garnishment to Collect on Contempt and Attorneys' Fees Judgments | Public |
| N/A (Details) | 10/21/2020 5:12 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order:Motion to Quash Subpoenas | Public |

MOVANTS' EXHIBIT 50
Page 43 of 66

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| N/A (Details) | 10/21/2020 5:10 PM | Eric Martin Johnson | Denver County - District | N/A | Order *(Related Document)* | Order:MOTION BY NON-PARTIES UBS FINANCIAL SERVICES INC. AND UBS BANK USA FOR AN ORDER AUTHORIZING THE USE OF UBS ACCOUNT ASSETS TO REPAY A SECURED LOAN OWED BY THE MICHAEL J. ROBERTS JR. SUCCESSOR TRUST U/A DTD 12/21/1967 | Public |
| N/A (Details) | 10/21/2020 5:08 PM | Eric Martin Johnson | Denver County - District | N/A | Order *(Related Document)* | Order:Motion to Intervene as a Matter of Right | Public |
| N/A (Details) | 10/21/2020 4:53 PM | Eric Martin Johnson | Denver County - District | N/A | Order *(Related Document)* | Order:Notice of Non-Objection to Pending Motion for an Order Authorizing the Use of UBS Account Assets | Public |
| N/A (Details) | 10/20/2020 3:41 PM | Eric Martin Johnson | Denver County - District | N/A | Order *(Related Document)* | Order:Motion and Notice to Withdraw as Attorney of Record | Public |
| N/A (Details) | 10/20/2020 3:36 PM | Eric Martin Johnson | Denver County - District | N/A | Order *(Related Document)* | Order: Cross Claimants' Application for Attorneys' Fees Related to this Court's January 26, 2020 Order Granting Their Motion to Compel w/ attach- So Ordered | Public |
| N/A (Details) | 10/20/2020 3:29 PM | Eric Martin Johnson | Denver County - District | N/A | Order *(Related Document)* | Order:Cross Claimants' Motion for Sanctions w/ attach | Public |
| A1CFC5D79B130 | 10/19/2020 9:58 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Riviera Country Club S De RI De Cv (more) | Response *(Related Document)* | Response to Motion to Withdraw | Public |
| N/A (Details) | 10/16/2020 2:39 PM | Eric Martin Johnson | Denver County - District | N/A | Order *(Related Document)* | Order:Stipulation Regarding Transfer of Funds to Preserve Assets (Also filed on behalf of Michael Roberts, Michael J. Roberts LLC, and Sand Stone Ventures, LLC) | Public |
| A0F5BCBE5AB6D | 10/12/2020 1:46 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Stipulation *(Related Document)* <br><br> Proposed Order | Stipulation Regarding Transfer of Funds to Preserve Assets (Also filed on behalf of Michael Roberts, Michael J. Roberts LLC, and Sand Stone Ventures, LLC) <br><br> Proposed Order Granting Stipulation Regarding Transfer of Funds to Preserve Assets | Public <br> Public |
| CA08E31774DA0 | 10/12/2020 1:32 PM | Joseph Andrew Ausmus | AUSMUS LAW FIRM PC | Michael J Roberts Jr., Crystal Smittkamp | Motion to Intervene *(Related Document)* <br> Motion to Quash *(Related Document)* <br> Proposed Order *(Related Document)* <br> Proposed Order | Motion to Intervene as a Matter of Right <br> Motion to Quash Subpoenas <br> Proposed Order Re Motion to Intervene as a Matter of Right <br> Proposed Order Re Motion to Quash Subpoenas | Public <br> Public <br> Public <br> Public |
| 2696DB79DD9D1 | 10/09/2020 3:22 PM | Thomas Mattson | Thomas Mattson Law | Sandstone Ventures Llc, Michael Joseph Roberts Sr. (more) | Motion to Withdraw <br> Proposed Order | Motion and Notice to Withdraw as Attorney of Record <br> Proposed Order Granting Motion to Withdraw as Attorney of Record | Public <br> Public |
| 999431FA128DE | 10/09/2020 2:45 PM | John Andrew Chanin Esq. | Foster Graham Milstein & Calisher LLP | Ubs Bank Usa, Ubs Financial Services Inc | Notice *(Related Document)* | Notice of Non-Objection to Pending Motion for an Order Authorizing the Use of UBS Account Assets | Public |
| N/A (Details) | 10/06/2020 12:00 AM | Non-Party | N/A | Non-Party | Writ of Attachment - Answer | D: MICHAEL J ROBERTS; G: WELLS FARGO BANK; ANSWER: YES $121.70; SETOFF: NO | Public |
| BA959FE191B1B | 10/05/2020 8:05 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Motion *(Related Document)* | CROSS CLAIMANTS SECOND MOTION FOR FURTHER ENTRY OF JUDGMENT UNDER COLORADO RULES OF CIVIL PROCEDURE 54(b), 58, and 79(a) | Public |
| 1423FD1BB9D91 | 10/02/2020 11:57 AM | John Andrew Chanin Esq. | Foster Graham Milstein & Calisher LLP | Ubs Bank Usa, Ubs Financial Services Inc | Motion <br> Affidavit <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Proposed Order | MOTION BY NON-PARTIES UBS FINANCIAL SERVICES INC. AND UBS BANK USA FOR AN ORDER AUTHORIZING THE USE OF UBS ACCOUNT ASSETS TO REPAY A SECURED LOAN OWED BY THE MICHAEL J. ROBERTS JR. SUCCESSOR TRUST U/A DTD 12/21/1967 <br> Affidavit of Craig Darvin (w/attach) <br> Exhibit A to Affidavit of Craig Darvin | Public <br> Public <br> Protected <br> Protected <br> Protected <br> Protected <br> Protected <br> Protected <br> Public |

**MOVANTS' EXHIBIT 50**
**Page 44 of 66**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Exhibit B to Affidavit of Craig Darvin | |
| | | | | | | Exhibit C to Affidavit of Craig Darvin | |
| | | | | | | Exhibit D to Affidavit of Craig Darvin | |
| | | | | | | Exhibit E to Affidavit of Craig Darvin | |
| | | | | | | (Proposed) ORDER GRANTING MOTION BY NON-PARTIES UBS FINANCIAL SERVICES INC. AND UBS BANK USA FOR AN ORDER AUTHORIZING THE USE OF UBS ACCOUNT ASSETS TO REPAY A SECURED LOAN OWED BY THE MICHAEL J. ROBERTS JR. SUCCESSOR TRUST U/A DTD 12/21/1967 | |
| N/A | 10/02/2020 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 4F4B412713DE7 | 10/01/2020 3:31 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Accepted without Docketing | Transcript Request Form (09-18-20 status conference) | Protected |
| 38687EBDD438F | 09/25/2020 3:28 PM | John Andrew Chanin Esq. | Foster Graham Milstein & Calisher LLP | Ubs Financial Services Inc | Writ of Attachment - Answer | D: Michael Roberts Sr G: UBS Financial Services Ins; Answer: Yes (see document), Setoff: See document; AMENDED ANSWER TO WRIT OF GARNISHMENT IN AID OF WRIT OF ATTACHMENT BY UBS FINANCIAL SERVICES INC (Security Verified 10/7/20) | Public |
| N/A (Details) | 09/22/2020 12:00 AM | Non-Party | N/A | Non-Party | Writ of Attachment - Answer | D: MICHAEL J ROBERTS; G: BANK OF AMERICA; ANSWER: NO ACCOUNT; SETOFF: NO | Public |
| N/A (Details) | 09/22/2020 12:00 AM | Non-Party | N/A | Non-Party | Writ of Attachment - Answer | D: MICHAEL J ROBERTS LLC, MICHAEL J ROBERTS, SANDSTONE VENTURES LLC; G: JP MORGAN CHASE BANK; ANSWER: NO CUSTOMER LOCATED; SETOFF: NO | Public |
| N/A | 09/18/2020 12:00 AM | N/A | N/A | N/A | Minute Order - Print | | |
| 311093B5D2895 | 09/17/2020 2:15 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Notice | Amended Notice of Status Conference | Public |
| 9A39F1B76B897 | 09/14/2020 4:00 PM | John Andrew Chanin Esq. | Foster Graham Milstein & Calisher LLP | Ubs Financial Services Inc | Writ of Attachment - Answer | D: MICHAEL JOSEPH ROBERTS; G: UBS FINANCIAL SERVICES INC; ANSWER: YES (SEE DOCUMENT FOR AMOUNTS), SETOFF: SEE DOCUMENT; ANSWER TO WRIT OF GARNISHMENT IN AID OF WRIT OF ATTACHMENT BY UBS FINANCIAL SERVICES INC. | Public |
| FF2C456519BC0 | 09/14/2020 10:32 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Riviera Country Club S De RI De Cv (more) | Notice | Notice of Status Conference | Public |
| N/A (Details) | 09/10/2020 12:00 AM | Non-Party | N/A | Non-Party | Writ of Garn - Exempt w/Levy - Answer | D: MICHAEL JOSEPH ROBERTS SR; G: CITIBANK; ANSWER: NO NOTHING TO REPORT; SETOFF: NO | Public |
| N/A (Details) | 09/08/2020 2:35 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Cross Claimants' Motion to Amend Cross Claim and Third Party Complaint w/attach- Granted | Public |
| 5AE1B0E13DC4B | 09/08/2020 8:36 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Riviera Country Club S De RI De Cv, Carl Vertuca (more) | Request | CROSS CLAIMANTS REQUEST FOR A STATUS CONFERENCE THE WEEK OF SEPTEMBER 8, 2020 | Public |
| 2348C22FC933A | 09/02/2020 12:16 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Riviera Country Club S De RI De Cv (more) | Notice | Notice of Levy (AllianceBernstein) (Sealed Pursuant to Minute Order dtd 5/18/2020) | Sealed |
| | | | | | Notice | Sealed | Sealed |
| | | | | | Notice | Notice of Levy (BOA) (Sealed Pursuant to Minute Order dtd 5/18/2020) | Sealed |
| | | | | | Notice | Sealed | Sealed |
| | | | | | Notice | Notice of Levy (Citibank) (Sealed Pursuant to Minute Order dtd 5/18/2020) | Sealed |
| | | | | | Notice | Sealed | Sealed |
| | | | | | Notice | Notice of Levy (JP Morgan) (Sealed Pursuant to Minute Order dtd 5/18/2020) | Sealed |
| | | | | | | Notice of Levy (Paypal) (Sealed Pursuant to Minute Order dtd 5/18/2020) | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Notice of Levy (UBS) (Sealed Pursuant to Minute Order dtd 5/18/2020) | |
| | | | | | | Notice of Levy (Wells Fargo) (Sealed Pursuant to Minute Order dtd 5/18/2020) | |
| N/A | 09/02/2020 12:00 AM | N/A | N/A | N/A | Warrant - Failure to Comply | N/A | |
| N/A | 09/02/2020 12:00 AM | N/A | N/A | N/A | Warrant Canceled | N/A | |
| N/A | 09/02/2020 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 09/01/2020 12:00 AM | Amber Roth | Denver County - District | N/A | Writ of Attachment - Issued | WRIT OF GARNISHMENT IN AID OF WRIT OF ATTACHMENT; D: MICHAEL JOSEPH ROBERTS SR. G: CITIBANK NA | Public |
| N/A (Details) | 09/01/2020 12:00 AM | Amber Roth | Denver County - District | N/A | Writ of Attachment - Issued | WRIT OF GARNISHMENT IN AID OF WRIT OF ATTACHMENT; D: MICHAEL JOSEPH ROBERTS SR. G: WELLS FARGO BANK NA | Public |
| N/A (Details) | 09/01/2020 12:00 AM | Amber Roth | Denver County - District | N/A | Writ of Attachment - Issued | WRIT OF GARNISHMENT IN AID OF WRIT OF ATTACHMENT; D: MICHAEL JOSEPH ROBERTS SR. G: JPMORGAN CHASE & CO. | Public |
| N/A (Details) | 09/01/2020 12:00 AM | Amber Roth | Denver County - District | N/A | Writ of Attachment - Issued | WRIT OF GARNISHMENT IN AID OF WRIT OF ATTACHMENT; D: MICHAEL JOSEPH ROBERTS SR. G: PAYPAL INC. | Public |
| N/A (Details) | 09/01/2020 12:00 AM | Amber Roth | Denver County - District | N/A | Writ of Attachment - Issued | WRIT OF GARNISHMENT IN AID OF WRIT OF ATTACHMENT; D: MICHAEL JOSEPH ROBERTS SR. G: BANK OF AMERICA | Public |
| N/A (Details) | 09/01/2020 12:00 AM | Amber Roth | Denver County - District | N/A | Writ of Attachment - Issued | WRIT OF GARNISHMENT IN AID OF WRIT OF ATTACHMENT; D: MICHAEL JOSEPH ROBERT, SR. G: ALLIANCEBERNSTEIN INVESTMENTS INC. | Public |
| N/A (Details) | 09/01/2020 12:00 AM | Amber Roth | Denver County - District | N/A | Writ of Attachment - Issued | WRIT OF GARNISHMENT IN AID OF WRIT OF ATTACHMENT; D: MICHAEL JOSEPH ROBERTS SR G: UBS FINANCIAL SERVICES INC. | Public |
| N/A | 09/01/2020 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 08/28/2020 12:00 AM | Eric Martin Johnson | Denver County - District | N/A | Writ of Attachment - Issued | TEMPORARY RESTRAINING ORDER and WRIT OF ATTACHMENT | Public |
| N/A (Details) | 08/28/2020 12:00 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | ORDER GRANTING CROSS CLAIMANTS AND THIRD PARTY CLAIMANTS MOTION FOR AN EMERGENCY EX PARTE TRO (Sealed Pursuant to Minute Order dtd 8/18/2020) | Public |
| N/A | 08/28/2020 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| FBCF3EDE75641 | 08/21/2020 6:20 PM | Otto K Hilbert II | Hilbert Law Firm | Michael Roberts, Michael J Roberts Llc (more) | Entry of Appearance | Entry of Appearance | Public |
| N/A | 08/19/2020 12:00 AM | N/A | N/A | N/A | Warrant - Failure to Appear | N/A | |
| CC3B5838D5423 | 08/18/2020 4:43 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Motion | CROSS CLAIMANTS AND THIRD PARTY CLAIMANTS MOTION FOR AN EMERGENCY EX-PARTE TRO ENJOINING CROSS AND THIRD PARTY DEFENDANT ROBERTS FROM TRANSFERRING HIS ASSETS AND ORDERING THE SHERIFF TO EXECUTE THE ARREST WARRANT ISSUED FOR ROBERTS FORTHWITH (Sealed Pursuant to Minute Order dtd 5/18/2020) | Public |
| | | | | | Affidavit | AFFIDAVIT OF WILLIAM J. LEONE IN SUPPORT OF CROSS CLAIMANTS MOTION FOR ISSUANCE OF A WRIT OF ATTACHMENT (Sealed Pursuant to Minute Order dtd 5/18/2020) | Public |
| | | | | | Proposed Order (Related Document) | [PROPOSED] ORDER GRANTING CROSS CLAIMANTS AND THIRD PARTY CLAIMANTS MOTION FOR AN EMERGENCY | Public |

**MOVANTS' EXHIBIT 50**
**Page 46 of 66**

**Aple.Appx. 514**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | EX PARTE TRO (Sealed Pursuant to Minute Order dtd 5/18/2020) | |
| N/A | 08/18/2020 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A | 08/18/2020 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 8E090A7BD7D5D | 08/05/2020 9:19 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Riviera Country Club S De RI De Cv (more) | Motion (Related Document) <br><br> Answer, Cross/Counter and 3rd Party Complaint <br><br> Proposed Order | Cross Claimants' Motion to Amend Cross Claim and Third Party Complaint w/attach <br><br> First Amended Cross Claim and Third Party Complaint (Exhibit "A" to Cross Claimants' Motion to Amend Cross Claim and Third Party Complaint) <br><br> Proposed Order Granting Motion to Amend | Public <br> Public <br> Public |
| N/A (Details) | 08/05/2020 12:00 AM | Firm Suspense Account | Denver County - District | N/A | Writ of Garn - Exempt w/Levy - Answer | D: MICHAEL J ROBERTS SR; G: FLATIRONS BANK; ANSWER: YES - BANK ACCT W FUNDS IN THE AMOUNT OF 3366.38, MAY BE SUBJECT TO REDUCTION BY ANOTHER GARNISHMENT FROM SAME CREDITOR ; SETOFF: NO | Public |
| N/A (Details) | 08/05/2020 12:00 AM | Firm Suspense Account | Denver County - District | N/A | Writ of Garn - Exempt w/Levy - Answer | D: MICHAEL J ROBERTS SR; G: FLATIRONS BANK; ANSWER: YES - BANK ACCT W FUNDS IN THE AMOUNT OF 3366.38, MAY BE SUBJECT TO REDUCTION BY ANOTHER GARNISHMENT FROM SAME CREDITOR ; SETOFF: NOT ANSWERED | Public |
| 85A7B214FCCDA | 07/24/2020 2:47 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Response (Related Document) <br><br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc <br> Exhibit - Attach to Pleading/Doc | Cross Claimants' Reply in Support of Their Motion for Sanctions w/attach <br><br> Exhibit K to Cross Claimants' Reply in Support of Their Motion for Sanctions <br><br> Exhibit L to Cross Claimants' Reply in Support of Their Motion for Sanctions <br><br> Exhibit M to Cross Claimants' Reply in Support of Their Motion for Sanctions <br><br> Exhibit N to Cross Claimants' Reply in Support of Their Motion for Sanctions <br><br> Exhibit O to Cross Claimants' Reply in Support of Their Motion for Sanctions | Public <br> Protected <br> Protected <br> Protected <br> Protected <br> Protected |
| N/A (Details) | 07/24/2020 12:00 AM | Amber Roth | Denver County - District | N/A | Writ of Garn - Exempt w/Levy - Issued | Writ of Garn - Exempt w/Levy - Issued D: Michael J Roberts Sr G: Flatirons Bank Judgment Amt 105,108.63 | Public |
| N/A (Details) | 07/24/2020 12:00 AM | Amber Roth | Denver County - District | N/A | Writ of Garn - Exempt w/Levy - Issued | Writ of Garn - Exempt w/Levy - Issued D: Michael J Roberts Sr G: Flatirons Bank Judgment Amt 186,133 | Public |
| N/A | 07/24/2020 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A (Details) | 07/09/2020 2:53 PM | Eric Martin Johnson | Denver County - District | N/A | Order | Order Reducing On-Going Remedial Contempt Fines to Judgement | Public |
| N/A (Details) | 07/09/2020 2:20 PM | Eric Martin Johnson | Denver County - District | N/A | Order | Order Mandating Mediation | Public |
| 4238A9C46BA28 | 07/08/2020 1:49 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Notice of Hearing | Notice of Status Conference | Public |
| N/A | 07/08/2020 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 8AE0C157D9153 | 06/25/2020 3:41 PM | Thomas Mattson | Thomas Mattson Law | Michael J Roberts Llc, Sandstone Ventures Llc (more) | Response (Related Document) <br><br> Exhibit - Attach to Pleading/Doc | Response to Motion for Sanctions w/ attach <br><br> Exhibit - Attach to Response to Motion for Sanction - A Photograph of Plaintiff's Counsel | Public <br> Protected |
| N/A (Details) | 06/23/2020 1:40 PM | Eric Martin Johnson | Denver County - District | N/A | Order | ORDER RE: CROSS CLAIMANTS STATEMENT OF ATTORNEYS FEES AND COSTS PURSUANT TO JANUARY 6, 2020 ORDER | Public |
| N/A (Details) | 06/19/2020 1:21 AM | Eric Martin Johnson | Denver County - District | N/A | Order | FINDINGS OF FACTS & CONCLUSIONS OF LAW - Phase | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | 1 | |
| 1C35961C54A0C | 06/09/2020 1:06 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Motion (Related Document) | Cross Claimants' Motion for Sanctions w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A - Cross Claimants' Motion for Sanctions | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B - Cross Claimants' Motion for Sanctions | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C - Cross Claimants' Motion for Sanctions | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D - Cross Claimants' Motion for Sanctions | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit E - Cross Claimants' Motion for Sanctions | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit F - Cross Claimants' Motion for Sanctions | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit G - Cross Claimants' Motion for Sanctions | Public |
| | | | | | Proposed Order | Exhibit H - Cross Claimants' Motion for Sanctions | Public |
| | | | | | Motion (Related Document) | Exhibit I - Cross Claimants' Motion for Sanctions | Public |
| | | | | | Proposed Order | Exhibit J - Cross Claimants' Motion for Sanctions | Protected |
| | | | | | Filing Other (Related Document) | Exhibit K - Cross Claimants' Motion for Sanctions | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | PROPOSED ORDER GRANTING CROSS CLAIMANTS MOTION FOR SANCTIONS | |
| | | | | | Proposed Order | Cross Claimants' Motion for Entry of Judgment Under Colorado Rules of Civil Procedure 54(b), 58, and 79(a) | |
| | | | | | | PROPOSED ORDER GRANTING CROSS CLAIMANTS MOTION FOR ENTRY OF JUDGMENT UNDER COLORADO RULES OF CIVIL PROCEDURE 54(b), 58, and 79(a) | |
| | | | | | | Cross Claimants' Application for Attorneys' Fees Related to this Court's January 26, 2020 Order Granting Their Motion to Compel w/ attach | |
| | | | | | | Exhibit A to Cross Claimants' Application for Attorneys' Fees Related to this Court's January 26, 2020 Order Granting Their Motion to Compel - Application (Affidavit of William Leone) | |
| | | | | | | PROPOSED ORDER GRANTING CROSS CLAIMANTS APPLICATION FOR ATTORNEYS FEES RELATED TO THIS COURTS JANUARY 26, 2020 ORDER GRANTING THEIR MOTION TO COMPEL | |
| BA81BFA07ABF9 | 05/28/2020 1:50 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Carl Vertuca (more) | Exhibits - Trial/Hearing | Exhibit 45 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 46 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 47 (Part 1 of 3)(01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 47 (Part 2 of 3)(01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 47 (Part 3 of 3)(01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 48 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 49 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 50 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 51 (01-24-20 Trial) | Protected |
| | | | | | | Exhibit 52 (01-24-20 Trial) | |
| | | | | | | Exhibit 53 (01-24-20 Trial) | |
| E62A8AB9B72E9 | 05/28/2020 1:45 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Carl Vertuca (more) | Exhibit List | CROSS CLAIMANTS PROPOSED EXHIBIT LIST (01-24-20 Trial) | Public |
| | | | | | Exhibits - Trial/Hearing | Exhibit 1 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Trial Exhibit 2 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Trial Exhibit 3 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 4 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 5 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 6 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 7 (01-24-20 Trial) | Protected |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | Exhibits - Trial/Hearing | Exhibit 9 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 10 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 11 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 12 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 13 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 14 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 15 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 16 (Part 1 of 3) (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 16 (Part 2 of 3) (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 16 (Part 3 of 3) (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 17 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 18 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 19 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 20 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 21 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 22 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 23 (01-24-20 Trial) | Suppressed |
| | | | | | Exhibits - Trial/Hearing | Exhibit 24 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 25 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 26 (01-24-20 Trial) (Suppressed, Court Transcript) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 27 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 28 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 29 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 30 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 31 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 32 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 33 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 34 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 35 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 36 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 37 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 38 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 39 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 40 (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 41 (Part 1 of 3) (01-24-20 Trial) | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 41 (Part 2 of 3) (01-24-20 Trial) | Protected |
| | | | | | | Exhibit 41 (Part 3 of 3) (01-24-20 Trial) | |
| | | | | | | Exhibit 42 (Part 1 of 2) (01-24-20 Trial) | |
| | | | | | | Exhibit 42 (Part 2 of 2) (01-24-20 Trial) | |
| | | | | | | Exhibit 43 (01-24-20 Trial) | |
| | | | | | | Exhibit 44 (01-24-20 Trial) | |
| N/A | 05/27/2020 12:00 AM | N/A | N/A | N/A | Warrant Canceled | N/A | |
| N/A | 05/27/2020 12:00 AM | N/A | N/A | N/A | Record Unsealed/Unsuppressed | N/A | |
| N/A | 05/27/2020 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 05/09/2020 12:00 AM | Eric Martin Johnson | Denver County - District | N/A | Order | ORDER MODIFYING CONDITIONS OF ARREST WARRANT FOR MICHAEL JOSEPH ROBERTS SR. | Sealed |
| N/A (Details) | 05/09/2020 12:00 AM | N/A | N/A | Timothy Flaherty, Timothy Kneen (more) | Motion | CROSS CLAIMANTS AND THIRD PARTY PLAINTIFFS EX PARTE MOTION TO SUPPLEMENT ORDER FOR AN ARREST WARRANT | Sealed |
| N/A | 05/09/2020 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A | 05/09/2020 12:00 AM | N/A | N/A | N/A | Warrant - Failure to Appear | N/A | |
| N/A | 05/09/2020 12:00 AM | N/A | N/A | N/A | Warrant Canceled | N/A | |
| N/A | 05/09/2020 12:00 AM | N/A | N/A | N/A | Record Sealed | N/A | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| N/A | 04/10/2020 12:00 AM | N/A | N/A | N/A | JTRL Dispo - Trial Not Held | N/A | |
| 954C6B8F23917 | 03/16/2020 2:52 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Carl Vertuca (more) | Reply<br>Exhibit - Attach to Pleading/Doc<br>Exhibit - Attach to Pleading/Doc | Cross and Third Party Claimants' Reply in Support of Their Application for Attorneys' Fees (w/attach)<br>Exhibit A to Cross and Third Party Claimants' Reply in Support of Their Application for Attorneys' Fees<br>Exhibit B to Cross and Third Party Claimants' Reply in Support of Their Application for Attorneys' Fees | Public<br>Protected<br>Protected |
| 354212FEFF96E | 03/02/2020 3:35 PM | Thomas Mattson | Thomas Mattson Law | Michael Roberts, Michael J Roberts Llc (more) | Objection | Objection to Statement of Attorneys Fees Related to Contempt | Public |
| BEEC516A30F7C | 02/07/2020 4:27 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Timothy Flaherty (more) | Filing Other | CROSS AND THIRD PARTY CLAIMANTS PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW (also filed on behalf of Plaintiff Richard Lang) | Public |
| 23E5FD72689D7 | 02/06/2020 1:53 PM | Thomas Mattson | Thomas Mattson Law | Sandstone Ventures Llc, Michael Roberts (more) | Proposed Order | Proposed Order Company Control Trial | Public |
| A90895A6C1D39 | 02/04/2020 4:33 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Carl Vertuca (more) | Affidavit<br>Exhibit - Attach to Pleading/Doc | Affidavit in Support of Awarding Attorney's Fees to Cross Claimants (NOTARIZED) (w/attach)<br>Exhibit A to Affidavit in Support of Awarding Attorney's Fees to Cross Claimants (NOTARIZED) | Public<br>Protected |
| N/A | 02/04/2020 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| D977221F57C08 | 01/31/2020 5:07 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Carl Vertuca (more) | Filing Other<br>Exhibit - Attach to Pleading/Doc<br>Affidavit | Cross Claimants' Statement of Attorney's Fees and Costs Pursuant to January 6, 2020 Order<br>Exhibit A to Affidavit in Support of Awarding Attorney's Fees to Cross Claimants<br>Affidavit in Support of Awarding Attorney's Fees to Cross Claimants (w/attach) | Public<br>Protected<br>Public |
| 9B209B5F38BC0 | 01/31/2020 3:05 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Accepted without Docketing | Transcript Request Form | Protected |
| N/A (Details) | 01/31/2020 9:27 AM | Eric Martin Johnson | Denver County - District | N/A | Order | Post-Trial Order | Public |
| N/A (Details) | 01/26/2020 6:03 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Cross Claimants' Motion to Compel Discovery- Granted | Public |
| N/A (Details) | 01/24/2020 12:54 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: CROSS CLAIMANTS MOTION FOR EXTENSION OF TIME | Public |
| N/A | 01/24/2020 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 01/23/2020 2:14 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Motion to Quash Bench Warrant or Alternatively Suspend w/attach - Denied | Public |
| N/A (Details) | 01/23/2020 10:38 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Plaintiff Richard Lang's Statement Regarding Issues for Trial on January 24, 2020 | Public |
| 15AD967064482 | 01/22/2020 8:39 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Brief | CROSS AND THIRD PARTY CLAIMANTS TRIAL BRIEF JANUARY 24, 2020 | Public |
| 7DA3D971BB7AC | 01/22/2020 4:51 PM | Thomas Mattson | Thomas Mattson Law | Michael Joseph Roberts Sr., Michael J Roberts Llc (more) | Brief | Roberts' Brief in Support of Corporate Control Hearing | Public |
| B54EF35528EA9 | 01/21/2020 5:39 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Timothy Flaherty (more) | Motion (Related Document) | CROSS CLAIMANTS MOTION FOR EXTENSION OF TIME | Public |
| 6845EAEB8150F | 01/21/2020 5:12 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Timothy Kneen (more) | Filing Other | CROSS CLAIMANTS PARTIAL OPPOSITION TO ROBERTS'S MOTION TO QUASH | Public |
| 60D16EA5EECFE | 01/21/2020 8:58 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Carl Vertuca (more) | Motion to Compel (Related Document)<br>Proposed Order | Cross Claimants' Motion to Compel Discovery<br>(PROPOSED) ORDER GRANTING MOTION TO COMPEL DISCOVERY | Public<br>Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| A81D3BEDE84F5 | 01/20/2020 5:57 PM | Thomas Mattson | Thomas Mattson Law | Michael Joseph Roberts Sr., Michael Roberts (more) | Motion to Quash | Motion to Quash Subpoena and Protective Order | Public |
| | | | | | Proposed Order | Proposed Order Quashing Subpoena | Public |
| DCEDED98FE6FE | 01/20/2020 12:22 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Notice (Related Document) | Plaintiff Richard Lang's Statement Regarding Issues for Trial on January 24, 2020 | Public |
| 5A2D8D39E17AD | 01/17/2020 5:35 PM | Thomas Mattson | Thomas Mattson Law | Michael J Roberts Llc, Sandstone Ventures Llc (more) | Witness List | Witnesses and Exhibits for the January 24, 2020 Hearing on Corporate Control | Public |
| | | | | | Motion to Quash (Related Document) | | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Motion to Quash Bench Warrant or Alternatively Suspend w/attach | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 - Attach to Pleading/Doc | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 - Motion to Quash Bench Warrant or Alternatively Suspend | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 3 - Motion to Quash Bench Warrant or Alternatively Suspend | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 4 - Motion to Quash Bench Warrant or Alternatively Suspend | |
| | | | | | Proposed Order | Proposed Order Quashing Warrant | Public |
| 58DB98269736A | 01/17/2020 4:50 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Exhibit List | Cross Claimant's Proposed Exhibit List | Public |
| | | | | | Witness List | Cross Claimant's Proposed Witness List | Public |
| N/A (Details) | 01/16/2020 11:34 AM | Eric Martin Johnson | Denver County - District | N/A | Order | Order Re: Hearing Occurring on January 24, 2020 | Public |
| BA41FDF849205 | 01/08/2020 5:58 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Riviera Country Club S De RI De Cv, Timothy Flaherty (more) | Notice | CROSS AND THIRD PARTY CLAIMANTS PROPOSED SUMMARY OF ISSUES TO BE TRIED ON JANUARY 24, 2020 | Public |
| 4741F3088A4D7 | 01/08/2020 4:55 PM | Thomas Mattson | Thomas Mattson Law | Michael Joseph Roberts Sr., Sandstone Ventures Llc (more) | Filing Other | Statement of Issues for Hearing on Company Control | Public |
| N/A (Details) | 01/08/2020 2:34 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Motion for Certification Under CRCP 4.2(c) | Public |
| N/A (Details) | 01/06/2020 8:55 PM | Eric Martin Johnson | Denver County - District | N/A | Order | Order Re: Contempt Citation issued to Michael J Roberts, Sr. | Public |
| N/A | 01/02/2020 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A (Details) | 12/24/2019 4:14 PM | Kandace Gerdes | Denver County - District | N/A | Order | ORDERS OF DECEMBER 24, 2019 | Public |
| N/A (Details) | 12/24/2019 4:09 PM | Kandace Gerdes | Denver County - District | N/A | Order | ORDER OF DISCLOSURE | Public |
| N/A (Details) | 12/24/2019 3:58 PM | Kandace Gerdes | Denver County - District | N/A | Order | ORDER RE: EMERGENCY SUPPLEMENT TO CROSS-CLAIMANTS' MOTION FOR ISSUANCE OF A CONTEMPT CITATION | Public |
| E5F37559D5BFA | 12/23/2019 2:06 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Filing Other | EMERGENCY SUPPLEMENT TO CROSS-CLAIMANTS MOTION FOR ISSUANCE OF A CONTEMPT CITATION (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A, Part 1 to EMERGENCY SUPPLEMENT TO CROSS-CLAIMANTS MOTION FOR ISSUANCE OF A CONTEMPT CITATION | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A, Part 2 to EMERGENCY SUPPLEMENT TO CROSS-CLAIMANTS MOTION FOR ISSUANCE OF A CONTEMPT CITATION | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A, Part 3 to EMERGENCY SUPPLEMENT TO CROSS-CLAIMANTS MOTION FOR ISSUANCE OF A CONTEMPT CITATION | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A, Part 4 to EMERGENCY SUPPLEMENT TO CROSS-CLAIMANTS MOTION FOR ISSUANCE OF A CONTEMPT CITATION | Protected |
| | | | | | | Exhibit B to EMERGENCY SUPPLEMENT TO CROSS-CLAIMANTS MOTION FOR ISSUANCE OF A CONTEMPT CITATION | Protected |
| | | | | | | Exhibit C to EMERGENCY SUPPLEMENT TO CROSS- | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | CLAIMANTS MOTION FOR ISSUANCE OF A CONTEMPT CITATION | |
| N/A | 12/16/2019 | N/A | N/A | N/A | Warrant - Failure to Appear | N/A | |
| N/A | 12/16/2019 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A | 12/16/2019 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| FFDBFD83E28D3 | 12/13/2019 3:22 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Riviera Country Club S De Rl De Cv (more) | Report | Second Status Report Regarding Non-Compliance w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Second Status Report Regarding Non-Compliance | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Second Status Report Regarding Non-Compliance | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Second Status Report Regarding Non-Compliance | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit D to Second Status Report Regarding Non-Compliance | |
| N/A | 12/12/2019 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 36F6A21C1F693 | 12/11/2019 5:08 PM | Thomas Mattson | Thomas Mattson Law | Michael Roberts, Sandstone Ventures Llc (more) | Response | Response to Status Update w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit to Response to Status Update - Cancun Order | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit to - Response to Status Update - A1 translation | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Response to Status Update - submitted rescission | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit - Attach to Response to Status Update - C Assignment | Protected |
| 660C114444DCA | 12/10/2019 2:45 PM | Thomas Mattson | Thomas Mattson Law | Michael Joseph Roberts Sr., Michael Roberts (more) | Accepted without Docketing | Transcript Request forms. | Protected |
| 24349D8280E90 | 12/05/2019 11:50 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Carl Vertuca (more) | Report | Status Report Regarding Non-Compliance w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Status Report - October 22, 2019 e-mail | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to Status Report - November 22, 2019 e-mail | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit C to Status Report - December 5, 2019 e-mail | Protected |
| N/A (Details) | 11/26/2019 9:21 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: Withdrawal of Demand for Jury Trial- Approved | Public |
| 2768FB71A65B7 | 11/22/2019 4:31 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Filing Other (Related Document) | Withdrawal of Demand for Jury Trial | Public |
| 1312DEE38083D | 11/15/2019 3:44 PM | Thomas Mattson | Thomas Mattson Law | Michael Joseph Roberts Sr., Michael J Roberts Llc (more) | Reply | Reply to Response to Motion for Certification | Public |
| | | | | | Proposed Order | Proposed Order Of Certification | Public |
| F8216AB2C0176 | 11/15/2019 12:50 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Riviera Country Club S De Rl De Cv | Filing Other | Declaration of Benjamin C. Rosen (with attach to doc) | Public |
| N/A | 11/15/2019 | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| D968001F360A6 | 11/14/2019 12:41 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Riviera Country Club S De Rl De Cv, Pdc Llc (more) | Accepted without Docketing | Request for Transcript from Contempt Hearing held on October 11, 2019 | Suppressed |
| | | | | | Accepted without Docketing | Request for Transcript from Status Conference held on October 28, 2019 | Suppressed |
| N/A | 11/14/2019 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 18185B9C9CB56 | 11/13/2019 4:39 PM | Thomas Mattson | Thomas Mattson Law | Michael Joseph Roberts Sr., Sandstone Ventures Llc (more) | Filing Other | Continued Contempt Hearing w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Continued Contempt Hearing Supplement - Notary | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 3 to Continued Contempt Hearing Supplement - translation | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 4 to Continued Contempt Hearing Supplement - translation | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 5 to Continued Contempt Hearing Supplement - Motion submitted | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 to Continued Contempt Hearing Supplement - Order | Protected |
| B47AE6026129E | 11/13/2019 3:37 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Timothy Flaherty (more) | Report | Status Report | Public |
| 834C666CF9AA3 | 11/07/2019 2:58 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Kneen (more) | Response | Cross Claimants' Response in Opposition to Motion for | Public |
| | | | | | Proposed Order | | |

**MOVANTS' EXHIBIT 50**
**Page 52 of 66**

**Aple.Appx. 520**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Certification | |
| | | | | | | Proposed Order Denying Motion for Certification | |
| 48270CCA5682F | 10/28/2019 1:03 PM | Thomas Mattson | Thomas Mattson Law | Michael Roberts, Michael Joseph Roberts Sr. (more) | Filing Other | Contempt Status Conference Exhibits | Public |
| | | | | | Exhibits - Trial/Hearing | Exhibit 1006 | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 1007 | Protected |
| N/A (Details) | 10/28/2019 12:00 AM | Eric Martin Johnson | Denver County - District | N/A | Minute Order - Print | Minute Order - Print | Public |
| 720343C965131 | 10/24/2019 5:09 PM | Thomas Mattson | Thomas Mattson Law | Sandstone Ventures Llc, Michael J Roberts Llc (more) | Motion (Related Document) | Motion for Certification Under CRCP 4.2(c) | Public |
| | | | | | Proposed Order | Proposed Order of Certification | Public |
| 591874633D557 | 10/23/2019 2:26 PM | Thomas Mattson | Thomas Mattson Law | Sandstone Ventures Llc, Michael Roberts (more) | Exhibit List | Contempt Hearing Exhibit List | Public |
| | | | | | Exhibits - Trial/Hearing | Exhibit 1003A | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 103B | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 104A | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 104B | Protected |
| | | | | | Exhibits - Trial/Hearing | Exhibit 1001 (Suppressed, Court Reporter Transcript) | Suppressed |
| | | | | | Exhibits - Trial/Hearing | Exhibit 1002 | Protected |
| N/A | 10/15/2019 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A | 10/11/2019 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| CBABFF569688C | 10/08/2019 5:05 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Riviera Country Club S De Rl De Cv, Carl Vertuca (more) | Return of Service | Affidavit of Service - Citation to Show Cause, Proposed Order for Contempt Citation, and Motion for Contempt Citation served to Michael Joseph Roberts Sr, on 9/16/19 | Public |
| N/A (Details) | 08/23/2019 12:00 AM | Eric Martin Johnson | Denver County - District | N/A | Citation - Issued | Citation to Show Cause | Public |
| F3E3485A3232C | 08/20/2019 1:47 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Timothy Kneen (more) | Citation - Proposed | ([PROPOSED) CITATION TO SHOW CAUSE | Public |
| N/A | 08/06/2019 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 250922245BB92 | 08/02/2019 1:51 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Kneen (more) | Report | Status Report w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit - A to Status Report; email of June 12, 2019 | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit - B to Status Report; Attempts to Serve Michael Roberts | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit - C to Status Report; email of July 22, 2019 | Protected |
| N/A (Details) | 07/31/2019 6:08 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order Granting Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission | Public |
| N/A (Details) | 07/31/2019 12:00 AM | Non-Party | N/A | Non-Party | Filing Other | FROM ATTY REGISTRATION OFFICE RE: MOTION FOR ADMISSION PRO HAC VICE BY ATTY ALEXIS WILPON 19PHV5863 | Public |
| 869B20CE6E166 | 07/25/2019 2:56 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Certificate | Certificate of Service re Pro Hac Vice Motion of Alexis Wilpon and Affidavit of Alexis Wilpon | Public |
| | | | | | Motion (Related Document) | Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission | Public |
| | | | | | Affidavit | Affidavit of Alexis Wilpon | Public |
| N/A (Details) | 07/03/2019 5:03 PM | Eric Martin Johnson | Denver County - District | N/A | Citation - Issued (Related Document) | CITATION TO SHOW CAUSE | Public |
| 15A250CAEFD96 | 07/01/2019 2:53 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Riviera Country Club S De Rl De Cv (more) | Citation - Proposed (Related Document) | CITATION TO SHOW CAUSE | Public |
| DA0D9EF444AC8 | 06/12/2019 1:03 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Riviera Country Club S De Rl De Cv, Pdc Llc (more) | Certificate | Certificate of Service re Order Granting Motion for Issuance of Contempt Citation w/ attach to doc | Public |
| N/A (Details) | 06/12/2019 9:57 AM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order Granting Motion for Issuance of Contempt Citation- Granted | Public |
| BA77E4745CFD2 | 06/07/2019 12:35 | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Riviera Country | Notice | Notice to Set Contempt Hearing | Public |

**MOVANTS' EXHIBIT 50**
**Page 53 of 66**

**Aple.Appx. 521**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | Club S De Rl De Cv (more) | | | |
| N/A | 06/06/2019 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 4AAB70B5239A2 | 06/03/2019 11:05 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Riviera Country Club S De Rl De Cv, Timothy Kneen (more) | Supplemental Disclosure Certificate | Supplemental Initial Disclosures | Public |
| F0DDDC659BA36 | 05/31/2019 2:16 PM | Thomas Mattson | Thomas Mattson Law | Michael Joseph Roberts Sr., Michael J Roberts Llc (more) | Supplemental Disclosure Certificate | FIRST SUPPLEMENTAL RULE 26 DISCLOSURES AND CERTIFICATE | Public |
| 202D5CA423087 | 05/30/2019 2:46 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Notice | Notice of Trial Setting | Public |
| N/A (Details) | 05/20/2019 4:47 PM | Eric Martin Johnson | Denver County - District | N/A | Order (Related Document) | Order: (Proposed) Amended Case Management Order (also filed on behalf of all parties)- Granted | Public |
| N/A (Details) | 05/20/2019 3:52 PM | Eric Martin Johnson | Denver County - District | N/A | Order | Pre-Trial Order | Public |
| N/A (Details) | 05/20/2019 3:49 PM | Eric Martin Johnson | Denver County - District | N/A | Order | DISCOVERY PROTOCOL | Public |
| N/A (Details) | 05/20/2019 2:18 PM | Eric Martin Johnson | Denver County - District | N/A | Order | ALTERNATIVE DISPUTE RESOLUTION | Public |
| N/A | 05/20/2019 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 2FA3EAD0DC62D | 05/17/2019 2:41 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Riviera Country Club S De Rl De Cv (more) | Report | Status Report | Public |
| 53C4655E6F99C | 05/17/2019 2:03 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Proposed Order - Case Management (Related Document) | (Proposed) Amended Case Management Order (also filed on behalf of all parties) | Public |
| 9F741B5C92458 | 05/10/2019 4:29 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Riviera Country Club S De Rl De Cv (more) | Reply | Reply in Support of Motion for Issuance of Contempt Citation | Public |
| 1741FFF691F5A | 05/07/2019 4:49 PM | Thomas Mattson | Thomas Mattson Law | Michael Roberts, Michael J Roberts Llc (more) | Response | Response to Motion for Contempt | Public |
| 378C444A6230E | 04/26/2019 10:13 AM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Notice | Notice of Case Management Conference | Public |
| N/A | 04/24/2019 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| E3BA8BFEA880B | 04/22/2019 3:54 PM | Thomas Mattson | Thomas Mattson Law | Michael Roberts, Sandstone Ventures Llc (more) | Accepted without Docketing | Transcript Request Form | Suppressed |
| 77C68475B21D2 | 04/22/2019 3:06 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Riviera Country Club S De Rl De Cv (more) | Motion for Contempt Citation | Motion for Issuance of Contempt Citation | Public |
| | | | | | Filing Other | | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | AFFIRMATION OF BENJAMIN ROSEN IN SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION (w/attach) | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to AFFIRMATION OF BENJAMIN ROSEN IN SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit B to AFFIRMATION OF BENJAMIN ROSEN IN SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Proposed Order (Related Document) | | Public |
| | | | | | | Exhibit C to AFFIRMATION OF BENJAMIN ROSEN IN SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION | |
| | | | | | | Exhibit D to AFFIRMATION OF BENJAMIN ROSEN IN SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION | |
| | | | | | | Exhibit E to AFFIRMATION OF BENJAMIN ROSEN IN SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION | |
| | | | | | | Exhibit F to AFFIRMATION OF BENJAMIN ROSEN IN | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION | |
| | | | | | | Exhibit G to AFFIRMATION OF BENJAMIN ROSEN IN SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION | |
| | | | | | | Exhibit H to AFFIRMATION OF BENJAMIN ROSEN IN SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION | |
| | | | | | | Exhibit I to AFFIRMATION OF BENJAMIN ROSEN IN SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION | |
| | | | | | | Exhibit J, Part 1 to AFFIRMATION OF BENJAMIN ROSEN IN SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION | |
| | | | | | | Exhibit J, Part 2 to AFFIRMATION OF BENJAMIN ROSEN IN SUPPORT OF CROSS-CLAIMANTS MOTION FOR ISSUANCE OF CONTEMPT CITATION | |
| | | | | | | (Proposed) Order Granting Motion for Issuance of Contempt Citation | |
| B0DE779A76BBC | 04/16/2019 4:22 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Notice | Notice to Set Case Management Conference | Public |
| B770275C368C8 | 03/15/2019 1:18 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Carl Vertuca (more) | Answer to Crossclaim | Answer to Counter Cross Claim Complaint | Public |
| A48FF6E2BB497 | 02/22/2019 2:25 PM | Thomas Mattson | Thomas Mattson Law | Michael Joseph Roberts Sr., Sandstone Ventures Llc (more) | Answer and Counterclaim | Answer to Cross Claims and Third Party Complaint, Counter Cross Claim | Public |
| N/A (Details) | 02/19/2019 10:39 PM | Karen L Brody | Denver County - District | N/A | Order (Related Document) | Order Granting Unopposed Motion for Extension of Time to File Answer | Public |
| E42D209028CFC | 02/15/2019 11:45 AM | Thomas Mattson | Thomas Mattson Law | Michael Joseph Roberts Sr., Michael J Roberts Llc (more) | Motion (Related Document) | Unopposed Motion for Extension of Time to File Answer | Public |
| N/A (Details) | 01/24/2019 3:05 PM | Kenneth M Plotz | Denver County - District | N/A | Order (Related Document) | Order: (PROPOSED) ORDER GRANTING MOTION TO AMEND AND MOTION FOR PRELIMINARY INJUNCTION (Exhibit A to Submission of Cross and Third Party Claimants' Order Granting Motion to Amend and Motion for Preliminary Injunction)-So Ordered | Protected |
| D10F57592F95F | 01/18/2019 2:43 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Riviera Country Club S De Rl De Cv, Timothy Flaherty (more) | Motion<br>Exhibit - Attach to Pleading/Doc (Related Document) | Submission of Cross and Third Party Claimants' Order Granting Motion to Amend and Motion for Preliminary Injunction (w/attach) | Public<br>Protected |
| | | | | | | (PROPOSED) ORDER GRANTING MOTION TO AMEND AND MOTION FOR PRELIMINARY INJUNCTION (Exhibit A to Submission of Cross and Third Party Claimants' Order Granting Motion to Amend and Motion for Preliminary Injunction) | |
| N/A (Details) | 01/14/2019 3:39 PM | Kenneth M Plotz | Denver County - District | N/A | Order (Related Document) | Order: Submission of Competing Proposed Orders for Entry of Judgment (w/attach) | Public |
| N/A (Details) | 01/14/2019 3:02 PM | Kenneth M Plotz | Denver County - District | N/A | Order (Related Document) | Order: Motion for Deposit of $10,000 Bond for Preliminary Injunction | Public |
| A82CDEF622F31 | 01/11/2019 5:21 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Riviera Country Club S De Rl De Cv (more) | Filing Other<br>Exhibit - Attach to Pleading/Doc<br>Exhibit - Attach to Pleading/Doc<br>Exhibit - Attach to Pleading/Doc<br>Exhibit - Attach to Pleading/Doc | Submission of Competing Proposed Orders for Entry of Judgment (w/attach)<br>Exhibit A to Submission of Competing Proposed Orders for Entry of Judgment - Cross and Third Party Claimants' Proposed Order | Public<br>Protected<br>Protected<br>Protected<br>Protected<br>Public |

**MOVANTS' EXHIBIT 50**
**Page 55 of 66**

**Aple.Appx. 523**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | Motion *(Related Document)* | Exhibit B to Submission of Competing Proposed Orders for Entry of Judgment - Rosen Affidavit | Public |
| | | | | | Proposed Order | Exhibit C to Submission of Competing Proposed Orders for Entry of Judgment - Third Party and Cross Defendants Proposed Order | |
| | | | | | | Exhibit D to Submission of Competing Proposed Orders for Entry of Judgment - Comparison of Orders | |
| | | | | | | Motion for Deposit of $10,000 Bond for Preliminary Injunction | |
| | | | | | | (Proposed) ORDER GRANTING MOTION FOR DEPOSIT OF $10,000 BOND FOR PRELIMINARY INJUNCTION | |
| N/A | 01/07/2019 | N/A | N/A | N/A | Minute Order - No Print | | |
| N/A (Details) | 12/06/2018 | Non-Party | N/A | Non-Party | Filing Other | FROM ATTY REGISTRATION OFFICE R: MOTION FOR ADMISSION PRO HAC VICE BY ATTY ELIOT F. TURNER 18PHV5631 | Public |
| N/A | 12/06/2018 | N/A | N/A | N/A | Minute Order - Print | N/A | |
| 700B0E454F84C | 11/26/2018 2:50 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Notice of Hearing | Notice of Hearing | Public |
| N/A | 11/26/2018 | N/A | N/A | N/A | Reopen - Post Judgment | N/A | |
| N/A (Details) | 11/20/2018 3:13 PM | Jennifer Bourn Torrington | Denver County - District | N/A | Order *(Related Document)* | Order Re: Motion to Amend the Pleadings | Public |
| E1ADA4CB30E63 | 10/31/2018 4:47 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Reply / Reply | Reply in Support of Motion for Preliminary Injunction and Request for Hearing / Reply in Support of Motion to Amend Pleadings | Public / Public |
| 5500E38DC7991 | 10/29/2018 5:20 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Response | Plaintiff's Response and Objection to Motion for Preliminary Injunction | Public |
| BBC27AC85A3DF | 10/29/2018 4:40 PM | Thomas Mattson | Thomas Mattson Law | Michael J Roberts Llc, Sandstone Ventures Llc (more) | Response | Response to Motion for Preliminary Injunction | Public |
| F746800D59D58 | 10/25/2018 5:40 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Report | Plaintiff, PdC Defendants, and Cross Claim Defendants' Joint Status Report Regarding Arbitration (filed on behalf of all parties) | Public |
| CC9501CB2A657 | 10/25/2018 4:16 PM | Thomas Mattson | Thomas Mattson Law | Sandstone Ventures Llc, Michael J Roberts Llc (more) | Response / Proposed Order | Response to Motion for Leave to Amend (also filed on behalf of Michael Joseph Roberts Sr) / (Proposed) Order Denying Motion for Leave to Amend | Public / Public |
| D0EA80446D4E0 | 10/24/2018 3:21 PM | Thomas Mattson | Thomas Mattson Law | Michael Roberts, Sandstone Ventures Llc (more) | Entry of Appearance | Entry of Appearance (Also filed on behalf of Defendant Michael Joseph Roberts' Sr.) | Public |
| N/A (Details) | 10/22/2018 12:25 PM | Jennifer Bourn Torrington | Denver County - District | N/A | Order | Order Re: Motion for Preliminary Injunction and Request for Hearing | Public |
| 7915FA0B56E49 | 10/22/2018 9:41 AM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Certificate | Amended Certificate of Service Regarding Plaintiff Rick Lang's Position on the Motion to Amend Pleadings Filed by the PDC Defendants | Public |
| 2410836E6444B | 10/19/2018 4:32 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Kneen (more) | Motion / Proposed Order | Motion for Preliminary Injunction and Request for Hearing / (Proposed) Order Granting Motion for Preliminary Injunction and Request for Hearing | Public / Public |
| C2ADFC5A81CE9 | 10/19/2018 4:09 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Filing Other | Plaintiff Rick Lang's Position on the Motion to Amend Pleadings Filed by the PDC Defendants | Public |
| N/A (Details) | 10/11/2018 11:36 AM | Jennifer Bourn Torrington | Denver County - District | N/A | Order *(Related Document)* | Order Granting Motion to Withdraw as Counsel for Defendant Michael Roberts by Defendants Flaherty, Kneen, Vertuca and PdC, LLC | Public |
| N/A (Details) | 10/11/2018 12:00 AM | Jennifer Bourn Torrington | Denver County - District | N/A | Order | Order Re: Status Update | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| 496651193F6A1 | 10/05/2018 12:57 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Proposed Order | (Proposed) Order Granting Motion to Amend the Pleadings | Public |
| 35F10EDD1923C | 10/04/2018 2:44 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Carl Vertuca (more) | Motion (Related Document) | Motion to Amend the Pleadings w/attach | Public |
| | | | | | Filing Other | Cross Claim and Third Party Complaint (Exhibit A to Motion to Amend the Pleadings (Also filed on behalf of Third Party Plaintiff Riviera Country Club S. de R.L. de C.V.) | Public |
| N/A (Details) | 10/03/2018 4:03 PM | Jennifer Bourn Torrington | Denver County - District | N/A | Order (Related Document) | Order Re: Motion to Withdraw | Public |
| BA253E8CAB61C | 09/27/2018 11:56 AM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Proposed Order (Related Document) | (Proposed) Order Granting Motion to Withdraw as Counsel for Defendant Michael Roberts by Defendants Flaherty, Kneen, Vertuca and PdC, LLC | Public |
| A69C4854367C0 | 09/14/2018 2:52 PM | Michael David Drews | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion to Withdraw (Related Document) | Motion to Withdraw | Public |
| 3D7B8862F56DA | 09/14/2018 1:53 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc, Timothy Flaherty (more) | Response | Response to Motion to Withdraw | Public |
| 5AF83ADF74DB3 | 09/14/2018 10:42 AM | Darrell Michael Daley | The Daley Law Firm LLC | Michael Roberts | Motion to Withdraw | Motion to Withdraw as Counsel for Defendant Michael Roberts | Public |
| | | | | | Proposed Order | [Proposed] Order Granting Motion to Withdraw as Counsel for Defendant Michael Roberts | Public |
| N/A (Details) | 07/05/2018 9:38 AM | Jennifer Bourn Torrington | Denver County - District | N/A | Order (Related Document) | Order Re: Notice of Status Regarding Arbitration of Claims (also filed on behalf of Defendant Michael Roberts and Plaintiff) | Public |
| 5376182E42884 | 06/29/2018 2:05 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Notice (Related Document) | Notice of Status Regarding Arbitration of Claims (also filed on behalf of Defendant Michael Roberts and Plaintiff) | Public |
| N/A | 05/24/2018 12:00 AM | N/A | N/A | N/A | Case Closed - Post Judgment | N/A | |
| N/A | 05/24/2018 12:00 AM | N/A | N/A | N/A | Minute Order - Print | N/A | |
| N/A | 05/22/2018 12:00 AM | N/A | N/A | N/A | Reopen - Post Judgment | N/A | |
| N/A (Details) | 05/21/2018 12:00 AM | Jennifer Bourn Torrington | Denver County - District | N/A | Order | Order Regarding Resetting Trial | Public |
| N/A | 05/18/2018 12:00 AM | N/A | N/A | N/A | JTRL Dispo - Trial Not Held | N/A | |
| N/A (Details) | 04/20/2018 12:00 AM | Jennifer Bourn Torrington | Denver County - District | N/A | Order (Related Document) | Order Re: Plaintiff's Motion for Partial Summary Judgment Against Defendant PdC, LLC | Public |
| N/A (Details) | 04/10/2018 9:22 AM | Jennifer Bourn Torrington | Denver County - District | N/A | Order (Related Document) | Order Re: Agreed Motion For Continuance Pursuant To C.R.C.P. 121, Section 1-11 | Public |
| N/A | 04/10/2018 12:00 AM | N/A | N/A | N/A | Case Closed | N/A | |
| B1EC658919057 | 04/04/2018 12:32 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Proposed Order | Proposed Order Granting Agreed Unopposed Motion For Continuance Pursuant To C.R.C.P. 121, Section 1-11 | Public |
| B75F10146A697 | 04/03/2018 12:28 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Motion (Related Document) | Agreed Motion For Continuance Pursuant To C.R.C.P. 121, Section 1-11 (also filed on behalf of Plaintiff Richard Lang and Defendant Michael Roberts) | Public |
| EDD54A67D2F80 | 03/20/2018 11:35 AM | Michael David Drews | Campbell Killin Brittan and Ray LLC | Richard Lang | Reply | Plaintiffs Reply to Defendant PdCs Response to Motion for Partial Summary Judgment Against Defendant PdC LLC (w/attach) | Public |
| | | | | | Affidavit | AFFIDAVIT IN SUPPORT OF PLAINTIFFS REPLY TO DEFENDANT PDCS RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT PDC LLC | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Plaintiffs Reply to Defendant PdCs Response to Motion for Partial Summary Judgment Against Defendant PdC LLC | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 to Plaintiffs Reply to Defendant PdCs Response to | Protected |

**MOVANTS' EXHIBIT 50**
**Page 57 of 66**

**Aple.Appx. 525**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Motion for Partial Summary Judgment Against Defendant PdC LLC | |
| C255DBA5E7747 | 03/13/2018 2:18 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc | Exhibit - Attach to Pleading/Doc | EXHIBIT 9 IN SUPPORT OF DEFENDANT PdCS RESPONSE TO LANGS PARTIAL MOTION FOR SUMMARY JUDGMENT | Protected |
| DF579A86807BA | 03/06/2018 2:59 PM | William Leone Esq. | Norton Rose Fulbright US LLP | Pdc Llc | Response | Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment (w/attach) | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 to Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 3 to Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 4 to Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 5 Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 6 to Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 7 to Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 8 to Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | |
| | | | | | | Exhibit 9 to Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | |
| | | | | | | Exhibit 10 to Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | |
| | | | | | | Exhibit 11 to Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | |
| | | | | | | Exhibit 12 to Defendant PdC's Response to Plaintiff Lang's Partial Motion for Summary Judgment | |
| CA11A3BCB6930 | 03/02/2018 4:40 PM | Michael David Drews | Campbell Killin Brittan and Ray LLC | Richard Lang | Notice | Notice of Scheduling of ADR Per Pretrial Order | Public |
| 23E400026EA70 | 02/12/2018 2:03 PM | Michael David Drews | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion for Summary Judgment (Related Document) | Plaintiffs Motion for Partial Summary Judgment Against Defendant PdC, LLC (w/attach) | Public |
| | | | | | Affidavit | | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | AFFIDAVIT IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIALSUMMARY JUDGMENT AGAINST DEFENDANT PdC, LLC | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 Plaintiffs Motion for Partial Summary Judgment Against Defendant PdC, LLC | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 to Plaintiffs Motion for Partial Summary Judgment Against Defendant PdC, LLC | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 3 to Plaintiffs Motion for Partial Summary Judgment Against Defendant PdC, LLC | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 4 to Plaintiffs Motion for Partial Summary Judgment Against Defendant PdC, LLC | Protected |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 5 to Plaintiffs Motion for Partial Summary Judgment Against Defendant PdC, LLC | Protected |
| | | | | | | Exhibit 6 to Plaintiffs Motion for Partial Summary Judgment Against Defendant PdC, LLC | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Exhibit 7 to Plaintiffs Motion for Partial Summary Judgment Against Defendant PdC, LLC | |
| N/A (Details) | 02/09/2018 | Jennifer Bourn Torrington | Denver County - District | N/A | Order | PRETRIAL ORDER | Public |
| 20DAFA67504E5 | 01/29/2018 8:42 PM | Darrell Michael Daley | The Daley Law Firm LLC | Michael Roberts | Answer | Michael Roberts' Answer to Second Amended Complaint | Public |
| N/A (Details) | 01/11/2018 4:50 PM | Jennifer Bourn Torrington | Denver County - District | N/A | Order (Related Document) | Order Re: Motion to Suppress Second Amended Complaint | Public |
| C1183E581AFD5 | 01/10/2018 5:14 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion to Suppress (Related Document) | Motion to Suppress Second Amended Complaint | Public |
| | | | | | Proposed Order | (Proposed) Order Granting Motion to Suppress Second Amended Complaint | Public |
| 1DF9384B3D217 | 01/08/2018 5:10 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Complaint - Amended | Second Amended Complaint w/attach | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Second Amended Complaint | Protected |
| N/A (Details) | 01/05/2018 4:49 PM | Jennifer Bourn Torrington | Denver County - District | N/A | Order (Related Document) | Order re Plaintiff's Unopposed Motion for Extension of Time re Expert Disclosures | Public |
| N/A (Details) | 01/04/2018 1:50 PM | Jennifer Bourn Torrington | Denver County - District | N/A | Order (Related Document) | Order Re: Stipulation Regarding Plaintiff's Motion to Amend Complaint | Public |
| 7880458650A52 | 01/04/2018 10:27 AM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion | Plaintiff's Unopposed Motion for Extension of Time to Disclose Expert on Securities | Public |
| | | | | | Proposed Order (Related Document) | (Proposed) Order re Plaintiff's Unopposed Motion for Extension of Time re Expert Disclosures | Public |
| 49E7999B759E6 | 12/26/2017 11:51 AM | Matthew David Spohn | Norton Rose Fulbright US LLP | Timothy Flaherty, Carl Vertuca (more) | Stipulation (Related Document) | Stipulation Regarding Plaintiff's Motion to Amend Complaint (also filed on behalf of Plaintiff) | Public |
| 6243BB76A9BE3 | 12/22/2017 1:48 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Pdc Llc, Carl Vertuca (more) | Notice of Withdrawal | Notice of Withdrawal of Counsel | Public |
| 2856BB0E6B80F | 12/07/2017 3:32 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion (Related Document) | PLAINTIFF'S MOTION TO AMEND COMPLAINT TO ADD EQUITABLECLAIMS ENJOINING THE DISBURSEMENT OF PROCEEDS OF SALE OF INVESTMENT REAL PROPERTY AND FOR DECLARATORY JUDGMENT (w/attach) (Suppressed per 12.7.17 Protective Order) | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit 1 to PLAINTIFF'S MOTION TO AMEND COMPLAINT TO ADD EQUITABLE CLAIMS ENJOINING THE DISBURSEMENT OF PROCEEDS OF SALE OF INVESTMENT REAL PROPERTY AND FOR DECLARATORY JUDGMENT (Suppressed per 12.7.17 Protective Order) | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc (Related Document) | Exhibit 2 to PLAINTIFF'S MOTION TO AMEND COMPLAINT TO ADD EQUITABLE CLAIMS ENJOINING THE DISBURSEMENT OF PROCEEDS OF SALE OF INVESTMENT REAL PROPERTY AND FOR DECLARATORY JUDGMENT (Suppressed per 12.7.17 Order) | Suppressed |
| | | | | | Proposed Order (Related Document) | (Proposed) ORDER RE PLAINTIFFS MOTION TO AMEND COMPLAINT TO ADD EQUITABLE CLAIMS ENJOINING THE DISBURSEMENT OF PROCEEDS OF SALE OF INVESTMENT REAL PROPERTY AND FOR DECLARATORY JUDGMENT (Suppressed per 12.7.17 Protective Order) | Suppressed |
| N/A (Details) | 12/07/2017 2:20 PM | Jennifer Bourn Torrington | Denver County - District | N/A | Order (Related Document) | ORDER REGARDING UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE SECOND AMENDED COMPLAINT | Public |
| N/A (Details) | 12/07/2017 8:35 AM | Jennifer Bourn Torrington | Denver County - District | N/A | Order | Order Re: STIPULATED MOTION FOR ENTRY OF PROTECTIVE | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | *(Related Document)* | ORDER INCORPORATING THE PARTIES AMENDED CONFIDENTIALITY AGREEMENT | |
| F6A2E2444AEA4 | 12/06/2017 12:06 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion | Unopposed Motion for Extension of Time to File Second Amended Complaint | Public |
| | | | | | Proposed Order *(Related Document)* | (Proposed) ORDER REGARDING UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE SECOND AMENDED COMPLAINT | Public |
| 3955C3AA2FF37 | 12/06/2017 11:16 AM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion | Stipulated Motion for Entry of Protective Order Incorporating the Parties Confidentiality Agreement (w/attach) (also filed on behalf of Defendants) | Public |
| | | | | | Proposed Order *(Related Document)* | (Proposed) STIPULATED MOTION FOR ENTRY OF PROTECTIVE ORDER INCORPORATING THE PARTIES AMENDED CONFIDENTIALITY AGREEMENT | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Attachment A to Stipulated Motion for Entry of Protective Order Incorporating the Parties Confidentiality Agreement | Public |
| FC1AB62F2C248 | 12/04/2017 2:21 PM | Heather Joyce Hancz | The Daley Law Firm LLC | Michael Roberts | Filing Other | DEFENDANT MICHAEL ROBERTS JOINDER IN OTHER DEFENDANTS' DESIGNATION OF NON-PARTIES AT FAULT | Public |
| 1C40167AD851C | 12/04/2017 1:39 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Filing Other | DEFENDANTS' DESIGNATION OF NON-PARTIES AT FAULT | Public |
| AEAFAABD64A62 | 10/05/2017 12:49 PM | Darrell Michael Daley | The Daley Law Firm LLC | Michael Roberts | Notice of Change of Address | Notice of Change of Address | Public |
| N/A (Details) | 09/21/2017 1:48 PM | Jennifer Bourn Torrington | Denver County - District | N/A | Order | Order Vacating Case Management Order entered 9/20/17 | Public |
| N/A (Details) | 09/21/2017 12:00 AM | Jennifer Bourn Torrington | Denver County - District | N/A | Order - Case Management | Case Management Order | Public |
| N/A (Details) | 09/20/2017 12:00 AM | Jennifer Bourn Torrington | Denver County - District | N/A | Order - Case Management | Case Management Order | Public |
| 793AB8DF79F91 | 09/15/2017 4:34 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Notice | Notice of Jury Trial | Public |
| 3BD60D493E2F5 | 09/12/2017 2:10 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Proposed Order - Case Management | Proposed Case Management Order | Public |
| 39C5D34C9D5C6 | 09/08/2017 3:02 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Notice | Notice of Case Management Conference | Public |
| 38C7AC4AC75B8 | 09/07/2017 3:58 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Notice | Notice to Set Jury Trial | Public |
| 9CE78275BDDA | 09/01/2017 10:59 AM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Notice | Notice to Set Case Management Conference | Public |
| 45C18C5956B86 | 08/29/2017 1:14 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Timothy Kneen, Pdc Llc (more) | Notice of Change of Address | Notice of Change of Firm Address | Public |
| 74CEECEDED2A8 | 08/21/2017 5:32 PM | Darrell Michael Daley | Williams and Daley | Michael Roberts | Answer | Michael Roberts' Answer to Amended Complaint | Public |
| 6094F142347F7 | 08/21/2017 3:02 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Pdc Llc, Timothy Kneen (more) | Answer | Defendants' Answer To Plaintiff's Amended Complaint | Public |
| N/A (Details) | 08/11/2017 9:56 AM | Jennifer Bourn Torrington | Denver County - District | N/A | Order *(Related Document)* | Order Re: Defendants' Unopposed Motion For Extension Of Time To Answer Complaint | Public |
| N/A (Details) | 08/07/2017 3:19 PM | Jennifer Bourn Torrington | Denver County - District | N/A | Order *(Related Document)* | Order Re: Unopposed Motion of Defendant Michael Roberts For Extension of Time To Answer Complaint | Public |
| A2719D1534C51 | 08/07/2017 12:16 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Motion *(Related Document)* | Defendants' Unopposed Motion For Extension Of Time To Answer Complaint | Public |
| A930A48D598F3 | 08/04/2017 2:05 PM | Darrell Michael Daley | Williams and Daley | Michael Roberts | Motion *(Related Document)* | Unopposed Motion of Defendant Michael Roberts For Extension of Time to Answer Complaint | Public |
| | | | | | Proposed Order | [Proposed] Order Granting Defendant's Unopposed Motion for Extension of Time | Public |
| N/A (Details) | 07/24/2017 3:02 PM | Michael James Vallejos | Denver County - District | N/A | Order | Order Re: Defendants' Motion to Dismiss | Public |
| N/A | 07/24/2017 12:00 | N/A | N/A | N/A | Dismissed without Prejudice | N/A | |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | AM | | | | | | |
| N/A | 07/24/2017 12:00 AM | N/A | N/A | N/A | Reopen - Post Judgment | N/A | |
| N/A | 07/10/2017 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 9067B917F25D9 | 03/23/2017 10:31 AM | Matthew David Spohn | Norton Rose Fulbright US LLP | Timothy Flaherty, Timothy Kneen (more) | Reply | Defendants' Reply Brief in Support of Their Motion to Dismiss Plaintiff's Claims for Relief | Public |
| C27EB29E726A4 | 03/22/2017 4:37 PM | Darrell Michael Daley | Williams and Daley | Michael Roberts | Filing Other | Defendant Michael Roberts' Joinder in Other Defendants' Reply Brief in Support of Their Motion to Dismiss Plaintiff's Claims For Relief | Public |
| 7D52E90FF21EA | 03/15/2017 3:39 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Response - Motion to Dismiss<br><br>Exhibit - Attach to Pleading/Doc<br><br>Exhibit - Attach to Pleading/Doc | Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Claims for Relief (w/attach)<br><br>Exhibit A to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Claims for Relief<br><br>Exhibit B to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Claims for Relief | Public<br><br>Protected<br><br>Protected |
| 70E3EE7425EFA | 03/15/2017 3:29 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Notice<br><br>Exhibit - Attach to Pleading/Doc | NOTICE OF ERRATA REGARDING PLAINTIFF'S AMENDED COMPLAINT (w/attach)<br><br>Exhibit A to Notice of Errata Regarding Plaintiff's Amended Complaint | Public<br><br>Protected |
| F3301B187B802 | 02/22/2017 6:44 PM | Darrell Michael Daley | Williams and Daley | Michael Roberts | Motion to Dismiss | Defendant Michael Roberts' Joinder in Motion to Dismiss | Public |
| DCFBAD196EF4F | 02/22/2017 2:09 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Pdc Llc, Timothy Kneen (more) | Motion to Dismiss<br><br>Exhibit - Attach to Pleading/Doc<br><br>Exhibit - Attach to Pleading/Doc<br><br>Exhibit - Attach to Pleading/Doc | Defendants' Motion to Dismiss Plaintiff's Claims for Relief (Also filed on behalf of Defendant RM Funding LLC) w/attach<br><br>Exhibit 1 to Defendants' Motion to Dismiss Plaintiff's Claims for Relief<br><br>Exhibit 2 to Defendants' Motion to Dismiss Plaintiff's Claims for Relief<br><br>Exhibit 3 to Defendants' Motion to Dismiss Plaintiff's Claims for Relief | Public<br><br>Protected<br><br>Protected<br><br>Protected |
| N/A (Details) | 02/08/2017 10:28 AM | Michael James Vallejos | Denver County - District | N/A | Order (Related Document) | Order Re: Motion for Leave to File an Amended Complaint | Public |
| BC07DB327CE3D | 02/06/2017 10:39 AM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion<br><br>Complaint - Amended<br><br>Proposed Order (Related Document) | Unopposed Motion for Leave to File an Amended Complaint w/attach<br><br>Exhibit 1 to Unopposed Motion for Leave to File an Amended Complaint - Amended Complaint<br><br>Proposed Order Re: Motion for Leave to File an Amended Complaint | Public<br><br>Public<br><br>Public |
| N/A (Details) | 12/28/2016 10:59 AM | Michael James Vallejos | Denver County - District | N/A | Order (Related Document) | Order Regarding Motion to Lift Stay | Public |
| N/A | 12/28/2016 | N/A | N/A | N/A | Case Closed - Post Judgment | N/A | |
| 3EBE4A2BCB59D | 12/23/2016 2:17 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang | Motion<br><br>Proposed Order (Related Document) | Unopposed Motion to Lift Stay<br><br>Proposed Order Regarding Motion to Lift Stay | Public<br><br>Public |
| N/A | 12/22/2016 | N/A | N/A | N/A | Reopen - Post Judgment | N/A | |
| N/A (Details) | 10/28/2016 2:44 PM | Michael James Vallejos | Denver County - District | N/A | Order (Related Document) | ORDER REGARDING STIPULATION FOR DISMISSAL WITH PREJUDICE AS TO CLAIMS BROUGHT BY PLAINTIFFS BENJAMIN DAVID WOOD, THERESA SUE CASTELLANO, THE 2001 THEO CASTELLANO WOOD TRUST AND THE 2001 VICTORIA CASTELLANO WOOD TRUST | Public |
| N/A | 10/28/2016 12:00 AM | N/A | N/A | N/A | Dismissed with Prejudice | N/A | |
| C891277FF3F17 | 10/26/2016 9:30 AM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Benjamin David Wood, Theresa Sue Castellano (more) | Stipulation<br><br>Proposed Order | Stipulation for Dismissal with Prejudice as to Claims Brought by Plaintiffs Benjamin David Wood, Theresa Sue Castellano, the 2001 | Public<br><br>Public |

**MOVANTS' EXHIBIT 50**
**Page 61 of 66**

**Aple.Appx. 529**

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | Theo Castellano Wood Trust and the 2001 Victoria Castellano Wood Trust (also filed on behalf of Defendants) | |
| | | | | | | (Proposed) ORDER REGARDING STIPULATION FOR DISMISSAL WITH PREJUDICE AS TO CLAIMS BROUGHT BY PLAINTIFFS BENJAMIN DAVID WOOD, THERESA SUE CASTELLANO, THE 2001 THEO CASTELLANO WOOD TRUST AND THE 2001 VICTORIA CASTELLANO WOOD TRUST | |
| F1094AF2D9B5C | 05/27/2016 9:04 AM | Darrell Michael Daley | Williams and Daley | Michael Roberts | Notice of Change of Address | Notice of Change of Address and Firm Affiliation | Public |
| 9FCC1DAE90D27 | 05/25/2016 11:56 AM | Megan Maureen Farooqui | Faegre Drinker Biddle and Reath LLP | Michael Roberts | Notice of Withdrawal | Notice of Withdrawal of Counsel | Public |
| N/A (Details) | 10/22/2015 9:36 AM | Michael James Vallejos | Denver County - District | N/A | Order (Related Document) | Order: Proposed Order Granting Defendant Michael Roberts' Unopposed Motion to Set Time to Answer | Public |
| 4D5E1E0D52E13 | 09/14/2015 6:20 PM | Darrell Michael Daley | Faegre Drinker Biddle and Reath LLP | Michael Roberts | Motion | Defendant Michael Roberts' Unopposed Motion to Set Time to Answer | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order Granting Defendant Michael Roberts' Unopposed Motion to Set Time to Answer | Public |
| 2236C911880F0 | 09/09/2015 4:23 PM | Megan Maureen Farooqui | Faegre Drinker Biddle and Reath LLP | Michael Roberts | Entry of Appearance | Entry of Appearance of Megan M. Farooqui | Public |
| D3BDCC5319031 | 09/09/2015 3:41 PM | Darrell Michael Daley | Faegre Drinker Biddle and Reath LLP | Michael Roberts | Entry of Appearance | Entry of Appearance of Darrell M. Daley | Public |
| N/A (Details) | 09/08/2015 2:32 PM | Michael James Vallejos | Denver County - District | N/A | Order | ORDER COMPEL ARBITRATION | Public |
| N/A | 09/08/2015 12:00 AM | N/A | N/A | N/A | Case Closed | N/A | |
| 3EAABBED1B2A3 | 08/25/2015 3:01 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Theresa Sue Castellano, Richard Lang (more) | Return of Service | Affidavit of Service of Summons, Complaint, Cover Sheet by refusal on Michael Roberts on 8/24/15 | Public |
| 897E830D5AF1A | 08/07/2015 3:32 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | 2001 Victoria Castellano Wood Trust, Richard Lang (more) | Objection | Plaintiff's Objection to Defendants' Addendum to Reply in Support of Motion to Compel Arbitration and Stay Pending Arbitration | Public |
| 68BA98B2AF408 | 07/27/2015 3:03 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Timothy Kneen, Carl Vertuca (more) | Filing Other | Defendants' Addendum to Reply in Support of Motion to Compel Arbitration and Stay Pending Arbitration w/ attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibits Filed -- Exhibit 8 to Addendum to Reply | Public |
| N/A (Details) | 07/27/2015 10:31 AM | Michael James Vallejos | Denver County - District | N/A | Order (Related Document) | Order: Proposed Order re: Plaintiffs' Motion for Extension of Time to File Return of Service for Defendant Michael Roberts | Public |
| FF2F151361652 | 07/21/2015 4:43 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Reply | Defendants' Reply in Support of Motion to Compel Arbitration and Stay Pending Arbitration | Public |
| | | | | | Affidavit | Affidavit of Timothy Flaherty | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibits Filed - Exhibit 6, Part 1 of 3 to Reply | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibits Filed - Exhibit 6, Part 2 of 3 to Reply | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibits Filed - Exhibit 6, Part 3 of 3 to Reply | Public |
| | | | | | | Exhibits Filed - Exhibit 7 to Reply | |
| 8429D22DD4096 | 07/21/2015 3:02 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | 2001 Victoria Castellano Wood Trust, 2001 Theo Castellano Wood Trust (more) | Motion | Plaintiffs' Motion for Extension of Time to File Return of Service for Defendant Michael Roberts | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order re: Plaintiffs' Motion for Extension of Time to File Return of Service for Defendant Michael Roberts | Public |
| 3F7B261A5AC20 | 07/14/2015 4:39 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang, 2001 Theo Castellano Wood Trust (more) | Response | Plaintiff's Response to Defendants' Motion to Compel Arbitration and Stay Pending Arbitration | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A: Affidavit of Benjamin Wood | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1 to Benjamin Wood's Affidvit | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 to Benjamin Wood's Affidvit | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 3 to Benjamin Wood's Affidvit | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 4 to Benjamin Wood's Affidvit (part 1) | Public |
| | | | | | | Exhibit 4 to Benjamin Wood's Affidvit (part 2) | |
| | | | | | | Exhibit B: Affidavit of Richard Lang | |
| | | | | | | Exhibit 1 to Richard Lang's Affidvit | |
| N/A (Details) | 07/10/2015 8:48 AM | Michael James Vallejos | Denver County - District | N/A | Order (Related Document) | Order Granting Stipulation Regarding Defendants' Expedited Motion to Stay Proceedings Pending Resolution of Motion to Compel Arbitration | Public |
| 64A15DCB1A014 | 07/08/2015 5:29 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang, Benjamin David Wood (more) | Stipulation | Stipulation Regarding Defendants' Expedited Motion to Stay Proceedings Pending Resolution of Motion to Compel Arbitration (also filed on behalf of defs, Timothy Flaherty, Timothy Kneen, Carl Vertuca, PdC LLC) | Public |
| | | | | | Proposed Order (Related Document) | Proposed Order Re: Stipulation Regarding Defendants' Expedited Motion to Stay Proceedings Pending Resolution of Motion to Compel Arbitration | Public |
| B24F015E807BA | 07/02/2015 3:33 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Benjamin David Wood, 2001 Victoria Castellano Wood Trust (more) | Response | Plaintiff's Response to Defendants' Expedited Motion to Stay Proceedings Pending Resolution of Motion to Compel Arbitration | Public |
| 30237D2672B7A | 06/25/2015 10:30 AM | Michael David Drews | Campbell Killin Brittan and Ray LLC | Benjamin David Wood, Theresa Sue Castellano (more) | Entry of Appearance | Notice of Entry of Appearance | Public |
| N/A (Details) | 06/25/2015 10:05 AM | Michael James Vallejos | Denver County - District | N/A | Order (Related Document) | ORDER GRANTING DEFENDANTS UNOPPOSED MOTION TO EXPEDITE MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF MOTION TO COMPEL ARBITRATION | Public |
| EBB2D4889E616 | 06/23/2015 4:56 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Pdc Llc, Timothy Kneen (more) | Answer | Answer to Complaint | Public |
| 90E16C9913F4E | 06/23/2015 4:47 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Flaherty (more) | Motion to Dismiss | Defendants' Motion to Dismiss Plaintiffs' Claims for Relief | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1, Part 1 - Castellano Wood PPM (suppressed per CJD 05-01, act num) | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1, Part 2 | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1, Part 3 | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1, Part 4 | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 - Lang PPM | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 3 - Subscription Agreement | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 4, Part 1 - Operating Agreement | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 4, Part 2 | Public |
| | | | | | Proposed Order | Exhibit 4, Part 3 | Public |
| | | | | | | Exhibit 5 - Loan Agreement | |
| | | | | | | [Proposed] Order | |
| FA08C59F7E3AA | 06/23/2015 4:29 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Timothy Kneen, Carl Vertuca (more) | Motion | Unopposed Motion to Expedite Motion to Stay Proceedings Pending Resolution of Motion to Compel Arbitration | Public |
| | | | | | Proposed Order (Related Document) | [Proposed] ORDER GRANTING DEFENDANTS UNOPPOSED MOTION TO EXPEDITE MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF MOTION TO COMPEL ARBITRATION | Public |
| 455C34F300CD5 | 06/23/2015 4:21 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Carl Vertuca, Timothy Kneen (more) | Motion | Defendants' Expedited Motion to Stay Proceedings Pending Resolution of Motion to Compel Arbitration | Public |
| | | | | | Proposed Order | [Proposed] ORDER GRANTING DEFENDANTS EXPEDITED | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | | MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF MOTION TO COMPEL ARBITRATION | |
| 4D90D140BBAE0 | 06/23/2015 3:41 PM | Matthew David Spohn | Norton Rose Fulbright US LLP | Timothy Flaherty, Carl Vertuca (more) | Motion to Compel | Defendants' Motion to Compel Arbitration and Stay Pending Arbitration | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1, part 1 - Castellano Wood PPM (suppressed per CJD 05-01, act num) | Suppressed |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1, part 2 | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1, part 3 | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 1, part 4 | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 2 - Lang PPM | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 3 - Subscription Agreement | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 4, part 1 - Funding Operating Agreement | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 4, part 2 | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit 4, part 3 | |
| | | | | | Proposed Order | Exhibit 5 - Loan Agreement | |
| | | | | | | ]PROPOSED] ORDER GRANTING DEFENDANTS MOTION TO COMPEL ARBITRATION AND STAY PENDING ARBITRATION | |
| N/A (Details) | 06/16/2015 10:47 AM | Michael James Vallejos | Denver County - District | N/A | Order (Related Document) | Order: ]Proposed] Order Granting Unopposed Motion to Establish Common Date for Defendants' Responses to Complaint | Public |
| B3D4D0C6D953F | 06/08/2015 4:20 PM | Matthew David Spohn, William Leone Esq. | Norton Rose Fulbright US LLP | Timothy Flaherty, Carl Vertuca (more) | Entry of Appearance | Entry of Appearance - William Leone | Public |
| | | | | | Entry of Appearance | Entry of Appearance - Matthew David Spohn | Public |
| | | | | | Motion | Unopposed Motion to Establish Common Date for Defendants' Responses to Complaint | Public |
| | | | | | Proposed Order (Related Document) | ]Proposed] Order Granting Unopposed Motion to Establish Common Date for Defendants' Responses to Complaint | Public |
| 71C7F83F9C223 | 06/08/2015 1:51 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Richard Lang, Benjamin David Wood (more) | Waiver of Service | Waiver and Acceptance of Service - Service for Summons, Complaint, Cover Sheet, and Disclosures waived by Timothy Flaherty on 6-2-15. | Public |
| | | | | | Waiver of Service | Waiver and Acceptance of Service - Service for Summons, Complaint, Cover Sheet, and Disclosures waived by Carl Vertuca on 6-1-15. | Public |
| | | | | | Waiver of Service | Waiver and Acceptance of Service - Service for Summons, Complaint, Cover Sheet, and Disclosures waived by Timothy Keen on 5-28-15. | Public |
| | | | | | Return of Service | Return of Service for PdC, LLC - Summons, Complaint, Cover Sheet, and Disclosures delivered to John Snow, Registered Agent to PDC, LLC, on 5-29-15. | Public |
| N/A (Details) | 05/27/2015 12:00 AM | Michael James Vallejos | Denver County - District | N/A | Order | Delay Reduction Order | Public |
| C34B0E46110A8 | 05/22/2015 2:23 PM | Phillip A Parrott Esq. | Campbell Killin Brittan and Ray LLC | Theresa Sue Castellano, The 2001 Theo Castellano Wood Trust (more) | Complaint w/Jury Demand | Complaint | Public |
| | | | | | Civil Case Cover Sheet | District Court Civil Case Cover Sheet | Public |
| | | | | | Summons | Summons | Public |
| | | | | | Disclosure Certificate | PLAINTIFFS CAPP RULE 3.1 INITIAL DISCLOSURES | Public |

## Party Information

| Party Name | Party Type | Party Status | Attorney Name |
|---|---|---|---|
| 2001 Theo Castellano Wood Trust | Plaintiff | Dismissed | MICHAEL DAVID DREWS (TYSON MENDES) PHILLIP A PARROTT (Campbell Killin Brittan and Ray LLC) |
| 2001 Victoria Castellano Wood Trust | Plaintiff | Dismissed | MICHAEL DAVID DREWS (TYSON MENDES) PHILLIP A PARROTT (Campbell Killin Brittan and Ray LLC) |
| Benjamin David Wood | Plaintiff | Dismissed | MICHAEL DAVID DREWS (TYSON MENDES) PHILLIP A PARROTT |

| Party Name | Party Type | Party Status | Attorney Name |
|---|---|---|---|
| | | | Ray LLC) |
| Carl Vertuca | Defendant | Active | WILLIAM JOSEPH LEONE (Norton Rose Fulbright US LLP) |
| Ciro Properties Llc | Non-Party | Inactive | N/A |
| Ciro Propt Llc | Plaintiff | Active | JACQUELINE ELIZABETH MEYER HILL (Podoll and Podoll PC) RICHARD PODOLL (Podoll and Podoll PC) ROBERT ALAN KITSMILLER (Podoll and Podoll PC) |
| Crystal Smittkamp | Intervenor | Dismissed | JOSEPH ANDREW AUSMUS (AUSMUS LAW FIRM PC) |
| Harvey Sender | Other Interested Party | Active | BRENTON L GRAGG (Allen Vellone Wolf Helfrich and Factor P C) MICHAEL THOMAS GILBERT (Allen Vellone Wolf Helfrich and Factor P C) |
| Magdalena Ania Roberts | Other Interested Party | Active | JACQUELINE ELIZABETH MEYER HILL (Podoll and Podoll PC) |
| Michael J Roberts Llc | 3rd Party Defendant | Active | N/A |
| Michael J Roberts, JR | Intervenor | Dismissed | JOSEPH ANDREW AUSMUS (AUSMUS LAW FIRM PC) |
| Michael Joseph Roberts, SR | Defendant | Active | CORRIE ELIZABETH CALER (18th Judicial District Attorneys Office) JACQUELINE ELIZABETH MEYER HILL (Podoll and Podoll PC) JACQUELINE ELIZABETH MEYER HILL (Podoll and Podoll PC) RICHARD PODOLL (Podoll and Podoll PC) RICHARD PODOLL (Podoll and Podoll PC) ROBERT ALAN KITSMILLER (Podoll and Podoll PC) ROBERT ALAN KITSMILLER (Podoll and Podoll PC) ROBERT PODOLL (Podoll and Podoll PC) ROBERT PODOLL (Podoll and Podoll PC) THOMAS R MATTSON (Thomas Mattson Law) |
| Michael Roberts | Defendant | Active | OTTO K HILBERT (Hilbert Law Firm) |
| Party Suppressed | Impartial | Active | N/A |
| Pdc Llc | Defendant | Active | WILLIAM JOSEPH LEONE (Norton Rose Fulbright US LLP) |
| Rcc | AKA | Active | N/A |
| Richard Lang | Plaintiff | Active | MARGARET REIDY PFLUEGER (Campbell Killin Brittan and Ray LLC) PHILLIP A PARROTT (Campbell Killin Brittan and Ray LLC) |
| Riviera Country Club S De Rl De Cv | 3rd Party Plaintiff | Active | WILLIAM JOSEPH LEONE (Norton Rose Fulbright US LLP) |
| Rm Funding Llc | Defendant | Dismissed | MATTHEW DAVID SPOHN MICHAEL KEVIN CROSS WILLIAM JOSEPH LEONE (Norton Rose Fulbright US LLP) |
| Sandstone Ventures Llc | 3rd Party Defendant | Active | THOMAS R MATTSON (Thomas Mattson Law) |
| Theresa Sue Castellano | Plaintiff | Dismissed | MICHAEL DAVID DREWS (TYSON MENDES) PHILLIP A PARROTT (Campbell Killin Brittan and Ray LLC) |
| Timothy Flaherty | Defendant | Active | WILLIAM JOSEPH LEONE (Norton Rose Fulbright US LLP) |
| Timothy Kneen | Defendant | Active | WILLIAM JOSEPH LEONE (Norton Rose Fulbright US LLP) |
| Ubs Bank Usa | Non-Party | Active | JOHN ANDREW CHANIN (Foster Graham Milstein & Calisher LLP) |
| Ubs Financial Services Inc | Non-Party | Active | JOHN ANDREW CHANIN (Foster Graham Milstein & Calisher LLP) |

## Final Judgments

| Judgment Date | Judicial Officer | Judgment Type | Status | Creditor(s) | Debtor(s) | Date Entered | Fee Type | Amount |
|---|---|---|---|---|---|---|---|---|
| 01/27/2023 | Marie Avery Moses | Judgment Entered | UNSATISFIED | Timothy Flaherty, Timothy Kneen, Carl Vertuca, Riviera Country Club S De Rl De Cv, Rcc | Michael Joseph Roberts Sr. | 01/27/2023 | PRINCIPAL | $1691760.00 |
| | | | | | | 01/27/2023 | COURT COSTS | $0.00 |
| | | | | | | 01/27/2023 | ATTORNEY FEES | $0.00 |
| | | | | | | 01/27/2023 | INTEREST | $0.00 |
| | | | | | | | Total | $1691760.00 |
| 06/23/2022 | Marie Avery Moses | Judgment Entered | UNSATISFIED | Timothy Flaherty, Timothy Kneen, Carl Vertuca, Pdc Llc | Michael Roberts | 06/23/2022 | PRINCIPAL | $10456162.00 |
| | | | | | | 06/23/2022 | COURT COSTS | $0.00 |
| | | | | | | 06/23/2022 | ATTORNEY FEES | $0.00 |
| | | | | | | 06/23/2022 | INTEREST | $5168824.37 |
| | | | | | | 06/23/2022 | OTHER CHARGES | $5500000.00 |

| Judgment Date | Judicial Officer | Judgment Type | Status | Creditor(s) | Debtor(s) | Date Entered | Fee Type | Amount |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Total | $21124986.37 |
| 11/13/2020 | Eric Martin Johnson | Judgment Entered | UNSATISFIED | Timothy Flaherty, Timothy Kneen, Carl Vertuca, Pdc Llc, Riviera Country Club S De Rl De Cv, Rcc | Michael Joseph Roberts Sr. | 11/13/2020 | PRINCIPAL | $127000.00 |
| | | | | | | 11/16/2020 | ATTORNEY FEES | $0.00 |
| | | | | | | 11/16/2020 | INTEREST | $0.00 |
| | | | | | | 11/13/2020 | PARTIAL SATISFACTION | ($2000.00) |
| | | | | | | | Total | $125000.00 |
| 10/20/2020 | Eric Martin Johnson | Judgment Entered | UNSATISFIED | Timothy Flaherty, Timothy Kneen, Carl Vertuca, Pdc Llc, Riviera Country Club S De Rl De Cv, Rcc | Michael Roberts, Michael J Roberts Llc, Michael Joseph Roberts Sr. | 10/20/2020 | PRINCIPAL | $0.00 |
| | | | | | | 10/20/2020 | COURT COSTS | $0.00 |
| | | | | | | 10/20/2020 | ATTORNEY FEES | $3948.30 |
| | | | | | | 10/20/2020 | INTEREST | $0.00 |
| | | | | | | | Total | $3948.30 |
| 07/09/2020 | Eric Martin Johnson | Judgment Entered | UNSATISFIED | Richard Lang, Timothy Flaherty, Timothy Kneen, Carl Vertuca, Pdc Llc, Riviera Country Club S De Rl De Cv, Rcc, Sandstone Ventures Llc | Michael Joseph Roberts Sr. | 07/09/2020 | PRINCIPAL | $186000.00 |
| | | | | | | 07/09/2020 | COURT COSTS | $0.00 |
| | | | | | | 07/09/2020 | ATTORNEY FEES | $0.00 |
| | | | | | | 07/09/2020 | INTEREST | $0.00 |
| | | | | | | | Total | $186000.00 |
| 06/23/2020 | Eric Martin Johnson | Judgment Entered | UNSATISFIED | Timothy Flaherty, Timothy Kneen, Carl Vertuca, Pdc Llc | Michael Joseph Roberts Sr. | 06/26/2020 | PRINCIPAL | $0.00 |
| | | | | | | 06/23/2020 | COURT COSTS | $1820.48 |
| | | | | | | 06/23/2020 | ATTORNEY FEES | $103155.15 |
| | | | | | | 06/26/2020 | INTEREST | $0.00 |
| | | | | | | | Total | $104975.63 |

**MOVANTS' EXHIBIT 50**
**Page 66 of 66**

Aple.Appx. 534



**Brownstein Hyatt Farber Schreck, LLP**
303.223.1100 main
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202

## EXPERT REPORT OF
## STANLEY L. GARNETT

### I. Introduction

In this expert report, I render opinions regarding the reasonableness of attorneys' fees assessed by Norton Rose Fulbright US LLP ("Norton Rose Fulbright") in their representation of Claimants Timothy Flaherty; Timothy Kneen; Carl Vertuca; PdC, LLC; and Riviera Country Club S. de R.L. de C.V. ("Claimants"), in various matters involving Michael Joseph Roberts, Sr. Those matters include litigation in Denver District Court; United States Bankruptcy Court, District of Colorado; and assisting local counsel with various proceedings in Mexico.

### II. Summary of Expert Qualifications

I am an attorney and shareholder at Brownstein Hyatt Farber Schreck, LLP, a law firm of which I have been a member for approximately 29 years, where I previously served as the chair of the litigation practice. From approximately 2009–2018, I left private practice to serve as the elected District Attorney in the 20th Judicial District of Colorado. I have been licensed to practice law in Colorado since 1982. I have also been admitted for many years to practice in the U.S. District Court, District of Colorado, U.S. District Court, Southern District of Florida, U.S. Court of Appeals, Tenth Circuit and Eleventh Circuit, U.S. Supreme Court, U.S. Bankruptcy Court, District of Columbia, and the U.S. District Court, District of Columbia. My biographical data and a list of recent publications and expert witness testimony are attached hereto as Exhibits A and B, respectively. A copy of the engagement letter as well as an itemization of the fees incurred is attached hereto as Exhibit C.

In my nearly 40 years of practice, I have been responsible for providing legal advice and acted as counsel of record in numerous litigation matters involving corporations, limited liability companies, partnerships, and other business entities. I am familiar with billing practices and the market rate for attorneys of varying levels in the Denver area, and in my own practice I oversee the billing of matters for which I am the billing attorney. I have been an expert witness in multiple cases concerning the reasonableness of attorneys' fees and costs.

### III. Expert Opinions

In this matter, I have been asked to review the underlying documents in the cases at issue and the invoices of the law firm Norton Rose Fulbright. My analysis is in

**Aple.Appx. 535**

response to the cases below, as well as conversations I have had with the two primary attorneys involved, William Leone and Eliot Turner. I have included portions of relevant analysis below, however I will not restate or attempt to characterize the findings of the various lawsuits, as I do not believe them to be the real issue here.

In forming my opinions, I have considered and relied upon my specialized personal knowledge and experience developed throughout my legal career, in which I have represented clients in a variety of legal disputes, including but not limited to, corporate governance, limited liability company management and member disputes, and complex commercial litigation between companies. I am familiar with the standards of care generally set forth in corporate operating agreements, Colorado common law, and the Colorado Limited Liability Company Act, as well as the Colorado Rules of Professional Conduct as it relates to attorneys' fees.

I also reviewed relevant filings in Claimants' litigation (set forth below), information related to the hourly rates charged by attorneys at my firm, prior expert reports in previous matters where Brownstein's rates were challenged, and selected court decisions that discuss appropriate hourly attorney rates in Colorado.

With respect to the relevant filings, I considered:

- The district court's Order Regarding August 6, 2021 Hearing on Contempt;
- The district court's Order Regarding April 20 & 22, 2022 Hearing on Damages;
- Claimants' Application for Attorneys' Fees, filed July 22, 2022 (including the declarations of William J. Leone, Eliot Turner, Benjamin C. Rosen, and Brent R. Cohen, and all the supporting exhibits);
- Podoll & Podoll, P.C.'s Response to Claimants' Application for Attorneys' Fees and Request for a Hearing, filed August 26, 2022 (including Robert Kitsmiller's affidavit)
- Claimants' Reply in Support of Their Application for Attorneys' Fees, filed September 2, 2022; and
- The Order Converting Chapter 11 Case to Chapter 7 (from the United States Bankruptcy Court, District of Colorado, entered September 23, 2022.

## 1.   Norton Rose Fulbright's Fees are Appropriate and Reasonable

The underlying litigation is extensive, spanning multiple years, countries, and courts. The history is thoroughly set forth in the District Court's order,[1] and I will not repeat it here. I do find it necessary, however, to highlight broadly the fact that Mr. Roberts' conduct ("legal chaos," per the District Court) is a major cause—if not the

---

[1] Order Regarding April 20 & 22, 2022 Hearing on Damages.

2

MOVANTS' EXHIBIT 65
Page 2 of 18 **Aple.Appx. 536**

principal cause—of the length and complexity of this litigation, which directly affects the fees Norton Rose Fulbright charged its clients.

Determining the appropriateness of attorneys' fees encompasses both whether the hourly rate billed for the work performed is reasonable and whether the work performed, given the length of the case, is reasonable. It is my opinion that the rates charged were within the market rate for Denver law firms of similar size and for attorneys of similar experience and/or background. It is further my opinion that the work performed, given the length of the case, is reasonable.

### a. Legal Standard

In deciding whether attorneys' fees are reasonable, Colorado courts consider Rule 1.5 of the Colorado Rules of Professional Conduct:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

### b. Application

(1) *The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly justify Norton Rose Fulbright's fees and time expended.*

Norton Rose Fulbright has represented Claimants in this case since 2015, but my review is limited to those fees for which Claimants are seeking recovery, which they did not begin to incur until 2018. In its representation, Norton Rose Fulbright has, among other things: drafted complaints, performed discovery, drafted and defended motions

3

necessary to the case, prepared for and attended a three-day trial, prepared for and attended multiple court hearings, prepared for mediation, prepared for arbitration, and assisted bankruptcy counsel over the course of four years. Norton Rose Fulbright has litigated this case in Colorado and assisted local counsel in Mexico.

The main question involved in this litigation required Norton Rose Fulbright to navigate Colorado and Mexico law related to breach of fiduciary duty, which presented novel and difficult issues.

The work required to see a case from start to finish, for any attorney, is extensive, and that is especially the case here, where Norton Rose Fulbright handled sophisticated issues in multiple countries against a particularly litigious opponent.

> (2) *By representing Claimants in the litigation Norton Rose Fulbright was not necessarily precluded from representing other potential clients.*

Norton Rose Fulbright has spent at least 3,387 hours on this litigation. Of those hours, Bill Leone billed for 953 hours, Eliot Turner billed for 1,376 hours, Michael Cross billed for 447 hours, and Alexis Wilpon billed for 390 hours.

None of the hours above, particularly over a period of years, would have necessarily prevented the Norton Rose Fulbright attorneys from working for other clients. Nor is there evidence to suggest that it was apparent to Claimants that their attorneys would have been precluded from other employment. Several of the attorneys, however, spent a significant amount of time dedicated to this case, which did preclude them from working on other matters.

> (3) *Norton Rose Fulbright's fees are comparable to those customarily charged in the Denver Metro Area for similar legal services.*

First, the District Court has previously found that the attorneys' rates "were reasonable in all respects based on the sophistication of counsel, number of years in practice, and rates charged in the community." *See* June 23, 2020 Order at 6.

Second, even if the Court had not already found Norton Rose Fulbright's rates to be reasonable, other Colorado courts have also found that rates similar to the ones at issue here were reasonable. *See, e.g., Merrill v. Contract Freighters, Inc.*, 2021 U.S. Dist. LEXIS 159469 at *9 (D. Colo. Aug. 4, 2021) ("The [National Law Journal] Survey indicates, as of January 1, 2019, equity partners in the Mountain region in the ninth decile of survey respondents charged $650 as their billable hourly rate; the upper quartile of equity partners at firms of over 150 lawyers bills $685 per hour, and the ninth decile bills $775; and those with eight to ten years of experience bill $500 in the ninth decile, while those with four to five years of experience in the ninth decile bill $330 and hour."); *see also First Mercury Ins. Co. v. Wonderland Homes*, 2021 U.S. Dist. LEXIS 136485 at 13–14 (D. Colo. July 22, 2021) (noting that "the NLJ Survey is more reflective of hourly

**MOVANTS' EXHIBIT 65**
Page 4 of 18

**Aple.Appx. 538**

rates for large Denver law firms" and that "the NLJ Survey data, decisions from this District, and [counsel's] combined over 20 years of law practice and judicial experience" justify attorney hourly rates of $700, $595, $545, and $365 when accounting for the skill levels represented).

More recently, Colorado courts have found partners' rates within the $475–$885 range to be reasonable. *See, e.g., Miller v. Bahakel Commc'ns, Ltd.*, 2022 WL 1469546 at *2 (D. Colo. May 9, 2022) (discussing *BIAX v. NVIDIA*, 2013 WL 4051908 at *6 (D. Colo. Aug. 12, 2013), which also notes the reasonableness of associates' rates within the $170–$540 range).

Finally, my own firm's Colorado rates (for 2022) are as follows:

- For partners, from $485 to $1,375 per hour;
- For associates, from $365 to $455 per hour.

The rates charged by Norton Rose Fulbright in this litigation have ranged as follows:

- For partners, from $545 to $850 per hour;
- For associates, from $330 to $575 per hour.

Such rates are reasonable because they are well within the range customarily charged in Colorado for similar legal services.

(4) *The amount involved and the results obtained justify Norton Rose Fulbright's invoices.*

Claimants have obtained a judgment against Roberts for $21,124,986.40. They have been successful at every stage of litigation, resulting in a preliminary injunction, a finding of contempt, a finding that Roberts breached his fiduciary duties, a prejudgment writ of attachment, and a default judgment. Claimants have successfully defeated numerous motions that Roberts filed and have also defeated Roberts's attempts to appeal the court's contempt order.

Given that Norton Rose Fulbright's attorneys' fees in this case are a small fraction of the staggering judgment against Roberts, and the fact that the attorneys have consistently obtained favorable results, the amount of attorneys' fees requested is reasonable.

(5) *Roberts's own conduct imposed unique limitations on the litigation.*

Over half of the cost of this litigation arose after Roberts hired Podoll & Podoll, P.C. in 2020. Roberts and his attorneys' aggressive litigation tactics are primarily responsible for the various circumstances that required Claimants to spend significant, additional time on this litigation, thereby resulting in an increase of fees ultimately charged.

5

(6)    *Norton Rose Fulbright has represented Claimants since 2015.*

Norton Rose Fulbright has been involved in this litigation since 2015, nearly eight years' worth of work since Claimants began pursuing claims against Roberts.

(7)    *The Norton Rose Fulbright attorneys are experienced, reputable, and sophisticated.*

Bill Leone is a partner at Norton Rose Fulbright in both their Denver and New York offices. In Denver, he leads the firm's litigation practice. For four years, he also led the White Collar and Government Investigations and litigation practices in New York. He graduated from the University of Colorado School of Law in 1981. He served as the U.S. Attorney for the District of Colorado from 2004 to 2006. He focuses his practice on business litigation and has experience litigating fiduciary duty matters.

Eliot Turner was a senior associate at Norton Rose Fulbright when this litigation began; he is now a partner in the firm's D.C. and Houston offices. He graduated from the University of Texas School of Law in 2008. He clerked for two federal judges after law school: Judge Lamberth (D.D.C.) and Judge Kravitch (11th Cir.). Mr. Turner specializes in business and antitrust litigation, and he also has experience litigating fiduciary duty matters.

Michael Cross, Alex Cummings, and Alexis Wilpon have all worked at Norton Rose Fulbright as associates. Mr. Cross, who no longer works for the firm, graduated from Cornell Law School in 2009. Ms. Cummings is an associate in the Houston office; she graduated from the University of Texas School of Law in 2017. Ms. Wilpon is an associate in the firm's New York office; she graduated from Georgetown University Law Center in 2017.

Each of Claimants' attorneys are experienced, reputable, and sophisticated, all of which justify their fees.

(8)    *While Norton Rose Fulbright's fees increased over time, they were not contingent, and Norton Rose Fulbright regularly discounted their fees.*

Norton Rose Fulbright's rates in this litigation ranged from \$330 to \$850 per hour, depending on the experience level of the attorneys. These rates were fixed for each year of the litigation and generally increased incrementally each year in accordance with local custom and market rates. Norton Rose Fulbright also regularly discounted the fees and costs they charged to Claimants associated with this protracted litigation.

### c. Conclusion

At least seven of the eight factors discussed above weigh in favor of finding Norton Rose Fulbright's fees reasonable. In my opinion, Norton Rose Fulbright charged Claimants reasonable rates for the services it provided. Further, Norton Rose Fulbright

MOVANTS' EXHIBIT 65
Page 6 of 18

Aple.Appx. 540

spent a reasonable amount of time representing Claimants in the litigation. For the past four years, Norton Rose Fulbright has helped Claimants safeguard their interests in the property that Roberts sought to illegally control. During this time, Norton Rose Fulbright has regularly discounted its services, and Claimants have paid their bills without raising any concerns. Norton Rose Fulbright's fees are reasonable, and the time Norton Rose Fulbright spent representing Claimants in this litigation is reasonable.

I understand that the litigation continues. Upon completion of those matters, I may supplement my report. Further, to the extent any other attorneys rebut this report or supplement their reports, I may respond or supplement my report.

Stanley L. Garnett

7

**Aple.Appx. 541**

## EXHIBIT A

Stanley L. Garnett, Esq.
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, Colorado 80202
303.223.1100
sgarnett@bhfs.com

### Education

J.D., 1982, University of Colorado Law School
B.A., 1978, with distinction, University of Colorado, Phi Beta Kappa

### Background

Deputy District Attorney, District Attorney's Office, 2nd Judicial District 1982-1986
Associate, Brownstein Hyatt Farber Schreck, LLP 1986-1989
Shareholder, Brownstein Hyatt Farber Schreck, LLP 1989-2009; 2018-present; Litigation Department
Chair 1991-1999; Compensation Committee from 1991-2005
District Attorney, 20th Judicial District 2009-2018

### Admissions

Colorado
U.S. District Court, District of Colorado
U.S. District Court, Southern District of Florida
U.S. Court of Appeals, Tenth Circuit
U.S. Court of Appeals, Eleventh Circuit
U.S. Supreme Court
U.S. Bankruptcy Court, District of Columbia
U.S. District Court, District of Columbia

### Recognition

Colorado Super Lawyers, 2006-2008, 2020
Law Week Colorado, Barrister's Best "Best Criminal Defense - White Collar," 2018
Civil Rights Award, Anti-Defamation League Mountain States Region, 2018
Alumni Award for Distinguished Achievement, University of Colorado School of Law, 2005
International Academy of Trial Lawyers Inductee, April 2004
Outstanding Alumnus Award, University of Colorado Leadership Institute, 2003

### Membership

American Bar Association
Colorado Bar Association
Denver Bar Association
International Academy of Trial Lawyers
Former President of Colorado District Attorneys Council
Former Member of Board of National District Attorneys Association

8

## EXHIBIT B

1. List of Publications Authored by Mr. Garnett within the Preceding Ten Years

Mr. Garnett has published many guest opinions and articles setting forth ideas for criminal justice reform, including repeal of the death penalty, modification of mandatory sentences, juvenile reform and strategies for managing the law enforcement consequences of legalization of marijuana, some of which are listed below. He has not written any scholarly articles or journals about issues related to his opinions in this report. Mr. Garnett reserves the right to supplement this list.

- DOJ Introduces a Mix of 'Carrots and Sticks' to Combat Corporate Crime, *Brownstein Client Alert*, Sept. 20, 2022
- What's Old Is New Again: Misdemeanor Enforcement of Colorado's Non-Compete Statute, *Brownstein Client Alert*, Jan. 27, 2022
- State Lawmakers Introduce Colorado False Claims Act, *Brownstein Client Alert*, Jan. 24, 2022
- The Department of Justice Surges Funds to Target Corporate Officers, *Brownstein Client Alert*, October 29, 2021
- Health Care Fraud Cases Are Rising: 2020 Was a Record Year, *Brownstein Client Alert*, July 02, 2021
- State AG Investigations: The Impact of a New Federal Landscape, *Brownstein Podcast Series*, April 9, 2021
- The Anti-Money Laundering Act of 2020: Broader Federal Authority and New Compliance Challenges, Co-author, *Washington Legal Foundation,* April 8, 2021
- Federal Coronavirus Spending and the False Claims Act: A Gathering Storm, *Brownstein Client Alert*, April 10, 2020
- Is Cannabis an Essential Business During Coronavirus Closures?, *Brownstein Client Alert*, March 18, 2020
- Justice Department Updates Guidance On Evaluation Of Corporate Compliance Programs, Co-author, *WLF Legal Pulse*, May 24, 2019

2. Listing of Other Cases in which Mr. Garnett has Testified as an Expert at Trial or by Deposition within the Preceding Four Years

Mr. Garnett has been retained as an expert on the reasonableness of attorneys' fees and costs in several cases, but has not had to testify as an expert at trial or by deposition within the preceding four years.

**MOVANTS' EXHIBIT 65**
**Page 9 of 18**

**Aple.Appx. 543**

EXHIBIT C

# Bro**//**nstein 

**Brownstein Hyatt Farber Schreck, LLP**
303.223.1100
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432

December 22, 2022

Jason R. Dunn
Shareholder
303.223.1171 tel
jdunn@bhfs.com

Bill Leone, Esq.
Norton Rose Fulbright US LLP
1225 Seventeenth Street, Suite 3050
Denver, Colorado 80202

**RE:    Engagement Agreement for Legal Services**

Dear Bill:

Thank you for selecting Brownstein Hyatt Farber Schreck, LLP (the "Firm") to provide expert witness services regarding legal fees in *Lang v. Flaherty* et al., Case No. 2015CV31828 pending in the District Court for the City and County of Denver. We are very pleased and privileged to work with you, and we appreciate the opportunity to work with you. The purpose of this engagement letter (the "Agreement") and the attached Standard Terms and Conditions which are incorporated into this letter by this reference (the "Terms") is to outline the nature and scope of the engagement and our respective responsibilities and expectations.

The Client: The Firm is being retained by Norton Rose Fulbright US, LLP, but not its principals, corporate parents or other owners, subsidiaries, or other affiliates on behalf of its clients Timothy Flaherty, Timothy Kneen, Carl Vertuca, PdC, LLC and Riviera Country Club S. de. R.L. de C.V.

Scope of Engagement: This Agreement and the Terms apply to the engagement described above . Services rendered to you prior to your signing this Agreement are subject to the provisions of this Agreement and the Terms.

Staffing, Fees, Costs and Billing Arrangements: In the course of our engagement, it is anticipated that Stan Garnett will supervise and coordinate most of the work on this matter, with the assistance of any attorneys, paralegals, law clerks, legal assistants, and other staff working with him. His hourly rate is $915.00. He can be reached directly at 303.223.1286 and via email at sgarnett@bhfs.com.

Our fees are based primarily on the actual amount of time spent by our attorneys and other professionals performing services for you, including attending, conducting or making, as applicable, telephone calls, conferences, court appearances, research and investigations, traveling, and preparing letters, pleadings, briefs, agreements, and other documents. We will bill for our services at our applicable hourly billing rates in effect at the time we render the services, which are available upon

**Aple.Appx. 544**

**EXHIBIT C**

Norton Rose Fulbright US LLP
December 22, 2022
Page 2

request. In the course of providing services to you, it may be necessary for us to incur certain costs. You agree to reimburse us in accordance with the Terms for all reasonable costs that we actually incur and for the Firm's administrative fee. For more information on billing, including third party and other costs for which you will be billed, rate changes and other factors affecting fees and other charges, please refer to the Terms.

Billing Period and Payments: We will bill you on a monthly basis or such other periodic basis as we may determine. Except as otherwise set forth herein, you agree to make payment of all outstanding fees and costs within 30 days of your receipt of a billing statement. We reserve the right to charge interest on overdue amounts at the rate of 1.5% per month, or the maximum interest rate permitted by law, whichever is less, from the date due until paid. You agree to pay such interest on the outstanding balance in addition to the balance of fees and expenses due.

Retainer Deposit: You have agreed to pay the sum of $10,000 as an advance fee deposit and as security for our final invoice. This deposit will be held in the Firm's trust account for this representation, and we will bill you monthly. You agree to pay our bills timely pursuant to the Terms, and we will apply such payments to our legal fees and costs. Upon the conclusion of the representation, we will apply the deposit against our final invoice, and any unused amount remaining in the trust account will be returned to you after payment in full of your final bill.

NOTE: Please include a check for the retainer deposit when you return a signed copy of this Agreement or send us a wire with the requisite funds. Our wiring instructions are available at the secure website: www.bhfs.com/trustpayment

Conflicts of Interest: We have conducted a search in our conflicts database of your name and the names of your owners, principals and affiliates and all adverse parties and their owners, principals and affiliates that you provided to us, as applicable. Based on the information provided, we have discovered no conflicts. To help us continue to assess conflicts, however, we will depend on you to keep us advised of changes that might affect our analysis of actual or potential conflict of interests.

Complete Agreement: This Agreement and the Terms contain all the terms and provisions of and related to our engagement. This Agreement and the Terms may only be amended in a writing signed by a representative of the Firm and you.

If you agree with the terms and provisions of this Agreement and the Terms, please countersign this letter where indicated below and return it to us at your earliest opportunity. If you have any questions, please feel free to contact me or a member of our team.

**EXHIBIT C**

Norton Rose Fulbright US LLP
December 22, 2022
Page 3

<br>

Norton Rose Fulbright US LLP
December 22, 2022
Page 3

Sincerely,

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: _____
    Jason Dunn

### Acceptance of Agreement and Standard Terms and Conditions:

The undersigned entity represents and warrants that it has the power and authority and that the
individual signing on its behalf below has been authorized to enter into and sign this Agreement. The
undersigned does hereby engage Brownstein Hyatt Farber Schreck, LLP in accordance with the terms of
this Agreement and the attached Standard Terms and Conditions, effective as of the date of this
Agreement.

NORTON ROSE FULBRIGHT US LLP

By: _____

Name: Eliot Turner

Its: _____

Duties of the Parties: Brownstein Hyatt Farber Schreck, LLP (the "Firm") agrees to represent you in accordance with the accompanying Engagement Agreement for Legal Services (the Agreement) and these Standard Terms and Conditions (the "Terms"). You agree to fully cooperate with us, be open and truthful, provide us with complete information pertaining to the representation, keep us informed of developments, promptly respond to our inquiries and communications, and pay our bills in a timely manner.

Fees: We record time in 6-minute increments unless other arrangements are made, and our billing statements will be based on time recorded in those increments. You agree to pay our fees based on time expended on your behalf, computed on an hourly basis at our then applicable rates for this engagement for the applicable attorneys and staff assigned to the matter. Generally speaking, these hourly rates currently are, with limited exceptions, as follows:

| | | | |
|---|---|---|---|
| Shareholders: | From $430 | to | $1,515 per hour |
| Counsel: | From $405 | to | $1,245 per hour |
| Associates: | From $335 | to | $ 605 per hour |
| Lit Support Analysts: | From $205 | to | $ 425 per hour |
| Land Use Planners: | From $255 | to | $ 535 per hour |
| Paralegals: | From $160 | to | $ 460 per hour |
| Law Clerks: | From $260 | to | $ 425 per hour |
| Legal Assistants: | From $120 | to | $ 340 per hour |

We change our rates, as well as our other standard charges, from time to time (typically on January 1 of a calendar year), to reflect competitive or market conditions, inflation, changes in attorney seniority or status, changes to our rates generally, changes in the nature or scope of the services performed and other factors. Unless otherwise agreed to in writing, you agree that any new rates or charges apply prospectively to all matters then being handled by the Firm for you. You agree to pay all fees billed at the then-current rates. Individual rate changes will be reflected in the first billing statement that includes the new rates and will be evident from the information you receive with each bill.

Outside Contract Attorneys and Legal Assistants: You agree that we may utilize contract attorneys and legal assistants who are supervised by our attorneys but not employed by the Firm, and who may reside inside or outside of the United States. Contract attorneys typically will be billed at the rates of the attorneys at the firm who provide a comparable, applicable level of service, if not otherwise agreed to in writing.

In-House Costs and External Expenses: In addition to fees incurred for legal work, your statement will include other charges and costs, some of which are summarized below, that you agree to pay.

Charges for long distance telephone calls, in-office copying, ordinary postage, and deliveries made by in-house staff are covered by an administrative fee, currently calculated at 2.5% of fees incurred. This administrative fee is charged in lieu of itemizing those costs.

Other costs which you agree to pay include, but are not limited to: computer-assisted legal research; third party vendor fees (including document copying, transcript production, depositions, e-discovery file processing, and trial preparation materials); messenger and other delivery fees; the cost of licensing and installing special computer applications used to manage your case; secretarial overtime (when required by the urgency of your matter); extraordinary administrative, technical or accounting support; professional mediator, arbitrator, and/or special master fees; other vendor costs; and reasonable expenses for travel, meals and hotel accommodations.

For matters that involve e-Discovery, it may be necessary for the Firm to undertake the tasks of collecting, processing, filtering, hosting, reviewing and/or producing electronic data. A listing of e-Discovery services along with the specific rate at which each service will be billed, which accounts for both the Firm's direct cost and overhead and related expenses, is available upon request. Charges for services such as hosting may continue to be billed for as long as we continue to maintain e-Discovery data in an active or inactive server environment.

We may select experts, consultants and investigators who in our judgment are necessary to aid in the preparation of your matter. We will inform you of the persons selected and their charges. You authorize us to incur all reasonable costs and to hire such experts, consultants and investigators, and you agree to pay these expenses.

At our discretion, all costs may be included on your statement or billed directly to you. We may also require that you advance to us the estimated amount for such items prior to our incurring them on your behalf. You agree to pay such costs, and we assume no obligation to advance any costs on your behalf or to pay vendors, experts, consultants or other third parties we engage on your behalf.

Estimates Not Binding: It is often impractical to determine in advance the amount of time and effort that will be needed to complete all the necessary work on a matter or the total

Rev'd 2/8/22

## EXHIBIT C

amount of fees, charges, and costs that may be incurred. Additionally, if any estimates or budgets are provided, they may need to be adjusted upward or downward in response to changing circumstances. Accordingly, unless otherwise expressly agreed in writing, our estimates and budgets are not intended to be binding, are subject to unforeseen or unanticipated circumstances, and do not limit or "cap" our fees and other charges or costs.

No Guarantees: Comments or expressions of opinion about the potential outcome of your matter or any phase thereof are expressions of opinion only. We cannot guarantee the outcome or make any promises in that regard. Unless otherwise specifically agreed in writing, our fees are not contingent upon the outcome or completion of a matter.

Billing Disputes: You agree to inform us of any dispute you may have with respect to a billing statement within ten (10) days of the statement date. Even if you dispute a portion of a billing statement, you agree to pay the undisputed portion within 30 days of your receipt of the statement. You will be responsible for any costs of collection incurred by the Firm, including reasonable attorneys' and paralegals' fees and costs.

Retainer Deposits: You agree to pay advance fee deposits in accordance with the provisions of the Agreement and the Terms. In addition, for matters involving litigation, arbitration, or adjudication of disputes in other tribunals, we reserve the right to request from you an additional deposit before trial or hearing in an amount reflective of the anticipated fees and costs of that proceeding. You agree to timely provide such a deposit. If you do not provide this deposit, we shall have the right to withdraw from this representation, consistent with our obligations under applicable law and the rules of professional conduct, and you agree not to oppose our withdrawal.

Responses to Auditors' Inquiries: We are frequently asked to provide information to third-party auditing firms regarding legal matters of our clients. We respond to those inquiries with the same level of care that we use to handle our clients' other legal work, and we will charge for these services at the hourly rates applicable to your engagement. When an auditing firm requests information on your behalf, that request will be deemed to be your consent for us to disclose the requested information to that auditing firm and to bill for those services.

Permission to List the Company as a Client: Occasionally, we may provide lists of representative clients or matters to legal or other publications and may use our clients' names or a description of their matters in marketing materials. Unless

you instruct otherwise, you agree that such use is acceptable.

Communications and Special Requirements: During the course of our engagement, we may exchange emails and electronic versions of documents with you using commercially available software. Such communications are occasionally victimized by the creation and dissemination of viruses and other destructive electronic programs and hackers who compromise the privacy of electronic communications. Our virus scanning software may also occasionally reject a communication that you send to us, or we may send you a message that is rejected by your system. Although infrequent, these occurrences are to be expected as part of the ordinary course of business. Accordingly, we cannot guarantee that our communications and documents will always be virus-free or immune from invasions of expected privacy. If for these or other reasons you would prefer or require that we not use electronic communications or that we follow special instructions or encrypt emails or other communications, you should promptly advise in writing those working on your matters of such preferences or requirements.

Public Policy Services and Business Conflicts: The Firm provides a wide array of public policy services to many clients around the world. These services include legislative and administrative representation on matters that may affect your interests, directly or indirectly. As a condition of our undertaking to represent you, you hereby waive any objection to any conflict of interest that might be deemed to be created by our representation of other clients in legislative or administrative policy matters that are unrelated to the specific representation we have been asked to undertake on your behalf. Your waiver permits us to represent another client in advocating a change in law or policy areas even if the policy we advocate would or might have a direct or indirect adverse impact upon your interests.

Ownership of Records and Files: You understand and agree that your client file consists of any correspondence, legal memoranda, pleadings, agreements, or other documents that the Firm retains in its electronic document management system, which is duplicated in hard copy. It is our policy to destroy all client files (including all documents and materials therein) no less than eight years following completion of each matter. This file destruction procedure is automatic, and you will not receive further notice prior to the destruction of these files. Accordingly, we advise you to maintain your own files relating to the matters which we are handling. Alternatively, you may request, prior to our scheduled destruction date, that we deliver all or certain

**MOVANTS' EXHIBIT 65**
**Page 14 of 18**

**Aple.Appx. 548**

EXHIBIT C

portions of these client files to you rather than destroying them.

Termination: You may terminate our services at any time. If you choose to do so, you agree to give us prompt notice of the termination. Upon such termination, you will remain obligated to pay for all services rendered and costs paid or incurred on your behalf before the termination or which are reasonably necessary thereafter. If we are attorneys of record in any proceeding, you agree to promptly execute and return to us appropriate documents effecting our substitution or withdrawal. We will promptly return to you any remaining balance of your retainer as well as a copy of your client file, as described above.

Except to the extent limited by applicable law or rules of professional conduct, we may also withdraw from this representation at any time. We may withdraw, by way of example, if:

- You fail to fulfill an obligation to the Firm or to honor the terms of the Agreement or these Terms, such as by failing to pay our statements or to post deposits in a timely manner;

- You make it unreasonably difficult to represent you;

- Our continued representation of you will result in an unreasonable financial burden on the Firm; or

- Facts or circumstances arise that, in our view, render our continuing representation unlawful or unethical.

If we elect to withdraw, you agree to take all steps reasonably necessary to free us of any obligation to perform further services. Notwithstanding such withdrawal, you will remain obligated to pay us for all services provided and to reimburse us for all costs paid or incurred on your behalf before the termination or which are reasonably necessary thereafter.

Our representation of you will be considered terminated at the earliest of your termination of our representation, our withdrawal from our representation of you, or the substantial completion of our work for you (as may be evidenced by a final bill, by a substantial period of inactivity, or otherwise).

Disputes: All disputes arising out of or relating to the Agreement and these Terms shall be resolved in a binding arbitration administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. The arbitration will take place in, and be administered in

accordance with the laws of, the state in which the legal services provided by the Firm were primarily performed. The arbitrator shall award the substantially prevailing party its reasonable attorney fees and costs, and judgment on the award may be entered by a court of competent jurisdiction.

Interpretation and Effective Date: The Agreement and these Terms supersede all other prior and contemporaneous written and oral agreements and understanding between us, including any outside counsel guidelines or service level agreements, or the like, that you adopt, unless such outside counsel guidelines or service level agreements have been provided to us prior to the date of the Agreement or unless the Agreement and these Terms have been made expressly subject thereto. You acknowledge that no promises have been made to you by us other than those in the Agreement and these Terms. In the event that these Terms conflict with the Agreement, the Agreement will govern. If any provision of these Terms or the Agreement is found unenforceable, the remaining provisions will remain in effect. If the Agreement does not take effect for any reason, you will still be required to pay us the reasonable value of any services we performed for you and all costs actually and reasonably incurred on your behalf.

Rev'd 2/8/22



## Matter Balance Summary
### As of 12/28/2022

| | | |
|---|---|---|
| **Client** | Norton Rose Fulbright US LLP | |
| **Matter** | Expert Witness (065931.0001) | |
| **Billing Attorney** | Dunn, Jason R. | |

| | Fees | Hard Costs | Soft Costs | Admin Fee* | Other | Total |
|---|---|---|---|---|---|---|
| **Worked Value Life to Date** | 14,963.50 | - | - | 374.09 | - | 15,337.59 |
| less: Billed | 10,738.50 | - | - | 268.46 | - | 11,006.96 |
| less: Write Downs | - | - | - | - | - | - |
| **equals: WIP Balance** | **4,225.00** | **-** | **-** | **105.63** | **-** | **4,330.63** |
| | | | | | | |
| **Billed Value Life to Date** | 10,738.50 | - | - | 268.46 | - | 11,006.96 |
| less: Collected | - | - | - | - | - | - |
| less: A/R Write Offs | - | - | - | - | - | - |
| **equals: A/R Balance** | **10,738.50** | **-** | **-** | **268.46** | **-** | **11,006.96** |
| | | | | | | |
| **Total Investment (WIP + A/R)** | **14,963.50** | **-** | **-** | **374.09** | **-** | **15,337.59** |

Unallocated Balance · -
Trust Balance · -
Gone But Not Forgotten · -
Pending Time Value · -

| | Hours | Rate | Worked Value ** | Billed Value | Write (Down)/Up | Last Time Entry Date |
|---|---|---|---|---|---|---|
| Garnett, Stanley L. | 4.6 | 915.00 | 4,209.00 | 2,104.50 | - | 12/15/2022 |
| Houseal, Amanda K. | 7.6 | 425.00 | 3,230.00 | 2,465.00 | - | 12/28/2022 |
| Olguin, Catherine M. | 1.1 | 320.00 | 352.00 | 128.00 | - | 12/23/2022 |
| Porteus, Jonathan M. | 19.5 | 365.00 | 7,117.50 | 5,986.00 | - | 12/23/2022 |
| Zamora, Larry A. | 0.2 | 275.00 | 55.00 | 55.00 | - | 11/17/2022 |
| **Grand Total** | **33.0** | **453.44** | **14,963.50** | **10,738.50** | **-** | **12/28/2022** |

*Admin and tax fees are estimated for unbilled amounts.*

**Includes all posted time worked, including billed, unbilled, written down and written off time.*

Last Revised: KCASARIO 12/28/2022
Printed: 12/28/2022 10:45 AM
1 of 3

Client Matter Balance Summary(13590003.1)

MOVANTS' EXHIBIT 65
Page 16 of 18

Aple.Appx. 550

**Life-to-date Time Detail**
As of 12/28/2022

| | |
|---|---|
| Client | Norton Rose Fulbright US LLP |
| Matter | Expert Witness (065931.0001) |
| Billing Atty | Dunn, Jason R. |

| Work Date | Timekeeper | Title | Work Hrs | Work Rate | Work Amt | Bill Hrs | Bill Rate | Bill Amt | Billed? | Inv Num | Narrative |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/12/2022 | Porteus, Jonathan M. | ASSOCIATE | 2.30 | 365.00 | 839.50 | 2.30 | 365.00 | 839.50 | Y | 914673 | Conference with S. Garnett; reviewed damages order; reviewed bankruptcy order; email exchange with S. Garnett; email exchange with A. Houseal |
| 10/14/2022 | Houseal, Amanda K. | ASSOCIATE | 2.20 | 425.00 | 935.00 | 2.20 | 425.00 | 935.00 | Y | 914673 | Review Bankruptcy Court Order |
| 10/14/2022 | Houseal, Amanda K. | ASSOCIATE | 1.40 | 425.00 | 595.00 | 1.40 | 425.00 | 595.00 | Y | 914673 | Review Denver District Court Order |
| 10/14/2022 | Houseal, Amanda K. | ASSOCIATE | 0.40 | 425.00 | 170.00 | 0.40 | 425.00 | 170.00 | Y | 914673 | Review docket and determine deadlines |
| 10/14/2022 | Olguin, Catherine M. | PARALEGAL | 0.20 | 320.00 | 64.00 | 0.20 | 320.00 | 64.00 | Y | 914673 | Docket expert report and hearing deadlines |
| 10/17/2022 | Houseal, Amanda K. | ASSOCIATE | 0.30 | 425.00 | 127.50 | 0.30 | 425.00 | 127.50 | Y | 914673 | Leone - Discuss expert witness timeline with S. Garnett |
| 10/24/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.10 | 365.00 | 36.50 | 0.10 | 365.00 | 36.50 | Y | 914673 | Email exchange with A. Houseal re expert prep |
| 10/25/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.10 | 365.00 | 36.50 | 0.10 | 365.00 | 36.50 | Y | 914673 | Email exchange with A. Houseal re timeline |
| 10/26/2022 | Porteus, Jonathan M. | ASSOCIATE | 1.10 | 365.00 | 401.50 | 1.10 | 365.00 | 401.50 | Y | 914673 | Conference with A. Houseal re expert report; conference with S. Garnett and A. Houseal re timeline and strategy |
| 10/26/2022 | Houseal, Amanda K. | ASSOCIATE | 0.60 | 425.00 | 255.00 | 0.60 | 425.00 | 255.00 | Y | 914673 | Discuss expert witness report with M. Porteus |
| 10/27/2022 | Porteus, Jonathan M. | ASSOCIATE | 1.60 | 365.00 | 584.00 | 1.60 | 365.00 | 584.00 | Y | 914673 | Strategized expert report with S. Garnett and A. Houseal; telephone conference with same and Eliot Turner; email exchange with same |
| 10/27/2022 | Olguin, Catherine M. | PARALEGAL | 0.20 | 320.00 | 64.00 | 0.20 | 320.00 | 64.00 | Y | 914673 | Organization of case file documents |
| 10/27/2022 | Houseal, Amanda K. | ASSOCIATE | 0.40 | 425.00 | 170.00 | 0.40 | 425.00 | 170.00 | Y | 914673 | Telephone conference with client re expert witness report |
| 10/27/2022 | Garnett, Stanley L. | SHAREHOLDER | 1.10 | 915.00 | 1,006.50 | 1.10 | 915.00 | 1,006.50 | Y | 914673 | Conference with E. Turner; conference with M. Porteus and A. Houseal |
| 10/28/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.70 | 365.00 | 255.50 | 0.70 | 365.00 | 255.50 | Y | 914673 | Drafted expert report; reviewed relevant documents to support fees; email exchange with A. Houseal and Eliot Turner |
| 11/2/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.20 | 365.00 | 73.00 | 0.20 | 365.00 | 73.00 | Y | 917267 | Email exchange with S. Garnett re timing and expert draft; email exchange with E. Turner re fees |
| 11/2/2022 | Houseal, Amanda K. | ASSOCIATE | 0.30 | 425.00 | 127.50 | 0.30 | 425.00 | 127.50 | Y | 917267 | Exchange emails with M. Porteus re expert report |
| 11/3/2022 | Porteus, Jonathan M. | ASSOCIATE | 1.10 | 365.00 | 401.50 | 1.10 | 365.00 | 401.50 | Y | 917267 | Reviewed motion for fees and relevant exhibits |
| 11/4/2022 | Porteus, Jonathan M. | ASSOCIATE | 3.30 | 365.00 | 1,204.50 | 3.30 | 365.00 | 1,204.50 | Y | 917267 | Review relevant documentation for fees including motions and affidavits; begin drafting export report; review relevant caselaw and rules re attorneys' fees |
| 11/8/2022 | Houseal, Amanda K. | ASSOCIATE | 0.20 | 425.00 | 85.00 | 0.20 | 425.00 | 85.00 | Y | 917267 | Exchange emails with S. Garnett and M. Porteus re expert report |
| 11/8/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.20 | 365.00 | 73.00 | 0.20 | 365.00 | 73.00 | Y | 917267 | Email exchange with S. Garnett and A. Houseal re timing and docket information |
| 11/10/2022 | Porteus, Jonathan M. | ASSOCIATE | 4.90 | 365.00 | 1,788.50 | 4.90 | 365.00 | 1,788.50 | Y | 917267 | Review litigation materials provided by E. Turner; review relevant attorneys' fees cases; continue drafting expert report; edit and revise same; email exchange with A. Houseal re report and edits |
| 11/11/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.30 | 365.00 | 109.50 | 0.30 | 365.00 | 109.50 | Y | 917267 | Review expert report and accompanying documents from E. Turner; email exchange with A. Houseal |
| 11/11/2022 | Garnett, Stanley L. | SHAREHOLDER | 1.20 | 915.00 | 1,098.00 | 1.20 | 915.00 | 1,098.00 | Y | 917267 | Draft of report; review of docket |
| 11/15/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.20 | 365.00 | 73.00 | 0.20 | 365.00 | 73.00 | Y | 917267 | Email exchange with library re NLJ data re attorney's fees |
| 11/17/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.30 | 365.00 | 109.50 | 0.30 | 365.00 | 109.50 | Y | 917267 | Email exchange with library re attorneys' fees research; reviewed attorneys' fees report from firm, Valeo, and Peer Monitor |
| 11/17/2022 | Zamora, Larry A. | ADMIN | 0.20 | 275.00 | 55.00 | 0.20 | 275.00 | 55.00 | Y | 917267 | Provide data re attorney billing rates |
| 12/12/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.30 | 365.00 | 109.50 | - | - | - | N | | Email exchange with client and A. Houseal re restarting expert opinion report |
| 12/12/2022 | Houseal, Amanda K. | ASSOCIATE | 0.30 | 425.00 | 127.50 | - | - | - | N | | Exchange emails with client re expert report; exchange emails with M. Porteus re draft expert report |
| 12/13/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.30 | 365.00 | 109.50 | - | - | - | N | | Review expert report draft; email exchange with A. Houseal and S. Garnett re same |
| 12/15/2022 | Garnett, Stanley L. | SHAREHOLDER | 2.30 | 915.00 | 2,104.50 | - | - | - | N | | Draft of report |
| 12/19/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.30 | 365.00 | 109.50 | - | - | - | N | | Email exchange with team re expert report, finalizing same |
| 12/21/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.40 | 365.00 | 146.00 | - | - | - | N | | Review final expert report; email exchange with team re same |
| 12/21/2022 | Houseal, Amanda K. | ASSOCIATE | 0.80 | 425.00 | 340.00 | - | - | - | N | | Review and revise draft expert report; exchange emails with E. Turner re same |
| 12/21/2022 | Olguin, Catherine M. | PARALEGAL | 0.40 | 320.00 | 128.00 | - | - | - | N | | Review and edit expert opinion |
| 12/22/2022 | Porteus, Jonathan M. | ASSOCIATE | 1.20 | 365.00 | 438.00 | - | - | - | N | | Review final expert report; add signed engagement letter to include as attachment |
| 12/23/2022 | Olguin, Catherine M. | PARALEGAL | 0.30 | 320.00 | 96.00 | - | - | - | N | | Finalize expert report |
| 12/23/2022 | Porteus, Jonathan M. | ASSOCIATE | 0.60 | 365.00 | 219.00 | - | - | - | N | | Email exchange with team re final report, final signed engagement letter; review final report; email exchange with with client re final report |
| 12/27/2022 | Houseal, Amanda K. | ASSOCIATE | 0.40 | 425.00 | 170.00 | - | - | - | N | | Exchange emails with E. Turner re comments on expert report; exchange emails with M. Porteus and C. Olguin re same |
| 12/28/2022 | Houseal, Amanda K. | ASSOCIATE | 0.30 | 425.00 | 127.50 | - | - | - | N | | Exchange emails with M. Porteus re expert report |

# Bro**//**nstein

| Client | Norton Rose Fulbright US LLP |
|---|---|
| Matter | Expert Witness (065931.0001) |
| Billing Attorney | Dunn, Jason R. |

| Work Date | Timekeeper | Title | Work Hrs | Work Amt | Narrative |
|---|---|---|---|---|---|

**MOVANTS' EXHIBIT 65**
Page 18 of 18

**Aple.Appx. 552**



Wheeler Trigg O'Donnell LLP

Carolyn J. Fairless
303.244.1852
fairless@wtotrial.com

September 26, 2023

Harvey Sender
Sender & Smiley LLC
600 17th Street
Suite 2800, South
Denver, CO 80202

Re: *Roberts Bankruptcy Settlement – Rebuttal Report*

Dear Mr. Sender:

In this rebuttal report, I respond to the expert report of Mr. Stanley L. Garnett dated September 18, 2023 ("Garnett Report").[1] As described below, the Garnett Report addresses some (but not all) issues already addressed in my initial expert report dated July 28, 2023 ("Initial Report"), and nothing in the Garnett Report changes my opinion that the Settlement Agreement is within the range of reasonableness.

## I. EXPERIENCE AND QUALIFICATIONS

My qualifications and compensation are set forth in Section I of my Initial Report. Since the time of my Initial Report, I completed my three-year term as a member of the American Bar Association Standing Committee on Lawyers' Professional Liability, and was reappointed by the American Bar Association as a special advisor to the Standing Committee for an additional one-year term.

As of the date of this report, I have billed approximately 108 hours to this matter, including 85 hours billed as of the time of my Initial Report.

## II. INFORMATION CONSIDERED

In addition to the documents and other information described in Section II of my Initial Report, I reviewed the Garnett Report (including exhibits) and the case law and certain documents referenced therein. I also reviewed an undated expert report (including exhibits) that Mr. Garnett prepared in connection with the Denver District Court Case, in which he opined on the reasonableness of the fees incurred by Norton Rose Fulbright US LLP ("Norton Rose") in connection with Norton Rose's representation of the PdC Parties (the "Garnett Attorney Fees Report").

# WheelerTriggO'Donnell LLP

I may use portions of this rebuttal report or documents that I have relied upon in connection with this rebuttal report as exhibits in any hearing at which I am asked to testify. To the extent any additional information is provided to me in connection with this proceeding, including through ongoing information exchanges or discovery between the parties or in the form of other experts' reports, I may update the conclusions and opinions expressed in this report.

## III.    REBUTTAL TO GARNETT REPORT

### A.    Cases and Statute Cited in Garnett Report

The "Expert Opinion" section of the Garnett Report does not cite any legal authority supporting the opinions that Mr. Garnett offers. The Garnett Report does contain a section titled "Cases and Statutes" listing 21 cases (nine of which are from Colorado) and one statute, but none of the listed authorities appears elsewhere in the report, and the report provides no explanation of whether or how any of them bear on the issues addressed in the report.

I have reviewed each of the listed authorities. One of the cited cases, *Brady v. Brown*, 51 F.3d 810 (9th Cir. 1995), undercuts Mr. Garnett's opinions that (i) "Roberts has a reasonable likelihood of success establishing that jurisdiction of this dispute was exclusively before the Mexican Courts," and (ii) "under the doctrine of comity, the Colorado Courts should have declined to decide this dispute." (Garnett Report at 3-4.) In *Brady*, two California businessmen attempted to purchase land in Mexico for a hotel development project. *Brady*, 51 F.3d at 813. They retained a lawyer who was a U.S. citizen licensed in Mexico to assist them with the transaction. *Id*. The lawyer advised the businessmen that foreigners could not own property in certain parts of Mexico, and that they should therefore enter into a contract with Mexican nationals that would give them the benefits of ownership without any conflict with Mexican law. *Id*. at 814. The contract granted irrevocable powers of attorney to the lawyer, who then used the powers of attorney to transfer the property to his family and business entities owned by his family, all of whom were Mexican nationals. *Id*. Disputes later arose over ownership and management of the hotel, with the lawyer's family claiming control of and title to the property. *Id*. The businessmen sued the lawyer, his family, and the family's entities in the United States District Court for the Central District of California, which entered judgment in favor of the plaintiff businessmen following a bench trial, and ordered the defendants to execute irrevocable powers of attorney to permit the property to be transferred to a trust for the businessmen's benefit. *Id*. at 815.

The defendants appealed, arguing among other things that comity required the California court to decline to enforce the businessmen's claim of ownership to the property, and that the district court's judgment also violated Mexican law by adjudicating title to Mexican property. *Id*. at 816-19. The Ninth Circuit rejected both of these arguments, and affirmed the district court's

judgment. *Id*. As to the comity argument, the Ninth Circuit explained that, based on the district court's findings that the defendant lawyer wrongfully advised the plaintiffs to enter into agreements and manipulated those agreements to transfer all rights in the property to himself and his family, "comity does not require us to apply Mexican law." *Id*. at 819. As to the second argument, the Ninth Circuit explained that the district court did not run afoul of Mexican law by ordering as a remedy that the lawyer execute powers of attorney to permit the property to be transferred to a trust for the businessmen's benefit. *Id*. The Ninth Circuit's holding in *Brady* thus supports, rather than weighs against, the orders entered by the Court in the Denver District Court Case.

A number of other cited cases appear to relate to comity and Roberts' argument that the PdC Parties' requested relief in Colorado contravened orders issued in Mexico. As the Denver District Court repeatedly explained in rejecting this argument, its orders involved issues different than those raised in Mexico, and they weren't directed to Mexico property or Mexico courts—they were directed to *Roberts*. The cited cases don't address this distinction, and are otherwise not on point or helpful to Roberts. *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006) (in dispute between California-based winery and Ecuadorian distributor, reversing the district court's issuance of a preliminary injunction enjoining the distributor from proceeding with litigation in Ecuador and remanding with instructions to grant the anti-suit injunction, where the distributor "has involved [the winery] in messy, protracted, and potentially fraudulent litigation in Ecuador in direct contravention of a valid and enforceable forum selection clause."); *In re Marriage of Seewald*, 22 P.3d 580 (Colo. App. 2001) (affirming the trial court's refusal to recognize a putative Mexican divorce decree under the doctrine of comity); *Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, 398 B. R. 902 (Bankr. S.D. Cal. 2008) (denying request for a permanent anti-suit injunction because, among other things, a judgment issued by the bankruptcy court ordering the defendants to convey Mexican property to a trust "did not directly adjudicate title to the [property] under Mexican law," "it was unnecessary to delve into the messy area of directly adjudicating title to real property located in a foreign country because the Court had personal jurisdiction over the [defendants] to order them to reconvey the [property]," and res judicata thus was not implicated); *Milhoux v. Linder*, 902 P.2d 856 (Colo. App. 1995) (where plaintiff obtained judgment in Belgian proceeding, the district court properly recognized the judgment and permitted a judgment lien to be placed on the defendants' property); *Hilton v. Guyot*, 159 U.S. 113 (1895) (discussing the effect to be given to foreign judgments); *Wong v. Tenneco*, 39 Cal.3d 126 (Cal. 1985) (where the plaintiff entered into a transaction that was illegal under Mexican law in order to move his farming operations to Mexico, and brought suit in California in a "flagrant effort to circumvent Mexican law," principles of unclean hands and comity precluded relief).

Five of the cited cases are foreclosure cases that appear to relate to Roberts' argument that the PdC Parties had no damages because they had no equity in the property. I addressed the

first of those cases, *Hooper v. Musolino*, 364 S.E.2d 207 (Va. 1988), in my Initial Report, explaining why it does not support Roberts' argument. (Initial Report at 58-59.) The other foreclosure cases cited in the Garnett Report similarly are inapposite. *Hutson v. Am. Home Mortg. Servicing*, No. C 09—1951 PJH, 2009 U.S. Dist. LEXIS 96764 (N.D. Cal. 2009) (dismissing plaintiff borrower's claims against mortgage company which foreclosed on the property because, among other reasons, the complaint did not identify the fair market value of the property, and "[i]f the value of the house did not exceed the amount of all secured claims, plaintiffs lost no equity and thus suffered no damages as a result of the sale"); *Jones v. Wells Fargo Bank, N.A.*, 13CV02210MSKKLM7, 2014 U.S. Dist. LEXIS 110560 (D. Colo. 2014) (refusing to award borrower plaintiff lost equity damages in lawsuit against foreclosing lender, because "this would do much more than place Plaintiff in a position 'equivalent to his position prior to the tort'"); *Nouri v. Mortg. Lender Servs.*, B236415, 2012 Cal. App. LEXIS 7915 (Cal. Ct. App. 2012) (plaintiff's claim for lost equity damages was properly dismissed where plaintiffs admitted that the amount of secured claims exceeded the value of the property, and "[t]here simply was no equity to lose"); *St. Paul at Chase Corp. v. Manufacturers Life Ins. Co.*, 278 A.2d 12 (Md. 1971) (foreclosed borrower had no equity in the building, and therefore was not entitled to damages for loss of the building).

Other cases relate to derivative claims, and do not appear to be particularly germane to Roberts' standing arguments against the PdC Parties. *Adams v. Land Servs.*, 194 P.3d 429 (Colo. App. 2008) (Colorado general partnership law does not afford a derivative action remedy to general partners, and minority partners in a general partnership, who were acting without the authorization of the partnership and the majority partners, therefore did not have standing to sue real estate broker hired by partnership); *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125 (Del. 2016) (on certified question, considering whether a "holder claim," i.e., a claim that the plaintiffs decided to hold and not sell their shares of a corporation's stock in reliance on the corporation's failure to disclose information, is properly brought as a direct or derivative claim); *First Horizon Merch. Servs. v. Wellspring Capital Mgmt., LLC*, 166 P.3d 166 (Colo. App. 2007) (analyzing whether, under Delaware law, creditor's claims against bankrupt corporation's officers and directors are direct claims such that they belong to the creditor or instead are derivative claims belonging to the bankruptcy estate); *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175 (Del. 2015) (on certified question, holding that a contracting party who secures a contractual commitment to benefit a third party can bring a direct contractual action, and need not prosecute the claim as a derivative one); *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) (in putative class action brought by corporate stockholders alleging that directors of the corporation breached fiduciary duties by agreeing to a delay in a proposed merger, discussing the law to be applied in determining whether the stockholders' claim is derivative or direct); *Young v. Bush*, 277 P.3d 916 (Colo. App. 2012) (discussing the standards applicable to an order dismissing derivative claims where all of a limited liability company's members except the plaintiff agreed that proceeding with a derivative action was not in the company's best interests).

Harvey Sender
September 26, 2023
Page 5

The remaining authorities referenced in the Garnett Report likewise are not on point either factually or legally, and in any event do not appear to support the opinions in the report. Colo. Rev. Stat. § 7-80-404 (setting forth the duties of limited liability company members and managers); *Cruz v. Benine*, 984 P.2d 1173 (Colo. 1999) (Uniform Contribution Among Tortfeasors Act allows parties to a prior action to file subsequent claims against joint tortfeasors, and claim preclusion does not bar those subsequent claims unless the joint tortfeasors were in privity with the parties to the prior action); *Durdin v. Cheyenne Mt. Bank*, 98 P.3d 899 (Colo. App. 2004) (analyzing standing under the Federal Equal Credit Opportunity Act, which prohibits discrimination and other unlawful acts against loan applicants); *Kim v. Grover C. Coors Trust*, 179 P.3d 86 (Colo. App. 2007) (in shareholders' suit alleging that a corporation's directors breached fiduciary duties by approving the corporation's sale of convertible preferred stock to a trust of which two of the directors were trustees, explaining that a trial court's fairness determination will not be disturbed if it is supported by competent evidence in the record, and finding that the trial court did not err in its fact-specific analysis that the conflicting interest transaction was fair to the corporation and its shareholders).

## B.    Mr. Garnett's Opinions

The Garnett Report offers no opinion on the reasonableness of the proposed settlement. Indeed, the Settlement Agreement is not referenced in the Garnett Report, and it does not appear on the list of the documents reviewed by Mr. Garnett.

Mr. Garnett also omits to address Roberts' argument that attorney's fees were improperly awarded. In may be difficult for Mr. Garnett to address this argument given that, in the Garnett Attorney Fees Report, he opined that all of Norton Rose's fees were "appropriate and reasonable." (Garnett Attorney Fees Report at 2.) In reaching that opinion, Mr. Garnett "[found] it necessary . . . to highlight broadly the fact that Mr. Roberts' conduct ("legal chaos," per the District Court) is a major cause—if not the principal cause—of the length and complexity of this litigation, which directly affects the fees Norton Rose Fulbright charged its clients." (*Id.* at 2-3.) Mr. Garnett lay much of the responsibility for Norton Rose's fees on "aggressive litigation tactics" employed by Roberts' current counsel at Podoll & Podoll, P.C. ("Podoll"). (*Id.* at 5.) He noted that over half of the cost of this litigation—which was filed in May 2015—arose after Roberts hired Podoll in December 2020. (*Id.*) Mr. Garnett also noted that "For the past four years, Norton Rose Fulbright has helped Claimants safeguard their interests in the property that Roberts sought to illegally control." (*Id.* at 7.) Further, "[the PdC Parties] have obtained a judgment against Roberts for $21,124,986.40. They have been successful at every stage of litigation, resulting in a preliminary injunction, a finding of contempt, a finding that Roberts breached his fiduciary duties, a prejudgment writ of attachment, and a default judgment. Claimants have successfully defeated numerous motions that Roberts filed and have also defeated Roberts's attempts to appeal the court's contempt order." (*Id.* at 5.)

**Wheeler Trigg O'Donnell LLP**

Mr. Garnett now appears to opine (contrary to his apparent views in the Garnett Attorney Fees Report) that it is Roberts, and not the PdC Parties, who will likely prevail in the litigation, because Roberts has a "reasonable likelihood of success" on various arguments that could be made on appeal. For the reasons discussed in my Initial Report and below, I disagree with Mr. Garnett's view of the strength of Roberts' arguments.

To begin, I disagree with Mr. Garnett's opinion that "multiple meritorious appellate issues compound the likelihood that Roberts will prevail upon potential appeal." (Garnett Report at 3.) As Mr. Garnett himself recognized in his Garnett Attorney Fees Report, Roberts' "aggressive litigation tactics" and the "legal chaos" that he has created have accomplished nothing more for him than to increase the legal fees involved (and, it follows, the size of the attorney fee award entered against him). And raising multiple arguments can backfire by making it *less likely* that the court will view any of the many arguments as having merit. *See, e.g., United States v. Friedman*, 971 F.3d 700, 709–10 (7th Cir. 2020) ("Before turning to the merits, a word must be said on the lack of effectiveness of making so many claims of error. . . . The claims chosen should be few and carefully measured for maximum effect. A circumspect approach boosts credibility, while raising every conceivable challenge on appeal can dilute the persuasiveness of plausible arguments. For these reasons we have cautioned: A brief that treats more than three or four matters runs a serious risk of becoming too diffused and giving the overall impression that no one claimed error can be very serious. Tempting as it may be to call foul on every perceived trial error, that strategy generally produces diminishing returns." (internal citations and punctuation omitted)).

For those arguments that were raised with the Court before Roberts' motion for new trial, every Denver District Court judge to have considered the arguments has disagreed with them, and I disagree with them as well. *See* Initial Report at IV.D.1 and IV.D.2 (rebutting Garnett opinion III.1); IV.D.4 (rebutting Garnett opinion III.3); IV.D.6 (rebutting Garnett opinion III.4); and IV.D.5 (rebutting "no damage" portion of Garnett opinion III.5). The arguments that were not raised until the motion for new trial were not timely pled, are likely to be deemed waived if raised on appeal, and would be unlikely to result in reversal in any event. *See* Initial Report at IV.D.3 (rebutting Garnett opinion III.2); and IV.D.7 (rebutting setoff portion of Garnett opinion III.5).

And significantly, Mr. Garnett fails to address several important issues that negatively impact Roberts' likelihood of success. *See* Section IV.B of my Initial Report. He fails to address, for example, that based on the factual findings made by the Court—factual findings that are effectively unassailable on appeal—this is a case about a litigant who was contemptuous of the legal system, repeatedly refused to comply with court orders, and repeatedly took action to try to circumvent those orders. It is a case about a litigant who was found to have breached fiduciary duties and to have acted in a willful and wanton manner attended by circumstances of fraud, and

who was also found to have lied not only to his business partners, but to the Court on multiple occasions. Multiple appeals have done nothing to change the outcome for Roberts, and absent a settlement, additional attorney fees and costs will be expended, interest will continue to accrue, and the parties will continue to be stymied in either developing or selling Sereno II and III. Moreover, even if Roberts somehow were able to persuade an appellate court to reverse the Court's orders, the likely outcome would be a remand back to the same Court that has ruled against Mr. Roberts at effectively every turn.

## IV.    CONCLUSION

In conclusion, the Garnett Report provides no basis for me to change my opinion that there is a low probability of success of the underlying litigation on the merits, that the expense and complexity of the underlying litigation further supports settlement, and that the Settlement Agreement is within the range of reasonableness.

Very truly yours,

Carolyn J. Fairless

# District of Colorado
# Claims Register

## [22-10521-JGR Michael Joseph Roberts, Sr.](#) Converted 09/23/2022

|  |  |  |
|---|---|---|
| **Judge:** Joseph G. Rosania, Jr. | **Chapter:** 7 | |
| **Office:** Denver | **Last Date to file claims:** | |
| **Trustee:** Harvey Sender | **Last Date to file (Govt):** | |

---

*Creditor:*     (19176302)
Wells Fargo Bank, N.A.
Default Document Processing
N9286-01Y
P.O. Box 1629
Minneapolis, MN 55440-9790

**Claim No: 1**
*Original Filed Date:* 02/25/2022
*Original Entered Date*: 02/25/2022

*Status:*
*Filed by:* CR
*Entered by:* Karen Sue Branas
*Modified:*

  Amount claimed: $283289.48
  Secured claimed: $283289.48

*History:*

| Details | 1-1 | 02/25/2022 Claim #1 filed by Wells Fargo Bank, N.A., Amount claimed: $283289.48 (Branas, Karen) |

*Description:* (1-1) Real Estate
*Remarks:*

---

*Creditor:*     (19177190)
Wells Fargo Bank, N.A.
Default Document Processing
MAC# N9286-01Y
P.O. Box 1629
Minneapolis, MN 55440-9790

**Claim No: 2**
*Original Filed Date:* 02/25/2022
*Original Entered Date*: 02/25/2022

*Status:*
*Filed by:* CR
*Entered by:* Ilene Dell'Acqua
*Modified:*

  Amount claimed: $414080.70
  Secured claimed: $414080.70

*History:*

| Details | 2-1 | 02/25/2022 Claim #2 filed by Wells Fargo Bank, N.A., Amount claimed: $414080.70 (Dell'Acqua, Ilene) |

*Description:*
*Remarks:*

---

*Creditor:*     (19181652)
JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, Texas 75001

**Claim No: 3**
*Original Filed Date:* 03/09/2022
*Original Entered Date*: 03/09/2022

*Status:*
*Filed by:* CR
*Entered by:* Alexander Deegan
*Modified:*

  Amount claimed: $1129.12

*History:*

| Details | 3-1 | 03/09/2022 Claim #3 filed by JPMorgan Chase Bank, N.A., Amount claimed: $1129.12 (Deegan, Alexander) |

*Description:*
*Remarks:*

**Aple.Appx. 560**     1/7

| | | |
|---|---|---|
| *Creditor:*     (19181653) | **Claim No: 4** | *Status:* |
| JPMorgan Chase Bank, N.A. | *Original Filed Date*: 03/09/2022 | *Filed by:* CR |
| s/b/m/t Chase Bank USA, N.A. | *Original Entered Date*: 03/09/2022 | *Entered by:* Alexander Deegan |
| c/o National Bankruptcy Services, LLC | *Last Amendment Filed*: 03/23/2022 | *Modified:* |
| P.O. Box 9013 | *Last Amendment Entered*: 03/23/2022 | |
| Addison, Texas 75001 | | |

   Amount claimed: $43644.59

*History:*

| | | |
|---|---|---|
| [Details](#) | [4-1](#) | 03/09/2022 Claim #4 filed by JPMorgan Chase Bank, N.A., Amount claimed: $43659.62 (Tillma, Matthew) |
| [Details](#) | [4-2](#) | 03/23/2022 Amended Claim #4 filed by JPMorgan Chase Bank, N.A., Amount claimed: $43644.59 (Deegan, Alexander) |

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*     (19188180) | **Claim No: 5** | *Status:* |
| Internal Revenue Service | *Original Filed Date*: 03/22/2022 | *Filed by:* CR |
| Central Insolvency Operations | *Original Entered Date*: 03/22/2022 | *Entered by:* IRS Internal Revenue |
| PO BOX 7346 | *Last Amendment Filed*: 12/05/2022 | Service |
| Philadelphia PA 19101-7346 | *Last Amendment Entered*: 12/05/2022 | *Modified:* |

   Amount  claimed: $0.00

   Secured claimed: $0.00

   Priority   claimed: $0.00

*History:*

| | | |
|---|---|---|
| [Details](#) | [5-1](#) | 03/22/2022 Claim #5 filed by Internal Revenue Service, Amount claimed: $2508.37 (Internal Revenue Service, IRS) |
| [Details](#) | [5-2](#) | 12/05/2022 Amended Claim #5 filed by Internal Revenue Service, Amount claimed: $0.00 (Internal Revenue Service, IRS) |

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*     (19190062) | **Claim No: 6** | *Status:* |
| American Express National Bank | *Original Filed Date*: 03/25/2022 | *Filed by:* CR |
| c/o Becket and Lee LLP | *Original Entered Date*: 03/25/2022 | *Entered by:* Greg Deegan |
| PO Box 3001 | | *Modified:* |
| Malvern PA 19355-0701 | | |

   Amount claimed: $36561.09

*History:*

| | | |
|---|---|---|
| [Details](#) | [6-1](#) | 03/25/2022 Claim #6 filed by American Express National Bank, Amount claimed: $36561.09 (Deegan, Greg) |

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*     (19191121) | **Claim No: 7** | *Status:* |
| Jefferson Capital Systems LLC | *Original Filed Date*: 03/28/2022 | *Filed by:* CR |
| Po Box 7999 | *Original Entered Date*: 03/28/2022 | *Entered by:* Rhonda Pratt |
| Saint Cloud MN 56302-9617 | | *Modified:* |

   Amount claimed: $242.32

*History:*

| | | |
|---|---|---|
| [Details](#) | [7-1](#) | 03/28/2022 Claim #7 filed by Jefferson Capital Systems LLC, Amount claimed: $242.32 (Pratt, Rhonda) |

*Description:*

*Remarks:*

**Aple.Appx. 561**

*Creditor:*      (19173851)   History          **Claim No: 8**                                *Status:*
Connelly Law, LLC                              *Original Filed Date*: 03/29/2022              *Filed by:* CR
c/o Sean Connelly                              *Original Entered Date*: 03/29/2022            *Entered by:* ADI Clerk
3200 South Cherry Creek Drive                                                                *Modified:*
Suite 720
Denver, CO 80209

   Amount claimed: $125000.00

*History:*

Details      8-1    03/29/2022 Claim #8 filed by Connelly Law, LLC, Amount claimed: $125000.00 (ADI Clerk)

*Description:*

*Remarks:*

---

*Creditor:*      (19198883)                    **Claim No: 9**                                *Status:*
American Express National Bank                 *Original Filed Date*: 04/13/2022              *Filed by:* CR
c/o Becket and Lee LLP                         *Original Entered Date*: 04/13/2022            *Entered by:* Greg Deegan
PO Box 3001                                                                                  *Modified:*
Malvern PA 19355-0701

   Amount claimed: $4294.00

*History:*

Details      9-1    04/13/2022 Claim #9 filed by American Express National Bank, Amount claimed: $4294.00 (Deegan,
                    Greg)

*Description:*

*Remarks:*

---

*Creditor:*      (19173852)   History          **Claim No: 10**                               *Status:*
Foster Graham Milstein & Calisher, LLP         *Original Filed Date*: 04/19/2022              *Filed by:* CR
c/o Gary Lozow                                 *Original Entered Date*: 04/19/2022            *Entered by:* Robert Graham
360 S Garfield                                                                               *Modified:*
Suite 600
Denver, CO 80209

   Amount claimed: $136607.88

*History:*

Details      10-1   04/19/2022 Claim #10 filed by Foster Graham Milstein & Calisher, LLP, Amount claimed: $136607.88
                    (Graham, Robert)

*Description:*

*Remarks:*

---

*Creditor:*      (19205433)                    **Claim No: 11**                               *Status:*
Edward W. Nottingham, LLC                      *Original Filed Date*: 04/27/2022              *Filed by:* CR
5724 East Tenth Avenue                         *Original Entered Date*: 04/27/2022            *Entered by:* ADI Clerk
Denver, CO 80220                                                                             *Modified:*

   Amount claimed: $981.22

*History:*

Details      11-1   04/27/2022 Claim #11 filed by Edward W. Nottingham, LLC, Amount claimed: $981.22 (ADI Clerk)

*Description:*

*Remarks:*

*Creditor:*        (19205446)            **Claim No: 12**            *Status:*
Richard Lang                              *Original Filed Date*: 04/27/2022     *Filed by:* CR
431 Steele Street                         *Original Entered Date*: 04/27/2022   *Entered by:* Phillip A. Parrott
Denver, CO 80206                          *Last Amendment Filed*: 05/09/2023    *Modified:* 05/09/2023
                                          *Last Amendment Entered*: 05/09/2023

   Amount claimed: $150000.00

*History:*

| Details | 12-1 | 04/27/2022 Claim #12 filed by Richard Lang, Amount claimed: $1498469.28 (Parrott, Phillip) |
| Details | 12-2 | 05/09/2023 Amended Claim #12 filed by Richard Lang, Amount claimed: $150000.00 (Parrott, Phillip) |

*Description:*

*Remarks:* (12-2) Corrected amount per filer's request - mlr 5/9/23

---

*Creditor:*        (19173854)   History   **Claim No: 13**            *Status:*
Podoll & Podoll, P.C.                     *Original Filed Date*: 04/29/2022     *Filed by:* CR
5619 DTC Parkway                          *Original Entered Date*: 04/29/2022   *Entered by:* ADI Clerk
Suite 1100                                *Last Amendment Filed*: 04/29/2022    *Modified:* 04/29/2022
Englewood, CO 80111                       *Last Amendment Entered*: 04/29/2022

   Amount claimed: $1318442.12

*History:*

| Details | 13-1 | 04/29/2022 Claim #13 filed by Podoll & Podoll, P.C., Amount claimed: $1318442.12 (ADI Clerk) |
| Details | 13-2 | 04/29/2022 Amended Claim #13 filed by Podoll & Podoll, P.C., Amount claimed: $1318442.12 (ADI Clerk) |

*Description:*

*Remarks:*

---

*Creditor:*        (19206842)            **Claim No: 14**            *Status:*
Riviera Country Club S. de R.L. de        *Original Filed Date*: 04/29/2022     *Filed by:* CR
C.V.                                      *Original Entered Date*: 04/29/2022   *Entered by:* Chad S. Caby
                                                                               *Modified:*

No amounts claimed

*History:*

| Details | 14-1 | 04/29/2022 Claim #14 filed by Riviera Country Club S. de R.L. de C.V., Amount claimed: (Caby, Chad) |

*Description:* (14-1) Pre-Judgment Writ of Attachment; Judgment(s); Lien(s)

*Remarks:* (14-1) Please see attached

---

*Creditor:*        (19202085)            **Claim No: 15**            *Status:*
Timothy Flaherty                          *Original Filed Date*: 04/29/2022     *Filed by:* CR
6428 East Exeter Blvd.                    *Original Entered Date*: 04/29/2022   *Entered by:* Chad S. Caby
Scottsdale, AZ 85251                                                           *Modified:*

No amounts claimed

*History:*

| Details | 15-1 | 04/29/2022 Claim #15 filed by Timothy Flaherty, Amount claimed: (Caby, Chad) |

*Description:* (15-1) Pre-Judgment Writ of Attachment, Judgment(s), Lien(s)

*Remarks:* (15-1) See Attached

---

*Creditor:*        (19202080)            **Claim No: 16**            *Status:*
PdC, LLC                                  *Original Filed Date*: 04/29/2022     *Filed by:* CR
1601 Blake Street                         *Original Entered Date*: 04/29/2022   *Entered by:* Chad S. Caby
                                                                               *Modified:*

*History:*

| Details | 16-1 | 04/29/2022 Claim #16 filed by PdC, LLC, Amount claimed: (Caby, Chad) |

*Description:* (16-1) Pre-Judgment Writ of Attachment, Judgment(s), Lien(s)

*Remarks:* (16-1) See Attached

**Aple.Appx. 563**

Suite 310
Denver, CO 80202
*No amounts claimed*

*History:*

Details    <u>16-1</u>   04/29/2022 Claim #16 filed by PdC, LLC, Amount claimed: (Caby, Chad)

*Description:* (16-1) Pre-Judgment Writ of Attachment, Judgment(s), Lien(s)

*Remarks:* (16-1) See Attached

---

*Creditor:*    (19206900)      **Claim No: 17**      *Status:*
Desarrollos Turisticos Riviera Xpu-Ha, A.    *Original Filed Date:* 04/29/2022    *Filed by:* CR
de C.V.S      *Original Entered Date*: 04/29/2022    *Entered by:* Chad S. Caby
     *Modified:*

*No amounts claimed*

*History:*

Details    <u>17-1</u>   04/29/2022 Claim #17 filed by Desarrollos Turisticos Riviera Xpu-Ha, A. de C.V.S, Amount claimed: (Caby, Chad)

*Description:* (17-1) Pre-Judgment Writ of Attachment, Judgment(s), Lien(s)

*Remarks:* (17-1) See Attached

---

*Creditor:*    (19206913)      **Claim No: 18**      *Status:*
PdC II, LLC      *Original Filed Date:* 04/29/2022    *Filed by:* CR
     *Original Entered Date*: 04/29/2022    *Entered by:* Chad S. Caby
     *Modified:*

*No amounts claimed*

*History:*

Details    <u>18-1</u>   04/29/2022 Claim #18 filed by PdC II, LLC, Amount claimed: (Caby, Chad)

*Description:* (18-1) Pre-Judgment Writ of Attachment, Judgment(s), Lien(s)

*Remarks:* (18-1) See Attached

---

*Creditor:*    (19206914)      **Claim No: 19**      *Status:*
TMTBC, LLC      *Original Filed Date:* 04/29/2022    *Filed by:* CR
     *Original Entered Date*: 04/29/2022    *Entered by:* Chad S. Caby
     *Modified:*

*No amounts claimed*

*History:*

Details    <u>19-1</u>   04/29/2022 Claim #19 filed by TMTBC, LLC, Amount claimed: (Caby, Chad)

*Description:* (19-1) Pre-Judgment Writ of Attachment, Judgment(s), Lien(s)

*Remarks:* (19-1) See Attached

---

*Creditor:*    (19202086)      **Claim No: 20**      *Status:*
Timothy Kneen      *Original Filed Date:* 04/29/2022    *Filed by:* CR
8400 Witez Ct., Parker    *Original Entered Date*: 04/29/2022    *Entered by:* Chad S. Caby
Parker, CO 80134      *Modified:*
*No amounts claimed*

*History:*

Details    <u>20-1</u>   04/29/2022 Claim #20 filed by Timothy Kneen, Amount claimed: (Caby, Chad)

*Description:* (20-1) Pre-Judgment Writ of Attachment, Judgment(s), Lien(s)

*Remarks:* (20-1) See Attached

*Creditor:* (19222286)            **Claim No: 21**                *Status:*
James J. Smith                    *Original Filed Date:* 06/03/2022    *Filed by:* CR
c/o Ludwin Law Group PA           *Original Entered Date:* 06/03/2022   *Entered by:* Steven M Berman
85 SE 4th Ave., Ste. 108                                           *Modified:*
Delray Beach, FL 33483

  Amount claimed: $56605.28

*History:*

Details     21-1  06/03/2022 Claim #21 filed by James J. Smith, Amount claimed: $56605.28 (Berman, Steven)

*Description:* (21-1) Final Judgment for Services Rendered
*Remarks:*

---

*Creditor:* (19205433)            **Claim No: 22**                *Status:*
Edward W. Nottingham, LLC         *Original Filed Date:* 10/27/2022    *Filed by:* CR
5724 East Tenth Avenue            *Original Entered Date:* 10/27/2022   *Entered by:* ADI Clerk
Denver, CO 80220                                                   *Modified:*

  Amount claimed: $932.47

*History:*

Details     22-1  10/27/2022 Claim #22 filed by Edward W. Nottingham, LLC, Amount claimed: $932.47 (ADI Clerk)

*Description:*
*Remarks:*

---

*Creditor:* (19290633)            **Claim No: 23**                *Status:*
Citibank, N.A.                    *Original Filed Date:* 10/28/2022    *Filed by:* CR
5800 S Corporate Pl               *Original Entered Date:* 10/28/2022   *Entered by:* Clarissa Weyant
Sioux Falls, SD 57108-5027                                         *Modified:*

  Amount claimed: $188.13

*History:*

Details     23-1  10/28/2022 Claim #23 filed by Citibank, N.A., Amount claimed: $188.13 (Weyant, Clarissa)

*Description:* (23-1) Money Loaned
*Remarks:*

---

*Creditor:* (19297277)            **Claim No: 24**                *Status:*
The Club at Hokuli'a, a HAwai'i Nonprofit    *Original Filed Date:* 11/11/2022    *Filed by:* CR
Corporat                          *Original Entered Date:* 11/11/2022   *Entered by:* Robertson B. Cohen
PO Box 247                                                         *Modified:*
Kealakekua, HW 96750

  Amount  claimed: $198412.30
  Secured claimed: $150000.00

*History:*

Details     24-1  11/11/2022 Claim #24 filed by The Club at Hokuli'a, a HAwai'i Nonprofit Corporat, Amount claimed:
        $198412.30 (Cohen, Robertson)

*Description:*
*Remarks:*

---

*Creditor:* (19327593)            **Claim No: 25**                *Status:*
Connelly Law, LLC.                *Original Filed Date:* 01/13/2023    *Filed by:* CR
C/O David Miller                  *Original Entered Date:* 01/13/2023   *Entered by:* David M. Miller
Spencer Fane LLP                                                   *Modified:*

*History:*

Details     25-1  01/13/2023 Claim #25 filed by Connelly Law, LLC., Amount claimed: $125000.00 (Miller, David)

*Description:*
*Remarks:*

**Aple.Appx. 565**

1700 Lincoln Street, Suite 2000
Denver, CO 80203

 Amount claimed: $125000.00

*History:*

| | | |
|---|---|---|
| Details | 25-1 | 01/13/2023 Claim #25 filed by Connelly Law, LLC., Amount claimed: $125000.00 (Miller, David) |

*Description:*

*Remarks:*

# Claims Register Summary

**Case Name:** Michael Joseph Roberts, Sr.
**Case Number:** 22-10521-JGR
**Chapter:** 7
**Date Filed:** 02/18/2022
**Total Number Of Claims:** 25

| | |
|---|---|
| **Total Amount Claimed\*** | $2895410.70 |
| **Total Amount Allowed\*** | |

*\*Includes general unsecured claims*

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | $847370.18 | |
| **Priority** | $0.00 | |
| **Administrative** | | |

---

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/03/2024 08:54:38 | | |
| **PACER Login:** | Lrrc0002 | **Client Code:** | 309170-00002/05641/csc |
| **Description:** | Claims Register | **Search Criteria:** | 22-10521-JGR Filed or Entered From: 1/1/1990 Filed or Entered To: 7/3/2024 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

**Aple.Appx. 566**